**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT | ) Case No. 25-10475 (TMH) |
| GROUP USA INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Ref. Docket No. 122** |

## CERTIFICATION OF COUNSEL

On March 31, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sheppard, Mullin, Richter & Hampton LLP as Counsel to the Debtors and Debtors in Possession, Effective as of the Petition Date* [D.I. 122] (the "Application") with the United States Bankruptcy Court for the District of Delaware (the "Court"), seeking entry of the proposed order attached thereto as Exhibit A (the "Proposed Order"). Responses to the Application, if any, were required to be filed and served no later than 4:00 p.m. (ET) on April 14, 2025 (as may have been extended by the Debtors for any party, the "Objection Deadline").

Prior to the Objection Deadline, the Debtors received informal comments to the Proposed Order from the United States Trustee (the "U.S. Trustee"). No other formal or informal responses or objections to the Proposed Order were received.

---

[1]    The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

Following discussions with the U.S. Trustee, the Debtors have agreed to a revised form of order (the "Revised Proposed Order"), a copy of which is attached hereto as **Exhibit A**, which resolves the comments of the U.S. Trustee. For the convenience of the Court and other interested parties, a blackline comparing the Revised Proposed Order against the Proposed Order is attached hereto as **Exhibit B**.

As no other objections or responses to the Application have been received, it is hereby respectfully requested that the Revised Proposed Order be entered at the earliest convenience of the Court.

*[Remainder of Page Intentionally Left Blank]*

Dated: April 17, 2025
Wilmington, Delaware

/s/ Benjamin C. Carver

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP** |

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Carol E. Thompson (Del. Bar No. 6936)
Benjamin C. Carver (Del. Bar No. 7176)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    jmulvihill@ycst.com
        cthompson@ycst.com
        bcarver@ycst.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone:    (312) 499-6300
Facsimile:    (312) 499-6301
Email:    jbernbrock@sheppardmullin.com
        mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:    (310) 228-3700
Facsimile:    (310) 228-3701
Email:    jnassiri@sheppardmullin.com

-and-

Alyssa Paddock (admitted *pro hac vice*)
30 Rockefeller Plaza, 39th Floor
New York, NY 10112
Telephone:    (212) 653-8700
Facsimile:    (212) 653-8701
Email:    apaddock@sheppardmullin.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# EXHIBIT A

## Revised Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | ) Case No. 25-10475 (TMH) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Ref. Docket No. 122** |
| | ) |

### ORDER AUTHORIZING THE
### RETENTION AND EMPLOYMENT OF SHEPPARD, MULLIN,
### RICHTER & HAMPTON LLP AS COUNSEL TO THE DEBTORS
### AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE

Upon consideration of the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (the "Order") authorizing the retention and employment of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin" or the "Firm") as counsel to the Debtors, effective as of the Petition Date, pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1; and upon consideration of the Bernbrock Declaration and the Maib Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd, Ste. 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed such terms in the Application.

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Bernbrock Declaration that (a) Sheppard Mullin does not hold or represent an interest adverse to the Debtors' estates and (b) Sheppard Mullin is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized to retain and employ Sheppard Mullin as their counsel effective as of the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1** as modified herein.

3.    Sheppard Mullin is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter.  Specifically, but without limitation, Sheppard Mullin will render the following legal services:

(a)    advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

(b)    advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

(c)    attending meetings and negotiating with representatives of creditors and other parties in interest;

(d)    taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates except as set forth in the Application;

(e)    preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

(f)    representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

(g)    advising the Debtors in connection with any potential sale of assets;

(h)    appearing before the Court and any appellate courts to represent the interests of the Debtors' estates except as set forth in the Application;

(i)    advising the Debtors regarding tax matters;

(j)    taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

(k)    performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

4.      Sheppard Mullin shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Sheppard Mullin also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, both in connection with the Application and the interim and final fee applications to be filed by Sheppard Mullin in these chapter 11 cases.

5.      Notwithstanding anything in the Engagement Letter to the contrary, Sheppard Mullin shall apply any remaining amounts of its prepetition special purpose retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Sheppard Mullin. Sheppard Mullin is authorized without further order of the Court to reserve and apply amounts from the prepetition special purpose retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Sheppard Mullin for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices. In the event that any special purpose retainer amounts remain unapplied after Sheppard Mullin's fees and expenses have been approved and paid on a final basis pursuant to an order of the Court approving Sheppard Mullin's final fee application, Sheppard Mullin shall remit such unapplied special purpose retainer amounts to the Debtors' estates.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Sheppard Mullin's fee applications under the Bankruptcy Code are not approved pending further order of the Court.  Notwithstanding the foregoing, Sheppard Mullin shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law and the decisions of this Court.

7.      Notwithstanding anything contained in the Application, its exhibits, and/or any supporting filings, including the Engagement Letter, the Debtors' rights to object to interim and/or final allowance of Sheppard Mullin's fees are fully reserved under the applicable bankruptcy law and the procedures set forth in any order establishing procedures for interim compensation and reimbursement of expenses for retained professionals that may be ordered by the Court. Notwithstanding anything contained in paragraph 9 of the Engagement Letter, any disputes concerning Sheppard Mullin's fees and expenses charged during the pendency of these chapter 11 cases shall first be submitted to this Court.

8.      Sheppard Mullin shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Sheppard Mullin to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.      Sheppard Mullin shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application

or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.     Notwithstanding anything contained in paragraph 4 of the Engagement Letter, Sheppard Mullin's retention is at times during the pendency of these chapter 11 cases governed by and subject to section 327(a) of the Bankruptcy Code.

11.     The Debtors and Sheppard Mullin are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

13.     To the extent the Application, the Bernbrock Declaration, the Maib Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

14.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## **EXHIBIT 1**

**Engagement Letter**

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
321 North Clark St., 32nd Floor
Chicago, Illinois 60654
312.499.6300 main
312.499.6301 fax
www.sheppardmullin.com

312.499.6321 direct
jbernbrock@sheppardmullin.com

December 10, 2024

**VIA E-Mail**

Kevin Berg
General Counsel
Village Roadshow Entertainment Group (BVI) Limited
10100 Santa Monica Boulevard, Suite 200
Los Angeles, CA 90067

Re:    Engagement of Sheppard, Mullin, Richter & Hampton LLP

Dear Mr. Berg:

The purpose of this letter is to confirm our engagement by Village Roadshow Entertainment Group (BVI) Limited and those of its subsidiaries listed on Attachment A hereto (collectively, the "Companies") to represent it in connection with a potential restructuring (the "Matter"). We appreciate your confidence and thank you for selecting us as counsel.

1.    Scope of Representation. Except as we may agree otherwise in writing, we will be representing only the Companies and will not be representing any parent, subsidiary or other affiliated entity nor any shareholder, partner, member, director, officer, employee, agent or insurer of the Companies. Except as we may otherwise agree, the terms of this letter apply to other engagements for the Companies that we may undertake.

2.    Fees and Charges. Our fees are based on hours charged at scheduled rates that are periodically adjusted, generally as of the beginning of a calendar year. My hourly rate at this time is $1,430. Our scheduled hourly rates for other attorneys range from $605 to $1,920. In addition to fees, the Companies are responsible for costs associated with our representation (collectively "Charges").

Statements are submitted monthly and are due and payable upon receipt. The Companies agree to notify us promptly in writing if they dispute any entry for legal services or charges on any statement. In the absence of any written objection thereto within thirty (30) days of the Companies' receipt of an invoice, the Companies will be deemed to have accepted and acknowledged the invoice as correct through the period covered by the invoice. Pursuant to the Rules of Professional Conduct, we will withdraw from the representation if invoices are not paid per the terms of this agreement. Also, interest is charged at 10% per annum from date of statement for amounts outstanding more than thirty (30) days.

**Sheppard**Mullin

Kevin Berg
December 10, 2024
Page 2

Unless we otherwise expressly agree in writing, any estimates we may provide from time to time and any deposits, retainers, or advances against costs we may require are not a limitation on our fees and other charges.

3.      Advance Payment Retainer.  The Companies agree to provide us an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill., May 28, 2015), in the amount of $100,000.00.  The advanced payment retainer shall grant each of the Companies a contingent, reversionary interest in unused retainer funds.  The Companies further agree to provide one or more additional advance payment retainers at our request to ensure that our estimated fees and expenses then outstanding do not exceed the total amount of advance payment retainers provided to us.  We may apply any amounts provided via advance payment retainers to any fees and expenses as and when they are incurred.  The Companies understand and acknowledge that advance payment retainers are earned by us upon receipt, any advance payment retainers become our property at such time, the Companies no longer have a property interest in any advance payment retainers upon our receipt, any advance payment retainers may be placed in our general account and will not be held in a client trust account, and the Companies will not earn interest on any advance payment retainers; provided, however, solely to the extent required under applicable law, at the conclusion of our work on the Matter, if the amount of any advance payment retainers held by us is greater than the amount of our then outstanding fees and expenses, the Companies shall each retain a pro rata reversionary interest in such funds.  The Companies further understand and acknowledge that the use of advance payment retainers is an integral condition of our representation in the Matter and is necessary to ensure that: the Companies continue to have access to our services; we are compensated for our representation of the Companies; we are not a prepetition creditor in the event the Companies commence a case under Title 11 of the United States Code (the "Bankruptcy Code"); and that the provision of the advance payment retainers is in the Companies' best interest.  For the avoidance of doubt, the Companies' agreement to provide us with advance payment retainers does not affect either parties' rights under Section 6 of this letter (Termination of Representation).

4.      Advance Waiver of Conflicts of Interest.  We undertake this engagement on the condition that the Companies consent to our handling of certain types of matters (described below) involving adversity between the Companies and another current client so long as the matter we are handling is not substantially related to any other matters we have handled (or are handling) for the adverse party.  In particular, we seek your consent to our representation of: (1) the Companies in Proceedings adverse to existing or new clients without limiting our ability to handle unrelated matters for such clients; and (2) existing or new clients in business negotiations, bankruptcy proceedings as co-creditors or in preference actions, transactions, uncontested discovery requests, administrative proceedings, regulatory applications or other legal advice matters (collectively, "Proceedings") involving adversity with the Companies, but only so long as the matters for other clients described above in (1) and (2) are not substantially related to our representation of the Companies and we do not have confidential information from the Companies that is material to such matters.  This waiver does not allow adversity with the Companies in litigation where the Companies is a party.  The Companies further agree that in the event the Companies or one of its affiliates is a bidder or potential purchaser of an asset, we may

**Sheppard**Mullin

Kevin Berg
December 10, 2024
Page 3

simultaneously represent other bidders or purchasers in that bidding process with the understanding that we will have separate lawyers represent each client.

When clients are asked to waive a conflict of interest, they typically consider whether they are concerned that their lawyer will be less zealous by virtue of the conflict. In addition, clients typically consider whether there is a risk that their confidential information will be accessed and either disclosed or used against them as a result of the conflicted representation. Because this waiver does not apply to litigations, arbitrations or other forms of alternative dispute resolution (except as to discovery proceedings), and because we will continue to maintain the confidences of the Companies, we believe this risk is minimal. This, however, is something that the Companies need to decide for themselves. By consenting to this arrangement, the Companies are waiving future conflicts of interest so long as we maintain confidentiality and adhere to the foregoing limitations. We encourage the Companies to consult other counsel concerning this waiver. By signing this letter, the Companies acknowledge that it has had an opportunity to consult with other counsel. If you need additional time to do so, please let us know.

5.      <u>In-Firm Privilege</u>. We may have occasion to seek legal advice about our own rights and responsibilities regarding our engagement by the Companies. We may seek such advice from attorneys in our internal Office of the General Counsel who do not do work for the Companies or from outside attorneys at our own expense. The Companies agree that any such communications and advice are protected by our own attorney-client privilege and neither the fact of any communication nor their substance is subject to disclosure to the Companies.

6.      <u>Termination of Representation</u>. The Companies have the right to terminate our representation at any time. Subject to our ethical obligation to give the Companies reasonable notice to arrange for alternate representation, we may terminate our representation at any time. Our work for the Companies and our attorney-client relationship on any matter for which we are engaged will end upon the earliest of: our completion of our work on the matter; the passage of six (6) months without fees being billed on the matter; our sending the Companies written notice that our representation has ended; or sending our final bill for services rendered. Upon the occurrence of any one of the foregoing, the Companies will be deemed a former client on such matter for conflict purposes. That will be the case whether or not, as is not uncommon, we are designated to receive copies or courtesy copies of notices under one or more transaction documents. If you ask us to represent the Companies on another matter, we may agree or decline to do so in our discretion.

7.      <u>Disclosures and Public Announcements</u>. We respectfully request your permission to disclose to third parties the fact that we represented the Companies in transactions we complete on its behalf, and to describe in general terms our role, the services we performed, and the nature of the transaction. These disclosures may be made to current or prospective clients or to others, and may consist of announcements and advertisements placed at our own expense in legal, business, financial and other periodicals and publications. If you would prefer we not disclose our participation in your matter, please let us know and we will be happy to honor your request.

8.      <u>Our Document Retention</u>. It is our policy and practice to destroy our files seven (7) years after the file is first closed unless the client requests a shorter or longer retention period in writing.

**Sheppard**Mullin

Kevin Berg
December 10, 2024
Page 4

Files are generally closed at the conclusion of a lawsuit or completion of a transaction.  In addition, the Companies agree that our work product including our internal emails, internal drafts, notes and mental impressions belong to us as lawyers and are not part of your client file.

9. <u>Arbitration</u>.  Any dispute between us concerning our fees or charges and any other dispute between or among you and us or any of our attorneys and agents, including but not limited to claims of malpractice, errors or omissions, issues of arbitrability, or any other claim of any kind regardless of the facts or the legal theories, shall be finally settled by mandatory binding arbitration in Chicago, Illinois with each party to bear its own costs and attorneys' fees and disbursements.  The parties agree that this arbitration shall be governed by the Illinois Arbitration Act, 710 ILCS 5/1, et seq.  The arbitration shall commence when any party serves a demand for arbitration on the other party.  Any arbitration hereunder, and all submissions, testimony, transcripts, evidence, etc., related to such arbitration, shall be kept confidential by all parties.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures except that notwithstanding anything to the contrary in the JAMS rules, discovery shall be permitted as allowed by the Illinois Code of Civil Procedure pursuant to section 5/7.  Such arbitration shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three arbitrator panel.  In disputes calling for a single arbitrator, within 15 days after the commencement of the arbitration, each party shall submit to JAMS a list of the names of five members of the JAMS panel for Chicago, Illinois, ranked in descending order of preference, and JAMS shall appoint as the single arbitrator the highest ranked panel member whose name appears on both lists.  This process shall repeat until an arbitrator is selected by JAMS. If this process fails for any reason, the single arbitrator shall be appointed by JAMS in accordance with its rules.  In disputes calling for three arbitrators, within 15 days after the commencement of arbitration, each party shall select one person to act as arbitrator, and the two so selected shall select a third arbitrator within 30 days of the commencement of the arbitration.  If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator within the allotted time, the third arbitrator shall be appointed by JAMS in accordance with its rules.  All arbitrators shall serve as neutral, independent and impartial arbitrators and must act in conformity with the rules of evidence and law.  Judgment on a binding arbitration award may be entered in any court of competent jurisdiction.   We mutually acknowledge that, by this agreement to arbitrate, each of us irrevocably waives our rights to court or jury trial.  You have the right to consult separate legal counsel at any time as to any matter, including whether to enter into this engagement letter and consent to the foregoing agreement to arbitrate.

10. <u>Choice of Law</u>.  The Companies agree that this agreement will be governed by the laws of Illinois without regard to its conflict rules.  The foregoing arbitration provision shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.  Subject in all cases to the arbitration provision set forth in section 8, the Companies agree that (i) with regard to the courts, exclusive jurisdiction and exclusive venue for any dispute between us shall lie solely with the Illinois Circuit Court for Cook County specified for an arbitration pursuant to section 8 hereof and the U.S. District Court for the Northern District of Illinois and (ii) consents to service of process pursuant to the applicable Illinois state statutes and federal rules.

**Sheppard**Mullin

Kevin Berg
December 10, 2024
Page 5

11.     <u>Modification</u>.  These engagement terms may only be modified by written agreement with a partner of the Firm or an attorney within the Firm's Office of General Counsel.

If these terms are acceptable, please sign and return along with the Companies' advance payment retainer.  ***Wire instructions are attached, if needed***.  If you have any questions or concerns, please call me or seek the advice of an independent counsel of your choice.

Once again, thank you for selecting us to represent the Companies.

Sincerely,

Justin R. Bernbrock, P.C.
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Enclosure

**SheppardMullin**

Kevin Berg
December 10, 2024
Page 6

The undersigned has read and understands this engagement letter and agrees that it correctly sets forth the terms upon which Sheppard, Mullin, Richter & Hampton LLP has been engaged by the undersigned in connection with the representation described herein and has waived any conflict of interest on the part of this Firm arising out of the representation described above.

**Village Roadshow Entertainment Group (BVI) Limited, And Each Of Its Subsidiaries Listed on Attachment A**

By:_____
    Kevin P. Berg
    General Counsel

December 10, 2024

Kevin Berg
General Counsel
Village Roadshow Entertainment Group (BVI) Limited
10100 Santa Monica Boulevard, Suite 200
Los Angeles, CA 90067

Billing Atty:        Justin R. Bernbrock, P.C.

## <u>RETAINER INVOICE</u>

This invoice reflects the retainer required pursuant to your Engagement Letter with Sheppard Mullin.  Funds paid to us pursuant to this invoice will be held in our client trust account until earned.

Total Due for This Retainer Invoice        <u>$100,000.00</u>

## <u>Wire and Payment Instructions</u>

| <u>Wire (U.S.)</u>: | | <u>By Check – mail to</u>: |
|---|---|---|
| Account Name: | Sheppard Mullin Richter & Hampton LLP | Sheppard Mullin Richter & Hampton LLP |
| Beneficiary Bank: | Wells Fargo Bank, N.A. 420 Montgomery St. San Francisco, CA 94104-1298 | PO Box 840728 Los Angeles, CA 90084-0728 |
| Account No.: | ████████ | |
| ACH ABA No.: | ██████ | |
| Wire ABA No.: | ██████ | |
| Swift Identifier: | ██████ | |

If available, please indicate client name or matter number in the payment detail field.

**Please note that these wire instructions are for purposes of paying this retainer only and should not be used for future payments on other invoices.  All invoices will reflect the correct wire instructions.**

## **ATTACHMENT A**

| | |
|---|---|
| 1. | VILLAGE ROADSHOW ENTERTAINMENT GROUP ASIA LIMITED |
| 2. | CRESCENT FILM HOLDINGS LIMITED |
| 3. | VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC. |
| 4. | VILLAGE ROADSHOW FILM ADMINISTRATION MANAGEMENT PTY LTD |
| 5. | VILLAGE ROADSHOW DISTRIBUTION PTY LTD |
| 6. | VILLAGE ROADSHOW DISTRIBUTION UK LIMITED |
| 7. | VILLAGE ROADSHOW PRODUCTIONS (BVI) LTD |
| 8. | VR ZOO PRODUCTIONS LTD |
| 9. | ZOO FILM PARTNERS L.P. |
| 10. | VR DTE PRODUCTIONS LIMITED |
| 11. | DTE FILM PARTNERS LP |
| 12. | VILLAGE ROADSHOW DISTRIBUTION (BVI) LIMITED |
| 13. | VR FILMS HOLDINGS (BVI) LIMITED |
| 14. | VILLAGE ROADSHOW FILMS (BVI) LIMITED |
| 15. | VREG FILMS LTD |
| 16. | VILLAGE ROADSHOW HOLDINGS USA INC. |
| 17. | VREG TELEVISION INC. |
| 18. | TTD VILLAGE PRODUCTIONS LLC |
| 19. | VREG PRODUCTION SERVICES INC. |
| 20. | VR DTE DISTRIBUTION USA INC. |
| 21. | VR ZOO DISTRIBUTION USA INC. |
| 22. | VILLAGE ROADSHOW PICTURES ENTERTAINMENT INC. |
| 23. | VILLAGE ROADSHOW DISTRIBUTION USA INC. |
| 24. | VR FUNDING LLC |
| 25. | VILLAGE ROADSHOW FILMS NORTH AMERICA INC. |
| 26. | VILLAGE ROADSHOW FILMS GLOBAL INC. |
| 27. | VILLAGE ROADSHOW PICTURES NORTH AMERICA INC. |

| 28. | VILLAGE ROADSHOW VS FILMS LLC |
|-----|-------------------------------|
| 29. | VREG FUNDING LLC |
| 30. | VREG WW IP GLOBAL LLC |
| 31. | VREG WONKA IP GLOBAL LLC |
| 32. | VREG MM2 IP GLOBAL LLC |
| 33. | VREG J2 GLOBAL LLC |
| 34. | VREG OP GLOBAL LLC |
| 35. | VREG IP GLOBAL LLC |
| 36. | MC VILLAGE PRODUCTIONS LLC |
| 37. | GUTTER VILLAGE PRODUCTIONS LLC |
| 38. | VILLAGE ROADSHOW PRODUCTIONS INC. |

# EXHIBIT B

**Blackline**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| VILLAGE ROADSHOW ENTERTAINMENT | ) |
| GROUP USA INC., *et al.*,[1] | ) Case No. 25-10475 (TMH) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Ref. Docket No. [●]122** |
|  | ) |

## ORDER AUTHORIZING THE
## RETENTION AND EMPLOYMENT OF SHEPPARD, MULLIN,
## RICHTER & HAMPTON LLP AS COUNSEL TO THE DEBTORS
## AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE

Upon consideration of the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (the "Order") authorizing the retention and employment of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard Mullin" or the "Firm") as counsel to the Debtors, effective as of the Petition Date, pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1; and upon consideration of the Bernbrock Declaration and the Maib Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core

---

[1]   The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343.  The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd, Ste. 800 West, West Hollywood, CA 90069.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed such terms in the Application.

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Bernbrock Declaration that (a) Sheppard Mullin does not hold or represent an interest adverse to the Debtors' estates and (b) Sheppard Mullin is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized to retain and employ Sheppard Mullin as their counsel effective as of the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1** as modified herein.

3.      Sheppard Mullin is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter.  Specifically, but without limitation, Sheppard Mullin will render the following legal services:

(a)      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

(b)      advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

(c)      attending meetings and negotiating with representatives of creditors and other parties in interest;

(d)      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates except as set forth in the Application;

(e)      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

(f)      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

(g)      advising the Debtors in connection with any potential sale of assets;

(h)      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates except as set forth in the Application;

(i)      advising the Debtors regarding tax matters;

(j)      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

(k)      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

-3-

4.      Sheppard Mullin shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court. Sheppard Mullin also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013*, both in connection with the Application and the interim and final fee applications to be filed by Sheppard Mullin in these chapter 11 cases.

5.      Notwithstanding anything in the Engagement Letter to the contrary, Sheppard Mullin shall apply any remaining amounts of its prepetition special purpose retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Sheppard Mullin. Sheppard Mullin is authorized without further order of the Court to reserve and apply amounts from the prepetition special purpose retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Sheppard Mullin for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices. In the event that any special purpose retainer amounts remain unapplied after Sheppard Mullin's fees and expenses have been approved and paid on a final basis pursuant to an order of the Court approving Sheppard Mullin's final fee application, Sheppard Mullin shall remit such unapplied special purpose retainer amounts to the Debtors' estates.

-4-

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Sheppard Mullin's fee applications under the Bankruptcy Code are not approved pending further order of the Court. Notwithstanding the foregoing, Sheppard Mullin shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law and the decisions of this Court.

7.      Notwithstanding anything contained in the Application, its exhibits, and/or any supporting filings, including the Engagement Letter, the Debtors' rights to object to interim and/or final allowance of Sheppard Mullin's fees are fully reserved under the applicable bankruptcy law and the procedures set forth in any order establishing procedures for interim compensation and reimbursement of expenses for retained professionals that may be ordered by the Court. Notwithstanding anything contained in paragraph 9 of the Engagement Letter, any disputes concerning Sheppard Mullin's fees and expenses charged during the pendency of these chapter 11 cases shall first be submitted to this Court.

8.      Sheppard Mullin shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Sheppard Mullin to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.      Sheppard Mullin shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application

or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.    Notwithstanding anything contained in paragraph 4 of the Engagement Letter, Sheppard Mullin's retention is at times during the pendency of these chapter 11 cases governed by and subject to section 327(a) of the Bankruptcy Code.

10.11.  The Debtors and Sheppard Mullin are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11.12.  Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

12.13.  To the extent the Application, the Bernbrock Declaration, the Maib Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

13.14.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.15.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## **EXHIBIT 1**

**Engagement Letter**

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
321 North Clark St., 32nd Floor
Chicago, Illinois 60654
312.499.6300 main
312.499.6301 fax
www.sheppardmullin.com

312.499.6321 direct
jbernbrock@sheppardmullin.com

December 10, 2024

**VIA E-Mail**

Kevin Berg
General Counsel
Village Roadshow Entertainment Group (BVI) Limited
10100 Santa Monica Boulevard, Suite 200
Los Angeles, CA 90067

Re:    Engagement of Sheppard, Mullin, Richter & Hampton LLP

Dear Mr. Berg:

The purpose of this letter is to confirm our engagement by Village Roadshow Entertainment Group (BVI) Limited and those of its subsidiaries listed on Attachment A hereto (collectively, the "Companies") to represent it in connection with a potential restructuring (the "Matter").   We appreciate your confidence and thank you for selecting us as counsel.

1.     Scope of Representation.   Except as we may agree otherwise in writing, we will be representing only the Companies and will not be representing any parent, subsidiary or other affiliated entity nor any shareholder, partner, member, director, officer, employee, agent or insurer of the Companies.   Except as we may otherwise agree, the terms of this letter apply to other engagements for the Companies that we may undertake.

2.     Fees and Charges.   Our fees are based on hours charged at scheduled rates that are periodically adjusted, generally as of the beginning of a calendar year.   My hourly rate at this time is $1,430.   Our scheduled hourly rates for other attorneys range from $605 to $1,920.   In addition to fees, the Companies are responsible for costs associated with our representation (collectively "Charges").

Statements are submitted monthly and are due and payable upon receipt.   The Companies agree to notify us promptly in writing if they dispute any entry for legal services or charges on any statement.   In the absence of any written objection thereto within thirty (30) days of the Companies' receipt of an invoice, the Companies will be deemed to have accepted and acknowledged the invoice as correct through the period covered by the invoice.   Pursuant to the Rules of Professional Conduct, we will withdraw from the representation if invoices are not paid per the terms of this agreement.   Also, interest is charged at 10% per annum from date of statement for amounts outstanding more than thirty (30) days.

**SheppardMullin**

Kevin Berg
December 10, 2024
Page 2

Unless we otherwise expressly agree in writing, any estimates we may provide from time to time and any deposits, retainers, or advances against costs we may require are not a limitation on our fees and other charges.

3.      Advance Payment Retainer.  The Companies agree to provide us an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill., May 28, 2015), in the amount of $100,000.00.  The advanced payment retainer shall grant each of the Companies a contingent, reversionary interest in unused retainer funds.  The Companies further agree to provide one or more additional advance payment retainers at our request to ensure that our estimated fees and expenses then outstanding do not exceed the total amount of advance payment retainers provided to us.  We may apply any amounts provided via advance payment retainers to any fees and expenses as and when they are incurred.  The Companies understand and acknowledge that advance payment retainers are earned by us upon receipt, any advance payment retainers become our property at such time, the Companies no longer have a property interest in any advance payment retainers upon our receipt, any advance payment retainers may be placed in our general account and will not be held in a client trust account, and the Companies will not earn interest on any advance payment retainers; provided, however, solely to the extent required under applicable law, at the conclusion of our work on the Matter, if the amount of any advance payment retainers held by us is greater than the amount of our then outstanding fees and expenses, the Companies shall each retain a pro rata reversionary interest in such funds.  The Companies further understand and acknowledge that the use of advance payment retainers is an integral condition of our representation in the Matter and is necessary to ensure that: the Companies continue to have access to our services; we are compensated for our representation of the Companies; we are not a prepetition creditor in the event the Companies commence a case under Title 11 of the United States Code (the "Bankruptcy Code"); and that the provision of the advance payment retainers is in the Companies' best interest.  For the avoidance of doubt, the Companies' agreement to provide us with advance payment retainers does not affect either parties' rights under Section 6 of this letter (Termination of Representation).

4.      Advance Waiver of Conflicts of Interest.  We undertake this engagement on the condition that the Companies consent to our handling of certain types of matters (described below) involving adversity between the Companies and another current client so long as the matter we are handling is not substantially related to any other matters we have handled (or are handling) for the adverse party.  In particular, we seek your consent to our representation of: (1) the Companies in Proceedings adverse to existing or new clients without limiting our ability to handle unrelated matters for such clients; and (2) existing or new clients in business negotiations, bankruptcy proceedings as co-creditors or in preference actions, transactions, uncontested discovery requests, administrative proceedings, regulatory applications or other legal advice matters (collectively, "Proceedings") involving adversity with the Companies, but only so long as the matters for other clients described above in (1) and (2) are not substantially related to our representation of the Companies and we do not have confidential information from the Companies that is material to such matters.  This waiver does not allow adversity with the Companies in litigation where the Companies is a party.  The Companies further agree that in the event the Companies or one of its affiliates is a bidder or potential purchaser of an asset, we may

**Sheppard****Mullin**

Kevin Berg
December 10, 2024
Page 3

simultaneously represent other bidders or purchasers in that bidding process with the understanding that we will have separate lawyers represent each client.

When clients are asked to waive a conflict of interest, they typically consider whether they are concerned that their lawyer will be less zealous by virtue of the conflict. In addition, clients typically consider whether there is a risk that their confidential information will be accessed and either disclosed or used against them as a result of the conflicted representation. Because this waiver does not apply to litigations, arbitrations or other forms of alternative dispute resolution (except as to discovery proceedings), and because we will continue to maintain the confidences of the Companies, we believe this risk is minimal. This, however, is something that the Companies need to decide for themselves. By consenting to this arrangement, the Companies are waiving future conflicts of interest so long as we maintain confidentiality and adhere to the foregoing limitations. We encourage the Companies to consult other counsel concerning this waiver. By signing this letter, the Companies acknowledge that it has had an opportunity to consult with other counsel. If you need additional time to do so, please let us know.

5.      <u>In-Firm Privilege</u>.  We may have occasion to seek legal advice about our own rights and responsibilities regarding our engagement by the Companies. We may seek such advice from attorneys in our internal Office of the General Counsel who do not do work for the Companies or from outside attorneys at our own expense. The Companies agree that any such communications and advice are protected by our own attorney-client privilege and neither the fact of any communication nor their substance is subject to disclosure to the Companies.

6.      <u>Termination of Representation</u>.  The Companies have the right to terminate our representation at any time. Subject to our ethical obligation to give the Companies reasonable notice to arrange for alternate representation, we may terminate our representation at any time. Our work for the Companies and our attorney-client relationship on any matter for which we are engaged will end upon the earliest of: our completion of our work on the matter; the passage of six (6) months without fees being billed on the matter; our sending the Companies written notice that our representation has ended; or sending our final bill for services rendered. Upon the occurrence of any one of the foregoing, the Companies will be deemed a former client on such matter for conflict purposes. That will be the case whether or not, as is not uncommon, we are designated to receive copies or courtesy copies of notices under one or more transaction documents. If you ask us to represent the Companies on another matter, we may agree or decline to do so in our discretion.

7.      <u>Disclosures and Public Announcements</u>.  We respectfully request your permission to disclose to third parties the fact that we represented the Companies in transactions we complete on its behalf, and to describe in general terms our role, the services we performed, and the nature of the transaction. These disclosures may be made to current or prospective clients or to others, and may consist of announcements and advertisements placed at our own expense in legal, business, financial and other periodicals and publications. If you would prefer we not disclose our participation in your matter, please let us know and we will be happy to honor your request.

8.      <u>Our Document Retention</u>.  It is our policy and practice to destroy our files seven (7) years after the file is first closed unless the client requests a shorter or longer retention period in writing.

**Sheppard**Mullin

Kevin Berg
December 10, 2024
Page 4

Files are generally closed at the conclusion of a lawsuit or completion of a transaction.  In addition, the Companies agree that our work product including our internal emails, internal drafts, notes and mental impressions belong to us as lawyers and are not part of your client file.

9.      Arbitration.  Any dispute between us concerning our fees or charges and any other dispute between or among you and us or any of our attorneys and agents, including but not limited to claims of malpractice, errors or omissions, issues of arbitrability, or any other claim of any kind regardless of the facts or the legal theories, shall be finally settled by mandatory binding arbitration in Chicago, Illinois with each party to bear its own costs and attorneys' fees and disbursements.  The parties agree that this arbitration shall be governed by the Illinois Arbitration Act, 710 ILCS 5/1, et seq.  The arbitration shall commence when any party serves a demand for arbitration on the other party.  Any arbitration hereunder, and all submissions, testimony, transcripts, evidence, etc., related to such arbitration, shall be kept confidential by all parties.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures except that notwithstanding anything to the contrary in the JAMS rules, discovery shall be permitted as allowed by the Illinois Code of Civil Procedure pursuant to section 5/7.  Such arbitration shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three arbitrator panel.  In disputes calling for a single arbitrator, within 15 days after the commencement of the arbitration, each party shall submit to JAMS a list of the names of five members of the JAMS panel for Chicago, Illinois, ranked in descending order of preference, and JAMS shall appoint as the single arbitrator the highest ranked panel member whose name appears on both lists.  This process shall repeat until an arbitrator is selected by JAMS. If this process fails for any reason, the single arbitrator shall be appointed by JAMS in accordance with its rules.  In disputes calling for three arbitrators, within 15 days after the commencement of arbitration, each party shall select one person to act as arbitrator, and the two so selected shall select a third arbitrator within 30 days of the commencement of the arbitration.  If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator within the allotted time, the third arbitrator shall be appointed by JAMS in accordance with its rules.  All arbitrators shall serve as neutral, independent and impartial arbitrators and must act in conformity with the rules of evidence and law.  Judgment on a binding arbitration award may be entered in any court of competent jurisdiction.   We mutually acknowledge that, by this agreement to arbitrate, each of us irrevocably waives our rights to court or jury trial.  You have the right to consult separate legal counsel at any time as to any matter, including whether to enter into this engagement letter and consent to the foregoing agreement to arbitrate.

10.     Choice of Law.  The Companies agree that this agreement will be governed by the laws of Illinois without regard to its conflict rules.  The foregoing arbitration provision shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.  Subject in all cases to the arbitration provision set forth in section 8, the Companies agree that (i) with regard to the courts, exclusive jurisdiction and exclusive venue for any dispute between us shall lie solely with the Illinois Circuit Court for Cook County specified for an arbitration pursuant to section 8 hereof and the U.S. District Court for the Northern District of Illinois and (ii) consents to service of process pursuant to the applicable Illinois state statutes and federal rules.

**Sheppard**Mullin

Kevin Berg
December 10, 2024
Page 5

11.     <u>Modification</u>.  These engagement terms may only be modified by written agreement with a partner of the Firm or an attorney within the Firm's Office of General Counsel.

If these terms are acceptable, please sign and return along with the Companies' advance payment retainer.  ***Wire instructions are attached, if needed***.  If you have any questions or concerns, please call me or seek the advice of an independent counsel of your choice.

Once again, thank you for selecting us to represent the Companies.

Sincerely,

Justin R. Bernbrock, P.C.
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Enclosure

# Sheppard Mullin

Kevin Berg
December 10, 2024
Page 6

The undersigned has read and understands this engagement letter and agrees that it correctly sets forth the terms upon which Sheppard, Mullin, Richter & Hampton LLP has been engaged by the undersigned in connection with the representation described herein and has waived any conflict of interest on the part of this Firm arising out of the representation described above.

**Village Roadshow Entertainment Group (BVI) Limited, And Each Of Its Subsidiaries Listed on Attachment A**

By: _____
    Kevin P. Berg
    General Counsel

December 10, 2024

Kevin Berg
General Counsel
Village Roadshow Entertainment Group (BVI) Limited
10100 Santa Monica Boulevard, Suite 200
Los Angeles, CA 90067

Billing Atty:      Justin R. Bernbrock, P.C.

## **RETAINER INVOICE**

This invoice reflects the retainer required pursuant to your Engagement Letter with Sheppard Mullin.  Funds paid to us pursuant to this invoice will be held in our client trust account until earned.

Total Due for This Retainer Invoice        <u>$100,000.00</u>

## **Wire and Payment Instructions**

<u>Wire (U.S.)</u>:                                                <u>By Check – mail to</u>:

| Account Name: | Sheppard Mullin Richter & Hampton LLP | Sheppard Mullin Richter & Hampton LLP<br>PO Box 840728<br>Los Angeles, CA 90084-0728 |
| --- | --- | --- |
| Beneficiary Bank: | Wells Fargo Bank, N.A.<br>420 Montgomery St.<br>San Francisco, CA 94104-1298 | |
| Account No.: | ████████ | |
| ACH ABA No.: | ██████ | |
| Wire ABA No.: | ██████ | |
| Swift Identifier: | ██████ | |

If available, please indicate client name or matter number in the payment detail field.

**Please note that these wire instructions are for purposes of paying this retainer only and should not be used for future payments on other invoices.  All invoices will reflect the correct wire instructions.**

## ATTACHMENT A

| | |
|---|---|
| 1. | VILLAGE ROADSHOW ENTERTAINMENT GROUP ASIA LIMITED |
| 2. | CRESCENT FILM HOLDINGS LIMITED |
| 3. | VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC. |
| 4. | VILLAGE ROADSHOW FILM ADMINISTRATION MANAGEMENT PTY LTD |
| 5. | VILLAGE ROADSHOW DISTRIBUTION PTY LTD |
| 6. | VILLAGE ROADSHOW DISTRIBUTION UK LIMITED |
| 7. | VILLAGE ROADSHOW PRODUCTIONS (BVI) LTD |
| 8. | VR ZOO PRODUCTIONS LTD |
| 9. | ZOO FILM PARTNERS L.P. |
| 10. | VR DTE PRODUCTIONS LIMITED |
| 11. | DTE FILM PARTNERS LP |
| 12. | VILLAGE ROADSHOW DISTRIBUTION (BVI) LIMITED |
| 13. | VR FILMS HOLDINGS (BVI) LIMITED |
| 14. | VILLAGE ROADSHOW FILMS (BVI) LIMITED |
| 15. | VREG FILMS LTD |
| 16. | VILLAGE ROADSHOW HOLDINGS USA INC. |
| 17. | VREG TELEVISION INC. |
| 18. | TTD VILLAGE PRODUCTIONS LLC |
| 19. | VREG PRODUCTION SERVICES INC. |
| 20. | VR DTE DISTRIBUTION USA INC. |
| 21. | VR ZOO DISTRIBUTION USA INC. |
| 22. | VILLAGE ROADSHOW PICTURES ENTERTAINMENT INC. |
| 23. | VILLAGE ROADSHOW DISTRIBUTION USA INC. |
| 24. | VR FUNDING LLC |
| 25. | VILLAGE ROADSHOW FILMS NORTH AMERICA INC. |
| 26. | VILLAGE ROADSHOW FILMS GLOBAL INC. |
| 27. | VILLAGE ROADSHOW PICTURES NORTH AMERICA INC. |

| 28. | VILLAGE ROADSHOW VS FILMS LLC |
|-----|-------------------------------|
| 29. | VREG FUNDING LLC |
| 30. | VREG WW IP GLOBAL LLC |
| 31. | VREG WONKA IP GLOBAL LLC |
| 32. | VREG MM2 IP GLOBAL LLC |
| 33. | VREG J2 GLOBAL LLC |
| 34. | VREG OP GLOBAL LLC |
| 35. | VREG IP GLOBAL LLC |
| 36. | MC VILLAGE PRODUCTIONS LLC |
| 37. | GUTTER VILLAGE PRODUCTIONS LLC |
| 38. | VILLAGE ROADSHOW PRODUCTIONS INC. |