## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT | ) Case No. 25-10475 (TMH) |
| GROUP USA INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Ref. Docket Nos. 7 & 67** |
| | ) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM,
(B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,
(C) MAINTAIN EXISTING BUSINESS FORMS, (D) CONTINUE INTERCOMPANY
TRANSACTIONS; (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY FOR
POSTPETITION INTERCOMPANY CLAIMS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order (this "Final Order"): (a) authorizing the Debtors to (i) continue operating the Cash Management System, (ii) honor and pay the Bank Fees in the normal course, (iii) maintain existing business forms, (iv) continue to perform under and honor Intercompany Transactions in the ordinary course of business, in their business judgment and at their sole discretion; (b) confirming administrative expense priority for post-petition intercompany claims; and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

United States District Court for the District of Delaware, dated February 29, 2012; and this Court

having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having

found that this Court may enter a final order consistent with Article III of the United States

Constitution; and this Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at an interim hearing before this Court

(the "Hearing"); and this Court having entered an interim order on the Motion [Docket No. 67]

(the "Interim Order"); and this Court having found that the Debtors' notice of a final hearing on

the Motion and opportunity for a final hearing on the Motion were appropriate under the

circumstances and no other notice need be provided; and this Court having determined that the

legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

granted herein; and upon all of the proceedings had before this Court; and after due deliberation

and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash

Management System, substantially as identified on **Exhibit D** to the Motion and as described in

the Motion, including intercompany funding among the Debtor affiliates; (b) honor their

prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence

and Business Forms (including letterhead) without reference to the Debtors' status as debtors in

possession; (d) continue to use, with the same account numbers, the Bank Accounts in existence

as of the Petition Date, including those accounts identified on **Exhibit C** to the Motion, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines (to the extent applicable); (e) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (f) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (g) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (g), such action is taken in the ordinary course of business and consistent with historical practices.

3.      The Debtors shall (i) maintain accurate and up-to-date books and records and provide the Official Committee of Unsecured Creditors (the "Committee"), Warner Bros. Entertainment Inc. and its affiliates (collectively, "Warner Bros."), and Magnum Films SPC ("Magnum") with access to them in connection to the Cash Management System and/or any and all Intercompany Transactions upon their request therefor, (ii) disclose to Warner Bros. any Intercompany Transactions that total over $250,000, where one of the Library Debtors[3] is a transferor, before any such transactions occur, and (iii) provide, on a confidential basis (which, for the avoidance of doubt, shall include in-house counsel), the following information to the advisors to the Committee, counsel to Warner Bros., and counsel to Magnum, on a monthly basis (no later than 15th day of the month following the month to which such information applies): (a) journal entries of all intercompany activity and a schedule of intercompany cash settlements among the

---

[3]   The term "Library Debtors" refers to Village Roadshow Pictures North America Inc. ("VRPNA"), Village Roadshow Films North America Inc. ("VRFNA"), Village Roadshow Films (BVI) Limited ("VRF-BVI"), Village Roadshow Distribution USA Inc. ("VRD-USA"), and any Debtor entity that purports to hold an interest in, or contract right concerning, any Warner Bros. motion picture or television production.

Debtors and non-Debtors; (b) month-end post-petition intercompany balances and month-end cash

bank balances; and (c) any reporting the Debtors provide to the DIP Lenders.

4.      The Banks are authorized to continue to maintain, service, and administer the Bank

Accounts as accounts of the Debtors as debtors in possession, without interruption and in the

ordinary course of business consistent with historical practices, and to receive, process, honor, and

pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and

ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or

makers thereof, as the case may be, and all such banks and financial institutions are authorized to

rely on the Debtors' designation of any particular check or electronic payment request as approved

by this Final Order; *provided* that the Debtors shall only instruct or request any Bank to pay or

honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date

but presented to such Bank for payment after the Petition Date as authorized by an order of this

Court.

5.      The Banks are authorized to debit the Debtors' accounts in the ordinary course of

business, consistent with historical practices, without the need for further order of this Court for:

(a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or

exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or

other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which

have been dishonored or returned unpaid for any reason, together with any fees and costs in

connection therewith, to the same extent the Debtor was responsible for such items prior to the

Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any,

owed to any Bank as service charges for the maintenance of the Cash Management System.

6.      The Debtors are authorized and empowered to continue performing under and honoring Intercompany Transactions; *provided* that the Debtors shall not be authorized to undertake any Intercompany Transactions that are not on the same terms as, or materially consistent with, the Debtors' operation of their business in the ordinary course during the prepetition period; *provided, further* that the Debtors shall not make payments on account of Intercompany Transactions involving Debtors and non-Debtors, absent further order of the Court; and *provided, further*, that the Debtors shall (a) maintain accurate and timely documentation of any postpetition Intercompany Transactions that occur during these chapter 11 cases, which shall be adequately recorded in, and readily ascertainable from their books and records, and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions.

7.      In accordance with sections 503(b)(1), 507(a)(2), and 364(b) of the Bankruptcy Code, all ordinary course Intercompany Claims arising after the Petition Date shall be accorded administrative expense priority to the extent that they provided an actual and necessary benefit to the respective Debtor's estate.

8.      Any existing agreements between or among the Debtors, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors, the Banks, and such other parties, including (a) all agreements, including the *Series 2020-1 Supplement*, dated as of November 10, 2020, among the Co-Issuers and the ABS Trustee (including Section 5.1 thereof) and the Group A Supplement, that govern the ABS Waterfall in connection with the ABS Facility, (b) that certain Sale Agreement, dated December 20, 2013, as amended by that certain Amendment No. 4 to Sale Agreement dated November 10, 2020, by and among Village Roadshow Films (BVI) Limited ("VRF"), Village Roadshow Distribution (BVI)

Limited ("VRD") and Magnum (as amended, restated, supplemented or otherwise modified from time to time) (the "Sale Agreement"), (c) that certain Fourth Amended and Restated Co-Investment Agreement, dated as of November 10, 2020, by and among VRF, VRD, Village Roadshow Films North America Inc. ("VRFNA"), Village Roadshow Distribution USA Inc. ("VRD-USA"), Village Roadshow Pictures North America Inc. ("VRPNA"), and Magnum (as amended, restated, supplemented or otherwise modified from time to time) (the "Co-Investment Agreement (Foreign & Domestic)"), (d) that certain Second Amended and Restated Co-Investment Agreement (Global) dated as of November 10, 2020, by and among Village Roadshow Films Global Inc. ("VRFG"), VRD-USA and Magnum (as amended, restated, supplemented or otherwise modified from time to time) (the "Co-Investment Agreement (Global)"), (e) that certain Second Amended and Restated Consolidated Intercreditor Agreement dated as of September 5, 2024, by and among Warner Bros. Production Limited, VRD, VRF, WAV Distribution LLC ("WAV"), VRD-USA, VRFNA, Village Roadshow Entertainment Group USA Inc. ("VREG-USA"), Magnum, Bank of America, N.A., and U.S. Bank National Association ("Permanent Financing Trustee") (as amended, restated, supplemented or otherwise modified from time to time); and (f) that certain Second Amended and Restated Intercreditor Agreement dated as of November 10, 2020, by and among Columbia Pictures Industries, Inc., for itself and for the benefit of Sony Pictures Entertainment Inc. ("Sony"), VRFG, VRD-US, VREG-USA, Magnum and the Permanent Financing Trustee (as amended, restated, supplemented or otherwise modified from time to time in accordance with its terms, the "Intercreditor Agreement")  (subparagraphs (b) through (f) collectively, the "Magnum Sale, Co-Investment and Intercreditor Agreements"), and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, cash sweep provisions (including for the deposit account maintained by the VREG Wonka IP Global

Account),[4] right and obligation of VRF, VRFNA, VRFG, VREG-USA and VRPNA to direct the Permanent Financing Trustee to instruct the applicable account bank to pay the Magnum Distributable Amount and the Magnum Payments to Magnum from the Bank Accounts held in the names of VRF, VRFNA, VRFG, and VRPNA by Permanent Financing Trustee (in its capacity as Bank under the applicable account control agreements) in accordance with the Magnum Sale, Co-Investment and Intercreditor Agreements, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Bank may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices, including, without limitation, the opening and closing of bank accounts; *provided*, that such changes will not otherwise be contrary to the Final Order; *provided, further*, that the Debtors shall provide five (5) business days' advance notice to counsel to the Committee, counsel to Warner Bros., and counsel to Magnum of any changes to the Cash Management System, whether material or nonmaterial, and an opportunity to object.

9.    For the avoidance of doubt, VRF, VRFNA, VREG-USA, VRFG, and VRPNA are authorized and empowered to pay the Magnum Distributable Amount and the Magnum Payments, or to direct the Permanent Financing Trustee to instruct the applicable account bank to make such payments, to Magnum from the Bank Accounts held in the names of VRF, VRFNA, and VRFG by the Permanent Financing Trustee (in its capacity as Bank under the applicable account control agreements), which amounts and Bank Accounts, to the extent related to the Magnum Distributable Amount and Magnum Payments, are not assets or property of the Debtors' estates and with respect to which VRF, VRFNA and VRFG each granted a security interest to Magnum under applicable

---

[4]    The VREG Wonka IP Global Account is at City National Bank, Account No. **** 4465.

deposit account control agreements and out of which the Magnum Distributable Amount and Magnum Payments are paid to Magnum on a quarterly basis, all as defined and set forth in the Magnum Sale, Co-Investment and Intercreditor Agreements.

10.    Notwithstanding anything herein, or in any other order of this Court, to the contrary, (i) the Intercreditor Agreement (together with all documents referenced, referred or contemplated therein or thereby, the "Sony Security Documents") shall continue in full force and effect, (ii) nothing herein shall, or shall be deemed to, modify, supersede, amend or otherwise alter the terms of the Sony Security Documents or the rights and priorities afforded to Sony, as set forth in the Sony Security Documents, including with respect to all collateral and property described and discussed therein, and (iii) there shall be, and is, no subordination of any of the liens, claims or encumbrances of, or for the benefit of, Sony that were created or contemplated by the Sony Security Documents.

11.    To the extent any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors are hereby granted a period of sixty (60) days from the date of this Final Order to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines with respect to such Bank Accounts; *alternatively*, if the sale of the Debtors' Library Assets closes within that sixty (60) day period, the Debtors shall close such Bank Accounts within fifteen (15) business days of the closing of the sale of the Debtors' Library Assets; *provided* that, nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court if the Debtors are unable to meet either of the two aforementioned deadlines.

12.    For any Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this

Final Order, the Debtors shall (a) contact such bank, (b) provide such bank with each of the Debtors' employer identification numbers, (c) identify each of their Bank Accounts held at such bank as being held by a debtor in possession in the Debtors' bankruptcy cases, and (d) serve a copy of this Final Order on each Bank.  For any Banks at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause such Bank to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Final Order.

13.     Subject to the terms hereof, the Debtors are authorized, but not directed, in the ordinary course of business consistent with historical practices, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, *provided* that the Debtors give notice to the U.S. Trustee, the Committee, Warner Bros., and Magnum within fifteen days of opening or closing a bank account.  The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," provided that any new domestic bank account opened by the Debtors shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

14.     All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided*, *however*, that any such bank shall not be found to be in violation of this Final Order nor liable to the Debtors or their estates should any such bank

honor or pay any bank payment (a) in a good-faith belief that the Court has authorized such payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

15.    The Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

16.    The Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtors were responsible for such items prior to the Petition Date.

17.    Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such

prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

18.    Any banks, including the Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

19.    Notwithstanding anything set forth in this Final Order, the Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

20.    Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

21.    Notwithstanding anything to the contrary contain in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "DIP Orders"),

including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

22.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

23.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

24.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

25.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

26.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

27.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

*Thomas M. Horan*

**Dated: April 22nd, 2025**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**