## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | Case No. 25-10475 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: June 3, 2025 at 4:00 p.m. (ET)** |

### DECLARATION OF ERNST & YOUNG LLP
### PURSUANT TO THE ORDER AUTHORIZING THE DEBTORS TO
### EMPLOY PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS

I, Deborah Kim, hereby declare as follows:

1.      I am a Partner of Ernst & Young LLP ("EY LLP"), which has an office located at 725 S. Figueroa Street, Los Angeles, CA 90017.

2.      This Declaration is submitted in accordance with that certain *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 192] (the "OCP Order").

3.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or professionals of EY LLP and EY US LLP (as defined below) or employees of other member firms of EYGL (as defined below) under my supervision and direction.

---

[1]    The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343.  The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

4.      The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), have requested that EY LLP provide the services summarized below to the Debtors, and EY LLP has consented to provide such services.[2]

- Federal and state income tax compliance services; and

- On-call tax advisory services which cover one-off tax questions that arise in the normal course of business.

5.      EY LLP will charge the Debtors a fixed fee of $81,000 for the federal and state income tax compliance services for the tax year ended December 31, 2024.  For the on-call tax advisory services, EY LLP's current customary rates, subject to change from time to time are charged by hourly rates by level of professional, as follows:

| Level | Rate |
|---|---|
| National Partner | $990 |
| Partner/Principal | $900 |
| Managing Director | $800 |
| Senior Manager | $750 |
| Manager | $630 |
| Senior | $500 |
| Staff | $300 |

In the normal course of business, EY LLP revises its regular hourly rates and advises that, effective June of each year, the aforementioned rates will be revised to the regular hourly rates that will be in effect at that time.

6.      EY LLP can record its hourly time in one-tenth-of-an-hour increments for the services listed above, however EY LLP traditionally does not record its time for the services listed

---

[2]    The services that EY LLP intends to provide to the Debtors are set forth in one or more engagement letters (the "Engagement Letters").  The summaries of the services to be rendered by EY LLP and EY LLP's fees for such services are qualified in their entirety by reference to the provisions of the Engagement Letters.  To the extent there is any discrepancy between the summaries contained in this Declaration and the terms of the Engagement Letters, the terms of the Engagement Letters shall control.

above in one-tenth-of-an-hour increments.  Instead, EY LLP traditionally records its time in one-third-of-an-hour increments for the services listed above.

7.     The Ernst & Young global network comprises independent professional services practices conducted by separate legal entities throughout the world.  Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital.  The EYGL member firms have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities.

8.     The particular firm that the Debtors seek to retain in these chapter 11 cases, EY LLP, is a member firm of EYGL in the United States.  EY LLP does not have a parent entity, but rather is 100% owned by its partners.  EY LLP engages in the practice of public accountancy and provides accounting and other professional services.  All partners of EY LLP are Certified Public Accountants ("CPAs").

9.     In addition, Ernst & Young U.S. LLP ("EY US LLP"), the owners of which are EY LLP CPA partners and non-CPA principals, is another member firm of EYGL in the United States. EY US LLP provides infrastructure and support services to EY LLP, including the services of CPA and non-CPA personnel.  In particular, EY LLP uses EY US LLP personnel in providing services to EY LLP's clients.  Such EY US LLP personnel continue to be employed by EY US LLP, but work under EY LLP's supervision in EY LLP engagements.

10.    As part of its customary practice, EY LLP is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

11.     Based on the connections check process that is summarized below, and except as otherwise stated herein, to the best of my knowledge, information and belief, EY LLP (a) does not perform services for any client that relates to the Debtors or these chapter 11 cases, and (b) does not hold or represent an interest adverse to the Debtors or their estates with respect to the matters upon which EY LLP is to be employed.

12.     Debtors' counsel provided a list of names of parties in interest in these cases (the "PIIL") on or about April 11, 2025 to EY LLP.  The specific names that were set forth on the PIIL that EY LLP received from Debtors' counsel are referred to herein as the "Parties in Interest."

13.     EY LLP has access to a computer database (the "Database") that contains information about actual client engagements and potential engagement activity of all of the member firms of EYGL.  The Database also includes the names of other parties that the professionals on the relevant engagement team have identified as also being involved in each engagement (*e.g.*, adverse parties and co-clients).  Thus, the Database allows one to determine whether EY LLP or another EYGL member firm represents a client in a matter that relates to the Debtors or their affiliates.[3]

14.     EY LLP caused the names of the Parties in Interest to be run through the Database and to determine whether EY LLP or another EYGL member firm currently provides services to any client that relate to any Debtor or any non-Debtor affiliates, as set forth in the PIIL.  The disclosure schedule annexed hereto as Exhibit A lists the names of the Parties in Interest and

---

[3]    The information in the Database is populated by the professionals who are providing services under each engagement.  Therefore, the information in the Database may not be 100% correct with respect to all engagements, as human errors may occur.  Furthermore, financial information pertaining to engagement activity is the proprietary and confidential information of each individual EYGL member firm.  EY LLP may not have the right to access, or if accessed, disclose, such information relating to other EYGL member firms.

whether a client engagement has been initiated in the Database during the last three years by EY LLP or any other EYGL member firm.

15.     In the ordinary course of business, certain EYGL member firms ("EY Support Firms") provide various professional, administrative and back office support services for client-facing EYGL member firms throughout the world, as requested, coordinated and directed by such client-facing EYGL member firms (including EY LLP).  An EY Support Firm assisted EY LLP in performing EY LLP's connections check for these chapter 11 cases.  The costs paid by EY LLP to that EY Support Firm for such connections check related services will not be billed to the Debtors.

16.     To the best of my knowledge, information and belief, neither the undersigned nor the professionals expected to assist the Debtors in these matters are connected to the Bankruptcy Judges in this District, the United States Trustee for the region in which these chapter 11 cases are pending, or any person employed in the Office of the United States Trustee in the city in which these chapter 11 cases are pending as identified in the parties in interest list that EY LLP received from Debtors' bankruptcy counsel.

17.     To the extent required by Section 504 of the Bankruptcy Code, except as otherwise set forth herein (*e.g.*, if another EYGL member firm provides services to the Debtors under a subcontracting arrangement with EY LLP), EY LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person, other than the partners, principals and employees of EY LLP and EY US LLP.

18.     The Debtors do not owe EY LLP any money for pre-petition services.  To the extent EY LLP is owed for prepetition services, EY LLP has waived, or will waive, any prepetition claims against the Debtors' estates.

19.    I also understand the limitations in the compensation and reimbursement of expenses under the OCP Order.  Specifically, EY LLP understands that in the event its fees and expenses exceed a total of the $50,000 per month, on average, over a rolling three-month period, EY LLP will be required to file with the Court a fee application for approval of its fees and expenses for such month in accordance with Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, the Local Rules, and any applicable procedures or orders of the Court.

20.    As of the petition date, EY LLP was party to an agreement for indemnification with certain of the Debtors.  A copy of such agreement is attached as Exhibit B to this Declaration.

21.    At any time during the period of its employment before the effective date of a chapter 11 plan in these cases, if EY LLP should discover any facts that require disclosure, EY LLP will file a supplemental declaration with this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  May 20, 2025

*/s/ Deborah Kim*
**Deborah Kim**
Ernst & Young LLP

**Exhibit A**

**Names of Parties in Interest and whether a Client Engagement has been Initiated by EYGL Member Firms During the Last Three Years**

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1 | Debtors | Crescent Film Holdings Limited | X | |
| 2 | Debtors | Village Roadshow Distribution (BVI) Limited | X | |
| 3 | Debtors | Village Roadshow Distribution Pty Ltd | X | |
| 4 | Debtors | Village Roadshow Distribution UK Limited | X | |
| 5 | Debtors | Village Roadshow Distribution USA Inc. | X | |
| 6 | Debtors | Village Roadshow Entertainment Group (BVI) Limited | X | |
| 7 | Debtors | Village Roadshow Entertainment Group Asia Limited | X | |
| 8 | Debtors | Village Roadshow Entertainment Group USA Inc. | X | |
| 9 | Debtors | Village Roadshow Film Administration Management Pty Ltd | X | |
| 10 | Debtors | Village Roadshow Films (BVI) Limited | X | |
| 11 | Debtors | Village Roadshow Films Global Inc. | X | |
| 12 | Debtors | Village Roadshow Films North America Inc. | X | |
| 13 | Debtors | Village Roadshow Holdings USA Inc. | X | |
| 14 | Debtors | Village Roadshow Pictures Entertainment Inc. | X | |
| 15 | Debtors | Village Roadshow Pictures North America Inc. | X | |
| 16 | Debtors | Village Roadshow Productions (BVI) Ltd | X | |
| 17 | Debtors | Village Roadshow Productions Inc. | X | |
| 18 | Debtors | Village Roadshow VS Films LLC | X | |
| 19 | Debtors | VR DTE Distribution USA Inc. | X | |
| 20 | Debtors | VR DTE Productions Limited | X | |
| 21 | Debtors | VR Films Holdings (BVI) Limited | X | |
| 22 | Debtors | VR Funding LLC | X | |
| 23 | Debtors | VR Zoo Distribution USA Inc. | X | |
| 24 | Debtors | VR Zoo Productions Ltd | X | |
| 25 | Debtors | VREG Films Ltd | X | |
| 26 | Debtors | VREG Funding LLC | X | |
| 27 | Debtors | VREG IP Global LLC | X | |
| 28 | Debtors | VREG J2 Global LLC | X | |
| 29 | Debtors | VREG MM2 IP Global LLC | X | |
| 30 | Debtors | VREG OP Global LLC | X | |
| 31 | Debtors | VREG Production Services Inc. | X | |
| 32 | Debtors | VREG Television Inc. | X | |
| 33 | Debtors | VREG Wonka IP Global LLC | X | |
| 34 | Debtors | VREG WW IP Global LLC | X | |
| 35 | Non-Debtor Affiliates | DTE Film Partners LP | X | |
| 36 | Non-Debtor Affiliates | DTE Films LLC | X | |
| 37 | Non-Debtor Affiliates | Humanoids Holding | X | |
| 38 | Non-Debtor Affiliates | Zoo Film Partners L.P. | X | |
| 39 | Non-Debtor Affiliates | Zoo Films LLC | X | |
| 40 | Directors and Officers | Adam Rhodes | | X |
| 41 | Directors and Officers | Carlos Andres Abadi | | X |
| 42 | Directors and Officers | Christina Norman | | X |
| 43 | Directors and Officers | Edward Truitt | | X |
| 44 | Directors and Officers | Harvey Tepner | | X |
| 45 | Directors and Officers | James Patrick Moore | | X |
| 46 | Directors and Officers | Kevin Berg | | X |
| 47 | Directors and Officers | Lee Sienna | | X |
| 48 | Directors and Officers | Louis Santor | | X |
| 49 | Directors and Officers | Matthew White | | X |
| 50 | Directors and Officers | Nicholas Messum | | X |
| 51 | Directors and Officers | Peter Nankivell | | X |
| 52 | Directors and Officers | Ruth Bradley | | X |
| 53 | Directors and Officers | Ted Francis | | X |
| 54 | Professionals | Accordion Partners, LLC | | X |
| 55 | Professionals | Barnes & Thornburg LLP | X | |
| 56 | Professionals | Goldman Sachs | X | |
| 57 | Professionals | Kirkland & Ellis LLP | X | |
| 58 | Professionals | Kurtzman Carson Consultants, LLC dba Verita Global | | X |
| 59 | Professionals | Latham & Watkins LLP | X | |
| 60 | Professionals | Maples & Calder LLP | X | |
| 61 | Professionals | Milbank LLP | X | |
| 62 | Professionals | Morrison & Foerster LLP | X | |
| 63 | Professionals | O'Melveny & Myers LLP | X | |
| 64 | Professionals | Paul Hastings LLP | X | |
| 65 | Professionals | Seward & Kissell LLP | | X |
| 66 | Professionals | Sheppard, Mullin, Richter & Hampton LLP | X | |
| 67 | Professionals | Solic Capital Advisors, LLC | | X |
| 68 | Professionals | Thomson Geer | X | |
| 69 | Professionals | Virtu Global Advisors, LLC | | X |
| 70 | Professionals | Young Conaway Stargatt & Taylor, LLP | | X |
| 71 | Banks | Australia and New Zealand Banking Group Limited | X | |
| 72 | Banks | City National Bank | X | |
| 73 | Consultants | Amelia Belle | | X |
| 74 | Consultants | Brian Gilbert | | X |
| 75 | Consultants | Debra Manwiller | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 76 | Consultants | Frank N. Magid Associates, Inc. | | X |
| 77 | Consultants | Oliver Brack | | X |
| 78 | Consultants | Todd Berger | | X |
| 79 | Contract Counterparties | 78 Home, Inc. f/s/o John Stuart Newman | | X |
| 80 | Contract Counterparties | Aaron Priest Literary Agency | | X |
| 81 | Contract Counterparties | Aftershock Comics, LLC | | X |
| 82 | Contract Counterparties | Agberg Ltd. | | X |
| 83 | Contract Counterparties | An MLR Original, Inc. f/s/o Marja-Lewis Ryan | | X |
| 84 | Contract Counterparties | Barrett Brothers Entertainment LLC f/s/o Jack Barrett and Max Barrett | | X |
| 85 | Contract Counterparties | Barstool Sports, Inc. | | X |
| 86 | Contract Counterparties | Bento Rights, LLC | | X |
| 87 | Contract Counterparties | Blackbird Films f/s/o Adam Small | | X |
| 88 | Contract Counterparties | BPM Associates, LLC f/s/o Michael Scott McAda | | X |
| 89 | Contract Counterparties | Bruce Schoenfeld | | X |
| 90 | Contract Counterparties | Bruce Schoenfeld, Individually | | X |
| 91 | Contract Counterparties | Chris Cullari | | X |
| 92 | Contract Counterparties | CHRIS CULLARI and JENNIFER RAITE | | X |
| 93 | Contract Counterparties | Circle of Confusion | | X |
| 94 | Contract Counterparties | CJ ENM Co., Ltd. | X | |
| 95 | Contract Counterparties | Clark & Palattella, LLC | | X |
| 96 | Contract Counterparties | Clark Palattella, PLLC | | X |
| 97 | Contract Counterparties | Columbus Rose Ltd f/s/o David Baldacci | | X |
| 98 | Contract Counterparties | Darkling Entertainment Inc. f/s/o Matthew Arnold and Travis Rooks | | X |
| 99 | Contract Counterparties | David Grossman | | X |
| 100 | Contract Counterparties | David Hollander | | X |
| 101 | Contract Counterparties | December Films Inc. | | X |
| 102 | Contract Counterparties | Derek Sanderson | | X |
| 103 | Contract Counterparties | Elaine Murphy | X | |
| 104 | Contract Counterparties | Elkins Law, P.C. | | X |
| 105 | Contract Counterparties | EuropaCorp | X | |
| 106 | Contract Counterparties | Everheart Productions, Inc. | | X |
| 107 | Contract Counterparties | Fourward, Inc. f/s/o Jonathan Levin | | X |
| 108 | Contract Counterparties | Gochman Law Group, PC | | X |
| 109 | Contract Counterparties | Grand Central Publishing | | X |
| 110 | Contract Counterparties | Hansen, Jacobson, Teller, Hoberman, Newman, Warren, Richman, Rush, Kaller, Gellman, Meigs & Fox, LLC | | X |
| 111 | Contract Counterparties | Harold Sipe | | X |
| 112 | Contract Counterparties | Hart Properties, Inc. | | X |
| 113 | Contract Counterparties | Hector Casanova | | X |
| 114 | Contract Counterparties | HG Literary | | X |
| 115 | Contract Counterparties | Hub Australia Pty Ltd | | X |
| 116 | Contract Counterparties | Iliza Shlesinger | | X |
| 117 | Contract Counterparties | Ink Fish Ltd. | | X |
| 118 | Contract Counterparties | J.T. Petty | | X |
| 119 | Contract Counterparties | Jacob V. Hart | | X |
| 120 | Contract Counterparties | James V. Hart | | X |
| 121 | Contract Counterparties | Jane Gilmartin | | X |
| 122 | Contract Counterparties | Janklow & Nesbit Associates | | X |
| 123 | Contract Counterparties | Jason Kaleko | | X |
| 124 | Contract Counterparties | Jennifer Raite | | X |
| 125 | Contract Counterparties | Jerome Loving | | X |
| 126 | Contract Counterparties | Joel Golby | | X |
| 127 | Contract Counterparties | Jonathan Levin | | X |
| 128 | Contract Counterparties | Jose Nateras | | X |
| 129 | Contract Counterparties | Julie B. Dixon f/k/a Julie Strasser or J.B. Strasser | | X |
| 130 | Contract Counterparties | Kalista Sy | | X |
| 131 | Contract Counterparties | Katzner Pictures, Inc. f/s/o Oren Moverman | | X |
| 132 | Contract Counterparties | Kendall Milton | | X |
| 133 | Contract Counterparties | Kevin Kelly | | X |
| 134 | Contract Counterparties | Kleinberg Lange Cuddy & Carlo LLP | | X |
| 135 | Contract Counterparties | Kubier Entertainment, Inc. | | X |
| 136 | Contract Counterparties | Lana Harper | | X |
| 137 | Contract Counterparties | Lauren Billings Luhrs and Christina Venstra p/k/a Christina Hobbs | | X |
| 138 | Contract Counterparties | Light Work Content, Inc. f/s/o Eric Amadio | | X |
| 139 | Contract Counterparties | Lily Drew Detweiler | | X |
| 140 | Contract Counterparties | Lindsay Harbert | | X |
| 141 | Contract Counterparties | LSE International IV, LLC | | X |
| 142 | Contract Counterparties | Macrosoft Media Ltd. | | X |
| 143 | Contract Counterparties | Magid | | X |
| 144 | Contract Counterparties | Majordomo Media f/s/o Dave Chang, Chris Ying, and Chris Chen | | X |
| 145 | Contract Counterparties | Mark Neveldine and Royal Street Holdings, Inc. f/s/o Jamil Stefan | | X |
| 146 | Contract Counterparties | Mati Diop | | X |
| 147 | Contract Counterparties | McKuin Frankel Whitehead LLP | | X |
| 148 | Contract Counterparties | Mediabrat Productions, Inc. f/s/o Will Pascoe | | X |
| 149 | Contract Counterparties | Mike Freeman | | X |

Results of Connections Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 150 | Contract Counterparties | Minor Demons, Inc. f/s/o Michael Dougherty | | X |
| 151 | Contract Counterparties | Missing Linc Corporation | | X |
| 152 | Contract Counterparties | Mr. Jason Kaleko | | X |
| 153 | Contract Counterparties | Mukoma Wa Ngugi | | X |
| 154 | Contract Counterparties | Murray Weiss and Bill Hoffmann | | X |
| 155 | Contract Counterparties | Myman Greenspan | | X |
| 156 | Contract Counterparties | Nicholas Adams | | X |
| 157 | Contract Counterparties | Nick Foster | | X |
| 158 | Contract Counterparties | Patrick Cunnane | | X |
| 159 | Contract Counterparties | Paul Hastings LLP | X | |
| 160 | Contract Counterparties | PCG | X | |
| 161 | Contract Counterparties | Pedialaw LLC f/s/o JT Hunster | | X |
| 162 | Contract Counterparties | Penguin Random House LLC | X | |
| 163 | Contract Counterparties | Peter Sample | | X |
| 164 | Contract Counterparties | Peter Seymour | | X |
| 165 | Contract Counterparties | Pius Ailemen | | X |
| 166 | Contract Counterparties | Pocono Pictures, a California Corporation f/s/o Robert Nelson Jacobs, Charlie Jacobs, and Alexander Jacobs | | X |
| 167 | Contract Counterparties | Principle Communications Group LLC | | X |
| 168 | Contract Counterparties | Raj Balu | | X |
| 169 | Contract Counterparties | Renato Baccaro and Daniel Baccaro | | X |
| 170 | Contract Counterparties | Richard Edlund Films, Inc. | | X |
| 171 | Contract Counterparties | Richard Edlund Films, Inc. f/s/o Richard Edlund | | X |
| 172 | Contract Counterparties | Rob Hart | | X |
| 173 | Contract Counterparties | Robert Silverberg | | X |
| 174 | Contract Counterparties | Rolling Stone LLC | | X |
| 175 | Contract Counterparties | Rolling Stone LLC f/s/o Any Employees Acting on Behalf of Owner | | X |
| 176 | Contract Counterparties | Roman Lupi | | X |
| 177 | Contract Counterparties | Sadamantium, Inc. f/s/o Mike Lawrence | | X |
| 178 | Contract Counterparties | Sammy Mo, Inc. f/s/o Sam Morril | | X |
| 179 | Contract Counterparties | SawSee Films, Inc. f/s/o Fax Bahr | | X |
| 180 | Contract Counterparties | Say When Productions f/s/o Allie Romano | | X |
| 181 | Contract Counterparties | Sean Cook | | X |
| 182 | Contract Counterparties | Serendipity Point Films Inc. | | X |
| 183 | Contract Counterparties | Seven Seas Films Limited | | X |
| 184 | Contract Counterparties | Signpost Up Ahead, Inc. f/s/o Jill Blotevogel | | X |
| 185 | Contract Counterparties | Skylight Films, LLC f/s/o Kassandra Clementi and Jacqueline Toboni | | X |
| 186 | Contract Counterparties | Sloss Eckhouse Dasti Haynes LawCo LLP | | X |
| 187 | Contract Counterparties | Sony Pictures Television Inc. (SPT) | X | |
| 188 | Contract Counterparties | Stately Plump Buck Mulligan, LLC f/s/o Neil Strauss | | X |
| 189 | Contract Counterparties | Stefanie Williams | | X |
| 190 | Contract Counterparties | Story Paradox Corporation f/s/o Rob Hart | | X |
| 191 | Contract Counterparties | Texas Monthly LLC | | X |
| 192 | Contract Counterparties | The Law Office of Renee Farrell | | X |
| 193 | Contract Counterparties | The Wicker Room | | X |
| 194 | Contract Counterparties | The Wicker Room, Inc. f/s/o Chris McCoy | | X |
| 195 | Contract Counterparties | Three River Entertainment, Inc. | | X |
| 196 | Contract Counterparties | Travis Klune (aka T.J. Klune) | | X |
| 197 | Contract Counterparties | United Talent Agency | | X |
| 198 | Contract Counterparties | Upper Press, LLC | | X |
| 199 | Contract Counterparties | Vine Entertainment International Corp. | | X |
| 200 | Contract Counterparties | Vine Entertainment LP | | X |
| 201 | Contract Counterparties | Vine Eton Library Company LP | | X |
| 202 | Contract Counterparties | Vine Gaylord Company LP | | X |
| 203 | Contract Counterparties | Vine LSE International IV, LLC | | X |
| 204 | Contract Counterparties | Vine LSE IV, LP | | X |
| 205 | Contract Counterparties | Vine Manchester Library Company LP | | X |
| 206 | Contract Counterparties | Vine Rysher Company LP | | X |
| 207 | Contract Counterparties | VMAC Productions, Inc. f/s/o Vanessa McCarthy | | X |
| 208 | Contract Counterparties | Westside Stories LLC d/b/a Rebelle Media | | X |
| 209 | Contract Counterparties | Xerox Financial Services LLC | X | |
| 210 | Contract Counterparties | Yo Productions, LLC | | X |
| 211 | Employees (Current) | Dilani Chandrahasan | | X |
| 212 | Employees (Current) | Glenn Taylor | | X |
| 213 | Employees (Current) | Jesse Spike | | X |
| 214 | Employees (Current) | Joy Taylor, Manager, Treasury & Cash Management | | X |
| 215 | Employees (Current) | Kevin Berg, General Counsel | | X |
| 216 | Employees (Current) | Lauren Shaw | | X |
| 217 | Employees (Current) | Louis Santor, COO | | X |
| 218 | Employees (Current) | Marsha Setiono | | X |
| 219 | Employees (Current) | Rosemarie Spadavecchia, Executive Assistant | | X |
| 220 | Employees (Current) | Teronna Taylor, Senior Vice President, Human Resources | | X |
| 221 | Employees (Current) | Veronica Gruba | | X |
| 222 | Employees (Former) | Alice Shoshana Highman | | X |
| 223 | Employees (Former) | Alix Jaffe | | X |

Results of Connections Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 224 | Employees (Former) | Ameer Wafer | | X |
| 225 | Employees (Former) | Amelia Amy Belle Silbert-Geiger | | X |
| 226 | Employees (Former) | Anne H MacKay | | X |
| 227 | Employees (Former) | Ara Joseph Rice | | X |
| 228 | Employees (Former) | Arianna G. Johnson | | X |
| 229 | Employees (Former) | Asha Norman-Hunt | | X |
| 230 | Employees (Former) | Brianna Hennessey | | X |
| 231 | Employees (Former) | Bryan R Greenwood | | X |
| 232 | Employees (Former) | Caitlyn McHugh | | X |
| 233 | Employees (Former) | Charlene M Feliciano | | X |
| 234 | Employees (Former) | Chase Evans | | X |
| 235 | Employees (Former) | Chloe Rose Sesar | | X |
| 236 | Employees (Former) | Christina C. Steele | | X |
| 237 | Employees (Former) | Christine L Ricardo | | X |
| 238 | Employees (Former) | Cory Lanier | | X |
| 239 | Employees (Former) | Dante Bailey | | X |
| 240 | Employees (Former) | Daron D Jackson | | X |
| 241 | Employees (Former) | Dylan Kane | | X |
| 242 | Employees (Former) | Eamon Frank Anthony Schiro | | X |
| 243 | Employees (Former) | Elizabeth Gale Cuzzupoli | | X |
| 244 | Employees (Former) | Ethan Obergfoll | | X |
| 245 | Employees (Former) | Gabrielle A Scurlark | | X |
| 246 | Employees (Former) | Gavin J Citron | | X |
| 247 | Employees (Former) | Isabella Salma Samman | | X |
| 248 | Employees (Former) | Jackson G Gibbon | | X |
| 249 | Employees (Former) | Jacob Bradley | | X |
| 250 | Employees (Former) | Jake Jashni | | X |
| 251 | Employees (Former) | Jake L Robbins | | X |
| 252 | Employees (Former) | Jason K Buckley | | X |
| 253 | Employees (Former) | Jeffrey M Pendo | | X |
| 254 | Employees (Former) | Jesse J Paul | | X |
| 255 | Employees (Former) | Jillian A Apfelbaum | | X |
| 256 | Employees (Former) | Jordan Leigh Sharkey | | X |
| 257 | Employees (Former) | Kelso Meeks | | X |
| 258 | Employees (Former) | Keyon E Tehrani | | X |
| 259 | Employees (Former) | Laura Elizabeth Lynch Marchione | | X |
| 260 | Employees (Former) | Macy Muxlow | | X |
| 261 | Employees (Former) | Marley L Abbott | | X |
| 262 | Employees (Former) | Michael J Lechner | | X |
| 263 | Employees (Former) | Michael J Linowes | | X |
| 264 | Employees (Former) | Murphy Stack | | X |
| 265 | Employees (Former) | Nicolas J Gordon | | X |
| 266 | Employees (Former) | Peter H Schlessel | | X |
| 267 | Employees (Former) | Robert Corzo | | X |
| 268 | Employees (Former) | Roland Feliciano | | X |
| 269 | Employees (Former) | Shan Howerton | | X |
| 270 | Employees (Former) | Shannon Hawes Perry | | X |
| 271 | Employees (Former) | Stephen M Mosko | | X |
| 272 | Employees (Former) | Tristen A Tuckfield | | X |
| 273 | Employees (Former) | Zola Anisceta Franchi | | X |
| 274 | Guilds | Directors Guild of America | | X |
| 275 | Guilds | Motion Picture Association, Inc. | X | |
| 276 | Guilds | SAG-AFTRA | | X |
| 277 | Guilds | Writers Guild of America | | X |
| 278 | Guilds | Writers Guild of America, East, Inc. | | X |
| 279 | Guilds | Writers Guild of America, West, Inc. | | X |
| 280 | Insurance Carriers | Accredited Insurance (Europe) Limited | X | |
| 281 | Insurance Carriers | ACE American Insurance Company | X | |
| 282 | Insurance Carriers | Alliant Insurance Services, Inc. | X | |
| 283 | Insurance Carriers | Arch Specialty Insurance Company | | X |
| 284 | Insurance Carriers | Arthur J. Gallagher Risk Management Services LLC | X | |
| 285 | Insurance Carriers | Ascot Specialty Insurance Company | X | |
| 286 | Insurance Carriers | Atlantic Specialty Insurance Company | | X |
| 287 | Insurance Carriers | AXA XL - Professional Insurance | X | |
| 288 | Insurance Carriers | Berkshire Hathaway Specialty Insurance | X | |
| 289 | Insurance Carriers | Chubb Group of Insurance Companies | X | |
| 290 | Insurance Carriers | Chubb International Advantage | | X |
| 291 | Insurance Carriers | Coalition Insurance Solutions, Inc. (CRC Insurance Services, Inc.) | | X |
| 292 | Insurance Carriers | Coalition, Inc. | X | |
| 293 | Insurance Carriers | Convex North American Insurance Services, Inc. | X | |
| 294 | Insurance Carriers | Federal Insurance Company | | X |
| 295 | Insurance Carriers | Firemans Fund Indemnity Corporation | | X |
| 296 | Insurance Carriers | Fortegra Specialty Insurance Company | | X |
| 297 | Insurance Carriers | Howden | X | |
| 298 | Insurance Carriers | Intact Insurance Entertainment | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 299 | Insurance Carriers | Intact Insurance Group USA LLC | X | |
| 300 | Insurance Carriers | Intact Specialty Entertainment | | X |
| 301 | Insurance Carriers | Lloyds | X | |
| 302 | Insurance Carriers | Lloyds Syndicate (Rising Edge Ltd) | | X |
| 303 | Insurance Carriers | National Fire & Marine Insurance Company | X | |
| 304 | Insurance Carriers | OBI National Insurance Company | | X |
| 305 | Insurance Carriers | QBE Insurance Corporation | X | |
| 306 | Insurance Carriers | Rising Edge Ltd | | X |
| 307 | Insurance Carriers | Risk Placement Services, Ins. | | X |
| 308 | Insurance Carriers | Underwriters at Lloyds, London | | X |
| 309 | Insurance Carriers | Victor Insurance Exchange | | X |
| 310 | Insurance Carriers | XL Professional Insurance | | X |
| 311 | Insurance Carriers | XL Specialty Insurance Company | X | |
| 312 | Lienholders | Columbia Pictures Industries, Inc. | X | |
| 313 | Lienholders | Cooperatieve Rabobank U.A. | X | |
| 314 | Lienholders | Cortland Capital Market Services LLC | X | |
| 315 | Lienholders | JPMorgan Chase Bank, N.A. | X | |
| 316 | Lienholders | Loompala Pictures, LLC | | X |
| 317 | Lienholders | Magnum Films SPC | | X |
| 318 | Lienholders | U.S. Bank National Association | X | |
| 319 | Lienholders | Wilmington Savings Fund Society, FSB | X | |
| 320 | Litigation Counterparties | Warner Bros. Entertainment Inc. | X | |
| 321 | Litigation Counterparties | Warner Bros. Production Limited | X | |
| 322 | Litigation Counterparties | WAV Distribution LLC | | X |
| 323 | Miscellaneous | A. N. Pane | | X |
| 324 | Miscellaneous | Abso Lutely Productions, Inc. f/s/o Tim Heidecker, Eric Wareheim, Dave Kneebone | | X |
| 325 | Miscellaneous | Alternate Side Productions, LLC f/s/o Jerry Angelo Brooks (a.k.a. JB Smoove) | | X |
| 326 | Miscellaneous | Chris Case DBA Dixon Cox Productions Inc | | X |
| 327 | Miscellaneous | Content Cartel, LLC f/s/o Kevin Garnett, Murithi "Mike" Marangu, and Any Other Employees of ProdCo | | X |
| 328 | Miscellaneous | Dixon Cox Production f/s/o Christopher Case | | X |
| 329 | Miscellaneous | EP Abso LLC f/s/o Time Heidecker, Eric Wareheim, Dave Kneebone | | X |
| 330 | Miscellaneous | Gursey Schneider LLP | | X |
| 331 | Miscellaneous | Happy Madison TV, Inc. f/s/o Adam Sandler, Matthew Mosko, and Any Other Employees of ProdCo | | X |
| 332 | Miscellaneous | McGuffin Entertainment Media Inc. f/s/o Paul Bernard, James Scura, and Any Other Employees | | X |
| 333 | Miscellaneous | Moonshot Entertainment, Inc. f/s/o Bryan Cranston, James Degus and Any Other Employees, or Independent Contractors Acting on Behalf of ProdCo | | X |
| 334 | Miscellaneous | Roger Pliakas, Esq. | | X |
| 335 | Miscellaneous | Three River Entertainment, Inc. f/s/o David Hollander | | X |
| 336 | Potential Purchasers | Alcon Entertainment | | X |
| 337 | Potential Purchasers | Content Partners, LLC | | X |
| 338 | Potential Purchasers | CP Ventura LLC | | X |
| 339 | Potential Purchasers | Easttree Media Limited | X | |
| 340 | Studios | Amazon MGM Studios | | X |
| 341 | Studios | Netflix, Inc. | X | |
| 342 | Studios | New Regency Entertainment | | X |
| 343 | Studios | Paramount Pictures Corporation | X | |
| 344 | Studios | Sony Pictures Entertainment Inc. | X | |
| 345 | Studios | Universal Pictures | X | |
| 346 | Studios | Walt Disney Studios | | X |
| 347 | Studios | Warner Bros. Entertainment Inc. | X | |
| 348 | Taxing Authorities | Australian Taxation Office | X | |
| 349 | Taxing Authorities | British Virgin Islands Financial Services Commission | | X |
| 350 | Taxing Authorities | British Virgin Islands Inland Revenue Department | | X |
| 351 | Taxing Authorities | California Department of Tax and Fee Administration | | X |
| 352 | Taxing Authorities | California Franchise Tax Board | | X |
| 353 | Taxing Authorities | California State Board of Equalization | | X |
| 354 | Taxing Authorities | Delaware Division of Revenue | | X |
| 355 | Taxing Authorities | HM Revenue and Customs | X | |
| 356 | Taxing Authorities | Internal Revenue Service | X | |
| 357 | Taxing Authorities | Los Angeles County Tax Collector | | X |
| 358 | Taxing Authorities | Los Angeles Office of Finance | | X |
| 359 | United States Trustee and Court Contacts | Attix, Lauren | | X |
| 360 | United States Trustee and Court Contacts | Barksdale, Nickita | | X |
| 361 | United States Trustee and Court Contacts | Bates, Malcolm M. | | X |
| 362 | United States Trustee and Court Contacts | Batts, Cacia | | X |
| 363 | United States Trustee and Court Contacts | Bello, Rachel | | X |
| 364 | United States Trustee and Court Contacts | Brady, Claire | | X |
| 365 | United States Trustee and Court Contacts | Capp, Laurie | | X |
| 366 | United States Trustee and Court Contacts | Casey, Linda | | X |
| 367 | United States Trustee and Court Contacts | Cudia, Joseph | | X |
| 368 | United States Trustee and Court Contacts | Dice, Holly | | X |
| 369 | United States Trustee and Court Contacts | Dorsey, John T. | | X |
| 370 | United States Trustee and Court Contacts | Dortch, Shakima L | | X |
| 371 | United States Trustee and Court Contacts | Fox, Timothy J., Jr | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 372 | United States Trustee and Court Contacts | Gadson, Danielle | | X |
| 373 | United States Trustee and Court Contacts | Giordano, Diane | | X |
| 374 | United States Trustee and Court Contacts | Girello, Michael | | X |
| 375 | United States Trustee and Court Contacts | Goldblatt, Craig T | | X |
| 376 | United States Trustee and Court Contacts | Green, Christine | | X |
| 377 | United States Trustee and Court Contacts | Hackman, Benjamin | | X |
| 378 | United States Trustee and Court Contacts | Haney, Laura | | X |
| 379 | United States Trustee and Court Contacts | Horan, Thomas M. | | X |
| 380 | United States Trustee and Court Contacts | Hrycak, Amanda | | X |
| 381 | United States Trustee and Court Contacts | Hurt, Xavier | | X |
| 382 | United States Trustee and Court Contacts | Johnson, Lora | | X |
| 383 | United States Trustee and Court Contacts | Jones, Nyanquoi | | X |
| 384 | United States Trustee and Court Contacts | Konde, Hawa | | X |
| 385 | United States Trustee and Court Contacts | Leamy, Jane | | X |
| 386 | United States Trustee and Court Contacts | Lipshie, Jonathan | | X |
| 387 | United States Trustee and Court Contacts | Lopez, Marquietta | | X |
| 388 | United States Trustee and Court Contacts | Lugano, Al | | X |
| 389 | United States Trustee and Court Contacts | McCollum, Hannah M. | | X |
| 390 | United States Trustee and Court Contacts | McMahon, Joseph | | X |
| 391 | United States Trustee and Court Contacts | Nyaku, Jonathan | | X |
| 392 | United States Trustee and Court Contacts | O'Boyle, Una | | X |
| 393 | United States Trustee and Court Contacts | O'Malley, James R. | | X |
| 394 | United States Trustee and Court Contacts | Owens, Karen B. | | X |
| 395 | United States Trustee and Court Contacts | Richenderfer, Linda | | X |
| 396 | United States Trustee and Court Contacts | Schepacarter, Richard | | X |
| 397 | United States Trustee and Court Contacts | Selber Silberstein, Laurie | | X |
| 398 | United States Trustee and Court Contacts | Serrano, Edith A. | | X |
| 399 | United States Trustee and Court Contacts | Shannon, Brendan L. | | X |
| 400 | United States Trustee and Court Contacts | Sierra-Fox, Rosa | | X |
| 401 | United States Trustee and Court Contacts | Stickles, J. Kate | | X |
| 402 | United States Trustee and Court Contacts | Subda, Paula | | X |
| 403 | United States Trustee and Court Contacts | Thomas, Elizabeth | | X |
| 404 | United States Trustee and Court Contacts | Walker, Jill | | X |
| 405 | United States Trustee and Court Contacts | Walrath, Mary F. | | X |
| 406 | United States Trustee and Court Contacts | Washington, Nikki | | X |
| 407 | United States Trustee and Court Contacts | Wynn, Dion | | X |
| 408 | United States Trustee and Court Contacts | Yeager, Demitra | | X |
| 409 | Utility Providers | AT&T MOBILITY | | X |
| 410 | Utility Providers | Cogent Communications, Inc. | X | |
| 411 | Utility Providers | Cogent Communications, LLC | X | |
| 412 | Utility Providers | DivergeIT | | X |
| 413 | Utility Providers | Mitel | X | |
| 414 | Utility Providers | Mitel Cloud Services, Inc. | | X |
| 415 | Utility Providers | Mitel Deutschland GmbH | X | |
| 416 | Utility Providers | Mitel France SAS | X | |
| 417 | Utility Providers | Mitel Networks Limited | X | |
| 418 | Utility Providers | RingCentral Inc. | X | |
| 419 | Vendors | Active Wellness | | X |
| 420 | Vendors | American Express | X | |
| 421 | Vendors | Ansarada | | X |
| 422 | Vendors | Christopher W. Taylor | | X |
| 423 | Vendors | CT Corporation | X | |
| 424 | Vendors | Dropbox Inc. | X | |
| 425 | Vendors | Eisner LLP | | X |
| 426 | Vendors | Excel | X | |
| 427 | Vendors | Federal Express | X | |
| 428 | Vendors | GoDaddy Operating Company, LLC | | X |
| 429 | Vendors | Green Hasson & Janks LLP (GHJ) | | X |
| 430 | Vendors | Harneys Corporate Services Limited | X | |
| 431 | Vendors | Iron Mountain | X | |
| 432 | Vendors | LoopUp | | X |
| 433 | Vendors | Magnolia Picures LLC | | X |
| 434 | Vendors | Marlin Lease Corporation | | X |
| 435 | Vendors | Mickey Hargitay Plants | | X |
| 436 | Vendors | Motion Picture Association, Inc. | X | |
| 437 | Vendors | PWGA Pension Fund | | X |
| 438 | Vendors | Sparkletts | | X |
| 439 | Vendors | Studio System | | X |
| 440 | Vendors | Vistra (BVI) Limited | | X |
| 441 | Vendors | WGA Health Fund Contribtuion | | X |
| 442 | Lessors | 10100 Santa Monica, Inc. | | X |
| 443 | Lessors | Allen Matkins Leck Gamble Mallory & Natsis LLP | | X |
| 444 | Lessors | Xerox Financial Services LLC | X | |
| 445 | Equity Holders | 1397225 Ontario Limited | | X |
| 446 | Equity Holders | Falcon Strategic Partners IV LP | | X |

Results of Connections Check

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 447 | Equity Holders | Village Roadshow Limited | X | |
| 448 | Equity Holders | Village Roadshow Pictures International Pty Ltd | | X |
| 449 | Equity Holders | Vine Media Opportunities - Fund III, LP | | X |
| 450 | Equity Holders | Vine Media Opportunities - Fund III-A, LP | | X |
| 451 | Equity Holders | Vine Media Opportunities - Fund III-B, LP | | X |
| 452 | Equity Holders | Vine Westcon SPV, LP | | X |

**Exhibit B**

**Indemnification Agreement in Effect as of the Petition Date**



**EY**

Building a better
working world

Village Roadshow Entertainment Group USA Inc.                    August 30, 2021
Attention: Robert Corzo, CFO
10100 Santa Monica Blvd, Suite 200,
Los Angeles, CA  90067

Dear Robert:

Thank you for choosing Ernst & Young LLP ("we" or "EY") to perform professional services (the "Services") for Village Roadshow Entertainment Group USA Inc. ("you" or "Client"). We appreciate the opportunity to assist you and look forward to working with you.

For each project that we agree to undertake for you, we will prepare a Statement of Work describing the particular Services, as well as any advice, presentations, or filings to be made, our fees therefor, and any other project-specific arrangements. All of the Services will be subject to the terms and conditions of this letter, its attachments, including the General Terms and Conditions, and the applicable Statement of Work (together, this "Agreement"). Except for a claim seeking solely injunctive relief, any dispute or claim arising out of or relating to this Agreement, the Services or any other services provided by us or on our behalf to you shall be resolved by mediation and arbitration as set forth in this Agreement.

We may enter into Statements of Work with you for a period of five years following the date of this letter, although we may agree with you to extend that period, including by executing additional Statements of Work referencing this Agreement.

Please sign this letter in the space provided below to indicate your agreement with these arrangements and return it to Debbie Kim at your earliest convenience. If you have any questions about any of these materials, please do not hesitate to contact us so that we can address any issues you identify before we begin to provide any Services.

Very truly yours,

*Ernst & Young LLP*

AGREED:

Village Roadshow Entertainment Group USA Inc.

By: _____
       Robert Corzo, CFO

Date: _____9-1-2021_____

EY LLP Main Agreement 022521
Village Roadshow Entertainment Group USA Inc.
Contract ID: 373045
Page 1 of 8
A member firm of Ernst & Young Global Limited



**EY**

Building a better
working world

# General Terms and Conditions

**Our relationship with you**

1.  We will perform the Services in accordance with applicable professional standards, including those established by the American Institute of Certified Public Accountants ("**AICPA**").

2.  We are a member of the global network of Ernst & Young firms ("**EY Firms**"), each of which is a separate legal entity.

3.  We will provide the Services to you as an independent contractor and not as your employee, agent, partner or joint venturer. Neither you nor we have any right, power or authority to bind the other.

4.  We may subcontract portions of the Services to other EY Firms, who may deal with you directly. Nevertheless, we alone will be responsible to you for the Reports (as defined in Section 11), the performance of the Services, and our other obligations under this Agreement. From time to time, non-CPA personnel may perform the Services.

5.  We will not assume any of your management responsibilities in connection with the Services. We will not be responsible for the use or implementation of the output of the Services, although we may otherwise provide advice and recommendations to assist you in your management functions and making decisions.

**Your responsibilities**

6.  You shall assign a qualified person to oversee the Services. You are responsible for all management decisions relating to the Services, the use or implementation of the output of the Services and for determining whether the Services are appropriate for your purposes.

7.  You shall provide (or cause others to provide) to us, promptly, the information, resources and assistance (including access to records, systems, premises and people) that we reasonably require to perform the Services.

8.  To the best of your knowledge, all information provided by you or on your behalf ("**Client Information**") will be accurate and complete in all material respects. The provision of Client Information to us will not infringe any copyright or other third-party rights.

9.  We will rely on Client Information made available to us and, unless we expressly agree otherwise, will have no responsibility to evaluate or verify it.

10. You shall be responsible for your personnel's compliance with your obligations under this Agreement.

**Our Reports**

11. Any information, advice, recommendations or other content of any reports, presentations or other communications we provide under this Agreement ("**Reports**"), other than Client Information, are for your internal use only (consistent with the purpose of the particular Services).

12. You may not disclose a Report (or any portion or summary of a Report) externally (including to your affiliates) or refer to us or to any other EY Firm in connection with the Services, except:

    (a) to your lawyers (subject to these disclosure restrictions), who may review it only to give you advice relating to the Services,

    (b) to the extent, and for the purposes, required by subpoena or similar legal process (of which you will promptly notify us),

    (c) to other persons (including your affiliates) with our prior written consent, who have executed an access letter substantially in the form we prescribe, or

    (d) to the extent it contains Tax Advice, as set forth in Section 13.

    If you are permitted to disclose a Report (or a portion thereof) externally, you shall not alter, edit or modify it from the form we provided.

13. You may disclose to anyone a Report (or a portion thereof) solely to the extent that it relates to tax matters, including tax advice, tax opinions, tax returns, or the tax treatment or tax structure of any transaction to which the Services relate ("**Tax Advice**"). With the exception of tax authorities, you shall inform those to whom you disclose Tax Advice that they may not rely on it for any purpose without our prior written consent.



**EY**

Building a better
working world

14. You may incorporate into documents that you intend to disclose externally EY summaries, calculations or tables based on Client Information contained in a Report, but not our recommendations, conclusions or findings. However, you must assume sole responsibility for the contents of those documents and not refer to us or any other EY Firm in connection with them. This provision does not affect your ability to circulate Reports internally.

15. You may not rely on any draft Report. We shall not be required to update any final Report for circumstances of which we become aware, or events occurring, after its delivery.

**Limitations**

16. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, any consequential, incidental, indirect, punitive or special damages in connection with claims arising out of this Agreement or otherwise relating to the Services, including any amount for loss of profit, data or goodwill, whether or not the likelihood of such loss or damage was contemplated.

17. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services. This limitation will not apply to losses caused by our fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

18. You shall make any claim relating to the Services or otherwise under this Agreement no later than one year after you became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two years after the completion of the particular Services. This limitation will not apply to the extent prohibited by applicable law or professional regulations.

19. You may not make a claim or bring proceedings relating to the Services or otherwise under this Agreement against any other EY Firm or our or its subcontractors, members, shareholders, directors, officers, partners, principals or employees ("**EY Persons**"). You shall make any claim or bring proceedings only against us. The provisions of Sections 16 through 20 are intended to benefit the other

EY Firms and all EY Persons, who shall be entitled to enforce them.

**Indemnity**

20. To the fullest extent permitted by applicable law and professional regulations, you shall indemnify us, the other EY Firms and the EY Persons against all claims by third parties (including your affiliates and attorneys) and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of the disclosure of any Report (other than Tax Advice) or a third party's use of or reliance on any Report (including Tax Advice) disclosed to it by you or at your request.

**Intellectual property rights**

21. We may use data, software, designs, utilities, tools, models, systems and other methodologies and know-how that we own or license ("**Materials**") in performing the Services. Notwithstanding the delivery of any Reports, we retain all intellectual property rights in the Materials (including any improvements or knowledge developed while performing the Services), and in any working papers compiled in connection with the Services (but not Client Information reflected in them).

22. Upon payment for particular Services and subject to the other terms of this Agreement, you may use the Reports relating to those Services, as well as any Materials owned by us that are included therein, solely to the extent necessary to use the Reports.

**Confidentiality**

23. Except as otherwise permitted by this Agreement, neither of us may disclose to third parties the contents of this Agreement or any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential and/or proprietary. Either of us may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of this Agreement,

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information,



**EY**

Building a better
working world

(c) was known to the recipient at the time of disclosure or is thereafter created independently,

(d) is disclosed as necessary to enforce the recipient's rights under this Agreement, or

(e) must be disclosed under applicable law, legal process or professional regulations.

24. Either of us may use electronic media to correspond or transmit information and such use will not in itself constitute a breach of any confidentiality obligations under this Agreement.

25. Unless prohibited by applicable law, we may provide Client Information to other EY Firms (which are listed at www.ey.com) and EY Persons, as well as external third parties providing services on our or their behalf, who may collect, use, transfer, store or otherwise process (collectively, "**Process**") it in various jurisdictions in which they operate in order to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, to provide financial accounting and other administrative, infrastructure and security support services or for quality and risk management purposes. We shall be responsible to you for maintaining the confidentiality of Client Information, regardless of where or by whom such information is Processed on our behalf.

26. With respect to any Services, if U.S. Securities and Exchange Commission auditor independence requirements apply to the relationship between you or any of your associated entities and any EY Firm, you represent, to the best of your knowledge, as of the date of this Agreement and as of the date of each Statement of Work hereunder, that neither you nor any of your affiliates has agreed, either orally or in writing, with any other advisor to restrict your ability to disclose to anyone the tax treatment or tax structure of any transaction to which the Services relate. An agreement of this kind could impair an EY Firm's independence as to your audit or that of any of your affiliates, or require specific tax disclosures as to those restrictions. Accordingly, you agree that the impact of any such agreement is your responsibility.

**Data protection**

27. If we Process Client Information that can be linked to specific individuals ("**Personal Data**"), we will Process it in accordance with Section 25 of this Agreement, as well as law and professional regulations applicable to us. We

will also require any service provider that Processes Personal Data on our behalf to provide at least the same level of protection for such data as is required by such legal and regulatory requirements. If Personal Data relating to a data subject in the UK, European Union or Switzerland (collectively, "**European Personal Data**") is required for EY to perform the Services, the parties agree to negotiate in good faith a data transfer addendum intended to validate the transfer of such European Personal Data by Client to EY prior to such transfer. If any Client Information is protected health information under the Health Insurance Portability and Accountability Act, as amended, this Agreement is deemed to incorporate all of the terms otherwise required to be included in a business associate contract relating to such information.

28. You warrant that you have the authority to provide the Personal Data to us in connection with the performance of the Services and that the Personal Data provided to us has been Processed in accordance with applicable law. In order to provide the Services, we may need to access Personal Data consisting of protected health information, financial account numbers, Social Security or other government-issued identification numbers, or other data that, if disclosed without authorization, would trigger notification requirements under applicable law ("Restricted Personal Data"). In the event that we need access to such information, you will consult with us on appropriate measures (consistent with professional standards applicable to us) to protect the Restricted Personal Data, such as deleting or masking unnecessary information before it is made available to us, encrypting any data transferred to us, or making the data available for on-site review at a Client site. You will provide us with Restricted Personal Data only in accordance with mutually agreed protective measures.

**Fees and expenses generally**

29. You shall pay our professional fees and specific expenses in connection with the Services as detailed in the applicable Statement of Work. You shall also reimburse us for other reasonable expenses incurred in performing the Services. Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally). Unless otherwise set forth in the applicable Statement of Work, payment is due within 30 days following receipt of each of our invoices. We may receive rebates in connection with



**EY**
Building a better
working world

certain purchases, which we use to reduce charges that we would otherwise pass on to you.

30. We may charge additional professional fees if events beyond our control (including your acts or omissions) affect our ability to perform the Services as originally planned or if you ask us to perform additional tasks.

31. If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

**Force majeure**

32. Neither you nor we shall be liable for breach of this Agreement (other than payment obligations) caused by circumstances beyond your or our reasonable control.

**Term and termination**

33. This Agreement applies to the Services whenever performed (including before the date of this Agreement).

34. This Agreement shall terminate upon the completion of the Services. Either of us may terminate it, or any particular Services, earlier upon 30 days' prior written notice to the other. In addition, we may terminate this Agreement, or any particular Services, immediately upon written notice to you if we reasonably determine that we can no longer provide the Services in accordance with applicable law or professional obligations.

35. You shall pay us for all work-in-progress, Services already performed, and expenses incurred by us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts.

36. The provisions of this Agreement, including Section 14 and otherwise with respect to Reports, that give either of us rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement, except that our respective confidentiality obligations (other than those relating to Reports or under Section 14) shall continue thereafter for three years only.

**Governing law and dispute resolution**

37. This Agreement, and any non-contractual matters or obligations arising out of this Agreement or the Services, including (without limitation) claims arising in tort, fraud, under statute or otherwise relating to the Services, or questions relating to the scope or enforceability of this Section 37, shall be governed by, and construed in accordance with, the laws of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Except as otherwise expressly provided in the Cover Letter, any dispute relating to this Agreement or the Services shall be resolved as set forth in Appendix 1 to these Terms and Conditions.

**Miscellaneous**

38. This Agreement constitutes the entire agreement between us as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any confidentiality agreements previously delivered. In addition, any policy, protocol, agreement (other than this Agreement) or other instrument, in whatever form, imposed at any time that purports to obligate EY, any other EY Firm or any EY Person with respect to the use of Client Information shall be void and of no further effect, and you shall not seek to enforce any such obligation.

39. Both of us may execute this Agreement (including Statements of Work), as well as any modifications thereto, by electronic means and each of us may sign a different copy of the same document. Both of us must agree in writing to modify this Agreement or any Statement of Work hereunder.

40. Each of us represents to the other that each person signing this Agreement or any Statement of Work hereunder on its behalf is expressly authorized to execute it and to bind such party to its terms. You also represent that this Agreement has, if necessary, been considered and approved by your Audit Committee. You represent that your affiliates and any others for whom Services are performed shall be bound by the terms of this Agreement.

41. You agree that we and the other EY Firms may, subject to professional obligations, act for other clients, including your competitors.



**EY**

Building a better
working world

42. Neither of us may assign any of our rights, obligations or
claims arising out of or related to this Agreement or any
Services.

43. If any provision of this Agreement (in whole or part) is
held to be illegal, invalid or otherwise unenforceable, the
other provisions shall remain in full force and effect.

44. If there is any inconsistency between provisions in
different parts of this Agreement, those parts shall have
precedence as follows (unless expressly agreed otherwise):
(a) the Cover Letter, (b) the applicable Statement of Work
and any attachments thereto, (c) these General Terms and
Conditions, and (d) other attachments to this Agreement.

45. Neither of us may use or reference the other's name, logo
or trademarks publicly without the other's prior written
consent, although we may publicly identify you as a client
in connection with specific Services or generally.

46. For administrative reasons, you may from time to time ask
that fees and expenses for Services performed for your
international affiliates or at international locations be
invoiced to you or your designate there, in local currency.
You guarantee the timely payment of all those invoices by
your affiliates.  In addition, from time to time, an affiliate
of ours, providing Services as a subcontractor to us, may
bill you directly for fees incurred for work outside the US,
in local currency or otherwise.



EY
Building a better
working world

# Appendix 1

## Dispute resolution procedures

### Mediation

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

### Arbitration

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators.



**EY**

Building a better
working world

No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction. In deciding the dispute, the arbitration panel shall apply the limitations period that would be applied by a court deciding the matter in the same jurisdiction, and shall have no power to decide the dispute in any manner not consistent with such limitations period.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.