Sanibel Films II, Inc.
40 West 67 Apt 9c. New York NY 10023
chrisf687@aol.com
(412) 897-1582

RECEIVED
2025 MAY 21  AM 8:30
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

May 8, 2025

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

US Bankruptcy Court District of Delaware
824 North Market Street
Wilmington DE 19801
Att: Judge Horan, Chambers

Re:   In re Village Roadshow Entertainment Group USA Inc., et al.; Case 25-10475-TMH;
**OBJECTION OF CHRISTINE ROMERO AND SANIBEL FILMS INC. II TO NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACT (ITEM 70 ON EXHIBIT 1 TO DOCKET NO. 293)**

Dear Judge Horan,

My name is Christine Romero, as principal of Sanibel Films Inc. II, (collectively, the "Objecting Party") and I am hereby filing this objection to the "Notice of Possible Assumption and Assignment of Certain Executory Contracts" (the "Notice"), dated April 28, 2025, **Doc. 293** in the above-captioned matter related to **Case 25-10475-TMH.**

The Notice lists a contract between the Objecting Party and Village Roadshow Pictures Entertainment Inc. ("VRPEI"), on line 70 of Exhibit 1 (Page 2 of 11), as one of the contracts that may potentially be assumed and assigned as part of the "Sale" (as such term is defined in the Notice). I note, as an initial matter, that neither I nor my attorney received a copy of this Notice – luckily, another attorney we know was reviewing it on behalf of his client, and alerted us to the fact that my company was named.

Furthermore, and more substantively, the contract between the Objecting Party and VRPEI was an option agreement, which expired on its face without the option in question being exercised. Thus, the contract is no longer valid or binding, and should not be considered an asset of VRPEI potentially subject to sale. For your reference, I have enclosed a copy of the contract at issue and the confirmation from counsel at SheppardMullin that the inclusion of this contract as a VRPEI asset is in error.

Please contact me as soon as possible if you have any questions. Otherwise, please remove any references to myself, Sanibel Films, Inc. II and/or this contract with VRPEI from any further filings in the above-referenced matter.

Very truly yours,

*Christine Romero*

Christine Romero

w/ Encl.

Michelle Piccolino

**From:** Jerry Dasti <jerryd@slosslaw.com>
**Sent:** Thursday, July 15, 2021 11:27 AM
**To:** Hillel Elkins
**Cc:** Yfat Reiss Gendell
**Subject:** RE: NIGHT OF THE LIVING DEAD

Thanks Hillel. Confirming we are closed.

**From:** Hillel Elkins <hillel@elkins.law>
**Sent:** Wednesday, July 14, 2021 4:54 PM
**To:** Jerry Dasti <jerryd@slosslaw.com>
**Cc:** Yfat Reiss Gendell <yrgendell@yrgpartners.com>
**Subject:** NIGHT OF THE LIVING DEAD

Jerry,

Please confirm we are closed on the following terms:

**Option payments:** $15K for 18 months applicable.
$15K for 18 months non-applicable, but if set up at a major, mini-major, major independent or premium streamer before the option is extended, the second option payment increases to $25K.

**Purchase price:** 2.5% of the direct, ingoing hard cost gross (no deduction for soft money) budget with a floor of $350K and a ceiling of $850K

**Rights:** All rights owned by Sanibel, subject to the Reserved Rights and subject to any rights granted to 21st Century Film Corporation (which rights were assigned to Columbia Pictures Industries, Inc.). In the event it is discovered Sanibel owns rights to audio-visual exploitation beyond those conveyed as part of the rights granted hereunder, those rights will be deemed immediately and automatically conveyed to VR in the agreement. Rights being granted include, without limitation, all allied, ancillary, subsidiary and incidental rights in the new production(s) produced by VR (as opposed to such rights in the Original Film, which are dealt with below). Notwithstanding the grant of rights to 21st Century Film Corporation and/or anything to the contrary in this agreement, nothing in this agreement: (i) shall at any time limit VR's right to utilize freely, in any creation or production, any story, idea, plot, theme, sequence, scene, episode, incident, name, characterization, dialogue or other material which may be in the public domain, whether included in the Original Film or derived from any other source; or (ii) shall be construed to be prejudicial to or operate in derogation of any rights, licenses, privileges or property which VR may enjoy or be entitled to as a member of the public, as if this agreement were not in existence.

**Contingent Comp:** 5% of 100% of net proceeds.

**Box Office Bonuses:** $50K at 2.5x, 3x, 3.5x and 4x negative cost in DBO (US + Can box office); $75K at 4.5X and 5x negative cost for a maximum total of $350K, all applicable against Contingent Comp above. Each bonus alternatively paid at double the threshold in WWBO if reached first at each level.

**Streamer Conversion:** In the event that the Picture is set up at a subscription video on demand platform under a "cost plus" deal, the floor and ceiling to the purchase price will be increased by 20% in lieu of Contingent Compensation and Box Office Bonuses.

1

**Other Terms:**  $50K passive payment to Image Ten, Inc. for each production produced.

If the initial production is a series (as opposed to a feature film), Sanibel's compensation and credits to be negotiated in good faith and agreed before production may commence.

All of Romero's rights in allied, ancillary, subsidiary, incidental rights in the Original Film will be frozen except for distribution rights therein and video game rights (to the extent they have been granted – We understand these are in dispute right now.  We will carve out video games if you provide evidence of preexisting licenses.  You can't make new video game deals).  If these rights become available, they go to Village Roadshow. (such distribution rights and video game rights shall be the "Reserved Rights").  Freeze expires on the earlier of 3 years from 1st commercial release and 5 years from exercise of option.  VR would have a 1st negotiation/first refusal right to purchase such frozen rights after the holdback.

100% of the percentage of the purchase price for feature-length sequels/prequels with the same "floor" and "ceiling" and 50% for feature-length remakes.

Reversion if p.p. does not commence within 5 years of exercising option.

Credit:  "Based on the screenplay written by George A. Romero and John Russo" (subject to guild rules/requirements).

"Produced By" credit for Christine Romero in main titles/paid ads if any producer credits appear in the regular billing block, with size and excluded ad ties to all producers.  In addition, Sanibel will need a "produced by" credit for Ryan Silbert (main titles/paid ads if any producer credits appear in the regular billing block), on a card shared only with Christine's credit; production company credits for Sanibel Films and Origin Story Entertainment (main titles/paid ads if other production companies appear), on a card shared only with each other and size/excluded ad ties to all prod co credits; + 2 additional co-producer credits (main titles).  The balance of the terms of Sanibel's producing deal will be subject to a separate agreement.

I am reserving all rights.

Best,
Hillel

**HILLEL M. ELKINS**

**ELKINS LAW, P.C.**
9461 CHARLEVILLE BLVD., #366
BEVERLY HILLS, CA  90212
(310) 804-3483
hillel@elkins.law

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Elkins Law, P.C.

# EXHIBIT B
## SHORT FORM OPTION
"Night of the Living Dead Derivative Project"
Christine Romero and Sanibel Films, Inc. II

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Christine Romero ("Romero"), on behalf of herself and Sanibel Films, Inc. II, Romero's wholly-owned company ("Sanibel") (together, "Owner") hereby jointly, severally, irrevocably, and exclusively grant to Village Roadshow Pictures Entertainment Inc. ("Producer"), and its representatives, successors, assigns and licensees the exclusive and irrevocable option ("Short Form Option") to purchase and acquire from Owner all of Owner's right, title and interest (subject to expressly reserved rights described in the summary of closed deal terms attached to the Letter Agreement [as defined below] as Exhibit A), including without limitation, all motion picture, television and other audiovisual programming rights including all allied, ancillary, subsidiary, and incidental rights in, to and with respect to (X) Owner's rights in, and to, the 1968 motion picture entitled "Night of the Living Dead" (the "**Original Picture**") for purposes of development and possible production and exploitation of a derivative motion picture project based thereon tentatively entitled "NIGHT OF THE LIVING DEAD DERIVATIVE PROJECT" (the "**Project**") and (Y) subject to certain rights expressly reserved by Owner as set forth in the closed deal summary attached to the Letter Agreement as Exhibit A, the irrevocable and perpetual license of the rights to use and otherwise exploit the George Romero name in connection with the exploitation of all rights in, and to, the Project (collectively, the "Property").

Subject to the terms of the Letter Agreement dated as of July 15, 2021 (the "**Letter Agreement**"), to which this Exhibit B is a part thereof and any signed long-form option/purchase agreement to be negotiated in good faith and anticipated to be entered into by Owner and Producer, the option herein granted may be exercised by Producer, or its representatives, successors, assigns or licensees. This Short Form Option is expressly made subject to all the terms, conditions and provisions contained in the Letter Agreement and any such long form literary option/purchase agreement. In the event of a conflict between this Short Form Option and the Letter Agreement, the terms of the Letter Agreement shall control.

*[Signatures Next Page]*

ACCEPTED AND AGREED:

*christine Romero*
—2D7882BD387D445—
CHRISTINE ROMERO ("**Romero**")

Date: 10/5/2021

ACCEPTED AND AGREED:

SANIBEL FILMS, INC. II ("**Sanibel**")

By: *christine Romero*
—2D7882BD387D445—

Its: President

Date: 10/5/2021

ACCEPTED AND AGREED:

VILLAGE ROADSHOW PICTURES ENTERTAINMENT INC.

By: _____
Its Authorized Representative

Date: _____

# EXHIBIT C
# SHORT FORM ASSIGNMENT
"Night of the Living Dead Derivative Project"
Christine Romero and Sanibel Films, Inc. II

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Christine Romero ("Romero"), on behalf of herself and Sanibel Films II, Inc., Romero's wholly-owned company ("Sanibel") (together, "Owner"), hereby jointly, severally, and irrevocably, and exclusively sell, grant, assign and set over unto Village Roadshow Pictures Entertainment Inc. ("Producer"), and its representatives, successors, assigns and licensees in perpetuity and throughout the universe, all of Owner's motion picture, television, and other audiovisual programming rights including allied, ancillary, subsidiary, and incidental rights in, to, and with respect to (X) certain of Owner's rights (subject to expressly reserved rights described in the summary of closed deal terms attached to the Letter Agreement [as defined below] as Exhibit A in, and to, the 1968 motion picture entitled "Night of the Living Dead" (the "**Original Picture**") for purposes of development and possible production and exploitation of a derivative motion picture project based thereon tentatively entitled "NIGHT OF THE LIVING DEAD DERIVATIVE PROJECT" (the "**Project**") and (Y) subject to certain rights expressly reserved by Owner as set forth in the closed deal summary attached to the Letter Agreement as Exhibit A, the irrevocable and perpetual license of the rights to use and otherwise exploit the George Romero name in connection with the exploitation of all rights, in, and to, the Project (collectively, the "Property").

To the extent required to protect the rights granted hereunder, Owner shall obtain or cause to be obtained renewals of all United States copyrights in and to the Property, whether or not referred to herein, and shall assign said rights under such renewal copyrights to Producer without any further consideration. Producer is empowered to bring, prosecute, defend and appear in suits, actions and proceedings of any nature under or concerning all copyrights in and to the Property and all renewals thereof, or concerning any infringement of any such copyright or renewal copyright, or interference with any of the rights granted to Producer under said copyrights or renewals thereof, in its own name or in the name of the copyright proprietor, but at the expense of Producer, and at its option, Producer may join such copyright proprietor and/or Owner as a party in such suit, action or proceeding but at the expense of Producer, and at its option, Producer may join such copyright proprietor and/or Owner as a party in such suit, action or proceeding (Owner shall have the right, at Owner's expense, to have counsel present in connection therewith); any recovery therefrom is assigned to Producer. The grant and assignment by Owner to Producer set forth herein is irrevocable without any right of Owner to rescind, terminate or cancel this assignment, or for any reason to enjoin or prevent or seek to enjoin or prevent the development, production, exhibition, distribution, advertising or other exploitation of any motion picture or other production based on the Property.

Owner assigns to Producer all documents heretofore or hereafter executed in favor of Owner by any third party insofar as such documents affect or pertain to any of the rights herein granted to Producer. Owner hereby acknowledges that Producer may freely assign this assignment or any of Producer's rights hereunder, provided Producer will remain secondarily liable to Owner for Producer's obligations hereunder unless such assignee assumes in writing all of the obligations hereunder to be performed from and after such assignment and such assignment is to any of the following: (a) A person or entity into which Producer merges or is consolidated or (b) a person or entity which acquires all or substantially all of Producer's business and assets or (c) a person or entity which is controlled by, under common control with, or controls Producer (provided that if such assignment

is to a person or entity controlled by Producer then Producer will remain secondarily liable to Owner) or (d) any major studio or mini-major motion picture company (i.e., a major independent company that is a party to an exclusive distribution agreement with a major distributor [e.g., New Regency]), United States television network or streaming company, a major supplier of television or motion pictures, major distributor, syndicator or other similarly financially responsible party, in which event Producer shall be released from all obligations hereunder, and this Short Form Assignment shall inure to the benefit of Producer's successors, licensees or assigns.

This Short Form Assignment is executed pursuant to and shall be subject to the terms and provisions of that certain Letter Agreement dated as of July 15, 2021, to which this Exhibit C is attached and made a part thereof and any long-form literary option/purchase agreement between Owner and Producer being negotiated in good faith and anticipated to be signed by the parties. In the event of a conflict between this Short Form Assignment and the Letter Agreement, the terms of the Letter Agreement shall control.

ACCEPTED AND AGREED:

*christine Romero*
—2D7882BD387D445...

**CHRISTINE ROMERO**
("**Romero**")

Date: 10/5/2021

ACCEPTED AND AGREED:

VILLAGE ROADSHOW PICTURES ENTERTAINMENT INC.

By: _____
Authorized Representative

Date: _____

ACCEPTED AND AGREED:

SANIBEL FILMS, INC. II ("**Sanibel**")

By: *christine Romero*
—2D7882BD387D445...

Its: President

Date: 10/5/2021

# EXHIBIT A
## SUMMARY OF CLOSED PRINCIPAL DEAL TERMS

(Attached)

# VILLAGE ROADSHOW PICTURES ENTERTAINMENT INC.
10100 Santa Monica Boulevard – Suite 200
Los Angeles, CA 90067

As of July 15, 2021

Christine Romero and Sanibel Films, Inc. II
c/o Sloss Eckhouse Dasti Haynes LawCo LLP
555 W. 25th Street, 4th Floor
New York, NY 10001
Attn: Jerry Dasti

RE: "Night of the Living Dead Derivative Project"

Dear Chris:

This letter and all exhibits attached hereto (which are incorporated herein and made a part hereof by this reference and which together with this letter shall be defined as the "**Letter Agreement**") will confirm the closed deal terms of the agreement reached by VILLAGE ROADSHOW PICTURES ENTERTAINMENT INC. ("**Company**"), on the one hand, and CHRISTINE ROMERO ("**Romero**") and SANIBEL FILMS, INC. II ("**Sanibel**") (Romero and Sanibel are individually and collectively referred to together as "**Owner**"), on a joint and several basis, on the other hand, in connection with (X) the quitclaim to Company of all of Owner's rights in, and to, the 1968 motion picture entitled "Night of the Living Dead" (the "**Original Picture**") for purposes of development and possible production and exploitation of a derivative motion picture project based thereon tentatively entitled "NIGHT OF THE LIVING DEAD DERIVATIVE PROJECT" (the "**Project**") and (Y) the irrevocable and perpetual license to use and otherwise exploit the George Romero name in connection with the exploitation of all rights in the Project including allied ancillary, subsidiary and incidental rights therein, subject to any expressly reserved rights described in Exhibit A. For good and valuable consideration (the receipt and sufficiency of which is hereby acknowledged), the parties hereto hereby agree as follows:

1.  Owner hereby confirms, acknowledges and agrees to the principal terms of the deal closed in connection herewith, which terms are confirmed in writing by Jerry Dasti ("**Dasti**") of Sloss, Eckhouse, Dasti, Haynes LawCo, LLP, acting as duly authorized representative of Owner, in the e-mail message dated July 15, 2021, responding to the e-mail summary of the closed principal deal terms of the same date from Hillel Elkins, acting as a duly authorized representative of Company, which closed principal terms are memorialized in the e-mails attached hereto as Exhibit A and incorporated herein by this reference.

2.  The parties hereto acknowledge and agree that upon Company's receipt of this Letter Agreement executed by each of Owner (including all exhibits attached hereto, provided that Exhibit C will remain undated and be of no force and effect unless and until exercise of the option (in Company's sole discretion) and payment of the Purchase Price [as described in Exhibit A attached hereto], if ever), (a), Company will advance to Owner the Initial Option Fee amount of Fifteen Thousand United States Dollars (US $15,000, the "**Initial Option Fee**") as described in the deal summary memo attached hereto as Exhibit A; provided, however that Owner hereby

acknowledges and agrees that the Initial Option Period as described in the deal summary memo attached hereto as Exhibit A (the "**Initial Option Period**") commences as of the date first written above and expires eighteen (18) months thereafter. Notwithstanding the foregoing, the Initial Option Period will automatically be suspended and extended if, within three (3) months of Company providing Owner with the long form option purchase agreement (the "OPA") reflecting the relevant terms hereof, (a) Owner has not provided Company a mutually approved signed copy of such OPA, and (b) Owner has not otherwise satisfied all customary conditions precedent set forth in the signed OPA, and such suspension and extension of the Initial Option Period will remain in effect until such time that Paragraph 2(a) and 2(b) are fully satisfied, provided that each party uses good faith efforts to complete negotiations of, satisfy and deem satisfied all conditions precedent for, and sign the OPA without unreasonable delay.

3.   Without limiting the full representations and warranties set forth in the long-form agreement, Owner hereby represents and warrants as follows: (a) All rights quitclaimed hereunder are exclusively and irrevocably owned and controlled jointly and severally by Romero and Sanibel (it being understood that the rights granted hereunder do not include the reserved rights set forth in Exhibit A, the distribution rights in the Original Film, and/or any rights granted to 21st Century Film Corporation (which rights were assigned to Columbia Pictures Industries, Inc.); (b) Sanibel is wholly owned and controlled by Romero; (c) no rights herein quitclaimed have heretofore been granted by Romero and/or Sanibel to any third party; and (d) Sanibel and Romero have the irrevocable and perpetual right to grant a license to use and otherwise exploit the rights granted hereunder including the right to use and otherwise exploit the George Romero name in connection with the exploitation of all rights in the Project including allied ancillary, subsidiary and incidental rights therein, subject to any reserved rights described in Exhibit A.

4.   All notices from Company to Owner will be sent to Owner at the address first written above. All payments from Company to Owner will be sent to Christine Romero, 40 West 67th Street #9C, New York, NY, 10023. All notices from Owner to Company shall be sent to Village Roadshow Picture Entertainment Inc., 10100 Santa Monica Blvd. – Suite 200, Los Angeles, CA 90067, Attn: Michael J. Linowes – EVP, Business Affairs with a courtesy copy to Kevin Berg – General Counsel at the same address.

5.   This Letter Agreement may be executed in any number of counterparts, which will collectively and separately, constitute one binding agreement (provided that all parties sign a copy) and will be executed by hand, facsimile, electronically or digitally scanned (e.g., pdf); such execution will be binding upon the parties and their respective successors, licensees, designees and assigns.

6.   A long-form agreement incorporating the principal terms of the closed deal as set forth on Exhibit A, together with such additional terms and conditions customary for deals of this nature, which will be negotiated in good faith and include, but not be limited to, customary conditions precedent, force majeure, suspension and extension rights, full representations and warranties, indemnities, waiver of injunctive relief, dispute resolution and confidentiality, will be prepared and sent to you shortly. Unless and until such long-form agreement is entered into and executed by the parties, the terms of this Letter Agreement including all exhibits attached hereto (which are incorporated herein by this reference) will be fully binding, subject to any changes and modifications which may be mutually agreed to by the parties in writing after good faith negotiation.

If the foregoing represents your understanding, please so signify by signing in the space set forth below.

Sincerely,

MICHAEL J. LINOWES
EVP, Business Affairs

ACCEPTED AND AGREED:

VILLAGE ROADSHOW PICTURES
ENTERTAINMENT INC. ("**Company**")

By: _____

Its: _____

ACCEPTED AND AGREED:

DocuSigned by:
*christine Romero*
—2D7882BD387D445...

CHRISTINE ROMERO ("**Romero**")

ACCEPTED AND AGREED:

SANIBEL FILMS, INC. II ("**Sanibel**")

DocuSigned by:
*christine Romero*
—2D7882BD387D445...

By: _____

Its:  President



**Jennifer Nassiri <JNassiri@sheppardmullin.com>** yesterday at 8:55 PM
RE: In re Village Roadshow Entertainment Group USA Inc., et al.

Hide

To: Jerry Dasti <jerryd@slosslaw.com>,
jmulvihill@ycst.com <jmulvihill@ycst.com>,
cthompson@ycst.com <cthompson@ycst.com>,
bcarver@ycst.com <bcarver@ycst.com>,

Cc: Matt Benz <mbenz@sheppardmullin.com>,
Justin Bernbrock <JBernbrock@sheppardmullin.com>,
rfeinstein@pszjlaw.com <rfeinstein@pszjlaw.com>,
agavant@btlaw.com <agavant@btlaw.com>,
David Gersh <dgersh@gershla.com>,
cmiller@morrisnichols.com <cmiller@morrisnichols.com>,
jnewton@mofo.com <jnewton@mofo.com>,
dennis.odonnell@dlapiper.com <dennis.odonnell@dlapiper.com>,
Alyssa Paddock <APaddock@sheppardmullin.com>,
Chris Romero <chrisf687@aol.com>,
bsandler@pszjlaw.com <bsandler@pszjlaw.com>,
dshamah@cooley.com <dshamah@cooley.com>,
rosa.sierra-fox@usdoj.gov <rosa.sierra-fox@usdoj.gov>,
Ryan Silbert <ryan@originstory.com>,
jmsimwinga@wlrk.com <jmsimwinga@wlrk.com>,
swarren@omm.com <swarren@omm.com>,
Isabel Weiner <isabel@slosslaw.com>



Hi Jerry,

Thank you for your letter.   We have confirmed that the option agreement did indeed expire prior to the petition date and was inadvertently included on the Notice.  We will note its removal on the agenda for the sale hearing.

Please let me know if you have any questions.

Best,
Jen

**Jennifer L. Nassiri** | Partner
+1 424-288-5316 | direct
+1 310-418-9536 | cell
JNassiri@sheppardmullin.com | Bio

**SheppardMullin**

1901 Avenue of the Stars, Suite 1600
Los Angeles,  CA 90067-6017
+1 310-228-3700 | main
www.sheppardmullin.com | LinkedIn | Twitter






Christine Romero
40 W 67th St. Apt. 9C
New York, NY 10023

U.S. Bankruptcy Court District of Delaware
824 North Market Street
Wilmington
DE. 19801

ATTN: Judge Horan, Chambers

9589 0710 5270 0892 5790 63

Retail
U.S. POSTAGE PAID
FCM LETTER
EAST HAMPTON, NY
MAY 08, 2025
$10.24
S2324A500942-77
RDC 99
19801