# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | ) ) ) | Case No. 25-10475 (TMH) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | Re: Dkt Nos. 11, 197, 276, 297 |
| | ) ) ) ) | Hearing Date: June 18, 2025 at 2:00 p.m. |

## OBJECTION BY REGENCY ENTERTAINMENT (USA), INC. TO ASSUMPTION AND ASSIGNMENT OF CO-OWNERSHIP AGREEMENT

Regency Entertainment (USA), Inc. ("**REUSA**"), by and through its undersigned attorneys, submits this objection ("**Objection**") to the *Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts* ("**Supplemental Assumption Notice**") [Dkt. No. 297] filed by Village Roadshow Entertainment Group USA Inc. and its related debtor affiliates (collectively, the "**Debtors**"). In support of its Objection, REUSA respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtors are attempting to sell substantially all of their Assets,[2] which they have generally segregated into three groups: Library Assets, Derivative Rights, and Studio Business.

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information is available on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the (i) *Debtors' Motion for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Authorizing the Debtors' Entry into the Stalking Horse APA and Approving Bid Protections Thereunder, (C) Scheduling an Auction for, and Hearing to Approve, Sale of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale,*

*See* Sale Motion at ¶¶ 7-9. The Stalking Horse APA originally provided only for the sale of the Library Assets and specifically excluded the Derivative Rights. *See* Sale Motion at ¶ 17 ("Excluded Assets"); Stalking Horse Supplement at ¶ 16 (same). However, the Debtors subsequently conducted an auction for the Derivative Rights, with Alcon Media Group ("**Alcon**") being identified as the successful bidder. *See Notice of (I) Successful Bidder for Derivative Rights and Studio Business and (II) Back-Up Bidder for Derivative Rights* [Dkt. No. 446]. As part of this sale process, the Debtors have sought and obtained approval of procedures relating to the assumption and assignment of various executory contracts and unexpired leases to the Successful Bidder(s). *See* Sale Motion at ¶¶ 1(a)(vi), 19, 21, 30-32, 58-65; Stalking Horse Supplement at ¶¶ 12, 25; Bid Procedures Order at ¶¶ 28-31.

    REUSA files this objection with respect to the possible assumption and assignment of that that certain *"Don't Say a Word" Co-Ownership Agreement* ("**Co-Ownership Agreement**") dated as of December 14, 2001, between REUSA and Debtor Village Roadshow Films (BVI) Limited ("**VRF**"). [3] Although the Debtors have not yet specifically identified the Derivative Rights in the motion picture "Don't Say a Word" ("**Picture**") as an Asset that is subject to the Bid Procedures Order and the sale of the Derivative Rights, they have identified the Co-

---

*Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Dkt. No. 11] ("**Sale Motion**"); (ii) *Debtors' Supplemental Motion for Entry of an Order (A) Approving (I) the Debtors' Designation of the New Stalking Horse Bidder for the Library Assets as set forth in the Stalking Horse Agreement, (II) the Debtors' Entry into the Stalking Horse Agreement, and (III) the Bid Protections and (B) Granting Related Relief* [Dkt. No. 197] ("**Stalking Horse Supplement**"); and/or (iii) *Amended Order (I) Approving Bid Procedures for the Sale of the Debtors' Assets, (II) Authorizing the Debtors' Entry into the Stalking Horse APA and Approving Bid Protections Thereunder; (III) Scheduling an Auction for, and Hearing to Approve, Sale of the Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Dkt. No. 276] ( "**Bid Procedures Order**").

[3] A true and correct copy of the Co-Ownership Agreement is attached to the *Declaration of David C. Friedman in Support of Objections by Regency Entertainment (USA), Inc. to Sale of Debtors' Assets and Assumption and Assignment of Co-Ownership Agreement* ("**Friedman Decl**.") as **Exhibit A**.

Ownership Agreement as an executory contract that they may seek to assume and assign. The Co-Ownership Agreement, however, is inextricably intertwined with the ownership of the Derivative Rights in the Picture and cannot be assumed and assigned separately. Specifically, the Co-Ownership Agreement provides detailed procedures for any development of the Derivative Rights in the Picture between REUSA and Debtor VREG IP Global LLC ("**VREG**"), the successor to VRF, each of which owns a one-half undivided interest in the Derivative Rights in the Picture. The Co-Ownership Agreement expressly provides that REDACTED. REUSA objects to the assumption and/or assignment of the Co-Ownership Agreement because (i) the Co-Ownership Agreement is a personal service contract that is non-assignable under applicable non-bankruptcy law and therefore may not be assumed and assigned by the Debtors pursuant to Section 365(c)(1) of Title 11 of the United States Code, §§ 101 *et seq*. ("**Bankruptcy Code**"); (ii) the Co-Ownership Agreement cannot be separated from the underlying Derivative Rights in the Picture; and (iii) the sale of the Derivative Rights in the Picture without REUSA's express written consent would result in a breach of the Co-Ownership Agreement that is incapable of being cured by payment of monetary damages, and must instead be enjoined.

**RELEVANT FACTUAL BACKGROUND**

1. The Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court on March 17, 2025 ("**Petition Date**").

2. Prior to the Petition Date, REUSA executed the Co-Ownership Agreement with VRF.

3. Contemporaneously, through a series of assignments, VRF and REUSA were each obtaining an undivided one-half interest in the Derivative Rights in the Picture. As part of

those assignments, the rights of VRF and REUSA to further assign the Derivative Rights in the Picture were limited by a contractual provision which required any assignee to agree to be bound by the terms of the Co-Ownership Agreement. *See* Friedman Decl. at ¶ 4.

    4.    REUSA and VRF entered into the Co-Ownership Agreement because REDACTED REDACTED. *See* Co-Ownership Agreement at ¶ REDACTED; Friedman Decl. at ¶ 4. Section REDACTED of the Co-Ownership Agreement explains that REDACTED REDACTED. *See* Co-Ownership Agreement at § REDACTED. It further provides that REDACTED REDACTED *Id.* at § REDACTED.

    5.    The Co-Ownership Agreement expressly sets forth REDACTED REDACTED. *Id.* at §§ REDACTED. This language is intended to protect the value of the Derivative Rights in the Picture. This is because the development of the Derivative Rights in the Picture, whether through one or more subsequent theatrical pictures, television projects, or other projects, requires a degree of trust and confidence between the co-owners of those rights, particularly with respect to the personal character and skills of the individuals who will ultimately be developing those rights. *See* Friedman Decl. at ¶ 5. Because each of the parties

has an undivided interest in the Derivative Rights in the Picture, they have the ability to propose a Derivative Rights project that may or may not include the other party, but the other party, should it elect not to participate in a proposed project, is entitled to trust that its co-owner will not develop the Derivative Rights in such a way as to devalue them and/or preclude the other party from any future projects that it may wish to pursue. *Id.* at ¶ 6.

6. Section [REDACTED] of the Co-Ownership Agreement provides as follows:



Co-Ownership Agreement at § [REDACTED].

7. On November 28, 2023, VRF entered into an *Assignment (Derivative Rights)* with VREG, an affiliate of VRF. The Assignment relates to derivative rights in eighty-three separate films, including the Picture, and also transfers all of VRF's rights in and to the related Co-Ownership Agreement.

8. On April 28, 2025, pursuant to the Bid Procedures Order, the Debtors filed a Notice of Possible Assumption and Assignment of Certain Executory Contracts ("**Assumption Notice**") [Dkt. No. 293]. Although the Assumption Notice included several contracts related to the Picture, it did not include the Co-Ownership Agreement.

9. On April 30, 2025, the Debtors filed the Supplemental Assumption Notice. Number 60 on the list of contracts attached as Exhibit 1 to the Supplemental Assumption Notice

as a contract "that may potentially be assumed and assigned as part of the Sale" is the Co-Ownership Agreement, with a listed cure amount of $0.00.

10. As of the date of this Objection, the Debtors have not filed any pleading with the Court that evidences their intention to sell or assign the underlying Derivative Rights in the Picture specifically. However, following an auction held on May 28, 2025, the Debtors announced that Alcon had been selected as the Successful Bidder for the Derivative Rights generally.

## **OBJECTION**

REUSA objects to the assumption and assignment of the Co-Ownership Agreement, whether in connection with a sale pursuant to the Sale Motion or otherwise. The Co-Ownership Agreement is a personal service contract that is non-assignable under applicable non-bankruptcy law and therefore may not be assumed and assigned by the Debtors pursuant to Section 365(c)(1) of the Bankruptcy Code. Moreover, the Co-Ownership Agreement cannot be separated from the underlying Derivative Rights in the Picture and the sale of Derivative Rights in the Picture to Alcon or another purchaser without REUSA's express written consent would constitute a breach of the Co-Ownership Agreement that is incapable of being cured by payment of monetary damages, instead entitling REUSA to enjoin the sale to prevent a breach

The assumption and assignment of executory contracts is governed by Section 365 of the Bankruptcy Code, which provides generally that a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). That general power, however, is subject to certain exceptions. In particular, Section 365(c) provides in relevant part as follows:

> [A debtor] may not assume or assign any executory contract … whether or not such contract … prohibits or restricts assignment of rights or delegation of duties if … applicable law excuses a party, other than the debtor, to such contract from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract … prohibits or restricts assignment of rights or delegation of duties[] and … such party does not consent to such assumption or assignment….

11 U.S.C. §365(c)(1). In other words, a contract is not assumable (and therefore not assignable) if state law excuses the non-debtor party from having to perform or accept performance from anyone other than the debtor. *See, e.g., Cinicola v. Sharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("[I]f a contract could not be assigned under applicable law, it may not be assumed or assigned by the trustee.").

The Co-Ownership Agreement provides that [REDACTED]. *See* Co-Ownership Agreement at § [REDACTED]

[REDACTED]. In California, as in many other states, a personal service contract is non-assignable: "[T]he cases are unanimous that an executory contract for personal services involving a ***personal relation of confidence*** between the parties, or involving liabilities or duties, which in express terms impute or indicate reliance on the ***character and personal ability*** of the parties, cannot be assigned…." *See Coykendall v. Jackson*, 17 Cal. App. 2d 729, 731 (1936) (emphasis added). *See also In re Planet Hollywood Int'l, Inc.*, Case No. 99-3612 (JJF), 2000 WL 36118317, at *4 (D. Del. Nov. 21, 2000) (noting that the law of California provides that "contracts involving relationships of personal confidence and trust or personal services are not assignable by either party without the consent of the other party"); *Bottini v. Legacy 106, Inc.*, D067119, 2015 WL 7293733, at *12 (Cal. App. Nov. 19, 2015) ("A personal services contract is not one that would normally be

considered assignable under California law."); *Madison v. Moon*, 306 P.2d 15, 21 (Cal. App. 1957) ("A contract for personal services may be assigned with the consent and approval of the other party, and many cases in this state have recognized this rule in holding that such a contract may not be assigned in the absence of the consent of the other party."). "Contracts to perform 'artistically' are clearly of a personal service nature." *In re Rooster, Inc.*, 100 B.R. 228, 233 (Bankr. E.D. Pa. 1989) (citing cases, including contract between author and publisher and recording contract for singer/songwriter). "Generally speaking, nondelegable duties have been determined to be of a personal nature whenever the performance depends upon a special relationship, special knowledge, or a unique skill, upon which the other party is entitled to rely." *Id.* See also *In re Planet Hollywood*, 2000 WL 36118317, at *4 ("In general a 'personal service' contract is a contract in which the parties rely on such qualities as 'character, reputation, taste, skill or discretion of the party that is to render performance.'"). "While many personal service contracts are contracts with individuals, there is no per se rule precluding a contract from being characterized as a personal service contract merely because it is entered into by a corporation." *In re Planet Hollywood,* 2000 WL 36118317, at *9.

"The determination of whether a contract is a personal service contract depends upon a totality of the circumstances including such factors as the nature of the contract itself, the intent of the parties and whether the contract involves such qualities as character, reputation, taste, skill or discretion of the party that is to render performance." *Id.* In this case, the language of the Co-Ownership Agreement itself supports a finding that the Co-Ownership Agreement is a personal service contract. Specifically, REDACTED

REDACTED

While this anti-assignment language is not directly enforceable under Section 363(c)(1), which looks to applicable non-bankruptcy law, and not to the terms of the contract itself, this language nevertheless provides evidence of the parties' intention and desire to deal exclusively with each other and/or their affiliates and not with unknown, unaffiliated third parties. The reason is that the development of the Derivative Rights in the Picture, whether through one or more subsequent theatrical pictures, television projects, or other projects, requires a degree of trust and confidence between the co-owners of those rights, particularly with respect to the personal character and skills of the individuals who will ultimately be developing those rights. *See* Friedman Decl. at ¶ 5.

Because each of the parties has an undivided interest in the Derivative Rights in the Picture, they have the ability to propose a Derivative Rights project that may or may not include the other party, but the other party, should it elect not to participate in a proposed project, is entitled to trust that its co-owners will not develop the Derivative Rights in the Picture in such a way as to devalue them and/or preclude the other party from any future projects that it may wish to pursue. *Id.* at ¶ 6. The production of a movie or television show is an inherently artistic endeavor, dependent on the particular character, reputation, and skill of the parties involved. The language is intended to protect the value of the Derivative Rights in the Picture, which is one of the primary purposes underlying the Co-Ownership Agreement. *Id.* at ¶ 7.

**CONCLUSION**

For the foregoing reasons, REUSA respectfully objects to the assumption and assignment of the Co-Ownership Agreement as part of the Debtor's Sale of the Assets pursuant to the Sale Motion and requests that the Co-Ownership Agreement be excluded from the list of executory contracts to be assumed and assigned to a Successful Bidder in connection with the Sale Motion. REUSA expressly reserves all of its rights under Sections 363 and 365 of the Bankruptcy Code with respect to the Derivative Rights in the Picture, the Co-Ownership Agreement, and all other rights, whether at law or in equity, under the Bankruptcy Code and applicable law, including, but not limited to, any claim for specific performance and/or injunctive relief to prevent a breach of the Co-Ownership Agreement. REUSA reserves the right to renew and/or supplement this objection with respect to any other proposed sale of the Debtor's Assets.

Respectfully submitted,

CAROTHERS & HAUSWIRTH, LLP

Dated: June 3, 2025
   Wilmington, Delaware

By: */s/ Gregory W. Hauswirth*
Gregory W. Hauswirth (DE-5679)
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801
Telephone: 302.990.4850
Facsimile: 412.910.7510
ghauswirth@ch-legal.com
and

**LEECH TISHMAN NELSON HARDIMAN, INC.**

By:   */s/ Sandford L. Frey*
Sandford L. Frey (CA I.D. # 117058)
*Pro Hac Vice Application Pending*
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Telephone: 424.738.4400
Facsimile: 424.738.5080
sfrey@leechtishman.com

John M. Steiner (PA I.D. #79390)
Michael Kruszewski (PA I.D. # 91239)
Kristin Anders Lawson (PA I.D. #74497)
*Pro Hac Vice Applications Pending*
**LEECH TISHMAN FUSCALDO & LAMPL, LLC**
525 William Penn Place, 28th Floor
Pittsburgh, PA  15219
Telephone:  412.261.1600
Facsimile:   412.227.5551
jsteiner@leechtishman.com
klawson@leechtishman.com

*Counsel for Regency Entertainment (USA), Inc.*