# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1]<br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered)<br><br>Hearing Date: June 18, 2025 at 2:00 p.m. (ET)<br><br>Ref. Nos. 11, 197, 350, 446 |

### ALCON MEDIA GROUP, LLC'S
### (I) JOINDER TO THE DEBTORS' RESPONSE TO
### WARNER BROS. ENTERTAINMENT INC.'S OBJECTION
### TO ENTRY OF DERIVATIVE RIGHTS SALE ORDER AND
### (II) LIMITED RESPONSE TO
### WARNER BROS. ENTERTAINMENT INC.'S OBJECTION

Alcon Media Group, LLC ("Alcon"), by and through its undersigned counsel, submits this joinder and response (this "Joinder and Response") to: (I) join in the Debtors' response [D.I. 526] (the "Debtors' Response") to Warner Bros. Entertainment Inc.'s ("Warner Bros.") objection [D.I. 521] (the "WB Objection") to the proposed sale of the Debtors' Library Assets (as defined in the Bid Procedures Motion; D.I. 11); and (II) provide a separate, limited response to the WB Objection.

### JOINDER AND RESPONSE

1. Alcon joins in full the Debtors' Response without reservation.

2. Alcon also seeks to inform the Court that Warner Bros., the Debtors, and Alcon met and conferred concerning the WB Objection and believes that the majority of the issues raised in the WB Objection will be mutually resolved.

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

{1490..001-W0082091.}

3. There are four primary areas where unresolved issues remain: (a) sale of copyrights to Alcon; (b) sale of accounting and audit rights to Alcon; (c) the extent of Warner Bros.' offset, recoupment and deduction rights; and (d) Alcon's ability to provide adequate assurance of future performance. While Alcon remains hopeful that these issues will be consensually resolved prior to the sale hearing, Alcon respectfully states as follows in support of this Joinder and Response.

**A.      Sale of the Copyrights to Alcon.**

4. Warner Bros.' objection to the sale of the Debtors' copyrights as part of the sale of the Library Assets is not well taken or supported by any caselaw or analysis. WB Objection, ¶ 93. The Court should overrule this portion of the WB Objection because the Debtors are permitted to sell their assets as they see fit in their business judgment (subject to authorization from this Court) and Warner Bros. provides no basis otherwise.

5. Further, Alcon will not agree to sever the copyrights from the Library Asset sale, nor would Alcon have sought to purchase the Library Assets without the sale of the copyrights. Accordingly, this portion of the WB Objection should be overruled.

**B.      The Accounting and Audit Rights are Not "Personal" to Warner Bros**.

6. Warner Bros. alleges that the critical accounting and audit rights under the Fundamental Contracts are personal to the Debtors and thus can somehow be excised from the Fundamental Contracts that Alcon assumes. *Id.*, ¶ 74.

7. As Warner Bros. itself notes, "a debtor may not pick and choose the portions of a specific contract that it prefers" because the contract must be assumed *cum onere*. *Id.*, ¶ 71 (and the citations therein). Likewise, Warner Bros. cannot object to Alcon's assumption of those portions of the Fundamental Contracts that Warner Bros. does not like.

8. Moreover, and for the reasons articulated in the Debtors' Response, the Fundamental Contracts are not personal services contracts and thus the audit and accounting rights cannot be personal to the Debtors.

9. "Courts make the determination of whether a contract is for personal services under state law in consideration of all facts and circumstances." *In re Vice Grp. Holding Inc.*, 652 B.R. 423, 431 (Bankr. S.D.N.Y. 2023) (citing *In re Health Plan of the Redwoods*, 286 B.R. 407, 409 (Bankr. N.D. Cal. 2002) (holding that all of the physician contracts were essentially identical and did "not require the physicians to perform personally").

10. The WB Contracts are governed by California law. "The statutes in [California] clearly manifest a policy in favor of the free transferability of all types of property, including rights under contracts." *Superbrace, Inc. v. Tidwell*, 124 Cal. App. 4th 388, 396 (Dist. Ct. App. 2004) (citing Cal. Civ. Code, §§ 954, 1044, 1458). Contracts involving a corporate entity rather than an individual, "evidence that [a] contract [is] not for personal services." *In re Vice Grp. Holding Inc.*, 652 B.R. at 43 (applying California law); *see also Haldor, Inc. v. Beebe*, 72 Cal. App. 2d 357, 366 (1945) ("[T]he instant case relates to a contract with a corporation which, as we have said, cannot, as such, render personal service."); *Lauter v. Rosenblatt*, 2020 U.S. Dist. LEXIS 115183 (C.D. Cal. June 30, 2020) ("Courts applying California law have found the fact that a party contracted with a corporation as evidence that a contract is not for personal services.").

11. In *In re Vice Grp. Holding Inc.*, the relevant contract was governed by California law and found not to be a personal services contract. *In re Vice Grp. Holding Inc.*, 652 B.R. at 43. The terms of the contract in question required the debtor to "produce, deliver, and license. . . a documentary series." *Id.* The party objecting to assignment, Showtime, had approval rights over creative elements and key personnel. *Id.* Showtime argued that the contract was a personal

services contract, noting that the debtors had unique skills that resulted in award-winning documentary productions, and expressed concern that the purchaser would not retain key personnel or creative talent used by the Debtor. *Id.* The court found the agreement was not a personal services contract and noted that Showtime contracted with a corporate entity rather than an individual, which is "evidence that the contract was not for personal services." *Id.* Further, the purchaser asserted it could meet the requirements of the Showtime contract, including "timely delivery," and "first class technical quality," which the court held were not sufficiently specific to qualify as personal services in any event. *Id.* And while the contract gave Showtime some control over key personnel, "the contract [did] not identify specific individuals to be involved in the creation" of the documentary series.

12. The nature of the Fundamental Contracts are clearly not personal and require no special skill on the part of Alcon. They are contracts between corporate entities that will require Warner Bros. to pay Alcon royalties related to Library Assets that Alcon acquires. As such, Warner Bros.' consent is not required to assume them and they must be assumed and assigned *cum onere*, with their critical audit and accounting rights.

C. **Warner Bros.' Deduction, Setoff and Recoupment Rights Will be Preserved to the Extent Required by the Bankruptcy Code.**

13. It is black letter law that assumption of an executory contract cures all pre-assumption defaults. *See* 11 U.S.C. § 365(b)(1)(A); *see also In re Cellnet Data Sys.*, 313 B.R. 604, 608 (Bankr. D. Del. 2004) ("When a bankruptcy court approves the assumption of an executory contract, it necessarily finds that no uncured defaults exist.").

14. The only defaults identified in the Warner Bros. Objection that must be cured as a condition of assumption and assignment of the Fundamental Contracts are those related to the Matrix Arbitration and the Wonka Arbitration. As Warner Bros. points out, $110 million of

Alcon's sale proceeds will be set aside to cure those defaults. As such, upon assumption assignment of the Fundamental Contracts and the funding of the Warner Reserve, Alcon will have cured any pre-assumption defaults and arrears remaining under the Fundamental Contracts.

15. The parties are negotiating appropriate language to the sale order to preserve Warner Bros.' deduction, setoff and recoupment rights after assumption, to the extent permitted by the Bankruptcy Code and the Fundamental Contracts. Such language must reflect that upon payment of the cure, if any, to which Warner Bros. is ultimately entitled, Alcon will have no further liability for prepetition breaches or defaults pertaining to those contracts.

### D.     Alcon Can Provide Adequate Assurance.

16. Alcon has certainly demonstrated its financial wherewithal to "perform" under the Fundamental Contracts and has on deposit with the Debtors in excess of $41.75 million towards the $417,500,000 purchase price.

17. Be that as it may, Alcon's role under the Fundamental Contracts is limited to mainly collecting a royalty stream that Warner Bros. must pay to Alcon. As such, the 365(b)(1)(C) bar for Alcon is exceptionally low. Recognizing that the ultimate purchaser of the Library Assets will be a newly-formed entity, an appropriate guarantee of that entity's obligations under the Fundamental Contracts will be provided to Warner Bros. to allay any legitimate concerns.

[*Remainder of Page Intentionally Left Blank*]

E.  **Conclusion and Reservation of Rights.**

18.  Alcon believes the other issues in the WB Objection will be consensually resolved, however, to the extent this is incorrect, Alcon reserves the right to supplement or amend this Joinder and Response, and to make other and further arguments at the sale hearing.

Dated: June 16, 2025

**LANDIS RATH & COBB LLP**

/s/ *Kimberly Brown*
Kimberly Brown (No. 5138)
George A. Williams III (No. 6964)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: brown@lrclaw.com
           williams@lrclaw.com

and

Vadim J. Rubinstein (admitted *pro hac vice*)
Noah Weingarten (admitted *pro hac vice*)
**LOEB & LOEB LLP**
345 Park Avenue
New York, New York 10154
Telephone: (212) 407-4000
Facsimile: (212) 407-4990
Email: vrubinstein@loeb.com
           nweingarten@loeb.com

*Counsel to Alcon Media Group, LLC*