**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
312.499.6300 main
312.499.6301 fax
www.sheppardmullin.com

August 21, 2025

**VIA CM/ECF**
The Hon. Thomas M. Horan
United States Bankruptcy Judge
824 North Market Street, 3rd Fl.
Wilmington, DE 19801

Re:   *In re Village Roadshow Entertainment Group USA Inc.*, *et al.*, Case No. 25-10475 (TMH)
      **Status Conference Regarding Sale of Derivative Rights**

Dear Judge Horan:

On behalf of Village Roadshow Entertainment Group USA Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[1] this letter responds to the issues the Debtors understand Warner Bros. Entertainment Inc. ("Warner") will raise at the status conference scheduled for August 22, 2025, regarding the sale of the Debtors' Derivative Rights assets (the "Status Conference").

On August 11, 2025, after a failed mediation to resolve the issues between the parties, Debtors' counsel circulated a draft scheduling order containing proposed discovery and briefing deadlines in connection with the sale hearing for the Derivative Rights (the "Sale Hearing") to various interested parties, including Warner. On August 19, 2025, Debtors' counsel participated in a telephone conference with Warner's counsel to discuss the draft scheduling order, during which Warner's counsel—for the first time—stated that Warner intended to seek a Court-ordered bifurcation of the Sale Hearing. Specifically, Warner seeks a preliminary ruling from the Court that the Debtors did not exercise sound business judgment in selecting Alcon Media Group, LLC ("Alcon") as the Successful Bidder by failing to assess the risk that Warner could prevail on its substantive sale objections and corresponding costs. In doing so, Warner asks the Court to hold a mini-trial limited solely to Warner's contention that *it* should have been declared the Successful Bidder for the Debtors' assets in Lot 2 (the "Derivative Rights") at the auction held on May 28, 2025 (the "Auction") rather than Alcon. Warner makes this extraordinary request in its capacity as a frustrated bidder seeking to supplant the Debtors' business judgment in an effort to advance its own interests.

Warner's challenge to the Debtors' business judgment in selecting Alcon as the Successful Bidder is inextricably intertwined with Warner's substantive objections to the sale and cannot be bifurcated from the broader Sale Hearing. By its efforts to force the Debtors to pre-litigate this issue, Warner seeks a free attempt at blocking the Derivative Rights sale without the risk of losing on any of its substantive objections at the Sale Hearing. The Debtors therefore urge the Court to reject Warner's request, which has no procedural or substantive basis (or benefit), and allow the Debtors to proceed to the Sale Hearing as planned, where Warner has already preserved all of its substantive objections to the sale.

---

[1]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures Order.

### I. Background

The relevant facts are straightforward. Warner attended the Auction for the Derivative Rights and actively participated in ten rounds of competitive bidding. At the conclusion of the tenth round, Alcon's bid was $18,500,000 and Warner's bid was $17,500,000. Instead of submitting an overbid in the eleventh round, Warner, for the first time, asserted that its $17,500,000 bid, despite being $1,000,000 less than Alcon's, should be deemed higher and better—***solely because***, if the Debtors accepted Alcon's higher bid, the Debtors' litigation costs against Warner would reasonably exceed that million dollar delta. Curiously, Warner did not raise this argument until after ten rounds of bidding despite the fact that even smaller deltas—the initial bid increment of $250,000 and subsequent bid increment of $500,000—existed between Warner's bid and Alcon's bid through the first several rounds of bidding. After careful consideration, the Debtors selected Alcon's bid as the highest and best bid.

On May 29, 2025, the Debtors filed the Notice of Successful Bidder [Docket No. 446]. In accordance with the Bid Procedures Order, Warner had a Post-Auction Objection Deadline, twelve days beyond that of other parties, which passed on June 12, 2025. Warner did not raise any objection to the Debtors' conduct at the Auction or the fundamental fairness of the Auction process prior to Warner's Post-Auction Objection Deadline. Following the Auction, the Debtors and Warner agreed to attend mediation on July 24, 2025, for the purpose of resolving the larger issues between the parties. The Debtors agreed to adjourn the Sale Hearing pending the conclusion of the mediation—and did so by filing notices of adjournment on June 13 and June 20—for the express purpose of exploring a potential settlement with Warner and a consensual sale of the Derivative Rights.

When mediation between the Debtors and Warner proved unsuccessful, the Debtors—in response to statements by Warner's counsel that Warner intended to pursue written discovery and depositions in connection with the Derivative Rights sale—worked expeditiously to draft a scheduling order for discovery and briefing deadlines for the Sale Hearing, which was circulated to interested parties on August 11, 2025. The scheduling order set the Sale Hearing for October 20, 2025. Warner first responded to the draft scheduling order on August 18, 2025, by requesting a telephone conference with the Debtors, during which Warner stated its intent to seek Court approval to bifurcate the Sale Hearing and challenge the Debtors' business judgment in selecting Alcon as the Successful Bidder.

### II. Warner Has No Basis to Challenge the Debtors' Selection of Alcon as the Successful Bidder Through Isolated Litigation Prior to the Sale Hearing

Warner asks this Court to substitute its judgment for that of the Debtors' management. Courts approve asset sales where the sale "constitutes a reasonable and sound exercise of the Debtor's business judgment[.]" *In re Dura Automotive Sys., Inc.*, 2007 WL 7728109, at *5 (Bankr. D. Del. Aug. 15, 2007). The Third Circuit has made clear that a debtor's business judgment is entitled to substantial deference. *See*, *e.g.*, *Stanizale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 234 (3d Cir. 2005) (indicating the "business judgment rule is a presumption that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest") (internal quotations omitted). The business judgment rule shields a debtor's management decisions from judicial second-guessing.

**SheppardMullin**

August 21, 2025
Page 3

In addition, the deference afforded to a debtor's business judgment under these circumstances is designed to protect the interests of the broader estates—not those of an unsuccessful bidder. *See, e.g., In re MTE Holdings LLC*, 2021 WL 3743201, at *8 (Bankr. D. Del. Aug. 17, 2021); *see also In re AIO US Inc.*, No. 24-11836 (Bankr. D. Del. June 6, 2025), ECF No. 1125 at *19 ("Courts have long held . . . that a disappointed bidder in a bankruptcy auction generally lacks standing to challenge the sale—except to the extent that the challenger calls into question the 'intrinsic fairness' of the sale process."). This doctrine must hold particularly true in a case such as this, where a frustrated bidder's sole basis for challenging the debtor's business judgment is that such bidder threatens litigation so costly it will surpass the incremental value offered by the successful bidder.

Since the Auction, Warner has claimed, both publicly in its preliminary objection to the Derivative Rights sale and privately during multiple conversations with Debtors' counsel, that the Debtors abused their business judgment in choosing Alcon as the Successful Bidder. This has no factual support. Warner provided the Baseline Bid for the Derivative Rights and the Debtors accepted every bid that Warner tendered throughout the process. At no point did Warner contest the valuation of either bid, or that Alcon was not meeting any minimum bid increment. The Debtors' only goal was and remains to maximize the value of the Derivative Rights. After due deliberation, the Debtors selected Alcon's bid—which was $1,000,000 higher than Warner's—as the Successful Bid. Aside from Alcon's bid being higher and better on its face, the Debtors have fully considered the merits of Warner's sale objections, and believe they have the right, in accordance with applicable law, to sell the Derivative Rights to Alcon notwithstanding the absence of Warner's consent. Warner is also incorrect that its bid would have guaranteed a litigation-free path to closing. For its part, Alcon very likely would have contested the Debtors' decision to select Warner when its bid was facially higher, especially because Warner's objections have not been adjudicated. The Debtors' business judgment cannot be analyzed in a vacuum, and bifurcation of the Sale Hearing to permit isolated litigation on this issue alone would be highly prejudicial to the Debtors and their estates. Further, the Debtors do not believe that conducting multiple hearings (along with related depositions and discovery) is more efficient than handling all matters together at the Sale Hearing.

Warner raises no objection to the integrity of the Auction process. Instead, Warner challenges only the Debtors' business judgment in selecting Alcon as the highest and best bid. However, given the $1,000,000 higher purchase price offered by Alcon, Alcon's financial wherewithal and ability to close the transaction, and the Debtors' confidence in the merits of their responses to Warner's sale objections, the Debtors determined, in their reasonable business judgment, to select Alcon as the Successful Bidder. Additionally, Warner agreed, and remains bound, to serve as the Back-Up Bidder, meaning the estates do not face significant downside risk by the Debtors' continued pursuit of the sale to Alcon for a higher purchase price. On a full factual record at the Sale Hearing, the Debtors intend to demonstrate that they exercised their business judgment in a fair and reasonable manner throughout the sale process. The Debtors ask that the Court reject Warner's attempts to disrupt this process and allow the Debtors to proceed with the Sale Hearing.

Dated: August 21, 2025           Respectfully submitted: _____

                                                         Justin R. Bernbrock