

O'Melveny & Myers LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201-2692

T: +1 972 360 1900
F: +1 972 360 1901
omm.com

File Number:

August 21, 2025

**Scott Drake**
D: +1 972 360 1915
sdrake@omm.com

**Re: In R: Village Roadshow Entertainment Group USA Inc., et al., Case No. 25-10475**

To the Hon. Thomas M. Horan,

On August 19, 2025, Warner Bros. Entertainment Inc. and its affiliates (collectively, "Warner Bros.") requested a status conference from the Court regarding the Debtors' Sale Motion[1] in connection with the Debtors' proposed sale of Derivative Rights to Alcon Media Group, LLC and Warner Bros.' preliminary Omnibus Sale Objection related thereto.[2] Warner Bros. submits this letter at the Court's request, ahead of the scheduled August 22, 2025 status conference.

Warner Bros. believes the Court should bifurcate the Derivative Rights sale hearing to allow the Court to first determine the threshold issue of whether the Debtors' selection of Alcon as the Successful Bidder should be approved.  As explained below, there is only a $1 million difference between Alcon's bid and Warner Bros.' bid for the Derivative Rights ($18.5 million and $17.5 million, respectively).  When factoring in the closing risk and significant professional fees associated with a fully contested sale hearing, the net recovery from the Alcon bid is less than the Warner Bros. bid. As a result, Warner Bros. believes that it would be in the best interests of all parties to bifurcate the sale hearing so that the determination of whether Alcon or Warner Bros. is the Successful Bidder can be decided before significant fees and costs are incurred.

As the Court is aware, the Auction for the Debtors' assets in connection with the Sale Motion took place on May 28, 2025. Both Warner Bros. and Alcon (alongside other third-parties) bid in connection with the Debtors' proposed sale of the Derivative Rights. The Debtors selected Alcon as the "Successful Bidder" for the Derivative Rights at the conclusion of the Auction upon Alcon's submission of a final bid of $18.5 million in connection with those assets. The Debtors also designated Warner Bros. as the "Back-Up Bidder" upon Warner Bros.' submission of a $17.5 million bid. At the Auction, Warner Bros. objected to the Debtors' designation of Alcon as the Successful Bidder for the Derivative Rights given the significant closing risk due to Warner Bros.' objections to the sale of Derivative Rights to any third party and that the net recovery to the Debtors' estate from the Warner Bros. bid would be greater when factoring in the significant cost of litigating the factual and legal issues surrounding Warner Bros.' objections to a proposed sale to Alcon. Despite these objections, the Debtors proceeded to formally designate Alcon as the Successful Bidder for the Derivative Rights.[3]

The Debtors did not move forward with the Derivative Rights sale to Alcon on June 18, 2025 (the same date as the Library Asset sale hearing). Although the parties mutually continued

---

[1] *See* D.I. 11 (the "Sale Motion"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, or Omnibus Sale Objection or Bid Procedures Order, as applicable.

[2] *See* D.I. 518, 521 (Warner Bros.' "Omnibus Sale Objection").

[3] *See* D.I. 446; *see also* D.I. 276 (the "Bid Procedures Order").

---

Austin  •  Century City  •  Dallas  •  Houston  •  Los Angeles  •  Newport Beach  •  New York  •  San Francisco  •  Silicon Valley  •  Washington, DC
Beijing  •  Brussels  •  Hong Kong  •  London  •  Seoul  •  Shanghai  •  Singapore  •  Tokyo

O'Melveny

their respective response deadlines in connection with the Derivative Rights to a later date, Warner Bros. raised its initial objections to the sale of the Derivative Rights in its Omnibus Sale Objection on June 13, 2025.

Through its Omnibus Sale Objection, Warner Bros. sets forth certain reasons why the Derivative Rights Agreements cannot be assumed and assigned to Alcon in connection with the Derivative Rights sale. This includes, *inter alia*, that (i) the Derivative Rights Agreements are financial accommodations that cannot be assumed and assigned to Alcon under section 365(c)(2) of the Bankruptcy Code, (ii) the Derivative Rights Agreements contain Warner Bros.' exclusive intellectual property rights and otherwise constitute personal service type agreements that cannot be assumed and assigned absent Warner Bros.' consent, and (iii) Alcon cannot provide adequate assurance of future performance in light of the personal nature of those agreements. *See* Omnibus Obj. ¶¶ 6-7, 33-63. Warner Bros. also objected to the Debtors' selection of Alcon as the Successful Bidder, asserting the Warner Bros.' $17.5 million bid "is the highest and best that the estate received, because its offer for the Derivative Rights can actually close while the current proposal cannot." *Id.* ¶ 7. Warner Bros. has additional objections in connection with the Debtors' proposed sale of Derivative Rights to Alcon specifically, which such and other objections are reserved in connection with the continued Derivative Rights sale hearing to Alcon.

As Warner Bros. states in its Omnibus Sale Objection, Warner Bros. remains ready to close on its $17.5 million offer. *See id.* The Debtors have been holding Warner Bros.' deposit in connection with its Derivative Rights bid since May 16, 2025. The Debtors, however, have continued to postpone the Derivative Rights sale without providing Warner Bros. with a copy of the Debtors' asset purchase agreement with Alcon for the Derivative Rights despite Warner Bros.' repeated requests. *See id*. ¶ 63. Indeed, Warner Bros. has not seen the Alcon Derivative Rights APA to date.

In addition, the Debtors have recently suggested in their filings that, notwithstanding that the Derivative Rights are embodied in, and arise from, the Derivative Rights Agreements, the Debtors might reject the Derivative Rights Agreements to have Alcon (or another third party) exploit the Derivative Rights free from any contractual restrictions as a "co-owner" under federal copyright law.[4] The Debtors presumably believe that such rejection would facilitate a sale of Derivative Rights to Alcon or another third party for $18.5 million (a $1 million gross increase over Warner Bros.' bid). Warner Bros. contests the Debtors' characterization of the effect of a potential attempt to reject the Derivative Rights Agreements, including the Debtors' mistaken assertion that such rejection (a breach) would increase their own interest in the Derivative Rights or enable them to sell those rights free from the binding, bargained-for restrictions set forth in the parties' controlling documents. If the Debtors were able to pursue such a path, it would add virtually nothing to the estate, but it could create massive confusion with respect to the approximately 90 pictures in the Derivative Rights library with Warner Bros. This presents the possibility of inflicting damages on Warner Bros. for little or no gain, and would translate into significant claims by Warner Bros. against the Debtors. Warner Bros. has accordingly continued to seek extensions of the Challenge Deadline alongside the Official Committee of Unsecured Creditors to preserve its claims against the Debtors and Prepetition Senior Secured Notes Parties (who also serve as the Debtors' equity-holders). D.I. 460, 613, 700.

---

[4] *See* D.I. 525, 533 (the Debtors' "Reply") at ¶ 6, and declaration in support thereof [D.I. 527] (Filed Under Seal).

Notably, all of these issues would be mooted if Warner Bros. is instead deemed the Successful Bidder for the Derivative Rights.[5] ***For a mere $1 million more***, the Debtors have instead embarked on a scorched-earth path to litigate against Warner Bros. over the Derivative Rights, the costs of which will (if they have not already) far surpass the $1 million difference in the Warner Bros. bid versus Alcon's bid. Indeed, on August 11, 2025, the Debtors provided Warner Bros. with extensive proposed discovery schedule in connection with the Derivative Rights sale hearing, which the Debtors are now targeting for October 20, 2025. Given that there is no economically rational basis for the Debtors' action, Warner Bros. can only assume that the Debtors' behavior is driven by animus towards Warner Bros. The Debtors themselves admitted in connection with the first day hearing in these cases that in their view, the parties' relationship had been "irreparably decimated."[6] Instead of fighting at any cost to prevent Warner Bros. from getting the Derivative Rights, the Debtors should choose the much simpler pathway that would result in the greatest net recovery to their estates.

Against this backdrop, Warner Bros. believes it would be in the best interests of all parties and the estates to have the Court bifurcate the Derivative Rights sale hearing so that the Court can first determine the identity of the Successful Bidder for the Derivative Rights. Warner Bros. submits the Court has broad discretion to do so, including under section 105(a) of the Bankruptcy Code in conjunction with Fed. R. Bankr. P. 7042 and the Court's ability to interpret, modify and enforce its own orders, including the Bid Procedures Order.[7] Bifurcation is appropriate because should this Court determine that Warner Bros. is the Successful Bidder, the months of additional proposed discovery and briefing as to Warner Bros.' objections that would follow would be rendered moot. *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (bifurcation "may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue"). Such litigation would otherwise far surpass the $1 million difference between the Alcon and Warner Bros. bids. Having a much narrower and less costly hearing on this threshold issue would likely obviate the need to go forward with a much lengthier and extremely costly hearing that Warner Bros. believes will still yield the same result— that Warner Bros. is awarded the Derivative Rights, but only after the Debtors' have fully exhausted the $1 million incremental difference between the bids.

Accordingly, Warner Bros. submits that the Court should bifurcate the Derivative Rights sale hearing to determine whether Warner Bros. should be the Successful Bidder. Warner Bros. looks forward to discussing these issues with the Court at the upcoming status conference.

---

[5] *See also* Bid Procedures § 12 (providing for the Back-Up Bidder to be deemed the Successful Bidder but only in the scenario where "the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder.").

[6] *See Declaration of Keith Maib in Support of First Day Relief* [D.I. 2] ¶ 30.

[7] Fed. R. Bankr. P. 7042 (incorporated into contested matters under Fed. R. Bankr. P. 9014(c)(1)) applies Fed. R. Civ. P. 42, which provides in relevant part that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims . . . ." Fed. R. Civ. P. 42(b). Under Rule 42(b), a court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management. *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520 (D. Del. 2002). The Court also has broad powers to interpret, modify, and enforce its own orders, including the Bid Procedures Order. *See generally XXIII Cap. Ltd. v. Goodwin (In re Decade, S.A.C., LLC)*, No. 23-209 (MN), 2025 U.S. Dist. LEXIS 58534, at *13 n.3 (D. Del. Mar. 28, 2025) (citing 11 U.S.C. § 105(a)).

O'Melveny

Sincerely,

*/s/ Scott P. Drake*
Scott P. Drake

**O'MELVENY & MYERS LLP**
Scott P. Drake (*Admitted pro hac vice*)
Emma Jones (*Admitted pro hac vice*)
2801 North Hardwood Street, Suite 1600
Dallas, Texas 75201
Telephone: (972) 360-1900
Email: sdrake@omm.com
Email: eljones@omm.com

Steve Warren (*Admitted pro hac vice*)
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 430-6000
Email: swarren@omm.com

Daniel M. Petrocelli (*Admitted pro hac vice*)
Matt Kline (*Admitted pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Email: mkline@omm.com

-and-

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Curtis S. Miller (No. 4583)
Matthew B. Harvey (No. 5186)
1201 North Market Street, 16th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: cmiller@morrisnichols.com
Email: mharvey@morrisnichols.com

*Counsel to Warner Bros. Entertainment Inc., and its Affiliates*