1  small dollar value and innocuous type of rights license and distinct from a brand

2  partnership or brand affiliation license), and only to the Exhibit A Image.

3       92.    Alcon does not yet know all of what actually happened internally at

4  WBDI, or in WBDI communications with Musk and Tesla, as to why none of them

5  ever contacted Alcon about the larger brand affiliation proposal that was really

6  effectively at issue.  Alcon is unlikely to know without litigation discovery.

7  However, Alcon does know at least the following three things: a) the magnitude

8  and nature of the cybercab event, and the contemplated BR2049 use in it, meant

9  that the issue was well beyond a mere "clip license," but rather involved a more

10  substantive brand affiliation, requiring significant business discussions with Alcon

11  to proceed; b) none of the Defendants or anyone acting on their behalves ever made

12  any contact with any Alcon representative about the cybercab event prior to the

13  actual day of the event, not even for a "clip license"; and c) none of them ever

14  made any larger brand affiliation outreach to Alcon at all, even on the day of the

15  event.  Instead, Alcon learned about Defendants' interest in BR2049 on the day of

16  the event, only six hours prior to the event's scheduled commencement, as follows:

17       93.    Shortly after 12:00 p.m. PDT (noon) on October 10, 2024, the day of

18  the event, a WBDI shared services clip licensing executive based in Burbank and

19  engaged in the WBDI-Tesla-Musk BR2049 rights clearance process realized that

20  WBDI's shared services licensing personnel could not ever clear the proposed

21  BR2049 cybercab event affiliation without reaching out to Alcon and/or Alcon's

22  international distribution partner, including because the event required global

23  rights, not only domestic, since the event would be livestreamed globally.  On

24  information and belief, the WBDI shared services clip licensing executive

25  communicated the problem directly or indirectly to WBDI executives and to

26  Tesla's Adametz or Lili, informing them that either Alcon and/or Alcon's

27  international distribution partner would have to grant permissions,

28  or the BR2049 affiliation could not occur, since international rights were involved.

---

FIRST AMENDED COMPLAINT

WB_0000978

94.     The WBDI shared services clip licensing executive then sent an email "heads up" to their counterpart at Alcon's international distribution partner that they might be getting an emergency rush basis BR2049 rights permission request for "a Tesla even[t] happening today on our lot (sorry)." The shared services licensing executive at Alcon's international distribution partner communicated that they would be unable to help without Alcon's direct involvement, resulting in contact finally being made with Alcon for the first time (just several hours before the event's scheduled commencement), by looping in an Alcon legal and business affairs executive into a portion of the clearance communication chain.

95.     In a resulting combination of telephonic and email communications among a) Alcon's legal department and b) the above-referenced two shared services clip licensing executives at WBDI and Alcon's international distribution partner, Alcon sought further information about the proposed BR2049 rights actually being requested.  Although the information given was sparse, Alcon learned enough information for Alcon's co-CEOs to consider the proposal and firmly reject it, which they did.

96.     By no later than about 2:00 p.m. PDT on October 10, 2024, by a combination of emails and telephone communications, Alcon's legal and business affairs executive communicated back to the WBDI shared services clip licensing executive and the international distributor shared services clip licensing executive that: a) Alcon refused all permissions for the October 10, 2024 WBDI-Tesla event; b) Alcon was adamant that under no circumstances should there be any BR2049 affiliation, or any other Alcon affiliation, express or implied, with Tesla, X, Musk or any Musk-owned company in the course of the October 10, 2024 event, or ever (including a requirement to note Alcon's position and directions in Warner Bros. Pictures and WBDI databases); and c) the two shared services clip licensing executives were to please relay both of these a) and b) messages back to WBDI, Tesla and X, including so that there would be no mistakes in the conduct of the

---

FIRST AMENDED COMPLAINT

event.  Both of the shared services clip licensing executives reported back to Alcon that they had communicated both messages as requested.  Alcon is informed and believes and thereon alleges that in fact they did.  However, Alcon is further informed and believes that the issue was then raised to a very high level within the WBDI organization, essentially to the effect that Musk and Tesla were not getting something that they want, and WBDI either effectively blessed Musk and Tesla to incorporate BR2049 in the event anyway, and/or failed to take meaningful action to stop them, although such action was available.

97.    Alcon is thus informed and believes and thereon alleges that by no later than about 2:00 p.m. PDT on October 10, 2024, WBDI, Tesla and X all knew and understood that Alcon had not only refused any permissions to use any BR2049 copyrighted elements in connection with the WBDI-Tesla event, but Alcon had also expressly and clearly objected to any express or implied BR2049 affiliation with the event, or with Tesla, Tesla's cybercab, Musk, or X.  However, Alcon is also informed and believes and thereon alleges, subject to the need for discovery, that by the issue being raised to the high level within WBDI and WBDI either blessing Musk and Tesla to do it or not stopping them, Musk felt empowered to do it anyway.

98.    Musk was personally doing the event presentation and would have to know what he was presenting and the parameters.  Based on that reality and all the circumstances known to Alcon so far, Alcon is informed and believes, and on that basis and subject to the need for discovery, makes the allegations of this paragraph 98: At some point between about 2:00 p.m. PDT and the approximately 8:00 p.m. PDT actual start time of the event on October 10, 2024, Musk personally became aware of Alcon's permission denials and express objections (likely directly or indirectly through Adametz or Lili).  He thus personally knew and understood that to incorporate BR2049 into the event presentation at all would be improper and an unauthorized misappropriation of BR2049 goodwill.  He did it anyway.

FIRST AMENDED COMPLAINT

WB_0000980

### Defendants' October 10, 2024 Intentional Copyright Infringement and Brand Misappropriation

99.     The event was scheduled to begin at 7:00 p.m. PDT on October 10, 2024, but did not actually begin until about 8:00 p.m. PDT.  In a brief introduction of a minute or less, a Tesla representative named "Franz" took the stage.  Franz's only substantive remark was to note that the presentation was being made from the Warner Bros. lot, the home of many science fiction films that show visions of the future (a clumsily transparent excuse to attach Tesla and the cybercab to Hollywood brands).  Franz then quickly segued to saying that the event would involve Tesla showing a vision of the future, and who better than Musk to do it. The livestream then shifted to a combination of aerial shots and ground cameras showing a cybercab arriving at an on-lot theater, some distance away from the presentation stage building.  Musk emerged from the theater and entered the cybercab after silently waving to a small crowd.

100.     The livestream tracked the Musk-bearing cybercab from various camera vantage points as it autonomously slowly rolled him to the presentation stage building at another part of the lot.  Musk exited and took the event stage.  He spent about another minute on welcoming remarks and explaining that there were 20 cybercabs and another 30 fully autonomous and driverless Tesla Model Ys at the event that attendees would be able to take a ride in.

101.     Then to commence the actual presentation, Musk said: "So you see a lot of sci-fi movies where the future is dark and dismal, where it's not a future you want to be in."  As he said this, the event's global livestream feed changed to a full screen display of a presentation slide with an image of the Earth from space at sunrise, with the words "What Kind of World Do We Want to Live In?"  This first slide stayed on the full-screen livestream feed for less than two seconds.

102.     Then, the livestream full screen display shifted to Musk's second slide, which the livestream displayed for about 11 seconds.  The second slide is an

WB_0000981

image that looks (on a first initial visual read) like a motion picture still photo
(although it isn't) of a male figure seen from behind, with close-cropped hair,
wearing a trench coat or duster, standing in almost full silhouette as he surveys the
abandoned ruins of a city, all bathed in misty orange light. In the upper left corner
the words "Not This" appear superimposed on part of the orange sky. Exhibit C is
a screenshot of this second slide image from Musk's presentation ("Presentation
Slide 2 Image").

103.   The Presentation Slide 2 Image (Exhibit C) was clearly intended to
read visually either as an actual still image from BR2049's iconic sequence of K
exploring the ruined Las Vegas, or as a minimally stylized copy of or illustration of
such a still image, or otherwise as an illustration of a scene from BR2049 and
specifically its Las Vegas Sequence. It does in fact objectively read like one or all
of these. From Alcon's examination, it seems likely to have been generated by: a)
copying the Exhibit A Image and the Exhibit B Images (or similar images from the
Picture's Las Vegas sequence), or even possibly the full BR2049 motion picture
work (or qualitatively significant portions thereof) in audiovisual form, into an AI
image generator, and b) then asking an AI image generation engine to make "an
image from the K surveying ruined Las Vegas sequence of 'Blade Runner 2049,'"
or some closely equivalent input direction. On information and belief, and subject
to the need for discovery, Alcon alleges that in fact this, or something closely akin
to it, is how the Presentation Slide 2 Image (Exhibit C) was generated, and for the
bad faith intentional purpose of affiliating BR2049 and its goodwill with Tesla's
cybercab, over Alcon's denial of permission and express objections. ("Exhibit C
AI Image Generation Alternative Theory 1".)

104.   Alcon pleads the following alternative facts, on information and belief
and subject to the need for discovery, and subject to alternative pleading rules: The
Presentation Slide 2 Image was generated by Defendants or one of them first
selecting or otherwise obtaining what Defendants claim is an (unidentified)

FIRST AMENDED COMPLAINT

WB_0000982

1    "licensed image" as a background and then directing an AI image generator to add

2    "Elon Musk in a duster in the foreground," or similar direction.  On the same basis,

3    Alcon further alleges that the unidentified "licensed image" was itself created in

4    essentially the same way as described in Exhibit C AI Image Generation

5    Alternative Theory 1 (and that thus the underlying "licensed image" was itself

6    created by infringing Alcon's copyright in BR2049).  All on the same basis, Alcon

7    alleges that Defendants generated Exhibit C in this way for the bad faith intentional

8    purpose of affiliating BR2049 and its goodwill with Tesla's cybercab, over Alcon's

9    denial of permission and express objections.  ("Exhibit C AI Image Generation

10    Alternative Theory 2".)

11       105.  On information and belief, and subject to the need for discovery,

12    Alcon makes the allegations in this paragraph 105: The Presentation Slide 2 Image

13    was generated in the above way or ways by an employee or agent of one or more of

14    WBDI, Tesla (possibly by Adametz or Lili), or even possibly by Musk himself, and

15    this was done with knowledge of the improper nature and purpose of the image

16    generation request.  All of the Defendants participated in its creation, and in its

17    display in the presentation at the event, from a WBDI-owned building and studio

18    lot, on WBDI-owned video screens, and otherwise using WBDI-owned technology

19    infrastructure, operated by or in conjunction with Tesla employees, all acting in

20    whole or in part subject to the direction and control of Musk, at least during the

21    time of the event.  Defendants all acted with the knowledge and understanding that

22    the X livestream or other equivalent video record of the event would be retweeted,

23    reposted, or otherwise picked up and redistributed tens of thousands or even

24    millions of times across the United States and the world immediately and

25    continuing for days after the event.  In any event, all three of WBDI, Tesla and

26    Musk knew and understood the unauthorized nature of the image and the improper

27    purpose behind it, and encouraged or otherwise lent their support to the improper

28    endeavor.  In the alternative, as to any and all Defendants who did not so actively

FIRST AMENDED COMPLAINT

WB_0000983

1 | participate, such Defendants ratified the conduct and knowingly accepted the
2 | benefits of it.

3 |       106.   If there were any doubt that Defendants intended to evoke BR2049
4 | with the Presentation Slide 2 Image, Musk erased them with his voiceover
5 | comments during the approximately 11 seconds that the infringing Presentation 2
6 | Image was completely filling the livestream screen.  He said: "You know, I love
7 | 'Blade Runner,' but I don't know if we want that future.  I believe we want that
8 | duster he's wearing, but not the, uh, not the bleak apocalypse."  The Presentation
9 | Slide 2 Image then disappeared and Musk segued to talking about how what we all
10 | should want is a happier looking future, and how happy and joyful his vision of
11 | cities and highways filled with driverless robot cars will be and why.

12 |       107.   Although Musk said the words "Blade Runner" without the year
13 | number (without "2049"), he clearly specifically meant to evoke BR2049 rather
14 | than the original 1982 Picture, and he was motivated to do so.  The two films are
15 | clearly related, but BR2049 has its own distinct brand and secondary meaning, and
16 | BR2049's specific goodwill is far more relevant to Tesla's and Musk's cybercab
17 | pitch and product.

18 |       108.   Although the 1982 Picture does prominently feature flying car
19 | "spinners," the cars in the 1982 Picture are not shown to be wholly or even
20 | partially autonomous, or even shown to employ artificial intelligence themselves in
21 | any way.  None of the cars in the 1982 Picture play any role as a quasi-sentient
22 | companion to the Deckard lead character in the 1982 Picture, like K's spinner does
23 | for K in BR2049.  Pointedly, then, if you are a company (or own one) specifically
24 | trying to market artificially intelligent, wholly or partially autonomous self-driving
25 | cars (as Tesla and Musk are), the 1982 Picture has little or no specifically relevant
26 | context.  In contrast, BR2049 has extremely relevant context and worldwide
27 | goodwill in precisely the areas of artificial intelligence, self-driving capability, and
28 | autonomous automotive capability that Tesla and Musk are trying to market.

FIRST AMENDED COMPLAINT

WB_0000984

109.   Musk did successfully evoke BR2049 specifically, including to consumers and potential car maker and car brand customers of Alcon, and that is true even though Musk only said the words "Blade Runner" without adding the year "2049."  For the reasons detailed in the next paragraphs below, Musk's act of displaying the Exhibit C Image -- an image of a man in near-silhouette, with close-cropped hair and wearing a duster, while he surveys an orange-light-bathed ruined and abandoned cityscape -- and displaying it for 11 seconds while Musk talks about "Blade Runner" and a specifically "apocalyptic" future – that is all specifically evocative of BR2049, and not of the 1982 Picture.

110.   While both the 1982 Picture and BR2049 show dystopian urban futures, only BR2049 has a specifically apocalyptic setting.  Only BR2049 has an abandoned and ruined city (Las Vegas) that has suffered an event of extreme destruction (the detonation by terrorists of a dirty nuclear device).  The ruined Las Vegas is where the most dramatically charged events of the BR2049 story take place (K's encounter with the long-lost Deckard).  The setting has striking color design, cinematography and other visual elements: it is distinctly bathed in "apocalyptic" misty orange light, just like the Presentation Slide 2 Image and which the 1982 Picture does not have in any comparable scene.  Throughout BR2049, there also are general references and story elements about civilization having semi-recently suffered a broader, apocalyptic nuclear conflict in the mid-range past, including electromagnetic pulse activity that destroyed many electronic records, making investigation of the past difficult.

111.   In contrast, the 1982 Picture is set in a dystopian urban landscape of a then-futuristic 2019 Los Angeles, but the 1982 Picture's setting is specifically not apocalyptic.  In the 1982 Picture, there has not been any dirty nuclear device, or nuclear electromagnetic burst which destroyed electronic records, or other apocalyptic destruction that has hit Los Angeles or Las Vegas or any other location.  If anything, the urban setting of the 1982 Picture is the opposite of

---

FIRST AMENDED COMPLAINT

WB_0000985

abandoned and ruined: it is overrun with too much ongoing industry and suffering

from overpopulation.  It is not a stark, lonely, misty, orange, dry, radiated desert

ruin like BR2049's Las Vegas or the Presentation Slide 2 Image, but rather is an

overcrowded neon urban prison, where the citizens are trapped in constant night

plagued by perpetual rain and an ever-present bombardment of consumer

advertising.  In the 1982 Picture, neither the main character nor anyone else ever

goes to any orange-colored post-apocalyptic ruined city or any other such location,

in a duster or otherwise.  Further, while in BR2049, Deckard is (or was) a "blade

runner" who appears in the Picture's Las Vegas Sequence setting, he never wears a

duster in BR2049 at all: Musk's voiceover reference to a blade runner wearing a

duster in a post-apocalyptic setting while directing the audience to the Presentation

Slide 2 Image/Exhibit C, can only be a reference to K (not Deckard).

112.    Musk thus very clearly meant specifically to evoke to the audience

including actual and potential purchasers and the consuming public, not the 1982

Picture, but rather BR2049 and everything that goes with it -- including artificially

intelligent autonomous cars like the Tesla cybercab being pitched at the event. He

successfully did.

113.    Any argument that Musk and his co-Defendants only meant to talk

broadly about the general idea of science fiction films and undesirable apocalyptic

futures and juxtaposing them with Musk's ostensibly happier robot car future

vision, and that they just used BR2049 by chance, without conscious awareness of

and intent to appropriate BR2049's special secondary meaning in the context of

trying to sell artificially autonomous cars, is not credible.

114.    First, as detailed in foregoing paragraphs, there is a clear record that

WBDI and Tesla were specifically interested in BR2049, as late as mere hours

before the event, and not just any BR2049 Image, but the Exhibit A Image

prominently featuring K's artificially intelligent autonomously capable spinner.

///

---

FIRST AMENDED COMPLAINT

WB_0000986

115. Second, if Musk by his presentation was only trying to use an exemplary science fiction movie to make a rhetorical point, there were much better choices actually in the WBDI library (or the library of WBDI's subsidiary, Warner Bros.) for Musk to reference, given what his point ostensibly was. Musk's ostensible point was "science fiction film futures look bleak and not thinking enough about transportation technology risks that kind of apocalyptic future; I can help us do better with my cybercabs, but you must actively choose to do that and take action about it." If that was really the only point he was trying to make and his only aim, there are better films actually in the WBDI library (or the library of WBDI's subsidiary, Warner Bros.) to make that point and hit that mark.

116. Every single one of the five "Mad Max" movies in WBDI's (or its subsidiary Warner Bros.'s) motion picture library ("Mad Max," "The Road Warrior," "Mad Max Beyond Thunderdome," "Fury Road," and "Furiosa: A Mad Max Saga") deals far more specifically than BR2049 with that ostensible message. Every one of the Mad Max movies is set in an apocalyptic future where gas-powered, non-autonomous vehicles not only played a part in bringing about civilization's end (wars over oil), but where gasoline and gas-powered non-autonomous cars continue to be what the remaining humans fight with and about in the post-apocalyptic wasteland. Any of those "Mad Max" movies in the WBDI library (or the library of WBDI's subsidiary, Warner Bros.) thus would have made much more sense to use, if the true purpose of referencing a specific film was to make a rhetorical point.

117. The entire opening and its forced references to science fiction films generally was never really for Musk to make a rhetorical point, though. Franz's and Musk's Hollywood film rhetoric was just a contrivance for something else more economically valuable to the Defendants. The WBDI lot location, and especially the strained science fiction film references, were all clearly an intentional effort to affiliate Tesla and its cybercab with Hollywood brands, and at

WB_0000987

1  a time when Musk and Tesla are on the outs with Hollywood creatives and brands.

2  It was all about appropriating desirable Hollywood associations, and if possible,

3  Hollywood associations with special resonance to artificial intelligence and

4  strikingly-designed autonomous cars.

5      118.   The "Mad Max" movies are great, and so are many other dystopian-

6  future or apocalyptic-future movies actually in WBDI's library (or the library of

7  WBDI's subsidiary Warner Bros. Pictures).  But those movies don't have massive

8  consumer goodwill specifically around really cool-looking (Academy Award-

9  winning) artificially intelligent, autonomous cars.  BR2049 does.  It was the best

10  and most relevant film brand for Tesla to appropriate, or one of the best.

11      119.   The art of advertising is at least partially about choosing expressive

12  levers that will quickly and effectively move the audience emotionally,

13  psychologically, and/or intellectually into a state where the seller can more easily

14  influence them to do the thing or things the seller wants them to do.  For example,

15  in the Honda Del Sol car advertisements that were the subject of *Metro-Goldwyn-*

16  *Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F.Supp. 1287 (C.D. Cal.

17  1995), Honda evoked MGM's James Bond character and other elements of the

18  James Bond movies, because by doing so, Honda moved the Del Sol into a well-

19  developed world of glamor, adventure, sex and danger – James Bond's world.  The

20  message Honda was going for seems likely to have been something like, "by a

21  Honda Del Sol and your life will be more exciting."  Honda could have just said

22  that.  But, it was likely more effective and much more nuanced, and sending many

23  more channels of messaging, to appropriate elements of James Bond – a property

24  someone else had already spent huge resources to develop and maintain.

25      120.   Here, especially when the entire context of the "We Robot"

26  presentation is considered, part of Musk's and Tesla's goal was to try to convince

27  the audience at the outset of the presentation that the decision that the presentation

28  was going to put to them (whether or not to buy or bet on Musk's and Tesla's

FIRST AMENDED COMPLAINT

WB_0000988

1 artificially intelligent car products) was urgent and critical to the future of joint

2 human/AI civilization.  Musk also wanted to instill a mood not only of curiosity,

3 but also of fear, anxiety and urgency.  He also wanted strongly to suggest that there

4 are right and wrong answers to the question, leading to good futures and bad

5 futures (and that doing what Musk wants leads to the good futures).

6      121.   None of those themes or moods are themselves protectable by any

7 intellectual property law.  But what Musk did was use the lever of BR2049's

8 protectable elements as Musk's specific vehicle of expression to communicate

9 those themes and moods, to move his audience into the emotional space Musk

10 wanted the audience to be in for the presentation.  Whether or not Musk intended

11 that, it was the objective effect.  That infringed Alcon's copyright in the Picture.

12      122.   Defendants' conduct also violated the Lanham Act, creating actual

13 confusion or a likelihood of it in the relevant marketplaces, about BR2049

14 branding, including Alcon's marketing efforts with potential auto brand partners on

15 the *Blade Runner 2099* television series, among other marketplace confusion and

16 brand damage.  Alcon needs relief.

17 <center>**FIRST CLAIM FOR RELIEF**</center>

18 <center>***Direct Copyright Infringement in Violation of 17 U.S.C. § 501, et seq.***</center>

19 <center>***Against Defendants WBDI, Tesla and Musk***</center>

20      123.   Plaintiff repeats, re-alleges and incorporates herein by reference each

21 and every allegation set forth in all of the foregoing paragraphs, and in each

22 paragraph of this Complaint hereafter, as if set forth herein in full.

23      124.   To the extent any of the allegations or theories in this First Claim for

24 Relief are inconsistent with other allegations or theories pled in this Complaint,

25 they are pled in the alternative.

26      125.   Plaintiff is the author and copyright owner of the motion picture

27 "Blade Runner 2049," registered with the United States Copyright Office on

28 ///

<center>FIRST AMENDED COMPLAINT</center>

WB_0000989

1  October 6, 2017, registration number PA0002056792.  That is the registered

2  infringed work.

3       126.  Defendants Tesla and Musk created at least two infringing works: 1)

4  Exhibit C/Presentation Slide 2; and 2) the recorded October 10, 2024 "We Robot"

5  presentation (a copy of which recording is in the record of the action as Exhibit 2 to

6  the February 4, 2025 Omnibus Declaration of Chris Marchese) ("We Robot

7  Work").  The specifically infringing portions of the We Robot Work are the

8  approximately 11 seconds at the opening of the presentation where the Exhibit

9  C/Presentation Slide 2 is displayed and Musk's accompanying voiceover.

10       127.  Defendant Tesla and Musk are direct infringers, in that they violated

11  Plaintiff's exclusive rights in BR2049 in each of the following ways, with the

12  conduct alleged constituting both actual copying and unlawful appropriation in each

13  instance.  Defendant WBDI is a direct infringer in that the violation of Alcon's

14  public display rights as alleged in this FAC and paragraph 127f below was

15  conducted on, and transmitted over, WBDI-owned or WBDI-controlled property,

16  infrastructure and systems (specifically including WBDI livestreaming

17  infrastructure systems):

18       a.  Violation of Reproduction Right, 17 U.S.C. § 106(1).  Defendants

19       Musk and Tesla infringed this exclusive right of Alcon by the conduct

20       alleged in paragraph 103 in this FAC: literal copying of the entirety of

21       BR2049 or of protectable elements of BR2049 such as still images like

22       those in Exhibits A and B, or a partial videorecording of BR2049, to an

23       AI image generator.  These allegations are made on the same

24       information and belief and alternative pleading theory basis as set forth

25       in paragraph 103.

26       b.  Violation of Reproduction Right, 17 U.S.C. § 106(1).  Defendants

27       Musk and Tesla infringed this exclusive right of Alcon by the conduct

28       alleged in paragraph 104 in this FAC: literal copying of an

FIRST AMENDED COMPLAINT

unauthorized derivative work (the allegedly "licensed image"
referenced in Exhibit C AI Image Generation Alternative Theory 2),
which itself was generated by literal copying of the entirety of BR2049
or of protectable elements of BR2049 such as still images like those in
Exhibits A and B, or a partial videorecording of BR2049, to an AI
image generator.  These allegations are made on the same information
and belief and alternative pleading theory basis as set forth in paragraph
104.

c.  <u>Violation of Reproduction Right, 17 U.S.C. § 106(1)</u>.  Under the law of
the Ninth Circuit as usually interpreted, all of the violations of Alcon's
right to prepare derivative works are also necessarily violations of
Alcon's reproduction rights.

d.  <u>Violation of Right to Prepare Derivative Works, 17 U.S.C. § 106(2)</u>.
The Exhibit C/Presentation Slide 2 Image is an unauthorized derivative
work of BR2049, which impermissibly incorporates at least the
following protected elements of BR2049 (as the protected elements are
detailed in paragraph 71 of this FAC): i) the character K; ii) Urgent
Human-AI Decision Point Theme; iii) Mood of Anxiety, Fear and
Urgency, and specifically about the Human-AI Decision Point; iv)
Setting as alleged in paragraph 71e of this FAC; and v) Combination of
Elements, as alleged in paragraph 71f of this FAC.  <u>See</u> paragraphs 99-
121 of this FAC.  Alcon further alleges that the Exhibit C/Presentation
Slide 2 Image must be treated as an unauthorized derivative work,
because Musk by his commentary during the We Robot event and in
the We Robot Work effectively represents to the audience that it is
either itself a protected still image of BR2049, or a derivative work of
BR2049, and that Defendants should therefore be estopped to contend
otherwise.  *Id.*

---

FIRST AMENDED COMPLAINT

e. <u>Violation of Right to Prepare Derivative Works, 17 U.S.C. § 106(2).</u>
The We Robot Work is an unauthorized derivative work of BR2049,
which impermissibly incorporates at least the following protected
elements of BR2049 (as the protected elements are detailed in
paragraph 71 of this FAC): i) the character K; ii) Urgent Human-AI
Decision Point Theme; iii) Mood of Anxiety, Fear and Urgency, and
specifically about the Human-AI Decision Point; iv) Setting as alleged
in paragraph 71e of this FAC; and v) Combination of Elements, as
alleged in paragraph 71f of this FAC; and vi) incorporation of Exhibit
C/Presentation Slide 2 into the work. <u>See</u> paragraphs 99-121 of this
FAC. Alcon further alleges that the We Robot Work must be treated as
an unauthorized derivative work, because Musk by his commentary
during the We Robot event and in the We Robot Work effectively
represents to the audience that the Exhibit C/Presentation Slide 2 Image
incorporated into the We Robot Work is either itself a protected still
image of BR2049, or a derivative work of BR2049, and that
Defendants should therefore be estopped to contend otherwise. *Id.*

f. <u>Violation of Right to Display Work Publicly, 17 U.S.C. § 106(5).</u> The
display of Exhibit C/Presentation Slide 2 Image at the live We Robot
Event and during the livestream of the event in the United States
violated Alcon's public display rights in BR2049 and its protected
elements, and all three Defendants have direct infringement liability.
Musk and Tesla actively conducted the event resulting in the display,
paragraphs 99-121, and the display occurred over WBDI-owned or -
controlled systems, *see* paragraph 105.

128.   Alcon alleges and contends that where substantial similarity analysis is
required, Defendants' acts of infringement above as to the character K are subject to
the "story being told," distinct delineation, and/or bodily appropriation tests

FIRST AMENDED COMPLAINT

WB_0000992

1  applicable to characters, and that the character K satisfies them.  Alcon further

2  alleges and contends that the element of Setting as described in paragraph 71e is an

3  original location that is also subject to, or should be subject to, these same tests, and

4  that the Setting as described in paragraph 71e satisfies them.  *See, e.g.,* K. Wright,

5  Note, "Blueprints of Character: Applying the Distinct Delineation Test and

6  Character Copyright Protection to Original Literary Places," 43 AIPLA Q.J. 221

7  (Winter 2015).

8      129.   The foregoing acts of Defendants WBDI, Tesla and Musk infringed

9  upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce,

10  create derivative works, display, distribute and publicly perform BR2049 and its

11  protectible elements.  Such actions and conduct constitute copyright infringement in

12  violation of 17 U.S.C. § 501, *et seq.*

13      130.   Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and

14  registered the exclusive rights and privileges in and to the copyrights of the above-

15  referenced work in accordance with 17 U.S.C. § 408.

16      131.   Plaintiff suffered damages as a result of Defendants' unauthorized use

17  of BR2049 and its protectible elements.

18      132.   Plaintiff is entitled to temporary, preliminary and/or permanent

19  injunctive relief, pursuant to 17 U.S.C. § 502(a).

20      133.   Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to

21  impoundment of all materials used to achieve the infringement, and records

22  documenting Defendants' exploitation of their infringements, including without

23  limitation all materials used by Defendants or any image generation tool employed

24  by them to generate the Presentation Slide 2 Image.

25      134.   Plaintiff is entitled to recover and seeks its actual damages and any

26  additional profits of Defendants WBDI, Tesla and Musk attributable to the

27  infringements, under 17 U.S.C. § 504(b).

28  ///

---

FIRST AMENDED COMPLAINT

WB_0000993

135.   Plaintiff also is entitled to elect to recover and seek statutory damages under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more than $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and believes and on that basis alleges that Defendants' acts of copyright infringement, as alleged above, were willful, intentional, and malicious.  Such acts subject Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement.

136.   Within the time permitted by law, Plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

137.   Plaintiff also is entitled to a discretionary award of attorney fees under 17 U.S.C. § 505.

138.   Plaintiff seeks or reserves the right to seek any or all of the above forms of relief, in addition to prejudgment interest to the extent legally available and Plaintiff's costs.

<u>**SECOND CLAIM FOR RELIEF**</u>

***Vicarious Copyright Infringement in Violation of 17 U.S.C. § 501, et seq.***

***Against Defendants WBDI, Tesla and Musk***

139.   Plaintiff repeats, re-alleges and incorporates herein by reference each and every allegation set forth in all of the foregoing paragraphs, and each paragraph of this Complaint hereafter, as if set forth herein in full.

140.   To the extent any of the allegations or theories in this Second Claim for Relief are inconsistent with other allegations or theories pled in this Complaint, they are pled in the alternative.

141.   If Defendants WBDI, Tesla and Musk are not each liable as direct infringers of BR2049, they are secondarily liable for the infringements directly committed by individual agents, contractors, or other infringers presently unknown (the "Direct Infringers") under the vicarious infringement doctrine.

///

---

FIRST AMENDED COMPLAINT

WB_0000994

142.   Defendants WBDI, Tesla and Musk had the right and ability to
supervise the infringing activity that all the Direct Infringers committed.  The facts
and circumstances of the event make clear that at the very least Tesla and Musk
could have refrained from creating Exhibit C/Presentation Slide 2 Image or
including it in the We Robot Presentation or told their agents, employees or
contractors not to include it.  Defendant WBDI was using its shared services
licensing department to perform clearance work for the presentation at least related
to film references.  Plaintiff is thus informed and believes and on that basis, and
subject to the need for discovery, alleges that WBDI had the right and ability to tell
the Direct Infringers that their infringing conduct was not acceptable and could not
be part of the presentation.  Plaintiff is specifically informed and believes and
thereon alleges that the issue of whether or not Musk and Tesla should be allowed
to use any aspect of the BR2049 property in the event and whether WBDI should
do anything to stop them from doing so was raised internally at WBDI to a very
high level WBDI executive, such that WBDI was actively aware of the issue, and
did nothing to stop it.  To the extent that the Direct Infringers were individual
agents, employees or contractors of WBDI, or of one or more subsidiaries of
WBDI over which WBDI exercised actual or practical control, then WBDI plainly
had the right and ability to supervise the Direct Infringers' infringing conduct.

143.   Defendants obtained some direct financial benefit from the
infringement of Plaintiff's rights in BR2049 by the Direct Infringers.

144.   With respect to Musk and Tesla, the Direct Infringements allowed the
inclusion of the 11 seconds of infringing material in the We Robot presentation and
We Robot Work, and featured sufficiently prominently in the We Robot
presentation, and still does in the We Robot Work, that it constitutes part of the
draw intentionally being used by Musk and Tesla to sell cars and the Company.  In
that regard, Plaintiff incorporates the allegations of the FAC's paragraphs 8-13, 44-
47, 93-98 and 104-121.

---

FIRST AMENDED COMPLAINT

145.   Plaintiff further alleges that Musk similarly believed that the BR2049 reference and affiliation would increase consumer interest in Tesla cybercabs, and that Tesla would sell more of them or experience more pre-orders for them.  Musk is not only the largest shareholder in Tesla, but his compensation as CEO is directly tied to the Tesla stock price, as a substantial portion of Musk's compensation is grants of equity in Tesla.  Musk thus believed he would directly benefit financially from the infringement.

146.   As for WBDI, Plaintiff is informed and believes and on that basis alleges, subject to the need for discovery, whether it was a formal brand affiliation right built into the WBDI-Tesla event agreement contract(s) or not, Musk and Tesla's belief that they would be able to use one or more Hollywood motion picture properties in the library of WBDI's subsidiary Warner Bros., at no extra meaningful charge, was part of the draw for Musk and Tesla to agree to make the payments that Tesla contracted to make to WBDI for the event.  Further, Plaintiff is informed and believes and on that basis, and subject to the need for discovery, alleges that Musk and Tesla (inaccurately) believed that one of the motion pictures they could use in this way and that WBDI could cause to be provided in this way, and indeed the one which they saw as the most desirable, was BR2049.  Based on past actual brand affiliation contracts for automotive partners on BR2049, Tesla likely would have had to make significant expenditures – at least in the mid-six-figures (at least $500,000) and possibly into the eight figures ($10 million or more) to obtain a BR2049 brand affiliation with Tesla and the cybercab at market value, if Alcon had even been willing to do it at all.  Thus, that Musk and Tesla believed that they were going to get it essentially for free, as a throw-in to the event agreement, was a draw to Musk and Tesla for the money that they agreed to pay to WBDI for the event.

147.   With respect to WBDI, further and similarly, Plaintiff is informed and believes and on that basis, and subject to the need for discovery, alleges that the event contract between WBDI and Tesla, included either a formal or informal co-

---

FIRST AMENDED COMPLAINT

1   promotional or brand affiliation element, and that prior to October 10, 2024, Tesla

2   and Musk believed and relied on (inaccurately) that WBDI could deliver a brand

3   affiliation with BR2049.  Plaintiff is informed and believes and on that basis, and

4   subject to the need for discovery, alleges that when Tesla and Musk learned that was

5   not true or not the same situation as they had believed, WBDI had a financial

6   incentive to avoid any claims of breach of contract or adjustment of the contract

7   price, and one way to do that was essentially to allow the fudging (questionable

8   manipulation) of the situation by either suggesting, encouraging, or knowingly

9   allowing Tesla and Musk's generation of and use of and conduct of the Exhibit

10  C/Presentation Slide 2 Image and 11 infringing seconds of the We Robot

11  presentation.

12      148.   Accordingly, all Defendants had an incentive to permit infringement by

13  the Direct Infringers.

14      149.   The foregoing acts of Defendants WBDI, Tesla and Musk infringed

15  upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce,

16  create derivative works, and publicly display BR2049 and its protectible elements.

17  Such actions and conduct constitute copyright infringement in violation of 17 U.S.C.

18  § 501, *et seq.*

19      150.   Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and

20  registered the exclusive rights and privileges in and to the copyrights of the above-

21  referenced work in accordance with 17 U.S.C. § 408.

22      151.   Plaintiff suffered damages as a result of Defendants' unauthorized use

23  of BR2049 and its protectible elements.

24      152.   Plaintiff is entitled to temporary, preliminary and/or permanent

25  injunctive relief, pursuant to 17 U.S.C. § 502(a).

26      153.   Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to

27  impoundment of all materials used to achieve and records documenting Defendants'

28  exploitation of, their infringements, including without limitation all materials used

FIRST AMENDED COMPLAINT

WB_0000997

1    by Defendants or any image generation tool employed by them to generate the

2    Presentation Slide 2 Image.

3        154.   Plaintiff is entitled to recover and seeks its actual damages and any

4    additional profits of Defendants WBDI, Tesla and Musk attributable to the

5    infringements, under 17 U.S.C. § 504(b).

6        155.   Plaintiff also is entitled to elect to recover and seeks statutory damages

7    under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more than

8    $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and

9    believes and on that basis alleges that Defendants' acts of copyright infringement, as

10   alleged above, were willful, intentional, and malicious.  Such acts subject

11   Defendants to liability for statutory damages under Section 504(c)(2) of the

12   Copyright Act in the sum of up to $150,000 per infringement.

13       156.   Within the time permitted by law, plaintiff will make its election

14   between actual damages and profit disgorgement, or statutory damages.

15       157.   Plaintiff also is entitled to a discretionary award of attorney fees under

16   17 U.S.C. § 505.

17       158.   Plaintiff seeks or reserves the right to seek any or all of the above forms

18   of relief, in addition to prejudgment interest to the extent legally available and

19   Plaintiff's costs.

20                          **THIRD CLAIM FOR RELIEF**

21   ***Contributory Copyright Infringement in Violation of 17 U.S.C. § 501,* et seq.**

22                   ***Against Defendants WBDI, Tesla and Musk***

23       159.   Plaintiff repeats, re-alleges and incorporates herein by reference each

24   and every allegation set forth in all of the foregoing paragraphs, and each

25   paragraph of this Complaint hereafter, as if set forth herein in full.

26       160.   To the extent any of the allegations or theories in this Third Claim for

27   Relief are inconsistent with other allegations or theories pled in this Complaint,

28   they are pled in the alternative.

---

FIRST AMENDED COMPLAINT

WB_0000998

1    161.   If Defendants WBDI, Tesla and Musk are not individually liable as
2  direct infringers of BR2049, they are secondarily liable for the infringements
3  committed by the Direct Infringers under the contributory infringement doctrine.

4    162.   Defendants WBDI, Tesla and Musk had, or should have had,
5  knowledge of the infringements of the Direct Infringers.  Tesla and Musk plainly
6  intentionally included the Exhibit C/Presentation Slide 2 Image in the October 10,
7  2024 Tesla presentation, and they could plainly see that it was not an actual still
8  image from BR2049, but rather a stylized copy likely to found infringing.  They
9  also all knew that Alcon had refused permission to use BR2049 or any of its
10  elements in the presentation or in connection with it.  Defendant WBDI was using
11  its shared services licensing department to perform clearance work for the
12  presentation at least related to motion picture references.  Plaintiff is informed and
13  believes and on that basis and subject to the need for discovery alleges that if
14  WBDI or its personnel were not Direct Infringers, WBDI's shared services
15  licensing clearance department was at least being shown image options, including
16  viewing the proposed Exhibit C/Presentation Slide 2 Image in advance of the event,
17  and thus knew about the infringement.

18    163.   Defendants WBDI, Tesla and Musk either materially contributed to or
19  induced the infringements.  Tesla and Musk materially contributed to the direct
20  infringements by including the Exhibit C/Presentation Slide 2 in Musk's
21  presentation.  Plaintiff is informed and believes and on that basis and subject to the
22  need for discovery alleges that Musk was determined specifically to reference
23  BR2049 and an image from it in the presentation, and his determination induced
24  the direct infringements by the Direct Infringers of creating the infringing
25  Presentation Slide 2 Image.  Defendant WBDI materially contributed to the direct
26  infringements at the very least in that the event display, distribution and public
27  performance aspects of the infringement occurred at WBDI's Burbank, California
28  studio lot, and with the use and support of WBDI's facilities and technology.

---

FIRST AMENDED COMPLAINT

1 Plaintiff is informed and believes and on that basis, and subject to the need for

2 discovery, alleges that WBDI induced the infringement by convincing or

3 encouraging the Direct Infringers and Tesla and Musk that Alcon's denial of any

4 BR2049 permissions could be circumvented by generation and use of an AI-

5 generated copy of iconic BR2049 imagery, as Alcon alleges the Presentation Slide

6 2 Image to be.

7      164.   The foregoing acts of Defendants WBDI, Tesla and Musk infringed

8 upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce,

9 create derivative works, display, distribute and publicly perform BR2049 and its

10 protectible elements. Such actions and conduct constitute copyright infringement in

11 violation of 17 U.S.C. § 501, *et seq.*

12      165.   Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and

13 registered the exclusive rights and privileges in and to the copyrights of the above-

14 referenced work in accordance with 17 U.S.C. § 408.

15      166.   Plaintiff suffered damages as a result of Defendants' unauthorized use

16 of BR2049 and its protectible elements.

17      167.   Plaintiff is entitled to temporary, preliminary and/or permanent

18 injunctive relief, pursuant to 17 U.S.C. § 502(a).

19      168.   Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to

20 impoundment of all materials used to achieve and records documenting Defendants'

21 exploitation of, their infringements, including without limitation all materials used

22 by Defendants or any image generation tool employed by them to generate the

23 Presentation Slide 2 Image.

24      169.   Plaintiff is entitled to recover and seeks its actual damages and any

25 additional profits of Defendants WBDI, Tesla and Musk attributable to the

26 infringements, under 17 U.S.C. § 504(b).

27      170.   Plaintiff also is entitled to elect to recover and seeks statutory damages

28 under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more than

---

FIRST AMENDED COMPLAINT

WB_0001000

1  $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and

2  believes and on that basis alleges that Defendants' acts of copyright infringement, as

3  alleged above, were willful, intentional, and malicious.  Such acts subject

4  Defendants to liability for statutory damages under Section 504(c)(2) of the

5  Copyright Act in the sum of up to $150,000 per infringement.

6       171.   Within the time permitted by law, Plaintiff will make its election

7  between actual damages and profit disgorgement, or statutory damages.

8       172.   Plaintiff also is entitled to a discretionary award of attorney fees under

9  17 U.S.C. § 505.

10      173.   Plaintiff seeks or reserves the right to seek any or all of the above

11  forms of relief, in addition to prejudgment interest to the event legally available

12  and Plaintiff's costs.

13                      **FOURTH CLAIM FOR RELIEF**

14                  *False Affiliation and/or False Endorsement*

15       *in Violation of 15 U.S.C. § 1125(a)(1)(A) against All Defendants*

16      174.   Plaintiff repeats, re-alleges and incorporates herein by reference each

17  and every allegation set forth in all of the foregoing paragraphs, and each

18  paragraph of this Complaint hereafter, as if set forth herein in full.

19      175.   To the extent any of the allegations or theories in this Fourth Claim for

20  Relief are inconsistent with other allegations or theories pled in this Complaint,

21  they are pled in the alternative.

22      176.   Alcon owns the marks, trade dress and other Lanham Act-protectable

23  interests identified in paragraphs 73-84 (together, "Alcon's Marks"), and has

24  owned since prior to 2024.

25      177.   Defendants Tesla and Musk have engaged in false representations

26  which are likely to cause confusion, or to cause mistake, or to deceive as to the

27  affiliation, connection or association of Tesla and Musk with Alcon or as to the

28  sponsorship or approval of Tesla's or Musk's goods, services, or commercial

---

FIRST AMENDED COMPLAINT

WB_0001001

activities by Alcon.

178.   Plaintiff alleges that Tesla and Musk engaged in the following specific
conduct that together constituted false statements that constituted false
representations of the type described in the foregoing paragraph 177: the conduct
and statements made by Tesla and Musk at the October 10, 2024 Tesla-WBDI
event as described in paragraphs 85-122 above, and as further distributed and made
available to consumers thereafter by the wide dissemination to and ongoing
presence and availability of, the We Robot Work to consumers.

179.   As alleged in detail in paragraphs 85-122 above, in the about eleven
seconds of We Robot presentation on October 10, 2024 which included the Exhibit
C/Presentation Slide 2 Image and Musk's accompanying voiceover, Musk and
Tesla by their conduct used or evoked all of the following protectable Lanham Act
interest of Alcon: a) Alcon's BLADE RUNNER 2049 mark as it is described in
paragraph 73; b) Alcon's mark or protectable goodwill in the character K; c)
Alcon's protectable trade dress in iconic or recognizable still images from BR2049
such as Exhibit A and the Exhibit B images, specifically generating the Exhibit
C/Presentation Slide 2 Image and displaying it with accompanying voiceover by
Musk such that it appeared to be either an actual still image from BR2049's Las
Vegas Sequence, or a lightly-stylized illustration of K about to enter the irradiated
Las Vegas at or near the beginning of the sequence; and d) a protectable
combination as alleged in paragraph 76.

180.   Pointedly, Alcon's Lanham Act claim is <u>not</u> that Tesla and Musk were
using Alcon's marks to market or sell BR2049 itself (reverse passing off), or even
that Tesla and Musk violated the Lanham Act just by using a faked still image or
faked BR2049 illustration which they held out as an actual BR2049 still image or
licensed illustration (passing off, which they did do, also).  Rather, the Lanham Act
claim is centered around that Musk and Tesla used Alcon's marks and trade dress
to advertise cars and a car company.  The We Robot presentation was for all intents

WB_0001002

1  and purposes a long livestreamed advertisement for Tesla and its products, and it

2  reached a substantial set of the general consuming public in the United States, and

3  of Alcon's potential auto brand partners on BR2049.  Alcon is in fact in that

4  business of licensing the BR2049 marks and trade dress to car makers for

5  advertising affiliation.

6     181.  Tesla's and Musk's unauthorized use of, and references, to Alcon's

7  BR2049 marks and secondary meaning elements had and have the effect of falsely

8  representing that Tesla's and Musk's goods and services are licensed, sponsored,

9  endorsed, or otherwise authorized by Alcon, and/or is at the very least misleading

10  as to these points, and in a business market (auto brand marketing partnerships on

11  BR2049) in which Alcon is actually an established player.

12     182.  Tesla's and Musk's conduct is likely to cause confusion or mistake

13  and to deceive consumers and/or Alcon's relevant actual and potential business

14  partners as to the endorsement, sponsorship, affiliation, connection, or association

15  of Alcon with Tesla's and Musk's services and products.  In this context, Alcon's

16  relevant business partners include automotive brands with potential interest in

17  brand affiliations with BR2049, including without limitation with the BR2049-

18  based *Blade Runner 2099* television series currently in production by Alcon.  They

19  also include business partners in the Hollywood talent pool market where Alcon is

20  active on an everyday basis, and which Hollywood talent pool market generally is

21  less likely to deal with Alcon, or parts of the market may be, if they believe or are

22  confused as to whether, Alcon has an affiliation with Tesla or Musk.

23     183.  Tesla and Musk engaged in the above conduct intentionally and in bad

24  faith, conspiring to and then executing a fraudulent scheme falsely to create a

25  purported justification or excuse to feature Alcon's BR2049 prominently at the

26  outset of Tesla's and Musk's cybercab product reveal presentation, and without

27  paying Alcon any fee for doing so, for the purpose of using BR2049's goodwill to

28  increase the interest level and cache of the new Tesla product pitch and product.

FIRST AMENDED COMPLAINT

WB_0001003

184. All of the foregoing false endorsement uses of Alcon's BR2049 marks and goodwill were commercial speech, and not subject to any defense predicated on the nature of the use being a non-commercial use or non-commercial speech. Specifically, some or all of Tesla's and Musk's speech was either (a) core commercial speech in that it proposes a commercial transaction, or in the alternative, (b) was nonetheless commercial for purposes of false endorsement law and Plaintiff's claims herein, in that the communications were advertisements, made reference to a specific product, and the speaker had an economic motivation for the communication, all within the meaning of *Bolger v. Youngs Drugs Products Corp.*, 463 U.S. 60 (1983) and its progeny.

185. As a direct and proximate result of Tesla's and Musk's wrongful actions, Alcon has suffered damages in an amount to be proven at trial, but in excess of the jurisdictional minimum.

186. Alcon further alleges that Tesla's and Musk's unauthorized use of Alcon's BR2049 marks and secondary meaning elements will continue unless and until Tesla and Musk are enjoined. Alcon has no adequate remedy at law to prevent Tesla and Musk from continuing to wrongfully violate Alcon's rights, and Alcon will suffer irreparable harm unless Defendants are enjoined from continuing their wrongful conduct.

187. Plaintiff is informed and believes and on that basis alleges that if afforded a reasonable opportunity for discovery, discovery will show that Defendant WBDI aided and abetted Tesla's and Musk's Lanham Act violations described herein, including in that WBDI aided, encouraged and/or lent meaningful support to Tesla and Musk before, during or after Tesla's and Musk's violations, and with knowledge by WBDI that the acts by them were improper. In that regard, Alcon specifically refers to the allegations in paragraphs 34, 85-98 and 105.

188. Defendants all had actual knowledge of the wrongfulness of their conduct and the high probability that such acts would cause injury and/or damage

---

FIRST AMENDED COMPLAINT

WB_0001004

1   to Plaintiff. Despite their knowledge, Defendants intentionally pursued their

2   course of conduct, resulting in injury or damage to Plaintiff.

3                          **Prayer for Relief**

4       WHEREFORE, Plaintiff prays judgment be entered in its favor and against

5   Defendants, and each of them, as follows:

6     1. <u>On the First Claim for Relief for Copyright Infringement</u>:

7         a. For a preliminary and permanent injunction against Defendants and

8            anyone working in concert with them from further copying, displaying,

9            distributing, selling, or offering to sell BR2049 or protectible elements

10           thereof in connection with Tesla or Musk, or making derivative works

11           thereof for such purposes.

12         b. As permitted under 17 U.S.C. § 503, for impoundment of all copies of

13           the Exhibit C/Presentation Slide 2 Image and We Robot Work and

14           underlying materials used in violation of Plaintiff's copyrights—

15           including digital copies or any other means by which they could be

16           used again by the Defendants without Plaintiff's authorization—as well

17           as all related records and documents.

18         c. For actual damages and all profits that Defendants derived from the

19           unauthorized use of BR2049 or, where applicable and at Plaintiff's

20           election, statutory damages.

21         d. For an award of attorneys' fees.

22         e. For an award of pre-judgment interest as allowed by law.

23         f. For costs of suit.

24         g. For such further relief as the Court deems just and proper.

25     2. <u>On the Second Claim for Relief for Vicarious Copyright Infringement</u>:

26         a. For a preliminary and permanent injunction against Defendants and

27           anyone working in concert with them from further copying, displaying,

28           distributing, selling, or offering to sell BR2049 or protectible elements

WB_0001005

1  thereof in connection with Tesla or Musk, or making derivative works

2  thereof for such purposes.

3  b.  As permitted under 17 U.S.C. § 503, for impoundment of all copies of

4  the Exhibit C/Presentation Slide 2 Image, We Robot Work, and

5  underlying materials used in violation of Plaintiff's copyrights—

6  including digital copies or any other means by which they could be

7  used again by the Defendants without Plaintiff's authorization—as well

8  as all related records and documents.

9  c.  For actual damages and all profits that Defendants derived from the

10  unauthorized use of BR2049 or, where applicable and at Plaintiff's

11  election, statutory damages.

12  d.  For an award of attorneys' fees.

13  e.  For an award of pre-judgment interest as allowed by law.

14  f.  For costs of suit.

15  g.  For such further relief as the Court deems just and proper.

16  3.  On the Third Claim for Relief for Contributory Copyright Infringement:

17  a.  For a preliminary and permanent injunction against Defendants and

18  anyone working in concert with them from further copying, displaying,

19  distributing, selling, or offering to sell BR2049 or protectible elements

20  thereof in connection with Tesla or Musk, or making derivative works

21  thereof for such purposes.

22  b.  As permitted under 17 U.S.C. § 503, for impoundment of all copies of

23  the Exhibit C/Presentation Slide 2 Image, We Robot Work, and

24  underlying materials used in violation of Plaintiff's copyrights—

25  including digital copies or any other means by which they could be

26  used again by the Defendants without Plaintiff's authorization—as well

27  as all related records and documents.

28  c.  For actual damages and all profits that Defendants derived from the

FIRST AMENDED COMPLAINT

WB_0001006

1             unauthorized use of BR2049 or, where applicable and at Plaintiff's

2             election, statutory damages.

3       d. For an award of attorneys' fees.

4       e. For an award of pre-judgment interest as allowed by law.

5       f. For costs of suit.

6       g. For such further relief as the Court deems just and proper.

7     4. <u>On the Fourth Claim for Relief (False Endorsement in Violation of 15 U.S.C.</u>

8       <u>§ 1125(a)(1)(A))</u>

9      1. For injunctive relief, including without limitation for an order mandating

10        that Defendants cease any further promotional or advertising use of

11        BR2049; that Defendants place a corrective notice or disclaimer on the We

12        Robot Work and all copies thereof putting viewers on notice that the

13        portions of the event referencing BR2049 false and misleading and that

14        BR2049 and Alcon have no relationship or affiliation with Tesla, Musk or

15        the cybercab product; and an order mandating that Defendants cease to

16        distribute any further copies of the We Robot Work or event livestream

17        that contains the BR2049 references and Presentation Slide 2.

18      2. For compensatory damages;

19      3. Defendants' profits;

20      4. Attorney fees;

21      5. Costs of suit;

22      6. Prejudgment Interest; and

23      7. Such other and further relief as the Court may deem just and proper.

24 DATED: February 13, 2025     ANDERSON YEH PC
                                   Edward M. Anderson

25                              Regina Yeh

26                              By _____

27                              Attorneys for Plaintiff

28                              ALCON ENTERTAINMENT, LLC

---

FIRST AMENDED COMPLAINT

1                              **<u>DEMAND FOR JURY TRIAL</u>**

2          Pursuant to Fed. R. Civ. P. 38, on its claims against Defendants Tesla, Inc.

3 ("Tesla"), Elon Musk ("Musk"), and Warner Bros. Discovery, Inc. ("WBDI"),

4 Plaintiff Alcon Entertainment, LLC hereby demands a trial by jury of all matters

5 triable to a jury.

6

7 DATED: February 13, 2025      ANDERSON YEH PC

8                                     Edward M. Anderson

9                                     Regina Yeh
                                    By _____

10                                     Attorneys for Plaintiff
                                    ALCON ENTERTAINMENT, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              FIRST AMENDED COMPLAINT

WB_0001008

# EXHIBIT A

WB_0001009



BR2049 at c. 1:37:55

WB_0001010

# EXHIBIT B

WB_0001011



BR2049 at c. 1:36:53

WB_0001012



BR2049 at c. 1:37:28

WB_0001013



BR2049 at c. 1:40:48

WB_0001014



BR2049 at c. 1:41:08

WB_0001015



BR2049 at c. 1:41:12

WB_0001016



BR2049 at c. 1:41:42

WB_0001017



BR2049 at c. 1:42:37

WB_0001018

Case 2:24-cv-09033-GW-RAO   Document 37-2   Filed 02/15/25   Page 9 of 13   Page ID #:364



BR2049 at c. 1:42:49

WB_0001019



BR2049 at c. 1:51:39

WB_0001020



BR2049 at c. 1:57:21

WB_0001021



BR2049 at c. 1:58:20

WB_0001022



BR2049 at c. 1:58:20

WB_0001023

# EXHIBIT C

WB_0001024



WB_0001025