# Exhibit 34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 24-9033-GW-RAOx | Date | April 4, 2025 |
|---|---|---|---|
| Title | *Alcon Entertainment, LLC v. Tesla, Inc., et al.,* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

None Present                                              None Present

**PROCEEDINGS:** **IN CHAMBERS - TENTATIVE RULINGS ON DEFENDANTS TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [48]; and DEFENDANT WARNER BROS. DISCOVERY, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [49]**

Attached hereto is the Court's Tentative Rulings on Defendants' Motions [48, 49], set for hearing on April 7, 2025 at 8:30 a.m.

Initials of Preparer   JG

***Alcon Entm't, LLC v. Tesla, Inc., et al.***, Case No. 2:24-cv-9033-GW-(RAOx)
Tentative rulings on: 1) Defendants Tesla, Inc. and Elon Musk's Motion to Dismiss First Amended Complaint, and 2) Defendant Warner Bros. Discovery, Inc.'s Motion to Dismiss First Amended Complaint

**I. Background**

Alcon Entertainment, LLC ("Plaintiff") has sued Tesla, Inc. ("Tesla"), Elon Musk ("Musk"), and Warner Bros. Discovery, Inc. ("Warner" and, together with Tesla and Musk, "Defendants") due to events occurring in connection with promotion efforts involving Tesla's planned "cybercab" product at, and using, Warner's facility/ies. In partial response to earlier-filed motions to dismiss, Plaintiff filed a First Amended Complaint ("FAC") on February 13, 2025. *See* Docket No. 37. The FAC contains four claims for relief: 1) direct copyright infringement [17 U.S.C. § 501]; 2) vicarious copyright infringement [17 U.S.C. § 501]; 3) contributory copyright infringement [17 U.S.C. § 501]; and 4) false affiliation and/or false endorsement [15 U.S.C. § 1125(a)(1)(A)]. Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the FAC with prejudice, with one motion filed on behalf of Tesla and Musk, and another filed on Warner's behalf.

Plaintiff is an independent motion picture and television studio that produced the motion picture "Blade Runner 2049" ("BR2049"), and that "owns the BR2049 [registered] copyright and the BR2049 marks and brand at issue in this action." *See* FAC ¶¶ 3, 30-31, 125; *see also id.* ¶ 35. Among other things, BR2049 "feature[s] a strikingly-designed, artificially intelligent, fully autonomous car throughout the story." *Id.* ¶ 7.[1]

---

[1] Plaintiff has provided a "non-exhaustive" list of what it believes are the copyright-protected elements of BR2049. They include: a) presumably *any* "[s]till images from [BR2049] which are iconic or sufficiently recognizable to by themselves be identifiable as a still image from BR2049 versus any other motion picture, and especially such still images which evoke one or more of the other protected elements" Plaintiff has identified; the character "K," who Plaintiff asserts is the "story being told" in the film, and who is "visually distinctive," particularly "as a duster-clad man with close-cropped hair viewed in silhouette or near-silhouette, surveying or exploring a post-apocalyptic ruined cityscape bathed in orange light"; a "theme" of "Urgent Human-AI Decision Point," specifically-expressed by use of "a visual relationship of signaling with orange lighting in ruins, and from K's perspective," with "[a]utonomously capable artificially intelligent cars vehicles [*sic*] taking the characters (us) alternatively toward and away from right or wrong answers to the question" also being "part of the expression of the theme"; a "mood" of "Anxiety, Fear and Urgency, and specifically about the Human-AI Decision Point"; a "setting" – which Plaintiff asserts is, or should be, also subject to a "story being told" test – of "a post-apocalyptic urban ruin, specifically as a place that holds answers or important information about the Human-AI Relationship Question, bathed in orange light, and especially one that is about to be explored by a blade runner in a

1

WB_0001088

According to Plaintiff, Musk – Tesla's "founder, largest shareholder and Chief Executive Officer," *id.* ¶ 33 – and Tesla "wanted to leverage BR2049 to advertise cars, specifically including BR2049's main character and the [film's] iconic 'Las Vegas Sequence.'" *Id.* ¶ 4. This particularly concerned an October 10, 2024 presentation at what was described as a "We Robot" event held (as part of a "highly lucrative deal") at Warner's Burbank, California studio lot. *See id.* ¶¶ 2-3, 5, 18.

Plaintiff alleges, on information and belief, that Tesla and Warner (or a Warner subsidiary "as the nominal contracting party, but with [Warner] in fact actively supervising and directing decision making about the relevant facts") entered into a contract "the essence of which" included Warner (or nominally a Warner subsidiary) leasing or licensing or otherwise providing studio lot space, lot access, infrastructure support and other resources to Tesla for the October 10, 2024 event. *See id.* ¶ 85. Warner "actively supervised and managed" the contractual relationship with Tesla. *See id.* The contract "necessarily would have required substantial financial compensation to be paid by Tesla to" Warner (or a Warner subsidiary, flowing directly into Warner's consolidated financial statements). *See id.*

Again on information and belief, Plaintiff alleges that the Tesla-Warner contractual relationship "included a promotional element or elements, whereby Musk and Tesla expected to be able to affiliate the cybercab with one or more motion pictures from [Warner's] motion picture library," or the library of its subsidiary, which was the domestic distributor for Plaintiff for the 2017 theatrical release of BR2049. *See id.* ¶¶ 86-87. But neither Warner's subsidiary nor any other Warner entity has or ever had sufficient rights to allow Tesla to exploit BR2049 or any of its elements, or any of Plaintiff's marks or goodwill, in connection with the globally livestreamed event at issue here. *See id.* ¶ 87.

On information and belief, Musk specifically wanted to associate the cybercab and Tesla with BR2049. *See id.* ¶ 90. Also on information and belief, Tesla and Musk asked Warner (or one or more of Warner's subsidiaries' employees who were being "actively managed and directed by" Warner on "event issues") for permission and rights

---

duster shown in silhouette or near-silhouette"; and a combination of the foregoing elements, "especially in the context of urgent human-AI relationship questions . . . especially if openly labeled or presented as 'Blade Runner'-related by the infringer." FAC ¶¶ 71(a)-(f), 128.

2

to use the image attached to the FAC as Exhibit A. *See id.* ¶ 90 & n.5; Docket No. 37-1. Yet, no one ever contacted Plaintiff about the brand affiliation proposal (or even a "clip license" proposal), and Plaintiff only learned of Defendants' interest in BR2049 on the day of the event, six hours prior to its scheduled commencement. *See* FAC ¶¶ 92-96.

Notwithstanding Defendants' desire to be able to make use of BR2049, Plaintiff refused them permission to use a still image from BR2049, the image attached as Exhibit A to the FAC. *See id.* ¶¶ 3, 5, 38, 80, 93-97; *see also* Docket No. 37-1. Plaintiff was specific in its communications with certain executives handling licensing attempts/efforts – with a request to relay this position to Warner, Tesla and X[2] (a request that was reportedly honored) – that "under no circumstances should there be any BR2049 affiliation, or any other [Plaintiff] affiliation, express or implied, with Tesla, X, Musk or any Musk-owned company in the course of the October 10, 2024 event, or ever." FAC ¶ 96; *see also id.* ¶¶ 3, 17 (alleging that, prior to the "We Robot" event, Plaintiff "adamantly objected to Defendants suggesting any affiliation whatsoever between BR2049 or [Plaintiff] on the one hand, and Tesla, Musk or any Musk-owned company, on the other," explaining that, beyond "ordinary commercial issues," Plaintiff specifically did not want any association with Musk, considering his "massively amplified, highly politicized, capricious and arbitrary behavior, which sometimes veers into hate speech"). On information and belief, Plaintiff alleges that, once informed that Plaintiff would not accede to Tesla's and Musk's desires, Warner "either effectively blessed Musk and Tesla to incorporate BR2049 in the event anyway, and/or failed to take meaningful action to stop them, although such action was available." *Id.* ¶ 96; *see also id.* ¶ 97 (alleging that Warner "either bless[ed] Musk and Tesla to do it or [did] not stop[] them").

In contrast with the practice of what it describes as "[r]esponsible car makers and ad agencies," *id.* ¶ 13, the FAC asserts that Musk and Tesla "borrow[ed] the storytelling power" of the film anyway by way of their use of a slide at the "We Robot" event (a screenshot of which is attached to the FAC as Exhibit C), "display[ing the slide] full screen for 11 seconds on the global livestream feed as [their] presentation opener." *Id.* ¶¶ 2-3, 5, 18; *see also id.* ¶ 6 (alleging that Musk "want[ed] to borrow the storytelling power and expression of [BR2049] to sell cars and the car company"); *id.* ¶ 7 (alleging

---

[2] X is not a party to this action.

3

misappropriation of BR2049's "storytelling power" and BR2049 and Plaintiff's "brand goodwill to advertise, market and sell Tesla's automobiles and Tesla as a company"); Docket No. 37-3. Musk and Tesla made use of artificial intelligence ("AI") to create the slide employed during the event. *See* FAC ¶¶ 2-3, 5; *see also id.* ¶¶ 103-04. Specifically, Plaintiff asserts that Musk and Tesla created "their own near-photo-realistic illustration" of the android main character from BR2049, named "K," "exploring the ruined Las Vegas. *Id.* ¶ 5.

The event began with a Tesla representative taking the stage to note that the presentation "was being made from the Warner Bros. lot, the home of many science fiction films that show visions of the future," before explaining "that the event would involve Tesla showing a vision of the future, and who better than Musk to do it." *Id.* ¶ 99.[3] Once he arrived at the exact scene of the presentation (after being delivered there, through the streets of Warner's lot, by a cybercab), the FAC alleges (accurately, as confirmed by the Court's review of the presentation) Musk said: "So you see a lot of sci-fi movies where the future is dark and dismal, where it's not a future you want to be in." *Id.* ¶ 101. The livestream feed then shifted to a slide with an image of the Earth and the words "What Kind of World Do We Want to Live In?" *Id.*

After two seconds showing that slide, the livestream changed to a second slide, which would ultimately be displayed for about 11 seconds.[4] *See id.* ¶ 102. Plaintiff describes this second slide as appearing at first "like a motion picture still photo (although it isn't)" displaying "a male figure seen from behind, with close-cropped hair, wearing a trench coat or duster, standing in almost full silhouette as he surveys the abandoned ruins of a city, all bathed in misty orange light." *Id.* The words "Not This" appear in the upper-left corner, superimposed on part of the orange sky. *See id.*; Docket No. 37-3.

During the 11-second display of this image, Musk added – according to the FAC (*almost* word-for-word correctly) – voiceover comments, saying "You know, I love

---

[3] The Court's review of the presentation reveals that the exact language used was: "Just want to thank Warner Brothers for hosting us here. As you know, this is the birthplace of many epic films – many of them depicting a vision of the future. We're here tonight to experience that future, that is closer than you think. And who better than Elon, right, to show us that future." Docket No. 25.

[4] The second slide and the entire "We Robot" presentation are both said to be copyright-infringing works. *See* FAC ¶ 126.

4

'Blade Runner,' but I don't know if we want that future. I believe we want that duster he's wearing, but not the, uh, not the bleak apocalypse." FAC ¶ 106. The FAC elsewhere *characterizes* Musk's voiceover accompanying the presentation as having "clearly identifie[d] the image as an illustration of the 'Blade Runner' movie set in a world which has suffered a 'bleak apocalypse,' where 'he' (meaning the particular blade runner in question) is wearing a 'duster' (trench coat) while he surveys the distinctly orange-lit ruins of a city in the apocalyptic space," a description which the FAC asserts "only matches a single motion picture in all of Hollywood, or anywhere else: BR2049." *Id.* ¶ 5.[5] The FAC also asserts that "[t]here is also only one blade runner character that fits that description: K." *Id.*[6]

Plaintiff asserts that Musk's reference to "Blade Runner" in his voiceover was "clearly specifically meant to evoke BR2049 rather than the original 1982 Picture," at least in part because Plaintiff believes the context and worldwide goodwill of BR2049 is much more relevant – in part due to "artificially intelligent autonomous cars like the Tesla cybercab being pitched at the event" – to Tesla's and Musk's aims than is the original "Blade Runner" film. *Id.* ¶¶ 107-12, 118. Plaintiff believes that the presentation's second slide was intended "to read visually either as an actual still image from BR2049's iconic sequence of K exploring the ruined Las Vegas," or as a "minimally stylized copy of or illustration of such a still image," or "otherwise as an illustration of a scene from BR2049 and specifically its Las Vegas Sequence." *Id.* ¶ 103. It takes the position that the slide "does in fact objectively read like one or all of these,"

---

[5] In its Opposition to Tesla's and Musk's motion, Plaintiff likewise asserts that "Musk's accompanying voiceover implicitly, but nonetheless plainly, identifies the image as a scene from BR2049," Docket No. 52, at 2:12-13, and "effectively stated to the audience that the Exhibit C image was supposed to be an illustration of BR2049," *id.* at 7:1-3. *See also id.* at 17:5-6 ("Where the defendant says – especially to the audience – that the work is based on plaintiff's, . . . ."); *id.* at 17:22-23. The Court has reviewed the presentation itself. It is factually-accurate to say that Musk *referenced* "Blade Runner," or at the very most suggested or intimated "Blade Runner" was depicted. See Docket No. 25. It is inaccurate to assert that he either "clearly" or "plainly" "identified" the slide as a scene from, or illustration of, Blade Runner (or BR2049). Whether he "effectively" did so is an issue that is not particularly relevant at this point in time in this case.

[6] Plaintiff alleges that "K's trench coat or 'duster' is the dominant feature of his wardrobe or costume," and notes that, "[t]hroughout [BR2049], K travels in, and is assisted by, his artificially intelligent, quasi-sentient flying car, or 'spinner,' which is capable of autonomous action." FAC ¶ 57. The film's "Las Vegas Sequence" "follows K as he leaves the spinner . . . and walks in his duster toward and through the misty orange urban desert ruins, often viewed by the camera from behind or in silhouette." *Id.* ¶ 60.

5

WB_0001092

and was likely created with the assistance of an AI image generator, on information and belief making specific reference to K and the Las Vegas Sequence of BR2049 and/or "to add 'Elon Musk in a duster in the foreground,' or similar direction." *Id.* ¶¶ 103-04.

Plaintiff further asserts, on information and belief, that the slide was generated "by an employee or agent of one or more of [Warner], Tesla . . ., or even possibly by Musk himself." *Id.* ¶ 105. It also alleges that "[a]ll of the Defendants participated in its creation, and in its display in the presentation at the event, from a [Warner]-owned building and studio lot, on [Warner]-owned video screens, and otherwise using [Warner]-owned technology infrastructure." *Id.*[7] Alternatively, any defendants who did not so actively participate still "ratified the conduct and knowingly accepted the benefits of it." *Id.* In addition, according to the FAC, Warner "actively monitored . . ., supervised . . ., and ultimately controlled . . . and directed" the "We Robot" event, "at the very least as to the disputed matters that are the subject of" the FAC. *Id.* ¶ 34. However, as part of the "We Robot" event, it was "difficult and problematic" for Warner "to keep Musk bounded by well-established rules of the business," "ultimately fail[ing] to do so when it could have." *Id.* ¶ 18.

Tesla, Musk and others re-posted the "We Robot" livestream, including the "BR2049-infused opening," thousands of times, with millions of total views, such that the false affiliation between Plaintiff, BR2049, Tesla and Musk "is irreparably entangled in the global media tapestry." *Id.* ¶ 19.

Exhibits A and B to the FAC "are examples of 'still images' from [BR2049],"[8] but Plaintiff acknowledges that it is BR2049 itself that is the subject of the registered

---

[7] As noted *infra*, Footnotes 13 and 16, these allegations in paragraph 105 of the FAC regarding *Warner's* responsibility for, or participation in, creation of the slide may be ignored.

[8] The FAC places these images in "story context." FAC ¶¶ 69-70. Exhibit A – which Plaintiff alleges "was the image used as the lead visual image for numerous marketing, promotional and publicity press pieces about [BR2049] preceding [the film's] October 2017 initial theatrical release" and is still "to this day the image that appears as the cover image to the official BR2049 marketing and promotional trailer as that trailer appears on YouTube" – "is an image positioned from behind K, with his close-cropped hair, garbed in his distinctive trench coat or 'duster,' as he stands next to his spinner, facing away from the camera to survey the devastated orange-light-bathed Las Vegas cityscape." *Id.* ¶¶ 69, 80. The Exhibit B images – which Plaintiff asserts it also has and still does use "for marketing, promotion and publicity" for BR2049 – are "samples of still images from the Las Vegas Sequence," including "images from K's walk through the ruins to encounter Deckard [the main character from the original Blade Runner film], and from when K is in Deckard's aerie looking out the picture windows at the ruined city." *Id.* ¶¶ 70, 81.

WB_0001093

copyright and alleged "infringed work" at issue in this case. *See id.* ¶¶ 35, 37, 125; *see also* Docket Nos. 37-2, 37-3. However, Plaintiff's theory in the FAC is that, "for instances of copying that go beyond literal copying or bodily appropriation of protected elements, identification of protected elements of BR2049 has to involve some level of consideration of the entire Picture,[9] including its plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." FAC ¶ 51. Thus, in Plaintiff's view, still images, "especially if from qualitatively important scenes or sequences," are themselves protected elements of the BR2049 copyright. *Id.* ¶ 41. In fact, they are "also more than just protected elements of [BR2049] that can be looked at alone: they are effective vehicles for quickly evoking other protected elements of [BR2049] to the audience," like the film's plot, theme, dialogue, mood, setting, pace, characters, and sequence of events," "even if those elements cannot be visually identified directly in the still image in question." *Id.* ¶ 42; *see also id.* ¶¶ 45-46.[10] According to Plaintiff, this is also true of "[a]n infringing work that looks like it is or might be a still image from BR2049, . . . especially if such an emulated image is openly characterized by the presenter as meant to be a still from or illustration of BR2049 or protected elements of its story (as happened here)." *Id.* ¶ 42.

Musk and Tesla allegedly directly-infringed Plaintiff's reproduction right via "literal copying of the entirety of BR2049 or of protectable elements of BR2049 such as still images like those in Exhibits A and B [to the FAC], or a partial videorecording of BR2049, to an AI image generator" or by "literal copying of an unauthorized derivative work . . . which itself was generated by literal copying of the entirety of BR2049 or of protectable elements of BR2049 such as still images like those in Exhibits A and B [to

---

[9] "BR2049" and "Picture" are both defined as the same thing – "Alcon's 'Blade Runner 2049' motion picture" – in the FAC. FAC ¶ 3. As a result, it is unclear what distinction is meant by Plaintiff's use, in this sentence, of both "BR2049" and "Picture."

[10] Plaintiff characterizes motion picture still images as having an "expressive superpower" that "ordinary standalone photographs do not have," and takes the position that the Copyright Act offers a "different statutory treatment" of "motion picture still images" as compared to the separate category of photographs." FAC ¶ 43. But it does not explain what this proposed "different statutory treatment" consists of or how motion picture still images are "to be treated analytically differently" than photographs apart from asserting that the protectable elements of motion picture still images are somehow different than the protectable elements for photographs. *See id.* ¶¶ 48, 50. In the end, the Court is not entirely sure of the purpose of this thread in the FAC; if it is part of an effort to persuade that motion picture still images *should be* treated differently under the Copyright Act, the best audience for that contention is located in Washington, D.C., not this courtroom.

7

WB_0001094

the FAC], or a partial videorecording of BR2049, to an AI image generator. *Id.* ¶¶ 127(a)-(b). They also allegedly violated Plaintiff's right to prepare derivative works, with the second slide from the "We Robot" presentation impermissibly incorporating a host of allegedly protected elements of BR2049. *See id.* ¶¶ 127(d)-(e). They also allegedly violated Plaintiff's right to display BR2049 publicly. *See id.* ¶ 127(f). Plaintiff also asserts that Warner is a direct infringer of Plaintiff's public display rights with the presentation having been "conducted on, and transmitted over, [Warner]-owned or [Warner]-controlled property, infrastructure and systems." *Id.* ¶¶ 127, 127(f).

If Defendants are not each liable for *direct* copyright infringement, Plaintiff asserts that they are each *vicariously* liable for the direct infringements committed by "individual agents, contractors, or other infringers presently unknown," because they each had the right and ability to supervise the infringing activity. *Id.* ¶¶ 141-42. As to Tesla and Musk, those defendants could have refrained from creating the presentation slide in question or including it in the "We Robot" presentation. *See id.* ¶ 142. As to Warner, Plaintiff alleges that it used "its shared services licensing department to perform clearance work for the presentation" and thus, on information and belief, it "had the right and ability to tell the Direct Infringers that their infringing conduct was not acceptable and could not be part of the presentation." *Id.* This is especially the case if the "direct infringers" were "individual agents, employees or contractors of [Warner], or of one or more subsidiaries of [Warner] over which [Warner] exercised actual or practical control."

Musk and Tesla obtained direct financial benefit from the infringement by virtue of the infringing material constituting part of the draw they intentionally used "to sell cars and the Company," increasing consumer interest in Tesla cybercabs, leading to selling more of them or receiving more pre-orders for them. *Id.* ¶¶ 143-45. As to Warner, on information and belief, Musk and Tesla's belief that they could use one or more Hollywood motion picture properties – including BR2049 – at no extra meaningful charge – in contrast to the ordinary 6- to 8-figure charge – was part of the draw for Musk and Tesla to agree to make the payments that Tesla contracted to make to Warner for the event. *See id.* ¶ 146. Plaintiff also alleges, on information and belief, that Warner had a financial incentive to avoid any claims of breach of contract or adjustment of contract price when Musk/Tesla learned they would not be able to achieve the desired brand

8

WB_0001095

affiliation. *See id.* ¶ 147.

In addition to direct and vicarious infringement theories, Plaintiff also lodges a *contributory* infringement theory. It asserts that Tesla and Musk intentionally included Exhibit C in the presentation and could plainly see that it was not an actual still image from BR2049 but rather a stylized copy that would likely be found infringing. *See id.* ¶ 162. Those defendants also knew that Plaintiff had refused permission. *See id.* In its use of its shared services licensing department, Plaintiff asserts on information and belief that Warner was at least being shown image options, including Exhibit C, in advance of the event. *See id.* Musk and Tesla materially contributed to the infringement by including Exhibit C in the presentation. *See id.* ¶ 163. Warner materially contributed to it because the event display, distribution and public performance aspects of the infringement occurred at its studio lot, and with the use and support of its facilities and technology. *See id.* Also on information and belief, Plaintiff asserts that Warner induced the infringement by convincing or encouraging the direct infringers, Tesla and Musk, that Plaintiff's denial of permission "could be circumvented by generation and use of an AI-generated copy of iconic BR2049 imagery." *Id.*

For purposes of its Lanham Act claim, Plaintiff alleges that it owns an unregistered trademark in the words "Blade Runner 2049," which it asserts is "broad enough to include the words 'Blade Runner' in contexts that refer to or include BR2049 (such as, for example, the words 'Blade Runner' not followed by the number '2049,' but alongside iconic images from BR2049, or other callouts to specific scenes or elements of BR2049)." *Id.* ¶ 73. It also asserts that "[s]till images from iconic scenes in BR2049, and audiovisual clips of iconic scenes from BR2049" also serve as "trade dress." *Id.* ¶ 74. Also included as an unregistered mark and/or protectable trade dress, according to Plaintiff's allegations, are "[t]he character 'K,' including descriptions of K, and visual[] images that look like or evoke the character K, and/or that are held out to be the character K, either explicitly or implicitly." *Id.* ¶ 75. Finally, Plaintiff asserts that it has "a protectable Lanham Act interest (mark, brand or trade dress)" in "combinations of elements which evoke or tend to evoke BR2049 in the eyes of the ordinary consumer," including "showing an image like Exhibit C [to the FAC] with an accompanying voiceover discussing a 'post-apocalyptic' 'Blade Runner' movie, especially in an overall

9

context of robots (replicants are sometimes recognized as a variation of robots) and artificially intelligent, semi-autonomous or wholly autonomous cars." *Id.* ¶ 76.

Plaintiff alleges that Tesla and Musk "have engaged in false representations which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Tesla and Musk with [Plaintiff] or as to the sponsorship or approval of Tesla's or Musk's goods, services, or commercial activities by [Plaintiff]." *Id.* ¶¶ 177, 180. Specifically, Musk and Tesla used or evoked Plaintiff's BLADE RUNNER 2049 mark, Plaintiff's mark or protectable goodwill in the character K, Plaintiff's protectable trade dress in iconic or recognizable still images from BR2049 (such as those attached as Exhibits A and B to the FAC) such that the presentation slide (Exhibit C to the FAC) appeared to be either an actual still image from BR2049 or a lightly-stylized illustration of K about to enter the irradiated Las Vegas, or a protectable combination of the foregoing. *See id.* ¶ 179. According to Plaintiff, the conduct has the effect of falsely representing that Tesla's and Musk's goods and services are licensed, sponsored, endorsed, or otherwise authorized by Plaintiff, and/or is at the very least misleading on these points. *See id.* ¶¶ 181-82. Plaintiff is informed and believes that discovery will reveal that Warner aided and abetted Tesla's and Musk's alleged Lanham Act violations, during or after those violations. *See id.* ¶ 187.

Plaintiff asserts that it "has spent decades and hundreds of millions of dollars building the BR2049 brand into the famous mark that it now is." *Id.* ¶ 14. It further contends that:

> [t]he words "Blade Runner 2049," the words "Blade Runner" used in contexts that specifically evoke BR2049 distinct from the original 1982 "Blade Runner" motion picture, visual images or audiovisual presentations which evoke BR2049's main character "K," and/or which evoke iconic sequences and settings from BR2049, are all protected marks and trade dress with secondary meaning.

*Id.* According to the FAC, this secondary meaning "clearly" exists "in the automotive market space," at least in part because Plaintiff "has an established record of doing business with major automotive brands to affiliate themselves and their car products with [Plaintiff] and BR2049." *Id.* ¶ 15. Plaintiff asserts that at the time of the "We Robot" event, Plaintiff "was in talks with at least one automotive brand for partnerships on [Plaintiff's] BR2049-based *Blade Runner 2099* television series" that is currently in

10

production, meaning that Defendants' conduct is likely to cause confusion among Plaintiff's potential brand partner customers and may have already caused actual confusion with potential *Blade Runner 2099* car partners. *Id.* ¶ 16.

## II. Analysis

### A. Procedural Standard & Appropriately-Considered Materials

Under Rule 12(b)(6), a court must (1) construe a complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

In its consideration of the motion, a court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Nonetheless, "while a court must generally refrain from considering extrinsic evidence in deciding a 12(b)(6) motion, it may [also] consider documents on which the complaint '*necessarily relies*' and whose 'authenticity . . . is not contested.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (emphasis added); *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of

11

the copy attached to the 12(b)(6) motion."); *see also Steinle v. City & Cty. of S.F.*, 919 F.3d 1154, 1162-63 (9th Cir. 2019); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) ("'[W]e may consider materials incorporated into the complaint . . . .'") (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Here, the parties agree that the Court may consider – along with the FAC's allegations and other attachments – BR2049, the "We Robot" presentation in its entirety, and the second slide of that presentation (attached as Exhibit C to the FAC) in connection with these Rule 12(b)(6) proceedings. *See, e.g., Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018); *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945). However, Plaintiff has filed objections to the Court's consideration of certain other materials in connection with both motions. *See* Docket Nos. 53, 55.

First, the Court sustains Plaintiff's objection to consideration of what Warner contends is the actual, *and only*, contract between Warner and Tesla in connection with the "We Robot" event, along with the earlier-filed (in connection with the motion to dismiss the original Complaint) Declaration of Rachel Jennings (and attached exhibits), Docket No. 23-2, attempting to introduce that contract. Plaintiff has not given any indication in the FAC that this document is the contract supporting its allegations about the binding obligations on Warner in connection with the event, though Warner insists that it is (and that it is therefore – in Warner's view – both referenced in, and central to, Plaintiff's FAC). Warner is not the party that gets to tell that story, at least at this procedural stage. Whether construed as an objection to the document's authenticity or a factual assertion that there is something more out there that governs the Warner-Tesla relationship and obligations, the Court cannot rely upon Warner's assertions regarding the full scope of that relationship on this motion. More-generally, the Court obviously cannot credit Defendants' factual assertions that contradict factual assertions Plaintiff makes in the FAC (including the attempted introduction of an image that Tesla asserts it *actually licensed* in the creation of the slide attached as Exhibit C to the FAC). *See* Docket No. 53, at 6:1-8:12; Docket No. 55, at 3:15-20, 4:25-5:12.

As to whether or not Plaintiff owns the word mark, "Blade Runner," the Court may observe that Plaintiff has *not* alleged ownership of such a mark, *see* FAC ¶¶ 73-75,

12

179, though Plaintiff now professes that it *could* allege that it "in fact own[s] a Lanham Act-cognizable ownership interest in the ['Blade Runner'] word mark," *see, e.g.*, Docket No. 55, at 5:23-6:1. Thus, the Court will not consider the truth of Defendants' position as to whether or not Plaintiff *in fact* has such an ownership stake, but may consider the limitations in the FAC as to what Plaintiff alleges it *does* own in the way of marks. To the extent Warner makes an assertion about who *actually* owns rights associated with the original "Blade Runner" film, the Court may *not* consider those contentions.

Third-party car branding in the theatrical release of BR2049 is not conceivably relevant to the resolution of these motions. As such, Plaintiff's limited "caveat" to the Court's consideration of the DVD version of the film is neither here nor there.

Finally, published rulings issued in other cases, concerning Rule 8 compliance or otherwise, may always be considered pursuant to at least principles of judicial notice.

Now that there is an understanding of what the Court concludes it may consider in connection with these motions, it turns to the parties' arguments regarding the FAC's specific claims.

### B. Direct Copyright Infringement

Plaintiff's first claim for relief is for "direct copyright infringement." To prevail on a standard copyright infringement claim, Plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) and *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc); *see also Skidmore*, 952 F.3d at 1064 (describing the second element as copying "protected aspects of the work"); *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020) (same). Beyond this basic, and oft-repeated observation, several years ago the Ninth Circuit, sitting *en banc* in *Skidmore*, clarified the process for analyzing claims of copyright infringement.

*Skidmore* clarifies that there are two separate components to copyright infringement's second prong of "copying protected aspects of the work": "copying" and "unlawful appropriation." *Skidmore*, 952 F.3d at 1064. In contrast to copying, "unlawful

13

appropriation" requires that works "share *substantial* similarities." *Skidmore*, 952 F.3d at 1064. Substantial similarity is a fact-specific inquiry, but it "'may often be decided as a matter of law.'" *Benay*, 607 F.3d at 624 (quoting *Funky Films*, 462 F.3d at 1076 and *Sid & Marty Krofft Tele. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)). Musk's and Tesla's motion primarily focuses on this issue so far as Plaintiff's direct infringement claim is concerned. As to that motion, it is this relatively-restricted scope of their argument as to that claim that is the decisive point.

### 1. The Limits of Tesla's/Musk's Argument

Tesla's and Musk's argument – up until their Reply, which is too late[11] – is almost-exclusively only that Plaintiff's direct copyright infringement claim cannot succeed because Plaintiff cannot show substantial similarity between its copyrighted work and the "We Robot" presentation or the 11-second slide used therein. *See* Docket No. 48-1, at 4:12-14:2. With a minor exception, their argument did *not* timely cover Plaintiff's "literal copying" theory of direct copyright infringement based upon the allegation that Plaintiff's copyright was infringed because – according to Plaintiff's allegations – Musk/Tesla fed a literal copy of Plaintiff's copyrighted work into an AI-driven image generator in order to achieve the ultimate slide displayed during the "We Robot" event. *See* FAC ¶¶ 127(a)-(b). Musk's and Tesla's limited discussion of Plaintiff's "literal copying" theory is to highlight that Plaintiff's allegations in this regard are based "on information and belief," that the theory is not plausible because Tesla has already told Plaintiff how it claims to have created the 11-second slide image used during the presentation, and because a review of BR2049 and the "Accused Work" (*but see* Footnote 4, *supra*) somehow makes it clear that Tesla/Musk did not "literally copy" BR2049 in the manner Plaintiff asserts.

Musk and Tesla concede that "pleading on information and belief is permissible where the facts are peculiarly within the defendant's possession," among other situations. *See* Docket No. 48-1, at 14:4-5; *see also Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("'The *Twombly* plausibility standard . . . does not prevent a plaintiff from

---

[11] The Court does not address arguments raised for the first time in a Reply brief where there is no reason those arguments could not have been set forth in initial motion papers (thereby giving an opponent an opportunity to respond). Clearly, Tesla and Musk were aware of the "literal copying" aspect of Plaintiff's direct infringement claim at the time they filed their motion.

14

WB_0001101

pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'") (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).[12] They do not explain how that does not exactly describe the situation here, where Plaintiff is certainly not in a first-hand-knowledge position to know exactly how Musk/Tesla created the image in question (apart from Tesla's simple say-so).

Moreover, as noted above, "a plaintiff may plead facts on information and belief 'where the belief is based on factual information that makes the inference of culpability plausible.'" *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022) (quoting *Soo Park*, 851 F.3d at 928 (9th Cir. 2017)); *see also* Stevenson & Fitzgerald, *Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial* (The Rutter Group 2024), ¶ 8:128.22, at 8-34 – 35 (indicating that "information and belief" allegations simply require "some factual content," whereas "conclusory allegations based on nothing more than 'information and belief' will not suffice"); *cf. Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019) ("Even under the more rigid pleading standard of Federal Rule of Civil Procedure 9 . . . the pleader is not required to allege facts that are 'peculiarly within the opposing party's knowledge,' and allegations 'based on information and belief may suffice,' 'so long as the allegations are accompanied by a statement of facts upon which the belief is founded.'") (quoting *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)). Here, there is sufficient factual information to do just that, and therefore to permit Plaintiff's "information and belief" allegations on the topic of how Exhibit C to the FAC was created.

---

[12] In its own motion, Warner asserts that "in a more recent opinion, the Ninth Circuit explained that *Soo Park* did not create an exception to federal pleading standards for allegations made on information and belief." Docket No. 49-1, at 11:1-3 (citing *Reaper v. Ace Am. Ins. Co.*, No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024)); *see also* Docket No. 56, at 3:17-20 (Tesla's and Musk's Reply brief making a similar contention). *Reaper* is an unpublished "memorandum" disposition, not a Ninth Circuit "opinion." *See* Ninth Cir. R. 36-1. Though there is no prohibition on it citing *Reaper*, *see* Fed. R. App. P. 32.1(a), Warner's brief on this point reflects a fundamental misunderstanding both with respect to the distinction between a memorandum disposition and an opinion in terms of their precedential status and with respect to the limitations placed on a three-judge panel of the Ninth Circuit overruling or taking a different approach from an earlier three-judge Ninth Circuit *actual* opinion. *See* Ninth Cir. R. 36-3(a); *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc); *Cascadia Wildlands v. Scott Timber Co.*, 105 F.4th 1144, 1151 (9th Cir. 2024) ("As a three-judge panel, we are, of course, bound by circuit precedent."). *Soo Park* is binding Ninth Circuit law (along with the other Ninth Circuit opinions the Court has cited above that bear upon the practice of information-and-belief allegations).

15

In particular, Plaintiff has alleged that Musk and Tesla attempted to get permission to use BR2049, but that attempt was denied just hours before the "We Robot" presentation was to begin (with at least *the late-nature* of that denial apparently due to the fact that no one attempted to approach Plaintiff about the inquiry until that very day). Plaintiff also has placed before the Court the ultimate image used and samples of still images taken from BR2049. It is not controversial to observe that there are certainly several similarities (though the Court does not address the topic of "substantial similarity" here) between the ultimate image Musk and Tesla used and the source material Plaintiff alleges they used. Given the tight timeframe Musk and Tesla were working with in light of their last-minute request – and the resulting last-minute denial – to make use of BR2049, it is not at all implausible for Plaintiff to allege on information-and-belief that they made use of an AI image-generator to come up with the finished product. In addition, the images are not so different that the Court can conclude Tesla and Musk could not possibly have literally copied in the manner so-alleged. Thus, each of Tesla's and Musk's timely-raised limited arguments regarding the "literal copying" theory fail.

Because Musk and Tesla did not enunciate a way to successfully dispose of Plaintiff's "literal copying" theory in their motion, at a bare minimum it – and the direct copyright infringement claim in general – survives this motion against them. This Court does not typically "dismiss" theories, or parts of claims in connection with a Rule 12(b)(6) motion. As such, Musk's and Tesla's "substantial similarity"-directed argument, and the numerous ways in which Plaintiff believes it survives those arguments, are not resolved at this time.

### 2. Warner's "Volitional Conduct" Argument

Apart from relying on Musk's/Tesla's arguments for why Plaintiff's direct copyright infringement claim should be dismissed, Warner makes the additional argument that Plaintiff has not and cannot plead any causation, or "volitional conduct," by Warner. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) ("*Giganews*") ("To establish a prima facie case of direct infringement, a plaintiff 'must show ownership of the allegedly infringed material' and 'demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17

16

WB_0001103