1      person) aspect of the Event, and was viewed by, accessible to, and

2      enjoyed by in-person Event attendees.

3      b.  None of the Valuable WBDI in the Event was used at all in Musk's

4      keynote speech for the Event.

5      c.  Although the livestream Event Recording continues for about 80

6      additional minutes after Musk finishes his keynote speech, and

7      although the livestream Event Recording spends substantially all of

8      those 80 minutes documenting the Event and what is happening during

9      it, from numerous different camera viewpoints, none of the Valuable

10      WBDI IP in the Event ever appears on the Event Recording as a focal

11      point for any camera view (with the possible single exception of six

12      seconds nearly at the very end of the Event Recording where the

13      Batmobile is arguably a camera focus).

14      d.  All of the Valuable WBDI in the Event only ever appears on camera

15      in the Event Recording incidentally, arguably requiring active

16      indication for a casual viewer even to notice it.

17      e.  Warner Bros. Pictures' trademarked water tower appears for less than

18      a full second on the Event Recording, and there is the distinct sense by

19      abrupt motion of the camera away from it when it does appear, that the

20      camera operator immediately understood that showing the water tower

21      was prohibited and a mistake.  (Event Recording at 0:40:00-0:40:01.)

22      f.  The Event Recording one point includes a substantial portion of a

23      very-well known sound recording of Haddaway performing "What Is

24      Love?" audibly performed on the Event Recording's soundtrack.

25      (Event Recording 0:24:20-0:25:46.)  However, the Haddaway sound

26      recording is only partially performed on the Event Recording, before

27      all sound on the Event Recording cuts off for a time, then followed by

28

71

SECOND AMENDED COMPLAINT

WB_0001220

1  nothing even on the visual feed of the Event Recording or screen saver
2  on the Event Recording for an extended period, until the Event
3  Recording eventually resumes both visual images and a soundtrack.
4  However, after it resumes, for the entire remainder of the Event
5  Recording, the Event Recording soundtrack does not include any
6  readily recognizable popular music, and instead features only generic,
7  almost entirely instrumental, electronic dance music.

8  183.  All of the foregoing, especially the Haddaway sound recording
9  incident identified in 182f above, are telltale signs that active policing clearance
10 efforts had been put in place before the Event, and were effectively being
11 implemented during the entirety of the Event livestream, including during Musk's
12 keynote speech.  The signs specifically are that the policing protocols were actually
13 implemented effectively for the Valuable WBDI IP in the Event, and for at least
14 some valuable third party music content, but just not for any of Alcon's exclusively
15 owned property, including not for BR2049's protected elements.

16 184.  Plaintiff makes the allegations in paragraph 185 below, including all
17 subparagraphs, as **WBDI Actual Policing of Musk and Tesla During the Event**
18 **Alternative Theory 1**:

19 185.  Plaintiff alleges on information and belief, subject to need for
20 discovery, that WBDI had the actual and practical ability to police Musk's and
21 Tesla's IP law compliance and contractual compliance during the Event, including
22 during the live and live-streamed display of Musk's keynote speech, and that
23 WBDI in fact actually did so with respect to separate IP content wholly-owned by
24 WBDI or one or more WBDI subsidiaries, and also with respect to third party IP
25 content; WBDI just either intentionally or negligently failed to do so as to Alcon's
26 exclusively owned property, including BR2049 and K.

27 ///

28

WB_0001221

a. **WBDI Actual Policing of Musk and Tesla During the Event Alternative Theory 1.1:** Plaintiff further alleges on information and belief, subject to the need for discovery, as one specific possibility, that what specifically happened under WBDI Actual Policing of Musk and Tesla During the Event Alternative Theory 1 was as follows:

(i). The best practice and standard operating procedure for studios conducting live events where there will be a physical (in-person) aspect, a livestream aspect, and aspects of IP shopping rights and granting of IP licenses and provision of actual IP content by studio, as were all involved here, and WBDI's actual standard practice and policy, is that the livestream terms must be finalized and understood before finalization of the IP terms. Otherwise, if the IP shopping is conducted and IP license agreements are finalized prior to understanding what the livestream rights are or are not (*e.g.,* whether there will or will not be any livestreaming at all, and for what territories), the IP licenses and clearances risk being incorrect and potentially useless. Different permutations of livestream possibilities require different IP clearances, and on case-by-case basis depending on the particular IP in question.

(ii). There was a mistake made by WBDI or Tesla, such that for the Event, whether or not previously agreed, the actual livestream terms in the Event Contract were not communicated to WBDI's licensing and clearance professionals tasked with handling the IP shopping and IP licensing issues, until <u>after</u> the IP work had been substantially completed, and not until relatively near the day of the Event.

73

SECOND AMENDED COMPLAINT

WB_0001222

1        (iii).  As a result, an emergency situation arose where the

2        Valuable WBDI IP in the Event, and any other IP from third

3        parties, had not been properly cleared for belatedly

4        communicated livestream terms.  WBDI's ability to implement

5        all or some of its usual clearance and policing protocols was

6        also impaired.

7        (iv).  If the Event partners to WBDI had been someone less

8        important than Tesla and Musk, WBDI might have

9        communicated that there could be no livestream, or that the

10       scope of the livestream would have to be sharply restricted.

11       (v).  Here, though, WBDI allowed the livestream to go forward,

12       and, as an emergency clearance fix or patch, shortly before the

13       commencement of the Event, WBDI communicated directions

14       to Tesla, and expected performers, including Musk, and the

15       production and direction team in the production truck or video

16       village, that the livestream could go forward, but that Tesla, and

17       all performers, and the production and direction team, were all

18       to understand and take steps such that none of the Valuable

19       WBDI IP in the Event was to be featured in the keynote speech,

20       or publicly performed or displayed on the livestream feed,

21       except incidentally, because some or all of it was not properly

22       cleared for such uses.

23       (vi).  Further, although WBDI easily could have modified or

24       supplemented the above emergency fix or patch instruction

25       expressly to include BR2049 protected elements and other

26       Alcon exclusive-owned propertyas subject to the same

27       restrictions, WBDI intentionally or negligently failed to do so.

28

WB_0001223

186.  ***WBDI Actual Policing of Musk and Tesla During the Event Alternative Theory 2:*** *Plaintiff alleges on information and belief, subject to the need for discovery, as an alternative theory, that, to the extent that WBDI failed to structure the Event or Event Contract to provide WBDI with actual ability to police violation by Tesla or Musk of IP rights of either WBDI or its subsidiaries or any third party, or if WBDI had such actual ability but failed actually to exercise it, such failure or failures was a material departure from and violation of WBDI's own standard practices and policies, to Alcon's reasonably foreseeable and actual prejudice.*

## FIRST CLAIM FOR RELIEF

### *Direct Copyright Infringement in Violation of 17 U.S.C. § 501,* **et seq.**

### *Against Defendants WBDI, Tesla and Musk*

187.  Plaintiff repeats, re-alleges and incorporates herein by reference each and every allegation set forth in all of the foregoing paragraphs, and in each paragraph of this SAC hereafter, as if set forth herein in full.

188.  To the extent any of the allegations or theories in this First Claim for Relief are inconsistent with other allegations or theories pled in this SAC, they are pled in the alternative.

189.  Plaintiff is the author and copyright owner of the motion picture "Blade Runner 2049," registered with the United States Copyright Office on October 6, 2017, registration number PA0002056792.  That is the registered infringed work.

190.  Defendants Tesla and Musk created at least two infringing works: 1) Exhibit C; and 2) the Event Recording, in the record as Exhibit 2 to the February 4, 2025 Omnibus Declaration of Chris Marchese) ("Event Recording").  The specifically infringing portions of the Event Recording are the approximately 11

///

WB_0001224

1    seconds at the opening of the presentation where Exhibit C is displayed and Musk's

2    accompanying voiceover.

3        191.  <u>Musk and Tesla</u>:  Defendant Tesla and Musk are direct infringers, in

4    that they violated Plaintiff's exclusive rights in BR2049 in each of the following

5    ways, with the conduct alleged constituting both actual copying and unlawful

6    appropriation in each instance.  <u>Defendant WBDI</u>: is a direct infringer in that the

7    violation of Alcon's public display rights as alleged in this SAC and paragraph

8    191f below was conducted on, and transmitted over, WBDI-owned or WBDI-

9    controlled property, infrastructure and systems (specifically including WBDI

10   livestreaming infrastructure systems), and WBDI engaged in volitional conduct as

11   discussed paragraphs 192-193 below:

12            a.  <u>Violation of Reproduction Right, 17 U.S.C. § 106(1)</u>.  Defendants

13                Musk and Tesla infringed this exclusive right of Alcon by the conduct

14                alleged in paragraphs 101, 101a and 101b in this SAC: literal copying

15                of the entirety of BR2049 or of protectable elements of BR2049 such as

16                still images like those in Exhibits A and B, or a partial videorecording

17                of BR2049, to an AI image generator.  These allegations are made on

18                the same information and belief and alternative pleading theory basis as

19                set forth in paragraphs 101, 101a and 101b.  (**Exhibit C AI Generation**

20                **Process Alternative Theory 1**.)

21            b.  <u>Violation of Reproduction Right, 17 U.S.C. § 106(1)</u>.  Defendants

22                Musk and Tesla infringed this exclusive right of Alcon by the conduct

23                alleged in paragraphs 101 and 101c in this FAC: literal copying of

24                another work  (a "licensed image") as part of the AI image generation

25                process, but the process nonetheless involved an AI image generator

26                engaging in literal copying of the entirety of BR2049 or of protectable

27                elements of BR2049 such as still images like those in Exhibits A and B,

28

76
SECOND AMENDED COMPLAINT

WB_0001225

or a partial videorecording of BR2049, to an AI image generator, and put into the image generator by Musk and Tesla, or persons under their direction and control. These allegations are made on the same information and belief and alternative pleading theory basis as set forth in paragraphs 101 and 101c. (**Exhibit C AI Generation Process Alternative Theory 2**.)

c. Violation of Reproduction Right, 17 U.S.C. § 106(1). Under the law of the Ninth Circuit as usually interpreted, all of the violations of Alcon's right to prepare derivative works are also necessarily violations of Alcon's reproduction rights.

d. Violation of Right to Prepare Derivative Works, 17 U.S.C. § 106(2). The Exhibit C image is an unauthorized derivative work of BR2049, which impermissibly incorporates at least the following protected elements of BR2049 (as the protected elements are detailed in Paragraph 13 of Appendix 2 of this SAC): i) Iconic Still Images which Evoke Qualitatively Important Scenes or Sequences of BR2049; ii) the character K; iii) Urgent Human-AI Decision Point Theme; iv) Mood of Anxiety, Fear and Urgency, and specifically about the Human-AI Decision Point; v) Setting; and vi) Selection and Arrangement of elements, as alleged in paragraph 13f of Appendix 2 of this SAC. See paragraphs 102-122 of this SAC and Exhibits A-D. Alcon further alleges that the Exhibit C image must be treated as an unauthorized derivative work, because Musk by his commentary during the Event and in the Event Recording effectively represents to the audience that it is either itself a protected still image of BR2049, or a derivative work of BR2049, and that Musk and Tesla should therefore be estopped to contend otherwise. *Id.*

WB_0001226

e. <u>Violation of Right to Prepare Derivative Works, 17 U.S.C. § 106(2)</u>.
The Event Recording is an unauthorized derivative work of BR2049,
which impermissibly incorporates at least the following protected
elements of BR2049 (as the protected elements are detailed in
Paragraph 13 of Appendix 2 of this SAC): i) Iconic Still Images which
Evoke Qualitatively Important Scenes or Sequences of BR2049; ii) the
character K; iii) Urgent Human-AI Decision Point Theme; iv) Mood of
Anxiety, Fear and Urgency, and specifically about the Human-AI
Decision Point; v) Setting; and vi) Selection and Arrangement of
elements, as alleged in paragraph 13f of Appendix 2 of this SAC. <u>See</u>
paragraphs 102-122 of this SAC and Exhibits A-D. Alcon further
alleges that the Exhibit C image must be treated as an unauthorized
derivative work, because Musk by his commentary during the Event
and in the Event Recording effectively represents to the audience that it
is either itself a protected still image of BR2049, or a derivative work
of BR2049, and that Musk and Tesla should therefore be estopped to
contend otherwise. *Id.*

f. <u>Violation of Right to Display Work Publicly, 17 U.S.C. § 106(5)</u>. The
display of Exhibit image both i) at the live Event and ii) during the
livestream of the Event in the United States violated Alcon's public
display rights in BR2049 and its protected elements, and all three
Defendants have direct infringement liability. Musk and Tesla actively
conducted the event resulting in the display, paragraphs 102-122, and
the display occurred over WBDI-owned or -controlled systems, to both
a large in-person audience, and also to a worldwide audience, including
viewers in the United States. SAC, paragraph 109.

///

WB_0001227

192.   WBDI engaged in volitional conduct as that term is used in the context of infringement of the 17 U.S.C. § 106(5) public display right.  The volitional conduct requirement is a term of art that means sufficient facts for a finding of proximate cause, meaning that the defendant was a direct cause of the infringement pursuant to the way that proximate cause is used in the traditional tort context.  Within that framework, at least in the context of online servers and similar situations, volitional conduct may be found where the defendant did any of the following: (1) exercised control; (2) selected any material for upload or storage; or (3) instigated any copying, storage or distribution.

193.   Here, WBDI was actively involved and either exercised control and/or instigated copying, storage or distribution of the infringed work, which here is BR2049.  WBDI held itself out to Musk and Tesla as having rights that WBDI does not have, (SAC, ¶¶ 32-36), led Musk and Tesla to believe until very late in the process that Musk and Tesla would be allowed to use Exhibit A in the Event pursuant to a license from Warner Bros. Pictures, (SAC, ¶¶ 59-78), caused Warner Bros. Pictures to actually provide a high resolution image of protected elements of BR2049 to Musk and Tesla, (SAC, ¶¶ 64-65), and also engaged in a combination of intentional or negligent representations combined with silence (failure to make corrective speech) that resulted in Musk and Tesla potentially understanding they had U.S. copyright permission to use BR2049 elements, or effective immunity for BR2049 infringement claims under U.S. law.  (SAC, ¶¶ 92-95.)  In addition, given Musk's and Tesla's history with the BR2049 property and how they use it for product reveals, (SAC, ¶¶ 32-36), and Musk's disdain for intellectual property law, (SAC, ¶¶ 27-31), letting Musk and Tesla contract for and conduct the Event while providing content for them, (SAC, ¶¶ 47-54), combined with causing them to anticipate being able to use BR2049 in Musk's keynote warrants a finding of proximate cause, including under the instigation prong.  Plaintiff also contends that

WB_0001228

1   WBDI's intentional or negligent failure actively to police Musk and Tesla,

2   especially after receiving the Alcon Event Directions to WBDI and leading Alcon to

3   believe that WBDI would follow them also contributes to the conclusion that a

4   finding of sufficient active involvement to warrant a proximate cause finding of

5   volitional conduct exists.  (SAC, ¶¶ 88-92, 98, 155-177, 179-185.)

6         194.   Alcon alleges and contends that where substantial similarity analysis is

7   required, Defendants' acts of infringement above as to the character K are subject to

8   the "story being told," distinct delineation, and/or bodily appropriation tests

9   applicable to characters, and that the character K satisfies them.  Alcon also stands

10   by and advances its derivative work reference leveraging theory articulated in

11   Alcon's Memorandum of Points and Authorities in Opposition to Musk and Tesla's

12   Motion to Dismiss Plaintiff's First Amended Complaint.  Alcon believes that theory

13   is within the parameters of existing copyright case law, but to the extent it is not,

14   Alcon advances it as a novel theory.  Alcon also advances the theory that Musk and

15   Tesla's intentions to infringe must be taken into account in favor of substantial

16   similarity findings and analysis.  Alcon also believes that is within the parameters of

17   existing case law, but to the extent it is not, Alcon advances it as a novel theory.

18         195.   The foregoing acts of Defendants WBDI, Tesla and Musk infringed

19   upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce,

20   create derivative works, display, distribute and publicly perform BR2049 and its

21   protectible elements.  Such actions and conduct constitute copyright infringement in

22   violation of 17 U.S.C. § 501, *et seq.*

23         196.   Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and

24   registered the exclusive rights and privileges in and to the copyrights of the above-

25   referenced work in accordance with 17 U.S.C. § 408.

26         197.   Plaintiff suffered damages as a result of Defendants' unauthorized use

27   of BR2049 and its protectible elements.

28

80
SECOND AMENDED COMPLAINT

198.   Plaintiff is entitled to temporary, preliminary and/or permanent injunctive relief, pursuant to 17 U.S.C. § 502(a).

199.   Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to impoundment of all materials used to achieve the infringement, and records documenting Defendants' exploitation of their infringements, including without limitation all materials used by Defendants or any image generation tool employed by them to generate the Exhibit C Image.

200.   Plaintiff is entitled to recover and seeks its actual damages and any additional profits of Defendants WBDI, Tesla and Musk attributable to the infringements, under 17 U.S.C. § 504(b).

201.   Plaintiff also is entitled to elect to recover and seek statutory damages under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more than $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and believes and on that basis alleges that Defendants' acts of copyright infringement, as alleged above, were willful, intentional, and malicious.  Such acts subject Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement.

202.   Within the time permitted by law, Plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

203.   Plaintiff also is entitled to a discretionary award of attorney fees under 17 U.S.C. § 505.

204.   Plaintiff seeks or reserves the right to seek any or all of the above forms of relief, in addition to prejudgment interest to the extent legally available and Plaintiff's costs.

///

///

///

81

SECOND AMENDED COMPLAINT

## SECOND CLAIM FOR RELIEF

### *Vicarious Copyright Infringement in Violation of 17 U.S.C. § 501,* et seq.

### *Against Defendants WBDI, Tesla and Musk*

205.   Plaintiff repeats, re-alleges and incorporates herein by reference each and every allegation set forth in all of the foregoing paragraphs, and each paragraph of this SAC hereafter, as if set forth herein in full.

206.   To the extent any of the allegations or theories in this Second Claim for Relief are inconsistent with other allegations or theories pled in this SAC, they are pled in the alternative.

207.   If Defendants WBDI, Tesla and Musk are not each liable as direct infringers of BR2049, they are secondarily liable for the infringements directly committed by individual agents, contractors, or other infringers presently unknown (the "Direct Infringers") under the vicarious infringement doctrine.

208.   <u>Defendants Musk and Tesla</u>.  As to Musk and Tesla, if they are not themselves the direct infringers, it appears highly likely that they are the masters or employers of the direct infringers, or otherwise had the right and ability to supervise and control the Direct infringers, and that the Direct Infringers infringed in the course and scope of their work for Musk and Tesla.  (SAC, ¶¶ 100-122.)  It thus appears highly likely that Musk and Tesla would have liability under traditional respondeat superior doctrine, and Alcon pleads that they do.  The case law on vicarious copyright infringement appears less than entirely clear on whether such traditional theory respondeat superior vicarious liability for copyright infringement is to be pled as a subset of direct infringement, or under a vicarious infringement claim.  Alcon believes that its direct infringement allegations against Musk and Tesla cover the traditional respondeat superior theory, but in the event that theory is more properly placed in a vicarious infringement claim, Alcon pleads it here.  Alcon does not here plead as against Musk and Tesla the "direct financial

SECOND AMENDED COMPLAINT

WB_0001231

1  benefit" and "right and ability to supervise" vicarious infringement theory crafted
2  for cases not within traditional respondeat superior liability.

3      209.  <u>Defendant WBDI</u>.  WBDI had the right and ability to supervise the
4  infringing activity that all the Direct Infringers committed.  (SAC, ¶¶ 155-186.)
5  They were also notice actively to exercise their supervisorial rights and powers,
6  both because Musk and Tesla are inherently high risks to infringe against BR2049
7  in particular, (SAC, ¶¶ 27-31), and because Alcon put WBDI on notice with the
8  Alcon Event Directions to WBDI and WBDI intentionally or negligently failed to
9  follow them, after indicated to Alcon that WBDI would perform them.  (SAC, ¶¶
10  88-92, 98.)

11      210.  WBDI obtained a qualifying level of direct financial benefit from
12  Musk and Tesla and their infringing conduct, and the opportunity to infringe
13  BR2049 was a substantial part of the draw to Musk and Tesla for the monies they
14  paid to WBDI for the overall Event.  (SAC, ¶¶ 32-36, 47-54.)

15      211.  Alcon also alleges and contends that WBDI took enough actions to
16  pursue the Exhibit A "clip licensing" plan such that, although it was not ultimately
17  consummated, it went far enough that it should be treated as satisfying the draw
18  and directly financial benefit analyses of vicarious copyright infringement law.
19  WBDI held itself out to Musk and Tesla as having rights that WBDI does not have,
20  (SAC, ¶¶ 32-36), led Musk and Tesla to believe until very late in the process that
21  Musk and Tesla would be allowed to use Exhibit A in the Event pursuant to a
22  license from Warner Bros. Pictures, (SAC, ¶¶ 59-78), caused Warner Bros. Pictures
23  to actually provide a high resolution image of protected elements of BR2049 to
24  Musk and Tesla, (SAC, ¶¶ 64-65), set up or proposed an associated payment,
25  (SAC, ¶ 63), and also engaged in a combination of intentional or negligent
26  representations combined with silence (failure to make corrective speech) that
27  resulted in Musk and Tesla potentially understanding they had U.S. copyright

28

WB_0001232

1    permission to use BR2049 elements, or effective immunity for BR2049

2    infringement claims under U.S. law.  (SAC, ¶¶ 92-95.)

3       212.   Alcon contends that the Ninth Circuit case law on the directness of the

4    tie required between the financial benefit and the infringement is strict enough that

5    it is possible that even the above facts would not be found close enough.  To the

6    extent that is the case, Alcon contends and advances that the relationship here

7    between WBDI and Musk and Tesla is close enough to cases like *Fonovisa v.*

8    *Cherry Auction, Inc.*, 76 F.3d 259 (1996), and the underlying fundamental

9    situations and reasons that led to the vicarious infringement doctrine in the first

10    place, that vicarious liability should be imposed on WBDI, even if that might

11    require a relaxation of some Ninth Circuit law on the strictness of the link required

12    between infringement and direct financial benefit.

13       213.   Accordingly, all Defendants had an incentive to permit infringement

14    by the Direct Infringers.

15       214.   The foregoing acts of Defendants WBDI, Tesla and Musk infringed

16    upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce,

17    create derivative works, and publicly display BR2049 and its protectible elements.

18    Such actions and conduct constitute copyright infringement in violation of 17

19    U.S.C. § 501, *et seq.*

20       215.   Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and

21    registered the exclusive rights and privileges in and to the copyrights of the above-

22    referenced work in accordance with 17 U.S.C. § 408.

23       216.   Plaintiff suffered damages as a result of Defendants' unauthorized use

24    of BR2049 and its protectible elements.

25       217.   Plaintiff is entitled to temporary, preliminary and/or permanent

26    injunctive relief, pursuant to 17 U.S.C. § 502(a).

27       218.   Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to

28

SECOND AMENDED COMPLAINT

WB_0001233

1 | impoundment of all materials used to achieve and records documenting
2 | Defendants' exploitation of, their infringements, including without limitation all
3 | materials used by Defendants or any image generation tool employed by them to
4 | generate the Exhibit C Image.

5 | 219.   Plaintiff is entitled to recover and seeks its actual damages and any
6 | additional profits of Defendants WBDI, Tesla and Musk attributable to the
7 | infringements, under 17 U.S.C. § 504(b).

8 | 220.   Plaintiff also is entitled to elect to recover and seeks statutory damages
9 | under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more
10 | than $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and
11 | believes and on that basis alleges that Defendants' acts of copyright infringement,
12 | as alleged above, were willful, intentional, and malicious.  Such acts subject
13 | Defendants to liability for statutory damages under Section 504(c)(2) of the
14 | Copyright Act in the sum of up to $150,000 per infringement.

15 | 221.   Within the time permitted by law, plaintiff will make its election
16 | between actual damages and profit disgorgement, or statutory damages.

17 | 222.   Plaintiff also is entitled to a discretionary award of attorney fees under
18 | 17 U.S.C. § 505.

19 | 223.   Plaintiff seeks or reserves the right to seek any or all of the above
20 | forms of relief, in addition to prejudgment interest to the extent legally available
21 | and Plaintiff's costs.

22 | ### THIRD CLAIM FOR RELIEF

23 | ***Contributory Copyright Infringement in Violation of 17 U.S.C. § 501, et seq.***
24 | ***Against Defendants WBDI, Tesla and Musk***

25 | 224.   Plaintiff repeats, re-alleges and incorporates herein by reference each
26 | and every allegation set forth in all of the foregoing paragraphs, and each
27 | paragraph of this SAC hereafter, as if set forth herein in full.

28 |

WB_0001234

225.   To the extent any of the allegations or theories in this Third Claim for Relief are inconsistent with other allegations or theories pled in this Complaint, they are pled in the alternative.

226.   If Defendants WBDI, Tesla and Musk are not individually liable as direct infringers of BR2049, they are secondarily liable for the infringements committed by the Direct Infringers under the contributory infringement doctrine.

227.   Defendants WBDI, Tesla and Musk had, or should have had, knowledge of the infringements of the Direct Infringers.

228.   <u>Tesla and Musk</u>.  Tesla and Musk plainly intentionally included the Exhibit C image in the October 10, 2024 Tesla presentation, and they could plainly see that it was not an actual still image from BR2049, but rather a stylized copy likely to found infringing.  Under at least one of Alcon's alternative theories, they also all knew that Alcon had refused permission to use BR2049 or any of its elements in the presentation or in connection with it.

229.   <u>WBDI</u>.  WBDI was conducting clearance for the Event and either knew or should have known of the infringing conduct by the Direct Infringers. WBDI was plainly on notice pursuant to the Alcon Event Directions to WBDI to check on and actively police Musk and Tesla against infringement of BR2049, but intentionally or negligently failed to do so when it could, meeting at least a should have known or willful blindness standard of knowledge, even if WBDI did not actually know about Musk's and Tesla's infringement before and at the time of the Event.  Furthermore, regardless, Plaintiff alleges on information and belief, subject to the need for discovery, that WBDI definitely knew when it saw Musk's keynote speech that his and Tesla's actions were infringing, or, at latest, on October 16, 2024 when Alcon complained.

230.   Defendants WBDI, Tesla and Musk either materially contributed to or induced the infringements.  Tesla and Musk materially contributed to the direct

86

SECOND AMENDED COMPLAINT

1  infringements by including the Exhibit C image in Musk's presentation.  Plaintiff is
2  informed and believes and on that basis and subject to the need for discovery
3  alleges that Musk was determined specifically to reference BR2049 and an image
4  from it in the presentation, and his determination induced the direct infringements
5  by the Direct Infringers of creating the infringing Exhibit C image.  Defendant
6  WBDI materially contributed to the direct infringements at the very least in that the
7  event display, distribution and public performance aspects of the infringement
8  occurred at WBDI's Burbank, California studio lot, and with the use and support of
9  WBDI's facilities and technology.

10  231.  WBDI also materially contributed to, induced, or encouraged
11  infringement by WBDI holding itself out to Musk and Tesla as having rights that
12  WBDI does not have, (SAC, ¶¶ 32-36), led Musk and Tesla to believe until very
13  late in the process that Musk and Tesla would be allowed to use Exhibit A in the
14  Event pursuant to a license from Warner Bros. Pictures, (SAC, ¶¶ 59-78), caused
15  Warner Bros. Pictures to actually provide a high resolution image of protected
16  elements of BR2049 to Musk and Tesla, (SAC, ¶¶ 64-65), and also engaged in a
17  combination of intentional or negligent representations combined with silence
18  (failure to make corrective speech) that resulted in Musk and Tesla potentially
19  understanding they had U.S. copyright permission to use BR2049 elements, or
20  effective immunity for BR2049 infringement claims under U.S. law.  (SAC, ¶¶ 92-
21  95.)  In addition, given Musk's and Tesla's history with the BR2049 property and
22  how they use it for product reveals, (SAC, ¶¶ 32-36), and Musk's disdain for
23  intellectual property law, (SAC, ¶¶ 27-31), letting Musk and Tesla contract for and
24  conduct the Event while providing content for them, (SAC, ¶¶ 47-54), combined
25  with causing them to anticipate being able to use BR2049 in Musk's keynote
26  warrants a finding of encouragement or inducement.
27  ///
28

WB_0001236

232. Furthermore, once WBDI knew of the infringement, which at latest was when Alcon complained on October 16, 2024, WBDI by its silence and failure openly to denounce Musk and Tesla's conduct as infringing has effectively encouraged Musk and Tesla in not remediating, and WBDI is thereby lending support to and/or ratifying the conduct of Musk and Tesla.

233. The foregoing acts of Defendants WBDI, Tesla and Musk infringed upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce, create derivative works, display, distribute and publicly perform BR2049 and its protectible elements. Such actions and conduct constitute copyright infringement in violation of 17 U.S.C. § 501, *et seq.*

234. Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced work in accordance with 17 U.S.C. § 408.

235. Plaintiff suffered damages as a result of Defendants' unauthorized use of BR2049 and its protectible elements.

236. Plaintiff is entitled to temporary, preliminary and/or permanent injunctive relief, pursuant to 17 U.S.C. § 502(a).

237. Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to impoundment of all materials used to achieve and records documenting Defendants' exploitation of, their infringements, including without limitation all materials used by Defendants or any image generation tool employed by them to generate the Exhibit C Image.

238. Plaintiff is entitled to recover and seeks its actual damages and any additional profits of Defendants WBDI, Tesla and Musk attributable to the infringements, under 17 U.S.C. § 504(b).

239. Plaintiff also is entitled to elect to recover and seeks statutory damages under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more

WB_0001237

1   than $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and

2   believes and on that basis alleges that Defendants' acts of copyright infringement,

3   as alleged above, were willful, intentional, and malicious.  Such acts subject

4   Defendants to liability for statutory damages under Section 504(c)(2) of the

5   Copyright Act in the sum of up to $150,000 per infringement.

6       240.   Within the time permitted by law, Plaintiff will make its election

7   between actual damages and profit disgorgement, or statutory damages.

8       241.   Plaintiff also is entitled to a discretionary award of attorney fees under

9   17 U.S.C. § 505.

10       242.   Plaintiff seeks or reserves the right to seek any or all of the above

11   forms of relief, in addition to prejudgment interest to the event legally available

12   and Plaintiff's costs.

### FOURTH CLAIM FOR RELIEF

### *False Affiliation and/or False Endorsement*

### *in Violation of 15 U.S.C. § 1125(a)(1)(A) against Defendants Musk and Tesla*

16       243.   Plaintiff repeats, re-alleges and incorporates herein by reference each

17   and every allegation set forth in all of the foregoing paragraphs, and each

18   paragraph of this SAC hereafter, as if set forth herein in full.

19       244.   To the extent any of the allegations or theories in this Fourth Claim for

20   Relief are inconsistent with other allegations or theories pled in this SAC, they are

21   pled in the alternative.

22       245.   Alcon owns the marks, trade dress and other Lanham Act-protectable

23   interests identified in paragraphs 137-154 (together, "Alcon's Marks"), and has

24   owned them continuously since prior to 2024.

25       246.   Defendants Tesla and Musk have engaged in false representations

26   which are likely to cause confusion, or to cause mistake, or to deceive as to the

27   affiliation, connection or association of Tesla and Musk with Alcon or as to the

28

WB_0001238

1 | sponsorship or approval of Tesla's or Musk's goods, services, or commercial
2 | activities by Alcon.

3 |     247.   Plaintiff alleges that Tesla and Musk engaged in the following specific
4 | conduct that together constituted false statements that constituted false
5 | representations of the type described in the foregoing paragraph 246: the conduct
6 | and statements made by Tesla and Musk at the October 10, 2024 Tesla-WBDI
7 | event as described in paragraphs 102-124 above, and as further distributed and
8 | made available to consumers thereafter by the wide dissemination to and ongoing
9 | presence and availability of, the Event Recording to consumers.

10 |     248.   As alleged in detail in paragraphs 102-124 above, in the about eleven
11 | seconds of Event presentation on October 10, 2024 which included the Exhibit C
12 | image and Musk's accompanying voiceover, Musk and Tesla by their conduct used
13 | or evoked all of the following protectable Lanham Act interest of Alcon: a) Alcon's
14 | BLADE RUNNER 2049 mark as it is described in paragraph 137; b) Alcon's
15 | BLADE RUNNER mark as it is described in paragraph 138; b) Alcon's mark or
16 | protectable goodwill in the character K as described in paragraphs 140-142; c)
17 | Alcon's protectable trade dress in iconic or recognizable still images from BR2049
18 | such as Exhibit A and the Exhibit B images, specifically generating the Exhibit C
19 | Image and displaying it with accompanying voiceover by Musk such that it
20 | appeared to be either an actual still image from BR2049's Las Vegas Sequence, or
21 | a lightly-stylized illustration of K about to enter the irradiated Las Vegas at or near
22 | the beginning of the sequence, paragraphs 143-148; and d) a protectable
23 | combination as alleged in paragraph 148.

24 |     249.   Tesla and Musk used Alcon's marks and trade dress to advertise cars
25 | and a car company, including in the sense of conveying an association between
26 | Tesla and its Robotaxi and Alcon, BR2049 and K, which is the type of association
27 | that Alcon licenses, and that consumers and other customers expect to be a licensed
28 |

90
SECOND AMENDED COMPLAINT

association. The Event presentation was for all intents and purposes a long livestreamed advertisement for Tesla and its products, and it reached a substantial set of the general consuming public in the United States, and of Alcon's potential automobile brand partners on BR2049. Although Alcon is not a competitor of Tesla in the car business (it is true that Alcon does not itself sell cars), Alcon is in fact in that business of licensing the BR2049 marks and trade dress to car makers for advertising affiliation, and that is sufficiently in the zone of interests for Alcon to be a proper claimant.

250. Tesla's and Musk's unauthorized use of, and references, to Alcon's BR2049 marks and secondary meaning elements had and have the effect of falsely representing that Tesla's and Musk's goods and services are licensed, sponsored, endorsed, or otherwise authorized by Alcon, and/or is at the very least misleading as to these points, and in a business market (automobile brand marketing partnerships on BR2049) in which Alcon is actually an established player.

251. Alcon also alleges that Tesla's and Musk's conduct includes explicitly misleading statements, expressions or conduct, within the meaning of *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018), if the test of *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir. 1989) were applied to the Lanham Act claim here, which Alcon contends would be improper. (SAC, ¶ 124.) Alcon advances and maintains all of the arguments against application of Rogers v. Grimaldi that Alcon's counsel set forth on April 7, 2025 at the oral argument opposing Defendants' Motions to Dismiss Plaintiff's First Amended Complaint.

252. Tesla's and Musk's conduct is likely to cause confusion or mistake and to deceive consumers and/or Alcon's relevant actual and potential business partners as to the endorsement, sponsorship, affiliation, connection, or association of Alcon with Tesla's and Musk's services and products. In this context, Alcon's relevant business partners include automotive brands with potential interest in

91

SECOND AMENDED COMPLAINT

brand affiliations with BR2049, including without limitation with the BR2049-based *Blade Runner 2099* television series currently in production by Alcon. They also include business partners in the Hollywood talent pool market where Alcon is active on an everyday basis, and which Hollywood talent pool market generally is less likely to deal with Alcon, or parts of the market may be, if they believe or are confused as to whether, Alcon has an affiliation with Tesla or Musk.

253.  Tesla and Musk engaged in the above conduct intentionally and in bad faith, conspiring to and then executing a fraudulent scheme falsely to create a purported justification or excuse to feature Alcon's BR2049 prominently at the outset of Tesla's and Musk's Robotaxi or cybercab product reveal presentation, and without paying Alcon any fee for doing so, for the purpose of using BR2049's goodwill to increase the interest level and cache of the new Tesla product pitch and product.

254.  All of the foregoing false endorsement uses of Alcon's BR2049 marks and goodwill were commercial speech, and not subject to any defense predicated on the nature of the use being a non-commercial use or non-commercial speech. Specifically, some or all of Tesla's and Musk's speech was either (a) core commercial speech in that it proposes a commercial transaction, or in the alternative, (b) was nonetheless commercial for purposes of false endorsement law and Plaintiff's claims herein, in that the communications were advertisements, made reference to a specific product, and the speaker had an economic motivation for the communication, all within the meaning of *Bolger v. Youngs Drugs Products Corp.*, 463 U.S. 60 (1983) and its progeny.

255.  As a direct and proximate result of Tesla's and Musk's wrongful actions, Alcon has suffered damages in an amount to be proven at trial, but in excess of the jurisdictional minimum.

256.  Alcon further alleges that Tesla's and Musk's unauthorized use of

WB_0001241

1   Alcon's BR2049 marks and secondary meaning elements will continue unless and

2   until Tesla and Musk are enjoined.  Alcon has no adequate remedy at law to

3   prevent Tesla and Musk from continuing to wrongfully violate Alcon's rights, and

4   Alcon will suffer irreparable harm unless Defendants are enjoined from continuing

5   their wrongful conduct.

6       257.   Defendants Musk and Tesla both had actual knowledge of the

7   wrongfulness of their conduct and the high probability that such acts would cause

8   injury and/or damage to Plaintiff.  Despite their knowledge, Defendants Musk and

9   Tesla intentionally pursued their course of conduct, resulting in injury or damage to

10  Plaintiff.

11  **Prayer for Relief**

12      WHEREFORE, Plaintiff prays judgment be entered in its favor and against

13  Defendants, and each of them, as follows:

14    1.  <u>On the First Claim for Relief for Copyright Infringement</u>:

15      a.  For a preliminary and permanent injunction against Defendants and

16         anyone working in concert with them from further copying, displaying,

17         distributing, selling, or offering to sell BR2049 or protectible elements

18         thereof in connection with Tesla or Musk, or making derivative works

19         thereof for such purposes.

20      b.  As permitted under 17 U.S.C. § 503, for impoundment of all copies of

21         the Exhibit C Image and Event Recording and underlying materials

22         used in violation of Plaintiff's copyrights—including digital copies or

23         any other means by which they could be used again by the Defendants

24         without Plaintiff's authorization—as well as all related records and

25         documents.

26      c.  For actual damages and all profits that Defendants derived from the

27         unauthorized use of BR2049 or, where applicable and at Plaintiff's

28

93
SECOND AMENDED COMPLAINT

election, statutory damages.

    d.  For an award of attorneys' fees.

    e.  For an award of pre-judgment interest as allowed by law.

    f.  For costs of suit.

    g.  For such further relief as the Court deems just and proper.

2.  <u>On the Second Claim for Relief for Vicarious Copyright Infringement:</u>

    a.  For a preliminary and permanent injunction against Defendants and anyone working in concert with them from further copying, displaying, distributing, selling, or offering to sell BR2049 or protectible elements thereof in connection with Tesla or Musk, or making derivative works thereof for such purposes.

    b.  As permitted under 17 U.S.C. § 503, for impoundment of all copies of the Exhibit C image, Event Recording, and underlying materials used in violation of Plaintiff's copyrights—including digital copies or any other means by which they could be used again by the Defendants without Plaintiff's authorization—as well as all related records and documents.

    c.  For actual damages and all profits that Defendants derived from the unauthorized use of BR2049 or, where applicable and at Plaintiff's election, statutory damages.

    d.  For an award of attorneys' fees.

    e.  For an award of pre-judgment interest as allowed by law.

    f.  For costs of suit.

    g.  For such further relief as the Court deems just and proper.

3.  <u>On the Third Claim for Relief for Contributory Copyright Infringement:</u>

    a.  For a preliminary and permanent injunction against Defendants and anyone working in concert with them from further copying, displaying,

94

SECOND AMENDED COMPLAINT

WB_0001243

distributing, selling, or offering to sell BR2049 or protectible elements

thereof in connection with Tesla or Musk, or making derivative works

thereof for such purposes.

    b. As permitted under 17 U.S.C. § 503, for impoundment of all copies of

the Exhibit C image, Event Recording, and underlying materials used

in violation of Plaintiff's copyrights—including digital copies or any

other means by which they could be used again by the Defendants

without Plaintiff's authorization—as well as all related records and

documents.

    c. For actual damages and all profits that Defendants derived from the

unauthorized use of BR2049 or, where applicable and at Plaintiff's

election, statutory damages.

    d. For an award of attorneys' fees.

    e. For an award of pre-judgment interest as allowed by law.

    f. For costs of suit.

    g. For such further relief as the Court deems just and proper.

4. <u>On the Fourth Claim for Relief (False Endorsement in Violation of 15 U.S.C.
§ 1125(a)(1)(A))</u>

    a. For injunctive relief, including without limitation for an order

mandating that Defendants Musk and Tesla cease any further

promotional or advertising use of BR2049; that Defendants place a

corrective notice or disclaimer on the Event Recording and all copies

thereof putting viewers on notice that the portions of the event

referencing BR2049 false and misleading and that BR2049 and Alcon

have no relationship or affiliation with Tesla, Musk or the cybercab

product; and an order mandating that Musk and Tesla cease to

distribute any further copies of the Event Recording or event livestream

95

SECOND AMENDED COMPLAINT

WB_0001244

1          that contains the BR2049 references and Exhibit C.

2        b.  For compensatory damages;

3        c.  Defendants' profits;

4        d.  Attorney fees;

5        e.  Costs of suit;

6        f.  Prejudgment Interest; and

7        g.  Such other and further relief as the Court may deem just and proper.

8

9  DATED: June 16, 2025        ANDERSON YEH PC
                       Edward M. Anderson
10                Regina Yeh

11
                       By _____
12                Attorneys for Plaintiff
                       ALCON ENTERTAINMENT, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

96

SECOND AMENDED COMPLAINT

WB_0001245

1    **<u>DEMAND FOR JURY TRIAL</u>**

2          Pursuant to Fed. R. Civ. P. 38, on its claims against Defendants Tesla, Inc.

3    ("Tesla"), Elon Musk ("Musk"), and Warner Bros. Discovery, Inc. ("WBDI"),

4    Plaintiff Alcon Entertainment, LLC hereby demands a trial by jury of all matters

5    triable to a jury.

6

7    DATED: June 16, 2025          ANDERSON YEH PC
                                    Edward M. Anderson
8                                   Regina Yeh
9                                   By _____
                                    Attorneys for Plaintiff
10                                  ALCON ENTERTAINMENT, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -
DEMAND FOR JURY TRIAL