# Exhibit 61

<pre>
 1                   UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
 2

 3   IN RE:                     .  Chapter 11
                                .  Case No. 25-10475 (TMH)
 4   VILLAGE ROADSHOW           .
     ENTERTAINMENT GROUP USA    .  (Jointly Administered)
 5   INC., et al.,              .
                                .  Courtroom No. 7
 6                              .  824 North Market Street
              Debtors.         .  Wilmington, Delaware 19801
 7                              .
                                .  Friday, August 22, 2025
 8   . . . . . . . . . . . . . .  11:00ap.m.

 9            TRANSCRIPT OF STATUS CONFERENCE HEARING
          BEFORE THE HONORABLE THOMAS M. HORAN
10             UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   For the Debtors:          Justin Bernbrock, Esquire
                               SHEPPARD, MULLIN, RICHTER
13                              & HAMPTON LLP
                               321 North Clark Street
14                             32nd Floor
                               Chicago, Illinois 60654
15
     For Warner Bros.:         Scott Drake, Esquire
16                             O'MELVENY & MYERS LLP
                               2801 North Harwood Street
17                             Suite 1600
                               Dallas, Texas 75201
18

19   (APPEARANCES CONTINUED)

20   Audio Operator:           Ian Willoughby, ECRO

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24

     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

1   <u>APPEARANCES (CONTINUED)</u>:

2   For Alcon Media
    Group:                      Vadim Rubinstein, Esquire
3                               LOEB & LOEB LLP
                                345 Park Avenue
4                               New York, New York 10154

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

WB_0002897

1          (Proceedings commenced at 11:11 a.m.)

2               THE COURT:  Good morning, counsel.  This is Judge

3     Horan.  We're on the record in *Village Roadshow Entertainment*

4     *Group USA, Inc.*

5               I apologize for the late start.  I was finishing

6     up a 10 o'clock hearing and I appreciate everybody's patience

7     while you were in the waiting room.

8               Mr. Bernbrock, good morning.  Good to see you.

9               MR. BERNBROCK:  Good morning, Your Honor.  Good to

10    see you as well.  I trust the summer was nice.

11              THE COURT:  Very good, yeah.  Thank you.

12              MR. BERNBROCK:  Your Honor, for the record Justin

13    Bernbrock of Sheppard, Mullin, Richter & Hampton, counsel to

14    the debtors.

15              The request for today's status conference was made

16    by counsel to Warner Bros., and I would be inclined to invite

17    them to speak to the Court first.

18              THE COURT:  Certainly.  Mr. Drake, good morning.

19              MR. DRAKE:  Good morning, Judge.  Thank you for

20    hearing us on short notice.

21              As Mr. Bernbrock said, Warner Bros. requested this

22    -- for the record, Scott Drake of O'Melveny & Myers on behalf

23    of Warner Bros.  Judge, you saw our letter.  Let me just

24    explain why we thought a status conference made sense.  We

25    thought it was the easiest way to raise this issue of

1  bifurcation and wanted to try and avoid a full motion

2  practice if possible.  So, again, we appreciate the Court's

3  willingness to hear this today.

4           As you saw from our letter, Warner Bros. believes

5  bifurcating the derivative right sale hearing makes sense to

6  preserve estate resources and avoid significant professional

7  fee expenses.  As I will get into, Judge, there is a

8  threshold issue that has to be litigated eventually and I

9  don't think even Village disputes that.  So, we believe it is

10  appropriate to consider that threshold issue of who was, in

11  fact, the highest bidder on the derivative rights first.

12          Before I expand on why we believe bifurcation is

13  appropriate, I want to respond to just a couple things in

14  Village's letter from yesterday.

15          The first is they say there is -- Village says

16  there is no procedural or substantive basis for bifurcation.

17  I think the procedural basis is clear, Judge.  We cited to

18  Section 105(a) and Rule 7042.  You also have in your inherent

19  power to control your docket and ability to do that. So, I

20  don't think it can be meaningfully disputed that if Your

21  Honor thinks bifurcation is appropriate you can do it.

22          We think this case or this hearing is appropriate

23  for bifurcation, as I will get into momentarily but the other

24  thing from Village's letter I wanted to address, Judge, is

25  Village says that Warner Bros. is a disgruntled bidder that

1  lacks standing to challenge the auction.  So, I think its

2  important to address that first.  Warner Bros. isn't just a

3  disgruntled bidder who came up short at an auction.  They --

4  Village cites these cases about an unsuccessful bidder not

5  having standing to contest the results of an auction. Those

6  cases, Judge, are about true outsider bidders who came to an

7  auction but they're not parties in interest.  And that is the

8  key distinction.

9          THE COURT:  Yeah, I think I can short circuit

10  that, Mr. Drake.  Clearly, Warner Bros. is a very significant

11  creditor in this case.  They certainly have standing to raise

12  these issues.  I don't have any problem with the notion of

13  Warner Bros. having standing to raise the issues.

14          MR. DRAKE:  Okay. I will skip that argument.

15  Thank you, Judge. I appreciate you short circuiting that.

16          So, again, we believe there is a threshold issue

17  that should be resolved before we litigate the much more

18  complex and costly substantive objections to the Alcon sale.

19  And, again, I think it's important for the purposes of

20  today's status conference.

21          What we are arguing -- what Warner Bros. is

22  arguing today is bifurcation appropriate or not.  We don't

23  intend to litigate today was Village's decision to pursue the

24  Alcon sale over the Warner Bros. sale reasonable.

25          Again, just to touch on it, as you saw in our

1 letter, the math is pretty simple, right; 18.5 versus 17.5. I

2 don't think Mr. Bernbrock disputes.  We're talking about a $1

3 million difference.  But its not just the gross difference,

4 of course.  The key question is what is the net recovery of

5 pursuing that incremental $1 million.

6 　　　　　The important thing, Judge, is that I don't think

7 they can dispute the cost to litigate all the substantive

8 objections Warner Bros. has asserted is going to eat up the

9 entirety of that $1 million difference, right. I mean if we

10 just look at this status conference today, we have 50 people

11 tuning in, many of which are professionals being paid for by

12 the estate.  This is costly litigation and so we wanted to

13 bring this to the Court's attention today before -- we didn't

14 want to get to October 20th and have all that money spent and

15 it can't be recovered.

16 　　　　　So, if we talk about bifurcation, why is it

17 appropriate?  It's appropriate because this is a threshold

18 issue. The issue of which bid was, in fact, the highest is a

19 threshold issue and the debtors don't dispute that.  In fact,

20 if you look at their letter in the last paragraph, I think

21 the second to last line, the debtors say on a factual -- full

22 factual record at the sale hearing the debtors intend to

23 demonstrate that they exercise their business judgment in a

24 fair and reasonable manner throughout the sales process.

25 　　　　　So, they concede, Judge -- Village concedes this

1  issue has to be litigated.  Warner Bros. position is it's a

2  threshold issue and if Warner Bros. prevails, and we don't

3  have to get into whether or not Warner Bros. prevails, but

4  its an issue that they admit has to be litigated.

5          If Warner Bros. does prevail, that Warner Bros.

6  bid was, in fact, the highest bid, the Court never has to

7  entertain all of the substantive objections and they're much

8  more complex. It surrounds the consent rights and the

9  contracts. It concerns intellectual property rights. It

10  concerns copyright issues. It concerns financial

11  accommodations.

12          We can avoid all of that expense.  We can avoid

13  all the depositions between now and October.  We can avoid

14  the written discovery, the production of documents.  We could

15  avoid all that by having a phase one hearing solely on the

16  issue of the highest bid.

17          Notably, Judge, much of what Village says in their

18  letter is about their business judgment and why they think

19  the Alcon bid was, in fact, higher.  That is not for today.

20  Those are not arguments against bifurcation.  Those are

21  merits arguments that the Court is going to have to hear and

22  we believe it should be sooner rather then after we spend all

23  the money on the substantive objections.

24          So, Judge, they say -- Village also says in their

25  letter that their goal has always been to maximize the value

1  of the estate.  We don't think their decision on the

2  derivative rights does that but, again, that is for another

3  day.  But if Village truly wants to maximize the value of the

4  estate, they should agree that this threshold issue is

5  decided and depending on how Your Honor rules, we can either

6  move forward or not but why spend all this time and money if

7  we never have to get there.

8           So, with that, Judge, I think the same arguments

9  they make about -- Village makes -- well, if Village pivoted

10 to Warner Bros. Alcon might sue.  Again, that is a merits

11 argument on whether the decision was appropriate. It's not an

12 argument for or against bifurcation because, again, as

13 Village concedes, all of these issues are going to have to be

14 determined by the Judge at some point.

15          So, Judge, I think the only other comment Village

16 makes in its letter is that the issue of the selection of the

17 successful bidder is inextricably intertwined with the

18 substantive objections. I would admit, that is an argument

19 against bifurcation, not a merits argument, but its not

20 correct.  Judge, if we had a phase one issue solely on which

21 bid was, in fact, the highest, the Court doesn't actually

22 have to rule on whether these agreements are financial

23 accommodations, whether Warner Bros. consent rights do apply

24 or not.

25          The Court doesn't actually to rule on the merits.

1  All the Court would have to do is weigh the two bids, and I
2  don't think this will be disputed, those substantive, complex
3  and costly objections only exist if the debtor moves forward
4  with Alcon because Alcon cannot make those same objections
5  because Warner Bros. is the counterparty to the derivative
6  rights agreements.  So, the only party that can make those
7  arguments is Warner Bros.  So, that is all you would have to
8  do in phase one, Judge, is weigh that one party has
9  objections that the other party doesn't.  You wouldn't
10  actually have to determine or rule on any of those
11  objections.

12           So, I think, Judge, with that I would, again, just
13  say we have done this now because as Mr. Bernbrock and I
14  discussed a schedule for October 20th, I think we certainly
15  realized and I would like to think Mr. Bernbrock would admit,
16  we all recognized this was going to be timely and costly.
17  So, in Warner Bros. view this was an appropriate time to
18  raise this issue and recommend to the Court for efficiency
19  and preservation of asset purposes that the Court heard it in
20  a bifurcated manner.

21           So, again, I thank you for your time, Judge. I
22  will reserve some time for rebuttal.

23           THE COURT:  Certainly, Mr. Drake.

24           Mr. Bernbrock -- well, actually, let me ask: Is
25  there anybody else who supports bifurcation before I return

1   to Mr. Bernbrock?

2          (No verbal response)

3              THE COURT:  Okay, I hear no response.

4              Mr. Bernbrock.

5              MR. BERNBROCK:  Thank you, Your Honor.  Justin

6   Bernbrock of Sheppard, Mullin, Richter & Hampton, counsel to

7   the debtors.

8              I too appreciate the dispute with which the Court

9   was willing to hear this issue and can appreciate that no one

10  likes to have things dropped in their lap without much

11  notice.  So, we certainly appreciate the accommodation in

12  that regard.

13             Your Honor, what I just heard Mr. Drake argue to

14  me, at least, is sort of the classic definition of the

15  logical fallacy of question begging, which is assuming the

16  validity of the conclusion as a component of the argument.

17  See, the argument that Warner Bros. is making is that the

18  debtors errored in their business judgment by selecting Alcon

19  as the highest and best bidder because the value of Warner

20  Bros. objection rights exceeds $1 million.  But for that to

21  be truly tested there has to be a full and fair briefing and

22  analysis of the Warner Bros. objection rights.

23             So, we can't -- it would not be appropriate for

24  the debtors and, candidly, even the Court at a preliminary

25  stage to ascribe a credit or value to these objection rights

1 without a full and fair opportunity to brief them and, if

2 necessary, conduct discover with respect to the objection

3 rights.  We can't just ascribe value to something without the

4 opportunity to test the validity of that value.  So, that is

5 principally why we think that bifurcation is not appropriate

6 under the circumstances.

7          I appreciate that Mr. Drake raised Rule 7042 and

8 some of the case law in that area talks about bifurcation

9 when "The issue to be tried must be so distinct and separate

10 from the others that a trial of it alone may be had without

11 injustice.  If the issue as to be separated is not so

12 distinct but involves the same factual and legal arguments,

13 then bifurcation is improper."  That is the *In Re Tomlin*

14 case, 2002 Westlaw 32136199 from The Norther District of

15 Texas Bankruptcy Court.  And that has been cited favorably by

16 the Third Circuit in *Branch v. Temple University*, that's 2023

17 Westlaw 3993016.  So, we don't think that 7042 gets there in

18 this regard.

19          The standing point is a little bit more

20 philosophical in the sense, in the jilted bidder or the

21 frustrated bidder cases that exist.  They really go to this

22 idea that a bidder ought not be permitted to use litigation

23 as a sword when it was not the highest and best bidder at an

24 auction. If Warner Bros. wanted to have the highest and best

25 bid coming out of the auction, it had the opportunity to bid

WB_0002906

1  in an amount greater then $18.5 million.

2          I would say that that possibility or certainly

3  that exists today.  We would be more then happy to welcome a

4  bid in an amount greater then $18.5 million.  I think that we

5  would have an obligation to consider any such bid.  I think

6  that, candidly, that goes a little bit to why the derivative

7  rights sale hearing has been adjourned and pushed out.

8          As the Court is aware, we collectively attended a

9  mediation and this component of the parties relationship was

10 an issue or was at issue in connection with that mediation.

11 So, it felt appropriate, under the debtors business judgment,

12 to leave open the possibility that there would be a

13 consensual resolution with respect to this bundle of assets.

14         So that, hopefully, gives a little bit of an

15 explanation to parties in interest who were not directly

16 involved in the mediation as to why we had not gone forward

17 on the derivative rights sale.  In the wake of the mediation,

18 it became apparent to the debtors that we needed to move this

19 process forward because there was not going to be meaningful

20 resolution at this time.

21         The last point I want to make here, and I think

22 it's a critical one, and I really do appreciate the concern

23 that Warner Bros. has expressed about the estate and about

24 resources for the estate.  Warner Bros. is tantamount to an

25 oversecured perfected secured creditor because there is a

1  bank account that contains $110 million reserved for the

2  benefit of Warner Bros. in the event that there is a claim

3  that is upheld by the arbitration panel because right now

4  Warner Bros. has a contingent unliquidated claim.  But if

5  there is a claim and its in an amount at or less than $110

6  million, we have the funds set aside to pay that claim in

7  full.

8       So, the harm to the estate really is borne by the

9  senior secured noteholders who I think want to press forward

10  with the highest bid that was received at the auction in the

11  amount of $18.5 million to Alcon.

12       With that, Your Honor, I don't have anything

13  further.  I am certainly happy to answer any questions the

14  Court has or address any other points.

15       THE COURT:  Thank you, Mr. Bernbrock. I certainly

16  understand the debtors position.

17       Mr. Drake.

18       MR. DRAKE:  Thank you, Judge.

19       Just two quick points.  One, Judge, to the last

20  point Mr. Bernbrock made that Warner Bros. was tantamount to

21  an oversecured creditor.  We mentioned it in our letter. I

22  didn't cover it in my remarks just because I was trying to be

23  brief.  It's not just the matrix claim and the matrix reserve

24  Warner Bros. is concerned about.  As we outlined in our

25  letter, in the debtors reply to their sale motion and in the

1  Rosenberg declaration, Ms. Rosenberg is a partner at Sheppard
2  Mullin, the debtors took the position that Village could
3  reject the derivative right agreements and sell merely an
4  unrestricted copyright interest to Alcon.  We, of course, do
5  not accept that position that they have any ability to do
6  that but the debtors have raised that as a possibility in
7  their filings.

8           In the event Village rejected the derivative
9  rights agreements, Warner Bros. believes it would have
10 significant rejection damages because of the fact, under this
11 theory, Alcon would presumably take the position they --
12 Alcon had an interest in the copyrights and could do whatever
13 they wanted with them.  Alcon could develop their own films,
14 Alcon could use the copyright interests without the
15 restrictions of the derivative right agreement and if that
16 happened, which is a scenario Village has raised as a
17 possibility, Warner Bros. would have significant rejection
18 damages that would far exceed what would be left in the
19 reserve which was designed, as you know, Judge, in the DIP
20 order to really address just the matrix claim.  So, I
21 wouldn't accept that position and because of the threat of
22 these rejection damages, its why Warner Bros. is focused on
23 preserving what is left in the estate outside of the reserve.
24          The last point, Judge, I would say most of Mr.
25 Bernbrock's arguments didn't actually apply to bifurcation.

1  It applied more to the merits.  The only argument I heard on

2  bifurcation was that the Court would have to rule on the

3  substantive objections and Mr. Bernbrock also raised some

4  case law. I am not going to cite cases on bifurcation, Judge.

5  I think it's well within your discretion to do this or not,

6  whatever you think is appropriate.

7          Again, the Court is not going to have to rule on

8  the objections. It merely needs to consider that Warner Bros.

9  is the only party that can assert these objections. Alcon

10 could not.  The math is simple. It's not just the closing

11 risk, whether it eats into the $1 million delta, the fees

12 alone are going to do that.

13          And, again, Judge, I think you wouldn't have to

14 rule on the substantive objection, you have to say is the

15 debtors decision reasonable, the economics don't support it.

16 Instead of are they acting on some other basis.  Ad we have a

17 record that we don't need to get into today but at the

18 hearing its very clear, from the first day of this hearing,

19 Mr. Maib said "The relationship between Village and Warner is

20 irreparably decimated."  Judge, we believe their acting not

21 out of reasonableness or smart economics.  They're acting out

22 of emotion because of the damaged relationship.

23          So, again, we think bifurcation makes sense.  Its

24 efficient.  Its less costly and if Mr. Bernbrock prevails on

25 all of his merits arguments, then we can move to phase two

1  and deal with the substantive objections but we would like to

2  try to knock this out in a less costly and more efficient

3  manner.

4          So, unless you have any questions, Judge, again,

5  thank you for your time and consideration.

6          THE COURT:  Thank you, Mr. Drake.

7          Is there anybody else who would like to be heard

8  before I move ahead?

9          MR. RUBINSTEIN:  Yes, Your Honor. Vadim Rubinstein

10 of Loeb & Loeb, counsel for --

11         THE COURT:  Good morning, Mr. Rubinstein.

12         MR. RUBINSTEIN:  Good morning, Your Honor.

13         So, Your Honor, we were not offered the

14 opportunity to submit a letter brief.  So, we are responding

15 to what we saw on the docket.  First, what I would like to --

16 I think its quite interesting that Mr. Drake here is focused

17 on procedure on August 22nd, 2025 when we have a bid

18 procedures order that was entered on April 24th, 2025 to

19 which Warner Bros. objected.  And with respect to which it

20 got $110 million reserve.  And under which it did not seek an

21 order establishing a value for its objection claims or

22 litigation claims in connection with its derivative rights

23 bid.

24         Your Honor allowed an expense reimbursement to

25 Alcon, in connection with the sale of $2.5 million.  All

1  creditors knew exactly what it would take, should they want

2  to overbid Alcon.  When the case was filed there was a $12.5

3  million overbid requirement which Alcon met to become the

4  stalking horse bidder.  It was provided notice of the

5  economics of the transaction that it had to defeat and it did

6  that.

7  Warner Bros. not once before it lost at the

8  auction raised this issue with this Court. In fact, Your

9  Honor, not until four other bidders were eliminated at the

10 auction and the price was driven up to $17.5 million -- I'm

11 sorry, $18.5 million did Warner Bros. raise this issue for

12 the first time after all the due diligence was done, after

13 the five bidders came into the auction, after looking at

14 Warner Bros. lead bid that ascribed zero value to its

15 objection rights.

16 THE COURT:  Let me interrupt you on one thing, Mr.

17 Rubinstein, does any of this go to the bifurcation issue?  I

18 appreciate that Alcon would want to stake out its grounds but

19 I'm focused on the bifurcation issue which is the matter

20 before me today.

21 MR. RUBINSTEIN:  Well, in terms of the bifurcation

22 issue, Your Honor, I would say this issue should have been

23 litigated previously and I will tell you why.  How can you --

24 how do we litigate the bifurcation issue until we know the

25 extent of the discovery that is appropriate under the

1  circumstances.  We know that Warner Bros. is going to want
2  discovery far afield.  We believe that discovery here should
3  be very minimal.  These are legal issues.

4          The issue is that we have -- can we provide
5  adequate assurance of future performance. I see that, Your
6  Honor, as a potential issue subject to discovery.  We never -
7  - we don't know what the discovery is going to entail and you
8  can be sure, Your Honor, I imagine, if you rule, that it
9  shouldn't be bifurcated.  That is exactly what Warner Bros.
10 is going to do.  They're going to try to bury the estates in
11 discovery to prove the point after the fact.  This should
12 have been done before the fact.  At this point we're shooting
13 in the dark.

14          I mean, what should we have done at the auction at
15 this point.  Should we have bid $19.5 million or should
16 Warner Bros. have bid $19.5 million.  We had no guidance as
17 to how to proceed at that point.  The rules were set and now
18 after Warner Bros. ran out of money and decided no longer --
19 that it no longer wanted to bid, it wields yet a new piece of
20 consideration that was nowhere in their bid.

21          To tell this Court that now their bid is higher
22 and better because its worth, at least $1 million, Your
23 Honor, and it will rid you of the headache of having to deal
24 with these legal issues.  So, what you are being told is
25 Warner Bros. does not want to address these rights

1   substantively.  Its willing to pay $17.5 million so that it

2   doesn't have to address them substantively but it wasn't

3   willing to pay $19.5 million.  And now they have made the

4   decision, at the auction -- Your Honor, after Alcon bid $18.5

5   million there was about a four-hour break until we heard this

6   news, okay.

7            We were sandbagged at the auction. This should

8   have happened beforehand.  And now we are told that they are

9   making this procedure so much more expensive that you

10  shouldn't allow it to proceed.  They have requested this

11  status conference, Your Honor.  Its making this process even

12  more expensive.  They want to bifurcate it and its going to

13  make it even more expensive.  They are going to want to

14  expand the --

15           THE COURT:  Okay.  I think I understand the point.

16  Alcon wants to have a single hearing and doesn't want to

17  bifurcate.

18           Does anyone wish to be heard or shall I move on?

19       (No verbal response)

20           THE COURT:  Okay. I hear no response.

21           MR. BERNBROCK:  Your Honor.

22           THE COURT:  Yes.

23           MR. BERNBROCK:  I'm sorry, its Justin Bernbrock

24  from Sheppard Mullin.  May I be heard very, very briefly.

25           THE COURT:  Briefly.

WB_0002914

1        MR. BERNBROCK:  Warner Bros. did flag and raise

2   all -- well not all but the meat and potatoes, as it were, of

3   their objections in their bid submission that was reviewed

4   and analyzed by the debtors.  So, they were on record on

5   these points and that was acknowledged on the record at the

6   auction.  So, I don't want that to be lost in the mix here

7   that they absolutely flagged these issues.

8        THE COURT:  Okay.  I am not going to bifurcate.  I

9   view these as fairly -- these are issues that I deal with all

10  the time.  I don't think that threat of litigation from a

11  bidder who was not named the successful bidder is an

12  appropriate reason to break up the proceedings.  I don't

13  accept the notion that the debtor is acting out of emotion

14  and implicitly is not observing its fiduciary duties in

15  connection with this transaction. I don't accept that at all.

16        So, we are going to go ahead and do this when

17  scheduled, I think you said the date is October 22nd.  I

18  haven't heard anything that suggests there would be an

19  appropriate basis even though I have the authority to do so,

20  to bifurcate these proceedings.  If discovery becomes an

21  issue in the meantime, everybody knows where to find me and I

22  can deal with any of those issues but that is what we're

23  going to do.

24        Anything else for today?

25        MR. BERNBROCK:  Your Honor, I was going to raise

1  this on -- we have a hearing on Tuesday but just from a

2  housekeeping perspective -- sorry, again, Justin Bernbrock,

3  Sheppard Mullin, counsel for the debtors.  The September

4  omnibus hearing that we were given is, I believe, the 23rd of

5  September which falls right in the middle of Rosh Hashanah.

6  I don't know that we have anything pending for that hearing

7  as of now but I just wanted to ask in advance if folks could

8  participate virtually.

9          THE COURT:  Certainly.  I would be happy to make

10  every accommodation, of course.

11          MR. BERNBROCK:  Thank you, Your Honor.

12          THE COURT:  Thank you for raising that point, Mr.

13  Bernbrock.

14          Well then, I will see you on Tuesday morning.

15  Until then, have a good weekend.  We are adjourned.

16      (Proceedings concluded at 11:41 a.m.)

17

18

19

20

21

22

23

24

25

## CERTIFICATION

1                  I certify that the foregoing is a correct

3 transcript from the electronic sound recording of the

4 proceedings in the above-entitled matter to the best of my

5 knowledge and ability.

6

7 /s/ William J. Garling                  August 29, 2025

8 William J. Garling, CET-543

9 Certified Court Transcriptionist

10 For Reliable