**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.,* [1] | ) ) ) | Case No. 25-10475 (TMH) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Re: Dkt Nos. 11, 197, 276 |
| | ) | |
| | ) ) | Hearing Date: October 20, 2025 at 10:00 a.m. |
| | ) | |

**SUPPLEMENTAL OBJECTION BY REGENCY ENTERTAINMENT (USA), INC. TO SALE OF DEBTORS' DERIVATIVE RIGHTS ASSETS AND ASSUMPTION AND ASSIGNMENT OF CO-OWNERSHIP AGREEMENT**

Regency Entertainment (USA), Inc. ("**Regency**"), by and through its undersigned attorneys, submits this supplemental objection ("**Supplemental Objection**") to the following:

(i)      the proposed sale of the Debtors' Derivative Assets that remains the subject of *Debtors' Motion for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Authorizing the Debtors' Entry into the Stalking Horse APA and Approving Bid Protections Thereunder, (C) Scheduling an Auction for, and Hearing to Approve, Sale of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and*

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information is available on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

*Encumbrances, and (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Dkt. No. 11] ("**Sale Motion**") and *Debtors' Supplemental Motion for Entry of an Order (A) Approving (I) the Debtors' Designation of the New Stalking Horse Bidder for the Library Assets as set forth in the Stalking Horse Agreement, (II) the Debtors' Entry into the Stalking Horse Agreement, and (III) the Bid Protections and (B) Granting Related Relief* [Dkt. No. 197] ("**Stalking Horse Supplement**") filed by Village Roadshow Entertainment Group USA Inc. and its related debtor affiliates (collectively, "**Debtors**"), as well as this Court's *Amended Order (I) Approving Bid Procedures for the Sale of the Debtors' Assets, (II) Authorizing the Debtors' Entry into the Stalking Horse APA and Approving Bid Protections Thereunder, (III) Scheduling an Auction for, and Hearing to Approve, Sale of the Debtors' Assets, (IV) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (V) Approving Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Dkt. No. 276] ("**Bid Procedures Order**");[2] and

(ii) the *Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts* ("**Supplemental Assumption Notice**") [Dkt. No. 297] filed by the Debtors.

In support of this Supplemental Objection, Regency respectfully represents as follows:

1. On March 17, 2025, the Debtors filed the Sale Motion seeking, among other things, entry of a Bid Procedures Order authorizing and approving bid procedures in connection with one or more sales or dispositions (collectively, the "**Sale**") of the Debtor's Assets,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion, Stalking Horse Supplement, and/or Bid Procedures Order.

comprised of Library Assets, Studio Business, and Derivative Rights, as well as approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale. *See* Sale Motion, ¶ 1(a). Initially, the Debtors sought to sell only the Library Assets, the Debtors' most valuable assets, to CP Ventura LLC, indicating that the Derivative Rights were "Excluded Assets" under the proposed Stalking Horse APA. The Debtors' proposed auction procedures, however, allowed for the receipt and consideration of Qualified Bids with respect to any Business Segment or substantially all of the Debtor's Assets, and reserved the Debtors' right to sell the Studio Business and Derivative Rights through new procedures, including expedited *de minimis* procedures, if no Successful Bidders were identified for such assets. *Id.*, p. 26.

2. On April 16, 2025, the Debtors filed the Stalking Horse Supplement, pursuant to which the Debtors sought, among other things, to modify the Sale Motion to designate Alcon Media Group, LLC ("**Alcon**") as the Stalking Horse Bidder for the Library Assets. *See* Stalking Horse Supplement, ¶ 4.

3. On April 24, 2025, this Court entered the Bid Procedures Order approving the Bid Procedures. Pursuant to the Bid Procedures Order, the Debtor reserved the right, among other things, to appoint an additional stalking horse bidder for the Derivative Rights upon notice to parties in interest or to seek to sell the Derivative Rights through new sale procedures, including expedited *de minimis* procedures, if no Successful Bidder was identified for those Assets. *See* Bid Procedures Order, ¶ 6.

4. On April 30, 2025, pursuant to the Bid Procedures Order, the Debtors filed the Supplemental Assumption Notice. Included as Number 60 on the Supplemental Contracts Schedule attached as Exhibit 1 as a contract "that may potentially be assumed and assigned as

part of the Sale," is that certain *"Don't Say a Word" Co-Ownership Agreement,* dated as of December 14, 2001 ("**Co-Ownership Agreement**"), between Regency and Debtor Village Roadshow Films (BVI) Limited ("**VRF**") with a listed cure amount of $0.00. The Co-Ownership Agreement provides detailed procedures for any development of the Derivative Rights in the theatrical motion picture "Don't Say a Word" ("**Picture**") between REUSA and Debtor VREG IP Global LLP ("**VREG**"), the successor to VRF, each of which owns a one-half undivided interest in the Derivative Rights to the Picture.

5. On May 22, 2025, the Debtors filed a *Notice of Successful Bidder for the Library Assets* [Dkt. No. 396], indicating that Alcon was the successful bidder for the Library Assets. Subsequently, on May 29, 2025, the Debtors filed a *Notice of (I) Successful Bidder for Derivative Rights and Studio Business and (II) Back-up Bidder for Derivative Rights* [Dkt. No. 446], representing that the Debtors had conducted an Auction of the Derivative Rights on May 28, 2025, providing notice that the Debtors had selected Alcon as the Successful Bidder for the Derivative Rights and Warmer Bros. Entertainment, Inc. ("**Warner Bros**.") as the Back-Up Bidder for the Derivative Rights, and further providing notice that a hearing to approve the Sale of the Derivative Rights would be held on June 18, 2025.

6. On June 5, 2025, Regency filed the *Objection by Regency Entertainment (USA), Inc. to Sale of Debtors' Assets* [Dkt. No. 481] ("**Sale Objection**"), the *Objection by Regency Entertainment (USA), Inc. to Assumption and Assignment of Co-Ownership Agreement* [Dkt. No. 482] "**Contract Objection**"), and the *Declaration of David C. Friedman in Support of Objections by Regency Entertainment (USA), Inc. to Sale of Debtors' Assets and Assumption and Assignment of Co-Ownership Agreement* [Dkt. No. 483]. Pursuant to the Sale Objection and the

Contract Objection, Regency objected to both the sale of the Debtors' share of the Derivative Rights in the Picture as well as the assumption and assignment of the Co-Ownership Agreement.

7. In addition, on June 5, 2025, Regency filed the *Motion of Regency Entertainment (USA), Inc. for Authority to File Under Seal Its Objection to Sale of Debtors' Assets, Objection to Assumption and Assignment of Co-Ownership Agreement, and Declaration of David C. Friedman in Support* [Dkt. No. 480] ("**Motion to Seal**"), together with a proposed order and a *Motion to Shorten Notice Period with respect to the Motion of Regency Entertainment (USA), Inc. for Authority to File under Seal Its Objection to Sale of Debtor's Assets, Objection to Assumption and Assignment of Co-Ownership Agreement, and Declaration of David C. Friedman in Support* [Dkt. No. 488], seeking to have the Motion to Seal heard at the same time as the scheduled sale hearing on June 18, 2025.

8. On June 13, 2025, Warner Bros. filed *Warner Bros. Entertainment Inc.'s Omnibus Objection to (I) the Debtors' Motion for an Order Approving the Sale of the Debtors' Assets, (II) the Debtors' Sale Supplement with respect thereto and (III) the Debtors' Assumption and Assignment of Certain Warner Bros. Agreements* [Dkt. No. 521] ("**Warner Bros. Objection**"). As part of the Warner Bros. Objection, Warner Bros asserted that the Court should reject the proposed sale of the Derivative Rights to Alcon and instead approve Warner Bros.' backup bid. *See* Warner Bros. Objection, ¶ 2.

9. Following several continuances, the Sale Hearing with respect to the Derivative Rights and the hearing on the Motion to Seal are currently scheduled for October 20, 2025.

10. Since filing the Sale Objection and the Contract Objection, Regency has engaged in several discussions, in some cases directly and in other cases through bankruptcy counsel, with the Debtors, Alcon, and Warner Bros. in an attempt to determine whether the Sale

Objection and Contract Objection could somehow be resolved. Although Regency has maintained, and continues to maintain, that the assignment or transfer of the Derivative Rights in the Picture and assignment of the Co-Ownership Agreement requires Regency's consent pursuant to the contractual provision and applicable law, Regency was and is interested in exploring terms that would permit Regency to provide such consent.

11. Among other things, Regency explored with both Alcon and Warner Bros whether either of these entities, if ultimately approved as the Successful Bidder at the Sale Hearing, would be willing to agree to terms that would alleviate Regency's concerns about transferring the Derivative Rights in the Picture, assigning the Co-Ownership Agreement, and accepting performance from a third party not affiliated with the Debtors.

12. Specifically, in or about mid-June, Regency reached out to Alcon's counsel and proposed a resolution whereby Regency would have the exclusive right to propose a Derivative Rights project with respect to the Picture, with Alcon being entitled to economic benefits in connection with any such project in recognition of its acquisition of an ownership interest in the Derivative Rights. Alcon summarily rejected that offer, declined to negotiate, and did not propose any counter-offer.

13. Subsequently, Regency reached out to Warner Bros. in mid-August and made the same offer in the event that Warner Bros. was ultimately approved as the Successful Bidder. Over the course of several weeks, Regency and Warner Bros. were able to arrive at the terms of an agreement that was conditioned upon Warner Bros' acquisition of the Derivative Rights to the Picture.

14. Based on the agreement that Regency was able to reach with Warner Bros., Regency is agreeable to Warner Bros. being approved as the Successful Bidder for the

Derivative Rights to the Picture, and, despite its belief that the Co-Ownership Agreement is a personal service contract, will consent to the assignment of that agreement to Warner Bros. on the conditions set forth in their agreement and subject to final documentation.

15. Having not been able to reach any kind of agreement with Alcon, Regency continues to object to the sale to Alcon of the Derivative Rights in the Picture and the assignment to Alcon of the Co-Ownership Agreement for the reasons previously set forth in the Sale Objection and the Contract Objection.

16. In addition to the facts and legal arguments already set forth in the Sale Objection and the Contract Objection, Regency notes that the Co-Ownership Agreement contains unique provisions that identify specific individuals at each of Regency and VRF that are required to negotiate with each other in the event of certain disputes. These provisions are not customary, and their inclusion highlights the personal nature of the Co-Ownership Agreement, the intention of specific individuals at each company to work together with respect to the Picture, and the confidence of the contracting parties that they, through their principals, would be able to work cooperatively through any disputes that may arise. *See Amended Declaration of David C. Friedman in Support of Objections by Regency Entertainment (USA), Inc. to Sale of Debtors' Assets and Assumption and Assignment of Co-Ownership Agreement* ("**Amended Friedman Decl.**"),[3] ¶ 10. The development of a Derivative Rights project is an inherently artistic, creative endeavor, requiring a degree of trust and confidence in a co-production or co-financing partner that extends beyond the obvious financial risk and provides each party with necessary assurances

---

[3] The Amended Friedman Decl. is being filed separately pursuant to the *Motion of Regency Entertainment (USA), Inc. for Authority to File Under Seal its Objection to Sale of Debtors' Assets, Objection to Assumption and Assignment of Co-Ownership Agreement, and Declaration of David C. Friedman in Support* [Dkt. No. 480].

that the other party has the necessary character, reputation, and skill and will not attempt to develop projects that are inconsistent with or in competition with their partner.

17. Moreover, when Regency entered into the Co-Ownership Agreement, VRF was an active co-financier, producer, and distributor of feature films, having both the personnel and the experience to deal with such matters. In addition to its producing and financing skills, VRF was a significant film distributor in particular international territories, and as a result of such skills and experience, VRF was granted various foreign distribution rights in connection with the Picture. The Co-Ownership Agreement further contemplated that VRF would handle such international distribution rights for any theatrical Derivative Rights projects. *Id.*, 8. To the best of Regency's knowledge, Warner Bros. possesses similar distribution capabilities, but Alcon does not.

WHEREFORE, for the foregoing reasons, as well as the facts and legal arguments previously set forth in the Sale Objection and the Contract Objection, Regency objects to the sale of the Derivative Rights in the Picture to Alcon as well as the assumption and assignment of the Co-Ownership Agreement to Alcon.

October 6, 2025                                  Respectfully submitted,

**CAROTHERS & HAUSWIRTH, LLP**

By: /s/ Gregory W. Hauswirth
Gregory W. Hauswirth (Bar No. 5679)
1007 N. Orange Street, 4th Floor
Wilmington, DE 19801
Telephone: 302.332.7181
Facsimile: 412.910.7510
ghauswirth@ch-legal.com

and

**LEECH TISHMAN NELSON HARDIMAN, INC.**

By: /s/ Sandford L. Frey
Sandford L. Frey (CA I.D. # 117058)
*Admitted Pro Hac Vice*
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Telephone: 424.738.4400
Facsimile: 424.738.5080
sfrey@leechtishman.com

**LEECH TISHMAN FUSCALDO & LAMPL, LLC**
John M. Steiner (PA I.D. #79390)
Michael Kruszewski (PA I.D. # 91239)
Kristin Anders Lawson (PA I.D. #74497)
*Admitted Pro Hac Vice*
525 William Penn Place, 28th Floor
Pittsburgh, PA  15219
Telephone:  412.261.1600
Facsimile:   412.227.5551
jsteiner@leechtishman.com
mkruszewski@leechtishman.com
klawson@leechtishman.com

*Counsel for Regency Entertainment (USA), Inc.*