# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 276, 446, 518, 908, 915** |

## DECLARATION OF REID SNELLENBARGER
## IN SUPPORT OF THE DEBTORS' DERIVATIVE RIGHTS SALE

I, Reid Snellenbarger, hereby state and declare the following under penalty of perjury:

1. I am the Co-Head and Senior Managing Director of SOLIC Capital Advisors, LLC, a wholly owned subsidiary of GBH SOLIC Holdco, LLC and SOLIC Capital, LLC (collectively, "SOLIC"), which is a financial advisory and investment banking with an office at 425 West New England Avenue, Suite 300, Winter Park, Florida 32789. SOLIC has been retained as the investment banker for Village Roadshow Entertainment Group USA Inc. and each of its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Village") in these chapter 11 cases [Docket No. 294].

2. I submit this Declaration (the "Declaration") in support of the *Debtors' Reply in Support of the Derivative Rights Sale* filed contemporaneously herewith (the "Reply").[2]

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Reply.

3. I am authorized by the Debtors to submit this Declaration and, unless otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the SOLIC team, the Debtors' management team, and the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations and financial affairs, or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

4. I have previously provided a detailed description of my educational and professional background and qualifications in my declaration filed in support of the Bid Procedures Motion [Docket No. 198] (the "Original Declaration").

**Background**

5. The Debtors formally engaged SOLIC as their investment banker on February 3, 2025. Prior to SOLIC's engagement, the Debtors had engaged Goldman Sachs ("Goldman") to market their assets to prospective purchasers over the course of 2024. SOLIC replaced Goldman in order to continue the pre-petition marketing process for substantially of all of the Debtors' assets leading up to and through the course of these chapter 11 cases. As part of the transition from Goldman to SOLIC as investment banker, I met with Goldman's team and reviewed their marketing efforts to date. Since being engaged, SOLIC has worked closely with the Debtors and their advisors to: (a) review and analyze the Debtors' businesses and financial projections, and (b) continue the marketing of the Debtors' assets that Goldman previously commenced, including developing marketing materials and identifying potential purchasers. It is my understanding that when Goldman was engaged, they were in communication with 30 parties who executed confidentiality agreements.

**The Post-Petition Marketing and Sale Process**

6. Following the Petition Date, the Debtors, with the assistance of SOLIC, continued their marketing process pursuant to the Court-approved Bid Procedures. As set forth in the Bid Procedures, through their post-petition marketing process, the Debtors sought to sell all or substantially all of the Debtors' assets (the "Assets"), which were generally segregated into three business segments: (i) the Library Assets, (ii) the Derivative Rights Assets, and (iii) the Studio Business. Ultimately, the Debtors, whether directly or through their advisors, contacted approximately 144 parties regarding the opportunity to purchase the Assets. Approximately 56 of those potential purchasers entered into confidentiality agreements and subsequently received access to a virtual data room with due diligence information regarding the Assets.

7. Prior to the Auction, the Debtors received six total bids for the Derivative Rights Assets, either as a standalone business segment or as part of a bid for all or substantially all of the Assets. Of the six bids received, the Debtors, with the assistance of their advisors and in consultation with the Consultation Parties, determined four to be Qualified Bids for the Derivative Rights Assets. The Debtors, with the assistance of their advisors and in consultation with the Consultation Parties, evaluated the Qualified Bids received for the Derivative Rights Assets, including on the basis of their economic terms, timing until close, financial wherewithal of the Qualified Bidders, and other non-economic terms.

**The Auction and Selection of the Successful Bid and Back-Up Bid**

8. Pursuant to the Bid Procedures, the Debtors conducted an auction for the Derivative Rights Assets on May 28, 2025 (the "Auction"). Upon commencing the Auction, the Debtors, with the assistance of their advisors and in consultation with the Consultation Parties, identified the Qualified Bid submitted by Warner—with an aggregate cash purchase price of $6 million—as the Baseline Bid. The Auction proceeded in multiple rounds of bidding. I understand that a

transcript of the Auction proceedings has been filed or will be filed on the docket of these chapter 11 cases.

9. At the conclusion of the Auction, the Debtors, with the assistance of their advisors and in consultation with Consultation Parties, identified (i) the final bid submitted by Alcon—with an aggregate cash purchase price of $18.5 million—as the Successful Bid with respect to the Derivative Rights Assets (the "Alcon Bid"), and (ii) the final bid submitted by Warner—with an aggregate cash purchase price of $17.5 million—as the Back-Up Bid with respect to the Derivative Rights Assets, in each case subject to execution of definitive documentation.

10. Given my involvement in and understanding of the pre- and post-petition marketing processes and the efforts described above, in my Original Declaration, and in the Bid Procedures Motion, and based on my experience as an investment banker, I believe that (a) interested potential bidders were afforded a reasonable opportunity to conduct due diligence, submit higher or otherwise better offers to acquire the Derivative Rights Assets, and, to the extent identified as Qualified Bidders, participate in the Auction, and (b) the Alcon Bid is the highest or otherwise best sale transaction currently available to the Debtors under the circumstances with respect to the Derivative Rights Assets. The foregoing view is informed by the duration and scope of the pre- and post-petition marketing processes described above, the due diligence conducted by potential interested parties, feedback obtained from the parties solicited, including the Qualified Bidders, and the results of the Auction.

11. Additionally, I assisted the Debtors, along with their other advisors, with the negotiation of the key economic terms of the Alcon Bid. Based solely on my observation of and participation in those discussions, the negotiations, in my view, were conducted in good faith and on an arm's-length basis. Furthermore, throughout the sale process for the Derivative Rights

Assets, the Debtors, with the assistance of their advisors, including SOLIC, consulted and worked with the Consultation Parties regarding the sale process for the Derivative Rights Assets.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 15, 2025

By: */s/ Reid Snellenbarger*
Reid Snellenbarger