## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT | ) Case No. 25-10475 (TMH) |
| GROUP USA INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Ref. Docket Nos. 276, 446, 518, 908, 915** |
| | ) |

## DECLARATION OF KEITH MAIB
## IN SUPPORT OF THE DEBTORS' DERIVATIVE RIGHTS SALE

I, Keith Maib, hereby state and declare the following under penalty of perjury:

1.      I am a Senior Managing Director in the Turnaround & Restructuring practice at Accordion Partners, LLC ("Accordion"), which has served as a restructuring advisor for Village Roadshow Entertainment Group USA Inc. and each of its affiliated debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors" or "Village") since February 20, 2024.  Effective January 3, 2025, the Company appointed me as the Chief Restructuring Officer ("CRO").  I have led Accordion's engagement for the Debtors.  In connection with my duties for the Debtors, I am familiar with the Debtors' day-to-day operations, business affairs, and books and records.

2.      I submit this Declaration (the "Declaration") in support of the *Debtors' Reply in Support of the Derivative Rights Sale* filed contemporaneously herewith (the "Reply").[2]

---

[1]     The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343.  The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Reply.

3.      As CRO, one of my duties is to oversee the administration of the Debtors' assets to maximize value for the benefit of their estates, including, but not limited to, overseeing the Debtors' sale process in connection with these chapter 11 cases.  In this role, I have worked closely with the Debtors' bankruptcy counsel, as well as the Debtors' investment banker, SOLIC Capital Advisors, LLC ("SOLIC").

4.      I am authorized by the Debtors to submit this Declaration and, unless otherwise indicated, all statements in this Declaration are based upon my experience and personal knowledge, my review of relevant documents and information concerning the Debtors' operations and financial affairs, or my discussions with other members of the Debtors' management team and the Debtors' advisors.  If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

**The Auction and Selection of the Successful Bid and Back-Up Bid**

5.      The Debtors conducted an auction for the Derivative Rights Assets on May 28, 2025 (the "Auction").  Upon commencing the Auction, the Debtors, with the assistance of their advisors and in consultation with the Consultation Parties, identified the Qualified Bid submitted by Warner—with an aggregate cash purchase price of $6 million—as the Baseline Bid.  The Auction proceeded in multiple rounds of bidding.  I understand that a transcript of the Auction proceedings has been filed or will be filed on the docket of these chapter 11 cases.

6.      Throughout the Auction, the Debtors and their advisors consulted with the Consultation Parties, including counsel to the Committee and the DIP Lenders, in analyzing the competing bids for the Derivative Rights Assets.  In addition, the Debtors' management team and advisors consulted with members of the Debtors' board of directors throughout the day of the Auction.  At the end of the tenth round of bidding for the Derivative Rights Assets, only two bidders remained: Alcon, with a bid of $18.5 million, and Warner, with a bid of $17.5 million,

each with otherwise identical terms.  At the beginning of the eleventh round of bidding for the Derivative Rights Assets, Warner declined to submit a further overbid, and stated instead that Warner believed its $17.5 million bid to be higher and better than Alcon's $18.5 million bid. Warner did not raise objections to the leading bidder named at the end of any of the prior rounds of bidding for the Derivative Rights Assets.  After carefully considering all relevant factors and conferring with their advisors and the Consultation Parties, the Debtors determined, in their business judgment, that Alcon's $18.5 million bid was higher and better than Warner's $17.5 million bid.

7.     Accordingly, at the conclusion of the Auction, the Debtors, with the assistance of their advisors and in consultation with Consultation Parties, identified (i) the final bid submitted by Alcon—with an aggregate cash purchase price of $18.5 million—as the Successful Bid with respect to the Derivative Rights Assets (the "Alcon Bid"), and (ii) the final bid submitted by Warner—with an aggregate cash purchase price of $17.5 million—as the Back-Up Bid with respect to the Derivative Rights Assets, in each case subject to execution of definitive documentation.

**The Warner Settlement Offer**

8.     On September 8, 2025, Warner, through its counsel, sent a settlement offer to the Debtors' bankruptcy counsel (the "Warner Settlement Offer"), which included, among other terms, an offer to purchase the Derivative Rights Assets for a cash purchase price of $18.5 million.  I understand that a copy of the Warner Settlement Offer has been filed or will be filed on the docket of these chapter 11 cases.

9.     The Debtors carefully considered the terms of the Warner Settlement Offer and conferred with their advisors, as well as counsel to the Committee and the DIP Lenders, regarding valuation of the Warner Settlement Offer.  The Debtors' management team and advisors also

consulted and held multiple formal meetings with the Debtors' board of directors regarding the Warner Settlement Offer.  After careful consideration, the Debtors determined that Warner's offer to release $10 million from the Warner Bros. Reserve, without any corresponding cap on Warner's Matrix Claim, would not infuse any additional cash into the estates or reduce any of the estates' liabilities.  In addition, the Debtors determined that Warner's offer to settle or release certain specified claims would not provide additional value to their estates.  Further, the Debtors viewed certain contingencies set forth in the Warner Settlement Offer—including the requirement that the Warner Settlement Offer not be subject to any further overbidding for the Derivative Rights Assets—as contrary to the goal of maximizing value of the Debtors' assets for the benefit of their estates.  Accordingly, after carefully considering the terms of the Warner Settlement Offer and conferring with the Debtors advisors, as well as counsel to the Committee and the DIP Lenders, the Debtors, in their business judgment, do not attribute any additional value to the Warner Settlement Offer beyond the $18.5 million cash purchase price offered for the Derivative Rights Assets.

10.     In furtherance of the Debtors' goal of maximizing the value of their assets for the benefit of their estates, the Debtors and their advisors proposed a counteroffer to the Warner Settlement Offer (the "Debtors' Counteroffer"), which included terms that the Debtors considered to be higher and better than the Alcon Bid.  The Debtors, through their counsel, sent the Debtors' Counteroffer to Warner's counsel on September 16, 2025.  On September 26, 2025, Warner, through its counsel, sent a letter to the Debtors' counsel (the "September 26 Letter"), which restated the terms of the Warner Settlement Offer.  The September 26 Letter also stated that the Warner Settlement Offer would remain open through October 20, 2025 and was no longer

confidential.   The September 26 Letter also stated that Warner intended to raise the Warner Settlement Offer with the Court.

11.     Based on my experience and involvement in the Debtors' sale process, the administration of these chapter 11 cases, and the efforts described above, I believe that the Alcon Bid is the highest or otherwise best sale transaction currently available to the Debtors under the circumstances with respect to the Derivative Rights Assets.


[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 15, 2025

By:    */s/ Keith Maib*
      Keith Maib