**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 25-10475 (TMH)<br>)<br>) (Jointly Administered)<br>)<br>) **Ref. Docket Nos. 276, 446, 518, 908, 915**<br>) |

**DECLARATION OF KEVIN BERG
IN SUPPORT OF THE DEBTORS' DERIVATIVE RIGHTS SALE**

I, Kevin Berg, hereby state and declare the following under penalty of perjury:

1. I am the General Counsel for Village Roadshow Entertainment Group USA Inc. and each of its affiliated debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors" or "Village"). My employment with the Debtors began in 1998. I assumed the role of General Counsel in June 2013. In connection with my duties for the Debtors, I am familiar with the Debtors' day-to-day operations, business affairs, and books and records.

2. I submit this Declaration (the "Declaration") in support of the *Debtors' Reply in Support of the Derivative Rights Sale* filed contemporaneously herewith (the "Reply").[2]

3. I am authorized by the Debtors to submit this Declaration and, unless otherwise indicated, all statements in this Declaration are based upon my experience and personal knowledge, my review of relevant documents and information concerning the Debtors' operations

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Reply.

-1-

and financial affairs, or my discussions with other members of the Debtors' management team and the Debtors' advisors. If called as a witness, I could and would testify competently to the facts set forth in this Declaration on that basis.

### The Debtors' Contractual History with Warner

4. Broadly speaking, the Derivative Rights Assets comprise two related but distinct categories of property interests: (i) the Debtors' specific ownership share of the exclusive intellectual property right (arising under federal copyright law) to create and exploit derivative works based on the Pictures—the Derivative Rights—and (ii) the Debtors' contractual rights arising under the Derivative Rights Agreements with respect to governance and exploitation of the Derivative Rights.

5. The Debtors are co-owners of the Derivative Rights in substantially all of the 91 Pictures that they co-invested in with Warner over the course of the parties' relationship since 1998. The only Pictures for which the Debtors did not purchase an ownership interest in the applicable Derivative Rights are *The Lego Movie* and *Sex and the City 2*.

6. For each Picture, the Debtors agreed to purchase an Applicable Percentage of the copyright—including the Derivative Rights—from Warner. On the Pick-Up Date for each Picture, which was generally around the time the applicable Picture was released, the Debtors paid a purchase price to Warner and Warner contemporaneously conveyed the ownership rights to the Debtors through one or more separate Assignment Agreements. The copyright in each Picture was generally registered with the U.S. Copyright Office (in the names of the applicable Debtor and Warner entities) and the copyright notices in the end credits of each Picture listed both the Debtors and Warner as the copyright owners.

7. Historically, the process by which the Debtors purchased and were assigned their Applicable Percentage ownership in the Pictures was set forth in a series of structured film

investment arrangements. These arrangements were initially set forth in a series of QCSAs, and subsequently, a series of MPRPAs, the last of which expired on December 31, 2020. Under the QCSAs, the Debtors' purchase was documented in Picture-specific Picture Agreements. Under the MPRPAs, the Debtors' purchase was documented in a Rights Purchase Agreement for each Picture. For each Picture, the Debtors and Warner also entered into film-specific Co-Ownership Agreements governing the parties' rights and obligations with respect to the Derivative Rights in such Picture.

8.  The Debtors and Warner have since amended certain provisions of the Co-Ownership Agreements, first through that certain *Omnibus Amendment to Co-Ownership Agreements* dated as of August 29, 2017 ("Omnibus Amendment No. 1"), and next through that certain *Omnibus Amendment No. 2* dated as of November 10, 2020 ("Omnibus Amendment No. 2"). Pursuant to Omnibus Amendment No. 1, the Debtors and Warner restructured the arrangements for exploiting the Derivative Rights under the various Co-Ownership Agreements so that the treatment of the ownership and exploitation of the Derivative Rights is the same for all Pictures. Omnibus Amendment No. 1 applied retroactively and its terms were incorporated into subsequent Co-Ownership Agreements.

9.  The Derivative Rights Agreements do not obligate Warner to develop or produce Derivative Works or otherwise exploit the Derivative Rights. If Warner, in its sole discretion, does propose to exploit the Derivative Rights through production of a Derivative Work, the Derivative Rights Agreement provide that Warner must provide the Debtors with a Project Notice. A Project Notice must delineate the "Proposed Picture Elements" for the Derivative Work, including (i) the latest draft screenplay, (ii) the most recent proposed budget for the Derivative Work (the "Projected Budget"), and (iii) the proposed director and principal cast members.

-4-

      10.      The Derivative Rights Agreements provide that the Debtors must provide a Project Acceptance Notice to Warner within 15 business days after receiving a Project Notice if they wish to participate in the applicable Derivative Work.  The Derivative Rights Agreements do not provide that Warner must proceed with producing a Derivative Work after the Debtors provide a Project Notice Acceptance with respect to such Derivative Work.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 15, 2025

By:   */s/ Kevin Berg*
       Kevin Berg