## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*, [1] | ) Case No. 25-10475 (TMH) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date:** January 26, 2026 at 2:00 p.m. (ET) |
| | ) **Obj. Deadline:** December 30, 2025 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING AMENDMENT TO LIBRARY ASSETS
PURCHASE AGREEMENT, (II) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or

"Village")[2] respectfully represent as follows in support of this motion (this "Motion"):

### RELIEF REQUESTED

1.      By this Motion, the Debtors respectfully request the entry of an order, substantially

in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363,

and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")

and Rule 6004(h) and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), (a) authorizing and approving the Debtors' entry into that certain *First Amendment to

Purchase Agreement* attached to the Proposed Order as **Exhibit 1** (the "Amendment"), by and

---

[1]     The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343.  The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification number is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bid Procedures Order, the Library Sale Order, or the Amendment (each as defined herein), as applicable.

between the Debtors listed therein (together, the "Sellers") and Alcon Media Group, LLC (the "Buyer," and together with Sellers, the "Parties"), which amends that certain *Purchase Agreement*, dated as of July 1, 2025, by and among certain of the Sellers and Alcon (the "Library Assets APA"), (b) approving the assumption and assignment of certain executory contracts in connection therewith, and (c) granting related relief.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The legal bases for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004(h) and 6006.

## BACKGROUND

**I.      General Background**

5.      On March 17, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties and operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 27, 2025, the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") [Docket No. 103]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      Additional information regarding the Debtors, their business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases are set forth in the *Declaration of Keith Maib in Support of First Day Relief* [Docket No. 2] (the "First Day Declaration"), which is fully incorporated herein by reference.

## II.     The Library Assets Sale

7.      On the Petition Date, the Debtors filed a motion [Docket No. 11] (the "Bid Procedures and Sale Motion") seeking, among other things, approval of bid procedures (the "Bid Procedures") in connection with one or more sales or dispositions of substantially all of the Debtors' assets, including the Debtors' interests in their library of 108 motion picture films (the "Library Assets"). On April 16, 2025, the Debtors filed a motion [Docket No. 197] (the "Stalking Horse Supplement") seeking entry of an order modifying certain of the relief requested in the Bid Procedures and Sale Motion and approving the designation of Alcon as the new stalking horse bidder for the Library Assets. On April 24, 2025, the Court entered an order [Docket No. 276] (the "Bid Procedures Order") approving, among other things, the Bid Procedures, which established key dates and times relating to the Sale and the Auction, and granting the relief requested in the Stalking Horse Supplement.

8.      Other than Alcon's stalking horse bid, the Debtors did not receive any Qualified Bids for the Library Assets. Accordingly, on May 22, 2025, the Debtors filed the *Notice of Successful Bidder for Library Assets* [Docket No. 396], which named Alcon as the Successful Bidder for the Library Assets. On June 20, 2025, the Bankruptcy Court entered the *Order (I) Approving the Sale of Library Assets Free and Clear of All Liens, Claims, Interests, and*

*Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 562] (the "Library Assets Sale Order") approving the sale of the Library Assets to Alcon pursuant to the terms of the Library Assets APA.  The Library Assets Sale Order memorialized an agreement between the Debtors, Alcon, and Warner Bros. Entertainment Inc. and its affiliates (collectively, "Warner") resolving all objections raised by Warner to the Library Assets sale.

9.      On July 23, 2025, the sale of the Library Assets to Alcon closed, and the Debtors filed the *Notice of Library Assets Sale Closing* [Docket No. 689].  Pursuant to the Library Assets Sale Order, the Debtors applied the proceeds of the Library Assets sale: (a) first to satisfy all of the Debtors' outstanding obligations under the ABS facility; (b) second, to satisfy all of the Debtors' outstanding obligations under the DIP Facility; (c) third, to fund the Warner Bros. Reserve; (d) fourth, to fund the Library Reserve; and (e) fifth, to the Sellers' estates.

10.      Paragraph 35 of the Library Assets Sale Order provides the following:

> Except in the case of a material amendment, the APA and any related agreements may be amended, supplemented, or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court; *provided* that any such amendment, supplement, or modification shall require the prior written consent of the Buyer and shall not have a material adverse effect on the Debtors' estates.  Any material amendments shall require approval of this Court.

## III.    The Amendment

11.      Prior to the Petition Date, in December 2023, the Debtors sold their share of participation revenues in *Wonka* to Alcon in December 2023 in exchange for Alcon financing Village's acquisition of a 50% interest in the film.  While the Debtors originally sought to sell their non-economic interests in *Wonka* to Alcon as well, at the time of the transaction, Warner wished

to remain in contractual privity with the Debtors and therefore declined to consent to Alcon being substituted in as its direct co-financing partner for the film.

12.     Given that the Debtors had already sold their economic interests in *Wonka*, the Debtors' remaining non-economic interests in *Wonka* were excluded from the prepetition and postpetition marketing processes for the Library Assets because they did not present a source of value to any potential purchasers other than Alcon.  As a result, the original stalking horse bid for the Library Assets submitted by CP Ventura LLC did not include any of the Debtors' remaining interests in *Wonka* as purchased assets.  Thus, when Alcon submitted an overbid to become the new stalking horse on substantially the same terms as the bid submitted by CP Ventura LLC, Alcon's bid also excluded the Debtors' remaining interests in *Wonka*.

13.     Now that the sale of the Library Assets has closed, Alcon and Warner are in direct contractual privity with respect to all other films previously co-owned by the Debtors, with *Wonka* being the sole exception.  Accordingly, following good-faith negotiations between the Debtors, Alcon, and Warner, as well as review and approval by the Debtors' management, the Debtors desire to enter into the Amendment, which amends the Library Assets APA to include the transfer of certain interests of the Sellers in the *Wonka* motion picture.

14.     Specifically, the Amendment would operate to include the Wonka Assets, within the definition of Purchased Assets under the Library Assets APA.  As defined in the Amendment, "Wonka Assets" means:

> all of the Sellers' right, title and interest in and to the Wonka Picture and all of the assets, properties and rights of any kind, whether tangible or intangible, used in, held for use in, relating to or arising from the financing, development, production and/or Exploitation of the Wonka Picture, including, without limitation, all of the right, title and interest of each Seller in and to the following to the extent such assets or rights exist (except to the extent constituting the Excluded Assets): (i) all Exploitation Rights with respect to the

Wonka Picture (including all Wonka Ancillary Rights), (ii) those Assumed Contracts reflected on subclause (b) of Schedule III, including, without limitation, the Assumed Loompala Agreements, (iii) all Books and Records with respect to the Wonka Picture, (iv) all rights to receive Wonka Financial Information from a distributor or any other Person with respect to the monies and any other consideration payable in connection with the Wonka Picture for all accounting periods and (v) all rights to (A) exercise, control, settle, compromise and/or direct any noticed, pending or future audit and/or inspection (a "Wonka Audit Right") of or relating to amounts reflected in any Wonka Financial Information with respect to the Wonka Picture, and (B) receive the economic benefit and/or any payments resulting from any audit set forth in clause (A) above.

Amendment, § 1(a)(x).

15.    In addition, the Amendment would include the Excluded Wonka Assets within the definition of Excluded Assets in the Library Assets APA.  As defined in the Amendment, "Excluded Wonka Assets" means:

collectively, (i) the Sellers' right, title and interest in the Derivative Rights in the Wonka Picture and the "naked" worldwide copyright of the Wonka Picture and the underlying material for the Wonka Picture (which Derivative Rights and "naked" copyright exclude, for the avoidance of doubt, all Exploitation Rights with respect to the Wonka Picture (including, without limitation, the Wonka Ancillary Rights) and all other rights with respect to the Wonka Picture other than the Derivative Rights and the "naked" copyright itself) and (ii) the Consulting Agreement.

Amendment, § 1(a)(iv), (b).

16.    Finally, the Amendment provides for the inclusion of the Wonka Agreements on the Assumed Contracts schedule to the Library Assets APA.  As defined in the Amendment, "Wonka Agreements" means:

the Wonka MPRPA, the Wonka Distribution Agreement, the Wonka Intercreditor Agreement (each as defined in subclause (b) of Schedule III), the Assumed Loompala Agreements, and all other instruments, exhibits, documents and agreements executed or delivered by Sellers from time to time prior to the First Amendment Effective Date pursuant to the foregoing, including, without limitation, rights purchase agreements, intercompany licenses and

assignments and security perfection documents, and all other
Contracts to which a Seller is a party in connection with the
financing, development, production, exhibition or other
Exploitation of the Wonka Picture.

Amendment, § 1(a)(ix); Schedule III(b).

## BASIS FOR RELIEF

**I.      Entry into the Amendment Is a Sound Exercise of the Debtors' Business Judgment
and Appropriate Under Section 363(b) of the Bankruptcy Code.**

17.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and

a hearing, may use, sell or lease, other than in the ordinary course of business, property of the

estate."  Bankruptcy courts routinely authorize sales of a debtor's assets pursuant to Bankruptcy

Code section 363 if such sale is based upon the sound business judgment of the debtor.  *See, e.g.*,

*In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("In determining whether to authorize use, sale or

lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound

business purpose justifies such actions.  If the [Debtor's] decision evidences a sound business

purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward

Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir.

1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an

'articulated business justification'") (internal citations omitted); *In re Martin*, 91 F.3d 389, 395

(3d Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if

he has an 'articulated business justification' . . . .") (quoting *In re Schipper*, 933 F.2d 513, at 515);

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *Stephens Indus., Inc. v.

McClung*, 789 F. 2d 386, 390 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In

re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc's, Inc.*, 179 B.R.

544, 552 (Bankr. N.D. Ill. 1999); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D.

Del. 1991).  Once "the debtor articulates a reasonable basis for its business decisions (as distinct

from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtors' conduct." *In re Johns Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). In other words, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

18.     Here, the Debtors believe that the Amendment is appropriate and in the best interest of the their estates. First, the Wonka Assets do not have any economic value given that Alcon has already purchased the Debtors' share of participation revenues in the film. The Debtors therefore would not be able to monetize the Wonka Assets by selling them to any party other than Alcon, meaning the Wonka Assets do not represent a standalone source of value to the Debtors' estates. Second, the sale of the Wonka Assets to Alcon, including the Wonka Agreements, will relieve the Debtors of their obligations under the Wonka Agreements and the burdens of having to act as an intermediary between Alcon and Warner, particularly with respect to recurring distribution audits. Accordingly, the Debtors respectfully submit that entering into the Amendment is an exercise of the Debtors' sound business judgment, and that obtaining such benefits from the Amendment is in the best interests of the Debtors' estates, creditors, and all parties in interest.

## II.     The Assumption and Assignment of the Wonka Agreements to Alcon Is Appropriate Under Section 365 of the Bankruptcy Code.

19.     Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or an unexpired lease. *See, e.g.*, *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of a lease "will be a matter of business judgment"); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding debtor's decision to assume or reject executory contract is

governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice). In this context, the business judgment test only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).

20.     In addition, section 365(f)(2) of the Bankruptcy Code requires, in part, that the assignee of any executory contract provide "adequate assurance of future performance . . . whether or not there has been a default in such contract." 11 U.S.C. § 365(f)(2). While the Bankruptcy Code does not define "adequate assurance," courts have held that what constitutes "adequate assurance" should be determined by "a practical, pragmatic construction based upon the facts and circumstances of each case." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1988) (quoting *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985)). While no single standard governs every case, adequate assurance "will fall considerably short of an absolute guarantee of performance." *In re Carlisle Homes, Inc.*, 103 B.R. at 538 (citations omitted); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent). Adequate assurance may be provided by demonstrating, among other things, the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that industrial expertise, past success in running a similar business, and financial wherewithal satisfied the adequate assurance requirement of section 365 of the Bankruptcy Code).

21.     As detailed above, assumption and assignment of the Wonka Agreements to Alcon will relieve the Debtors of their burdens under the Wonka Agreements and is a sound exercise of the Debtors' business judgment.  In addition, Alcon's history of successful film co-financing and production, including prior collaborations with Warner, demonstrates adequate assurance to perform.  The Court has also already found in the Library Assets Sale Order that Alcon provided adequate assurance of future performance under the other Assumed Contracts included in the Library Assets, which are substantially similar to the Wonka Agreements being assigned pursuant to the Amendment.  *See* Library Assets Sale Order, ¶ R ("The Buyer has demonstrated adequate assurance of future performance of and under the Assumed Contracts within the meaning of sections 365(b) and 365(f)(2) of the Bankruptcy Code.").  Accordingly, the Court should approve the Debtors' assumption and assignment of the Wonka Agreements to Alcon.

## III.     Request for Waiver of Bankruptcy Rules 6004(h) and 6006(d).

22.     Pursuant to Bankruptcy Rules 6004(h) and 6006(d), the Debtors seek a waiver of any stay of the effectiveness of the Proposed Order.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order unless the court orders otherwise."  Fed. R. Bankr. P. 6006(d).  As set forth above, the relief requested herein is necessary and appropriate to maximize the value of the Debtors' estates for the benefit of their economic stakeholders.  Accordingly, the Debtors submit that ample cause to justify the waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), in each case, to the extent that such stay applies to the relief requested herein.

**NOTICE**

23.     The Debtors will provide notice of this Motion to: (a) counsel to the ABS Trustee, Barnes & Thornburg LLP, One North Wacker Drive Suite 4400, Chicago, IL 60606, Attn.: Aaron Gavant (agavant@btlaw.com) (b) counsel to the DIP Lenders, Morrison Foerster, 250 West 55th Street, New York, NY 10019, Attn.: James Newton (jnewton@mofo.com); (c) counsel to Vine Alternative Investments Group, LLC, Cooley LLP, 55 Hudson Yards, New York, NY 10001 Attn.: Daniel Shamah (dshamah@cooley.com); (d) counsel to Magnum Films SPC, DLA Piper LLP, 121 Avenue of the Americas, New York, NY, 10020, Attn: Dennis C. O'Donnell (dennis.odonnell@dlapiper.com); (e) counsel to the ad hoc group of ABS Noteholders, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn: Joel Simwinga (jmsimwinga@wlrk.com); (f) counsel to the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue 34th Floor, New York, NY 10017, Attn: Robert Feinstein (rfeinstein@pszjlaw.com) and Bradford Sandler (bsandler@pszjlaw.com); (g) counsel to Warner Bros., (i) O'Melveny & Myers LLP, 400 South Hope Street, Suite 1900, Los Angeles, CA 90071, Attn.: Steve Warren (swarren@omm.com), and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801, Attn.: Curtis S. Miller (cmiller@morrisnichols.com), (h) the U.S. Trustee. 844 N. King Street, Room 2207, Wilmington, DE 19801, Attn.: Timothy J. Fox (timothy.fox@usdoj.gov); (i) the United States Attorney's Office for the District of Delaware; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.  A copy of this Motion is also available on the website of the Debtors' notice and claims agent at https://www.veritaglobal.net/vreg.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated: December 16, 2025
Wilmington, Delaware

*/s/ Joseph M. Mulvihill*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Benjamin C. Carver (Del. Bar No. 7176)
Brynna M. Gaffney (Del. Bar No. 7402)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:        jmulvihill@ycst.com
              bcarver@ycst.com
              bgaffney@ycst.com

*Co-Counsel for the Debtors and
Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone:    (312) 499-6300
Facsimile:    (312) 499-6301
Email:        jbernbrock@sheppardmullin.com
              mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:    (310) 228-3700
Facsimile:    (310) 228-3701
Email:        jnassiri@sheppardmullin.com

-and-

Alyssa Paddock (admitted *pro hac vice*)
30 Rockefeller Plaza, 39th Floor
New York, NY 10112
Telephone:    (212) 653-8700
Facsimile:    (212) 653-8701
Email:        apaddock@sheppardmullin.com

*Co-Counsel for the Debtors and
Debtors in Possession*