**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | ) Case No. 25-10475 (TMH) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Ref. Docket No. 1318 |

**NOTICE OF FILING OF LIQUIDATION ANALYSIS FOR JOINT PLAN OF LIQUIDATION OF VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC. AND ITS DEBTOR AFFILIATES**

**PLEASE TAKE NOTICE** that, on January 29, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates* [Docket No. 1318] (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement") with the United States Bankruptcy Court for the District of Delaware.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file the liquidation analysis (the "Liquidation Analysis"), which is Exhibit B to the Disclosure Statement. A copy of the Liquidation Analysis is attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that the Disclosure Statement and the Liquidation Analysis remain subject to review and revision in all respects by the Debtors. To the extent that

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

the Disclosure Statement or Liquidation Analysis are revised, the Debtors will file a revised copy of such at the appropriate time.

Dated: February 2, 2026
Wilmington, Delaware

/s/ Joseph M. Mulvihill

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Joseph M. Mulvihill (Del. Bar No. 6061)<br>Brynna M. Gaffney (Del. Bar No. 7402)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone:   (302) 571-6600<br>Facsimile:   (302) 571-1253<br>Email:   jmulvihill@ycst.com<br>            bgaffney@ycst.com<br><br>*Co-Counsel for the Debtors and Debtors in Possession* | **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**<br>Justin R. Bernbrock (admitted *pro hac vice*)<br>Matthew T. Benz (admitted *pro hac vice*)<br>321 North Clark Street, 32nd Floor<br>Chicago, IL 60654<br>Telephone:   (312) 499-6300<br>Facsimile:   (312) 499-6301<br>Email:   jbernbrock@sheppardmullin.com<br>            mbenz@sheppardmullin.com<br><br>-and-<br><br>Jennifer L. Nassiri (admitted *pro hac vice*)<br>1901 Avenue of the Stars, Suite 1600<br>Los Angeles, CA 90067<br>Telephone:   (310) 228-3700<br>Facsimile:   (310) 228-3701<br>Email:   jnassiri@sheppardmullin.com<br><br>-and-<br><br>Alyssa Paddock (admitted *pro hac vice*)<br>30 Rockefeller Plaza, 39th Floor<br>New York, NY 10112<br>Telephone:   (212) 653-8700<br>Facsimile:   (212) 653-8701<br>Email:   apaddock@sheppardmullin.com<br><br>*Co-Counsel for the Debtors and Debtors in Possession* |

## Exhibit 1

**Liquidation Analysis**

*Village Roadshow Entertainment Group USA Inc., et al.*
*Liquidation Analysis Assumptions*[1]

I.  **Introduction**

Village Roadshow Entertainment Group USA Inc. and its debtor affiliates (collectively, the "**Debtors**"), with the assistance of their advisors, have prepared this hypothetical liquidation analysis (this "**Liquidation Analysis**"), in connection with the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1318] (as amended, supplemented, or modified from time to time, the "**Disclosure Statement**"). This Liquidation Analysis indicates the estimated recoveries that may be obtained by Holders of Claims or Interests in a hypothetical liquidation pursuant to chapter 7 of the Bankruptcy Code, as an alternative to the *Joint Chapter 11 Plan of Liquidation for Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates* [Docket No. 1317] (as amended, supplemented, or modified from time to time, the "**Plan**").

Under the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, a bankruptcy court may not confirm a plan under chapter 11 of the Bankruptcy Code unless each holder of an allowed claim or interest in an impaired class either: (a) accepts the plan; or (b) will receive or retain property on account of such claim or interest of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtors, with the assistance of their restructuring advisors, have prepared this Liquidation Analysis based upon certain assumptions discussed in the Disclosure Statement and these accompanying notes. The Liquidation Analysis sets forth an estimated range of computed recoveries for each Class of Claims and Interests that may be realizable upon the disposition of assets pursuant to a hypothetical chapter 7 liquidation of the Debtors' estates on an assumed date of conversion to chapter 7 on or about April 28, 2025. As set forth in greater detail below, the Debtors believe that the Plan satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code.

The Liquidation Analysis reflects the estimated cash proceeds, net of liquidation and wind-down related costs, which are projected to be realized if the Debtors were to be liquidated in accordance with chapter 7 of the Bankruptcy Code and under the assumptions set forth herein.

Underlying the Liquidation Analysis are numerous estimates and assumptions that, although developed and considered reasonable by the Debtors' management and their advisors, are inherently subject to significant business, economic, regulatory, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Accordingly, there can be no assurance that the computed recoveries reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation, and actual

---

[1] Unless otherwise expressly set forth herein, capitalized terms used but not otherwise defined herein have the same meanings ascribed to such terms in the Disclosure Statement or Plan (as defined below), as applicable.

1

results could materially differ from the results herein. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. Any balances reflected herein are unaudited and presented as such.

## II.   Basis of Presentation

The Liquidation Analysis has been prepared assuming that the Debtors convert these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code on or about April 28, 2026 (the "**Liquidation Date**"), and that such liquidation will take approximately six to twelve months. This Liquidation Analysis assumes that on the Liquidation Date, the Bankruptcy Court would appoint a chapter 7 trustee (the "**Trustee**") to oversee the liquidation of the Debtors' estates. In this hypothetical scenario, the Trustee would satisfy claims by converting any remaining assets of the Debtors to cash by selling or monetizing their individual assets, and abandoning assets which cannot be sold. The cash amount that would be available for satisfaction of Allowed Claims and Interests would consist of unrestricted cash held by the Debtors at the time of the commencement of the liquidation activities, augmented by the net proceeds resulting from the disposition of any remaining assets of the Debtors.

The Liquidation Analysis does not include estimates for: (i) any tax consequences that may be triggered upon the liquidation; (ii) recoveries resulting from any potential preference, fraudulent transfer, or other litigation; (iii) certain damage claims resulting from the cancellation of, or non-performance against, the Debtors' contracts; or (iv) certain claims that may be entitled to priority under the Bankruptcy Code, including administrative priority claims under sections 503(b) and 507(b) of the Bankruptcy Code. More specific assumptions are detailed in the notes below.

The preparation of analyses, such as the Liquidation Analysis, is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by management as and when made and based on management's current expectations and beliefs, are inherently subject to business, economic, and competitive risks, uncertainties, and contingencies, most of which are difficult to predict and many of which are beyond the control of the Debtors or the Trustee. The values stated herein have not been subject to any review, compilation, or audit by any independent accounting firm. In addition, various liquidation decisions upon which certain assumptions are based are subject to material change. As a result, the actual amount of Claims against the Debtors' estates could vary significantly from the estimates stated herein, depending on the nature and amount of Claims asserted during the pendency of the hypothetical chapter 7 cases. Similarly, the value of the Debtors' assets in a liquidation scenario is uncertain and could vary significantly from the values set forth in the Liquidation Analysis.

ACCORDINGLY, NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT, IN WHOLE OR IN PART, APPROXIMATE THE ASSUMPTIONS REPRESENTED HEREIN. THE ACTUAL LIQUIDATION VALUE OF THE DEBTORS IS SPECULATIVE, AND RESULTS COULD VARY MATERIALLY FROM ESTIMATES PROVIDED HEREIN.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of the Debtors' available financial information to account for other known liabilities, as necessary, including claims filed by creditors on proof of claims forms in the chapter 11 cases. In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the chapter 11 cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid Chapter 11 Administrative Claims, Secured Claims, and Chapter 7 administrative Claims which include wind-down costs. Therefore, the Debtors' estimates of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM OR INTEREST BY THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

### III.    Liquidation Analysis

The Liquidation Analysis was prepared on a consolidated basis. The estimated unrestricted cash balances set forth below are estimated as of April 28, 2026. The Liquidation Analysis assumes that the liquidation of any remaining assets of the Debtors would be completed 6 to 12 months following the Effective Date.

#### A.    Asset Recovery

1. Unrestricted Cash:   Estimated unrestricted cash balance of $133,589,921 held in the Debtors' operating accounts as of the Liquidation Date. Recovery on any unrestricted cash is estimated at 100%. Unrestricted cash available on the Liquidation Date is dependent on a number of variables including the Debtors' actual operating disbursements, any payments received prior to the Liquidation Date, and whether any payments are made from the Warner Bros. reserve or the Library Reserve prior to the Liquidation Date.

#### B.    Liquidation Expenses

1. Liquidation Trust Funding/Wind-Down Costs:   In the chapter 11 scenario, the Liquidation Analysis assumes between $1,000,000 and $1,500,000 is required to fund wind-down costs. The costs to fund the wind-down are estimates and may change materially, including in the scenario that the Liquidation Trustee determines that any claims or causes of action held by the Debtors should be pursued. The Debtors continue to assess the work needed to complete the wind-down and the associated costs including independent contractor costs, overhead expenses (such as data/cloud storage costs), and professional fees. In the chapter 7 scenario, the Liquidation Analysis assumes between $3,871,798 and $5,807,698 of

3

2. <u>Administrative Claims</u>:  Any administrative claims that may be outstanding as of the Liquidation Date have not yet been determined as the Administrative Claims Bar Date has not passed.  However, for purposes of the Liquidation Analysis, the Debtors estimate that Allowed administrative claims will not exceed the amount in the professional fee escrow account.  The general bar date was July 18, 2025, and the Debtors are in the process of reviewing and validating the filed Claims.   The Liquidation Analysis assumes that the Professional Fee Reserve is adequate to satisfy all Allowed Professional Fee Claims as of the Liquidation Date.

3. <u>Priority Claims</u>:  The Debtors are in the process of reviewing and validating asserted Other Priority Claims and the Bar Date for Priority Tax Claims has not yet passed.   Accordingly, the total amount of priority Claims that may be outstanding as of the Liquidation Date is estimated at $0 for estimated taxes, but others may be filed at a later date.

4. <u>Library Debtors General Unsecured Claims</u>:  Library Debtors General Unsecured Claims consist of estimated Claims based on the Debtors' books and records, in addition to the proofs of claim filed by creditors of the Library Debtors as of the General Bar Date.  The Liquidation Analysis assumes that total Allowed Library Debtors General Unsecured Claims are $119,292,360.  This assumption will be adjusted as the Debtors perform a reconciliation of the Library Debtors General Unsecured Claims. Recovery for Allowed Library Debtors General Unsecured Claims is expected to be 100% under either the chapter 11 scenario or the chapter 7 scenario.

5. <u>Non-Library Debtors General Unsecured Claims</u>:  Non-Library Debtors General Unsecured Claims consist of estimated Claims based on the Debtors' books and records, in addition to the proofs of claim filed by creditors of the Non-Library Debtors as of the General Bar Date.  The Liquidation Analysis assumes that total Allowed Non-Library Debtors General Unsecured Claims are $8,579,606.  This assumption will be adjusted as the Debtors perform a reconciliation of the Non-Library Debtors General Unsecured Claims. Recovery for Allowed Non-Library Debtors General Unsecured Claims is expected to be 85% under the chapter 11 scenario and 0% under the chapter 7 scenario.

6. <u>Intercompany Claims</u>:  There is expected to be 0% recovery for Intercompany Claims.

7. <u>Intercompany Interests</u>:   There is expected to be 0% recovery for Intercompany Interests.

8. <u>Existing Equity Interests</u>: There is expected to be no equity value remaining

(continued: unrestricted cash is used to fund chapter 7 wind-down costs including Trustee fees, the fees of the Trustee's professionals, and other expenses.)

for distribution to Holders of Existing Equity Interests in the Debtors subsequent to payment of the aforementioned Claims.

## IV. Stakeholder Recovery Comparison: Chapter 7 vs. Chapter 11

As detailed in the Liquidation Analysis, the Debtors believe that liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by Holders of Claims as compared to such Holders' recoveries under the Plan. The comparison demonstrates that in the chapter 7 liquidation scenario, all Holders of Claims, other than Holders of Senior Secured Notes Claims, who have consented to the treatment set forth in the Plan, would receive a substantially lower distribution under a chapter 7 liquidation.

Further, the Debtors' Estates would incur the costs of payment of a statutorily allowed commission to the Trustee, as well as the costs of counsel and other professionals retained by the Trustee. The Debtors believe that such amounts, over the same liquidation time period under the Plan, would exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtors in the chapter 11 cases. Under the Plan, the Debtors contemplate an orderly administration and winding down of the Estates by parties that are familiar with the Debtors, their assets and affairs, and their creditors and liabilities. Such familiarity will allow the Debtors and Wind-Down Debtors to complete liquidation of the remaining assets, and distribute the net proceeds to creditors more efficiently and expeditiously than a Trustee. Importantly, the Committee Settlement, which guarantees an 85% recovery to Holders of Allowed Claims in Class 3B, would not be available in a chapter 7 case. Additionally, the Estates would suffer additional delays, as a Trustee and his/her counsel will require time to acquire the knowledge and skills to successfully complete the administration of the Estates. Also, following conversion to chapter 7, a new time period for the filing of Claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.

[*Remainder of Page Intentionally Left Blank*]

# Liquidation Analysis

| All Debtors | | Proposed Ch. 11 Plan | | | | Ch. 7 Liquidation | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Recovery Estimate (%) | | Recovery Estimate ($) | | Recovery Estimate (%) | | Recovery Estimate ($) | |
| | Book Value | High | Low | High | Low | High | Low | High | Low |
| Cash | $ 133,589,921 | 100.0% | 100.0% | $ 133,589,921 | $ 133,589,921 | 100.0% | 100.0% | $ 133,589,921 | $ 133,589,921 |
| **Total Assets** | $ 133,589,921 | | | $ 133,589,921 | $ 133,589,921 | | | $ 133,589,921 | $ 133,589,921 |
| | | % of Gross Proceeds (%) | | Expense Estimate ($) | | % of Gross Proceeds (%) | | Expense Estimate ($) | |
| **Less: Plan Administration Costs** | | | | | | | | | |
| Wind-down Expenses | | 0.7% | 1.1% | $ (1,000,000) | $ (1,500,000) | 0.9% | 1.3% | $ (1,200,000) | $ (1,800,000) |
| Ch. 7 Trustee Fees | | 0.0% | 0.0% | $ - | $ - | 2.0% | 3.0% | $ (2,671,798) | $ (4,007,698) |
| **Total Plan Administration Costs** | | | | $ (1,000,000) | $ (1,500,000) | | | $ (3,871,798) | $ (5,807,698) |
| **Net Funds Available for Distribution** | | | | $ 132,589,921 | $ 132,089,921 | | | $ 129,718,123 | $ 127,782,224 |
| | | Recovery (%) | | Recovery Estimate ($) | | Recovery (%) | | Recovery Estimate ($) | |
| Claims: | Claim Amount | High | Low | High | Low | High | Low | High | Low |
| **Priority Tax Claims** | $ - | n/a | n/a | $ - | $ - | n/a | n/a | $ - | $ - |
| **Admin Priority Claims** | $ - | n/a | n/a | $ - | $ - | n/a | n/a | $ - | $ - |
| **Class 1 - Other Secured Claims** | $ 452,131 | 100.0% | 100.0% | $ 452,131 | $ 452,131 | 100.0% | 100.0% | $ 452,131 | $ 452,131 |
| **Class 2 - Other Priority Claims** | $ - | n/a | n/a | $ - | $ - | n/a | n/a | $ - | $ - |
| **Class 3A - Library Debtors General Unsecured Claims** | $ 119,292,360 | 100.0% | 100.0% | $ 119,292,360 | $ 119,292,360 | 100.0% | 100.0% | $ 119,292,360 | $ 119,292,360 |
| **Class 3B - Non-Library Debtors General Unsecured Claims** | $ 8,579,606 | 85.0% | 85.0% | $ 7,292,665 | $ 7,292,665 | 0.0% | 0.0% | $ - | $ - |
| **Class 4 - Senior Secured Notes Claims** | $ 157,288,992 | 3.5% | 3.2% | $ 5,552,765 | $ 5,052,765 | 6.3% | 5.1% | $ 9,973,632 | $ 8,037,733 |
| **Class 5 - Intercompany Claims** | $ - | n/a | n/a | $ - | $ - | n/a | n/a | $ - | $ - |
| **Class 6 - Existing Equity Interests** | $ - | n/a | n/a | $ - | $ - | n/a | n/a | $ - | $ - |
| **Class 7 - Intercompany Interests** | $ - | n/a | n/a | $ - | $ - | n/a | n/a | $ - | $ - |