**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | Case No. 25-10475 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 1318, 1319, 1349, & 1352** |

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF THE
DEBTORS' MOTION FOR ENTRY OF ORDER (I) CONDITIONALLY
APPROVING THE DISCLOSURE STATEMENT, (II) SCHEDULING THE
COMBINED HEARING, (III) ESTABLISHING NOTICE AND OBJECTION
PROCEDURES FOR CONFIRMATION OF PLAN AND FINAL APPROVAL
OF ADEQUACY OF DISCLOSURES, (IV) ESTABLISHING SOLICITATION,
VOTING, AND RELATED PROCEDURES, (V) APPROVING RELATED DATES,
DEADLINES, AND PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

submit this omnibus reply (this "<u>Reply</u>") in support of the *Motion for Entry of an Order Approving*

*(I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing,*

*(III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval*

*of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures,*

*(V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief*

[Docket No. 1319] (the "<u>Motion</u>")[2] and in response to the objection of  Warner Bros.

Entertainment Inc. and its affiliates (the "<u>Warner Objection</u>") [Docket No. 1349] and the objection

---

[1]    The last four digits of the Debtors Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343.  The mailing address for the Debtors Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Objections, as applicable.

of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") [Docket No. 1352] (the "U.S. Trustee Objection," and together with the Warner Objection, the "Objections"). In support of the Motion and in response to the Objections, the Debtors state the following:

## PRELIMINARY STATEMENT

1. The Debtors have worked diligently and in good faith to address the concerns raised in both Objections. After conferring with Warner, the Debtors have agreed to incorporate language requested by Warner into a revised proposed order (the "Revised Proposed Order"), which the Debtors believe fully resolves the Warner Objection. The Debtors have also conferred with the U.S. Trustee and have incorporated certain requested modifications into revised versions of the Plan and Disclosure Statement.[3] However, notwithstanding the fact that the Motion seeks *interim* approval of the Disclosure *for solicitation purposes only*, the U.S. Trustee maintains certain objections to the Plan's proposed release provisions—none of which constitute grounds to deny the Motion.

2. First, the U.S. Trustee Objection is premature. The sole question before the Court at this stage is whether the Disclosure Statement contains "adequate information" to permit informed voting—not whether the Plan is ultimately confirmable. The U.S. Trustee's challenges to the Plan's release provisions are quintessential confirmation issues that should be reserved for the Confirmation Hearing, where the Court will have the benefit of creditor votes and a full evidentiary record. Courts routinely approve disclosure statements and permit solicitation to

---

[3] The Debtors will file the Revised Proposed Order, the revised Plan, and the revised Disclosure Statement on the docket in advance of the hearing on the Motion.

proceed even when confirmation objections have been raised, unless the plan is "patently unconfirmable." The U.S. Trustee has not—and cannot—make such a showing here.

3.      Second, the Disclosure Statement provides adequate information about the proposed releases under the Plan. The Disclosure Statement includes a comprehensive, multi-page discussion of the Plan's release provisions, describes the parties who will be released and the scope of released claims, explains the opt-out mechanism in detail, and provides prominent notice in bold, capitalized text that third-party releases are contemplated under the Plan. In addition, the revised Disclosure Statement provides a detailed description of modifications that the Debtors have made with respect to the opt-out mechanism—including that creditors who are entitled to vote may opt out by not returning a Ballot—in response to comments received from the U.S. Trustee. This satisfies the Bankruptcy Code's requirement that the Disclosure Statement contain information sufficient to enable creditors to make an informed judgment about the Plan.

4.      Third, the Plan is not patently unconfirmable under *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), which prohibits only **_non-consensual_** third-party releases. Here, the Plan contemplates a **_consensual_** release mechanism which has previously been approved by this Court—all parties subject to the releases will receive comprehensive notice and explicit instructions on how to opt out.[4] Creditors who affirmatively vote to accept the Plan after receiving full disclosure, or who receive notice and choose not to opt out despite being given clear instructions on how to do so, have plainly and clearly manifested their consent to the releases. *See*

---

[4]    Under the Revised Plan, parties may opt out of being a Releasing Party by: (a) for Holders of Claims or Interests that are entitled to vote on the Plan, (i) submitting a Ballot by the Voting Deadline that (1) does not vote to accept the Plan and (2) selects the option set forth on the Ballot to not grant the releases set forth in Article XI of the Plan, or (ii) not returning a Ballot; (b) for Holders of Claims or Interest that are Unimpaired, returning a Notice of Non-Voting Status Package that selects the option set forth therein to not grant the releases in Article XI of the Plan; or (c) filing a written objection to the releases set forth in Article XI of the Plan by the Confirmation Objection Deadline.

Transcript of Record, at 40-41, *In re Amerifirst Financial, Inc., et al.*, Case No. 23-11240 (TMH) (Bankr. D. Del. Jan. 13, 2026) (Docket No. 1225) ("Here, we have four creditors who returned ballots and did not check an opt-out box.  Those creditors clearly had the opportunity and did, in fact, review the materials.  And short of an opt-in, which I'm not prepared to require, I can't think of anything else that would evidence affirmative consent more than having had the opportunity to an actually having returned a ballot and elected not to tick the box to opt out of the releases").  This opt-out approach has been widely recognized as a valid means of obtaining consent, including by this Court's recent rulings, and is fundamentally different from the non-consensual release at issue in *Purdue Pharma*.  As this Court has stated previously, the Court is not prepared to require an opt-in mechanism.  *Id*.  Rather, this Court has ruled that creditors who have the opportunity to review solicitation materials, return their ballots, and do not check an opt-out box manifest clear and unequivocal affirmative consent to the releases contained in a chapter 11 plan.  *Id*.

5.       The Debtors respectfully submit that solicitation should proceed without delay. The Debtors have been in chapter 11 for nearly a year and liquidated substantially all of their assets through three value-maximizing sales, collectively yielding approximately $440 million in sales proceeds.  The Plan represents the culmination of extensive negotiations with key stakeholders and provides for an orderly liquidation of the Debtors' assets for the benefit of creditors.  The Debtors have worked in good faith to address stakeholder concerns and have already revised the Plan to incorporate many of the U.S. Trustee's comments, including refining the Release Opt-Out Election to provide that parties entitled to vote may opt out of the releases under the Plan by not returning a Ballot—a mechanism that has previously been approved by this Court.[5]  Denying

---

[5]     *See* Transcript of Record, at 14, *In re Amerifirst Financial, Inc., et al.*, Case No. 23-11240 (TMH) (Bankr. D. Del. Dec. 4, 2025) (Docket No. 1193); Transcript of Record, at 8, *In re WEH Liquidating, LLC, et. al.*, Case No. 25-11602 (TMH) (Bankr. D. Del. Nov. 12, 2025) (Docket No. 351).

conditional approval of the Disclosure Statement at this stage would deprive creditors of their right

to vote and delay the conclusion of these chapter 11 cases based on confirmation objections that

can and should be addressed at the Confirmation Hearing.  Accordingly, the Court should deny

the U.S. Trustee Objection, grant the Motion, and enter the Revised Proposed Order.

## **REPLY**

I.    **The Disclosure Statement Contains Adequate Information Under Section 1125 of the Bankruptcy Code.**

6.      At this stage, the sole question before the Court is whether the Disclosure Statement

satisfies the requirements of section 1125 of the Bankruptcy Code.  Pursuant to section 1125, a

disclosure statement must only provide holders of claims and interests entitled to vote with

"adequate information" regarding the plan.  11 U.S.C. § 1125; *see also In re Maxus Energy Corp.*,

639 B.R. 51, 70 (Bankr. D. Del. 2022) (noting that the purpose of a disclosure statement is "for

the debtor to provide parties with adequate information for purposes of voting on a debtor's

confirmation plan"); *see* Transcript of Hearing at 195:25–196:3, *In re EV Energy Partners, L.P.*,

No. 18-10814 (CSS) (Bankr. D. Del. May 16, 2018) (observing that "the whole point of the

disclosure statement isn't to generally inform the world of the facts of the case; it's to provide the

investors with the information they need to know how to vote").  Section 1125(a)(1) of the

Bankruptcy Code states, in relevant part:

> "[A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan[.]"

11 U.S.C. § 1125(a)(1).

7.    "Adequate information" has been interpreted as information that is "reasonably practicable" to permit an "informed judgment" by creditors voting on a plan. *In re Congoleum Corp.*, 636 B.R. 362, 383 (Bankr. D.N.J. 2022). The adequacy of information in a disclosure statement is determined on a case-by-case basis. *In re Lower Bucks Hosp.*, 488 B.R. 303, 317 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir. 2014) (holding that what constitutes "adequate information" is "determined on a case-by-case basis, with the ultimate determination within the discretion of the bankruptcy court"); *see also In re Oneida Motor Freight, Inc.*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."). Importantly, the information in a "disclosure statement only has to provide general descriptions; it doesn't have to provide detailed information." Hr'g Tr. at 59:18-21, *In re Mallinckrodt*, Case No. 20-12522 (JTD) (Bankr. D. Del. June 2, 2021) [Docket No. 2683].

8.    As set forth in the Motion and consistent with Third Circuit precedent, the Disclosure Statement contains the categories of information necessary for voting creditors to make an informed judgment to accept or reject the Plan. Indeed, the Disclosure Statement is well over 100 pages long, excluding exhibits. It contains fulsome descriptions of—and in many cases, detailed information about—categories of information necessary to make an informed decision, including:

- the Plan, including a summary, the procedures for voting on the Plan and projected recoveries thereunder (Art. I)

- the statutory requirements for confirming the Plan (Art. I.F);

- the Debtors' organizational structure, business operations, and financial obligations (Art. II);

- the events leading to the filing of the Chapter 11 Cases (Art. II.D);

- the major events during these Chapter 11 Cases, including (i) significant pleadings filed in the Chapter 11 Cases, (ii) the Committee Settlement, and (iii) certain relief granted by the Bankruptcy Court (Art. III);

- certain risk factors that Holders of Claims should consider before voting to accept or reject the Plan (Art. XV);

- the classification and treatment of Claims or Interests under the Plan, including identification of the Holders of Claims entitled to vote on the Plan (Art. IV);

- the means for implementation of the Plan, the provisions governing distributions to certain Holders of Claims pursuant to the Plan, the procedures for resolving Disputed Claims and other significant aspects of the Plan (Arts. V, VII, and VIII);

- the releases contemplated by the Plan that are integral to the overall settlement of Claims pursuant to the Plan (Art. XI); and

- certain United States federal income tax consequences of the Plan (Art. XVI).

9.      The Disclosure Statement is clear, fair, advises parties in interest of how their Claim(s) will be treated under the Plan, and provides substantially more than the minimum required information. *See* Mot. ¶ 13. At this stage, only the adequacy of the information contained in the Disclosure Statement needs to be addressed. Objections relating to the substantive provisions of the Plan can and should be left for the Confirmation Hearing. Addressing confirmation issues at the Disclosure Statement Hearing only delays the course of these chapter 11 cases unnecessarily by converting the Disclosure Statement Hearing into a premature confirmation hearing. The Debtors submit that the Disclosure Statement provides adequate information to permit voting creditors to make an informed judgment about the Plan, which is squarely confirmable under applicable Third Circuit law. While the U.S. Trustee attempts to couch substantive plan related objections as objections to the adequacy of information in the Disclosure Statement, those efforts fail to present any basis for the Court to delay approval of the Disclosure Statement and solicitation of the Plan.

**A.    The Disclosure Statement Provides Adequate Information Regarding the Plan's Release Provisions.**

10.    The U.S. Trustee contends that the Disclosure Statement lacks adequate information about the Plan releases.  This contention is without merit.  The Disclosure Statement includes a comprehensive discussion of the Plan's release, exculpation, and injunction provisions in Article VIII, Section F, spanning multiple pages.  This section describes in detail: (i) the parties who will be released; (ii) the scope of the claims being released; (iii) who will be deemed to provide releases; (iv) the mechanism by which parties can opt out of providing releases; and (v) the legal standards governing releases in chapter 11 plans.

11.    Additionally, the revised version of the Disclosure Statement explicitly advises parties in bold, capitalized text:

> **PLEASE NOTE THAT A HOLDER OF A CLAIM WHO VOTES TO ACCEPT THE PLAN AND WHO DOES NOT TIMELY SUBMIT A RELEASE OPT-OUT IN ACCORDANCE WITH THE BALLOT TO VOTE TO ACCEPT OR REJECT THE PLAN WILL BE DEEMED TO <u>CONSENT TO THE RELEASES CONTAINED IN ARTICLE X OF THE PLAN</u>, WHICH RELEASES ARE ALSO DISCUSSED IN ARTICLE XI OF THIS DISCLOSURE STATEMENT. PLEASE CAREFULLY REVIEW SUCH RELEASES.**

12.    The U.S. Trustee Objection appears to conflate the question of whether the Disclosure Statement contains adequate information *about* the releases with the question of whether the releases themselves are *ultimately confirmable*.  These are distinct inquiries. The Disclosure Statement need not resolve all potential legal disputes about plan provisions—it need only disclose them with sufficient clarity to permit informed voting.  That standard is amply satisfied here.

**B.    The Scope of Released Parties Are Adequately Described and Appropriate.**

13.    The U.S. Trustee also expresses concern about the breadth of the "Released Parties" and "Related Party" definitions, suggesting they may encompass individuals and entities who are not meaningfully involved in the case or the Plan.  U.S. Trustee Obj. ¶ 30-33.  However, the "Released Parties"[6] and "Related Parties"[7] definitions are customary and intended to ensure that employees, professionals, and other persons involved in consummating the restructuring are protected and not inadvertently omitted.  These definitions are not vague and courts in this District have approved debtor and third-party releases that apply to persons identified only by categories, such as directors, managers, officers, and other professionals.  *See In re Gigamonster*, No. 23-10051 (JKS) (Bankr. D. Del. Aug. 27, 2024), Hr'g Tr., Aug. 27, 2024, 66:4–7 ("The scope for the third-party release limits the definition of related persons. The provision [of 'Related Persons,' which includes 'agents . . . attorneys, accountants, investment bankers, investment advisors, investment managers, consultants, representatives, and other professionals, advisors'] is consistent with definitions used in other cases in this district."); *In re Dynata*, LLC, No. 24-11057 (TMH) (Bankr. D. Del. July 2, 2024) (D.I. 195); *In re NVN Liquidation, Inc. (f/k/a NOVAN, INC.)*, No.

---

[6]    In the Revised Plan, "<u>Released Parties</u>" is defined as "each of the following and in each case in its capacity as such: (a) the Debtors; (b) each of the Senior Secured Notes Parties; (c) the Holders of DIP Claims; (d) the Liquidation Trustee; (e) the Committee and its members, each in their capacities as such; (f) the Holders of Existing Equity Interests and (g) each Related Party of each Entity in clause (a) through this clause (f); *provided* that, a Released Party shall only be a Released Party if it is also a Releasing Party."

[7]    In the Revised Plan, "Related Party" is defined as "each of, and in ***each case in its capacity as such***, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such person's or entity's respective heirs, executors, estates, and nominees" (emphasis added).

23-10937 (LSS) (Bankr. D. Del. Jan. 26, 2024) (D.I. 568); *In re American Eagle Delaware Holding Company LLC*, No. 22-10028 (JKS) (Bankr. D. Del. Apr. 27, 2022) (D.I. 328).

14.     Without this language, these parties would be exposed to potential liability simply by virtue of being "forgotten" and thus outside the definition of "Released Parties."  Moreover, the Debtors have disclosed the categories of Related Parties in a manner consistent with disclosure statements regularly approved by courts in this district.  *See, e.g.*, *In re Wheel Pros*, *LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024) (confirming a plan that broadly defined "Related Parties" and included "Related Parties" in the definitions of "Releasing Parties" and "Released Parties"); *In re Prosomnus, Inc.*, No. 24-10972 (JTD) (Bankr. D. Del. June 26, 2024) (same); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024) (same); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Mar. 29, 2024) (same); *In re PGX Holdings, Inc.*, No. 23-10718 (Bankr. D. Del. Dec. 26, 2023) (same); *In re Lannett Co.*, No. 23-10559 (JKS) (Bankr. D. Del. June 8, 2023) (same).

## II.     The Plan Is Not Patently Unconfirmable and the U.S. Trustee's Remaining Objections Should Be Addressed at Plan Confirmation.

15.     The U.S. Trustee Objection raises premature substantive challenges to the Plan's release provisions, arguing that the Plan is allegedly unconfirmable due to non-consensual third-party releases.  These objections fundamentally misconstrue the limited scope of this Court's review at the interim disclosure statement stage.  The disputes raised by the U.S. Trustee regarding the releases—including their scope, the mechanics of consent, and their ultimate enforceability—are quintessential confirmation issues that should be reserved for the confirmation hearing, not litigated now.[8]  Indeed, this Court has recently rejected substantially similar objections from the

---

[8]     The Debtors will more fully address these issues in connection with confirmation and expressly reserve all rights with respect thereto.

U.S. Trustee, holding that these issues are properly raised at confirmation.[9]  Nonetheless, the U.S.

Trustee Objection fails to demonstrate that the Plan is unconfirmable, because it is not.

16.     A disclosure statement that adequately describes the chapter 11 plan at issue should

be approved except where it "describes a plan of reorganization which is so 'fatally flawed' that

confirmation is 'impossible.'"  *In re Phoenix Petrol. Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa.

2001); *see In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (citing cases).  Whether

a plan meets the Bankruptcy Code's confirmation requirements "is usually answered at

confirmation hearings."  *Phoenix Petrol.*, 278 B.R. at 394 (quoting *In re Eastern Maine Elec. Co-

op, Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991)).   "[T]he disclosure statement should be

disapproved at the threshold only where the plan it describes displays fatal facial deficiencies or

the stark absence of good faith."  *Id.*; *Am. Cap.*, 688 F.3d at 154-55 ("[A] bankruptcy court may

address the issue of plan confirmation where it is obvious at the disclosure statement stage that a

later confirmation hearing would be futile because the plan described by the disclosure statement

is patently unconfirmable.").   "A plan is patently unconfirmable where (1) confirmation defects

[cannot] be overcome by creditor voting results and (2) those defects concern matters upon which

all material facts are not in dispute or have been fully developed at the disclosure statement

hearing."  *Am. Cap.*, 688 F.3d at 154–55 (internal quotations and citation omitted) (alteration in

original).

---

[9]     *See* Transcript of Record, at 8, *In re WEH Liquidating, LLC, et. al.*, Case No. 25-11602 (TMH) (Bankr. D. Del. Nov. 12, 2025) (Docket No. 351) ("As I've done on other occasions . . . the objection on the basis that the plan is patently unconfirmable because of the inclusion of the third-party releases, it's one that I've addressed on a number of other occasions.  And I do agree that it is a confirmation issue.  I don't believe that the inclusion of an opt out makes the plan patently unconfirmable as to form a basis for denial of approval of the disclosure statement and the solicitation procedures"); Transcript of Record, at 14, *In re Amerifirst Financial, Inc., et al.*, Case No. 23-11240 (TMH) (Bankr. D. Del. Dec. 4, 2025) (Docket No. 1193).

17.     The Debtors agree that the Plan must comply with the confirmation requirements in section 1129 of the Bankruptcy Code (and all other applicable provisions) and will be prepared to carry their burden at confirmation.  But disputed issues related to confirmation are not relevant to assessing whether a disclosure statement contains "adequate information."  *See, e.g.*, *In re Quigley Co.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that the objectors raised "several confirmation issues").  "[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing." *In re Copy Crafters Quickprint, Inc*., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988); *see also In re Monroe Well Serv., Inc*., 80 B.R. 324, 333 n.10 (Bankr. E.D. Pa. 1987) (stating that deciding confirmation issues before solicitation may have a disenfranchising effect because the disclosure statement itself is not mailed to all creditors until after court approval is obtained).

**A.     The Releases Under the Plan Are Appropriate and Consensual Under Applicable Law.**

18.     Article XI of the Plan provides for certain releases under the Plan, including the Third-Party Release and the Debtor Releases.  The U.S. Trustee objects to the Disclosure Statement on grounds that the Plan provides for an impermissible, non-consensual Third-Party Release.  *See* U.S. Trustee Obj. ¶¶ 34-76.  This argument fails for the reasons set forth herein and the Objection should be overruled.

19.     The U.S. Trustee points to the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), in support of its arguments that the Plan is "patently unconfirmable" because it provides for a non-consensual third-party release.  *Purdue* unquestionably holds that non-consensual third-party releases cannot be imposed by a chapter 11 plan.  But *Purdue* is inapposite here, where the Third-Party Release is consensual.  Here, the Plan provides for an "opt out" mechanism for the Third-Party Release, which is substantially similar to

release provisions recently approved by this Court.[10]    The Debtors will provide all parties in interest with adequate notice of the Plan, including the full text of the Third-Party Release, and will provide all Holders of Claims and Interests with information explaining how to opt out of such Third-Party Release.    Each of the Disclosure Statement (transmitted to all parties in interest in electronic format), the Ballots (transmitted to all Voting Classes), the Notice of Non-Voting Status Package (each transmitted to Holders of all Non-Voting Classes), and the Confirmation Hearing Notice (transmitted to all parties in interest) will provide recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Release.    Each Holder then may determine, in its sole discretion, whether to opt out of the Third-Party Release, by returning the Ballot or Notice of Non-Voting Status Package, as applicable.

20.    Courts in this jurisdiction routinely approve such release provisions if, as here, they are consensual and appropriately tailored.    *See, e.g.*, *In re Wash. Mut., Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011) (observing that consensual third-party releases are permissible); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (approving non-debtor releases for creditors that voted in favor of the plan).    Consensual releases are permissible on the basis of general principles of contract law.    The law is clear in the Third Circuit that a release is consensual where parties have received sufficient notice and have had an opportunity to object to and/or opt in to the releases.    *See, e.g.*, *In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (recognizing that a release by a non-debtor third party is consensual where the releasing party indicates its consent by an affirmative act); *In re AeroCision Parent, LLC*, No. 23-11032 (KBO) (Bankr. D. Del. Mar. 4, 2024) (approving a consensual

---

[10]    *See* Transcript of Record, at 40-41, *In re Amerifirst Financial, Inc. et al.*, Case No. 23-11240 (TMH) (Bankr. D. Del. Jan. 13, 2026) (Docket No. 1225) ("I am satisfied that the releases are consensual and permissible under *Purdue* and other applicable law, and I will approve the releases").

third-party release that included, among others, all holders of claims who return a ballot voting to accept the plan, with no option to opt out).

21.    In arguing that the proposed releases under the Plan are non-consensual, the U.S. Trustee argues that "the release must be consensual under non-bankruptcy law." *See* U.S. Trustee Obj. ¶ 40.  The U.S. Trustee then argues the releases under the Plan are not consensual under state contract law in the balance of its Objection.  Contrary to the U.S. Trustee's assertion, the final paragraph of the *Purdue* majority opinion, the Supreme Court states:

> As important as the question we decide today are ones we do not. Nothing in what we have said should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan; those sorts of releases pose different questions and may rest on different legal grounds than the nonconsensual release at issue here.  *See, e.g.*, *In re Specialty Equipment Cos.*, 3 F.3d 1043, 1047 (CA7 1993).  ***Nor do we have occasion today to express a view on what qualifies as a consensual release or pass upon a plan that provides for the full satisfaction of claims against a third-party nondebtor***.  Additionally, because this case involves only a stayed reorganization plan, we do not address whether our reading of the bankruptcy code would justify unwinding reorganization plans that have already become effective and been substantially consummated.  Confining ourselves to the question presented, we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.

*Purdue*, 603 U.S. 204, 226–27 (2024) (emphasis added).  Thus, the U.S. Supreme Court has explicitly declined to weigh in on the argument that the U.S. Trustee makes in its Objection and did not rule in *Purdue* that consensual releases in bankruptcy must follow non-bankruptcy law.

22.    In fact, the existing, longstanding precedent of this Court and others within the Third Circuit is to approve third-party releases where creditors have the opportunity to opt out, consistently finding that such opt-out release provisions are consensual.  *See In re Nikola Corp., et al.*, No. 25-10258 (TMH) (Bankr. D. Del. 2025) (D.I. 1029) Hr'g Tr. No. 132:25—133:1-9 4

(approving an opt out mechanism that provided clear and conspicuous notice); *In re Fisker, Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Oct. 11, 2024) (D.I. 706) Hr'g Tr. No. 44:20-45:11 (finding that "in light of Purdue, there is no prohibition on the use of opt-out releases"); *In re Amyris Inc.*, Case No. 23-11131 (TMH) (Bankr. D. Del. Feb. 2, 2024) (D.I. 1238) Hr'g Tr. No. 6:9-14 (approving consensual third-party releases with an opt-out feature because "the opt-out adequately protects parties' rights and appropriately indicates whether a party would consent to the releases"). Specifically, this Court, and many others, have adopted the "due process analysis" to determine whether opt outs are consensual, recognizing that this approach has been applied by "the majority of courts . . . over a period of many, many years." *In re Nikola Corp., et al.*, No. 25-10258 (TMH) (Bankr. D. Del. 2025) (D.I. 1029) Hr'g Tr. No. 132:20–25. Accordingly, most of the cases cited in the U.S. Trustee Objection, as well as the bulk of its analysis, rest on a contractual theory based in state law and are inapposite to the analytical framework this Court employs in assessing whether the due process requirements of the Fifth Amendment have been satisfied.

23.    In addition, the U.S. Trustee's arguments that voting to accept the Plan cannot be consent to the Third-Party Release similarly fail. *See* U.S. Trustee Obj. ¶¶ 48-52. Voting on the Plan constitutes consent to the Third-Party Release because a voting creditor agrees to accept (or reject) the entire Plan. *See, e.g.*, *In re Bartleson*, 253 B.R. 75, 84 (9th Cir. B.A.P. 2000) ("A chapter 11 plan is a contract between the debtor and its creditors in which general rules of contract interpretation apply."). A Holder that votes to accept the Plan must agree to the Plan *in toto*, rather than select which provisions of the Plan it finds most preferable, and is bound by the entire agreement. Further, the revised Ballots attached as exhibits to the Revised Proposed Order provide clear notice to each Holder that a vote to accept the Plan is deemed consent to the Third-Party Release. *See* Revised Proposed Order, Ex. 2-A ("***If you vote to accept the Plan or do not check***

*the box below, you shall be deemed to have consented to the release provisions set forth in Article*

*XI.B of the Plan.*").    Additionally, the Third-Party Release language itself is conspicuously

included on the Ballots in bold.  Courts in this district have routinely approved third-party releases

as consensual based on the affirmative act of voting to accept the plan.  *See, e.g.*, *In re Appgate,*

*Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024); *In re View, Inc.*, No. 24-10692 (CTG)

(Bankr. D. Del. May 20, 2024); *In re JOANN Inc.*, No. 24-10418 (CTG) (Bankr. D. Del. Apr. 25,

2024); *In re Quanergy Sys., Inc.*, No. 22-11305 (CTG) (Bankr. D. Del. Nov. 8, 2023); *In re Big*

*Village Holding LLC*, No. 23-10174 (CTG) (Bankr. D. Del. Aug. 24, 2023); *In re Kabbage, Inc.*

*(d/b/a KServicing)*, No. 22-10951 (CTG) (Bankr. D. Del. Mar. 15, 2023); *In re Riverbed Tech.*

*Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 04, 2021).  Accordingly, voting to accept a plan

is appropriately considered consent to a consensual third-party release and does not render the Plan

"patently unconfirmable."

24.    The Debtors submit that the releases under the Plan are consensual and consistent

with the law in this circuit and with this Court's prior rulings.[11]  The ballots submitted for approval

by this Court and set to be distributed to Holders entitled to vote on the Plan (in Class 3 and Class

4) conspicuously quote the full text of the release in bold, capitalized font and clearly describe the

implications of granting the releases.  Additionally, the election forms set to be distributed to

holders entitled to opt out of the releases are being distributed with the entire text of the Injunction,

Exculpation, and Release Provisions and instructions that plainly provide the proper notice

recipients would need to opt out of the Voluntary Release.  Moreover, through the Disclosure

Statement, Notice of Non-Voting Status, and other noticing materials, all creditors will receive

---

[11]    *See* Transcript of Record, at 14, *In re Amerifirst Financial, Inc., et al.*, Case No. 23-11240 (TMH) (Bankr. D. Del. Dec. 4, 2025) (Docket No. 1193); Transcript of Record, at 8, *In re WEH Liquidating, LLC, et. al.*, Case No. 25-11602 (TMH) (Bankr. D. Del. Nov. 12, 2025) (Docket No. 351).

clear and comprehensive notice of the releases, their effect under Article XI of the Plan, and their right to opt out.

>       **B.      The U.S. Trustee's Technical Objections to Solicitation Documents Either Have Been or Will Be Addressed.**

25.     The U.S. Trustee raises various technical objections to the ballot and notice forms, asserting that they contain conflicting or contradictory instructions about whether an accepting creditor can opt out, and that certain notices do not prominently disclose releases or provide clear opt-out instructions.  To the extent the U.S. Trustee has identified any legitimate ambiguities or inconsistencies in the solicitation materials that the Debtors have not already resolved in the Revised Proposed Order and revised Disclosure Statement, the Debtors are willing to work with the U.S. Trustee to revise and clarify the language before ballots are distributed.  Indeed, the Debtors have already demonstrated their willingness to incorporate constructive feedback by revising the Plan and solicitation documents in response to certain of the U.S. Trustee's comments.

26.     However, these types of technical objections to solicitation materials are precisely the kind of issues that should not delay conditional approval of the Disclosure Statement. Moreover, many of the alleged "inconsistencies" identified by the U.S. Trustee are more semantic than substantive.  The revised Disclosure Statement clearly explains that holders who either (i) vote to accept, or (ii) do not vote to accept and do not timely submit an opt-out, will be deemed to consent to releases.  The Plan defines "Release Opt-Out Election" to include (i) submitting a ballot that does not vote to accept and selecting the opt-out option, (ii) not submitting a ballot, or (iii) filing an objection to the releases.  Read together, these provisions make clear that accepting creditors can opt out of the releases by filing a timely objection, even if they vote to accept the Plan.

**III.** **The Debtors Have Consensually Resolved the Warner Objection.**

27.     The Warner Objection primarily seeks to ensure that prior Court orders and stipulations in these cases concerning Warner's rights related to the Matrix Arbitration would be preserved and that Warner's ability to opt out of or object to third-party release and exculpation provisions under the Plan would be protected.  The Debtors have conferred with Warner regarding its Objection and have agreed to include certain language requested by Warner in the Revised Proposed Order.  The Debtors believe this language fully addresses Warner's concerns and that the Warner Objection has been consensually resolved with respect to the Motion and entry of the Revised Proposed Order.

## RESERVATION OF RIGHTS

28.     The Debtors expressly reserve all rights to provide additional legal arguments and/or briefing or to present additional evidence prior to or at the Confirmation Hearing (a) with respect to seeking approval of the Disclosure Statement and confirmation of the Plan or (b) in response to the Objections or any other objections with respect to approval of the Disclosure Statement or confirmation of the Plan.

## CONCLUSION

29.     For all the foregoing reasons, the Debtors respectfully request that the Bankruptcy Court overrule the U.S. Trustee Objection and enter the proposed Order.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court (a) overrule the

Objections, (b) enter the Revised Proposed Order, and (c) grant such other and further relief as this

Court deems just and appropriate.

Dated: February 17, 2026
Wilmington, Delaware

*/s/ Joseph M. Mulvihill*

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Brynna M. Gaffney (Del. Bar No. 7402)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    jmulvihill@ycst.com
         bgaffney@ycst.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER &**
**HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone:    (312) 499-6300
Facsimile:    (312) 499-6301
Email:    jbernbrock@sheppardmullin.com
         mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:    (310) 228-3700
Facsimile:    (310) 228-3701
Email:    jnassiri@sheppardmullin.com

-and-

Alyssa Paddock (admitted *pro hac vice*)
30 Rockefeller Plaza, 39th Floor
New York, NY 10112
Telephone:    (212) 653-8700
Facsimile:    (212) 653-8701
Email:    apaddock@sheppardmullin.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*