IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered) |

**REPLY OF THE G.O.A.T. MEDIA, LLC TO
DEBTORS' OBJECTION TO RULE 2004 MOTION**

**I. PRELIMINARY STATEMENT**

The Debtors' Objection rests on four assertions:

(1) that Claimant lacks party-in-interest standing;

(2) that the pending proceeding rule bars examination;

(3) that good cause is absent; and

(4) that the request is overbroad and improper due to LLC status.

Each assertion fails as a matter of law.

The Claims Disallowance Order is presently on appeal. A reversal would reinstate Claimant's claim and corresponding rights against the estate. That pending appellate review preserves a live and contingent pecuniary interest directly affected by the administration of the estate, sufficient to confer party-in-interest status under 11 U.S.C. § 1109(b) and governing Third Circuit precedent.

The Motion, as narrowed herein, does not seek to relitigate claim allowance or supplement the appellate record. It seeks limited governance documents uniquely within the Debtors' possession concerning authority scope and submission intake controls during the relevant period.

If the Debtors' characterization of limited authority is accurate, the governing documents will confirm that with minimal burden.

## II. CLAIMANT RETAINS PARTY-IN-INTEREST STATUS

The Objection asserts that disallowance eliminates standing.

That is incorrect.

Section 1109(b) grants broad participatory rights to parties in interest. The Third Circuit has emphasized that "party in interest" must be interpreted expansively. *In re Amatex Corp.*, 755 F.2d 1034, 1041–42 (3d Cir. 1985).

Bankruptcy standing requires a pecuniary interest susceptible to redress. *In re Vantage Drilling Int'l*, 603 B.R. 538, 545 (D. Del. 2019). A party in interest is not limited to holders of allowed claims, but includes entities whose pecuniary interests may be directly affected by the outcome of the case.

Here:

• The Claims Disallowance Order is on appeal.

• A reversal would reinstate Claimant's claim.

• That preserves a live and contingent pecuniary interest.

Courts recognize that contingent economic interests satisfy party-in-interest status. *Amatex*, 755 F.2d at 1041–42. A claim subject to appellate review remains a legally cognizable interest until final resolution, and nothing in § 1109(b) conditions party-in-interest status on final allowance. Holders of disputed or appealed claims retain party-in-interest status until final adjudication. Adopting the Debtors' position would preclude any claimant whose disallowance is on appeal from seeking examination concerning matters directly bearing on the authority representations relied upon in that disallowance. Neither § 1109(b) nor Rule 2004 imposes such a limitation.

Rule 2004 requires only party-in-interest status. Claimant satisfies that threshold.

### III. THE PENDING PROCEEDING RULE DOES NOT APPLY

The pending proceeding rule prevents use of Rule 2004 to circumvent discovery rules in an existing adversary proceeding or contested matter involving the same issues.

The Motion does not seek discovery to supplement the appellate record. Appellate review is confined to the existing record as a matter of law, and no newly produced materials would be considered by the appellate court.

Instead, the Motion seeks documents sufficient to define:

- The scope of authority granted to Mr. Rosen;

- Any limitations on authority to bind the Debtors;

- The commencement, modification, expiration, and any continuation of his engagement;

- Policies governing third-party submission intake and use of Debtor-issued systems.

These issues concern estate governance and authority parameters, not the merits of claim allowance.

The appeal addresses whether the existing record supported disallowance. The Motion addresses whether the governing authority documents defining that record position exist and are properly documented within the estate.

Those are distinct legal inquiries governed by different standards. The Motion does not seek reconsideration of the Claims Disallowance Order, does not challenge the Court's prior ruling, and does not attempt to supplement or expand the appellate record. Accordingly, the pending proceeding rule does not apply.

## IV. GOOD CAUSE EXISTS FOR LIMITED RULE 2004 EXAMINATION

Rule 2004 permits examination concerning the acts, conduct, property, liabilities, and financial condition of the debtor, as well as any matter affecting the administration of the estate. Authority representations and submission governance policies directly affect estate administration and fall squarely within Rule 2004's scope.

The Debtors represent that Mr. Rosen entered into a *first look executive producer agreement* in February 2019 that expired in February 2022. The Debtors further characterize Mr. Rosen as an *independent consultant* who lacked authority to bind the Debtors. The Debtors' filings and related representations reflect varying descriptions of the nature, duration, and scope of Mr. Rosen's affiliation and authority.

In correspondence dated June 26, 2025, Debtors' General Counsel—Kevin Berg—stated that Mr. Rosen "served as a consultant to the Company" and that the Company "severed ties with Mr. Rosen in late 2022." (See Ex. A.) That representation confirms that Mr. Rosen's affiliation was governed by a defined engagement structure and termination point. The governing agreement(s), together with any amendments, extensions, side letters, or documented continuation of access to Debtor-issued systems, establishing the scope, limitations, and termination of that engagement, have not been produced. Where the Debtors rely on asserted limitations of authority as a basis for disallowance, the governing agreements and authorization parameters defining that authority framework are central to clarifying the operative record. The limited Rule 2004 request seeks only those governing documents.

For clarity, the expiration, termination, or severance of an employee, consultant, *first look executive producer agreement*, or other individual affiliation does not, in itself, resolve the status of prior third-party submissions, internal routing decisions, or development workflows initiated

during the period of affiliation. In the media and entertainment industry, submissions may proceed through multi-stage internal evaluation and routing processes that extend beyond the formal term of an individual's engagement. The present request does not seek discovery into project evaluations or development decisions. It seeks only the governing authority and submission governance documents necessary to define the scope and limits of the engagement structure relied upon by the Debtors.

The governing documents defining the commencement, scope, modification, expiration, and any continuation of that engagement are necessary to clarify the operative authority framework expressly relied upon by the Debtors in seeking disallowance. Those documents are the primary evidence of that authority framework.

Where the Debtors rely on limited authority as a basis for disallowance, the governing agreement(s), amendments, and related authorization parameters establish the boundaries of that authority. The scope of the engagement—including authority granted, limitations imposed, authorized use of Debtor-issued email systems or branding, any formally designated company role titles, and the terms and circumstances of commencement, modification, termination, and continuation of access to Debtor systems—directly bears on the authority representations advanced in this case.

Mr. Rosen utilized Debtor-issued email systems and Debtor infrastructure in connection with the solicitation and transmission of third-party submissions during the relevant period. Documents sufficient to show the governing parameters of his engagement, any amendments or extensions, and any written policies governing use of Debtor systems and submission intake are directly relevant to defining the scope and limits of his authorized role and the internal controls applicable to such submissions.

These materials are uniquely within the Debtors' possession and control and are not otherwise accessible to Claimant. Courts in this District recognize that good cause exists where requested materials are relevant to estate administration and uniquely controlled by the debtor. *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016).

The request, as narrowed, seeks only documents sufficient to show:

1. The commencement, scope, modification, expiration, and any continuation of Mr. Rosen's engagement;

2. The authority granted and any limitations thereon;

3. Any written authorization governing use of Debtor-issued systems or branding;

4. Any written policies governing third-party submission intake during the relevant period.

Claimant does not seek privileged communications, development files, compensation records, or unrelated executive materials.

If the Debtors' characterization of limited authority is accurate, the governing documents should confirm that with minimal burden.

Accordingly, good cause exists for the limited Rule 2004 examination requested.

## V. CLAIMANT NARROWS THE REQUEST

To eliminate any burden concerns, Claimant narrows the request to documents reflecting the period during which Mr. Rosen was affiliated with the Debtors and seeks only:

1. The agreement(s), including any amendments, modifications, or extensions, between the Debtors and Mr. Rosen (or any affiliated entity) governing his engagement;

2. Documents sufficient to show:

• The scope of authority granted;

- Any limitation on authority to bind the Debtors;

- Any written delegation of authority to solicit or receive third-party submissions;

- Any written authorization governing access to or continued use of Debtor-issued systems or branding;

      3.      Documents sufficient to show any written policies governing third-party submission intake and internal routing applicable to Mr. Rosen's engagement during his affiliation with the Debtors.

Claimant does not seek privileged materials or documents unrelated to the authority scope and submission governance issues identified herein. Claimant is amenable to appropriate confidentiality protections as the Court deems appropriate.

This narrowed request directly addresses and eliminates the overbreadth and burden concerns asserted in the Objection. The request is confined to governing documents and does not seek testimonial examination at this stage.

## VI. THE LLC REPRESENTATION ISSUE

At the January 30 hearing, the Court referenced the general rule regarding business entities appearing *Pro Se* while also noting the limited exception under Local Rule 9010-1(e)(3). Claimant relied on the Court's guidance in filing this narrowed Motion and acted in good faith in doing so.

Claimant continues diligent efforts to secure Delaware counsel in connection with the appeal and related proceedings.

Given the limited and governance-focused nature of the narrowed request, Claimant respectfully requests that the Court exercise its discretion to consider the Motion on the merits.

## VII. CONCLUSION

The Motion, as narrowed, seeks discrete authority and governance documents uniquely within the Debtors' possession during the period of Mr. Rosen's affiliation.

The pending appeal preserves a live and contingent pecuniary interest.

The pending proceeding rule does not apply.

Good cause exists.

The request is narrowly tailored, proportional, and not unduly burdensome.

For these reasons, Claimant respectfully requests that the Court grant the Motion as narrowed and permit the limited Rule 2004 examination.

Respectfully submitted,

/s/ John T. Pautsch

John T. Pautsch
Authorized Representative
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
Phone: 310.745.0257
Email: legal@thegoat.com

## EXHIBIT A

Email from Kevin P. Berg to John T. Pautsch (addressed to "Mr. Huntsman")
Dated June 26, 2025



**Kevin P. Berg**
To: John   Cc: kmaib@accordion.com, Legal

6/26/25

### RE: Follow-up: VREG BK, Rosen, & Resolution

Dear Mr. Huntsman:

I have reviewed the list of projects below and Village Roadshow Entertainment Group USA Inc. ("Company") has no record of any agreement with you or another party concerning these properties or any other property. Further, we researched our development materials and likewise, to the best of my knowledge, the Company does not have any development materials related to the projects that you noted in your original letter or below. Company has not and does not intend to any claims to properties that you have listed.

Further, Mr. Rosen served as a consultant to the Company, and the Company severed ties with Mr. Rosen in late 2022, nearly 3 years ago. After that time, Mr. Rosen clearly had no legal authority to act on behalf of our Company. The statement in your letter that Mr. Rosen allegedly "swept the floor with VREG legal (won the case)" in 2022 is utterly false. Mr. Rosen never took any legal action against the Company or any of its affiliates in 2022 or at any time.

Any claims that you allege against the Company are completely baseless and your dispute entirely appears to relate directly to your relationship with Mr. Rosen.

Nothing herein contained is intended nor should it be construed to be a complete recitation of all of the facts or events related to the matters set forth herein, nor is anything herein contained intended nor should it be construed in any way to limit or prejudice any of the other rights and/or remedies and/or defenses which Village Roadshow Entertainment Group USA Inc., or any of its affiliated entities, may have against you, or any of your affiliated entities, at law, or in equity, all of which such rights and remedies are hereby reserved.

Sincerely,
Kevin P. Berg
General Counsel



VILLAGE ROADSHOW ENTERTAINMENT GROUP

**KEVIN P. BERG** (he/him/his)
General Counsel
Village Roadshow Entertainment Group USA Inc.
kevin.berg@vreg.com
O  +1 (310) 385 4300
M +1 (310) 418 9925

www.vreg.com