**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA, INC., *et al.*,[1] | Case No. 25-10475 (TMH) |
| | (Jointly Administered) |
| | Hearing Date: Apr. 16, 2026 at 10:00 a.m. |
| | Obj. Ddl.: Apr. 2, 2026 at 4:00 p.m. ET (extended by agreement) |
| Debtors. | Re: D.I. 1378, 1381, & 1516 |

**UNITED STATES TRUSTEE'S OBJECTION TO JOINT PLAN OF LIQUIDATION OF VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC. AND ITS DEBTOR AFFILIATES**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his undersigned attorney, objects to the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates* (the "Plan")[2] [D.I. 1516], and states:

**PRELIMINARY STATEMENT**

1.      The U.S. Trustee objected to the approval of the Debtors' solicitation relief and conditional approval of the Disclosure Statement on grounds that non-consensual third-party

---

[1]  The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2]  Capitalized terms shall have the same meaning given them in the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates* (the "Plan")[2] [D.I. 1516]; the Plan unless otherwise noted herein.

releases rendered the proposed Plan unconfirmable.[3]   The U.S. Trustee files this Objection to restate those objections, which are modified by the Debtors' revisions post-filing of the U.S. Trustee's prior objection.

2.       The aforementioned third-party releases are also sought in tandem with a broad-reaching injunction provision which, even if the Court finds the releases to be consensual, is an inappropriate enforcement tool for that agreement among non-debtor parties.   Absent further revision, the Plan should not be confirmed with the injunction provision.   For the reasons stated in the Solicitation Objection and further explained below, the Court should deny confirmation of the Plan with respect to the impermissible third-party releases.

## JURISDICTION & STANDING

3.       Under 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.   This oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See, e.g.*, *In re United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003) (holding that United States Trustees "protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings"); *U.S. Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *see also* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N.

---

[3]  The U.S. Trustee incorporates by reference, the *United States Trustee's Objection to  Debtors' Motion for Entry of Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing, (III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures, (V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief* [D.I. 1352] (the "Solicitation Objection") as if set forth fully herein, and attaches a copy as Exhibit A hereto for the convenience of the Court and parties.

5963, 6049 (United States Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena").

4.  Under 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in chapter 11 cases, and to file "in connection with hearings under [11 U.S.C. §§ 1125 and 1128] comments with respect to such plans and disclosure statements" whenever the U.S. Trustee considers it to be appropriate.

5.  Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this pleading.

### STATEMENT OF FACTS

6.  On March 17, 2025, each of the above-captioned Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.  On April 1, 2025, the U.S. Trustee filed an Amended Notice regarding the appointment of the Official Committee of Unsecured Creditors.

8.  The Debtors filed their initial Plan and Disclosure Statement on January 29, 2026. The Debtors filed the Solicitation Motion that same day, through which the Debtors sought (i) conditional approval of the Disclosure Statement for purposes of solicitation and (ii) approval of certain procedures concerning the solicitation of votes on the Plan. [D.I. 1317, 1318, & 1319].

9.  The U.S. Trustee objected to the Solicitation Motion on February 16, 2026, filing the Solicitation Objection [D.I. 1352]. On February 18, 2026, the Debtors filed a revised version of the Plan. [D.I. 1359]. On February 19, 2026, the Debtors filed a revised form of order authorizing the solicitation of votes on the Plan. [D.I. 1367]. On February 20, 2026, prior to the scheduled hearing, the Debtors filed a further revised version of the Plan. [D.I. 1372].

10.     The Court held a hearing on the Solicitation Motion on February 20, 2026, noting the U.S. Trustee's objection and reserving issues relating to the Third-Party Releases for confirmation. An order granting the Solicitation Motion was entered on February 20, 2026. [D.I. 1376]. The Debtors filed the Plan Supplement on March 20, 2026. [D.I. 1456].

**The 2/18/26 Plan Revisions**

11.     The Debtors revised the Plan on February 18, 2026 to include the following relevant changes:

- "Release Opt-Out Election" was revised to: "means the timely election to "opt out" of being a Releasing Party by: (a) for Holders of Claims or Interests that are entitled to vote on this Plan, (i) submitting a Ballot by the Voting Deadline that (1) does not vote to accept the Plan and (2) selects the option set forth on the Ballot to not grant the releases set forth in Article XI of this Plan, or (ii) not returning a Ballot; or (b) for Holders of Claims or Interest that are Unimpaired, returning a Notice of Non-Voting Status Package that selects the option set forth therein to not grant the releases in Article XI of this Plan; or (c) filing a written objection to the releases set forth in Article XI of this Plan by the Confirmation Objection Deadline." [D.I. 1359 at ECF p. 23 & 92 (clean and blackline versions respectively)].

- "Releasing Party" was changed to "means (a) the Released Parties; (b) all Holders of Claims or Interests that return a Ballot and do not make a Release Opt-Out Election; (c) all Holders of Claims or Interests that are Unimpaired and do not make a Release Opt-Out Election; and (d) each Related Party of each Entity in the foregoing clauses (a) through (c), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (d); provided, however, the Debtors shall not be a Releasing Party to the extent being a Releasing Party is duplicative or inconsistent with the Debtor Releases provided in Article X.A herein or any Retained Cause of Action; and provided further that Releasing Parties shall exclude any of the foregoing parties that makes a Release Opt-Out Election." *Id.*

- Article XI.A. Releases by the Debtors was revised to replace one instance of "Causes of Action" with "Avoidance Actions[.]" *Id.* at ECF p. 128 (blackline version).

4

- The remaining quoted provisions in the Solicitation Objection at Paragraphs 17 through 22 remain unchanged in the February 18, 2026 version.

**The 2/19/26 Revised Solicitation Order and 2/20/26 Plan Revisions**

12. On February 19, 2026, the Debtors filed the revised Solicitation Order, which included revisions to the Ballots and the *Notice of Non-Voting Status of Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan* (the "Unimpaired Opt-Out"). [D.I. 1367].

13. In the further revised plan filed on February 20, 2026, the Debtors made no additional changes to the Plan provisions addressed in the Solicitation Objection. [D.I. 1372 & 1378].

**The 4/1/26 Revisions to the Plan**

14. On April 1, 2026, the Debtors filed a further revised version of the Plan. [D.I. 1516].

15. Relevant changes in the further revised version of the Plan to the subject of this Objection include:

- "Release Opt-Out Election" was revised to: "means the timely election to "opt out" of being a Releasing Party by: (a) for Holders of Claims or Interests that are entitled to vote on this Plan, (i) submitting a Ballot by the Voting Deadline that (1) does not vote to accept the Plan and (2) selects the option set forth on the Ballot to not grant the releases set forth in Article XI of this Plan, or (ii) not returning a Ballot; or (b) filing a written objection to the releases set forth in Article XI of this Plan by the Confirmation Objection Deadline." [D.I. 1516 at ECF p. 23 & 92 (clean and blackline versions respectively)].

- "Releasing Party" was changed to "means (a) the Released Parties; (b) all Holders of Claims or Interests that return a Ballot and do not make a Release Opt-Out Election; and (c) each Related Party of each Entity in the foregoing clauses (a) and (b), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) or (b);

provided, however, the Debtors shall not be a Releasing Party to the extent being a Releasing Party is duplicative or inconsistent with the Debtor Releases provided in Article X.A herein or any Retained Cause of Action; and provided further that Releasing Parties shall exclude any of the foregoing parties that makes a Release Opt-Out Election." *Id.*

**The 4/1/26 Injunction Provision**

16.   The U.S. Trustee provided informal comments at the time of the Solicitation Objection identifying potential confirmation issues with the Injunction

17.   The Plan contains an injunction enforcing the release provisions. Plan § XI.D.

**In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order. Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Estate, the Liquidation Trust, the GUC Trust, or their successors and assigns, and any of their assets and properties; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Estate, the Liquidation Trust, the GUC Trust, their successors and assigns, and any of their assets and properties; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Estate, the Liquidation Trust, the GUC Trust, or their successors and assigns, and any of their assets and properties; (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Estate, the Liquidation Trust, the GUC Trust, or their successors and**

6

assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim; or (v) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under Article XI of the Plan.

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have provided a release or are subject to the exculpation provisions pursuant to Article XI. A, B, or C of this Plan are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any such release or exculpated Claims, Interests, Causes of Action, or liabilities against any Entity so released (or the property or estate of any Entity, directly or indirectly, so released), including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, any Released Party or Exculpated Party to whom the Releasing Party has provided a release: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding any other indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents,

7

**officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Liquidation Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.**

Plan § XI.D.

18.    "Estate" is defined in Article I.A., as "the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case."  Plan § I.A. at p. 7.

## ARGUMENT

**The Plan Is Not Confirmable Because It Includes Non-Consensual Third-Party Releases**

19.    Here, the Plan is not confirmable because it includes non-consensual third-party releases.  The U.S. Trustee incorporates by reference the Solicitation Objection at paragraphs 34 through 76, attached as **Exhibit A** to this Objection as if fully set forth herein.  The Supreme Court held in *Harrington v. Purdue Pharma L.P.* that bankruptcy courts cannot involuntarily alter relationships between non-debtors by imposing nonconsensual releases of, or injunctions barring, claims between them. 603 U.S. 204, 209, 227 (2024). The Court did not prohibit chapter 11 plans from memorializing consensual third-party releases, and it did not "express a view on what qualifies as a consensual release." *Id.* at 226.  The U.S. Trustee contends that the Plan does not provide a consensual release, as it relies on default or silence as the manifestation of consent.

20.    One court recently found that similar releases are not consensual under either federal or state law and, by extension, it is not necessary to decide whether federal or state law controls. *In re Gol Linhas Aereas Inteligentes S.A.*, 675 B.R. 125, 130 (S.D.N.Y. 2025), *appeal filed, In re Gol Linhas Aereas Inteligentes S.A.*, Case No. 26-49 (2d Cir. Jan. 9, 2026).  Another

8

court reached the conclusion that state law did not apply.  *See Epstein v. Container Store Gp. Inc. (In re Container Store Gp., Inc.)*, No. H-25-618, 2026 WL 395898 at *9 (S.D. Tex. Feb. 12, 2026).

21.     Contrary to the *Container Store* court's conclusion, the federal common law of contract does not govern the proposed third-party releases.

> [I]n few, yet important, contexts, federal courts have recognized the need to fashion "federal common law—substantive rules of decision not expressly authorized by either the Constitution or any Act of Congress—that supplant state law," 19 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 4514 (3d ed. May 2025 update), often when the controversy's subject matter closely relates to the federal government or falls within an area of exclusive federal competence[.]

*In re Whittaker Clark & Daniels Inc.*, 152 F.4th 432, 465 (Krause, J., concurring) (identifying admiralty, federal procurement contract civil liability issues; rights and duties of the United States under federally issues commercial paper, and apportionment of water rights between states) (internal citations omitted).

**The Plan's Injunction Is Overly Broad, Used in Furtherance of the Third-Party Release, and Effects an Impermissible Discharge**

22.     No Bankruptcy Code provision authorizes chapter 11 plans or confirmation orders to include injunctions which enforce releases between and among non-debtors.  Such an injunction is not warranted by the traditional factors that support injunctive relief.  Parties seeking an injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise

9

irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *id.* (noting that an injunction is an "extraordinary remedy").

23.     The Debtors have not shown that these factors are met.  Nor could such a showing likely be made: if the Plan's release is truly consensual, then there is no threatened litigation and no need for an injunction to prevent irreparable harm to either the estates or the released parties. A consensual release may serve as an affirmative defense in any ensuing, post-effective date litigation between the third-party releasees and releasors, but there is no reason for this Court to be involved with the post-effective date enforcement of those state-law releases.

24.     Section 1141(d)(3) of the Bankruptcy Code provides:

> The confirmation of a plan does not discharge a debtor if—
>
> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> (B) the debtor does not engage in business after consummation of the plan; and
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).

25.     The Court should deny confirmation unless the injunction in Plan § XI.D. is narrowed so that it protects only the property being distributed under the Plan and the entity distributing it (i.e., Liquidating Trust and GUC Trust), rather than acting as a discharge for liquidating debtors, as it currently does.

26.     The inclusion of "the Estate" in the 4/1/26 Injunction provision, which is a defined term, still provides relief broader than what a liquidating debtor is entitled to.  *See, e.g.*, *In re Flintkote Co.*, 486 B.R. 99, 129 n.80 (Bankr. D. Del. 2012)("Section 1141(d)(3)(C) is always satisfied for corporate debtors, as they cannot receive discharges in chapter 7.").  Section 541 in

reference to section 301 creates upon the commencement of a case, an estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  As such reference to the Estate in the injunction provision in this liquidating Plan, looks to operate to afford a discharge.

27.     As set forth in §524(a) of the Code, the effect of a discharge "with respect to any debt discharged under section . . . 1141" includes "an *injunction* against the *commencement or continuation of an action*, the employment of process, or an act, to *collect*, recovery or *offset* any such debt as a personal liability of the debtor[.]"  11 U.S.C. § 524(a)(1) and (2)(emphasis added).  Plan Article XI.D., enjoins "*commencing or continuing* in any manner any action or other proceeding of any kind against the Estate . . . (ii) *enforcing, attaching, collecting or recovering* by any manner or means any judgment, award, decree or order against the Estate . . . (iv) *asserting any right of setoff* . . . due from the Estate[.]"  Plan § XI.D. (emphasis added).  As the defined Estate may be coextensive with the Debtors, the U.S. Trustee contends further revision is necessary.  The Plan violates Section 1141(d), and therefore does not satisfy 11 U.S.C. § 1129(a)(1) in its current form.

## RESERVATION OF RIGHTS

28.     The U.S. Trustee leaves the Debtor to its burden of proof, and reserves any and all rights, including the rights to (i) amend or supplement this Objection and (ii) conduct discovery.

[Remainder of Page Left Blank Intentionally]

## CONCLUSION

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order denying confirmation and granting such other relief as this Court deems just.

Dated: April 2, 2026
        Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 AND 9**

By: */s/ Timothy J. Fox*
Jane M. Leamy (#4113)
Timothy J. Fox, Jr. (#6737)
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
Jane.M.Leamy@usdoj.gov
Timothy.Fox@usdoj.gov

12

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy J. Fox, Jr., hereby certify that on April 2, 2026, I caused to be served a copy of this Objection by electronic service on the registered parties via the Court's CM/ECF system and courtesy copies were sent via email to parties in interest.


Dated: April 2, 2026                                        */s/ Timothy J. Fox*

                                                            Timothy J. Fox, Jr.