**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT | ) Case No. 25-10475 (TMH) |
| GROUP USA INC., *et al.*,[1] | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) **Ref. Docket No. 1317** |
| | ) |

**NOTICE OF FILING OF PROPOSED CONFIRMATION ORDER**

PLEASE TAKE NOTICE that, on January 29, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1317] (as amended, modified, or supplemented from time to time, the "Plan") and a related disclosure statement [Docket No. 1318] (as amended, modified, or supplemented from time to time the "Disclosure Statement")[2] with the United States Bankruptcy Court for the District of Delaware (the "Court").

PLEASE TAKE FURTHER NOTICE that attached hereto as **Exhibit A** is a proposed form of order confirming the Plan and approving the Disclosure Statement on a final basis (the "Proposed Confirmation Order").

PLEASE TAKE FURTHER NOTICE that a hearing (the "Confirmation Hearing") to consider approval of the Disclosure Statement on a final basis and confirmation of the Plan is scheduled for **April 16, 2026, at 1:00 p.m. (ET)** before the Honorable Thomas M. Horan, in the United States Bankruptcy Court for the District of Delaware (the "Court"), located at 824 N. Market Street, 3rd Floor, Courtroom No. 7, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time without further notice to parties in interest other than noting such adjournment on the applicable hearing agenda or a notice filed with the Court.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve the right to amend, revise, modify, or supplement the Proposed Confirmation Order prior to, at, or as a result of, the Confirmation Hearing.

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms not otherwise defined have the same meaning as those ascribed to them in the Plan or Disclosure Statement, as applicable.

32530037.1

Dated: April 13, 2026
Wilmington, Delaware

/s/ Joseph M. Mulvihill

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Brynna M. Gaffney (Del. Bar No. 7402)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:     jmulvihill@ycst.com
     bgaffney@ycst.com


*Co-Counsel for the Debtors and
Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone:     (312) 499-6300
Facsimile:     (312) 499-6301
Email:     jbernbrock@sheppardmullin.com
     mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:     (310) 228-3700
Facsimile:     (310) 228-3701
Email:     jnassiri@sheppardmullin.com

-and-

Alyssa Paddock (admitted *pro hac vice*)
30 Rockefeller Plaza, 39th Floor
New York, NY 10112
Telephone:     (212) 653-8700
Facsimile:     (212) 653-8701
Email:     apaddock@sheppardmullin.com

*Co-Counsel for the Debtors and
Debtors in Possession*

## EXHIBIT A

**Proposed Confirmation Order**

32530037.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*[1] | Case No. 25-10475 (TMH) |
| | (Jointly Administered) |
| Debtors. | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND ORDER APPROVING THE DISCLOSURE**
**STATEMENT ON A FINAL BASIS AND CONFIRMING THE**
**JOINT PLAN OF LIQUIDATION OF VILLAGE ROADSHOW**
**ENTERTAINMENT GROUP USA INC., AND ITS DEBTOR AFFILIATES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having[2]:

a. commenced, on March 17, 2025 (the "Petition Date"), these chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

b. continued to operate their businesses and manage their property during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on March 17, 2025, the *Debtors' Motion for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Authorizing the Debtors' Entry into the Stalking Horse APA and Approving Bid Protections Thereunder, (C) Scheduling an Auction for, and Hearing to Approve, Sale of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures; (II)(A) Approving the Sale of*

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used in this order (the "Confirmation Order") that are not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement Order, as applicable.

-1-

*the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances, and (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 11], which was approved in part by order dated April 22, 2025 [Docket No. 240] (the "Bid Procedures Order");

d. commencing on May 28, 2025, conducted an auction in furtherance of a sale of substantially all of the Debtors' assets;

e. on June 20, 2025, obtained entry by the Court of the *Order (I) Approving the Sale of Library Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 562] (the "Library Assets Sale Order");

f. on August 26, 2025, obtained entry by the Court of the *Order (I) Approving the Sale of the Studio Business Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* (the "Studio Assets Sale Order") [Docket No. 782];

g. on November 12, 2025, obtained entry by the Court of the *Order (I) Approving the Sale of the Derivative Rights Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* (the "Derivative Rights Sale Order") [Docket No. 1043];

h. filed, on January 29, 2026, the (i) *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1318]; (ii) *Joint Chapter 11 Plan of Liquidation of Village Roadshow and its Debtor Affiliates* [Docket No. 1317]; and (iii) *Debtors' Motion for Entry of Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing, (III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures, (V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief* [Docket No. 1319] (the "Disclosure Statement Motion");

i. filed, on February 18, 2026, the *Notice of Revised Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1360], which included the *Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* attached thereto as Exhibit A (the "Disclosure Statement");

j. filed on February 18, 2026, the *Notice of Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1359],

which included the *Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* attached thereto as Exhibit A;

k. filed, on February 20, 2026, the *Notice of Further Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1372], which included the *Further Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates*;

l. filed, on April 1, 2026, the *Notice of Further Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1516], which included the *Further Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* attached thereto as Exhibit A (as modified, amended, or supplemented from time to time, the "Plan");

m. obtained, on February 20, 2026, an order conditionally approving the adequacy of the Disclosure Statement and authorizing solicitation of the Plan [Docket No. 1376] (the "Disclosure Statement Order");

n. caused, commencing on March 13, 2026 through their solicitation and balloting agent Kurtzman Carson Consultants, LLC dba Verita Global ("Verita"), the transmittal of the Plan solicitation materials to Holders of Claims and Interests each as described and defined in the *Affidavit of Service* [Docket No. 1429] (the "Solicitation Affidavit"), including (i) transmittal of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Committee Letter, the applicable Ballot, the Combined Hearing Notice, and a return envelope (collectively, the "Solicitation Package") to the voting Classes of Holders of Claims, and (ii) transmittal of the applicable Notice of Non-Voting Package (together with the Solicitation Package, the "Solicitation Materials") to the non-voting Classes of Holders of Claims and Interests, all in accordance with the Disclosure Statement Order;

o. published the *Notice of (I) Conditional Approval of Disclosure Statement and (II) the Hearing to Consider (A) Final Approval of the Disclosure Statement as Containing Adequate Information, (B) Confirmation of the Joint Plan of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates, and (C) Related Voting and Objection Deadlines* (the "Combined Hearing Notice") in *The Wall Street Journal* and the *Los Angeles Times*, on February 26, 2026, as evidenced by the *Affidavit of Publication* [Docket No. 1426];

p. filed, on March 20, 2026, the *Notice of Filing Plan Supplement* [Docket No. 1456] (the "Plan Supplement");

q. filed, on April 13 2026, the *Declaration of Leanne V. Rehder Scott with Respect to the Tabulation of Votes on the Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. [●]] (the "Voting Declaration");

r. filed, on April 13, 2026, the *Debtors' Memorandum of Law in Support of Approval of the Disclosure Statement on a Final Basis and Confirmation of the Joint Plan of*

*Liquidation Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates and Omnibus Reply to Objections to Confirmation* [Docket No. [●]] (the "Confirmation Brief");

s.  filed, on April 13, 2026, the *Declaration of Keith Maib in Support of Approval of the Disclosure Statement on a Final Basis and Confirmation of the Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. [●]] (the "Maib Declaration");

And this Bankruptcy Court having:

t.  set March 27, 2026, at 4:00 p.m. (prevailing Eastern Time) as the deadline for Holders of Claims entitled to vote to vote to accept or reject the Plan (the "Voting Deadline");

u.  set March 27, 2026, at 4:00 p.m. (prevailing Eastern Time) as the deadline to file and serve objections to the confirmation of the Plan for all parties (the "Objection Deadline");

v.  set April 16, 2026, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing;

w.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Voting Declaration, the Maib Declaration, the Confirmation Brief, and all filed pleadings, exhibits, statements, responses, and comments regarding the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of right filed by parties in interest on the docket in these Chapter 11 Cases;

x.  held the Combined Hearing and closed the evidentiary record with respect thereto on April [16], 2026;

y.  considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Combined Hearing;

z.  overruled any and all objections to the adequacy of the Disclosure Statement and confirmation of the Plan, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated;

aa.  taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases, all evidence proffered or adduced in these Chapter 11 Cases, and all arguments made at hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases; and

bb.  [entered rulings on the record at the Combined Hearing held on April 16, 2026],

NOW THEREFORE, the Bankruptcy Court having found that notice of the Combined

Hearing and the opportunity for any party in interest to object to final approval of the Disclosure

-4-

Statement as containing adequate information and confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, that the legal and factual bases set forth in the documents filed in support of confirmation of the Plan, and that other evidence presented at the Combined Hearing and the record in these Chapter 11 Cases establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to (a) determine whether the Disclosure Statement contains adequate information and should be approved on a final basis; (b) determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed; and (c) enter a final

order with respect thereto.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**C.      Eligibility for Relief.**

3.      The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement of these Chapter 11 Cases.**

4.      On the Petition Date, the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner.

**E.      Appointment of the Creditors' Committee.**

5.      On March 27, 2025, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed, pursuant to section 1102 of the Bankruptcy Code, an official committee of unsecured creditors (the "Committee") [Docket No. 103].

**F.      Burden of Proof—Final Approval of the Disclosure Statement and Confirmation of the Plan.**

6.      The Debtors, as proponents of the Disclosure Statement and Plan, have met their burden of proving (a) the Disclosure Statement contains adequate information; and (b) the applicable elements under sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard for plan confirmation.

**G.      Final Approval of the Disclosure Statement.**

7.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section

1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

**H.      Judicial Notice.**

8.      The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

**I.      Plan Supplement.**

9.      On March 20, 2026, the Debtors filed the Plan Supplement with the Bankruptcy Court. The Plan Supplement (including as it may be subsequently modified, supplemented, or otherwise amended pursuant to their terms), complies with the terms of the Plan, and the Debtors provided good and proper notice of the filings in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), the Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. The Plan Supplement consists of the following documents: (a) the Liquidation Trust Agreement; (b) the GUC Trust Agreement; (c) list of Retained Causes of Action; (d) schedule of assumed Executory Contracts and Unexpired Leases; and (f) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan

and this Confirmation Order, the Debtors shall have the right to alter, amend, update, or modify the Plan Supplement through the Effective Date.

**J.      Plan Modifications.**

10.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan described or set forth in this Confirmation Order or in any Plan filed prior to this Confirmation Order (collectively, the "Plan Modifications") constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.  These Plan Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Materials served pursuant to the Disclosure Statement Order, and notice of these Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

11.      In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**K.      Objections Overruled.**

12.      Any resolution or disposition of objections to final approval of the Disclosure Statement or confirmation of the Plan explained or otherwise ruled upon by the Bankruptcy Court on the record at the Combined Hearing is hereby incorporated by reference.  All remaining unresolved objections, statements, informal objections, and reservations of rights, if any, related

to final approval of the Disclosure Statement or confirmation of the Plan are overruled on the merits, with prejudice.

**L.      Disclosure Statement Order.**

13.      On February 20, 2026, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things: (a) conditionally approved the Disclosure Statement; (b) approved the Solicitation Materials, including the solicitation and voting procedures (the "Solicitation and Voting Procedures"); (c) set March 27, 2026, at 4:00 p.m. (prevailing Eastern Time) as the Voting Deadline; (d) set March 27, 2026, at 4:00 p.m. (prevailing Eastern Time) as the Objection Deadline; and (e) set April 16, 2026, at 10:00 a.m. (prevailing Eastern Time) as the date of the Combined Hearing.  The solicitation of votes complied with the Disclosure Statement Order, was appropriate and satisfactory in all respects based on the circumstances of these Chapter 11 Cases and was in compliance with section 1125 and 1126 of the Bankruptcy Code, along with any other applicable provisions of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and any other applicable Bankruptcy Rules, Bankruptcy Local Rules, or applicable non-bankruptcy law.

**M.      Notice.**

14.      The Debtors provided due, adequate, and sufficient notice of the Disclosure Statement, the Disclosure Statement Order, the Plan, the Solicitation Materials, the notice of the Combined Hearing, the proposed assumption and rejection of Executory Contracts and Unexpired Leases and the proposed cure amounts, and all the other materials distributed by the Debtors in connection with confirmation of the Plan and final approval of the Disclosure Statement, together with the Objection Deadline, the Voting Deadline, and the Combined Hearing, and any applicable bar dates and hearings described in the Disclosure Statement Order, in compliance with

the Bankruptcy Rules, Bankruptcy Local Rules, and the procedures set forth in the Disclosure Statement Order. No other or further notice is or shall be required.

**N.      Solicitation.**

15.      As described in the Voting Declaration, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Disclosure Statement Motion and approved in the Disclosure Statement Order (the "Solicitation Procedures"), were appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations.

16.      As described in the Voting Declaration and the Maib Declaration, following entry of the Disclosure Statement Order, the Solicitation Packages were transmitted and served, including to all Holders of Claims in Class 3B and Class 4 (collectively, the "Voting Classes"), in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rule 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable non-bankruptcy law. Transmission and service of the Solicitation Packages, which included the Combined Hearing Notice, were timely, adequate, and sufficient. No further notice is required.

17.      As set forth in the Solicitation Affidavit and the Voting Declaration, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim as of February 18, 2026 (the "Voting Record Date"), which was the record date specified in the Disclosure Statement Order for the purpose of solicitation. The establishment and notice of the Voting Record Date were reasonable and sufficient. Additionally, the period during which Holders in the Voting Classes had to submit acceptances or rejections to the Plan was reasonable and sufficient for such Holders to make an informed decision to accept or reject the Plan.

18.     As described in the Voting Declaration and the Solicitation Affidavit, following entry of the Disclosure Statement Order, the Notice of Non-Voting Packages were transmitted and served, including to all Holders of Claims or Interests in Class 1, Class 2, Class 3A, Class 5, Class 6, and Class 7.  Holders of Claims in Class 1, Class 2, and Class 3A are Unimpaired, conclusively presumed to accept the Plan, and therefore, did not vote to accept or reject the Plan.  Holders of Claims or Interests in Class 5, Class 6, and Class 7 (collectively, the "Deemed Rejecting Classes") are Impaired, entitled to no recovery under the Plan, and therefore conclusively presumed to reject the Plan.

**O.     Voting.**

19.     As evidenced by the Voting Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable non-bankruptcy law.

20.     As set forth in the Voting Declaration, Classes 3B and 4 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.  Based on the foregoing, and as evidenced by the Voting Declaration, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the Debtor) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**P.     Bankruptcy Rule 3016.**

21.     The Plan and all modifications thereto are dated and identify the Entity submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and

identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

Q.      **Bankruptcy Rule 3017.**

22.      The Debtors provided proper and sufficient notice of the Combined Hearing, as required by Bankruptcy Rule 3017(d), as modified by the Disclosure Statement Order.  The Solicitation and Voting Procedures, pursuant to which the Plan and Disclosure Statement were provided to the Voting Classes, and the Combined Hearing Notice were provided to all parties, were adequate, satisfied Bankruptcy Rule 3017(e), and were in accordance with the Disclosure Statement Order.

R.      **Bankruptcy Rule 3018.**

23.      The solicitation of votes to accept or reject the Plan from the Voting Classes satisfies Bankruptcy Rule 3018(a).  The Plan was transmitted to all parties in interest entitled to vote thereon, sufficient time was prescribed for such entities to accept or reject the Plan, and the Solicitation and Voting Procedures complied with sections 1125 and 1126 of the Bankruptcy Code, thereby satisfying Bankruptcy Rule 3018(b).  The Ballots provide for acceptances or rejections of the Plan to be in writing, signed by the Holder of Claims in the Voting Classes, and generally conform to the information required in the appropriate Official Form.  The Solicitation Materials, including the Ballots, satisfy the requirements of Bankruptcy Rule 3018(c).

S.      **Plan Complies with Bankruptcy Code Requirements—Section 1129(a)(1).**

24.      The Plan complies with all applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 thereof.

        (a)      **Proper Classification—Sections 1122 and 1123.**

25.      The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and

-12-

Interests into eight (8) Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

**(b)** **Specified Treatment of Unimpaired Classes—Section 1123(a)(2).**

26. The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims in the following Classes (the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and describes the treatment of such classes.

| Class | Designation |
|-------|-------------|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 3A | Library Debtors General Unsecured Claims |

27. Additionally, Article II of the Plan specifies that Allowed Administrative Claims (including Professional Fee Claims), DIP Claims, ABS Claims, Allowed Priority Tax Claims, and U.S. Trustee Statutory Fees will be paid in full (unless a Holder of such Claim consents to alternative treatment) in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

**(c)** **Specified Treatment of Impaired Classes—Section 1123(a)(3).**

28. The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes

(the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
|-------|-------------|
| 3B | Non-Library Debtors General Unsecured Claims |
| 4 | Senior Secured Notes Claims |
| 5 | Intercompany Claims |
| 6 | Existing Equity Interests |
| 7 | Intercompany Interests |

**(d)     No Discrimination—Section 1123(a)(4).**

29.     The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**(e)     Adequate Means for Implementation—Section 1123(a)(5).**

30.     The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan, and in the exhibits to the Plan, provide in detail adequate and proper means for the Plan's implementation, including regarding: (a) the consummation of the Plan, including the wind-down and dissolution of the Debtors and the vesting of the assets in the Liquidation Trust or the GUC Trust, as applicable; (b) the sources of consideration for Plan distributions; (c) the appointment of the Liquidation Trustee and the GUC Trustee, as applicable; (d) the authorization for the Debtors and/or the Liquidation Trustee or the GUC Trustee, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (e) the settlement, satisfaction, and discharge of Claims and Interests as set forth in the Plan; (f) the good faith compromise and settlement of all claims or controversies; (g) the preservation and vesting of Retained Causes of Action with each respective Debtor or Liquidation Trust, as applicable; (h) the treatment of Executory Contracts and

Unexpired Leases; (i) the effectuation of documents and further transactions; and (j) the cancellation of existing securities and agreements.

### (f)      Non-Voting Equity Securities—Section 1123(a)(6).

31.      The Plan does not provide for the issuance of equity or other securities of the Debtors, including non-voting equity securities.  Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable.

### (g) Directors and Officers—Section 1123(a)(7).

32.      The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.O. of the Plan, as of the Effective Date, all directors, managers, members, and officers of the Debtors shall be discharged, and all such appointments rescinded for all purposes.  From and after the Effective Date, the Liquidation Trustee shall be authorized to act on behalf of the Estates, provided that the Liquidation Trustee shall have no duties other than as expressly set forth in the Liquidation Trust Agreement, the Plan, or the Confirmation Order, as applicable.

33.      The identity of the Liquidation Trustee, along with the nature of any compensation for such person or persons, is disclosed in the Plan Supplement.  The appointment of the Liquidation Trustee is consistent with the interests of creditors and with public policy.

34.      The identity of the GUC Trustee, along with the nature of any compensation for such person or persons, is also disclosed in the Plan Supplement.  The appointment of Burton Hastings Advisors LLC as the GUC Trustee is consistent with the interests of creditors and with public policy.

**(h)     Debtors Are Not Individuals—Section 1123(a)(8) and 1123(c).**

35.     The Debtors are not individuals.     Accordingly, the requirements of sections1123(a)(8) and 1123(c) of the Bankruptcy Code are inapplicable.

**(i)     Impairment / Unimpairment of Classes—Section 1123(b)(1).**

36.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

**(j)     Treatment of Executory Contracts and Unexpired Leases—Section 1123(b)(2).**

37.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases (other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date or assumed under the Plan, including but not limited to D&O Policies) not previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under section 365 of the Bankruptcy Code, nor that are the subject of a motion to assume that is pending on the Confirmation Date.  The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

**(k)     Settlement, Release, Exculpation, Injunction and Related Provisions, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

38.     In accordance with section 1123(b)(3) of the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and  controversies released, settled, compromised,

discharged, satisfied, or otherwise resolved pursuant to the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Article XI of the Plan because, as has been established here and based upon the record in these Chapter 11 Cases and the evidence proffered or adduced at or prior to the Combined Hearing, such provisions: are (a) made in exchange for good and valuable consideration; (b) are essential to the formulation and implementation of the Plan; (c) confer substantial benefits on the Debtors and their Estates; (d) are integral to and non-severable from the Plan; (e) are fair, equitable, and reasonable; and (f) are in the best interests of the Debtors, their Estates, creditors, and other parties in interest.

39.     **Debtor Release.** The releases of Claims and Causes of Action by the Debtors, as described in Article XI.A. of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release") represents a valid exercise of the Debtors' business judgment. The Debtor Release is integral to the Plan and was the result of extensive, arm's-length negotiations. The pursuit by the Debtors, their Estates, or the Liquidation Trustee, as applicable, of any such claims released by the Debtor Release is not in the best interests of the Estates because the costs involved would likely outweigh any potential benefit from pursuing such claims. Also, the Debtor Release is: (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released in Article XI.A. of the Plan; (c) given, and made, after due notice and opportunity for a hearing; and (d) a bar to the Debtors asserting a Claim or Cause of Action released by Article XI.A. of the Plan. Accordingly, the Debtor Release is fair, reasonable, supported by adequate consideration, in the best interest of the Estates, and appropriate under the facts and circumstances of these Chapter 11 Cases.

40.    **Third-Party Release.**   The release of Claims and Causes of Action by the Releasing Parties, as described in Article XI.B. of the Plan (the "Third-Party Release"), was consensually provided after due notice and an opportunity for a hearing and is an essential provision of the Plan.  The Third-Party Release is critical to the Plan and was a result of extensive arm's-length and good faith negotiations and mediation among parties.  It provides finality for the Debtors, the Liquidation Trustee, and the other Released Parties regarding the parties' respective obligations under the Plan and the transactions contemplated therein.

41.    Notice of the Third-Party Release was provided to all Holders of Claims and such notice was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. The Combined Hearing Notice was sent to Holders of Claims and published in *The Wall Street Journal*, and the *Los Angeles Times*, on February 26, 2026, and the ballots and notice, as applicable, sent to Holders of Claims unambiguously stated that the Plan contains the Third-Party Release and that each such Holder of Claims may elect not to grant such Third-Party Release.  The release provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, the ballots, and the notices.   The Third-Party Release provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary.

42.    Finally, notwithstanding anything to the contrary in the Plan, the Third-Party Release is a bar to any of the Releasing Parties' asserting any Claim or Cause of Action released pursuant to the Third-Party Release and consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable provisions of the Bankruptcy Code.  The Third-Party Release is limited to only those creditors who return a Ballot and do not make a Release Opt-Out Election, and each of

their Related Parties. Therefore, the Third-Party Release is reasonable, appropriate, and consistent with the provisions of the Bankruptcy Code and applicable law.

43. **Exculpation.** The exculpation provision described in Article XI.C. of the Plan (the "Exculpation") is necessary and appropriate to the Plan. The Exculpation is narrowly tailored to protect estate fiduciaries from inappropriate litigation and to exclude actions found to have constituted bad faith, fraud, willful misconduct, or gross negligence. The Exculpated Parties subject to the Exculpation have, and upon entry of this Confirmation Order, will be exculpated from any claim or Cause of Action related to, any act or omission in connection with, relating to, or arising out of the negotiation, solicitation, confirmation, execution, or implementation (to the extent on or prior to the Effective Date) of, as applicable, the Debtor Related Matters except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted bad faith, fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

44. **Injunction and Related Provision.** The injunction and related relief set forth in Article XI.D. of the Plan are essential to the Plan and necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation, each as set forth in Articles XI.A., XI.B., and XI.C. of the Plan, respectively.

45. **Retention of Retained Causes of Action.** The Retained Causes of Action set forth in the Plan Supplement were negotiated by sophisticated parties following extensive, arm's-length negotiations and mediation. The Retained Causes of Action are essential to the Plan and appropriate under the facts and circumstances of these Chapter 11 Cases.

46.    Pursuant to section 1123(b)(3) of the Bankruptcy Code, the releases, injunctions, and exculpations set forth in the Plan, as implemented by this Confirmation Order, are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and all Holders of Claims or Interests.  The record at the Combined Hearing and in these Chapter 11 Cases is sufficient to support the releases, injunctions, and exculpations provided for in Article XI of the Plan.  Accordingly, based upon the representations and arguments of counsel to the Debtors, the Declarations, the testimony either actually given or proffered at the Combined Hearing, any other evidence introduced at the Combined Hearing, and the full record of these Chapter 11 Cases, the Bankruptcy Court finds that the releases, injunctions, and exculpations set forth in Article XI of the Plan are consistent with the Bankruptcy Code and applicable law.

47.    Except as otherwise provided herein, as of the Effective Date, all releases, exculpations, and injunctions set forth in the Plan and this Confirmation Order shall be effective and binding on all persons.  The Plan and this Confirmation Order shall have *res judicata*, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and this Confirmation Order, including the release, injunction, and exculpation provisions contained in the Plan and this Confirmation Order. Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

### (l)    Treatment of Rights of Holders of Claims—1123(b)(5)

48.    The Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.  Article III of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders of Claims, as permitted by section 1123(b)(5) of the Bankruptcy Code.

**(m)    Additional Plan Provisions—Section 1123(b)(6).**

49.    The other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**T.    Debtors Comply with Bankruptcy Code Requirements—Section 1129(a)(2).**

50.    The Debtors complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, the Debtors:

    a.  are eligible debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code; and

    b.  complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages and the Notice of Non-Voting Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**U.    Plan Proposed in Good Faith—Section 1129(a)(3).**

51.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Sale Transactions, the Plan itself, and the process leading to confirmation of the Plan, including the support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  These Chapter 11 Cases were filed with the legitimate purpose of allowing the Debtors to sell their assets to maximize the benefit for all parties in interest. The Plan and all other contemplated actions and transactions further serves this purpose and maximizes value of the Estates and the recoveries to Holders of Claims and Interests.

**V.      Payment for Services or for Costs and Expenses—Section 1129(a)(4).**

52.      The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**W.     Directors, Officers, and Insiders—Section 1129(a)(5).**

53.      Because the Plan provides for the discharge of all directors, managers, members, and officers of the Debtors, section 1129(a)(5) of the Bankruptcy Code does not apply to the Debtors.  To the extent section 1129(a)(5) applies to either the Liquidation Trustee or the GUC Trustee, they have satisfied the requirements of this provision by, among other things, disclosing the identity and compensation of the Liquidation Trustee and the GUC Trustee.

**X.      No Rate Change—Section 1129(a)(6).**

54.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**Y.      Best Interest of the Creditors—Section 1129(a)(7).**

55.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis filed at Docket No. 439 and included in the Disclosure Statement, and any other evidence related thereto in support of the Plan that was proffered or adduced in the Declarations or at, prior to, or in connection with the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover more under the Plan on account of such Claim or Interest,

as of the Effective Date, than such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**Z.      Acceptance by Certain Classes—Section 1129(a)(8).**

56.      Classes 1, 2, and 3A are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 3B and 4 are Impaired under the Plan and both Classes have voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code. Nevertheless, because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek confirmation of the Plan under section 1129(b) rather than section 1129(a)(8) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**AA.     Treatment of Claims Entitled to Priority under Section 507(a)—1129(a)(9).**

57.      The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code. The treatment of Allowed Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan and of Other Secured Claims and Other Priority Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with the treatment required by section 1129(a)(9) of the Bankruptcy Code for each of the various claims specified in sections 507(a)(1)–(8) of the Bankruptcy Code.

**BB.     Acceptance by at Least One Impaired Class—Section 1129(a)(10).**

58.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced in the Voting Declaration, Classes 3B and 4 voted to accept the Plan by the requisite

numbers and amounts of Claims specified under section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**CC.     Feasibility—Section 1129(a)(11).**

59.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; (d) establishes that the Plan may be implemented and has a reasonable likelihood of success; (e) establishes that the Debtors, Liquidation Trust, or the GUC Trust, as applicable, will have sufficient funds available to meet their obligations under the Plan; and (f) establishes that the Liquidation Trust and the GUC Trust will have the financial wherewithal to satisfy their obligations following the Effective Date.

**DD.     Payment of Statutory Fees—Section 1129(a)(12).**

60.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.F. of the Plan provides for the payment of all fees and charges assessed against the Estates under 28 U.S.C. § 1930, and that such fees due and owing to the U.S. Trustee shall be paid on the Effective Date and shall be paid after the Effective Date if and when due and payable until these Chapter 11 Cases are closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**EE.    Continuation of Employee Benefits—Section 1129(a)(13).**

61.    The Debtors do not have any obligation to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).    Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

**FF.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

62.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.    The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**GG.    "Cram Down" Requirements—Section 1129(b).**

63.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.    All Classes eligible to vote have voted to accept the Plan.    Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.    *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.    *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes.    The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.    Accordingly, the Plan is fair and equitable toward all Holders of Claims and Interests in the Deemed Rejecting Classes.    *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.    Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**HH.    Only One Plan—Section 1129(c).**

64.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in these Chapter 11 Cases.

**II.    Principal Purpose of the Plan—Section 1129(d).**

65.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit or any other entity has thus far lodged an objection to the Plan on these grounds.

**JJ.    No Small Business Case—Section 1129(e).**

66.    These Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code does not apply.

**KK.    Good Faith Solicitation—Section 1125(e).**

67.    The Debtors acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all of their activities relating to support and consummation of the Plan, including the solicitation and receipt of acceptances of the Plan, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**LL.    Satisfaction of Conditions Precedent to the Effective Date.**

68.    Each of the conditions precedent to the Effective Date, as set forth in Article X of the Plan, has been or is reasonably likely to be satisfied or, as applicable, waived in accordance with Article X of the Plan.

**MM.  Implementation.**

69.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and

-26-

all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal, state, or local law. The Debtors, Liquidation Trustee, or the GUC Trustee, as applicable, are authorized to take any action reasonably necessary, advisable, or appropriate to consummate such agreements and the transactions contemplated thereby.

**NN.    Disclosure of All Material Facts.**

70.    The Debtors disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors, or the Liquidation Trustee, as applicable.

**OO.    D&O Policies.**

71.    The Debtors' D&O Policies will continue to remain in full force and effect upon entry of this Confirmation Order.

**PP.    Executory Contracts and Unexpired Leases.**

72.    The Debtors satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, and rejection of Executory Contracts and Unexpired Leases pursuant to the Plan. Under Article V of the Plan, as of the Effective Date, the Debtors shall be deemed to reject each Executory Contract to which they are parties without the need for any further notice to, action, order, or approval of the Bankruptcy Court, unless such Executory Contract was previously assumed, assumed and assigned, or rejected pursuant to an order of this Bankruptcy Court, assumed in the Plan Supplement, expired or terminated pursuant to its terms prior to the Confirmation Date, is assumed under the Plan, or is the subject of a motion to assume that is pending on the Confirmation Date.

73.     The Debtors provided sufficient evidence of adequate assurance of future performance for each of the Executory Contracts that are being assumed, or assumed and assigned, by the Debtors pursuant to the Plan.  Subject to the satisfaction of any applicable Cure claim as set forth in Article V of the Plan, each assumption and assignment or rejection of an Executory Contract or Unexpired Lease pursuant to this Confirmation Order and in accordance with Article V of the Plan, or otherwise by order of this Bankruptcy Court, shall be legal, valid, and binding upon the Debtors, the Liquidation Trustee, or the GUC Trustee, as applicable, and all non-Debtor persons or entities party to such Executory Contract or Unexpired Lease.

**QQ.     Satisfaction of Confirmation Requirements.**

74.     Based on the foregoing, the Declarations, and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

75.     **Approval of the Disclosure Statement**.  The Disclosure Statement is approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

76.     **Confirmation of the Plan.**  The Plan, attached hereto as Exhibit A, as and to the extent modified by this Confirmation Order, is approved and confirmed in its entirety pursuant to section 1129 of the Bankruptcy Code.  All Plan documents necessary for implementation of the Plan, including those in the Plan Supplement, are hereby approved and incorporated herein by reference as an integral part of this Confirmation Order.  The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document,

agreement, or exhibit does not impair the effectiveness of that article, section, or provision, it being the intent of this Confirmation Order that the Plan, the Plan Supplement, and any related document, agreement, or exhibit, are approved in their entirety.

77. **Findings of Fact and Conclusions of Law.** The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Combined Hearing in relation to confirmation of the Plan are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Combined Hearing and incorporated herein) constitutes an order of this Bankruptcy Court, it is adopted as such.

78. **Headings**. Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

79. **Objections**. All objections (including any reservations of rights contained therein) to the adequacy of the information contained in the Disclosure Statement or to approval of confirmation of the Plan that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or are not otherwise resolved as stated by the Debtors on the record of the Combined Hearing, are OVERRULED on the merits and in their entirety, and all withdrawn objections are deemed withdrawn with prejudice.

80.     **Immediate Binding Effect**.  Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, this Confirmation Order, and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidation Trustee, the GUC Trustee, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder is entitled to receive any distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

81.     Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Bankruptcy Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Liquidation Trustee, or the GUC Trustee, as applicable, and their respective successors and assigns.

82.     **Classification and Treatment.**  The Plan's classification scheme is approved.  The terms of the Plan shall govern the classification and treatment of Claims and Interests for purposes of the distributions to be made thereunder.

83.     **Subordination of Claims.**  The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each

Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidation Trustee (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

84.     **Insurance.**  Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

85.     **Vesting of the Assets.**  Except as otherwise provided in the Plan, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Liquidation Trust Assets shall vest in the Liquidation Trust and the GUC Trust Assets shall vest in the GUC Trust, in each case, free and clear of all Claims, Liens, encumbrances, charges, and other interests. Subject to the terms of the Plan, on or after the Effective Date, the Liquidation Trust may use, acquire, and dispose of any of the Liquidation Trust Assets, and may prosecute, compromise, or settle any Liquidation Trust Causes of Action, including the Retained Causes of Action, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

86.     **Plan Transactions.**  On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Liquidation Trustee shall be authorized to execute, deliver, file, or

record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtors, the Liquidation Trustee, the GUC Trustee, all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

87.    All matters expressly provided for under the Plan that would otherwise require approval of the interest owners, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such interest owners, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

88.    The approvals and authorizations set forth in this Confirmation Order are not intended to limit the authority of the Debtors or the Liquidation Trustee to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan, the Plan Supplement, the Liquidation Trust Agreement, the GUC Trust Agreement, or this Confirmation Order.

89.    **Government Approvals Not Required.**  Except if explicitly stated otherwise in the Plan or this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other

-32-

governmental authority with respect to the dissemination, implementation, or consummation of the Plan, the Plan Supplement, and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan, the Plan Supplement and the Disclosure Statement.

90.     **Cancellation of Existing Agreements and Interests.**  On the Effective Date, except for the purposes of evidencing a right to a distribution under the Plan and except as otherwise provided in the Plan or this Confirmation Order, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Liquidation Trustee.  The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

91.     **Retention of Retained Causes of Action.**  Notwithstanding anything to the contrary herein or in the Plan, the Retained Causes of Action, as set forth in the Plan Supplement, are preserved in accordance with section 1123(b) of the Bankruptcy Code.

92.     **Compromises and Settlements Under the Plan.**  Pursuant to Section 1123 of the Bankruptcy Code, the provisions of the Plan constitute a good faith compromise and settlement of all claims or controversies that are settled by the Plan, including implementation of the terms of the Committee Settlement.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best

interests of the Debtors and their Estates, and is fair, equitable and reasonable.  Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of claims and interests is being afforded pursuant to confirmation of the Plan by satisfying the requirements of Section 1129.

93.     **Section 1146 Exemption.**  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.  Such exemption specifically applies, without limitation, to the transfer of the (a) Liquidation Trust Assets to the Liquidation Trust and (b) the GUC Trust Assets to the GUC Trust.

94.     **Assumption and Rejection of Executory Contracts and Unexpired Leases.**  On the Effective Date, except as otherwise provided herein (which exclusion includes the D&O Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, or assumed in the Plan Supplement, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date or assumed under the Plan.

95.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or the Plan, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

96.     **Insurance Preservation.**   Nothing in the Plan, this Confirmation Order, the Liquidation Trust Agreement, or the GUC Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim. The Debtors shall be deemed to have assumed only the D&O Policies, and any Insurance Policy other than a D&O Policy shall be deemed terminated on the Effective Date.

97.     **Distributions.**   The procedures governing distributions contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or in this Confirmation Order, the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan, the Plan Supplement, or this Confirmation Order, as applicable.

98.    **Professional Compensation.**  All requests for payment of Professional Fee Claims by Retained Professionals (other than OCPs) for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals (other than OCPs) after notice and hearing in accordance with the procedures established by the Bankruptcy Court, except to the extent such procedures are inconsistent with the express terms herein.  Unless otherwise agreed to by the Debtors and the Retained Professional, the Liquidation Trustee shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve.

99.    All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Professional Fee Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors or Liquidation Trustee (as applicable) from the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed pursuant to the OCP Order.

100.    **Dissolution of Statutory Committee.**  On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with (a) applications for compensation and objections thereto and (b) any appeals of the Confirmation Order.  The Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, or

any member thereof, after the Effective Date, except in connection with (a) applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court, (b) objections to applications for payment of fees and expenses rendered prior to the Effective Date; and (c) appeals of the Confirmation Order.

101.    **Compliance with Tax Requirements.**  In connection with the Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a distribution under the Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipients for all purposes of the Plan.

102.    Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Liquidation Trustee the appropriate IRS Form or other tax forms or documentation requested by the Liquidation Trustee to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any

such request for a ninety (90) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Liquidation Trustee or the GUC Trustee, as applicable, and any Claim in respect of such distribution under the Plan shall be discharged and forever barred from assertion against such Debtor, the Liquidation Trustee or the GUC Trustee, as applicable, or their respective property.

103.    Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution, and further including, in the case of a Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Liquidation Trust Assets or the Liquidation Trust, or the GUC Trust Assets or the GUC Trust, as applicable, in connection with such Plan Distribution.

104.    **Procedures for Resolving Disputed or Unliquidated Claims.**  The procedures governing resolution of unliquidated or disputed claims contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.  As set forth therein, on or after the Effective Date, the Liquidation Trustee shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

105.    **Claims Register.**  Any Claim that has been paid or satisfied, or assumed by the Purchaser in any Sale, or any Claim that has been amended or superseded, may be adjusted or

-38-

expunged on the official register of Claims in these Chapter 11 Cases (the "Claims Register") by the Debtors or the Liquidation Trustee (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket in the Bankruptcy Court of such adjustment or expungement.   Verita is directed to adjust or expunge such Claims in the Claims Register, as applicable.

106.    **Waiver or Estoppel.**  Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as an Other Secured Claim, or not subordinated, by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Plan Supplements, the Disclosure Statement, or other papers filed with the Bankruptcy Court or evidenced by a written instrument acknowledged by the Debtors or their counsel before the Confirmation Date.

107.    **Debtor Release, Third-Party Release, Exculpation, Injunction, and Related Provisions under the Plan.**  The discharge, releases, injunctions, exculpations, and related provisions set forth in Article XI of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party.

108.    **Term of Injunctions or Stays.**  Except as otherwise provided in the Plan or this Confirmation Order, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under the Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during these Chapter 11 Cases under sections 105 or

362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that these Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that these Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

109. **Warner Bros. Provision**.[3] Notwithstanding the terms of this Confirmation Order, the Plan, the Plan Supplements (including, but not limited to, the Liquidation Trust Agreement and GUC Trust Agreement), the Disclosure Statement, the Disclosure Statement Motion, and, with respect to any of the foregoing, any applicable exhibits thereto or hereto, or any actions authorized hereby:

(a) Warner Bros. Entertainment Inc. and its affiliates (collectively, "Warner Bros.") shall have an Allowed Claim against the applicable Library Debtors' Estates in the amount of $57,045,675.23 (the "Final Award"), in full and final satisfaction of all remaining claims of Warner Bros. against the Debtors' Estates (including any right of Warner Bros. or the Debtors to appeal the Final Award or any related rulings by the Arbitration Panel in the Matrix Arbitration), which Final Award shall be paid from the Warner Bros. Reserve on or before May 6, 2026 without further Court order;

(b) the Final Award is net of any and all claims, setoffs and recoupments against Warner Bros. by the Debtors' Estates, all of which are resolved by the payment of the Final Award;

---

[3] Unless stated otherwise herein, capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to them in the Plan, which such Plan (as that term is used herein) includes the Plan as may be thereafter or hereafter amended. "Matrix Arbitration" shall have the meaning ascribed to it in the Library Assets Sale Order. "Arbitration Panel" shall have the meaning ascribed to it in the Order Approving Stipulation [Docket No. 545] (the "Lift Stay Order"). "Wonka Dispute" shall have the meaning ascribed to it in the Derivative Rights Sale Order. "Warner Bros. Assumption and Assignment Procedures," "Warner Bros. Contracts Schedule," and "Warner Bros. Supplemental Cure Notice" shall have the meanings ascribed to them in the Bid Procedures Order.

(c)     the Debtors and Warner Bros. shall voluntarily dismiss the action captioned *Village Roadshow Films (BVI) Limited, et al.*, v. *Warner Bros. Entertainment Inc., et al.*, No. 22STCV04606 (L.A. Cnty. Super. Ct.) (the "California Superior Court Action"), with prejudice with respect to claims related to Matrix IV/The Matrix Resurrections, and without prejudice with respect to claims related to the Wonka Dispute;

(d)     solely in the event that payment of the Final Award is not timely made on or before May 6, 2026, Warner Bros. reserves all rights to confirm the Final Award and enforce the resulting judgment, plus interest accruing from the date of the award, in any court of competent jurisdiction, including the California Superior Court or the Bankruptcy Court; *provided*, *however*, that, solely in the event that payment of the Final Award is not timely made on or before May 6, 2026, (i) the Debtors reserve all rights to object to the imposition of interest and to assert that Warner Bros. may seek post-judgment interest only from the Bankruptcy Court, and (ii) both parties reserve their respective rights to make any arguments with respect thereto;

(e)     all prior orders of the Court related to the Warner Bros.' remaining claims against the Debtors' Estates (the "Warner Orders")[4] shall remain in effect with respect to such claims unless and until the Final Award has been paid (plus interest awarded pursuant to subpart (d) hereof if any);

(f)     the scope and terms of any Warner Bros. contracts assumed and assigned to Alcon Media Group, LLC (or any of its designees) shall remain consistent with the Warner Bros. Assumption and Assignment Procedures, any Warner Bros. Contracts Schedule and Warner Bros. Supplemental Cure Notice, the Sale Orders, the order approving the Library Assets sale supplement [Docket No. 1231], and the Scheduling Order [Docket No. 800]. For the avoidance of doubt, no Warner Bros. contract identified for assumption and assignment on and subject to any of the foregoing shall be deemed rejected pursuant to the Plan; instead, all such Warner Bros. contracts have been assumed and assigned to Alcon in connection with the Sale Transactions. For the further avoidance of doubt, the Liquidation Trust will not take assignment or possession of, and will not have any obligations or liabilities with respect to, any contracts between the Debtors and Warner Bros.

(g)     Warner Bros. reserves all rights related to any assumed and assigned contracts under the Sales Orders against the respective Buyers, their assignees, designees and successors, including without limitation, with respect to the Wonka Dispute;

(h)     nothing herein shall impose any Third-Party Release on Warner Bros.;

---

4       The Warner Orders include the following: DIP Order [Docket No. 280], Lift Stay Order, Library Assets Sale Order, Derivative Rights Sale Order, Studio Assets Sale Order [Docket No. 782], and the Disclosure Statement Order.

(i)    except with respect to the Debtors upon payment of the Final Award, neither Warner Bros. nor any of its Related Parties constitute Releasing Parties under the Plan; and

(j)    the Injunction provision set forth in Article XI.D of the Plan does not operate as an injunction against property purchased pursuant to any Sale Order.

110.    **Class 3A K&E Claim**. In accordance with Claim Nos.  19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 44, 45, 47, 48, 49, 63, 64, 65, 66, 67, 68, 71, 85, and 87, Kirkland & Ellis LLP holds general unsecured claims against certain Debtors in the amount of $11,683,086.88 (collectively, the "K&E Claim").  Pursuant to this Order, the K&E Claim shall be deemed an Allowed Class 3A Library Debtors General Unsecured Claim in the amount of $11,683,086.88 (the "Allowed Class 3A K&E Claim"). The Allowed Class 3A K&E Claim shall be unimpaired and promptly paid in full, no later than five (5) Business Days following the Effective Date, first from the Library Reserve, and second, to the extent the Library Reserve is insufficient, from Cash on hand as of the Effective Date; *provided* that, if the Allowed Class 3A K&E Claim is satisfied in whole or in part by Cash on hand, the Debtors will apply Cash on hand to fully satisfy the Allowed Class 3A K&E Claim before using Cash for any other purpose contemplated by the Plan.   For the avoidance of doubt, payment in full of the Allowed Class 3A K&E Claim shall be in full and final satisfaction of the K&E Claim.

111.    **Nonseverability of Plan Provisions.**  Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Liquidation Trustee (as applicable); and (3) nonseverable and mutually dependent.

112.    **Preservation of Books and Records.**  On the Effective Date, the Debtors and, unless otherwise set forth in the applicable Sale Order or Asset Purchase Agreement, a Purchaser

-42-

shall provide the Liquidation Trustee with timely access to all of the books and records of the Debtors in the Debtors' possession as of the Petition Date and the Effective Date.  The Debtors shall also instruct any third parties, including, unless otherwise set forth in the applicable Sale Order or Asset Purchase Agreement, a Purchaser, or professionals possessing such books and records (including computer generated or computer maintained books, records, and data) to permit access to such books and records as may be reasonably requested by the Liquidation Trustee, and each such party shall be directed not to dispose of or destroy any such books and records until such time as authorized in writing by the Liquidation Trustee or further order of the Bankruptcy Court.

113.    **Notice of Subsequent Pleadings.**  Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date is required to be served upon only the following parties: (a) the U.S. Trustee; (b) any party known to be directly affected by the relief sought by such pleadings; and (c) any party that filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  Verita shall not be required to file updated service lists.

114.    **U.S. Trustee Statutory Fees.**  All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable (the "Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Liquidation Trust shall be liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Liquidation Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  The Liquidation Trust shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee on account of each

Debtor's Chapter 11 Case, and such fees shall be paid exclusively from the Liquidation Trust Assets, until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Proof of Claim for an Administrative Claim in the Chapter 11 Cases, and shall not be treated as providing any release under the Plan.

115.    **Post-Confirmation Modifications.**   Following the entry of this Confirmation Order, the Debtors, upon order of the Bankruptcy Court, may amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

116.    **Governing Law.**   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

117.    **Applicable Non-Bankruptcy Law.**   The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

118.    **Notice of Effective Date.**   The Debtors or the Liquidation Trustee, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and

-44-

of applicable deadlines (the "Notice of Effective Date") (substantially in the form attached hereto as Exhibit B) in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with the Combined Hearing Notice within seven (7) Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

119. The Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

120. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

121. **Effect of Conflict.** This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

122. **Final, Appealable Order.** Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, and any applicable Bankruptcy Rules or Local Rules, for good cause shown, the stay of this

Confirmation Order is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

123. **Retention of Jurisdiction.**  The Bankruptcy Court may properly, and upon the Effective Date shall, to the fullest extent set forth in the Plan, retain jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases, the Sale, the Sale Documents, the Confirmation Order, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code.

**EXHIBIT A**

**Plan**