**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered) |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF**
**APPROVAL OF THE DISCLOSURE STATEMENT ON A FINAL**
**BASIS AND CONFIRMATION OF THE JOINT PLAN OF LIQUIDATION OF**
**VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC. AND ITS DEBTOR**
<u>**AFFILIATES AND OMNIBUS REPLY TO OBJECTIONS TO CONFIRMATION**</u>

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Brynna M. Gaffney (Del. Bar No. 7402)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:      (302) 571-6600
Facsimile:      (302) 571-1253
Email:      jmulvihill@ycst.com
      bgaffney@ycst.com


*Co-Counsel to the Debtors and Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Telephone:      (312) 499-6300
Facsimile:      (312) 499-6301
Email:      jbernbrock@sheppardmullin.com
      mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:      (310) 228-3700
Facsimile:      (310) 228-3701
Email:      jnassiri@sheppardmullin.com

---

[1]    The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343.  The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

-and-

Alyssa Paddock (admitted pro hac vice)
30 Rockefeller Plaza
New York, NY 10112
Telephone:     (212) 653-8700
Facsimile:     (212) 653-8701
Email:          apaddock@sheppardmullin.com

*Counsel to the Debtors and Debtors in Possession*

-ii-

**Table of Contents**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    Case Background and Objections .............................................................................. 4

    A.  Procedural History ............................................................................................. 4

    B.  Plan Solicitation and Notification Process......................................................... 7

    C.  Confirmation Objections.................................................................................... 9

II.    The Disclosure Statement Should Be Approved on a Final Basis................................... 9

The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code........................... 12

    A.  The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ....................... 12

        1.  The Plan Properly Classifies Creditor's Claims Under Section 1122 of the Bankruptcy Code ......................................................................................... 13

        2.  The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code................................................................................... 15

        3.  The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code................................................................................... 18

    B.  The Plan Complies with Section 1123(d) of the Bankruptcy Code........................... 30

    C.  The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code ....................... 30

        1.  The Debtors Complied with Section 1125 of the Bankruptcy Code ................. 31

        2.  The Debtors Complied with Section 1126 of the Bankruptcy Code ................. 32

    D.  The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code ................................................................... 33

    E.  The Plan Provides that the Payment of Debtors' Professional Fees and Expenses Are Subject to Court Order in Compliance with Section 1129(a)(4) .............................. 34

    F.  The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, or Insiders and Therefore Complies with Section 1129(a)(5) .......................... 35

    G.  The Plan Does Not Require Governmental Regulatory Approval and Therefore Complies with Section 1129(a)(6) .................................................................... 36

    H.  The Plan Is in the Best Interest of Creditors and Therefore Complies with Section 1129(a)(7) ................................................................................................. 36

    I.  The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code ................................................................... 38

    J.  The Plan Provides for Payment in Full of All Allowed Priority Claims in Compliance with Section 1129(a)(9) of the Bankruptcy Code......................................... 38

    K.  At Least One Class of Impaired, Non-Insider Claims Accepted the Plan in Compliance with Section 1129(a)(10) of the Bankruptcy Code...................................... 40

L.  The Plan Is Feasible in Compliance with Section 1129(a)(11) of the Bankruptcy Code ......................................................................................................................... 40

M.  All Statutory Fees Have or Will Be Paid in Compliance with Section 1129(a)(12) .. 43

N.  The Debtors Have No Retiree Benefit Obligations (Section 1129(a)(13)) ................. 43

O.  Sections 1129(a)(14), (a)(15) and (a)(16) Do Not Apply to the Plan ........................ 43

P.  The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code .......................................................................................................... 44

    1.  The Plan is Fair and Equitable and Thus Satisfies Section 1129(b)(2)(B) of the Bankruptcy Code ................................................................................. 45

    2.  The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan in Accordance with Section 1129(b)(1) of the Bankruptcy Code ................................................. 46

Q.  The Debtors Complied with Sections 1129(d) and (e) of the Bankruptcy Code ........ 47

R.  Modifications to the Plan ............................................................................................. 47

S.  Good Cause Exists to Waive the Stay of the Proposed Confirmation Order .............. 49

III.  Objections to Confirmation of the Plan Should Be Overruled ........................................ 49

A.  The UST Objection. ..................................................................................................... 49

B.  The Warner Objection. ................................................................................................. 53

C.  The Guilds Objection. .................................................................................................. 53

D.  The GOAT Media Response. ........................................................................................ 54

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) .................................................................................................36

*Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*,
201 B.R. 376 (E.D. Pa. 1996) ..................................................................................47

*Boston Post Road Ltd. P'ship v. F.D.I.C. (In re Boston Post Road Ltd. P'ship)*,
21 F.3d 477 (2nd Cir. 1994) .....................................................................................13

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
860 F.2d 94 (3d Cir. 1988) .........................................................................................9

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
699 F.2d 599 (2d Cir. 1983) .....................................................................................20

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*,
116 F.3d 790 (5th Cir. 1997) ..............................................................................33, 34

*First Am. Bank of N.Y. v. Century Glove, Inc.*,
81 B.R. 274 (D. Del. 1988) .......................................................................................10

*Harrington v. Purdue Pharma, L.P., et al. (In re Purdue Pharma L.P.)*,
144 S. Ct. 2071 (2024) ..............................................................................................26

*In re 203 N. LaSalle St. Ltd. P'ship.*,
190 B.R. 567 (Bankr. N.D. Ill. 1995) .......................................................................45

*In re Abeinsa Holding, Inc.*,
562 B.R. 265 (Bankr. D. Del. 2016) .........................................................................21

*In re Adelphia Communications Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................13, 36

*In re Aleris Int'l, Inc.*,
No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010) ...............31

*In re Am. Cap. Equip., LLC*,
688 F.3d 145 (3d Cir. 2012) .....................................................................................41

*In re Ambanc La Mesa L.P.*,
115 F.3d 650 (9th Cir. 1997) ........................................................................................44, 46

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006) ........................................................................................12, 13

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) ........................................................................ 45, 46

*In re Barakat*,
99 F.3d 1520 (9th Cir. 1996) ............................................................................................13

*In re Blackhawk Mining LLC*,
No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019) ......................................................24, 25

*In re Burns & Roe Enters., Inc.*,
No. 08-4191 (GEB), 2009 WL 438694 (D. N.J. Feb. 23, 2009) ............................................47

*In re Capmark Fin. Grp. Inc.*,
No. 09-13684 (CSS), 2011 WL 6013718 (Bankr. D. Del. Oct. 5, 2011) ................................41

*In re Century Glove, Inc.*,
Civ. A. Nos. 90-400 and 90-401, 1993 WL 239489 (D. Del. Feb. 10, 1993) .............33, 34, 36

*In re Chapel Gate Apartments, Ltd.*,
64 B.R. 569 (Bankr. N.D. Tex. 1986)......................................................................................34

*In re Checkout Holding Corp.*,
No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) ......................................................24, 25

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ........................................................................20, 46

*In re Dex One Corp.*,
No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013)..............................................................49

*In re: ECE Wind-down LLC*,
No. 22-10320 (JTD) (Dec. 21, 2022) Dkt. No. 520................................................................13

*In re Enron Corp.*,
326 B.R. 497 (S.D.N.Y. 2005)................................................................................................28

*In re Exaeris, Inc.*,
380 B.R. 741 (Bankr. D. Del. 2008) ......................................................................................20

*In re FAH Liquidating Corp.*,
No. 13-13087 (KG) (Bankr. D. Del. July 28, 2014) ..............................................................27

*In re Federal–Mogul Global Inc.*,
2007 Bankr. LEXIS 3940 (Bankr. D. Del. 2007) ................................................................47

*In re Finlay Enters., Inc.*,
No. 09-14873 JMP, 2010 WL 6580628 (Bankr. S.D.N.Y. June 29, 2010) ...........................41

*In re Flintkote Co.*,
486 B.R. 99 (Bankr. D. Del. 2012) ................................................................................40, 41

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ...............................................................................45

*In re Future Energy Corp.*,
83 B.R. 470 (Bankr. S.D. Ohio 1988*)*................................................................................34

*In re Gatehouse Media, Inc.*,
No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) ...........................................................49

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) ......................................................................................12

*In re Geokinetics Inc.*,
No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) ...........................................................49

*In re Global Safety Textiles Holdings LLC*,
No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009).............................47

*In re GSE Envtl., Inc.*,
No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) ..........................................................49

*In re Heritage Highgate, Inc.*,
679 F.3d 132 (3d Cir. 2012)...................................................................................................41

*In re Heritage Org., L.L.C.*,
375 B.R. 230 (Bankr. N.D. Tex. Aug. 31, 2007) ..................................................................42

*In re Horsehead Holding Corp.*,
No. 16-10287 (CSS) (Bankr. D. Del. Sep. 9, 2016) ..............................................................25

*In re Hyatt*,
509 B.R. 707 (Bankr. D.N.M. 2014) .....................................................................................13

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ..........................................................................21, 22, 25

*In re Insys Therapeutics, Inc., et al.*,
No. 19-11292 (KG) (Bankr. D. Del. Dec. 4, 2019) ..............................................................13

*In re Integrated Resources, Inc.*,
 147 B.R. 650 (S.D.N.Y. 1992)........................................................................30

*In re Invitae,*
 No. 24-11363 (MBK) (Bankr. D.N.J. Aug. 2, 2024) ............................................25

*In re Jersey City Med. Ctr.*,
 817 F.2d 1055 (3d Cir. 1987)........................................................................13

*In re Johns-Manville Corp.*,
 68 B.R. 618 (Bankr. S.D.N.Y. 1986)................................................................46

*In re Kreider*,
 No. 05-15018 (ELF), 2006 WL 3068834 (Bankr. E.D. Pa. Sept. 27, 2006) ...........41

*In re Laboratory Partners, Inc.*,
 No. 13-12769 (PJW) (Bankr. D. Del. July 10, 2014) .........................................27

*In re Lapworth*,
 No. 97-34529 (DWS), 1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998).............31

*In re Lason, Inc.*,
 300 B.R. 227 (Bankr. D. Del. 2003) ...............................................................37

*In re Lernout & Hauspie Speech Prods., N.V.*,
 301 B.R. 651 (Bankr. D. Del. 2003) ...............................................................46

*In re Lisanti Foods, Inc.*,
 329 B.R. 491 (D.N.J. 2005) ....................................................................10, 34

*In re Mallinckrodt PLC*,
 639 B.R. 837 (Bankr. D. Del. 2022) ..........................................................13, 26

*In re Masten Space Systems, Inc.*,
 No. 22-10657 (BLS) (Nov. 9, 2022)................................................................13

*In re Master Mortg. Inv. Fund, Inc.*,
 168 B.R. 930 (Bankr. W.D. Mo. 1994)............................................................21

*In re Metrocraft Pub. Serv., Inc.*,
 39 B.R. 567 (Bankr. N.D. Ga. 1984) ..............................................................11

*In re Millennium Lab Holdings II, LLC.*,
 945 F.3d 126 (3d Cir. 2019)..........................................................................26

*In re Monnier Bros.*,
 755 F.2d 1336 (8th Cir. 1985) .........................................................................9

*In re NII Holdings, Inc.*,
    288 B.R. 356 (Bankr. D. Del. 2002) ........................................................................33

*In re Nutritional Sourcing Corp.*,
    398 B.R. 816 (Bankr. D. Del. 2008) ........................................................................12

*In re One Aviation Corp.*,
    No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) ........................................24, 25

*In re PC Liquidation Corp.*,
    383 B.R. 856 (E.D.N.Y. 2008) ................................................................................ 10

*In re Phoenix Petroleum, Co.*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001) ........................................................... 9, 10, 11

*In re Physiotherapy Holdings, Inc.*,
    No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) ...............................................49

*In re Premier Int'l Holdings, Inc.*,
    No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) ...............28

*In re Prussia Assocs.*,
    322 B.R. 572 (Bankr. E.D. Pa. 2005) ......................................................................41

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000).............................................................................28, 33

*In re River Village Assoc.*,
    181 B.R. 795 (E.D. Pa. 1995) ................................................................................. 10

*In re S&W Enter.*,
    37 B.R. 153 (Bankr. N.D. Ill. 1984) .......................................................................12

*In re Samson Resources Corp.*,
    No. 14-11934 (CSS) (Bankr. D.Del. Feb. 13, 2017) .........................................24, 25

*In re Scioto Valley Mortg. Co.*,
    88 B.R. 168 (Bankr. S.D. Ohio 1988) .................................................................... 11

*In re Sea Garden Motel & Apartments*,
    195 B.R. 294 (D. N.J. 1996) ...................................................................................41

*In re Smallhold, Inc.*,
    No. 24-10267 (CTG) (Bankr. D. Del. Sept. 25, 2024) [Docket No. 288] ............ 26

*In re Source Home Entm't, LLC*,
    No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015)................................................49

*In re Spansion*, Inc.
No. 09-12019 (CSS), 2010 WL 2905001 (Bankr. D. Del. April 16, 2010)............................28

*In re Spansion, Inc.*,
426 B.R. 114 (Bankr. D. Del. 2010) ............................................................................20, 25

*In re TK Holdings Inc.*,
No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) ..................................................24, 25

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del. 2011) ....................................................................................41

*In re Unichem Corp.*,
72 B.R. 95 (Bankr. N.D. Ill. 1987) .........................................................................................9

*In re U.S. Brass Corp.*,
194 B.R. 420 (Bankr. E.D. Tex. 1996) .................................................................................11

*In re U.S. Truck Co.*,
47 B.R. 932 (E.D. Mich. 1985)............................................................................................41

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012)............................................................................................34, 41

*In re W.R. Grace & Co.*,
729 F.3d 311 (3d Cir. 2013).................................................................................................13

*In re Wash. Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) .............................................................................. *passim*

*In re World Health Alts., Inc.*,
344 B.R. 291 (Bankr. D. Del. 2006) ....................................................................................20

*In re Zenith Elecs. Corp.*,
241 B.R. 92 (Bankr. D. Del. 1999) ......................................................................................21

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154 (3d Cir. 1993)...........................................................................................13, 44

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988)................................................................................................40

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
25 F.3d 1132 (2d Cir. 1994)................................................................................................31

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988)................................................................................................10

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),*
   761 F.2d 1374 (9th Cir. 1985) ........................................................................41

*United States v. Energy Res.,*
   495 U.S. 545 (1990) ......................................................................................41

*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.),*
   844 F.2d 1142 (5th Cir. 1988) ........................................................................10

**Statutes**

11 U.S.C. § 101(31) ............................................................................................35

11 U.S.C. § 365 ....................................................................................18, 30, 48

11 U.S.C. § 503 ....................................................................................................38

11 U.S.C. § 507 ........................................................................................38, 39, 39

11 U.S.C. § 1114 ..................................................................................................43

11 U.S.C. § 1122 ......................................................................................... *passim*

11 U.S.C. § 1123 ......................................................................................... *passim*

11 U.S.C. § 1125 ......................................................................................... *passim*

11 U.S.C. § 1126 ......................................................................................... *passim*

11 U.S.C. § 1127 ........................................................................................47, 48

11 U.S.C. § 1129 ......................................................................................... *passim*

**Other Authorities**

Bankruptcy Rule 3017 ........................................................................................31

Bankruptcy Rule 3018 ........................................................................................31

Bankruptcy Rule 3019 ..................................................................................47, 48

Bankruptcy Rule 3020 ........................................................................................48

Bankruptcy Rule 6004 ........................................................................................48

Bankruptcy Rule 6006 ........................................................................................48

Bankruptcy Rule 9019 ........................................................................................20

Village Roadshow Entertainment Group USA Inc., along with its debtor affiliates, as debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (these "Chapter 11 Cases"), submit this memorandum of law (this "Memorandum") in support of confirmation of the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1378] (as modified, amended, or supplemented from time to time hereafter, the "Plan"),[2] and in response to the objections thereto. As demonstrated below, the Plan satisfies the requirements of sections 1125 and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code")[3] and should be confirmed. In support of confirmation of the Plan and in response to the Objections (as defined below), the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors' Plan comes at the culmination of an orderly and efficient chapter 11 process that saw the Debtors sell substantially all of their assets in three separate transactions following a robust marketing and sale process, thereby maximizing estate value for the benefit of creditors. The Plan is supported by the Debtors' major constituencies, and has been unanimously accepted by all Classes entitled to vote. For the reasons stated herein and in the Declarations (as defined below), the Debtors respectfully request the Court approve the Disclosure Statement on a final basis, confirm the Plan, and enter the Proposed Confirmation Order (as defined below).

2. Following extensive negotiations with the Committee (as defined below), the Debtors stand poised to confirm a value-maximizing Plan. The Plan reflects compromises by

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Proposed Confirmation Order (as defined herein), as applicable.

[3]    Additional information regarding the Debtors' businesses, capital structures and circumstances preceding the Petition Date may be found in the *Declaration of Keith Maib in Support of First Day Relief* [Docket No. 2] (the "First Day Declaration"). On March 17, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 27, 2025, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed, pursuant to section 1102 of the Bankruptcy Code, an official committee of unsecured creditors (the "Committee") [Docket No. 103]. No trustee or examiner has been appointed in these Chapter 11 Cases.

numerous parties in interest and, if confirmed, will facilitate, among other things: (a) the orderly and expedient distribution of the Debtors' assets to creditors; (b) the incorporation of the Debtors' settlement with the Committee and creation of the GUC Trust; and (c) the wind-down and dissolution of the Debtors' Estates by the Liquidation Trust (as defined below).  In addition, as detailed more fully below, the Plan and the Proposed Confirmation Order will effectuate an efficient and final resolution of Warner Bros.' claims against the Debtors.

3. There were four objections and reservations of rights filed in response to the Plan, which include (1) the *Limited Objection and Reservation of Rights of Directors Guild of America, Inc., Screen Actors Guild – American Federation of Television and Radio Artists, Writers Guild of America, West, Inc., Picture Industry Pension and Health Plans to the Confirmation of the Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates and Third-Party Releases Contained Therein* [Docket No. 1500] (the "Guilds Objection"); (2) the *Warner Bros. Entertainment Inc. and its Affiliates' Response to Confirmation of the Joint Plan of Liquidation of Village Roadshow Entertainment USA Inc. and its Debtor Affiliates* [Docket No. 1503] (the "Warner Response"); (3) the *Supplemental Statement of the G.O.A.T. Media, LLC Regarding Claim Status, Reserve Treatment, and Request for Clarification in Connection with Plan Confirmation* [Docket No. 1507] (the "GOAT Media Response"); and (4) the *United States Trustee's Objection to Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1519] (the "UST Objection", and, together with the Guilds Objection, the Warner Objection, and the G.O.A.T. Objection, the "Objections").  For the reasons stated herein and in the Declarations (as defined below), the Debtors ask this Court to overrule the Objections in their entirety and enter the proposed order confirming the Plan (the "Proposed Confirmation Order").

## ARGUMENT

4. This Memorandum is divided into three parts.  Part I sets forth the procedural history of these Chapter 11 Cases, including the Plan, the Disclosure Statement (as defined below),

the Debtors' solicitation efforts and voting results, and a brief summary of the various Objections filed in response to the Plan.  Part II establishes the Plan's compliance with the applicable confirmation requirements and demonstrates that certain discretionary aspects of the Plan, including the Plan's release provisions, are appropriate and should be approved.  Part III provides the legal basis pursuant to which the Objections to the Plan should be overruled.

5.     In further support of confirmation, the Debtors submit the following declarations filed contemporaneously herewith (collectively, the "Declarations"):

a.     the *Declaration of Leanne V. Rehder Scott with Respect to the Tabulation of Votes on the Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* (the "Voting Declaration"); and

b.     the *Declaration of Keith Maib in Support of Approval of the Disclosure Statement on a Final Basis and Confirmation of the Joint Plan of Liquidation Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* (the "Maib Declaration").

6.     Finally, the Debtors hereby incorporate by reference as though fully set forth herein the arguments raised in the *Debtors' Omnibus Reply in Support of the Debtors' Motion for Entry of Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing, (III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures, (V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief* [Docket No. 1356] (the "Conditional DS Reply").

7.     For the reasons stated herein and considering the evidentiary support offered in the Declarations, and to be further offered at the Confirmation Hearing, the Debtors respectfully request that the Court find that the Debtors have satisfied their burden under the Bankruptcy Code and confirm the Plan.

## I.    Case Background and Objections

**A.    Procedural History**

8.    Since the Petition Date, the Debtors engaged in a value maximizing sale process for the benefit of all of the Debtors' stakeholders, as discussed further below.  *First*, the Debtors conducted an auction and closed three separate sales of substantially all of the Debtors' assets, with an aggregate purchase price of approximately $440 million.  *Second*, the Debtors engaged in a negotiation with the Committee resulting in the entry of the Committee Settlement, which resolved all disputes between the Debtors and the Committee regarding proposed recovery and confirmation of the Plan.

9.    On March 17, 2025, *Debtors' Motion for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Authorizing the Debtors' Entry into the Stalking Horse APA and Approving Bid Protections Thereunder, (C) Scheduling an Auction for, and Hearing to Approve, Sale of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (E) Approving Assumption and Assignment Procedures; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances, and (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 11], which was approved in part by order dated April 22, 2025 [Docket No. 240] (the "Sale Motion").

10.    On June 20, 2025, the Court entered the *Order (I) Approving the Sale of Library Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 562].

11.    On August 26, 2025, the Court entered the *Order (I) Approving the Sale of the Studio Business Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 782].

12.     On November 12, 2025, following a two-day trial on the merits, the Court entered the *Order (I) Approving the Sale of the Derivative Rights Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* [Docket No. 1043].

13.     On January 9, 2026, the Debtors filed with this Court the Plan and the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1318] (as may be amended, modified, or supplemented, the "Disclosure Statement"), along with the *Debtors' Motion for Entry of Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing, (III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures, (V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief* [Docket No. 1319] (the "Disclosure Statement Motion") pursuant to which the Debtors sought a combined hearing on final approval of the adequacy of the Disclosure Statement and the confirmation of the Plan and the related solicitation and voting procedures.

14.     On February 18, 2026, the Debtors filed a *Notice of Revised Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1360].

15.     On February 18, 2026, the Debtors filed the *Notice of Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1359].

16.     On February 20, 2026, the Debtors filed the *Notice of Further Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1372].

17.    On February 20, 2026, the Court entered the Disclosure Statement Order[4] which, among other things: (a) conditionally approved the Disclosure Statement for solicitation purposes only; (b) established March 27, 2026, at 4:00 p.m. (prevailing Eastern Time), as the deadline to object to the Plan and final approval of the adequacy of the disclosures in the Disclosure Statement; (c) approved the solicitation, voting, and tabulation procedures; (d) approved the form and manner of the Combined Hearing Notice (as defined in the Disclosure Statement Order); and (e) approved other related dates, deadlines, and procedures.  The Debtors caused Kurtzman Carson Consultants, LLC dba Verita Global (the "Notice and Claims Agent"), on or about February 26, 2026, to serve the Solicitation Packages (as defined in the Disclosure Statement Order), including the Combined Hearing Notice, in accordance with the terms of the Disclosure Statement Order.[5]  The Debtors caused the Publication Notice (as defined in the Disclosure Statement Order) to be published in *The Wall Street Journal* and the *Los Angeles Times*, on February 26, 2026.[6]

18.    On March 20, 2026, the Debtors filed the *Notice of Filing Plan Supplement* [Docket No. 1456] (as may be amended, modified, or supplemented, the "Plan Supplement"), which included the: (a) Liquidation Trust Agreement; (b) GUC Trust Agreement; (c) list of Retained Causes of Action; (d) schedule of assumed Executory Contracts and Unexpired Leases; and (f) any additional documents as may be filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

19.    On April 1, 2026, the Debtors filed the *Notice of Further Revised Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1516].

---

[4]    *See Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing, (III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures, (V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief* [Docket No. 1376] (the "Disclosure Statement Order").

[5]    *See Certificate of Service of Leanne V. Rehder Scott re: Solicitation Materials* [Docket No. 1429].

[6]    *See Certificate of Publication* [Docket No. 1426].

20.     The deadline for all Holders of Claims entitled to vote on the Plan to cast their ballots was March 27, 2026 at 4:00 p.m. (prevailing Eastern Time).  The deadline for parties in interest to object to the Plan and final approval of the Disclosure Statement was March 27, 2026 at 4:00 p.m. (prevailing Eastern Time).  The Confirmation Hearing is scheduled for April 16, 2026 at 1:00 p.m. (prevailing Eastern Time).

**B.      Plan Solicitation and Notification Process**

21.     In compliance with the Bankruptcy Code, only Holders of Claims in Impaired Classes receiving or retaining property on account of such Claims were entitled to vote on the Plan.[7]  Holders of Claims and Interests were not entitled to vote if their rights are Unimpaired or if their rights are Impaired and they are deemed to reject the Plan.[8]  The following Classes of Claims and Interests were *not* entitled to vote on the Plan, and the Debtors did not solicit votes from these Holders of such Claims and Interests:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3A | Library Debtors General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

---

[7]     *See* 11 U.S.C. § 1126.

[8]     *See* Plan, Art. III.A.

22.     The Debtors solicited votes on the Plan only from Holders of Claims in Impaired Classes receiving or retaining property on account of such Claims.  The voting results, as reflected in the Voting Declaration, are summarized as follows:

| Total Ballots Received | | | |
|---|---|---|---|
| Accept | | Reject | |
| **Number** *(% of Number)* | **Amount** *(% of Amount)* | **Number** *(% of Number)* | **Amount** *(% of Amount)* |
| Class 3B – Non-Library Debtors General Unsecured Claims | | | |
| 11 (100.00%) | $19,230,341.39 (100.00%) | 0 (0.00%) | $0.00 (100.00%) |
| Class 4 – Senior Secured Notes Claims | | | |
| 6 (100.00%) | $155,434,466.72 (100.00%) | 0 (0.00%) | $0.00 (0.00%) |

23.     As set forth above and in the Voting Declaration, Holders of Claims in Classes 3B and 4 were entitled to vote to accept or reject the Plan (collectively, the "Voting Classes").  As a direct result of the Debtors' efforts to engage their key constituencies, the Plan enjoys the support of the Debtors' key stakeholders, including unanimous support from Holders in the Impaired Classes entitled to vote upon the Plan.[9]

24.     Holders of Claims and Interests in Classes 3B and 4 were also entitled to opt out of the definition of "Releasing Parties," as set forth in the Plan.  If a Holder of a Claim or Interest voted to accept the Plan, opted to execute the option to opt-out of the Third-Party Release on their ballot, and delivered such ballot to the Notice and Claims Agent, the Notice and Claims Agent reflected this decision in the Voting Declaration.  If a Holder of a Claim or Interest voted to reject the Plan, opted to execute the option to opt-in to the Third-Party Release on their ballot, and delivered such opt-in to the Notice and Claims Agent, the Notice and Claims Agent reflected this decision to opt-in to the Third-Party Release in the Voting Declaration.  Notice of the opportunity to opt-out or opt-in to the releases was adequate as to each of the Holders of Claims and Interests.

---

[9]     *See* Voting Decl., Ex. A.

25.     In total, the Notice and Claims Agent received three (3) opt-out elections from Holders of Claims and Interests voting to accept the Plan.  Based on these results, along with the manner of solicitation and distribution described herein, the Debtors submit that the notice provided to all Classes adequately satisfied the requirements of the Bankruptcy Code.

**C.     Confirmation Objections**

26.     The deadline to file objections to the Plan was March 27, 2026 at 4:00 p.m. (prevailing Eastern Time), (the "Plan Objection Deadline").  As of the Plan Objection Deadline (or in accordance with agreed to extensions), the four Objections were filed.

27.     For the reasons set forth in Part III herein, the Court should overrule the Objections in their entirety, approve the Plan, approve the Disclosure Statement on a final basis, and enter the Proposed Confirmation Order.

**II.     The Disclosure Statement Should Be Approved on a Final Basis**

28.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.[10]  Specifically, section 1125(a)(1) of the Bankruptcy Code states, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.][11]

29.     The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision

---

[10]     11 U.S.C. § 1125.

[11]     11 U.S.C. § 1125(a)(1).

regarding whether or not to vote for the plan.[12] Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization.[13]

30. "Adequate information" is a flexible standard, based on the facts and circumstances of each case.[14] Courts in the Third Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.[15]

31. In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as: (a) the events that led to the filing of a bankruptcy petition; (b) the relationship of the debtor with its affiliates; (c) a description of the available assets and

---

[12] *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan").

[13] *Century Glove,* 860 F.2d at 100.

[14] 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . "); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

[15] *See, e.g.*, *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *Phoenix Petroleum Co.*, 278 B.R. at 393 (same); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005), *aff'd*, 241 F. App'x 1 (3d Cir. 2007). ("The information required will necessarily be governed by the circumstances of the case.").

their value; (d) the company's anticipated future; (e) the source of information stated in the disclosure statement; (f) the debtor's condition while in chapter 11; (g) claims asserted against the debtor; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the future management of the debtor; (j) the chapter 11 plan or a summary thereof; (k) financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan; (l) information relevant to the risks posed to creditors under the plan; (m) the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers; (n) litigation likely to arise in a non-bankruptcy context; and (o) tax attributes of the debtor.[16]  Disclosure regarding all topics is not necessary in every case.[17]

32.     The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make an informed decision about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, among other things: (a) the Plan, including a summary of the procedures for voting on the Plan and projected recoveries thereunder (Art. I); (b) the statutory requirements for confirming the Plan (Art. I.F); (c) the Debtors' organizational structure, business operations, and financial obligations (Art. II); (d) the events leading to the filing of the Chapter 11 Cases (Art. II.D); (e) the major events during these Chapter 11 Cases, including significant pleadings filed, the Committee Settlement, and certain relief granted by the Court (Art. III); (f) certain risk factors that Holders of Claims should consider before voting to accept or reject the Plan (Art. XV); (g) the classification and treatment of Claims or Interests under the Plan, including identification of the Holders of Claims entitled to vote on the Plan (Art. IV); (h) the

---

[16]  *See, e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (same); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).

[17]  *See U.S. Brass Corp.*, 194 B.R. at 425; *see also Phoenix Petroleum Co.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

means for implementation of the Plan, the provisions governing distributions to certain Holders of Claims pursuant to the Plan, the procedures for resolving Disputed Claims and other significant aspects of the Plan (Arts. V, VII, and VIII); (i) the releases contemplated by the Plan that are integral to the overall settlement of Claims pursuant to the Plan (Art. XI); and (j) certain United States federal income tax consequences of the Plan (Art. XVI).[18]

33.     Accordingly, the Debtors respectfully submit that the Disclosure Statement contains "adequate information" and satisfies section 1125 of the Bankruptcy Code, and the Disclosure Statement should be approved on a final basis.

**The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code**

34.     To confirm the Plan, the Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[19]  As set forth herein, the Plan fully complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125, 1126, and 1129—as well as the Bankruptcy Rules and applicable non-bankruptcy law.

**A.     The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code**

35.     Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."[20]  The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision also encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively.[21]  As explained below, the Plan complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, as well as other applicable provisions.

---

[18]     *See* Maib Decl. ¶ 10.

[19]     *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120, n.15 (D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001).

[20]     11 U.S.C. § 1129(a)(1).

[21]     S. Rep. No. 95-989, at 126, reprinted in 1978 U.S.C. C.A.N. 5787, 5912 (1978); H.R. Rep. No. 95-595, at 412, reprinted in 1978 U.S.C. C.A.N. 5963, 6368 (1977); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly

### 1.    The Plan Properly Classifies Creditor's Claims Under Section 1122 of the Bankruptcy Code

36.    The classification requirement of section 1122(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class.[22]

37.    Although section 1122(a) of the Bankruptcy Code requires that all claims or interests in a class be substantially similar to all other claims or interests in the class, it "does not expressly require that all substantially similar claims or interests be placed in the same class."[23] Courts in this jurisdiction, as well as others, frequently recognize the significant flexibility that plan proponents have to place similar claims in different classes, provided there is a legitimate business justification to do so.[24] Grounds justifying separate classification, including separate

---

broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123."); *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[22]    11 U.S.C. § 1122(a).

[23]    *In re Hyatt*, 509 B.R. 707, 714–15 (Bankr. D.N.M. 2014) (citing *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.,* 187 B.R. 683, 687 (Bankr. D. Colo. 1995)) (observing that "[t]here is no requirement [in subsection (a)] that all substantially similar claims be placed in the same class"); *see also Armstrong World Indus.*, 348 B.R. at 159.

[24]    *See, e.g.*, *In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) (citing *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C. Cir. 1986)) (concluding that when analyzing whether claims are "substantially similar," the proper focus is on "the legal character of the claim as it relates to the assets of the debtor"); *Armstrong World Indus.*, 348 B.R. at 159 ("A classification structure satisfies section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and the claims or interests within each particular class are substantially similar.") (citations omitted); *see also In re Barakat,* 99 F.3d 1520, 1526 (9th Cir. 1996) (separate classification of similar claims requires a "legitimate business or economic justification"); *Boston Post Road Ltd. P'ship v. F.D.I.C. (In re Boston Post Road Ltd. P'ship)*, 21 F.3d 477, 483 (2nd Cir. 1994) ("the debtor must adduce credible proof of a legitimate reason for separate classification of similar claims."); *In re Adelphia Communications Corp.*, 368 B.R. 140, 246–247 (Bankr. S.D.N.Y. 2007) ("Although section 1122(a), by its terms, doesn't require that all similarly-situated claims be classified together, caselaw has made clear that separate classification of substantially similar unsecured claims is permissible only when there is a reasonable basis for doing so or when the decision to separately classify 'does not offend one's sensibility of due process and fair play.'") (quoting *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 703 (Bankr. S.D.N.Y. 1993)).

classification of unsecured claims, include: (a) where members of a class possess different legal rights; and (b) where there is a good business reason for separate classification.[25]

38.    The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places the Claims and Interests into eight (8) separate Classes, with Claims and Interests in each Class differing from the Claims and Interests in each other Class in a legal or factual manner, or based on other relevant criteria.[26] Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

a.    Class 1: Other Secured Claims;
b.    Class 2: Other Priority Claims;
c.    Class 3A: Library Debtors General Unsecured Claims;
d.    Class 3B: Non-Library Debtors General Unsecured Claims;
e.    Class 4: Senior Secured Notes Claims;
f.    Class 5: Intercompany Claims;
g.    Class 6: Existing Equity Interests; and
h.    Class 7: Intercompany Interests.

39.    Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims and Interests in such Class.[27]  In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes set forth in the Plan, and the classification scheme was not implemented for any improper purpose and does not unfairly discriminate between or among the Holders of the Claims

---

[25]    *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (holding that, as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper); *In re Mallinckrodt PLC*, 639 B.R. 837, 858 (Bankr. D. Del. 2022) (permitting the separate classification of unsecured noteholders where the two groups had divergent debt structuring rights); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (approving classification of general unsecured creditors into different classes: doctors' indemnification claims, medical malpractice claims, employee benefit claims and trade claims);  *In re ECE Wind-down LLC*, No. 22-10320 (JTD) (Dec. 21, 2022) [Docket No. 520] (approving plan with separate classification of general unsecured claims); *In re Masten Space Systems, Inc.,* No. 22-10657 (BLS) (Nov. 9, 2022) [Docket No. 226] (same); *In re Insys Therapeutics, Inc.*, *et al.*, No. 19-11292 (KG) (Bankr. D. Del. Dec. 4, 2019) [Docket No. 1115] (same).

[26]    *See* Plan, Art. III.

[27]    *See* Maib Decl. ¶ 14.

or Interests.[28]   Specifically, the Plan separately classifies the Claims because each Holder of such Claim may hold (or may have held at the time the Plan was filed) rights in the Estates that were legally dissimilar to the Claims in other Classes.[29]

40.     For example, debt and equity are separately classified, and secured debt is separately classified from unsecured debt.  Other aspects of the classification scheme reasonably recognize the different legal or factual nature of the Claims and Interests.  Finally, each Claim or Interest in each particular Class is substantially similar to every other Claim or Interest in that Class.  Accordingly, the Claims or Interests assigned to each particular Class described above are substantially similar to the other Claims or Interests in each such Class and the distinctions among Classes are based on valid business, factual, and/or legal distinctions.  The Debtors thus submit that the Plan fully complies with and satisfies section 1122 of the Bankruptcy Code.

### 2.     The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code

41.     Section 1123(a) of the Bankruptcy Code sets forth seven criteria that every chapter 11 plan must satisfy.  The Plan satisfies each of these requirements, and no party has asserted otherwise.

#### a.     Designation of Classes of Claims and Interests (Section 1123(a)(1))

42.     For the reasons set forth above, Article III of the Plan properly designates classes of Claim and Interests and thus satisfies the requirements of section 1122 of the Bankruptcy Code.

---

[28]   *See id.* at ¶ 14, 42.

[29]   *See id.*

**b.      Specification of Unimpaired Classes (Section 1123(a)(2))**

43.      Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."[30]  The Plan meets this requirement by identifying each Class in Article III of the Plan that is Unimpaired.[31]

**c.      Treatment of Impaired Classes (Section 1123(a)(3))**

44.      Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan."[32]  The Plan meets this requirement by setting forth the treatment of each Class in Article III that is Impaired.[33]

**d.      Equal Treatment Within Classes (Section 1123(a)(4))**

45.      Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[34]  The Plan meets this requirement because holders of Allowed Claims or Interests will receive the same rights and treatment as other holders of Allowed Claims or Interests within such holders' respective Class, other than where a holder of a claim has agreed to less favorable treatment.[35]

**e.      Means for Implementation (Section 1123(a)(5))**

46.      Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[36]  The Plan satisfies this requirement because Article IV of the

---

[30]    11 U.S.C. § 1123(a)(2).

[31]    *See* Plan, § III.A; Maib Decl. ¶ 15(b).

[32]    11 U.S.C. § 1123(a)(3).

[33]    *See* Plan, § III.A; Maib Decl. ¶ 15(c).

[34]    11 U.S.C. § 1123(a)(4).

[35]    *See* Maib Decl. ¶ 15(d).

[36]    11 U.S.C. § 1123(a)(5).

Plan, as well as other provisions thereof, provides for the means by which the Plan will be implemented.[37]

47.    Among other things, Article IV of the Plan provides for: (a) the consummation of the Plan, including the wind down and dissolution of the Debtors and the vesting of the assets in each respective Liquidation Trust or GUC Trust, as applicable; (b) the appointment of a Liquidation Trustee and the GUC Trustee; (c) the sources of consideration for Plan distributions, including the funding of the Liquidation Trust and the GUC Trust; (d) the authorization for the Debtors and/or the Liquidation Trustee (and GUC Trustee), as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (e) the settlement and discharge of Claims and Interests as set forth in the Plan; (f) the good faith compromise and settlement of all claims or controversies; (g) the preservation and vesting of Retained Causes of Action with the Liquidation Trust, as applicable; (h) the treatment of Executory Contracts and Unexpired Leases; (i) the effectuation of documents and further transactions; (j) the Committee Settlement; and (k) the cancellation of existing securities and agreements.[38] Accordingly, the Plan complies with section 1123(a)(5) of the Bankruptcy Code, and no party has asserted otherwise.

**f.    Issuance of Non-Voting Securities (Section 1123(a)(6))**

48.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.[39]  The Plan is a liquidating plan pursuant to which the Debtors' assets will be liquidated and distributed by the Liquidation Trustee or the GUC Trustee, as applicable, in accordance with the terms of the Plan and the Liquidation Trust Agreement or the GUC Trust, as applicable.  As such, the Plan does not

---

[37]    *See* Maib Decl. ¶ 15(e).

[38]    *See* Plan, Art. IV.

[39]    11 U.S.C. § 1123(a)(6).

provide for the issuance of non-voting equity securities, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code, and no party has asserted otherwise.

### g. Directors and Officers (Section 1123(a)(7))

49. Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy."[40] In accordance with Article IV of the Plan, on the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors, managers, members, and officers of the Debtors shall be discharged, and all such appointments rescinded for all purposes. From and after the Effective Date, the Liquidation Trustee shall be authorized to act on behalf of the Estates, provided that the Liquidation Trustee shall have no duties other than as expressly set forth in the Liquidation Trust Agreement, the Plan, or the Confirmation Order, as applicable.

50. The identity of the Liquidation Trustee has been provided in the Plan Supplement. The appointment of the Liquidation Trustee is consistent with the interests of creditors and with public policy.[41] Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code, and no party has asserted otherwise.

### 3. The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code

51. Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan. Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) modify or leave unaffected the rights of holders of secured or unsecured claims; (c)

---

[40]  11 U.S.C. § 1123(a)(7).

[41]  *See* Maib Decl. ¶ 15(g).

provide for the settlement or adjustment of claims against or interests in a debtor or its estate or the retention and enforcement by a debtor, trustee, or other representative of claims or interests; (d) provide for the assumption or rejection of executory contracts and unexpired leases; (e) provide for the sale of all or substantially all of the property of a debtor's estate, and the distribution of the proceeds of such sale among holders of claims or interests; or (f) "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[42]

### a. Impairment and Unimpairment of Classes (Section 1123(b)(1))

52.     The Plan satisfies the requirements of section 1123(b)(1), and no party has asserted otherwise.   Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired, respectively.[43]

### b. Treatment of Executory Contracts and Unexpired Leases (Section 1123(b)(2))

53.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases (other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date or assumed under the Plan, including but not limited to the D&O Policies) not previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under section 365 of the Bankruptcy Code, nor scheduled to be assumed under the Plan, the Plan Supplement, or the Sale Orders.  The Debtors determined, in their sound business judgment, that all of the Executory Contracts and Unexpired Leases, other than the D&O Policies and the assumed Executory Contracts and Unexpired Leases in the Plan Supplement, should be automatically rejected upon the Effective Date as they fail to provide any benefit to the

---

[42]   *See* U.S.C. § 1123(b)(1)–(6).

[43]   Plan, Art. III.A; Maib Decl. ¶ 16(a).

Estates or to parties in interest as part of the liquidation.[44]    Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(b)(2), and no party has asserted otherwise.

### c.    The Plan Settlement of Claims and Controversies Is Fair and Equitable and Should be Approved

54.    The Plan provides for the good faith compromise and settlement of numerous Claims, Causes of Action, and controversies held by the Debtors, the Released Parties, and the Releasing Parties, and the Committee, including through the Committee Settlement, which are designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties in interest.  Accordingly, except as otherwise set forth in the Plan or herein, and in consideration for the distribution and other benefits provided under the Plan, including various release, exculpation, and injunction provisions, the Plan shall constitute a good-faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.  Each component of the Plan is an integral, integrated, and inextricably linked part of the settlement contemplated thereunder, is fair equitable, and reasonable, and is in the best interest of the Debtors, their Estates, creditors, and all parties in interest.

55.    The compromises set forth in the Plan are critical to bringing closure to these and other matters addressed in the Plan and to providing timely distributions to creditors on account of their Claims.  They were negotiated in good faith and at arm's-length following extensive negotiations with the relevant creditor parties.  Accordingly, such compromises and settlements should be approved through the Proposed Confirmation Order.

---

[44]    *See* Maib Decl. ¶ 16(b).

> **d.    The Plan's Release, Exculpation, Injunction, and Related Provisions and Preservation of Claims and Causes of Action Satisfy Section 1123(b) of the Bankruptcy Code**

56.    The Plan also includes certain releases, an exculpation provision, and an injunction provision.  These discretionary provisions are proper because, among other things, they comply with the Bankruptcy Code and are in the best interests of the Debtors' Estates.

### i.    The Debtor Release Is Appropriate

57.    Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[45]  Further, a debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[46]  Article XI.A of the Plan provides for releases by the Debtors and their Estates, as of the Effective Date, of, among things, certain Claims, rights, and causes of action that the Debtors or their Estates may have against the Released Parties (the "Debtor Release").[47]

---

[45]    *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334–35 (Bankr. D. Del. 2004) (holding that standards for approval of settlement under section 1123 of the Bankruptcy Code are generally the same as those under Bankruptcy Rule 9019).  Generally, courts in the Third Circuit approve a settlement by the debtor if the settlement "exceed[s] the lowest point in the range of reasonableness."  *In re Exaeris, Inc.*, 380 B.R. 741, 746– 47 (Bankr. D. Del. 2008) (citation omitted); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (examining whether settlement "fall[s] below the lowest point in the range of reasonableness") (alteration in original) (citation omitted); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (stating that settlement must be within reasonable range of litigation possibilities).

[46]    *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'") (internal citations omitted).

[47]    "Released Party" means each of the following and in each case in its capacity as such: (a) the Debtors; (b) each of the Senior Secured Notes Parties; (c) the Holders of DIP Claims; (d) the Liquidation Trustee; (e) the Committee and its members, each in their capacities as such; (f) the Holders of Existing Equity Interests and (g) each Related Party of each Entity in clause (a) through this clause (f); provided that, a Released Party shall only be a Released Party if it is also a Releasing Party.

58.    Courts in this jurisdiction generally analyze five factors when determining the propriety of a debtor release, commonly known as the *Zenith* or *Master Mortgage* factors.[48]  The analysis includes an inquiry into whether there is: (1) identity of interest between the debtor and non-debtor; (2) substantial contribution to the plan by the non-debtor; (3) the necessity of the release to the reorganization; (4) overwhelming acceptance of the plan and release by creditors and interest holders; and (5) payment of all or substantially all of the claims of the creditors and interest holders.[49]  These factors are "neither exclusive nor conjunctive requirements" but rather serve as guidance to courts in determining the fairness of a debtor's releases.[50]

59.    The Debtor Release meets the applicable standard because it is fair, reasonable, and in the best interests of the Debtors' Estates.  As described in the Maib Declaration,[51] and as an analysis of the *Zenith* factors demonstrates, the Debtor Release embodied in Article X.A of the Plan should be approved.  The Debtor Release is consistent with *Zenith* for the following reasons:

> ***First***, an identity of interest exists between the Debtors and the parties to be released.  Each of the Released Parties, as a stakeholder and critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed and would have been unlikely to participate in the negotiations and compromises that led to the ultimate formation of the Plan without the Debtor Release.  Like the Debtors, these parties seek to confirm the Plan and implement the liquidation contemplated thereunder.[52]
>
> ***Second***, the substantial contributions are clear.  The Released Parties played an integral role in the formation of the Plan and have expended significant time and resources analyzing and negotiating the issues present in these Chapter 11 Cases.  As Delaware bankruptcy courts have recognized, a wide variety of acts may illustrate a substantial

---

[48]    *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (citing *In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999)); *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994).

[49]    *See Wash. Mut.*, 442 B.R. at 346 (citing *Zenith*, 241 B.R. at 110 and *Master Mortg.*, 168 B.R. at 937).

[50]    *Id.* (citing *Master Mortg.*, 168 B.R. at 935).

[51]    *See* Maib Decl. ¶¶ 17-22.

[52]    *See In re Abeinsa Holding, Inc.*, 562 B.R. 265, 284 (Bankr. D. Del. 2016) (finding that "there is an identity of interest between the [d]ebtors and the [r]eleased [p]arties arising out the shared common goal of confirming and implementing the [p]lan."); *see also Zenith*, 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed and the company reorganize").

-22-

contribution to a debtor's reorganization.[53] Moreover, the Released Parties have expended time and resources negotiating the value-maximizing resolutions set forth in the Plan, as well as the Committee Settlement and other transactions in these Chapter 11 Cases, all of which helped maximize value for the benefit of all parties in interest.[54] Here, the value contributed by the Released Parties is substantial and without the contributions of each of the Released Parties, it is unlikely the Plan or the transactions contemplated therein would have been possible.

***Third***, the Debtor Release is essential to the Debtors' Plan of liquidation because it constitutes an integral term of the Plan. The Debtor Releases under the Plan incorporates the releases agreed to in the Committee Settlement which releases the Debtors from, among other things, any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale Transactions, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Orders, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date, excepting the Retained Causes of Action and any Claims or Causes of Action related to any act or omission determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence.

Absent the Debtor Release, it is highly unlikely the Released Parties would have agreed to support the Plan and it is possible that the claims pool would have been substantially increased through the filing of Claims for indemnification or contribution, which would also meaningfully delay distributions to Holders of Allowed Claims. As described above, each of the Released Parties contributed substantial value to these Chapter 11 Cases, and they did so with the understanding that they would receive releases from the Debtors. In

---

[53] *See id*. at 304 (finding that the non-debtor party had substantially contributed by performing services for the debtors post-petition without receiving compensation); *Wash. Mut.*, 442 B.R. at 347 (finding substantial contribution required the contribution of "cash or anything else of a tangible value to the [plan of reorganization] or to creditors"); *Zenith*, 241 B.R. at 111 (finding that prepetition contribution of work in negotiating a plan constituted adequate consideration for debtor's release).

[54] *See* Maib Decl. ¶ 19.

-23-

the absence of these parties' support, the Debtors would not have been in a position to maximize the value of its assets in the Sale Transactions, to negotiate a settlement with the Committee, or to confirm the Plan. The Debtor Release is therefore an essential element of the Debtors' Plan.

**Fourth**, as evidenced by the Voting Declaration and noted herein, the Plan, and thus the Debtor Release, was resoundingly approved, as evidenced by the unanimous acceptance of the Plan by Classes 3B and 4.[55] Given the critical nature of the Debtor Release, this support evidences the Debtors' key stakeholders' support for the Debtor Release and the Plan. Even if the Court determined that this support does not constitute "overwhelming acceptance," as noted above, these factors are neither exclusive nor conjunctive.[56]

**Fifth**, the Plan provides for meaningful recoveries under the circumstances for all creditors potentially giving up colorable claims under the releases. As demonstrated by the liquidation analysis filed as <u>Exhibit B</u> to the Disclosure Statement (the "<u>Liquidation Analysis</u>"), the ranges of recoveries for all Holders of Claims are higher under the Plan than they would have been in a chapter 7 liquidation scenario.[57] Additionally, the Debtor Release ensures that creditors can receive meaningful distributions in a timely manner, while retaining potentially valuable Retained Causes of Action for potential additional recoveries. The transactions set forth in the Plan maximize value and provide meaningful recoveries for all stakeholders under the circumstances.

60. For the reasons set forth above, and as supported by the Maib Declaration, the *Zenith* factors supports approval of the Debtor Release. Moreover, the breadth of the Debtor Release is consistent with those regularly approved in this jurisdiction and others.[58] The Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan. The Debtor Release easily meets the applicable standard because it is fair, reasonable, and in the best interests of the Debtors' Estates and critically, is supported by the Debtors' creditors who accepted the Plan. Thus, the Court should approve the Debtor Release in the Plan, and no party has asserted otherwise.

---

[55]   *See* Voting Declaration, Ex. A.

[56]   *See Washington Mut.*, 442 B.R. at 346.

[57]   *See* Maib Decl. ¶¶ 30-34

[58]   *See, e.g.*, *In re One Aviation Corp.*, No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) (approving Plan providing for definition of Released Parties including, among others, the debtors' directors and officers); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019) (same); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) (same); *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) (same); *In re Samson Resources Corp.*, No. 14-11934 (CSS) (Bankr. D.Del. Feb. 13, 2017) (same).

**ii. The Third-Party Release is Wholly Consensual and Appropriate under the Facts and Circumstances of this Case**

61.     Article XI.B of the Plan provides for the release of each Released Party from Causes of Action—other than the Retained Causes of Action—of the Debtors and certain non-debtor Releasing Parties[59] (the "<u>Third-Party Release</u>").  These releases have the same subject matter nexus as the Debtor Release described above.

62.     The provisions of the Plan, including the Third-Party Release, were heavily negotiated, and the Third-Party Release is integral to the Plan.[60] Absent the Third-Party Release, it is unlikely the Debtors would have been able to bring their key stakeholder groups to the bargaining table or effectuate the value-maximizing transactions contemplated by the Plan.[61] Moreover, the Third-Party Release is a permissible consensual release consistent with Third Circuit law and similar to releases that bankruptcy courts in this and other districts have regularly approved in other chapter 11 plans when, as here, they are consensual.[62]  The Third-Party Release is consensual, consistent with established Third Circuit law, and integral to the Plan, and therefore should be approved.

---

[59]   "<u>Releasing Parties</u>" means (a) the Released Parties; (b) all Holders of Claims or Interests that return a Ballot and do not make a Release Opt-Out Election; and (c) each Related Party of each Entity in the foregoing clauses (a) and (b), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) or (b); provided, however, the Debtors shall not be a Releasing Party to the extent being a Releasing Party is duplicative or inconsistent with the Debtor Releases provided in Article XI.A of the Plan or any Retained Cause of Action; and provided further that Releasing Parties shall exclude any of the foregoing parties that makes a Release Opt-Out Election.

[60]   *See* Maib Decl. ¶ 21-22.

[61]   *See id.*

[62]   *See Indianapolis Downs*, 486 B.R. at 304–05 (approving third-party release that applied to unimpaired holders of claims deemed to accept the plan as consensual); *Spansion*, 426 B.R. at 144 (same); *Wash. Mut.*, 442 B.R. at 352 (observing that consensual third-party releases are permissible); *see also In re One Aviation Corp.*, No. 18-12309 (CSS) (Bankr. D. Del. Sep. 18, 2019) (approving Plan providing for definition of Released Parties including, among others, the Debtors' directors and officers); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 29, 2019) (same); *In re Checkout Holding Corp.*, No. 18-12794 (KG) (Bankr. D. Del. Jan. 31, 2019) (same); *In re TK Holdings Inc.*, No. 17-11375 (BLS) (Bankr. D. Del. Feb. 21, 2018) (same); *In re Samson Resources Corp.*, No. 14-11934 (CSS) (Bankr. D. Del. Feb. 13, 2017) (same); *In re Horsehead Holding Corp.*, No. 16-10287 (CSS) (Bankr. D. Del. Sep. 9, 2016) (same); *In re Invitae*, No. 24-11363 (MBK) (Bankr. D.N.J. Aug. 2, 2024) (approving a Plan providing for releases of certain directors and officers).

63.     Although the United States Supreme Court has limited the availability of third-party releases,[63] those limitations only apply to certain *non-consensual* third-party releases—*i.e.*, releases that occur despite the affected party's effort to object or opt out.[64]  Conversely, courts generally approve third-party releases that are consensual, recognizing that these are essentially settlements between releasing and released parties that evince these parties' intent to be bound.

64.     In this District, courts have held that "creditors [who] were clearly and conspicuously informed that voting on the plan (whether the creditor voted to accept or reject it) would constitute a release unless the creditor opted out."[65]  Thus, "the affirmative act of voting, coupled with clear and conspicuous disclosure and instructions about the consequences of the vote and a simple mechanism for opting out, is a sufficient expression of consent to bind the creditor to the release under ordinary contract principles."[66]  Thus, "[a]fter *Purdue Pharma . . .* affirmative consent is required."[67]

65.     The Releasing Parties includes (a) all Holders of a Claim that vote to accept the Plan and do not affirmatively "opt-out" of granting the Third Party Release by electing the opt-out option on their ballot and (b) all Holders of Claims or Interests that (i) vote to reject or abstain from voting on the Plan and (ii) check the box on the applicable ballot indicating that they "opt in" to granting the Third Party Release.[68]  All parties had ample opportunity to evaluate the Third-Party Release or object to the Plan.  All parties in interest were provided extensive notice of these

---

[63]   *Harrington v. Purdue Pharma, L.P., et al.* (*In re Purdue Pharma L.P.*), 603 U.S. 204, 206-07 (2024) ("[T]he bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants.").

[64]   *Purdue Pharma*, 603 at 226 ("Nothing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan.") (emphasis added). Historically, the Third Circuit approved even *non-consensual* third-party releases so long as those were fair to the releasing parties.  *See In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019); *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022).

[65]   *In re Smallhold, Inc.*, No. 24-10267 (CTG), at 6 (Bankr. D. Del. Sept. 25, 2024) [Docket No. 288].

[66]   *Id.* at 6.

[67]   *Id.* at 19.

[68]   Plan, Art. I.A.107.

Chapter 11 Cases, the Plan, the deadline to object to confirmation of the Plan, and the deadline to execute the opt-out or opt-in, as applicable. Moreover, the Disclosure Statement, the Combined Hearing Notice, and the ballots provided recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Release.[69] The Debtors required all Holders of Claims or Interests to elect to either opt out or opt in, as applicable, when submitting a ballot.[70]

66.     Thus, the Debtors assert that the Third-Party Release is consensual, consistent with established Third Circuit law, and integral to the Plan and therefore should be approved.[71]

### iii.  The Exculpation Provision Is Appropriate

67.     Article XI.C of the Plan provides for the exculpation of the Exculpated Parties.[72] The exculpation is fair and appropriate under both applicable law[73] and the facts and circumstances of these Chapter 11 Cases. The exculpation provision is important to the Plan in that it removes the threat of certain litigation against the Exculpated Parties, who have played critical roles in, and made contributions to, the Debtors' restructuring efforts, including the Chapter 11 Cases, and that such contributions represent good and valuable consideration to the Debtors, their Estates, and their creditors.[74]

68.     Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and

---

[69]    *See* Disclosure Statement § XI.B.2; Disclosure Statement Order Exs. 1, 2-A, and 2-B.

[70]    *See* Plan, Art. I.A.107, X.B.

[71]    *See* Maib Decl. ¶¶ 21-22.

[72]    "Exculpated Parties" means collectively, and in each case, in its capacity as such: (a) the Debtors; (b) the Debtors' directors and officers who served at any time between the Petition Date and the Effective Date; (c) the Debtors' managers during these Chapter 11 Cases; (d) such Released Parties that are fiduciaries to the Debtors' Estates; (e) the Committee; (f) the members of the Committee in their capacity as such; and (g) all Professionals retained by the Debtors and the Committee in these Chapter 11 Cases in their respective capacities as Professionals to the Debtors or Committee.

[73]    *See In re Laboratory Partners, Inc.*, No. 13-12769 (PJW) (Bankr. D. Del. July 10, 2014) (finding that exculpation was appropriately extended to secured lender who funded the chapter 11 case); *In re FAH Liquidating Corp.*, No. 13-13087 (KG) (Bankr. D. Del. July 28, 2014) (finding that exculpation as applied to a non-debtor Plan Sponsor was appropriate under section 1123(b)).

[74]    *See* Maib Decl. ¶ 23.

whether the exculpation provision was necessary for plan negotiations.[75] Exculpation provisions that are limited to claims not involving bad faith, fraud, willful misconduct, or gross negligence, are customary and generally approved in this district under appropriate circumstances.[76] Unlike third-party releases, exculpation provisions do not affect the liability of third parties *per se*, but rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an "exculpated party" for acts arising out of the debtor's restructuring.[77]

69.     The Exculpated Parties have actively participated in good faith in formulating and negotiating the Sale Transactions of the Debtors' assets and the Plan as it relates to the Debtors, and they should be entitled to protection from exposure to any lawsuits filed by disgruntled creditors or other unsatisfied parties.[78] Moreover, the exculpation provision and the liability standard it sets represent a conclusion of law that flows logically from certain findings of fact that the Court must reach in confirming the Plan as it relates to the Debtors. As discussed above, this Court must find, under section 1129(a)(2), that the Debtors have complied with the applicable provisions of the Bankruptcy Code. Additionally, this Court must find, under section 1129(a)(3), that the Plan has been proposed in good faith and not by any means forbidden by law. These findings apply to the Debtors and, by extension, to the Debtors' independent managers and professionals and the Committee and its members and professionals. Accordingly, and under the

---

[75]   *See, e.g.*, *In re Enron Corp.*, 326 B.R. 497, 503 (S.D.N.Y. 2005) (evaluating the exculpation clause based on the manner in which the clause was made a part of the agreement, the necessity of the limited liability to the plan negotiations, and that those who participated in proposing the plan did so in good faith).

[76]   *See Wash. Mut.*, 442 B.R. at 350-51 (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate).

[77]   *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l Holdings, Inc.*, No. 09-12019 (CSS), 2010 WL 2745964, at *10 (Bankr. D. Del. Apr. 29, 2010) (approving a similar exculpation provision as that provided for under the Plan); *In re Spansion Inc.*, No. 09-10690 (KJC), 2010 WL 2905001, at *16 (Bankr. D. Del. April 16, 2010) (same).

[78]   *See* Maib Decl. ¶ 23.

facts and circumstances of these Chapter 11 Cases, the Court should approve the exculpation provision.

#### iv.  The Injunction and Related Provisions are Appropriate

70.     The injunction provision set forth in Article XI.D of the Plan, and related relief described in Article XI.E of the Plan, merely implements the Plan's release and exculpation provisions, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors, the Exculpated Parties, or the Released Parties, other than the Retained Causes of Action, on account of or in connection with or with respect to any such claims or interests released or subject to exculpation.  Thus, the injunction provisions are key provisions of the Plan because they enforce the release and exculpation provisions that are centrally important to the Plan.[79]  As such, to the extent the Court finds that the exculpation and release provisions are appropriate, the Debtors respectfully submit that the injunction provisions must also be appropriate.  Moreover, this injunction provisions are narrowly tailored to achieve its purpose. Thus, the injunction provisions should be approved.

#### e.     The Plan's Retention of the Retained Causes of Action Is Appropriate

71.     The Retained Causes of Action are essential to the Plan and appropriate under the facts and circumstances of these Chapter 11 Cases.  Accordingly, such Retained Causes of Action should be approved, and no party asserts otherwise.

#### f.     The Plan Complies with the Additional Provision of Section 1123(b)

72.     The Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.[80] Article III of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders

---

[79]   Maib Decl. ¶ 24.

[80]   11 U.S.C. § 1123(b)(5).

of Claims or Interests, as permitted by section 1123(b)(5) of the Bankruptcy Code.[81]  Additionally, the other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.[82]  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(b)(5) and (b)(6), and no party has asserted otherwise.

**B.    The Plan Complies with Section 1123(d) of the Bankruptcy Code**

73.    Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and nonbankruptcy law."[83]

74.    The Plan complies with section 1123(d) of the Bankruptcy Code.  Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases (other than the D&O Policies and as otherwise provided in the Plan) not previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under section 365 of the Bankruptcy Code, nor scheduled to be assumed under the Plan, the Plan Supplement, or the Sale Orders.  The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

**C.    The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code**

75.    The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.[84]

---

[81]    Maib Decl. ¶ 16(d).

[82]    *Id.* at ¶ 16(e).

[83]    11 U.S.C. 1123(d).

[84]    *See* 11 U.S.C. § 1129(a)(2).

The legislative history to section 1129(a)(2) provides that section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements set forth in section 1125 and the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.[85] As set forth below, the Debtors have complied with these provisions, including sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, by distributing the Disclosure Statement and soliciting acceptances of the Plan through their Notice and Claims Agent in accordance with the Disclosure Statement Order.[86]

### 1. The Debtors Complied with Section 1125 of the Bankruptcy Code

76. Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[87] Section 1125 ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan.[88]

77. Section 1125 is satisfied here. Before the Debtors solicited votes on the Plan, the Court conditionally approved the Disclosure Statement in accordance with section 1125(a)(1).[89] The Court also approved the contents of the solicitation materials provided to Holders of Claims entitled to vote on the Plan, the non-voting materials provided to parties not entitled to vote on the

---

[85] *See In re Lapworth*, No. 97-34529 (DWS), 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) ("[S]ection 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the solicitation and disclosure requirements under sections 1125 and 1126 of the Bankruptcy Code."); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

[86] *See* Voting Decl. ¶¶ 5-8.

[87] 11 U.S.C. § 1125(b).

[88] *See Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

[89] *See generally* Disclosure Statement Order.

Plan, and the relevant dates for voting and objecting to the Plan and final approval of the Disclosure Statement.[90]   As stated in the Voting Declaration, the Debtors, through the Notice and Claims Agent, complied with the content and delivery requirements of the Disclosure Statement Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code.[91]   The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.   Here, the Debtors caused the Disclosure Statement to be transmitted to all parties entitled to vote on the Plan and parties deemed to reject the Plan.[92]

78.     Based on the foregoing, the Debtors submit that they have complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Order, and no party has asserted otherwise.

**2.     The Debtors Complied with Section 1126 of the Bankruptcy Code**

79.     Section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[93]   The Debtors did not solicit votes on the Plan from the Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 3A (Library Debtors General Unsecured Claims) as such Classes are Unimpaired under the Plan (the "Deemed Accepting Classes").[94]   Pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in the Unimpaired Classes are conclusively presumed to have accepted the Plan and, therefore, were not entitled to vote on the Plan.   The Debtors also did not solicit votes from Class 5 (Intercompany Claims), Class 6 (Existing Equity Interests), and Class 7 (Intercompany Interests), as such Classes are Impaired under the Plan and not expected to receive any recovery

---

[90]   *See generally id.*

[91]   *See* Voting Declaration ¶¶ 5-8.

[92]   *Id.*

[93]   *See* 11 U.S.C. § 1126.

[94]   *See* Plan, § III.A.

on account of their Claims or Interests (the "Deemed Rejecting Classes").[95]  Pursuant to section

1126(g) of the Bankruptcy Code, holders of Claims and Interests in the Deemed Rejecting Classes

are deemed to have rejected the Plan and, therefore, were not entitled to vote on the Plan.

80.     Accordingly, the Debtors solicited votes only from the Voting Classes, constituting

Holders of Claims in Classes 3B and 4 because each of these Classes is Impaired and entitled to

receive a distribution under the Plan.[96]  With respect to the Voting Classes of Claims, section

1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted
> by creditors, other than any entity designated under subsection (e)
> of [section 1126], that hold at least two-thirds in amount and more
> than one-half in number of the allowed claims of such class held by
> creditors, other than any entity designated under subsection (e) of
> [section 1126], that have accepted or rejected such plan.[97]

81.     The Voting Declaration, summarized in Part I above, reflects the results of the

voting process in accordance with section 1126 of the Bankruptcy Code.[98]  Based on the foregoing,

the Debtors submit that they have satisfied the requirements of section 1129(a)(2), and no party

has asserted otherwise.

**D.      The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code**

82.     Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be

"proposed in good faith and not by any means forbidden by law."[99]  Where a plan satisfies the

purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement

---

[95]   *Id.*

[96]   *See generally* Voting Declaration; Plan, Art. III.

[97]   11 U.S.C. § 1126(c).

[98]   *See generally* Voting Declaration, Ex. A.

[99]   11 U.S.C. § 1129(a)(3).

of section 1129(a)(3) of the Bankruptcy Code is satisfied.[100]  To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[101]

83.    The Plan was proposed with honesty, good intentions, and with the goal of maximizing stakeholder recoveries.  Throughout these Chapter 11 Cases, the Debtors and their directors have upheld their fiduciary duties to stakeholders and protected the interests of all constituents.  The Plan facilitates distributions that will provide significant value to the Debtors' stakeholders compared to the alternative of a chapter 7 liquidation.[102]  Importantly, the Plan is supported by the Debtors' key economic stakeholders.  Accordingly, the Plan and the Debtors' conduct satisfy section 1129(a)(3) of the Bankruptcy Code, and no party has asserted otherwise.

**E.    The Plan Provides that the Payment of Debtors' Professional Fees and Expenses Are Subject to Court Order in Compliance with Section 1129(a)(4)**

84.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable.  Courts have construed this section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the Court as to their reasonableness.[103]

---

[100]  *E.g.*, *PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *Brite* v. *Sun Country Dev., Inc. (In re Sun Country Dev., Inc.*), 764 F.2d 406, 408 (5th Cir. 1985)); *In re Century Glove, Inc.*, Civ. A. Nos. 90-400 and 90-401, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

[101]  *E.g., T-H New Orleans*, 116 F.3d at 802 (quoting *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012); *Century Glove*, 1993 WL 239489, at *4.

[102]  *See* Maib Decl. ¶¶ 30-34.

[103]  *Lisanti Foods*, 329 B.R. at 503 ("Pursuant to § 1129(a)(4), a [p]lan should not be confirmed unless fees and expenses related to the [p]lan have been approved, or are subject to the approval, of the Bankruptcy Court"), *aff'd,* 241 F. App'x 1 (3d Cir. 2007); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988*); In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

85.     The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.  All payments made or to be made by the Debtors for services or for costs or expenses in connection with these Chapter 11 Cases prior to the Confirmation Date, including all Professional Fee Claims, have been approved by, or are subject to approval of, the Court.[104]  Article II.D.1 of the Plan provides that all final requests for payment of Professional Fee Claims shall be filed no later than forty-five (45) days after the Effective Date for determination by the Court, after notice and a hearing, in accordance with the procedures established by the Court, except as such procedures have been otherwise modified by the Plan.[105]  Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code, and no party has asserted otherwise.

**F.     The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, or Insiders and Therefore Complies with Section 1129(a)(5)**

86.     The Bankruptcy Code requires the plan proponent to disclose the affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan.[106]  Section 1129(a)(5)(A)(ii) further requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[107]

87.     Here, Article IV of the Plan provides for the dissolution of the Debtors and the discharge of all directors, managers, members, and officers of the Debtors.[108]  As such, section 1129(a)(5) of the Bankruptcy Code is inapplicable to the Plan.

88.     In addition, section 1129(a)(5)(B) also requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the

---

[104]   *See* Plan, Art. II.

[105]   *Id.*

[106]   11 U.S.C. § 1129(a)(5)(A)(i).

[107]   *Id.* § 1129(a)(5)(A)(ii).

[108]   *See* Plan, Art. IV.H.

reorganized debtor and the nature of any compensation for such insider.[109]  Here, the Plan provides that the Debtors shall be, subject to the terms of the Plan, disposed of, dissolved, wound down, or liquidated under applicable law as soon as practicable after the Effective Date.[110]  Moreover, the Plan Supplement provides the identity and compensation of insiders to be employed by the Liquidation Trust.  Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied, and no party has asserted otherwise.

**G.    The Plan Does Not Require Governmental Regulatory Approval and Therefore Complies with Section 1129(a)(6)**

89.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases, and no party has asserted otherwise.

**H.    The Plan Is in the Best Interest of Creditors and Therefore Complies with Section 1129(a)(7)**

90.    Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," provides, in relevant part:

> With respect to each impaired class of claims or interests—
> (A)    each holder of a claim or interest of such class—
> (i)    has accepted the plan; or
> (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date . . . .

91.    The best interests test applies to individual dissenting holders of impaired claims and interests rather than classes, and is generally satisfied through a comparison of the estimated

---

[109]    *Id.* § 1129(a)(5)(B).

[110]    Plan, Art. IV.H.

recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[111]    As section 1129(a)(7) of the Bankruptcy Code makes clear, the best interests test applies only to holders of non-accepting impaired claims or interests.  Each of the Voting Classes, Class 3B (Non-Library Debtors General Unsecured Claims) and Class 4 (Senior Secured Notes Claims), have unanimously voted to accept the Plan.  The Deemed Rejecting Classes did not vote on the Plan.  Accordingly, to satisfy the best interests test, the Debtors must demonstrate that the Deemed Rejecting Classes will receive at least as much under the Plan as that Holder would receive in a chapter 7 liquidation.[112]

92.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test.  As set forth in the Maib Declaration, the Debtors, with the assistance of their restructuring advisors, prepared the Liquidation Analysis, attached as Exhibit B to the Disclosure Statement.[113] The Liquidation Analysis compares the projected range of recoveries that would result from the liquidation of the Debtors in a hypothetical case under chapter 7 of the Bankruptcy Code with the estimated distributions to Holders of Allowed Claims and Interests under the Plan.[114]   The Liquidation Analysis is based on the value of the Debtors' assets and liabilities as of a certain date and incorporates various estimates and assumptions, including a hypothetical conversion to a chapter 7 liquidation as of a certain date.[115]

---

[111]   *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan**.");** *Century Glove*, 1993 WL 239489, at *7; *Adelphia Commc'ns. Corp.*, 368 B.R. at 251 (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[112]   *See In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'") (internal citations omitted).

[113]   *See* Maib Decl. 30-34.

[114]   *See id.*

[115]   *See id.*

93.     Based on the unaudited Liquidation Analysis, and the assumptions included therein, the value of any distributions if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code would be no greater than the value of distributions under the Plan.[116]  As a result, Holders of Claims and Interests in all Impaired Classes will recover at least as much as a result of confirmation of the Plan as they would recover through a hypothetical chapter 7 liquidation.[117]  Based on the recoveries set forth above, the Plan satisfies the best interests test as required by the Bankruptcy Code, and no party has asserted otherwise.

## I.     The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code

94.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.[118]  Holders of Claims and Interests in the Deemed Rejecting Classes are deemed to have rejected the Plan and, thus, were not entitled to vote.  Consequently, while the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Deemed Rejecting Classes, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

## J.     The Plan Provides for Payment in Full of All Allowed Priority Claims in Compliance with Section 1129(a)(9) of the Bankruptcy Code

95.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.  In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive

---

[116]   *See id.*

[117]   *See id.*

[118]   11 U.S.C. § 1129(a)(8).

on the effective date cash equal to the allowed amount of such claims.[119]  Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).[120]  Finally, section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.[121]

96.       The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.[122]  *First*, Article II.A of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Claim shall receive payment as follows: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, forty-five (45) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.[123]  Any such objections that are not consensually resolved may be set for hearing after notice.[124]

---

[119]   11 U.S.C. § 1129(a)(9)(A).

[120]   *Id.* § 1129(a)(9)(B).

[121]   *Id.* §§ 507(a)(1)–(7), 1129(a)(9)(C).

[122]   *See* Maib Decl. ¶ 36.

[123]   Plan, Art. II.A.

[124]   *See id.*

97.     *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Plan and such Claims have been paid in the ordinary course.

98.     *Third*, Article II.E of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that holders of Allowed Priority Tax Claims payment in full in Cash on the Effective Date or otherwise receive treatment consistent with the Bankruptcy Code.[125]   The Plan thus satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code, and no party has asserted otherwise.

**K.     At Least One Class of Impaired, Non-Insider Claims Accepted the Plan in Compliance with Section 1129(a)(10) of the Bankruptcy Code**

99.     Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider," as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.[126]

100.     Classes 3B and 4, each an Impaired Class, voted to accept the Plan independent of any insiders' votes.[127]   Thus, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code, and no party has asserted otherwise.

**L.     The Plan Is Feasible in Compliance with Section 1129(a)(11) of the Bankruptcy Code**

101.     Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that a plan is feasible as a condition precedent to confirmation.  Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the

---

[125]   *See* Plan, Art. II.E.

[126]   11 U.S.C. § 1129(a)(10).

[127]   *See* Voting Declaration, Ex. A.

> debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[128]

102.    To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[129]  Rather, a debtor must provide only a reasonable assurance of success.[130]  There is a relatively low threshold of proof necessary to satisfy the feasibility requirement.[131]  The feasibility test set forth in section 1129(a)(11) does not require the Debtors to "prove" that the Plan will succeed.  The Debtors need only demonstrate that the Plan has "a reasonable likelihood of success" or a "reasonable probability" that the provisions of the Plan may be performed.[132]

103.    The purpose of the feasibility test under section 1129(a)(11) is to "prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."[133]  The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.[134]  Bankruptcy courts have

---

[128]    11 U.S.C. § 1129(a)(11).

[129]    *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012); *W.R. Grace & Co.*, 475 B.R. at 115; *In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd sub nom. Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581 (6th Cir. 1986).

[130]    *Kane*, 843 F.2d at 649; *Flintkote Co.*, 486 B.R. at 139; *W.R. Grace & Co.*, 475 B.R. at 115; *see also Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),* 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation"); *accord In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

[131]    *See, e.g., In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (internal citations omitted); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D. N.J. 1996); *In re Tribune Co.,* 464 B.R. 126, 185 (Bankr. D. Del. 2011), *overruled in part on other grounds*, 464 B.R. 208 (Bankr. D. Del. 2011).

[132]    *See United States v. Energy Res.*, 495 U.S. 545, 549 (1990); *Kane*, 843 F.2d at 649; *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) (noting that section 1129(a)(11) "does not require a plan's success to be guaranteed"); *In re Heritage Highgate, Inc.*, 679 F.3d 132, 142 (3d Cir. 2012) (quoting *In re TCI 2 Holdings, LLC*, 428 B.R. at 148).

[133]    *Pizza of Haw*, 761 F.2d at 1382; *In re Kreider,* No. 05-15018 (ELF), 2006 WL 3068834, at *5 (Bankr. E.D. Pa. Sept. 27, 2006).

[134]    *See U.S. Truck*, 47 B.R. at 944.

found that feasibility is established where a debtor has "sufficient resources" to meet its obligations under a liquidating plan, including its "obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Cases."[135]  Other courts have said that, to demonstrate that a liquidating plan is feasible, a plan proponent need only show that "the successful performance of [the plan's] terms is not dependent or contingent upon any future, uncertain event."[136]

104.    Here, the Plan is feasible.[137]  The Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code by providing for a clear path to emergence from these Chapter 11 Cases and the ability of the Debtors to satisfy their obligations under the Plan.  The Debtors project that all Allowed priority and Allowed Administrative Claims under the Plan will be satisfied as outlined in the Plan and Confirmation Order.  As explained in the Maib Declaration, the Plan provides the financial wherewithal necessary to implement the Plan and offers reasonable assurance that the Plan is workable and has a reasonable likelihood of success.[138]  This process will be continued following the Effective Date, under the guidance of the Liquidation Trustee.

105.    Moreover, the value of the Debtors' Estates under the Plan includes, among other things, the Debtors' Cash on hand as of the Effective Date and the Debtors' other assets.[139]  The Debtors project that the distributable value of the Estates will be sufficient to satisfy all Allowed Priority Tax Claims, Allowed Administrative Claims, DIP Claims, Statutory Fees, unimpaired Claims in Class 3A, and provide a recovery to the Allowed Claims in Classes 3B and 4, consistent with the Proposed Confirmation Order.  Accordingly, the Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code, and no party has asserted otherwise.

---

[135]    *In re Finlay Enters., Inc.,* No. 09-14873 JMP, 2010 WL 6580628, at *7 (Bankr. S.D.N.Y. June 29, 2010).

[136]    *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. Aug. 31, 2007) (holding that the creation of a creditor trust with res consisting of estate cash and the proceeds of any future successful litigation in addition to a fixed trust governance mechanism qualified as feasible).

[137]    *See* Maib Decl. ¶¶ 38-39.

[138]    *See id.*

[139]    *See generally* Plan, Art. IV.E.

**M.      All Statutory Fees Have or Will Be Paid in Compliance with Section 1129(a)(12)**

106.      Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan."[140]   Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.[141]

107.      The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article II.F of the Plan provides that all fees due and payable pursuant to section 1930 of title 28 of the United States Code, shall be paid by the Debtors on the Effective Date.[142]   After the Effective Date, any and all Statutory Fees shall be paid to the U.S. Trustee when due and payable, the Liquidation Trustee shall remain obligated to pay the U.S. Trustee Statutory Fees until the earliest of that particular Debtors' case being closed, dismissed, or converted to case under chapter 7 of the Bankruptcy Code.   Accordingly the Plan satisfies section 1129(a)(12), and no party has asserted otherwise.

**N.      The Debtors Have No Retiree Benefit Obligations (Section 1129(a)(13))**

108.      Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.   The Debtors do not have any obligation to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).   Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan, and no party has asserted otherwise.

**O.      Sections 1129(a)(14), (a)(15) and (a)(16) Do Not Apply to the Plan**

109.      Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.   Since the Debtors are not subject to any domestic support obligations, the

---

[140]   11 U.S.C. § 1129(a)(12).

[141]   11 U.S.C. § 507(a)(2).

[142]   Plan Art. II.F.

requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.  Likewise, section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.  Because the Debtors are not an "individual," the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.  Finally, the Debtors are a moneyed, business, or commercial corporation and therefore section 1129(a)(16) of the Bankruptcy Code, which provides that property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust be made in accordance with any applicable provisions of nonbankruptcy law, is not applicable to these Chapter 11 Cases.

**P.      The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code**

110.    Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[143]  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[144]  Here, all Voting Classes have uninmously voted in favor of the Plan.  However, the existence of the Deemed Rejecting Classes requires the Debtors to, nevertheless, satisfy the requirements of section 1129(b).

---

[143]   11 U.S.C. § 1129(b)(1).

[144]   *John Hancock*, 987 F.2d at 157 n.5; *In re Ambanc La Mesa L.P.,* 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

**1.**    **The Plan is Fair and Equitable and Thus Satisfies Section 1129(b)(2)(B) of the Bankruptcy Code**

111.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[145]  This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.

112.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.[146]  Notwithstanding the fact the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.

113.    *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.

114.    *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes.[147]  As a result, the Plan satisfies the fair and equitable standard of section 1129(b)(2)(B) of the Bankruptcy Code, and no party has asserted otherwise.

---

[145]  *Bank of Am.*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,'§ 1129(b)(2)(B)(ii).  That latter condition is the core of what is known as the 'absolute priority rule.'").

[146]  *See* Maib Decl. ¶ 42.

[147]  *See id.*

**2.      The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan in Accordance with Section 1129(b)(1) of the Bankruptcy Code**

115.     Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[148]   In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[149]   A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.

116.     Here, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.[150]   Claims in the Deemed Rejecting Classes are not similarly situated to any other Classes, given their distinctly different legal character from all other Claims and Interests. The Plan's treatment of the Deemed Rejecting Classes is proper because no similarly situated class will receive more favorable

---

[148]   *In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[149]   *See Coram*, 315 B.R. at 349 (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination); *Ambanc La Mesa*, 115 F.3d at 656–57 (same); *Aztec Co.*, 107 B.R. at 589–91 (stating that plan which preserved assets for insiders at the expense of other creditors unfairly discriminated); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (stating that interests of objecting class were not similar or comparable to those of any other class and thus there was no unfair discrimination).

[150]   *See* Maib Decl. ¶ 42.

treatment. The remaining Classes set forth in the Plan have either voted to accept the Plan or are deemed to have accepted the Plan, rendering section 1129(b) of the Bankruptcy Code inapplicable to them.[151] Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan, and no party has asserted otherwise.

**Q.     The Debtors Complied with Sections 1129(d) and (e) of the Bankruptcy Code**

117.    Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[152] The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933. Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

118.    Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because the Chapter 11 Cases are not a "small business case."[153] Thus, the Plan satisfies the Bankruptcy Code's mandatory confirmation requirements, and no party has asserted otherwise.

**R.     Modifications to the Plan**

119.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.[154] Further, when the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan.[155] Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor

---

[151]   *See id.*

[152]   *See* 11 U.S.C. § 1129(d).

[153]   *See* 11 U.S.C. § 1129(e).

[154]   11 U.S.C. § 1127(a).

[155]   *Id.*

or the interest of any equity security holder.[156]   Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[157]

120.    Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan described or set forth in the Proposed Confirmation Order or in any Plan filed prior to the entry of the Proposed Confirmation Order (collectively, the "Plan Modifications") constitute technical or clarifying changes or modifications that do not otherwise materially and adversely affect or change the treatment of any Claim or Interest under the Plan.  These Plan Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Materials (as defined in the Disclosure Statement Order) served pursuant to the Disclosure Statement Order, and notice of these Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

121.    In accordance with Bankruptcy Rule 3019, there are no Plan Modifications that require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, the Plan is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

---

[156]    Bankruptcy Rule 3019.

[157]    *See, e.g., In re Federal–Mogul Global Inc.*, 2007 Bankr. LEXIS 3940, *113 (Bankr. D. Del. 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor"); *Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*, 201 B.R. 376, 380 n. 4 (E.D. Pa. 1996) (further disclosure and solicitation not required under section 1127(b) and (c) where modifications to the plan were immaterial); *In re Global Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc., No. 08-4191 (GEB)*, 2009 WL 438694, at *23 (D. N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

**S.     Good Cause Exists to Waive the Stay of the Proposed Confirmation Order**

122.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."[158] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon court order.

123.    The Debtors submit that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.[159] As noted above, these Chapter 11 Cases and the related transactions have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information.[160] Additionally, each day the Debtors remain in chapter 11, they incur significant administrative and professional costs that directly reduce the amount of distributable value for creditors.[161]

124.    Based on the foregoing, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

### III.     Objections to Confirmation of the Plan Should Be Overruled

**A.     The UST Objection.**

125.    The UST Objection raises two categories of objections: (a) that the Plan's Third-Party Release is non-consensual and therefore impermissible under *Harrington v. Purdue Pharma*

---

[158]   Bankruptcy Rule 3020(e).

[159]   *See, e.g., In re Source Home Entm't, LLC*, No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re GSE Envtl., Inc.*, No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 23, 2013) (same); *In re Gatehouse Media, Inc.*, No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) (same); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) (same).

[160]   *See* Maib Decl. ¶¶ 8, 46.

[161]   See *id.* at ¶ 46.

*L.P.*, 603 U.S. 204 (2024), and (b) that the Plan's injunction provision is overly broad and operates as an impermissible discharge for a liquidating debtor.

126.    First, the U.S. Trustee's arguments regarding the Third-Party Release are substantially identical to the those raised arguments in the U.S. Trustee's objection to conditional approval of the Disclosure Statement [Docket No. 1352], which the Debtors responded to in the Conditional DS Reply.  As set forth in the Conditional DS Reply, the Third-Party Release's opt-out mechanism is consensual and permissible under applicable law.  The Debtors' position is further supported by this Court's own recent rulings.  As this Court has stated, "in light of *Purdue*, there is no prohibition on the use of opt-out releases."  *In re Fisker, Inc.*, No. 24-11390 (TMH) (Bankr. D. Del. Oct. 11, 2024) [D.I. 706] Hr'g Tr. 44:20-45:11.  This Court has further held that creditors who return a ballot and do not check an opt-out box "clearly had the opportunity and did, in fact, review the materials" and that "short of an opt-in, which I'm not prepared to require, I can't think of anything else that would evidence affirmative consent more than having had the opportunity to and actually having returned a ballot and elected not to tick the box to opt out of the releases."  *In re Amerifirst Financial, Inc.*, Case No. 23-11240 (TMH) (Bankr. D. Del. Jan. 13, 2026) [Docket No. 1225] Hr'g Tr. 40-41.  This Court has also approved opt-out third-party releases as applied to parties that returned a ballot and voted on the Plan.  *See In re Norcold, LLC*, No. 25-11933 (TMH) (Bankr. D. Del. Feb. 19, 2026) [Docket No. 295] Hr'g Tr. 51:14-52:16; *In re WEH Liquidating, LLC*, No. 25-11602 (TMH) (Bankr. D. Del. Dec. 17, 2025) [Docket No. 417] Hr'g Tr. 39:11-23.

127.    Consistent with this Court's prior rulings, the Third-Party Release provisions of the Plan have been carefully tailored to comply with applicable and recent precedent.  The definition of "Releasing Parties" is limited to: "(a) the Released Parties; (b) all Holders of Claims or Interests that return a Ballot and do not make a Release Opt-Out Election; and (c) each Related Party of each Entity in the foregoing clauses (a) and (b), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in

clauses (a) or (b)." *See* Plan, Art. I.A.  Under the Plan, "Release Opt-Out Election" is defined as "the timely election to 'opt out' of being a Releasing Party by: (a) for Holders of Claims or Interests that are entitled to vote on this Plan, (i) submitting a Ballot by the Voting Deadline that (1) does not vote to accept the Plan and (2) selects the option set forth on the Ballot to not grant the releases set forth in Article XI of this Plan, or (ii) not returning a Ballot; or (b) filing a written objection to the releases set forth in Article XI of this Plan by the Confirmation Objection Deadline." *Id.* Accordingly, parties who did not return a Ballot—including unimpaired, non-voting creditors— are not bound by the Third-Party Release.  This approach is identical to the release mechanisms approved by this Court in *WEH Liquidating*, *Amerifirst*, and *Norcold*, where the Court overruled substantially similar objections by the U.S. Trustee

128.    The U.S. Trustee's argument that state contract law requires affirmative consent and that silence cannot constitute acceptance is inconsistent with the analytical framework this Court employs.  As the Debtors explained in the Conditional DS Reply, this Court and the majority of courts in this District have adopted a due process analysis—rather than a state contract law analysis—to determine whether opt-out releases are consensual.  *See In re Nikola Corp.*, Case No. 25-10258 (TMH) (Bankr. D. Del. Sept. 5, 2025) [D.I. 1029] Hr'g Tr. 132:3-15 (adopting the due process approach, which prioritizes transparent and prominent notice, over the contract theory approach to determine that opt-outs which did not apply to holders of equity or any non-voting class were permissible).  Under this framework, the affirmative act of returning a ballot, coupled with clear and conspicuous disclosure and a simple mechanism for opting out, constitutes a sufficient expression of consent.  Here, the ballots conspicuously described the Third-Party Release in bold, capitalized font and clearly stated the implications of declining to opt out and granting the releases.  All parties in interest received comprehensive notice of the Third-Party Release and their right to opt out.  As of the Voting Deadline, three Holders of Impaired Claims elected to opt-out of the Third-Party Release, which itself demonstrates that the notice was effective and that the Releasing Parties understood the opt-out mechanism.  *See In re Bowflex Inc.*,

No. 24-12364 (ABA) (Bankr. D. N.J. Aug. 19, 2024) Hr'g. Tr. at 72:6-7 ("The fact that the opt-outs were actually returned demonstrates to this Court the effectiveness of the notice.").

129.    The U.S. Trustee's second objection—that the Plan's injunction provision is overly broad because it references "the Estate" as a defined term and thereby purports to afford the Debtors a discharge in violation of section 1141(d)(3) of the Bankruptcy Code (UST Obj. ¶¶ 22-27)—is also without merit.  Section 1141(d)(3) of the Bankruptcy Code provides that confirmation of a plan does not discharge a debtor if, among other things, the plan provides for the liquidation of all or substantially all of the property of the estate and the debtor does not engage in business after consummation of the plan.  The Debtors do not dispute that they are not entitled to a discharge under section 1141(d)(3). The Plan itself expressly acknowledges this, providing that "[i]n accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtors."  Plan, Art. XI.D.

130.    The injunction provision in Article XI.D of the Plan is not a discharge.  Rather, it is a standard plan injunction that serves two distinct and permissible purposes: (i) it protects the property being distributed under the Plan and the entities distributing it—namely, the Liquidation Trust and the GUC Trust—from actions that would interfere with the orderly administration and distribution of estate assets; and (ii) it enforces the consensual Third-Party Release and exculpation provisions by enjoining Releasing Parties from bringing actions against Released Parties and Exculpated Parties on account of released or exculpated claims.  Both of these purposes are well-recognized as appropriate in this District.  *See, e.g.*, *In re Norcold, LLC*, No. 25-11933 (TMH) (Bankr. D. Del. Feb. 17, 2026) (approving injunction provision in liquidating plan); *In re WEH Liquidating*, LLC, No. 25-11602 (TMH) (Bankr. D. Del. Dec. 17, 2025) (same).

131.    The U.S. Trustee's concern appears to be that the reference to "the Estate" in the injunction provision—which is defined as the estate created under sections 301 and 541 of the Bankruptcy Code—could be read to afford the Debtors themselves a discharge-like protection. This concern is misplaced.  As set forth above, the injunction provision does not operate as a

discharge of the Debtors' personal liability. Rather, the protections afforded to "the Estate" are expressly limited to the property being administered and distributed through the Liquidation Trust and the GUC Trust. Again, the injunction provision here is identical to the provisions approved by this Court in *WEH Liquidating*, *Amerifirst*, and *Norcold*, where substantially similar objections from the U.S. Trustee were overruled. Thus, the injunction provision is appropriate as written and should be approved.

**B.     The Warner Objection.**

132.    The Warner Response seeks to ensure that certain protections afforded to Warner under the Conditional Disclosure Statement Order are preserved in the Proposed Confirmation Order, and reserves Warner Bros.' rights with respect to the Third-Party Release and exculpation provisions to the extent such protections were not so preserved. The Debtors and Warner Bros. have reached agreement in principle on the inclusion of appropriate language in the Proposed Confirmation Order to address Warner Bros.' concerns and consensually resolve the Warner Response. Among other things, the Warner Bros. provision provides that Warner Bros. shall have an Allowed Claim against the applicable Library Debtors' Estates in the amount of $57,045,675.23 (the "Final Award"), in full and final satisfaction of all remaining claims of Warner Bros. against the Debtors' Estates, to be paid on or before May 6, 2026. The Debtors and Warner Bros. are continuing to work collaboratively to finalize the language of the Warner Bros. provision for inclusion in the Proposed Confirmation Order, and the Debtors expect to reach final agreement on such language in advance of the Combined Hearing. Accordingly, the Debtors respectfully submit that the Warner Response does not constitute a basis to deny confirmation of the Plan.

**C.     The Guilds Objection.**

133.    The Guilds Objection seeks to ensure that the Guild Motion Picture Interests are preserved in the Proposed Confirmation Order and that the Union Entities are not bound by the Third-Party Release or exculpation provisions of the Plan to the extent inconsistent with their rights. The Debtors have been engaged in productive discussions with the Union Entities regarding

the reconciliation of the Union Entity Claims, as well as the inclusion of appropriate language in the Proposed Confirmation Order to address the Union Entities' concerns and consensually resolve the Guilds Objection. The Debtors anticipate that such language will be agreed upon prior to the Confirmation Hearing and will be incorporated into the Proposed Confirmation Order. Accordingly, the Debtors respectfully submit that the Guilds Objection does not constitute a basis to deny confirmation of the Plan.

**D.    The GOAT Media Response.**

134.    The GOAT Media Response and related filings raise no legitimate basis to deny confirmation of the Plan.  First, GOAT Media's claims were disallowed by order of this Court [Docket No. 1326].  While GOAT Media has appealed to the District Court, no stay is in place. GOAT Media therefore holds no Allowed Claim against the Debtors' estates, has no economic interest in the Plan or its confirmation, and accordingly lacks standing to object to confirmation. Moreover, GOAT Media's purported objections to the Plan's release provisions—including as set forth in the *Conditional Third-Party Release Framework* filed at Docket No. 1534—are without merit because GOAT Media holds no Allowed Claim against the Debtors' Estates and, accordingly, is not a Releasing Party under the Plan and is not granting any releases thereunder. GOAT Media therefore has no cognizable interest in the Plan's release provisions that would afford it standing to challenge such provisions.

135.    Second, as this Court has acknowledged on multiple occasions, a corporate entity such as GOAT Media cannot appear or be heard in federal court except through licensed counsel. At the March 12, 2026 hearing, this Court denied GOAT Media's Rule 2004 motion on precisely this ground, observing that "the principle that a corporation must appear by counsel is of very ancient origin" tracing back over 800 years, and that the Court was "not going to depart from" that principle. *See* Mar. 12, 2026 Hr'g Tr., at 9:1–10.  Notwithstanding that ruling, GOAT Media has continued to file pleadings in these chapter 11 cases without counsel.  Mr. Pautsch, as GOAT Media's sole manager, is not an attorney and cannot represent GOAT Media in these proceedings,

regardless of his role as its sole member. *See Dougherty v. Snyder*, 469 Fed. Appx. 71, 72 (3d Cir. 2012) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel. . . .   The same applies to LLCs, even those with only a single member, because even single-member LLCs have a legal identity separate from their members."). This is because "the right to conduct business in a form that confers privileges, such as the limited personal liability of the owners for tort or contract claims against the business, carries with it obligations one of which is to hire a lawyer if you want to sue or defend on behalf of the entity." *United States v. Hagerman*, 545 F.3d 579, 581-82 *7th Cir. 2008). Accordingly, GOAT Media's confirmation-related filings should be given no weight and do not constitute a basis to deny confirmation of the Plan.

## CONCLUSION

136.   For all of the reasons set forth herein and in the Declarations, and as will be further shown at the Confirmation Hearing, the Debtors respectfully request that the Court confirm the Plan and approve the Disclosure Statement on a final basis as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Proposed Confirmation Order, overruling any remaining objections, and granting such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank.]*

Dated: April 13, 2026
Wilmington, Delaware

/s/ Joseph M. Mulvihill

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Brynna M. Gaffney (Del. Bar No. 7402)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:      (302) 571-6600
Facsimile:      (302) 571-1253
Email:           jmulvihill@ycst.com
                      bgaffney@ycst.com

*Co-Counsel to the Debtors and Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Telephone:      (312) 499-6300
Facsimile:      (312) 499-6301
Email:           jbernbrock@sheppardmullin.com
                      mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:      (310) 228-3700
Facsimile:      (310) 228-3701
Email:           jnassiri@sheppardmullin.com

-and-

Alyssa Paddock (admitted pro hac vice)
30 Rockefeller Plaza
New York, NY 10112
Telephone:      (212) 653-8700
Facsimile:      (212) 653-8701
Email:           apaddock@sheppardmullin.com

*Counsel to the Debtors and Debtors in Possession*