**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | ) Case No. 25-10475 (TMH) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**DECLARATION OF KEITH MAIB IN SUPPORT OF
APPROVAL OF THE DISCLOSURE STATEMENT ON A FINAL BASIS
AND CONFIRMATION OF THE JOINT PLAN OF LIQUIDATION OF VILLAGE
ROADSHOW ENTERTAINMENT GROUP USA INC. AND ITS DEBTOR AFFILIATES**

I, Keith Maib, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am a Senior Managing Director in the Turnaround & Restructuring practice at Accordion Partners, LLC ("Accordion"),[2] which has served as a restructuring advisor for Village Roadshow Entertainment Group USA Inc. and each of its affiliated debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") since February 20, 2024. Effective January 3, 2025, the Debtors appointed me as their Chief Restructuring Officer. I have led Accordion's engagement with the Debtors.

2. I submit this declaration (this "Declaration") in support of confirmation of the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates*

---

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

[Docket No. 1516-1] (as may be amended, supplemented, or modified from time to time, the "Plan") and entry of the proposed order confirming the Plan (the "Confirmation Order").

3.      In my capacity as Chief Restructuring Officer, I am familiar with the Debtors' business, financial condition, operations, books and records, and restructuring efforts.  I have worked closely with the Debtors' management and advisor teams in connection with the development, negotiation, and implementation of the Debtor's restructuring strategy, including the Plan.  Throughout these Chapter 11 Cases, I have been directly involved in all material aspects of the Debtors' restructuring efforts, including managing the Debtors' cash and operations, overseeing the Debtors' marketing and sale process, analyzing creditor recoveries and liquidation alternatives, and assisting in the negotiation and preparation of the Plan.

4.      Except as otherwise indicated, the statements set forth in this Declaration are based upon (a) my personal knowledge; (b) information provided to me by the Debtors' management and advisor teams; (c) my review of relevant documents and records; and (d) my experience and involvement in these Chapter 11 Cases.  If called to testify, I could and would testify competently to the matters set forth herein.

## I.      Case Background.

5.      On March 17, 2025 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases in the United States Bankruptcy Court for the District of Delaware (the "Court") to pursue a value-maximizing sale process, implement an orderly wind down of the Debtors' affairs, and liquidate and distribute the Debtors' assets.

6.      On April 24, 2025, the Bankruptcy Court entered the Bid Procedures Order [Docket No. 276], approving, among other things, the Bid Procedures, which established key dates and times relating to the Sale and the Auction.  The Bid Procedures Order also granted the relief requested in the Stalking Horse Supplement, including, among other things, the designation of

Alcon as the Stalking Horse Bidder for the Library Assets.  Other than the Alcon Stalking Horse APA, the Debtors did not receive any Qualified Bids for the Library Assets.  Accordingly, on June 20, 2025, the Court entered the Library Assets Sale Order [Docket No. 562], approving the sale of the Library Assets to Alcon.

7.      In accordance with the Bid Procedures Order, the Debtors, in consultation with their advisors and the Consultation Parties, evaluated the Qualified Bids submitted for the Derivative Rights Assets and the Studio Business and conducted the Auction.  The Auction commenced and concluded on May 28, 2025.  At the conclusion of the Auction, the Debtors selected Alcon as the Successful Bidder for the Studio Business and the Derivative Rights Assets.  On August 26, 2025, the Court entered the Studio Business Sale Order [Docket No. 782], approving the sale of the Studio Business to Alcon.  On November 12, 2025, the Court entered the Derivative Rights Sale Order [Docket No. 1043], approving the sale of the Derivative Rights Assets to Alcon.

8.      The Plan is the culmination of the Debtors' restructuring efforts and is designed to distribute the proceeds realized through the Court-approved sales and provide an orderly mechanism for resolving Claims and to wind down the Debtors' affairs.  The Plan is the product of extensive, good-faith, arm's-length negotiations among the Debtors, the Senior Secured Notes Parties, the Committee, Warner Bros., and other key stakeholders in the Debtors' Estates, with all parties working towards a value-maximizing outcome.  I believe that the Plan maximizes stakeholder recoveries and is in the best interest of the Estates.

II.     **The Disclosure Statement Should Be Approved on a Final Basis.**

9.      On February 20, 2026, the Court entered an order [Docket No. 1376] (the "Interim Approval and Procedures Order"), which approved, among other things, the Debtors' proposed solicitation procedures and conditionally approved the adequacy of the Disclosure Statement for solicitation purposes only.  On March 20, 2026, the Debtors filed the *Notice of Plan Supplement*

3

[Docket No. 1456] (the "Plan Supplement"), which included, among other things, the Liquidation Trust Agreement and the GUC Trust Agreement.

10. The Disclosure Statement contains the necessary information for Holders of Claims entitled to vote to make an informed decision about whether to vote to accept or reject the Plan, including, among other things, information regarding: (i) the Plan, including a summary of the procedures for voting on the Plan and projected recoveries thereunder (Art. I); (ii) the statutory requirements for confirming the Plan (Art. I.F); (iii) the Debtors' organizational structure, business operations, and financial obligations (Art. II); (iv) the events leading to the filing of the Chapter 11 Cases (Art. II.D); (v) the major events during these Chapter 11 Cases, including significant pleadings filed, the Committee Settlement, and certain relief granted by the Court (Art. III); (vi) certain risk factors that Holders of Claims should consider before voting to accept or reject the Plan (Art. XV); (vii) the classification and treatment of Claims or Interests under the Plan, including identification of the Holders of Claims entitled to vote on the Plan (Art. IV); (viii) the means for implementation of the Plan, the provisions governing distributions to certain Holders of Claims pursuant to the Plan, the procedures for resolving Disputed Claims and other significant aspects of the Plan (Arts. V, VII, and VIII); (ix) the releases contemplated by the Plan that are integral to the overall settlement of Claims pursuant to the Plan (Art. XI); and (x) certain United States federal income tax consequences of the Plan (Art. XVI).

11. Based on the terms of the Disclosure Statement and the Plan, the events that have occurred before and during these Chapter 11 Cases, and discussions I have had with the Debtors' advisors regarding various orders entered during these chapter 11 cases and the requirements of the Bankruptcy Code, Bankruptcy Rules and Local Rules of this Court, I believe that the Disclosure Statement is comprehensive and contains the type of information necessary to allow

creditors to make an informed decision in voting to accept or reject the Plan. Therefore, I believe the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code.

### III.   The Plan Satisfies the Bankruptcy Code's Requirements for Confirmation.

12.   I am aware that the Debtors must demonstrate that the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. Based on my understanding of the Plan, the events that have occurred throughout these Chapter 11 Cases, and my discussions with the Debtors' professionals, advisors, and management team, I believe that the Plan satisfies the confirmation requirements of sections 1129(a) and (b) of the Bankruptcy Code and should be confirmed.

13.   Section 1129(a)(1). I understand that section 1129(a)(1) of the Bankruptcy Code requires the Plan to comply with the applicable provisions of the Bankruptcy Code. As detailed herein, I have been made aware of information that leads me to conclude that the Plan satisfies this requirement.

14.   Section 1122. I am familiar with the Plan's classification of Claims and Interests, and I believe, after discussions with the Debtors' advisors, that valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims or Interests created under the Plan. Further, each Class contains only Claims or Interests that are substantially similar to other Claims and Interests therein. Moreover, similar Claims and Interests have not been placed into different Classes in order to affect the outcome of the vote on the Plan. Therefore, it is my understanding that the Plan complies with section 1122(a) of the Bankruptcy Code.

15.   Section 1123(a). I believe the Plan complies with section 1123(a) of the Bankruptcy Code, which I understand to set forth the following seven requirements with which every plan under chapter 11 of the Bankruptcy Code must comply.

a.      Section 1123(a)(1).   Article III of the Plan designates all Claims and Interests that I understand to require classification under section 1123(a)(1) of the Bankruptcy Code.  Class 1 comprises Other Secured Claims, Class 2 comprises Other Priority Claims, Class 3A comprises Library Debtors General Unsecured Claims, Class 3B comprises Non-Library Debtors General Unsecured Claims, Class 4 comprises Senior Secured Notes Claims, Class 5 comprises Intercompany Claims, Class 6 comprises Existing Equity Interests, and Class 7 comprises Intercompany Interests.

b.      Section 1123(a)(2).   Article III of the Plan specifies that Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 3A (Library Debtors General Unsecured Claims) are Unimpaired.

c.      Section 1123(a)(3).   Article III of the Plan specifies the treatment of the Impaired Classes, which include Class 3B (Non-Library Debtors General Unsecured Claims), Class 4 (Senior Secured Notes Claims), Class 5 (Intercompany Claims), Class 6 (Existing Equity Interests), and Class 7 (Intercompany Interests).

d.      Section 1123(a)(4).   I understand that the Plan provides the same treatment for each Claim or Interest in a particular Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

e.      Section 1123(a)(5).   I believe that Article IV of the Plan provides adequate means for the implementation of the Plan.  Article IV of the Plan provides for, among other things: (i) the consummation of the Plan, including the wind down and dissolution of the Debtors and the vesting of the assets in each respective Liquidation Trust or GUC Trust, as applicable; (ii) the appointment of the Liquidation Trustee and the GUC Trustee; (iii) the sources of consideration for Plan distributions, including the funding of the Liquidation

Trust and the GUC Trust; (iv) the authorization for the Debtors and/or the Liquidation Trustee (and GUC Trustee), as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (v) the settlement and discharge of Claims and Interests as set forth in the Plan; (vi) the good faith compromise and settlement of all claims or controversies; (vii) the preservation and vesting of Retained Causes of Action with the Liquidation Trust, as applicable; (viii) the treatment of Executory Contracts and Unexpired Leases; (ix) the effectuation of documents and further transactions; (x) the Committee Settlement; and (xi) the cancellation of existing securities and agreements.

f.      Section 1123(a)(6). I understand that section 1123(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases because the Plan does not contemplate the issuance of equity securities.

g.      Section 1123(a)(7). The Plan Supplement identifies Kevin Berg as the Liquidation Trustee. I believe that the selection of Mr. Berg as the Liquidation Trustee is consistent with the interests of creditors and public policy.

16.     Section 1123(b). I have been advised that section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan. As detailed below, I believe the Plan is consistent with section 1123(b).

a.      Section 1123(b)(1). As I understand is permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan provides that each Class is Impaired or Unimpaired, as applicable.

b.      Section 1123(b)(2). As I understand is permitted by section 1123(b)(2) of the Bankruptcy Code, Article V of the Plan provides that each Executory Contract and

Unexpired Lease not previously rejected, assumed, or assumed and assigned (including any Executory Contract or Unexpired Lease assumed and assigned in connection with the Sale), other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date or assumed under the Plan (including but not limited to the D&O Policies), shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code. I understand that section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor" and that the "business judgment" standard applies to determine whether the rejection of an executory contract or unexpired lease should be approved. I further understand that the Executory Contracts listed on Exhibit D to the Plan Supplement will be assumed and assigned to the Liquidation Trust. I believe that any remaining agreements of the Debtors that will be rejected under the Plan no longer benefit or provide any value to the Debtors or their Estates. Absent rejection, such Executory Contracts and Unexpired Leases would cause the Liquidation Trust to incur unnecessary expenses. The rejection of these Executory Contracts and Unexpired Leases will relieve the Liquidation Trust of unnecessary obligations and, thus, represents a sound exercise of the Debtors' business judgment and is in the best interests of their creditors and other parties in interest.

c.      Section 1123(b)(3). As I understand is permitted by section 1123(b)(3) of the Bankruptcy Code, the Plan, negotiated in good faith at arm's-length, provides for the good faith compromise and settlement of numerous Claims, Causes of Action, and controversies held by the Debtors, the Released Parties, and the Releasing Parties, and the Committee, including through the Committee Settlement, which are designed to achieve a

beneficial and efficient resolution of the Chapter 11 Cases for all parties in interest. I believe that each component of the Plan is an integral, integrated, and inextricably linked part of the settlement contemplated thereunder, is fair equitable, and reasonable, and is in the best interest of the Debtors, their Estates, creditors, and all parties in interest.

d.      Section 1123(b)(5). As I understand is permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims or Interests in the Impaired Classes as provided in the Plan and leaves unaffected the rights of Holders of Claims in the Unimpaired Classes.

e.      Section 1123(b)(6). It is my understanding that section 1123(b)(6) of the Bankruptcy Code provides that a plan may include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code. I am unaware of any provision in the Plan that is inconsistent with the Bankruptcy Code. As discussed in greater detail below, Article XI of the Plan provides for certain releases, exculpations and injunctions. These provisions are integral components of the Plan and I believe such provisions are fair and equitable, given for valuable consideration, and in the best interests of the Debtors and their Estates. Moreover, I understand that no party with an economic interest has objected to such provisions, but that the U.S. Trustee filed an objection with respect to the consensual nature of the Third-Party Release and related injunction provisions set forth in Article XI of the Plan.

17.      Release Provisions. Article XI of the Plan provides for the release of claims by the Debtors and their Estates as well as consensual releases of certain claims held by certain of the Debtors' creditors. I believe that the release provisions included in the Plan are integral components of the Plan and the transactions and compromises embodied therein and are

appropriate and necessary under the circumstances.  It is my understanding that the release provisions are consistent with the Bankruptcy Code and comply with applicable case law, including because any "third party" release being granted under the Plan is consensual under prevailing law.

18.    The Plan contains a release of claims of the Debtors and their Estates against the Released Parties relating to, in whole or in part, the Debtors, their Estates, these chapter 11 cases or the other subject matter described in Article XI.A of the Plan (the "Debtor Releases").  The Debtor Releases are a critical component of the Plan.  I understand the Debtor Releases were negotiated as part of the Plan and are an indispensable component to achieve final resolution of potential disputes that would otherwise negatively affect the Debtors' Estates and the recoveries available under the Plan.  It is also my understanding that the Debtor Releases do not release (a) any obligations arising pursuant to or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any obligations of a Purchaser arising under the applicable Asset Purchase Agreement and Sale Order, or (c) any Retained Causes of Action.

19.    I believe the Debtor Releases are warranted because, among other things, each of the Released Parties has provided substantial and valuable contributions to these Chapter 11 Cases. The Released Parties contributed significant time and resources analyzing and negotiating terms of the Plan, the Committee Settlement, and/or other transactions, all of which helped maximize the value of the Debtors' Estates for the benefit of all parties in interest.  The Debtors' professionals, advisors, employees, directors, managers, members, and officers all substantially contributed to these cases.  Among other things, these parties expended significant efforts on

behalf of the Debtors prior to and throughout these Chapter 11 Cases to effectuate the transactions set forth in the Plan. These parties oversaw and meaningfully participated in the Sale and Plan processes, negotiated in good faith the provisions contained in the Committee Settlement and the business terms of the Asset Purchase Agreements, as well as contributed to the Plan confirmation process to maximize value for the Debtors' Estates. These parties also were involved in other aspects of these Chapter 11 Cases, including administration of the Estates in compliance with the requirements of the Bankruptcy Code, litigating contested matters, attending Court hearings and numerous board meetings, and negotiating and documenting transactions during the prepetition and postpetition periods critical to the success of these Chapter 11 Cases. I believe the Debtor Releases are fair, reasonable, and necessary to protect these individuals who helped the Debtors navigate orderly liquidation and wind down. Without the contribution of each of the Released Parties, significant value of the Debtors' Estates and assets very likely would have been lost to the detriment of all creditors.

20.     I believe that the Debtor Releases are an essential component of the Plan, constitute a sound exercise of the Debtors' business judgment, and are in the best interests of the Debtors, their Estates, and creditors. For the reasons set forth in the *Debtors' Memorandum of Law in Support of Approval of the Disclosure Statement on a Final Basis and Confirmation of the Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates and Omnibus Reply to Objections to Confirmation*, filed contemporaneously herewith, I am advised that the Debtor Releases are appropriate and should be approved.

21.     I understand that the Plan also provides for wholly consensual releases by certain non-Debtors against the Released Parties as described in Article XI.B of the Plan (collectively, the "Third-Party Release"). The Third-Party Release is consensual and narrow in scope and

provides only for releases of claims held by Releasing Parties. Further, the Third-Party Release is an integral part of the implementation of the Plan in that it facilitated the participation in, and the negotiation and formulation of, the Committee Settlement and the Plan. The Released Parties provided substantial contributions and support to these Chapter 11 Cases and the Plan. Absent these parties' support, I do not believe the Debtors would be able to confirm the Plan.

22.     Article XI.B of the Plan provides for releases by Holders of Claims and Interests that are entitled to vote on the Plan and either (i) submitted a Ballot that votes to accept the Plan, or (ii) submitted a Ballot that does not vote to accept the Plan and does not check the opt-out box, in each case as described in the Plan and the Disclosure Statement. The solicitation materials clearly and conspicuously disclosed the Third-Party Release provisions and provided a mechanism to opt out of granting such releases. The Voting Declaration reflects that certain parties elected to opt out, demonstrating that the opt-out mechanism was effective. The Third-Party Release is therefore consensual in nature and was a material component of the negotiated resolution embodied in the Plan.

23.     Exculpation Provision. In addition to the releases discussed above, I understand that Article XI.C of the Plan provides for the exculpation of the Exculpated Parties for claims arising out of or relating to, among other things, the Debtors, these Chapter 11 Cases, and the negotiations and agreements made in connection therewith (the "Exculpation Provision"). I further understand that the Exculpation Provision carves out acts or omissions that are determined in a final order to have constituted gross negligence, bad faith or willful misconduct. For many of the same reasons supporting the Debtor Releases, I believe that the Exculpated Parties have participated in the Debtors' Chapter 11 Cases in good faith and that the Exculpation Provision is necessary to protect the Exculpated Parties from collateral attacks related to any good faith acts or

omissions related to the Debtors' Chapter 11 Cases. Further, I believe that the scope of the Exculpation Provision is appropriately tailored to conform to what I am advised are the applicable legal standards for such exculpation provisions that have been determined to be appropriate by this Court and others. Finally, I understand that the Debtors have limited the applicability of the Exculpation Provision to estate fiduciaries.

24.      Injunction Provision. I am advised that the injunction provision contained in Article XI.D of the Plan is necessary to, among other things, enforce the release and exculpation provisions of the Plan. I am further advised that the injunction provision is appropriately tailored to achieve that purpose and to preserve Estate assets.

25.      Section 1129(a)(2). Based on my review of the Plan and my discussions with the Debtors' advisors, it is my understanding that the Debtors have complied with all notice, solicitation and disclosure requirements set forth in the Interim Approval and Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with the Plan. It is also my understanding that, as evidenced by the affidavits of service filed on March 5, 2026 [Docket No. 1429], the Debtors have complied with all previous orders of the Court regarding solicitation and tabulation of votes, including the Interim Approval and Procedures Order, and the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law with respect to the foregoing.

26.      Section 1129(a)(3). I believe that the Debtors have proposed the Plan in good faith and not by any means forbidden by law. The Debtors' good faith and honest purpose in proposing and pursuing the Plan has always been maximizing recoveries to creditors and making distributions as quickly as possible under the circumstances. Good faith is further evidenced by the overwhelming acceptance of the Plan by the voting creditors. I believe that the Plan is

fundamentally fair to all stakeholders and has been proposed with the legitimate purpose of maximizing value for the Debtors' creditors.

27.     Section 1129(a)(4).  Based on my review of the Plan and my discussions with the Debtors' advisors, it is my understanding that all payments made or to be made by the Debtors for services or for costs or expenses in connection with these chapter 11 cases, including all Professional Fee Claims, have been approved by, or remain subject to approval of, the Court, as reasonable.  Therefore, it is my understanding that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

28.     Section 1129(a)(5).  The Plan identified Kevin Berg as the Liquidation Trustee who will oversee the Liquidation Trust and the winding down of the Estates. Article IV of the Plan provides for the dissolution of the Debtors and the discharge of all directors, managers, members, and officers of the Debtors.  In addition, Article IV of the Plan provides that the Debtors shall be, subject to the terms of the Plan, disposed of, dissolved, wound down, or liquidated under applicable law as soon as practicable after the Effective Date.   Therefore, it is my understanding, in consultation with the Debtors' advisors, that the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

29.     Section 1129(a)(6).  I am advised that, because the Plan does not provide for any rate changes by the Debtors, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

30.     Section 1129(a)(7).  I understand that the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired claim or interest either (a) accept the Plan; or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

31.     To analyze the Plan's compliance with section 1129(a)(7) of the Bankruptcy Code, I and other Company personnel working directly with me or under my supervision assisted the Debtors in preparing the Liquidation Analysis, which contains various estimates and assumptions, all of which are incorporated herein by reference.

32.     As illustrated in the Liquidation Analysis, I believe that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code, because—due to higher anticipated costs to the estates in a hypothetical chapter 7 case as compared to under the Plan in these Chapter 11 Cases—all Holders of Impaired Claims and Interests either voted to accept the Plan or will receive property with a value as of the Effective Date not less than the value such Holders would receive in a liquidation under chapter 7.

33.     Critically, the Debtors have already consummated value-maximizing sales of substantially all of their assets, and the Debtors have reasonably projected the costs of administering the Estates under the Plan, including for making disbursements to Holders of Allowed Claims or Interests.   The Liquidation Analysis reflects the reasonable assumption that a chapter 7 trustee would earn a commission on the amount of his or her disbursements to parties in interest, in compliance with the statutory cap set forth in section 326(a) of the Bankruptcy Code. I believe that the costs incurred by a chapter 7 trustee would exceed the corresponding costs of administering the estates under the Plan.

34.     In sum, because of this anticipated disparity in the total liquidation fees and costs, it is my opinion that Holders of Impaired Claims and Interests will receive property of equal or greater value, as of the Effective Date, under the Plan than they would receive in a chapter 7 case.

35.     Section 1129(a)(8).  I understand from the Debtors' advisors that Classes 1, 2, and 3A are Unimpaired and deemed to accept the Plan, Classes 3B and 4 have voted to accept the Plan,

and Classes 5, 6, and 7 are Impaired and deemed to reject the Plan. Based on discussions with the Debtors' advisors, however, it is my understanding that the Plan is nonetheless confirmable because it satisfies section 1129(a)(10) and section 1129(b) of the Bankruptcy Code.

36.   Section 1129(a)(9). It is my understanding that Article II.A of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Claim shall receive payment as follows: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, forty-five (45) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.. Thus, I believe that the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

37.   Section 1129(a)(10). As set forth in the Voting Declaration, filed contemporaneously herewith, Classes 3B and 4, each an Impaired Class, voted to accept the Plan independent of any insiders' votes. Thus, I believe that the Plan satisfies section 1129(a)(10)'s requirement of obtaining acceptance from at least one impaired accepting class under the Plan.

38.   Section 1129(a)(11). I am advised by the Debtors' professionals that section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible prior to confirmation, i.e., it is not likely to be followed by liquidation or the need for further financial reorganization. I understand that, in the context of the Plan, the feasibility test requires that the Court determine whether the Plan may be implemented and has a reasonable likelihood of success.

39.     It is my belief that the Plan is feasible in that, at a minimum, there are adequate means of implementation.   The Plan provides for reasonable procedures by which the Debtors and the Liquidation Trustee may make the necessary distributions under the Plan.   Therefore, I believe the Plan is feasible because it: (i) provides the financial wherewithal necessary to implement the Plan; and (ii) offers reasonable assurance that the Plan is workable and has reasonable likelihood of success.   Accordingly, based upon the foregoing, it is my belief that the Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

40.     Section 1129(a)(12).  Based on my review of the Plan, and my discussions with the Debtors' advisors, Article II.F of the Plan provides that all fees due and payable pursuant to section 1930 of title 28 of the United States Code, shall be paid by the Debtors on the Effective Date, and there is sufficient cash to pay these fees on the Effective Date.  After the Effective Date, any and all Statutory Fees shall be paid to the U.S. Trustee when due and payable, the Liquidation Trustee shall remain obligated to pay the U.S. Trustee Statutory Fees until the earliest of that particular Debtors' case being closed, dismissed, or converted to case under chapter 7 of the Bankruptcy Code.

41.     Sections 1129(a)(13)–(16).  Based on my discussions with the Debtors' advisors, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan because the Debtors do not have any "retiree benefits" as that term is defined in section 1114(a) of the Bankruptcy Code. Additionally, based on my review of the Plan and my discussions with the Debtors' advisors, sections 1129(a)(14)–(16) of the Bankruptcy Code are inapplicable because the Debtors are not: (a) required to pay any domestic support obligations, (b) an individual, or (c) a nonprofit corporation or trust.

42.     Section 1129(b).  Based on my discussions with the Debtors' advisors, it is my understanding and belief that the Plan does not discriminate unfairly, and I believe the Plan is fair and equitable with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, the Plan.  Specifically, I understand that Classes 5, 6, and 7 are Impaired and deemed to reject the Plan.  It is my understanding that the Plan is fair and equitable with respect to, and does not discriminate unfairly against, Intermediate Classes 5, 6, and 7 because no Claims or Interests junior to such Classes will receive or retain property under the Plan on account of such junior Claims or Interests.  Further, there is no Class of equal priority to Classes 5, 6, and 7 that is receiving better treatment under the Plan and, therefore, the Plan does not discriminate between such Classes and any Class of equal priority.

43.     Section 1129(c).  The Plan is the only plan that has been filed, and, therefore, it complies with the requirements of section 1129(c) of the Bankruptcy Code.

44.     Section 1129(d).  I believe that the Plan satisfies section 1129(d) of the Bankruptcy Code because it has not been filed for the purpose of avoiding taxes or the application of section 5 of the Securities Act of 1933.

## IV.     The Exercise of the Debtors' Business Judgment in Allowing Claims and Formulating the Plan Is Appropriate.

45.     From the outset of these Chapter 11 Cases, the Debtors, in conjunction with their advisors, have engaged with various stakeholders to reach the best outcome for the Debtors' Estates and their creditor constituencies.  The Debtors and their advisors have negotiated diligently with these parties for several months to secure important concessions and maximize value for the Estates, including by obtaining voting support to approve the Plan.  These concessions and contributions have allowed the Debtors to propose a plan of liquidation that provides for the efficient and prompt distribution of estate assets to the Debtors' creditor constituencies.  The Plan

is the product of months of diligence and negotiations, and I believe it implements a value-maximizing liquidation that will inure to the benefit of the Debtors and all stakeholders.

**V.      Cause Exists to Waive the Stay of the Confirmation Order.**

46.      I have been advised that Bankruptcy Rule 3020(e) generally provides a fourteen (14)-day stay of the effectiveness of an order confirming a chapter 11 plan, unless the Court orders otherwise.   I understand a stay of such order will delay the Debtors' implementation of the Plan, extending the time that the Debtors must remain in chapter 11.   The Plan (including all documents necessary to effectuate the Plan) is the product of extensive, good-faith negotiations among the Debtors and their key stakeholders.   I believe that extending the length of time that the Debtors remain in chapter 11 would unnecessarily increase the administrative and professional costs incurred by the Debtors' Estates, which would directly reduce the amount of distributable value for creditors.   For all of these reasons, I believe the Court should grant the Debtors' request to waive the stay imposed by the Bankruptcy Rules so that the Court's order confirming the Plan may be effective immediately upon its entry.

**VI.     Conclusion.**

47.      In light of the foregoing, and based upon discussions with the Debtors' professionals and my familiarity with the Plan, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice, and Procedure of the United States Bankruptcy Court for the District of Delaware, and other applicable non-bankruptcy laws as they have been explained to me, and was proposed in good faith and negotiated at arm's length.

48.      I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and respectfully request, and as set forth above, that the Plan

should be confirmed and that all of the actions and transactions contemplated by the Plan should

be approved.


Dated: April 13, 2026

By:   /s/ Keith Maib
      Keith Maib
      Chief Restructuring Officer

20