**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | ) Case No. 25-10475 (TMH) |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) **Ref. Docket Nos. 1317 & 1456** |
| | ) |

## NOTICE OF FILING OF AMENDED PLAN SUPPLEMENT

**PLEASE TAKE NOTICE** that, on January 29, 2026, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") filed the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates* [Docket No. 1317] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan")[2] with the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that, on March 20, 2026, the Debtors filed the Notice of Filing of Plan Supplement [Docket No. 1456] (as may be amended, supplemented, or otherwise modified from time to time, the "Original Plan Supplement").

**PLEASE TAKE FURTHER NOTICE** that the Original Plan Supplement is hereby supplemented (as amended, amended and restated, and/or supplemented herein, and as may be further amended, supplemented, or otherwise modified from time to time, the "Plan Supplement"), to include amended and restated contents, as set forth below:

| Exhibit | Plan Supplement Document |
|---|---|
| A | Liquidation Trust Agreement |
| B | GUC Trust Agreement |
| D | Assumed Executory Contracts and Unexpired Leases |

---

[1]   The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343.  The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan Supplement as amended and restated is attached hereto as **Exhibit 1**. For the benefit of the Court and other parties in interest in these chapter 11 cases, a blackline comparing the Plan Supplement against the Original Plan Supplement is attached hereto as **Exhibit 2**. For the avoidance of doubt, no amendments, restatements, or supplements have been made to the Retained Causes of Action, attached to the Original Plan Supplement as Exhibit C.

**PLEASE TAKE FURTHER NOTICE** that the respective rights of the Debtors and certain other parties in interest are expressly reserved, subject and pursuant to the terms and conditions set forth in the Plan, to amend, revise, or supplement the Plan Supplement and any of the documents and designations contained herein in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any other order of the Court.

**PLEASE TAKE FURTHER NOTICE** that the Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth therein in full. The documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is approved, the documents contained in the Plan Supplement shall also be approved.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek confirmation of the Plan and final approval of the Disclosure Statement at the Combined Hearing to be held before the Honorable Thomas M. Horan, United States Bankruptcy Judge, in Courtroom 7 of the United States Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, on April 16, 2026 at 1:00 p.m. (prevailing Eastern Time). The Combined Hearing may be further continued from time to time without further notice other than the advisement or announcement of the adjourned date(s) by the Debtors in open court or by the filing of a notice or hearing agenda on the docket.

**PLEASE TAKE FURTHER NOTICE** that the Plan, the Disclosure Statement, and related documents are accessible, free of charge, on the following website maintained by the Debtors' claims, balloting, and noticing agent, Verita Global LLC (the "Solicitation Agent"): https://veritaglobal.net/vreg. Copies of the Plan, the Disclosure Statement, and related documents may also be obtained free of charge: (a) by contacting the Solicitation Agent by phone at (866) 526-6865 (U.S. / Canada, toll-free) or +1 (781) 575-2076 (International, toll); or (b) by submitting an email inquiry at https://veritaglobal.net/vreg/inquiry. The Plan, the Disclosure Statement, and related documents are also available for a fee through the Bankruptcy Court's electronic case filing system at https://ecf.deb.uscourts.gov/ using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).

[*Remainder of Page Intentionally Left Blank*]

Dated: April 16, 2026
Wilmington, Delaware

/s/ Joseph M. Mulvihill

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Brynna M. Gaffney (Del. Bar No. 7402)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:      (302) 571-6600
Facsimile:      (302) 571-1253
Email:          jmulvihill@ycst.com
                bgaffney@ycst.com


*Co-Counsel for the Debtors and*
*Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone:      (312) 499-6300
Facsimile:      (312) 499-6301
Email:          jbernbrock@sheppardmullin.com
                mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone:      (310) 228-3700
Facsimile:      (310) 228-3701
Email:          jnassiri@sheppardmullin.com

-and-

Alyssa Paddock (admitted *pro hac vice*)
30 Rockefeller Plaza, 39th Floor
New York, NY 10112
Telephone:      (212) 653-8700
Facsimile:      (212) 653-8701
Email:          apaddock@sheppardmullin.com

*Co-Counsel for the Debtors and*
*Debtors in Possession*

## EXHIBIT 1

### Plan Supplement

# EXHIBIT A

## Liquidation Trust Agreement

## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This Liquidating Trust Agreement and Declaration of Trust (the "Agreement"), dated as of [DATE], 2026, is made by and among Village Roadshow Entertainment Group USA Inc., and its affiliated chapter 11 debtors and debtors in possession (collectively, the "Debtors") and Kevin Berg (together with any successors, the "Trustee", and together with the Debtors, the "Parties").

## RECITALS

A       On March 17, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Village Roadshow Entertainment Group USA Inc, et al.*, Case No. 25-10475 (TMH).

B       On March 27, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee") [Docket No. 103].

C       On April [ ], 2026, the Bankruptcy Court entered the *[CONFIRMATION ORDER NAME]* [Docket No. __] (the "Confirmation Order"), which confirms the [*Debtors' Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates*] [Docket No. 1359] (as confirmed, including all amendments and supplements thereto, the "Plan").

D       The Plan and Confirmation Order provide for the establishment of a liquidating trust (the "Trust"), effective as of the Effective Date of the Plan.

E       The Trust is established pursuant to the Plan for the benefit of Holders of Liquidation Trust Interests (collectively, the "Beneficiaries").

F       The Trust is established for the purpose of maximizing the value of the Liquidation Trust Assets (as defined in the Plan), and making distributions in accordance with the Plan, Confirmation Order, and this Agreement, including resolving any Disputed Claims not to be resolved by the Debtors prior to the Effective Date and winding down of the Debtors and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

G       Pursuant to the Plan, the Debtors, the Trust, the Trustee, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidation Trust Assets to the Trust as a transfer of the Liquidation Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidation Trust Assets by the Beneficiaries to the Trust in exchange for their respective Liquidation Trust Interests, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

H       The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of Sections 641(a) and 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and (ii) to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d).

-1-

I        The Trust is further intended to be exempt from the requirements of, pursuant to section 1145 of the Bankruptcy Code, (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act.

NOW, THEREFORE, in consideration of the promises, and the mutual covenants and agreements of the Parties herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to, and effective on the Effective Date do hereby, create the Trust which shall bear the name "Village Roadshow Liquidating Trust" pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Liquidation Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns free and clear of all claims, liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan, in trust for the benefit of the Beneficiaries, for the uses and purposes stated in the Plan and this Agreement;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidation Trust Assets, including any assets contributed and transferred to the Trust after the Effective Date, and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan and Confirmation Order.

## ARTICLE I
## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS,
## INTERPRETATION, AND CONSTRUCTION

1.1     Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2     Terms Defined in Plan. Any capitalized term used and not defined herein shall have the meaning assigned to such term in the Plan and the Confirmation Order, as applicable.

1.3     Interpretation. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     Construction of Agreement. Except as specifically stated otherwise, this Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5     Conflict Among Plan Documents. In the event of any inconsistency between the Plan and the Confirmation Order, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence. Notwithstanding the foregoing, in the event of any inconsistency solely between this Agreement and Article VIII.E of the Plan, this Agreement controls.

**ARTICLE II**
**ESTABLISHMENT OF TRUST**

2.1     Effectiveness of Agreement; Name of Trust. Pursuant to the Plan and the Confirmation Order, this Agreement shall become effective on the Effective Date.

2.2     Purpose of Trust. The Debtors and the Trustee hereby create the Trust for the primary purpose of (i) maximizing the value of the Liquidation Trust Assets and making distributions, (ii) resolving any Disputed Claims not resolved by the Debtors prior to the Effective Date and (iii) winding down the Debtors, in accordance with the Plan, Confirmation Order and this Agreement; and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     Transfer of Liquidation Trust Assets.

2.3.1     Conveyance of Liquidation Trust Assets. In accordance with Article VIII.C of the Plan, the Debtors irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the Liquidation Trust Assets to the Trust in the manner provided in section 2.3.2 of this Agreement in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order. The Trust is further authorized to accept and receive transfers or contributions of any Liquidation Trust Assets or the proceeds thereof from the Debtors or the GUC Trust after the Effective Date. The transfer of the Liquidation Trust Assets to the Trust, including the transfer of any such assets after the Effective Date, shall be exempt from any stamp, transfer, recording, sales, use or similar tax. The Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtors shall take or cause to be taken such further action, as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Liquidation Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2     Title to Liquidation Trust Assets. On the Effective Date, all of the Debtors' right, title, and interest in and to the Liquidation Trust Assets are automatically vested in the Trust, free and clear of all liens, claims, encumbrances, and other interests, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust is authorized to obtain possession or control of, liquidate, and collect all of the Liquidation Trust Assets; pursue all of the Retained Causes of Action; and pursue, assert, and exercise all rights of

setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Retained Causes of Action. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all such property as Liquidation Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.3.3   Upon delivery of the Liquidation Trust Assets to the Trust, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidation Trust Assets or the Trust.  Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidation Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

2.4   Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, in furtherance of its stated purpose, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state, or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5   Mutual Cooperation. The Debtors and their professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the Liquidation Trust Assets. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate reasonable access to any evidence and information the Trustee reasonably requests (including but not limited to reasonable access to the Debtors' books and records, as applicable) in connection with the Trust's investigation, prosecution, or other pursuit of the Retained Causes of Action.

The Trustee and his professionals shall use commercially reasonable efforts to cooperate with the Debtors, the GUC Trustee, and their respective professionals, as applicable, in connection with implementing certain provisions of the Plan including, but not limited to, the issuance of Plan Distributions pursuant to the Plan, reporting requirements, the exchange of information in the prosecution of claim objections to the extent necessary, and any other reasonably requested information or assistance.

2.6   No Retention of Excess Cash. The Trustee shall distribute all amounts not required to be retained or otherwise reserved in accordance with the Plan, Confirmation Order, or this Agreement, to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, Confirmation Order, and this Agreement.

2.7   Acceptance by Trustee. The Trustee accepts its appointment as trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement and the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Beneficiaries, by the Debtor of all of the Debtor's respective rights, titles, and interests in the Liquidation Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan,

and in the Confirmation Order.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise.  The Trustee shall have the authority to bind the Trust in accordance with, and within the limitations set forth in this Agreement, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

## ARTICLE III
## ADMINISTRATION OF TRUST

3.1     <u>Rights, Powers, and Privileges of Trustee Generally</u>. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Liquidation Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust shall control and exercise authority over the Liquidation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust consistent with the Trustee's fiduciary duties in accordance with this Agreement, the Plan, and the Confirmation Order. In administering the Liquidation Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Liquidation Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1   <u>Power to Contract</u>. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2   <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2     <u>Powers of Trustee</u>. Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust without need for further approval by the Bankruptcy Court except as specifically set forth herein, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1   hold legal title to the Liquidation Trust Assets and to all rights of the Debtors and the Beneficiaries in or arising from the Liquidation Trust Assets;

3.2.2   receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Liquidation Trust Assets, including causing the Trust to invest

any moneys held as Liquidation Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3    open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4    establish and maintain the Liquidating Trust Reserve Fund (as defined herein);

3.2.5

3.2.6    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.2.7    collect and liquidate all Liquidation Trust Assets, including the sale of any Liquidation Trust Assets;

3.2.8    protect and enforce the rights to the Liquidation Trust Assets (including any Retained Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.9    investigate any Liquidation Trust Assets, including potential Retained Causes of Action, and cause the Trust to seek the examination of any Person pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or other applicable rules;

3.2.10   cause the Trust to employ professionals and other agents and third parties pursuant to this Agreement;

3.2.11   cause the Trust to pay all its lawful expenses, debts, charges, taxes, and other liabilities, including all fees and expenses of professionals retained by the Trustee or the Trust, and make all other necessary or advisable payments relating to the Liquidation Trust Assets;

3.2.12   cause the Trust, to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Retained Causes of Action;

3.2.13   consistent with the Plan, cause the Trust, as appropriate, to review, investigate, settle, resolve, reconcile, or object to all Claims;

3.2.14   establish, adjust, and maintain reserves for Disputed Claims;

3.2.15   cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, in good faith and based upon the advice of its agents or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.16  in reliance upon the Debtors' schedules and the Claims Register, maintain a register evidencing the beneficial interests in the Trust held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the Claims Register;

3.2.17  cause the Trust to (a) make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC Section 671 and Treasury Regulations Section 1.671-4 pursuant to and in accordance with the Plan and Article VIII hereof, and, to the extent any applicable state or local jurisdiction does not follow federal grantor trust reporting rules or otherwise requires separate entity-level tax filings, cause the Trust to file such additional state or local tax returns as may be required, (b) pay taxes, if any, payable for and on behalf of the Trust, and (c) file any reports, either state or federal, that may be required to disclose the ultimate Beneficiaries of the Trust;

3.2.18  cause the Trust to abandon or donate to a charitable organization any Liquidation Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries in accordance with the terms of the Plan;

3.2.19  cause the Trust to send annually to Beneficiaries, no later than March 15 of each calendar year with respect to the preceding tax year, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.20  cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.21  cause the Trust to establish such reserves for taxes, assessments, and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.22  consistent with section 3.12 hereof, cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable, including appropriate insurance coverage for the benefit of the Trust and the Trustee, and to pay all associated premiums and costs;

3.2.23  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust; and

3.2.24  take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     General Authority of Trustee. Unless specifically stated otherwise herein, the Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (a) authorized under this Agreement or (b) specifically contemplated in the Plan or Confirmation Order.  For the avoidance of doubt, the Trustee shall not be required to file any

employment or fee applications to engage or pay any professionals, and the Trustee shall not be required to file any application under Rule 9019 of the Federal Rules of Bankruptcy Procedures or section 363 of the Bankruptcy Code to resolve, settle, transfer, or dispose of any Liquidation Trust Assets.

3.4     Exclusive Authority to Pursue Retained Causes of Action. Subject to the Trustee's fiduciary duties and available funds and resources and following consultation with the Beneficiaries, the Trust shall have the exclusive right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the Retained Causes of Action. The Trust shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Retained Causes of Action. The Trust shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Trust to any counterclaims that may be asserted by any defendant with respect to any Retained Cause of Action. The Trust shall also be vested with and entitled to assert all the Debtors' and the Estates' rights with respect to any such counterclaims under section 558 of the Bankruptcy Code.

3.5     Abandonment. If, in the Trustee's reasonable judgment, any non-cash Liquidation Trust Assets cannot be sold or liquidated in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization, in accordance with the terms of the Plan.

3.6     Agents and Professionals. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously or currently retained by the Debtors or the Committee.

3.7     Safekeeping and Investment of Liquidation Trust Assets. All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but (except as provided in the Plan or this Agreement) need not be segregated in separate accounts from other Liquidation Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and only to the extent that the Trustee is directed to invest moneys other than in short-term money market funds, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided, however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of any state law obligating or creating a duty on a trustee to invest trust assets shall not apply to this

-8-

Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8    Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of Liquidation Trust Assets, including receipts and disbursements and other activity of the Trust. To the extent of any Claims reflected thereon, the Claims Register may serve as the Trustee's register of holders of Claims. The fees and costs associated with maintaining and updating the Claims Register shall be the sole responsibility of the Trust. The books and records maintained by the Trustee, and any records of the Debtors transferred to the Trust, may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9    Preservation of Privilege. As provided in the Plan and Confirmation Order, any attorney-client privilege, work-product privilege, or other privilege or immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Trust shall vest in the Trust and be jointly held by the Debtors and the Trust on and after the Effective Date.  The Trustee's receipt of any information subject to any privilege or similar protection shall not waive any applicable privileges or protections, and all such privileges and protections are expressly preserved.

3.10    Reports to be Filed by the Trustee. The Trustee shall file with the Bankruptcy Court quarterly operating reports on behalf of the Trust, as required by the Office of the United States Trustee, until entry of a final decree closing the last of the Chapter 11 Cases.

3.11    No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Trustee is hereby authorized to obtain all reasonable insurance coverage for itself, the Trust, and its members, agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the Trustee and its respective members, agents, representatives, employees, or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Liquidation Trust Assets.

## ARTICLE IV
## PLAN DISTRIBUTIONS

4.1    Distribution. Following the transfer of Liquidation Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Liquidation Trust Assets through the Trustee subject to the reserves required under the Plan or this Agreement. For avoidance of doubt, the Trustee, or an agent appointed by the Trustee, may make periodic distributions in accordance with the terms of the Plan at any time (except that the Trust may retain an amount of net income or net proceeds necessary to maintain the value of its assets or to meet claims and contingent liabilities to the extent permissible in accordance with the

requirements of Treasury Regulations Section 301.7701-4(d)). For the further avoidance of doubt, any Liquidation Trust Assets received from the GUC Trust shall be distributed in accordance with Article III.B.4 of the Plan.

4.2     Reserve of Liquidation Trust Assets. Subject to the rights of the Union Entities (as defined in the Confirmation Order) set forth in paragraph 110 of the Confirmation Order, and following payment of the Final Award and the Allowed Class 3A K&E Claim (each as defined in the Confirmation Order), the Trustee shall maintain a reserve (the "Liquidating Trust Reserve Fund") in an amount not to exceed $5,500,000 in the aggregate.[1]   The Liquidating Trust Reserve Fund may be used to pay the costs and expenses incurred or expected to be incurred by the Trust and Trustee in connection with administering the Liquidation Trust Assets and performing the duties set forth in this Agreement, including, without limitation, paying the fees and expenses of the Trustee and professionals retained by the Trust or Trustee (the "Liquidating Trust Expenses"), subject to the rights of the Union Entities as set forth in paragraph 110 of the Confirmation Order.

4.3     Distributions on Account of Disputed Claims. Except as otherwise provided in the Plan, by Final Order, or as agreed by the relevant parties, distributions on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made by the Trustee as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order.

4.4     No Distributions Pending Allowance. Notwithstanding anything herein to the contrary, no distribution will be made with respect to any Claim unless and until such Claim becomes an Allowed Claim; *provided*, *however*, that to the extent a Claim contains both Disputed and Allowed amounts, distributions on account of the non-Disputed portion of such Claim may be made at the Trustee's discretion.

4.5     Legal Proceedings. If any Retained Cause of Action is asserted and if such claim or any other legal proceeding is initiated or prosecuted against any creditor pursuant to the Plan, Confirmation Order, or this Agreement, or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan or Confirmation Order, until such proceeding or contested matter is finally resolved and all payments to the Estates or the Trust, as applicable, required by such resolution have been made, such creditor shall only receive distributions under the Plan or Confirmation Order to the extent that the distributions to which such creditor is otherwise entitled exceed the maximum liability of such creditor to the Estates or the Trust, as applicable, asserted in such proceedings.

4.6     Objection Deadline. On and after the Effective Date, the Trustee shall be entitled to file objections to all Claims. As provided in the Plan, any objections to Claims shall be filed on or before the date that is 90 days after the Effective Date, which date may be extended upon presentment of an order to the Bankruptcy Court by the Trustee.

4.7     Settling Disputed Claims. Following the Effective Date, the Trustee is authorized to (i) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to all

---

[1]     For the avoidance of doubt, the Liquidating Trust Reserve Fund amount is inclusive of the $5,000,000 Guild Claims Reserve amount as set forth in paragraph 110 of the Confirmation Order.

Claims or Interests, provided, however, that the Trustee shall consult with the GUC Trustee prior to filing an objection to any Non-Library Debtors General Unsecured Claim; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.   The Trustee shall promptly notify the GUC Trustee in writing when the Claims reconciliation process is complete.

4.8     Distributions Net of Costs. Distributions shall be made net of the actual and reasonable costs of making the distributions.

4.9     Setoff. The Trustee, pursuant to the Plan, the Bankruptcy Code (including Bankruptcy Code section 553), and applicable bankruptcy or nonbankruptcy law, may, but shall not be required to, set off against any Allowed Claim and the Plan Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Plan Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or Trust may have against the Holder of such Allowed Claim, *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Trustee of any such claim the Debtors or Trust may have against the Holder of such Claim.

4.10     Taxes. Pursuant to Bankruptcy Code section 346(f), the Trustee will be entitled to deduct and withhold any federal, state, or local taxes from any Cash payments made with respect to Allowed Claims.

4.11     Withholding from Plan Distributions. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. Notwithstanding anything herein to the contrary, each Holder of an Allowed Claim that has received a Plan Distribution of Cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such Plan Distribution. For tax purposes, Plan Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.   All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to the applicable Beneficiary for all purposes of this Agreement.

4.12     Method and Timing of Plan Distributions. Plan Distributions to Beneficiaries will be made in accordance with the terms of the Plan and this Agreement. The Trustee and Debtors shall cooperate in a commercially reasonable manner, as necessary, in providing the Trustee with the necessary written instructions and funds to make distributions to the Beneficiaries.

-11-

4.13    Tax Identification Numbers. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any distribution upon receipt of such identification number or tax form. If, within 90 days of written request from the Trustee, a Beneficiary does not provide the Trustee with the foregoing information, then the distribution to such Beneficiary shall be administered as an unclaimed distribution in accordance with section 4.16 of this Agreement and, as provided in Article VI.B of the Plan, no further distributions shall be made to such Beneficiary.

4.14    Unclaimed and Undeliverable Plan Distributions. If any distribution to a Beneficiary is returned as undeliverable or is otherwise unclaimed, such Plan Distribution shall be subject to Article VI.G of the Plan.

4.14.1    No Responsibility to Attempt to Locate Beneficiaries. The Trustee may, in its sole discretions, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.14.2    Disallowance of Claims; Cancellation of Corresponding Liquidating Trust Interests. All Claims in respect of undeliverable or unclaimed distributions that have been deemed to have reverted back to the Trust for all purposes pursuant to the Plan shall be deemed disallowed and expunged without further action by the Trust, Trustee, or Debtors and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of the Beneficiary holding such disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such Disallowed Claim against the Trust, Trustee, or Debtors unless the Bankruptcy Court orders otherwise.

4.14.3    Inapplicability of Unclaimed Property or Escheat Laws. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.15    Voided Checks; Request for Reissuance. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 90 days after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed distributions under Article VI.G of the Plan and administered under this section 4.14 of the Agreement.

4.16    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to the beneficial interests in the Trust or right to receive distributions from the Trust or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.16.1    The Trustee may elect to cause the Trust to not make any payment or distribution with respect to the beneficial interests in the Trust subject to the conflicting

claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.16.2  The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the applicable beneficial interests in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for all other purposes whatsoever, including for federal and state income tax purposes.

4.16.3  In acting or refraining to act under and in accordance with this section 4.16 of the Agreement and the Plan, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.17    De Minimis Distributions. No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and this Agreement.

## ARTICLE V
## BENEFICIARIES

5.1    Interest Beneficial Only. The ownership of a Liquidation Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or title to the Liquidation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    Allocation of Liquidating Trust Interests. The allocation of the beneficial interests in the Trust shall be accomplished as set forth in the Plan and the Confirmation Order.

5.3    Evidence of Liquidating Trust Interest. Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee. The Trustee shall maintain at all times a register of the names, distribution addresses, and amounts of Allowed Claims (as of the Effective Date, or as may be Allowed thereafter pursuant to the Plan and this Agreement) of the Beneficiaries (the "Register"). The entries in the Register shall be conclusive absent manifest error, and the Trust and the Trustee shall treat each Person or Entity whose name is recorded in the Register pursuant to the terms of this Agreement as the owner of Liquidation Trust Interests indicated therein for all purposes of this Agreement, notwithstanding notice to the contrary.

5.4     No Right to Accounting. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Liquidation Trust Assets. Notwithstanding the foregoing, the Trustee shall respond promptly to reasonable information requests from any Beneficiary and use commercially reasonable efforts to cooperate with the Beneficiaries to provide periodic status updates on distributions.

5.5     No Standing. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Liquidation Trust Assets.

5.6     Requirement of Undertaking. In any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the Trustee may request the Bankruptcy Court to require the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7     Limitation on Transferability. It is understood and agreed that the beneficial interests in the Trust shall be non-transferable and non-assignable during the term of this Agreement except as permitted under the Plan. Any such transfer or sale shall not be effective until appropriate notification and proof thereof is submitted to the Trustee and the transfer is recorded on the Register, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The notice shall be executed by the transferee (or appropriate representative) and the transferor (or appropriate representative). The notice must clearly describe the interest being transferred and must include the transferee's tax identification number, current mailing address, telephone number, and email address. The Trustee may rely upon such notice and proof of assignment without the requirement of any further investigation. Unless the Trustee receives actual written notice of an assignment from the duly authorized transferee (or appropriate representative) not less than 30 days prior to a distribution, the Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee. Any purported assignment, pledge, mortgage, sale, transfer or other disposition other than as permitted by this section 5.7 shall be void and will not be registered on the Register.  Liquidation Trust Interests may be transferred by any individual Beneficiary by will or the laws of descent and distribution.

5.8     Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

-14-

5.9 <u>Delivery of Plan Distributions</u>. Subject to the terms of this Agreement, the Trustee shall make distributions to Beneficiaries in the manner provided in the Plan.

**ARTICLE VI**
**THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY**

6.1 <u>Parties Dealing With the Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Liquidation Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2 <u>Limitation of Trustee's Liability</u>. In exercising the rights granted in this Agreement, the Plan, and Confirmation Order, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with Trustee's powers and duties under the Plan and this Agreement, whether sounding in tort, contract, or otherwise, except as a result of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. Except in the case of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Plan or this Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust, in no event shall the Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the performance of Trustee's powers and duties under the Plan or this Agreement, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Plan and Confirmation Order.

6.3 <u>No Liability for Acts of Other Persons</u>. None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4 <u>No Liability for Acts of Predecessors</u>. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in such position prior to the date on which such successor becomes the Trustee unless the successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may reasonably rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors and shall not be liable for any action taken, omitted, or suffered by the Trustee in reasonable reliance upon the advice of such counsel, agents, or advisors.

6.7     No Liability For Acts Approved by Bankruptcy Court. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Liquidation Trust Assets required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute actual fraud, gross negligence, or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities. Except as otherwise provided herein, persons dealing with the Trustee shall have recourse only to the Liquidation Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under the Plan and this Agreement, or in rendering services by the Indemnified Party to the Trust or the Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the duties or material breach of the Plan or Agreement of or by the Indemnified Party asserting this provision.

6.9.1     Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Liquidation Trust Assets after reserving for all actual and

-16-

anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2   Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party automatically and without any other action required, undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10   No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein.

6.11   Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## TAX MATTERS

7.1   Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee, and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and transfer of the Liquidation Trust Assets to the Trust shall be treated as a transfer of the Liquidation Trust Assets to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidation Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes. The Trust is intended to comply with the requirements of IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and the provisions of this Agreement shall be interpreted and construed consistently with such requirements. Notwithstanding the foregoing, in the event of a final determination that the Trust does not qualify as a grantor trust, the Beneficiaries and the Trustee intend that it be treated as a partnership for U.S. federal income tax purposes and will take all actions reasonably necessary to cause the Trust to be treated as such a partnership.

7.2   Annual Reporting and Filing Requirements. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

-17-

7.3     Valuation of Liquidation Trust Assets. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Liquidation Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation. The Trust shall bear the costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Trustee in connection therewith. The Liquidation Trust Assets shall be valued consistently by the Trustee and the Beneficiaries, and such valuations shall be used for all federal income tax purposes. Each Beneficiary shall be required to use the Trustee's valuation of the Liquidation Trust Assets in preparing and filing its own federal, state, and local income tax returns and shall not take any position on any such tax return that is inconsistent with such valuation; *provided*, *however*, that such valuation shall not be binding on the Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the Liquidation Trust Assets, whether by disposition, liquidation, litigation, settlement, or otherwise. Any such valuation shall be inadmissible in any proceeding concerning the Liquidation Trust Claims.

7.4     Tax Treatment of Disputed Claims Reserves. To the extent that the Trust holds reserves for Disputed Claims, the Trustee shall, subject to definitive guidance to the contrary, report any taxable income (including any income earned on the assets held in such reserves) in a manner consistent with the treatment of the Trust as a liquidating trust under Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684. Unless the Trustee determines, based upon the advice of the Trust's tax advisors, that an alternative treatment is required by applicable law, including the establishment of a disputed ownership fund under Treasury Regulations Section 1.468B-9, any taxable income earned on assets held in reserve for Disputed Claims shall be allocated to and reported by the Beneficiaries in accordance with their respective beneficial interests in the Trust. In the event the Trustee determines that a disputed ownership fund or other alternative tax treatment is required or advisable with respect to any reserves for Disputed Claims, the Trustee is authorized to take all actions reasonably necessary to establish and administer such fund or implement such alternative treatment in compliance with applicable Treasury Regulations and IRS guidance. Upon the allowance or disallowance of any Disputed Claim, the Trustee shall reallocate the reserves (and any income earned thereon) attributable to such Claim in a manner consistent with the Plan, this Agreement, and applicable tax law.

## ARTICLE VIII
## SELECTION, REMOVAL, REPLACEMENT
## AND COMPENSATION OF TRUSTEE

8.1     Initial Trustee. Kevin Berg shall be the initial Trustee and is appointed effective as of the Effective Date.

8.2     Term of Service. The Trustee shall serve until (a) the completion of the administration of the Liquidation Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's death, dissolution, liquidation, resignation, incapacity, or removal. If the Trustee's appointment terminates by reason of death,

-18-

dissolution, liquidation, resignation, incapacity, or removal, except as provided in section 8.3 of this Agreement, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VIII of this Agreement shall survive the resignation or removal of any Trustee.

8.3     Removal of Trustee. The Liquidating Trustee may be removed and replaced by unanimous written consent (which may be via email) of the Beneficiaries in their sole discretion (i) for cause, effective immediately upon notice thereof (which may be via email), or, (ii) without cause, upon seven (7) days' written notice (which may be via email). In addition, any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Article VIII. For purposes of this Article, the term "cause" shall mean (a) the Trustee's actual fraud, gross negligence, reckless or willful misconduct, willful disregard of his or her duties under the Plan, the Confirmation Order, or this Agreement, or material breach of the Agreement, or (b) the Trustee's misappropriation or embezzlement of any Liquidation Trust Assets or the proceeds thereof.

8.4     Resignation of Trustee. The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is 30 days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.

8.5     Appointment of Successor Trustee. In the event of resignation or replacement of the Trustee, the Beneficiaries shall appoint a qualified successor trustee by unanimous written consent (which may be via email), whose appointment shall be approved upon such successor trustee's acceptance of the appointment and ten (10) days after the filing of a notice of appointment of such successor trustee with the Bankruptcy Court.  If there is any objection to the appointment of the successor trustee, the Bankruptcy Court shall hold a hearing to resolve any such objection.

8.6     Powers and Duties of Successor Trustee. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7     Trust Continuance. The death, dissolution, liquidation, resignation, incapacity, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8     Compensation of Trustee and Costs of Administration. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Liquidation Trust Assets. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Liquidation Trust Assets prior to any distribution to the Beneficiaries; *provided*, that the expenses payable to the Trustee shall be subject to review and a fourteen (14) day objection period

by the Beneficiaries.  Any uncontested portion of each invoice shall be deemed authorized to be paid after the fourteen (14) day review period for the Beneficiaries.

## ARTICLE IX
## DURATION OF TRUST

9.1     Duration. Once the Trust becomes effective upon the Effective Date, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2     Termination on Payment of Trust Expenses and Distribution of Liquidation Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all Liquidation Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law; *provided*, *however*, that in no event shall the Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of an extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed five years with a private letter ruling from the IRS or an opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets.

9.3     No Termination by Beneficiaries. The Trust may not be terminated at any time by the Beneficiaries.

9.4     Continuance of Trust for Winding Up; Discharge; and Release of Trustee. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the final distribution of the Liquidation Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X
## MISCELLANEOUS

10.1     Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2     Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on Register. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return

-20-

receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

*Trust or Trustee*:       Kevin Berg
                          [ADDRESS]
                          Email:   [_____]

                          *with a copy to its counsel*:

                          [_____]

or to such other address as may from time to time be provided in written notice by the respective Parties.

10.3    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

10.4    Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    Particular Words. Reference in this Agreement to any section or Article is, unless otherwise specified, to the section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or Article of this Agreement.

10.6    Execution. All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish, or attach the Liquidation Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

10.7    Amendment. Any provision of this Agreement may be amended, supplemented, or waived (i) by the Trustee and the Debtors, or (ii) following dissolution of the Debtors, by the Trustee, in each case without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement without the approval of the Bankruptcy Court, following notice to the Beneficiaries, that would (i) adversely

-21-

affect (a) the distributions to any of the Beneficiaries or (b) the U.S. Federal income tax status of the Trust as a "liquidating trust" or as a "grantor trust"; (ii) require any Beneficiary to furnish or advance funds to the Trustee or entail any personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary; (iii) expand, add to, or modify the original stated purpose of the Trust (as described in the Plan and section 2.2 of this Agreement); or (iv) otherwise be in contravention of the Plan or the Confirmation Order.

10.8    No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

10.10   Severability. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

10.11   Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12   Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13   Entire Agreement. This Agreement (including the recitals), the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order and Plan (in that order) shall govern; *provided*, *however*, that the Trustee may amend, modify, or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

10.14   Jurisdiction. The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, and Liquidation Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related

-22-

matters among the Parties arising out of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

[*Remainder of this page intentionally left blank.*]

**IN WITNESS WHEREOF**, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**Debtors**

By: _____

Name: _____

Title: _____

-2-

**Kevin Berg,** *Liquidation Trustee*

By: _____

Name: _____

Title: _____

-2-

-3-

**Burton Hastings Advisors, LLC,** *GUC Trustee*

By: _____

Name: Peter Hurwitz _____

Title:  Managing Member_____

-3-

## EXHIBIT B

**GUC Trust Agreement**

## GUC TRUST AGREEMENT AND DECLARATION OF TRUST

This GUC Trust Agreement and Declaration of Trust (the "Agreement"), dated as of [DATE], 2026, is made by and among Village Roadshow Entertainment Group USA Inc., and its affiliated chapter 11 debtors and debtors in possession (collectively, the "Debtors") and Burton Hastings Advisors LLC (together with any successors, the "Trustee", and together with the Debtors, the "Parties").

## RECITALS

A       On March 17, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Village Roadshow Entertainment Group USA Inc, et al.*, Case No. 25-10475 (TMH).

B       On March 27, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee") [Docket No. 103].

C       On April [ ], 2026, the Bankruptcy Court entered the *[CONFIRMATION ORDER NAME]* [Docket No. __] (the "Confirmation Order"), which confirms the [*Debtors' Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates*] [Docket No. 1359] (as confirmed, including all amendments and supplements thereto, the "Plan").

D       The Plan and Confirmation Order provide for the establishment of this GUC Trust (the "Trust"), effective as of the Effective Date of the Plan.

E       The Trust is established pursuant to the Plan for the benefit of Holders of Allowed Non-Library Debtors General Unsecured Claims (collectively, the "Beneficiaries").

F       The Trust is established for the primary purpose of maximizing the value of the GUC Trust Assets and making distributions to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

G       Pursuant to the Plan, the Debtors, the Trust, the Trustee, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the GUC Trust Assets to the Trust as a transfer of the GUC Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the GUC Trust Assets by the Beneficiaries to the Trust in exchange for the right to receive distributions from the Trust, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

H       The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of Sections 641(a) and 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and (ii) to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d).

-1-

I        The Trust is further intended to be exempt from the requirements of, pursuant to section 1145 of the Bankruptcy Code (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act.

NOW, THEREFORE, in consideration of the promises, and the mutual covenants and agreements of the Parties herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

### DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to, and effective on the Effective Date do hereby, create the Trust, which shall bear the name "Village Roadshow General Unsecured Creditor Trust" pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the GUC Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns free and clear of all claims, liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan, in trust for the benefit of the Beneficiaries, for the uses and purposes stated in the Plan and this Agreement;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the GUC Trust Assets, including any assets contributed and transferred to the Trust after the Effective Date in accordance with the Plan, and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan and Confirmation Order.

### ARTICLE I
### RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS,
### INTERPRETATION, AND CONSTRUCTION

1.1     Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2     Terms Defined in Plan. Any capitalized term used and not defined herein shall have the meaning assigned to such term in the Plan and the Confirmation Order, as applicable.

1.3     Interpretation. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     Construction of Agreement. Except as specifically stated otherwise, this Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5     Conflict Among Plan Documents. In the event of any inconsistency between the Plan and the Confirmation Order, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence. Notwithstanding the foregoing, in the event of any inconsistency solely between this Agreement and Article IX.E of the Plan, this Agreement controls.

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust. Pursuant to the Plan and the Confirmation Order, this Agreement shall become effective on the Effective Date.

2.2     Purpose of Trust. The Debtors and the Trustee hereby create the Trust with the primary purpose of maximizing the value of the GUC Trust Assets and making distributions to the Beneficiaries in accordance with the Plan, this Agreement, and the Confirmation Order; and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     Transfer of GUC Trust Assets.

2.3.1     Conveyance of GUC Trust Assets. In accordance with Article IX.C of the Plan, the Debtors irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the GUC Trust Assets, to the extent such assets do not exceed the GUC Recovery, to the Trust in the manner provided in section 2.3.2 of this Agreement in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order. If the GUC Trust Net Amount exceeds the GUC Recovery after distribution of the GUC Trust Assets to the Beneficiaries, such excess amount shall be distributed by the Trustee to the Liquidation Trust in accordance with Article III.B.4 of the Plan. The Trust is further authorized to accept and receive transfers or contributions of any GUC Trust Assets or the proceeds thereof from the Debtors after the Effective Date in accordance with the Plan. The transfer of the GUC Trust Assets to the Trust, including the transfer of any such assets after the Effective Date in accordance with the Plan, shall be exempt from any stamp, transfer, recording, sales, use or similar tax. The Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtors shall take or cause to be taken such further action, as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the GUC Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2     Title to GUC Trust Assets. On the Effective Date, all of the Debtors' right, title, and interest in and to the GUC Trust Assets are automatically vested in the Trust, free and clear of all liens, claims, encumbrances, and other interests, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust is authorized to obtain

possession or control of, liquidate, and collect all of the GUC Trust Assets, to the extent such assets do not exceed the GUC Recovery. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all such property as GUC Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.3.3   Upon delivery of the GUC Trust Assets to the Trust, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the GUC Trust Assets or the Trust, to the extent such assets do not exceed the GUC Recovery. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the GUC Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

2.4   Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, in furtherance of its stated purpose, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state, or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5   Mutual Cooperation. The Debtors and their professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the GUC Trust Assets.

The Trustee and its professionals shall use commercially reasonable efforts to cooperate with the Debtors, the Liquidation Trustee, and their respective professionals, as applicable, in connection with implementing certain provisions of the Plan, including, but not limited to, the issuance of distributions pursuant to the Plan.

2.6   No Retention of Excess Cash. The Trustee shall distribute all amounts not required to be retained or otherwise reserved in accordance with the Plan, Confirmation Order, or this Agreement, to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, Confirmation Order, and this Agreement.

2.7   Acceptance by Trustee. The Trustee accepts its appointment as trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement and the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Beneficiaries, (i) by the Debtor of all of the Debtor's respective rights, titles, and interests in the GUC Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan, and in the Confirmation Order, and (ii) by the Liquidation Trustee of all of the Liquidation Trust's respective rights, title, and interests in any Liquidation Trust Assets that are transferred to the GUC Trust, solely to the extent the GUC Recovery exceeds the GUC Net Trust Amount, if applicable, in accordance with the Plan, Confirmation Order, and this Agreement.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise.  The Trustee shall have the authority to bind the Trust in accordance with,

-4-

and within the limitations set forth in this Agreement, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

## ARTICLE III
## ADMINISTRATION OF TRUST

3.1     Rights, Powers, and Privileges of Trustee Generally. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the GUC Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust shall control and exercise authority over the GUC Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust consistent with the Trustee's fiduciary duties in accordance with this Agreement, the Plan, and the Confirmation Order. In administering the GUC Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the GUC Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1     Power to Contract. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2     Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2     Powers of Trustee. Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust without need for further approval by the Bankruptcy Court except as specifically set forth herein, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1     hold legal title to the GUC Trust Assets and to all rights of the Debtors and the Beneficiaries in or arising from the GUC Trust Assets;

3.2.2     open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.3     cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.2.4     collect and liquidate all GUC Trust Assets;

3.2.5   cause the Trust to employ professionals and other agents and third parties pursuant to this Agreement;

3.2.6   cause the Trust to pay all its lawful expenses, debts, charges, taxes, and other liabilities, including all fees and expenses of professionals retained by the Trustee or the Trust (*provided*, that the GUC Trust Fees and Expenses shall not exceed the GUC Trust Initial Funding Amount in the aggregate from any funding source), and make all other necessary or advisable payments relating to the GUC Trust Assets;

3.2.7   cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, in good faith and based upon the advice of its agents or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.8   cause the Trust to (a) make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC Section 671 and Treasury Regulations Section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and, to the extent any applicable state or local jurisdiction does not follow federal grantor trust reporting rules or otherwise requires separate entity-level tax filings, cause the Trust to file such additional state or local tax returns as may be required, (b) pay taxes, if any, payable for and on behalf of the Trust, and (c) file any reports, either state or federal, that may be required to disclose the ultimate Beneficiaries of the Trust;

3.2.9   cause the Trust to send annually to Beneficiaries, no later than March 15 of each calendar year with respect to the preceding tax year, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.10   cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.11   cause the Trust to establish such reserves for taxes, assessments, and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.12   consistent with section 3.8 hereof, cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable, including appropriate insurance coverage for the benefit of the Trust and the Trustee, and to pay all associated premiums and costs;

3.2.13   undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.14   coordinate with the Debtors, Liquidation Trustee, and Disbursing Agent, Plan Distributions and the Register (as defined below);

3.2.15 if the GUC Recovery exceeds the GUC Trust Net Amount, cause the GUC Trust to request and receive from the Liquidation Trust the amount in which the value of the GUC Recovery exceeds the GUC Trust Net Amount, in accordance with Article III.B.4 of the Plan;

3.2.16 if the GUC Trust Net Amount exceeds the GUC Recovery, cause the GUC Trust to distribute such excess amount to the Liquidation Trust in accordance with Article III.B.4 of the Plan;

3.2.17 in reliance upon the Debtors' schedules and the Claims Register, maintain a register evidencing the beneficial interests in the Trust held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the Claims Register;

3.2.18 calculate and make (or cause to be made) all distributions to the Beneficiaries, and, if the GUC Trustee determines necessary and appropriate, retain a Disbursing Agent to facilitate distributions to Beneficiaries, in each case, in accordance with this Agreement (including section 9.3 hereof), the Plan, and the Confirmation Order; and

3.2.19 take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     General Authority of Trustee. Unless specifically stated otherwise herein, the Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (a) authorized under this Agreement or (b) specifically contemplated in the Plan or Confirmation Order.  For the avoidance of doubt, the Trustee shall not be required to file any employment or fee applications to engage or pay any professionals, and the Trustee shall not be required to file any application under Rule 9019 of the Federal Rules of Bankruptcy Procedures or section 363 of the Bankruptcy Code to transfer or dispose of any GUC Trust Assets.

3.4     Agents and Professionals. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously or currently retained by the Debtors or the Committee.

3.5     Safekeeping and Investment of GUC Trust Assets. All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but (except as provided in the Plan or this Agreement) need not be segregated in separate accounts from other GUC Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and only to the extent that the Trustee is directed to invest moneys other than in short-

term money market funds, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of any state law obligating or creating a duty on a trustee to invest trust assets shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.6     Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of GUC Trust Assets, including receipts and disbursements and other activity of the Trust. To the extent of any Claims reflected thereon, the Claims Register may serve as the Trustee's register of holders of Claims. The fees and costs associated with maintaining and updating the Claims Register shall be the sole responsibility of the Liquidation Trust. The books and records maintained by the Trustee, and any records of the Debtors transferred to the Trust (if any), may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.7     Preservation of Privilege. As provided in the Plan and Confirmation Order, any attorney-client privilege, work-product privilege, or other privilege or immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Trust shall vest in the Trust and be jointly held by the Debtors and the Trust on and after the Effective Date.  The Trustee's receipt of any information subject to any privilege or similar protection shall not waive any applicable privileges or protections, and all such privileges and protections are expressly preserved.

3.8     No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Trustee is hereby authorized to obtain all reasonable insurance coverage for itself, the Trust, and its members, agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the Trustee and its respective members, agents, representatives, employees, or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of GUC Trust Assets.

## ARTICLE IV
## PLAN DISTRIBUTIONS

4.1     Distribution. Following the transfer of GUC Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect and distribute all GUC Trust Assets. For avoidance of doubt, the Trustee, or an agent appointed by the Trustee, may make periodic

distributions in accordance with the terms of the Plan at any time (except that the Trust may retain an amount of net income or net proceeds necessary to maintain the value of its assets or to meet claims and contingent liabilities to the extent permissible in accordance with the requirements of Treasury Regulations Section 301.7701-4(d)).

4.2     Distributions on Account of Disputed Claims. Except as otherwise provided in the Plan, by Final Order, or as agreed by the relevant parties, Plan Distributions on account of a Claim that becomes an Allowed Claim after the Effective Date shall be made by the Trustee as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order.

4.3     No Distributions Pending Allowance. Notwithstanding anything herein to the contrary, no distribution will be made with respect to any Disputed Claim unless and until such Claim becomes an Allowed Claim; *provided*, *however*, that to the extent a Claim contains both Disputed and Allowed amounts, distributions on account of the non-Disputed portion of such Claim may be made.

4.4     Legal Proceedings. If any Retained Cause of Action is asserted and if such claim or any other legal proceeding is initiated or prosecuted against any Creditor pursuant to the Plan, Confirmation Order, or this Agreement, or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan or Confirmation Order, until such proceeding or contested matter is finally resolved and all payments to the Estates or the Trust, as applicable, required by such resolution have been made, such Creditor shall only receive Plan Distributions under the Plan or Confirmation Order to the extent that the distributions to which such Creditor is otherwise entitled exceed the maximum liability of such Creditor to the Estates or the Trust, as applicable, asserted in such proceedings.

4.5     Distributions Net of Costs. Distributions shall be made net of the actual and reasonable costs of making the distributions.

4.6     Taxes. Pursuant to Bankruptcy Code section 346(f), the Trustee will be entitled to deduct and withhold any federal, state, or local taxes from any Cash payments made with respect to Allowed Claims.

4.7     Withholding from Distributions. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. Notwithstanding anything herein to the contrary, each Holder of an Allowed Claim that has received a distribution of Cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

4.8     Method and Timing of Distributions. Plan Distributions to Beneficiaries will be made in accordance with the terms of the Plan and this Agreement. The Trustee and Debtors shall cooperate in a commercially reasonable manner, as necessary, in providing the Trustee with the necessary written instructions and funds to make Plan Distributions to the Beneficiaries.

4.9     Tax Identification Numbers. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any distribution upon receipt of such identification number or tax form. If, within 90 days of initial written request from the Trustee, a Beneficiary does not provide the Trustee with the foregoing information, then the distribution to such Beneficiary shall be administered as an unclaimed distribution in accordance with section 4.10 of this Agreement and, as provided in Article VI.G of the Plan, no further distributions shall be made to such Beneficiary.

4.10    Unclaimed and Undeliverable Distributions. If any Plan Distribution to a Beneficiary is returned as undeliverable or is otherwise unclaimed, such Plan Distribution shall be subject to Article VI.G of the Plan.

4.10.1  No Responsibility to Attempt to Locate Beneficiaries. The Trustee may, in its sole discretions, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.10.2  Disallowance of Claims; Cancellation of Corresponding GUC Trust Interests. All Claims in respect of undeliverable or unclaimed distributions that have been deemed to have reverted back to the Trust for all purposes pursuant to the Plan shall be deemed disallowed and expunged without further action by the Trust, Trustee, or Debtors and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of the Beneficiary holding such disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such Disallowed Claim against the Trust, Trustee, or Debtors unless the Bankruptcy Court orders otherwise.

4.10.3  Inapplicability of Unclaimed Property or Escheat Laws. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.11    Voided Checks; Request for Reissuance. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 90 days after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed distributions under Article VI.G of the Plan and administered under this section 4.11 of the Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unclaimed distributions in accordance with the Plan.

-10-

4.12    De Minimis Distributions. No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and this Agreement.

4.13    Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to the beneficial interests in the Trust or right to receive distributions from the Trust or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.13.1 The Trustee may elect to cause the Trust to not make any payment or distribution with respect to the beneficial interests in the Trust subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.13.2 The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the applicable beneficial interests in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for all other purposes whatsoever, including for federal and state income tax purposes.

In acting or refraining to act under and in accordance with this section 4.13 of the Agreement and the Plan, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

## ARTICLE V
## BENEFICIARIES

5.1    Interest Beneficial Only. The ownership of a GUC Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or title to the GUC Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    Allocation of GUC Trust Interests. The allocation of the beneficial interests in the Trust shall be accomplished as set forth in the Plan and the Confirmation Order.

5.3    Evidence of GUC Trust Interest. Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security, receipt, or in any other form or manner

whatsoever, except as maintained on the books and records of the Trust by the Trustee. The Trustee shall maintain at all times a register of the names, distribution addresses, and amounts of Allowed Claims (as of the Effective Date, or as may be Allowed thereafter pursuant to the Plan and this Agreement) of the Beneficiaries (the "Register"). The entries in the Register shall be conclusive absent manifest error, and the Trust and the Trustee shall treat each Person or Entity whose name is recorded in the Register pursuant to the terms of this Agreement as the owner of GUC Trust Interests indicated therein for all purposes of this Agreement, notwithstanding notice to the contrary.

5.4     No Right to Accounting. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of GUC Trust Assets.

5.5     No Standing. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the GUC Trust Assets.

5.6     Requirement of Undertaking. In any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the Trustee may request the Bankruptcy Court to require the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7     Limitation on Transferability. It is understood and agreed that the beneficial interests in the Trust shall be non-transferable and non-assignable during the term of this Agreement except as permitted under the Plan. Any such transfer or sale shall not be effective until appropriate notification and proof thereof is submitted to the Trustee and the transfer is recorded on the Register, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The notice shall be executed by the transferee (or appropriate representative) and the transferor (or appropriate representative). The notice must clearly describe the interest being transferred and must include the transferee's tax identification number, current mailing address, telephone number, and email address. The Trustee may rely upon such notice and proof of assignment without the requirement of any further investigation. Unless the Trustee receives actual written notice of an assignment from the duly authorized transferee (or appropriate representative) not less than 30 days prior to a distribution, the Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee. Any purported assignment, pledge, mortgage, sale, transfer or other disposition other than as permitted by this section 5.7 shall be void and will not be registered on the Register. GUC Trust Interests may be transferred by any individual Beneficiary by will or the laws of descent and distribution.

5.8     Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9     Delivery of Plan Distributions. Subject to the terms of this Agreement, the Trustee shall make Plan Distributions to Beneficiaries in the manner provided in the Plan.

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the GUC Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Trustee's Liability. In exercising the rights granted in this Agreement, the Plan, and Confirmation Order, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with Trustee's powers and duties under the Plan and this Agreement, whether sounding in tort, contract, or otherwise, except as a result of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Plan or this Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. Except in the case of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust, in no event shall the Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the performance of Trustee's powers and duties under the Plan or this Agreement, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Plan and Confirmation Order.

-13-

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in such position prior to the date on which such successor becomes the Trustee unless the successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may reasonably rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors and shall not be liable for any action taken, omitted, or suffered by the Trustee in reasonable reliance upon the advice of such counsel, agents, or advisors.

6.7     No Liability For Acts Approved by Bankruptcy Court. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the GUC Trust Assets required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute actual fraud, gross negligence, or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities. Except as otherwise provided herein, persons dealing with the Trustee shall have recourse only to the GUC Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under the Plan and this Agreement, or in rendering services by the Indemnified Party to the Trust or the Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such

-14-

loss, liability, expense, or damage is determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the duties or material breach of the Plan or this Agreement of or by the Indemnified Party asserting this provision.

6.9.1   Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available GUC Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2   Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party automatically and without any other action required, undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10   No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein.

6.11   Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## TAX MATTERS

7.1   Tax Treatment of Trust. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee, and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and transfer of the GUC Trust Assets to the Trust shall be treated as a transfer of the GUC Trust Assets to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the GUC Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes. The Trust is intended to comply with the requirements of IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and the

provisions of this Agreement shall be interpreted and construed consistently with such requirements. Notwithstanding the foregoing, in the event of a final determination that the Trust does not qualify as a grantor trust, the Beneficiaries and the Trustee intend that it be treated as a partnership for U.S. federal income tax purposes and will take all actions reasonably necessary to cause the Trust to be treated as such a partnership.

7.2     Annual Reporting and Filing Requirements. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

7.3     Valuation of GUC Trust Assets. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the GUC Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation. The Trust shall bear the costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Trustee in connection therewith. The GUC Trust Assets shall be valued consistently by the Trustee and the Beneficiaries, and such valuations shall be used for all federal income tax purposes. Each Beneficiary shall be required to use the Trustee's valuation of the GUC Trust Assets in preparing and filing its own federal, state, and local income tax returns and shall not take any position on any such tax return that is inconsistent with such valuation; provided, however, that such valuation shall not be binding on the Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the GUC Trust Assets, whether by disposition, liquidation, litigation, settlement, or otherwise. Any such valuation shall be inadmissible in any proceeding concerning the GUC Trust Assets.

7.4     Tax Treatment of Disputed Claims Reserves. To the extent that the Trust holds reserves for Disputed Claims, the Trustee shall, subject to definitive guidance to the contrary, report any taxable income (including any income earned on the assets held in such reserves) in a manner consistent with the treatment of the Trust as a liquidating trust under Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684. Unless the Trustee determines, based upon the advice of the Trust's tax advisors, that an alternative treatment is required by applicable law, including the establishment of a disputed ownership fund under Treasury Regulations Section 1.468B-9, any taxable income earned on assets held in reserve for Disputed Claims shall be allocated to and reported by the Beneficiaries in accordance with their respective beneficial interests in the Trust. In the event the Trustee determines that a disputed ownership fund or other alternative tax treatment is required or advisable with respect to any reserves for Disputed Claims, the Trustee is authorized to take all actions reasonably necessary to establish and administer such fund or implement such alternative treatment in compliance with applicable Treasury Regulations and IRS guidance. Upon the allowance or disallowance of any Disputed Claim, the Trustee shall reallocate the reserves (and any income earned thereon) attributable to such Claim in a manner consistent with the Plan, this Agreement, and applicable tax law.

**ARTICLE VIII**
**SELECTION, REMOVAL, REPLACEMENT**
**AND COMPENSATION OF TRUSTEE**

8.1     Initial Trustee. Burton Hastings Advisors LLC shall be the initial Trustee and is appointed effective as of the Effective Date.

8.2     Term of Service. The Trustee shall serve until (a) the completion of the administration of the GUC Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's death, dissolution, liquidation, resignation, incapacity, or removal. If the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, incapacity, or removal, except as provided in section 8.3 of this Agreement, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VIII of this Agreement shall survive the resignation or removal of any Trustee.

8.3     Removal of Trustee. Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Article VIII. For purposes of this Article, the term "cause" shall mean (a) the Trustee's actual fraud, gross negligence, reckless or willful misconduct, willful disregard of his or her duties under the Plan, the Confirmation Order, or this Agreement, or material breach of the Agreement, or (b) the Trustee's misappropriation or embezzlement of any GUC Trust Assets or the proceeds thereof.

8.4     Resignation of Trustee. The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is 30 days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.

8.5     Appointment of Successor Trustee. In the event of resignation, the Trustee shall appoint a qualified successor trustee, whose appointment shall be approved upon such successor trustee's acceptance of the appointment and ten (10) days after the filing of a notice of appointment of such successor trustee with the Bankruptcy Court.  If there is any objection to the appointment of the successor trustee, the Bankruptcy Court shall hold a hearing to resolve any such objection. In the event of death or removal, as provided herein, of the Trustee, any professional for the Trustee may file a motion with the Bankruptcy Court seeking the appointment of a successor trustee and may include a recommendation for such successor trustee.

8.6     Powers and Duties of Successor Trustee. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

-17-

8.7     Trust Continuance. The death, dissolution, liquidation, resignation, incapacity, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8     Compensation of Trustee and Costs of Administration. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge solely against, and solely paid out, of the GUC Trust Assets (*provided*,  for the avoidance of doubt, that the GUC Trust Fees and Expenses shall not exceed the GUC Trust Initial Funding Amount in the aggregate from any funding source). All costs, expenses, and obligations incurred by the GUC Trustee (or professionals who may be employed by the GUC Trustee in administering the GUC Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the GUC Trust solely from the GUC Trust Assets prior to any Plan Distributions to the Beneficiaries.

## ARTICLE IX
## DURATION OF TRUST

9.1     Duration. Once the Trust becomes effective upon the Effective Date, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2     Termination on Payment of Trust Expenses and Distribution of GUC Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all GUC Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law; *provided*, *however*, that in no event shall the Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of an extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed five years with a private letter ruling from the IRS or an opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the GUC Trust Assets.

9.3     GUC Trust Assets Exceeding GUC Recovery. If the GUC Trust Net Amount exceeds the GUC Recovery after distribution of the GUC Trust Assets to the Beneficiaries, such excess amount shall be distributed by the Trustee to the Liquidation Trust in accordance with Article III.B.4 of the Plan.

9.4     No Termination by Beneficiaries. The Trust may not be terminated at any time by the Beneficiaries.

9.5     Continuance of Trust for Winding Up; Discharge; and Release of Trustee. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the final distribution of the GUC Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be

-18-

deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X
## MISCELLANEOUS

10.1    Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the Register. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery (if receipt is confirmed) addressed as follows:

> *Trust or Trustee*:    Burton Hastings Advisors LLC
> Attention: Peter Hurwitz, Managing Member
> 40 Half Moon Lane
> Irvington NY 10533

or to such other address as may from time to time be provided in written notice by the respective Parties.

10.3    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

10.4    Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    Particular Words. Reference in this Agreement to any section or Article is, unless otherwise specified, to the section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or Article of this Agreement.

10.6    Execution. All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish, or attach the GUC Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

-19-

10.7    Amendment. Any provision of this Agreement may be amended, supplemented, or waived (i) by the Trustee and the Debtors, or (ii) following dissolution of the Debtors, by the Trustee, in each case without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement without the approval of the Bankruptcy Court, following notice to the Beneficiaries and any other impacted party, that would (i) adversely affect (a) the Plan Distributions to any of the Beneficiaries or (b) the U.S. Federal income tax status of the Trust as a "liquidating trust" or as a "grantor trust"; (ii) require any Beneficiary to furnish or advance funds to the Trustee or entail any personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary; (iii) expand, add to, or modify the original stated purpose of the Trust (as described in the Plan and section 2.2 of this Agreement); or (iv) otherwise be in contravention of the Plan or the Confirmation Order (including, without limitation, any treatment of claims and interests pursuant to the Plan).

10.8    No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

10.10    Severability. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

10.11    Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12    Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13    Entire Agreement. This Agreement (including the recitals), the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order and Plan (in that order) shall govern; *provided*, *however*, that the Trustee may amend, modify, or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs,

administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

       10.14   <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, and GUC Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

[<em>Remainder of this page intentionally left blank.</em>]

**IN WITNESS WHEREOF**, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**Debtors**

By: _____

Name: _____

Title: _____

-2-

**Burton Hastings Advisors, LLC,** *GUC Trustee*

By: _____

Name: Peter Hurwitz _____

Title:  Managing Member_____

-3-

**Kevin Berg,** *Liquidation Trustee*

By: _____

Name: _____

Title: _____

## **EXHIBIT D**

**Assumed Executory Contracts and Unexpired Leases**

The Debtors expressly reserve the right to alter, modify, amend, remove, augment or supplement this exhibit at any time prior to the Effective Date.[1]

Article V.A of the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates* (the "Plan") provides, in pertinent part, for the following:

Assumption and Rejection of Executory Contracts and Unexpired Leases. On the Effective Date, except as otherwise provided herein (which exclusion includes the Indemnification Obligations and the D&O Liability Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court or not included on the Schedule of Assumed Executory Contracts and Unexpired Leases, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date, or are subject to an unresolved cure dispute as of the Effective Date (and shall be assumed, assumed and assigned, or rejected, as applicable, upon the resolution of such cure dispute in accordance with the Sale Documents).

Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

For the avoidance of doubt, the inclusion of an Executory Contract and/or Unexpired Lease on this Plan Supplement exhibit does not constitute an admission as to the executory or non-executory nature of such Executory Contract or Unexpired Lease or as to the existence or validity of any Claims held by the counterparty or counterparties to such Executory Contract or Unexpired Lease.

Except as otherwise provided in the Plan or agreed to by the Debtors and the applicable counterparty, each assumed (or assumed and assigned) Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract

---

[1]   Capitalized Terms not defined herein shall have the meaning ascribed to them in the Plan. In the event of any inconsistency between the Plan and this Plan Supplement exhibit, the Plan shall govern.

or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Certain documents, or portions thereof, contained in this Plan Supplement remain subject to continuing review and discussions among the Debtors and interested parties with respect thereto. The rights of the Debtors are expressly reserved, subject to the terms and conditions set forth in the Plan (including all applicable consultation, consent, and/or approval rights contained or contemplated therein), to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court.

| Debtor Name(s) | Counterparty | Name of Agreement | Cure Amount |
|---|---|---|---|
| Village Roadshow Entertainment Group USA Inc. | DivergeIT | Master Services Agreement 3/4/26 | $0 |
| Village Roadshow Entertainment Group USA Inc. | DivergeIT | Services Agreement Order 3/11/26 | $0 |
| Village Roadshow Pictures Entertainment Inc. (as successor-in-interest to Village Roadshow Pictures (U.S.A.) Inc.) | Iron Mountain Information Management, Inc. (as successor-in-interest to The dataLOK Company) | Data Storage and Receipt Agreement, 7/31/1991 | $0 |
| Village Roadshow Pictures Entertainment Inc. | Iron Mountain Information Management, Inc. | Iron Mountain Pricing Schedule (A) to Data Storage and Receipt Agreement, 11/28/25 | $0 |
| Village Roadshow Entertainment Group USA Inc. | WeWork | WeWork Membership Agreement 3/13/25 | $0 |
| Village Roadshow Entertainment Group USA Inc. | WeWork | WeWork Membership Renewal 8/22/25 | $0 |

| Village Roadshow Entertainment Group USA Inc. | ADP TotalSource | Client Services Agreement 12/11/20 | $0 |
|---|---|---|---|
| Village Roadshow Entertainment Group USA Inc. | Purple Tag Originals, LLC/Roku | Roku Sales Representation: Weird 11/4/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | OneGate Media GmbH | Distribution Agreement 12/22/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Daro Film Distribution GMBH | Distribution Agreement 2/22/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Daydream Entertainment | Distribution Agreement 2/21/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Happinet Phantom Studios Corporation | Distribution Agreement 6/16/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Intertech Services AG | Distribution Agreement 11/18/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | DBS Satellite Services (1998) LTD | License Agreement 1/20/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Minerva Pictures Group | Distribution Agreement 3/27/24 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Myndform | Distribution Agreement 2/8/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Network Ten All Access PTY LTD | Distribution Agreement 2/28/23 | $0 |

| Village Roadshow Entertainment Group USA Inc. | Shout! Factory, LLC | Distribution Agreement 6/9/23 | $0 |
|---|---|---|---|
| Village Roadshow Entertainment Group USA Inc. | Tanweer Films FZ, LLC | Distribution Agreement 11/27/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Twelve Oaks Pictures, S.L. | Distribution Agreement 11/27/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Umbrella Entertainment PTY LTD | Distribution Agreement 12/16/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Program Store | Distribution Agreement 9/13/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Smile Entertainment APS | Distribution Agreement 5/23/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Cutting Edge Music Services, LLC | Master and Synchronization License 12/8/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Phoenicia Pictures International FZCO | Distribution Agreement 11/23/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Pictureworks | Distribution Agreement 4/20/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Anuvu Operations LLC | Non-Theatrical Distribution Agreement 1/3/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Silverdew Entertainment Solutions | Distribution Agreement 11/18/22 | $0 |

-4-

-5-

| Village Roadshow Entertainment Group USA Inc. | Vertigo Releasing | Distribution Agreement 1/20/24 | $0 |
|---|---|---|---|
| Village Roadshow Entertainment Group USA Inc. | American Express | Corporate Services Commercial Account Agreement 2/14/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | GoDaddy | Service Agreement | $0 |
| Village Roadshow Entertainment Group USA Inc. | DropBox | Service Agreement | $0 |
| Village Roadshow Entertainment Group USA Inc. | Adobe Acrobat Pro | Subscription Service Agreement and Renewal | $0 |

**EXHIBIT 2**

**Blackline**

## EXHIBIT A

**Liquidation Trust Agreement**

## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This Liquidating Trust Agreement and Declaration of Trust (the "Agreement"), dated as of [DATE], 2026, is made by and among Village Roadshow Entertainment Group USA Inc., and its affiliated chapter 11 debtors and debtors in possession (collectively, the "Debtors") and Kevin Berg (together with any successors, the "Trustee", and together with the Debtors, the "Parties").

### RECITALS

A       On March 17, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Village Roadshow Entertainment Group USA Inc, et al.*, Case No. 25-10475 (TMH).

B       On March 27, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee") [Docket No. 103].

C       On April [ ], 2026, the Bankruptcy Court entered the *[CONFIRMATION ORDER NAME]* [Docket No. __] (the "Confirmation Order"), which confirms the [*Debtors' Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates*] [Docket No. 1359] (as confirmed, including all amendments and supplements thereto, the "Plan").

D       The Plan and Confirmation Order provide for the establishment of a liquidating trust (the "Trust"), effective as of the Effective Date of the Plan.

E       The Trust is established pursuant to the Plan for the benefit of Holders of Liquidation Trust Interests (collectively, the "Beneficiaries").

F       The Trust is established for the purpose of maximizing the value of the Liquidation Trust Assets (as defined in the Plan), and making distributions in accordance with the Plan, Confirmation Order, and this Agreement, including resolving any Disputed Claims not to be resolved by the Debtors prior to the Effective Date and winding down of the Debtors and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

G       Pursuant to the Plan, the Debtors, the Trust, the Trustee, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidation Trust Assets to the Trust as a transfer of the Liquidation Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidation Trust Assets by the Beneficiaries to the Trust in exchange for their respective Liquidation Trust Interests, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

H       The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of Sections 641(a) and 671-677 of the Internal Revenue Code of 1986,

as amended ("IRC"), and (ii) to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d).

I       The Trust is further intended to be exempt from the requirements of, pursuant to section 1145 of the Bankruptcy Code, (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act.

NOW, THEREFORE, in consideration of the promises, and the mutual covenants and agreements of the Parties herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to, and effective on the Effective Date do hereby, create the Trust which shall bear the name "Village Roadshow Liquidating Trust" pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Liquidation Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns free and clear of all claims, liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan, in trust for the benefit of the Beneficiaries, for the uses and purposes stated in the Plan and this Agreement;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidation Trust Assets, including any assets contributed and transferred to the Trust after the Effective Date, and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan and Confirmation Order.

## ARTICLE I
## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2     Terms Defined in Plan. Any capitalized term used and not defined herein shall have the meaning assigned to such term in the Plan and the Confirmation Order, as applicable.

1.3     Interpretation. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The

headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     Construction of Agreement. Except as specifically stated otherwise, this Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5     Conflict Among Plan Documents. In the event of any inconsistency between the Plan and the Confirmation Order, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence. Notwithstanding the foregoing, in the event of any inconsistency solely between this Agreement and Article VIII.E of the Plan, this Agreement controls.

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust. Pursuant to the Plan and the Confirmation Order, this Agreement shall become effective on the Effective Date.

2.2     Purpose of Trust. The Debtors and the Trustee hereby create the Trust for the primary purpose of (i) maximizing the value of the Liquidation Trust Assets and making distributions; and, (ii) resolving any Disputed Claims not to be resolved by the Debtors prior to the Effective Date and (iii) winding down the Debtors, in accordance with the Plan, Confirmation Order and this Agreement; and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     Transfer of Liquidation Trust Assets.

2.3.1     Conveyance of Liquidation Trust Assets. In accordance with Article VIII.C of the Plan, the Debtors irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the Liquidation Trust Assets to the Trust in the manner provided in section 2.3.2 of this Agreement in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order. The Trust is further authorized to accept and receive transfers or contributions of any Liquidation Trust Assets or the proceeds thereof from the Debtors or the GUC Trust after the Effective Date. The transfer of the Liquidation Trust Assets to the Trust, including the transfer of any such assets after the Effective Date, shall be exempt from any stamp, transfer, recording, sales, use or similar tax. The Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtors shall take or cause to be taken such further action, as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Liquidation Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the

Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2   Title to Liquidation Trust Assets. On the Effective Date, all of the Debtors' right, title, and interest in and to the Liquidation Trust Assets are automatically vested in the Trust, free and clear of all liens, claims, encumbrances, and other interests, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust is authorized to obtain possession or control of, liquidate, and collect all of the Liquidation Trust Assets; pursue all of the Retained Causes of Action; and pursue, assert, and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Retained Causes of Action. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all such property as Liquidation Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.3.3   Upon delivery of the Liquidation Trust Assets to the Trust, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidation Trust Assets or the Trust.  Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidation Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

2.4   Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, in furtherance of its stated purpose, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state, or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5   Mutual Cooperation. The Debtors, the GUC Trustee, and their respective professionals, shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the Liquidation Trust Assets from the Debtors and the GUC Trust, if applicable, to the Trust. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate reasonable access to any evidence and information the Trustee reasonably requests (including but not limited to reasonable access to the Debtors' books and records, as applicable) in connection with the Trust's investigation, prosecution, or other pursuit of the Retained Causes of Action.

The Trustee and his professionals shall use commercially reasonable efforts to cooperate with the Debtors, the GUC Trustee, and their respective professionals, as applicable, in connection with implementing certain provisions of the Plan including, but not limited to, the issuance of Plan Distributions pursuant to the Plan, reporting requirements, the exchange of

information in the prosecution of claim objections to the extent necessary, and any other reasonably requested information or assistance.

2.6     No Retention of Excess Cash. The Trustee shall distribute all amounts not required to be retained or otherwise reserved in accordance with the Plan, Confirmation Order, or this Agreement, to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, Confirmation Order, and this Agreement.

2.7     Acceptance by Trustee. The Trustee accepts its appointment as trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement and the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Beneficiaries, by the Debtor of all of the Debtor's respective rights, titles, and interests in the Liquidation Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan, and in the Confirmation Order.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise.  The Trustee shall have the authority to bind the Trust in accordance with, and within the limitations set forth in this Agreement, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

## ARTICLE III
## ADMINISTRATION OF TRUST

3.1     Rights, Powers, and Privileges of Trustee Generally. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Liquidation Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust shall control and exercise authority over the Liquidation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust consistent with the Trustee's fiduciary duties in accordance with this Agreement, the Plan, and the Confirmation Order. In administering the Liquidation Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Liquidation Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1   Power to Contract. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2   Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2     Powers of Trustee. Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust without need for further approval by the Bankruptcy Court except as specifically set forth herein, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1   hold legal title to the Liquidation Trust Assets and to all rights of the Debtors and the Beneficiaries in or arising from the Liquidation Trust Assets;

3.2.2   receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Liquidation Trust Assets, including causing the Trust to invest any moneys held as Liquidation Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3   open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4   establish and maintain the Liquidating Trust ~~Expense~~Reserve Fund (as defined herein);

3.2.5   ~~borrow money or raise capital on such terms as determined by the Trustee in order to fund the Liquidating Trust Expense Fund;~~

3.2.6   cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.2.7   collect and liquidate all Liquidation Trust Assets, including the sale of any Liquidation Trust Assets;

3.2.8   protect and enforce the rights to the Liquidation Trust Assets (including any Retained Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.9   investigate any Liquidation Trust Assets, including potential Retained Causes of Action, and cause the Trust to seek the examination of any Person pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or other applicable rules;

3.2.10  cause the Trust to employ professionals and other agents and third parties pursuant to this Agreement;

3.2.11  cause the Trust to pay all its lawful expenses, debts, charges, taxes, and other liabilities, including all fees and expenses of professionals retained by the Trustee or the Trust, and make all other necessary or advisable payments relating to the Liquidation Trust Assets;

3.2.12 cause the Trust, to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Retained Causes of Action;

3.2.13 consistent with the Plan, cause the Trust, as appropriate, to review, investigate, settle, resolve, reconcile, or object to all Claims;

3.2.14 establish, adjust, and maintain reserves for Disputed Claims;

3.2.15 cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, in good faith and based upon the advice of its agents or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.16 in reliance upon the Debtors' schedules and the Claims Register, maintain a register evidencing the beneficial interests in the Trust held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the Claims Register;

3.2.17 cause the Trust to (a) make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC Section 671 and Treasury Regulations Section 1.671-4 pursuant to and in accordance with the Plan and Article VIII hereof, and, to the extent any applicable state or local jurisdiction does not follow federal grantor trust reporting rules or otherwise requires separate entity-level tax filings, cause the Trust to file such additional state or local tax returns as may be required, (b) pay taxes, if any, payable for and on behalf of the Trust, and (c) file any reports, either state or federal, that may be required to disclose the ultimate Beneficiaries of the Trust;

3.2.18 cause the Trust to abandon or donate to a charitable organization any Liquidation Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries in accordance with the terms of the Plan;

3.2.19 cause the Trust to send annually to Beneficiaries, no later than March 15 of each calendar year with respect to the preceding tax year, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.20 cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.21 cause the Trust to establish such reserves for taxes, assessments, and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.22  consistent with section 3.12 hereof, cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable, including appropriate insurance coverage for the benefit of the Trust and the Trustee, and to pay all associated premiums and costs;

3.2.23  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust; and

3.2.24  take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     General Authority of Trustee. Unless specifically stated otherwise herein, the Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (a) authorized under this Agreement or (b) specifically contemplated in the Plan or Confirmation Order.  For the avoidance of doubt, the Trustee shall not be required to file any employment or fee applications to engage or pay any professionals, and the Trustee shall not be required to file any application under Rule 9019 of the Federal Rules of Bankruptcy Procedures or section 363 of the Bankruptcy Code to resolve, settle, transfer, or dispose of any Liquidation Trust Assets.

3.4     Exclusive Authority to Pursue Retained Causes of Action. The Subject to the Trustee's fiduciary duties and available funds and resources and following consultation with the Beneficiaries, the Trust shall have the exclusive right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the Retained Causes of Action. The Trust shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Retained Causes of Action. The Trust shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Trust to any counterclaims that may be asserted by any defendant with respect to any Retained Cause of Action. The Trust shall also be vested with and entitled to assert all the Debtors' and the Estates' rights with respect to any such counterclaims under section 558 of the Bankruptcy Code.

3.5     Abandonment. If, in the Trustee's reasonable judgment, any non-cash Liquidation Trust Assets cannot be sold or liquidated in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization, in accordance with the terms of the Plan.

3.6     Agents and Professionals. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously or currently retained by the Debtors or the Committee.

3.7     Safekeeping and Investment of Liquidation Trust Assets. All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but (except as provided in the Plan or

this Agreement) need not be segregated in separate accounts from other Liquidation Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and only to the extent that the Trustee is directed to invest moneys other than in short-term money market funds, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided, however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of any state law obligating or creating a duty on a trustee to invest trust assets shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8     Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of Liquidation Trust Assets, including receipts and disbursements and other activity of the Trust. To the extent of any Claims reflected thereon, the Claims Register may serve as the Trustee's register of holders of Claims. The fees and costs associated with maintaining and updating the Claims Register shall be the sole responsibility of the Trust. The books and records maintained by the Trustee, and any records of the Debtors transferred to the Trust, may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9     Preservation of Privilege. As provided in the Plan and Confirmation Order, any attorney-client privilege, work-product privilege, or other privilege or immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Trust shall vest in the Trust and be jointly held by the Debtors and the Trust on and after the Effective Date.  The Trustee's receipt of any information subject to any privilege or similar protection shall not waive any applicable privileges or protections, and all such privileges and protections are expressly preserved.

3.10     Reports to be Filed by the Trustee. The Trustee shall file with the Bankruptcy Court quarterly operating reports on behalf of the Trust, as required by the Office of the United States Trustee, until entry of a final decree closing the last of the Chapter 11 Cases.

3.11     No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Trustee is hereby authorized to obtain all reasonable insurance coverage for itself, the

Trust, and its members, agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the Trustee and its respective members, agents, representatives, employees, or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Liquidation Trust Assets.

## ARTICLE IV
## PLAN DISTRIBUTIONS

4.1     Distribution. Following the transfer of Liquidation Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Liquidation Trust Assets through the Trustee subject to the reserves required under the Plan or this Agreement. For avoidance of doubt, the Trustee, or an agent appointed by the Trustee, may make periodic distributions in accordance with the terms of the Plan at any time (except that the Trust may retain an amount of net income or net proceeds necessary to maintain the value of its assets or to meet claims and contingent liabilities to the extent permissible in accordance with the requirements of Treasury Regulations Section 301.7701-4(d)). For the further avoidance of doubt, any Liquidation Trust Assets received from the GUC Trust shall be distributed in accordance with Article III.B.4 of the Plan.

4.2     Reserve of Liquidation Trust Assets. ~~The~~Subject to the rights of the Union Entities (as defined in the Confirmation Order) set forth in paragraph 110 of the Confirmation Order, and following payment of the Final Award and the Allowed Class 3A K&E Claim (each as defined in the Confirmation Order), the Trustee shall maintain a reserve (the "Liquidating Trust ~~Expense~~Reserve Fund") in an amount ~~as is reasonably necessary~~ not to exceed $5,500,000 in the aggregate.[1]   The Liquidating Trust Reserve Fund may be used to pay the costs and expenses incurred or expected to be incurred by the Trust and Trustee in connection with administering the Liquidation Trust Assets and performing the duties set forth in this Agreement, including, without limitation, paying the fees and expenses of the Trustee and professionals retained by the Trust or Trustee (the "Liquidating Trust Expenses"), subject to the rights of the Union Entities as set forth in paragraph 110 of the Confirmation Order.

~~The Trust may borrow money or raise capital on such terms as determined by the Trustee in order to fund the Liquidating Trust Expense Fund. Except for purposes of funding the Liquidating Trust Expense Fund, the Trust shall not incur any debt.~~

4.3     Distributions on Account of Disputed Claims. Except as otherwise provided in the Plan, by Final Order, or as agreed by the relevant parties, distributions on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made by the Trustee as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order.

---

[1]   For the avoidance of doubt, the Liquidating Trust Reserve Fund amount is inclusive of the $5,000,000 Guild Claims Reserve amount as set forth in paragraph 110 of the Confirmation Order.

4.4     No Distributions Pending Allowance. Notwithstanding anything herein to the contrary, no distribution will be made with respect to any Claim unless and until such Claim becomes an Allowed Claim; *provided*, *however*, that to the extent a Claim contains both Disputed and Allowed amounts, distributions on account of the non-Disputed portion of such Claim may be made at the Trustee's discretion.

4.5     Legal Proceedings. If any Retained Cause of Action is asserted and if such claim or any other legal proceeding is initiated or prosecuted against any creditor pursuant to the Plan, Confirmation Order, or this Agreement, or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan or Confirmation Order, until such proceeding or contested matter is finally resolved and all payments to the Estates or the Trust, as applicable, required by such resolution have been made, such creditor shall only receive distributions under the Plan or Confirmation Order to the extent that the distributions to which such creditor is otherwise entitled exceed the maximum liability of such creditor to the Estates or the Trust, as applicable, asserted in such proceedings.

4.6     Objection Deadline. On and after the Effective Date, the Trustee shall be entitled to file objections to all Claims. As provided in the Plan, any objections to Claims shall be filed on or before the date that is 90 days after the Effective Date, which date may be extended upon presentment of an order to the Bankruptcy Court by the Trustee.

4.7     Settling Disputed Claims. Following the Effective Date, the Trustee is authorized to (i) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to all Claims or Interests, provided, however, that the Trustee shall consult with the GUC Trustee prior to filing an objection to any Non-Library Debtors General Unsecured Claim; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  The Trustee shall promptly notify the GUC Trustee in writing when the Claims reconciliation process is complete.

4.8     Distributions Net of Costs. Distributions shall be made net of the actual and reasonable costs of making the distributions.

4.9     Setoff. The Trustee, pursuant to the Plan, the Bankruptcy Code (including Bankruptcy Code section 553), and applicable bankruptcy or nonbankruptcy law, may, but shall not be required to, set off against any Allowed Claim and the Plan Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Plan Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or Trust may have against the Holder of such Allowed Claim, *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Trustee of any such claim the Debtors or Trust may have against the Holder of such Claim.

4.10    Taxes. Pursuant to Bankruptcy Code section 346(f), the Trustee will be entitled to deduct and withhold any federal, state, or local taxes from any Cash payments made with respect to Allowed Claims.

4.11    Withholding from Plan Distributions. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. Notwithstanding anything herein to the contrary, each Holder of an Allowed Claim that has received a Plan Distribution of Cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such Plan Distribution. For tax purposes, Plan Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to the applicable Beneficiary for all purposes of this Agreement.

4.12    Method and Timing of Plan Distributions. Plan Distributions to Beneficiaries will be made in accordance with the terms of the Plan and this Agreement. The Trustee and Debtors shall cooperate in a commercially reasonable manner, as necessary, in providing the Trustee with the necessary written instructions and funds to make distributions to the Beneficiaries.

4.13    Tax Identification Numbers. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any distribution upon receipt of such identification number or tax form. If, within 90 days of written request from the Trustee, a Beneficiary does not provide the Trustee with the foregoing information, then the distribution to such Beneficiary shall be administered as an unclaimed distribution in accordance with section 4.16 of this Agreement and, as provided in Article VI.B of the Plan, no further distributions shall be made to such Beneficiary.

4.14    Unclaimed and Undeliverable Plan Distributions. If any distribution to a Beneficiary is returned as undeliverable or is otherwise unclaimed, such Plan Distribution shall be subject to Article VI.G of the Plan.

4.14.1  No Responsibility to Attempt to Locate Beneficiaries. The Trustee may, in its sole discretions, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.14.2  Disallowance of Claims; Cancellation of Corresponding Liquidating Trust Interests. All Claims in respect of undeliverable or unclaimed distributions that have been deemed to have reverted back to the Trust for all purposes pursuant to the Plan shall be

SMRH:4902-8914-0115.5                    -12-

deemed disallowed and expunged without further action by the Trust, Trustee, or Debtors and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of the Beneficiary holding such disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such Disallowed Claim against the Trust, Trustee, or Debtors unless the Bankruptcy Court orders otherwise.

4.14.3 <u>Inapplicability of Unclaimed Property or Escheat Laws</u>. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.15 <u>Voided Checks; Request for Reissuance</u>. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 90 days after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed distributions under Article VI.G of the Plan and administered under this section 4.14 of the Agreement.

4.16 <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interests in the Trust or right to receive distributions from the Trust or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.16.1 The Trustee may elect to cause the Trust to not make any payment or distribution with respect to the beneficial interests in the Trust subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.16.2 The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the applicable beneficial interests in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for all other purposes whatsoever, including for federal and state income tax purposes.

4.16.3 In acting or refraining to act under and in accordance with this section 4.16 of the Agreement and the Plan, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.17    De Minimis Distributions. No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and this Agreement.

## ARTICLE V
## BENEFICIARIES

5.1    Interest Beneficial Only. The ownership of a Liquidation Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or title to the Liquidation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    Allocation of Liquidating Trust Interests. The allocation of the beneficial interests in the Trust shall be accomplished as set forth in the Plan and the Confirmation Order.

5.3    Evidence of Liquidating Trust Interest. Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee. The Trustee shall maintain at all times a register of the names, distribution addresses, and amounts of Allowed Claims (as of the Effective Date, or as may be Allowed thereafter pursuant to the Plan and this Agreement) of the Beneficiaries (the "Register"). The entries in the Register shall be conclusive absent manifest error, and the Trust and the Trustee shall treat each Person or Entity whose name is recorded in the Register pursuant to the terms of this Agreement as the owner of Liquidation Trust Interests indicated therein for all purposes of this Agreement, notwithstanding notice to the contrary.

5.4    No Right to Accounting. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of Liquidation Trust Assets. Notwithstanding the foregoing, the Trustee shall respond promptly to reasonable information requests from any Beneficiary and use commercially reasonable efforts to cooperate with the Beneficiaries to provide periodic status updates on distributions.

5.5    No Standing. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Liquidation Trust Assets.

5.6    Requirement of Undertaking. In any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted

by it as Trustee, the Trustee may request the Bankruptcy Court to require the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7     Limitation on Transferability. It is understood and agreed that the beneficial interests in the Trust shall be non-transferable and non-assignable during the term of this Agreement except as permitted under the Plan. Any such transfer or sale shall not be effective until appropriate notification and proof thereof is submitted to the Trustee and the transfer is recorded on the Register, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The notice shall be executed by the transferee (or appropriate representative) and the transferor (or appropriate representative). The notice must clearly describe the interest being transferred and must include the transferee's tax identification number, current mailing address, telephone number, and email address. The Trustee may rely upon such notice and proof of assignment without the requirement of any further investigation. Unless the Trustee receives actual written notice of an assignment from the duly authorized transferee (or appropriate representative) not less than 30 days prior to a distribution, the Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee. Any purported assignment, pledge, mortgage, sale, transfer or other disposition other than as permitted by this section 5.7 shall be void and will not be registered on the Register. Liquidation Trust Interests may be transferred by any individual Beneficiary by will or the laws of descent and distribution.

5.8     Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9     Delivery of Plan Distributions. Subject to the terms of this Agreement, the Trustee shall make distributions to Beneficiaries in the manner provided in the Plan.

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Liquidation Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Trustee's Liability. In exercising the rights granted in this Agreement, the Plan, and Confirmation Order, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of

all the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with Trustee's powers and duties under the Plan and this Agreement, whether sounding in tort, contract, or otherwise, except as a result of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. Except in the case of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Plan or this Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust, in no event shall the Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the performance of Trustee's powers and duties under the Plan or this Agreement, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Plan and Confirmation Order.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in such position prior to the date on which such successor becomes the Trustee unless the successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may reasonably rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors and shall not be liable for any action taken, omitted, or suffered by the Trustee in reasonable reliance upon the advice of such counsel, agents, or advisors.

6.7     No Liability For Acts Approved by Bankruptcy Court. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Liquidation Trust Assets required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute actual fraud, gross negligence, or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities. Except as otherwise provided herein, persons dealing with the Trustee shall have recourse only to the Liquidation Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under the Plan and this Agreement, or in rendering services by the Indemnified Party to the Trust or the Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the duties or material breach of the Plan or Agreement of or by the Indemnified Party asserting this provision.

6.9.1   Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Liquidation Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2   Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the

Trustee. By accepting any indemnification payment, the Indemnified Party automatically and without any other action required, undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10   No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein.

6.11   Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## TAX MATTERS

7.1   Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee, and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and transfer of the Liquidation Trust Assets to the Trust shall be treated as a transfer of the Liquidation Trust Assets to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidation Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes. The Trust is intended to comply with the requirements of IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and the provisions of this Agreement shall be interpreted and construed consistently with such requirements. Notwithstanding the foregoing, in the event of a final determination that the Trust does not qualify as a grantor trust, the Beneficiaries and the Trustee intend that it be treated as a partnership for U.S. federal income tax purposes and will take all actions reasonably necessary to cause the Trust to be treated as such a partnership.

7.2   Annual Reporting and Filing Requirements. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

7.3   Valuation of Liquidation Trust Assets. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Liquidation Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation. The Trust shall bear the costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Trustee in connection therewith. The Liquidation Trust Assets shall be valued consistently by the Trustee and the Beneficiaries, and such valuations shall be used for all federal income tax purposes. Each Beneficiary shall be required to use the Trustee's valuation of the Liquidation Trust Assets in preparing and filing its

own federal, state, and local income tax returns and shall not take any position on any such tax return that is inconsistent with such valuation; *provided*, *however*, that such valuation shall not be binding on the Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the Liquidation Trust Assets, whether by disposition, liquidation, litigation, settlement, or otherwise. Any such valuation shall be inadmissible in any proceeding concerning the Liquidation Trust Claims.

7.4    Tax Treatment of Disputed Claims Reserves. To the extent that the Trust holds reserves for Disputed Claims, the Trustee shall, subject to definitive guidance to the contrary, report any taxable income (including any income earned on the assets held in such reserves) in a manner consistent with the treatment of the Trust as a liquidating trust under Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684. Unless the Trustee determines, based upon the advice of the Trust's tax advisors, that an alternative treatment is required by applicable law, including the establishment of a disputed ownership fund under Treasury Regulations Section 1.468B-9, any taxable income earned on assets held in reserve for Disputed Claims shall be allocated to and reported by the Beneficiaries in accordance with their respective beneficial interests in the Trust. In the event the Trustee determines that a disputed ownership fund or other alternative tax treatment is required or advisable with respect to any reserves for Disputed Claims, the Trustee is authorized to take all actions reasonably necessary to establish and administer such fund or implement such alternative treatment in compliance with applicable Treasury Regulations and IRS guidance. Upon the allowance or disallowance of any Disputed Claim, the Trustee shall reallocate the reserves (and any income earned thereon) attributable to such Claim in a manner consistent with the Plan, this Agreement, and applicable tax law.

## ARTICLE VIII
## SELECTION, REMOVAL, REPLACEMENT
## AND COMPENSATION OF TRUSTEE

8.1    Initial Trustee. Kevin Berg shall be the initial Trustee and is appointed effective as of the Effective Date.

8.2    Term of Service. The Trustee shall serve until (a) the completion of the administration of the Liquidation Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's death, dissolution, liquidation, resignation, incapacity, or removal. If the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, incapacity, or removal, except as provided in section 8.3 of this Agreement, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VIII of this Agreement shall survive the resignation or removal of any Trustee.

8.3    Removal of Trustee. ~~Any Person serving as~~The Liquidating Trustee may be removed ~~at any time for cause. Any~~and replaced by unanimous written consent (which may be via email) of the Beneficiaries in their sole discretion (i) for cause, effective immediately upon notice thereof (which may be via email), or, (ii) without cause, upon seven (7) days' written

notice (which may be via email). In addition, any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Article VIII. For purposes of this Article, the term "cause" shall mean (a) the Trustee's actual fraud, gross negligence, reckless or willful misconduct, willful disregard of his or her duties under the Plan, the Confirmation Order, or this Agreement, or material breach of the Agreement, or (b) the Trustee's misappropriation or embezzlement of any Liquidation Trust Assets or the proceeds thereof.

8.4     Resignation of Trustee. The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is 30 days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.

8.5     Appointment of Successor Trustee. In the event of resignation, or replacement of the Trustee, the Beneficiaries shall appoint a qualified successor trustee, by unanimous written consent (which may be via email), whose appointment shall be approved upon such successor trustee's acceptance of the appointment and ten (10) days after the filing of a notice of appointment of such successor trustee with the Bankruptcy Court.  If there is any objection to the appointment of the successor trustee, the Bankruptcy Court shall hold a hearing to resolve any such objection.  In the event of death or removal, as provided herein, of the Trustee, any professional for the Trustee may file a motion with the Bankruptcy Court seeking the appointment of a successor trustee and may include a recommendation for such successor trustee.

8.6     Powers and Duties of Successor Trustee. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7     Trust Continuance. The death, dissolution, liquidation, resignation, incapacity, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8     Compensation of Trustee and Costs of Administration. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Liquidation Trust Assets. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Liquidation Trust Assets prior to any distribution to the Beneficiaries.; *provided*, that the expenses payable to the Trustee shall be subject to review and a fourteen (14) day objection period by the Beneficiaries.  Any uncontested portion of each invoice shall be deemed authorized to be paid after the fourteen (14) day review period for the Beneficiaries.

## ARTICLE IX
## DURATION OF TRUST

9.1     Duration. Once the Trust becomes effective upon the Effective Date, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2     Termination on Payment of Trust Expenses and Distribution of Liquidation Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all Liquidation Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law; *provided*, *however*, that in no event shall the Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of an extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed five years with a private letter ruling from the IRS or an opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets.

9.3     No Termination by Beneficiaries. The Trust may not be terminated at any time by the Beneficiaries.

9.4     Continuance of Trust for Winding Up; Discharge; and Release of Trustee. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the final distribution of the Liquidation Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X
## MISCELLANEOUS

10.1     Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2     Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on Register. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return

receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

*Trust or Trustee*:   Kevin Berg
[ADDRESS]
Email:   [_____]

*with a copy to its counsel*:

[_____]

or to such other address as may from time to time be provided in written notice by the respective Parties.

10.3   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

10.4   Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5   Particular Words. Reference in this Agreement to any section or Article is, unless otherwise specified, to the section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or Article of this Agreement.

10.6   Execution. All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish, or attach the Liquidation Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

10.7   Amendment. Any provision of this Agreement may be amended, supplemented, or waived (i) by the Trustee and the Debtors, or (ii) following dissolution of the Debtors, by the Trustee, in each case without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement without

the approval of the Bankruptcy Court, following notice to the Beneficiaries, that would (i) adversely affect (a) the distributions to any of the Beneficiaries or (b) the U.S. Federal income tax status of the Trust as a "liquidating trust" or as a "grantor trust"; (ii) require any Beneficiary to furnish or advance funds to the Trustee or entail any personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary; (iii) expand, add to, or modify the original stated purpose of the Trust (as described in the Plan and section 2.2 of this Agreement); or (iv) otherwise be in contravention of the Plan or the Confirmation Order.

10.8    No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

10.10    Severability. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

10.11    Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12    Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13    Entire Agreement. This Agreement (including the recitals), the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order and Plan (in that order) shall govern; *provided*, *however*, that the Trustee may amend, modify, or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

10.14   Jurisdiction. The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, and Liquidation Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

*[Remainder of this page intentionally left blank.]*

**IN WITNESS WHEREOF**, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

[ADD DEBTOR SIGNATURE BLOCKS]
**Debtors**

By: _____

Name: _____

Title: _____

SMRH:4902-8914-0115.5

-2-

**Kevin Berg, *Liquidation* Trustee**

By: _____

Name: _____

Title: _____

SMRH:4902-8914-0115.5

-3-

**Burton Hastings Advisors, LLC,** *GUC Trustee*

By: _____

Name: Peter Hurwitz _____

Title:  Managing Member_____

SMRH:4902-8914-0115.5

# EXHIBIT B

## GUC Trust Agreement

## GUC TRUST AGREEMENT AND DECLARATION OF TRUST

This GUC Trust Agreement and Declaration of Trust (the "Agreement"), dated as of [DATE], 2026, is made by and among Village Roadshow Entertainment Group USA Inc., and its affiliated chapter 11 debtors and debtors in possession (collectively, the "Debtors") and Burton Hastings Advisors LLC (together with any successors, the "Trustee", and together with the Debtors, the "Parties").

### RECITALS

A       On March 17, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Village Roadshow Entertainment Group USA Inc, et al.*, Case No. 25-10475 (TMH).

B       On March 27, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee") [Docket No. 103].

C       On April [ ], 2026, the Bankruptcy Court entered the *[CONFIRMATION ORDER NAME]* [Docket No. __] (the "Confirmation Order"), which confirms the [*Debtors' Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and its Debtor Affiliates*] [Docket No. 1359] (as confirmed, including all amendments and supplements thereto, the "Plan").

D       The Plan and Confirmation Order provide for the establishment of this GUC Trust (the "Trust"), effective as of the Effective Date of the Plan.

E       The Trust is established pursuant to the Plan for the benefit of Holders of Allowed Non-Library Debtors General Unsecured Claims (collectively, the "Beneficiaries").

F       The Trust is established for the primary purpose of maximizing the value of the GUC Trust Assets and making distributions to the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

G       Pursuant to the Plan, the Debtors, the Trust, the Trustee, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the GUC Trust Assets to the Trust as a transfer of the GUC Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the GUC Trust Assets by the Beneficiaries to the Trust in exchange for the right to receive distributions from the Trust, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

H       The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of Sections 641(a) and 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and (ii) to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d).

I        The Trust is further intended to be exempt from the requirements of, pursuant to section 1145 of the Bankruptcy Code (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act.

NOW, THEREFORE, in consideration of the promises, and the mutual covenants and agreements of the Parties herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to, and effective on the Effective Date do hereby, create the Trust, which shall bear the name "[Village Roadshow General Unsecured Creditor Trust]" pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the GUC Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns free and clear of all claims, liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan, in trust for the benefit of the Beneficiaries, for the uses and purposes stated in the Plan and this Agreement;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the GUC Trust Assets, including any assets contributed and transferred to the Trust after the Effective Date in accordance with the Plan, and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan and Confirmation Order.

## ARTICLE I
## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2    Terms Defined in Plan. Any capitalized term used and not defined herein shall have the meaning assigned to such term in the Plan and the Confirmation Order, as applicable.

1.3    Interpretation. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     Construction of Agreement. Except as specifically stated otherwise, this Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5     Conflict Among Plan Documents. In the event of any inconsistency between the Plan and the Confirmation Order, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence. Notwithstanding the foregoing, in the event of any inconsistency solely between this Agreement and Article IX.E of the Plan, this Agreement controls.

## ARTICLE II
## ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust. Pursuant to the Plan and the Confirmation Order, this Agreement shall become effective on the Effective Date.

2.2     Purpose of Trust. The Debtors and the Trustee hereby create the Trust with the primary purpose of maximizing the value of the GUC Trust Assets and making distributions to the Beneficiaries in accordance with the Plan, this Agreement, and the Confirmation Order; and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     Transfer of GUC Trust Assets.

2.3.1     Conveyance of GUC Trust Assets. In accordance with Article IX.C of the Plan, the Debtors irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the GUC Trust Assets, to the extent such assets do not exceed the GUC Recovery, to the Trust in the manner provided in section 2.3.2 of this Agreement in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order. If the GUC Trust Net Amount exceeds the GUC Recovery after distribution of the GUC Trust Assets to the Beneficiaries, such excess amount shall be distributed by the Trustee to the Liquidation Trust in accordance with Article III.B.4 of the Plan. The Trust is further authorized to accept and receive transfers or contributions of any GUC Trust Assets or the proceeds thereof from the Debtors after the Effective Date in accordance with the Plan. The transfer of the GUC Trust Assets to the Trust, including the transfer of any such assets after the Effective Date in accordance with the Plan, shall be exempt from any stamp, transfer, recording, sales, use or similar tax. The Debtors shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtors shall take or cause to be taken such further action, as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the GUC Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2   Title to GUC Trust Assets. On the Effective Date, all of the Debtors' right, title, and interest in and to the GUC Trust Assets are automatically vested in the Trust, free and clear of all liens, claims, encumbrances, and other interests, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust is authorized to obtain possession or control of, liquidate, and collect all of the GUC Trust Assets, to the extent such assets do not exceed the GUC Recovery. By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all such property as GUC Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.3.3   Upon delivery of the GUC Trust Assets to the Trust, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the GUC Trust Assets or the Trust, to the extent such assets do not exceed the GUC Recovery. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the GUC Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

2.4   Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, in furtherance of its stated purpose, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state, or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5   Mutual Cooperation. The Debtors, the Liquidation Trustee, and their respective professionals, shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the GUC Trust Assets from the Debtors and the Liquidation Trust, if applicable, to the Trust.

The Trustee and its professionals shall use commercially reasonable efforts to cooperate with the Debtors, the Liquidation Trustee, and their respective professionals, as applicable, in connection with implementing certain provisions of the Plan, including, but not limited to, the issuance of distributions pursuant to the Plan.

2.6   No Retention of Excess Cash. The Trustee shall distribute all amounts not required to be retained or otherwise reserved in accordance with the Plan, Confirmation Order, or this Agreement, to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan, Confirmation Order, and this Agreement.

2.7   Acceptance by Trustee. The Trustee accepts its appointment as trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement and the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Beneficiaries, (i) by the Debtor of all of the Debtor's respective rights, titles, and interests in the GUC Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan, and in the Confirmation Order, and (ii) by the Liquidation Trustee of all of the Liquidation Trust's respective rights, title, and interests in any Liquidation Trust Assets that are

transferred to the GUC Trust, solely to the extent the GUC Recovery exceeds the GUC Net Trust Amount, if applicable, in accordance with the Plan, Confirmation Order, and this Agreement. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise.  The Trustee shall have the authority to bind the Trust in accordance with, and within the limitations set forth in this Agreement, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

## ARTICLE III
## ADMINISTRATION OF TRUST

3.1     Rights, Powers, and Privileges of Trustee Generally. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the GUC Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust shall control and exercise authority over the GUC Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust consistent with the Trustee's fiduciary duties in accordance with this Agreement, the Plan, and the Confirmation Order. In administering the GUC Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the GUC Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1   Power to Contract. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2   Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2     Powers of Trustee. Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust without need for further approval by the Bankruptcy Court except as specifically set forth herein, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1   hold legal title to the GUC Trust Assets and to all rights of the Debtors and the Beneficiaries in or arising from the GUC Trust Assets;

3.2.2   open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.3   cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.2.4   collect and liquidate all GUC Trust Assets;

3.2.5   cause the Trust to employ professionals and other agents and third parties pursuant to this Agreement;

3.2.6   cause the Trust to pay all its lawful expenses, debts, charges, taxes, and other liabilities, including all fees and expenses of professionals retained by the Trustee or the Trust *(provided*, that the GUC Trust Fees and Expenses shall not exceed the GUC Trust Initial Funding Amount in the aggregate from any funding source)*, and make all other necessary or advisable payments relating to the GUC Trust Assets;

3.2.7   cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, in good faith and based upon the advice of its agents or professionals, may be required to be withheld from such distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.8   cause the Trust to (a) make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC Section 671 and Treasury Regulations Section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and, to the extent any applicable state or local jurisdiction does not follow federal grantor trust reporting rules or otherwise requires separate entity-level tax filings, cause the Trust to file such additional state or local tax returns as may be required, (b) pay taxes, if any, payable for and on behalf of the Trust, and (c) file any reports, either state or federal, that may be required to disclose the ultimate Beneficiaries of the Trust;

3.2.9   cause the Trust to send annually to Beneficiaries, no later than March 15 of each calendar year with respect to the preceding tax year, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.10   cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.11   cause the Trust to establish such reserves for taxes, assessments, and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.12   consistent with section 3.8 hereof, cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable, including

appropriate insurance coverage for the benefit of the Trust and the Trustee, and to pay all associated premiums and costs;

3.2.13  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.14  coordinate with the Debtors, Liquidation Trustee, and Disbursing Agent, Plan Distributions and the Register (as defined below);

3.2.15  if the GUC Recovery exceeds the GUC Trust Net Amount, cause the GUC Trust to request and receive from the Liquidation Trust the amount in which the value of the GUC Recovery exceeds the GUC Trust Net Amount, in accordance with Article III.B.4 of the Plan;

3.2.16  if the GUC Trust Net Amount exceeds the GUC Recovery, cause the GUC Trust to distribute such excess amount to the Liquidation Trust in accordance with Article III.B.4 of the Plan;

3.2.17  in reliance upon the Debtors' schedules and the Claims Register, maintain a register evidencing the beneficial interests in the Trust held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the Claims Register;

3.2.18  calculate and make (or cause to be made) all distributions to the Beneficiaries, and, if the GUC Trustee determines necessary and appropriate, retain a Disbursing Agent to facilitate distributions to Beneficiaries, in each case, in accordance with this Agreement (including section 9.3 hereof), the Plan, and the Confirmation Order; and

3.2.19  take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     General Authority of Trustee. Unless specifically stated otherwise herein, the Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (a) authorized under this Agreement or (b) specifically contemplated in the Plan or Confirmation Order.  For the avoidance of doubt, the Trustee shall not be required to file any employment or fee applications to engage or pay any professionals, and the Trustee shall not be required to file any application under Rule 9019 of the Federal Rules of Bankruptcy Procedures or section 363 of the Bankruptcy Code to transfer or dispose of any GUC Trust Assets.

3.4     Agents and Professionals. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously or currently retained by the Debtors or the Committee.

3.5     Safekeeping and Investment of GUC Trust Assets. All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be

held in trust for the benefit of the Beneficiaries, but (except as provided in the Plan or this Agreement) need not be segregated in separate accounts from other GUC Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and only to the extent that the Trustee is directed to invest moneys other than in short-term money market funds, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided*, *however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of any state law obligating or creating a duty on a trustee to invest trust assets shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.6     Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of GUC Trust Assets, including receipts and disbursements and other activity of the Trust. To the extent of any Claims reflected thereon, the Claims Register may serve as the Trustee's register of holders of Claims. The fees and costs associated with maintaining and updating the Claims Register shall be the sole responsibility of the Liquidation Trust. The books and records maintained by the Trustee, and any records of the Debtors transferred to the Trust (if any), may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.7     Preservation of Privilege. As provided in the Plan and Confirmation Order, any attorney-client privilege, work-product privilege, or other privilege or immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Trust shall vest in the Trust and be jointly held by the Debtors and the Trust on and after the Effective Date.  The Trustee's receipt of any information subject to any privilege or similar protection shall not waive any applicable privileges or protections, and all such privileges and protections are expressly preserved.

3.8     No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Trustee is hereby authorized to obtain all reasonable insurance coverage for itself, the Trust, and its members, agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the Trustee and its respective members, agents, representatives, employees, or independent

contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of GUC Trust Assets.

## ARTICLE IV
## PLAN DISTRIBUTIONS

4.1     Distribution. Following the transfer of GUC Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect and distribute all GUC Trust Assets. For avoidance of doubt, the Trustee, or an agent appointed by the Trustee, may make periodic distributions in accordance with the terms of the Plan at any time (except that the Trust may retain an amount of net income or net proceeds necessary to maintain the value of its assets or to meet claims and contingent liabilities to the extent permissible in accordance with the requirements of Treasury Regulations Section 301.7701-4(d)).

4.2     Distributions on Account of Disputed Claims. Except as otherwise provided in the Plan, by Final Order, or as agreed by the relevant parties, Plan Distributions on account of a Claim that becomes an Allowed Claim after the Effective Date shall be made by the Trustee as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order.

4.3     No Distributions Pending Allowance. Notwithstanding anything herein to the contrary, no distribution will be made with respect to any Disputed Claim unless and until such Claim becomes an Allowed Claim; *provided*, *however*, that to the extent a Claim contains both Disputed and Allowed amounts, distributions on account of the non-Disputed portion of such Claim may be made.

4.4     Legal Proceedings. If any Retained Cause of Action is asserted and if such claim or any other legal proceeding is initiated or prosecuted against any Creditor pursuant to the Plan, Confirmation Order, or this Agreement, or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan or Confirmation Order, until such proceeding or contested matter is finally resolved and all payments to the Estates or the Trust, as applicable, required by such resolution have been made, such Creditor shall only receive Plan Distributions under the Plan or Confirmation Order to the extent that the distributions to which such Creditor is otherwise entitled exceed the maximum liability of such Creditor to the Estates or the Trust, as applicable, asserted in such proceedings.

4.5     Distributions Net of Costs. Distributions shall be made net of the actual and reasonable costs of making the distributions.

4.6     Taxes. Pursuant to Bankruptcy Code section 346(f), the Trustee will be entitled to deduct and withhold any federal, state, or local taxes from any Cash payments made with respect to Allowed Claims.

4.7     Withholding from Distributions. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other

governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. Notwithstanding anything herein to the contrary, each Holder of an Allowed Claim that has received a distribution of Cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

4.8     Method and Timing of Distributions. Plan Distributions to Beneficiaries will be made in accordance with the terms of the Plan and this Agreement. The Trustee and Debtors shall cooperate in a commercially reasonable manner, as necessary, in providing the Trustee with the necessary written instructions and funds to make Plan Distributions to the Beneficiaries.

4.9     Tax Identification Numbers. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any distribution upon receipt of such identification number or tax form. If, within 90 days of initial written request from the Trustee, a Beneficiary does not provide the Trustee with the foregoing information, then the distribution to such Beneficiary shall be administered as an unclaimed distribution in accordance with section 4.10 of this Agreement and, as provided in Article VI.G of the Plan, no further distributions shall be made to such Beneficiary.

4.10     Unclaimed and Undeliverable Distributions. If any Plan Distribution to a Beneficiary is returned as undeliverable or is otherwise unclaimed, such Plan Distribution shall be subject to Article VI.G of the Plan.

4.10.1   No Responsibility to Attempt to Locate Beneficiaries. The Trustee may, in its sole discretions, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.10.2   Disallowance of Claims; Cancellation of Corresponding GUC Trust Interests. All Claims in respect of undeliverable or unclaimed distributions that have been deemed to have reverted back to the Trust for all purposes pursuant to the Plan shall be deemed disallowed and expunged without further action by the Trust, Trustee, or Debtors and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of the Beneficiary holding such disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any distributions in respect of such Claim. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any distributions under the Plan or this Agreement and from asserting such Disallowed Claim against the Trust, Trustee, or Debtors unless the Bankruptcy Court orders otherwise.

4.10.3 <u>Inapplicability of Unclaimed Property or Escheat Laws</u>. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.11 <u>Voided Checks; Request for Reissuance</u>. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within 90 days after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed distributions under Article VI.G of the Plan and administered under this section 4.11 of the Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unclaimed distributions in accordance with the Plan.

4.12 <u>De Minimis Distributions</u>. No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and this Agreement.

4.13 <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interests in the Trust or right to receive distributions from the Trust or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.13.1 The Trustee may elect to cause the Trust to not make any payment or distribution with respect to the beneficial interests in the Trust subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.13.2 The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the applicable beneficial interests in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for all other purposes whatsoever, including for federal and state income tax purposes.

In acting or refraining to act under and in accordance with this section 4.13 of the Agreement and the Plan, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

## ARTICLE V
## BENEFICIARIES

5.1     Interest Beneficial Only. The ownership of a GUC Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or title to the GUC Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2     Allocation of GUC Trust Interests. The allocation of the beneficial interests in the Trust shall be accomplished as set forth in the Plan and the Confirmation Order.

5.3     Evidence of GUC Trust Interest. Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee. The Trustee shall maintain at all times a register of the names, distribution addresses, and amounts of Allowed Claims (as of the Effective Date, or as may be Allowed thereafter pursuant to the Plan and this Agreement) of the Beneficiaries (the "Register"). The entries in the Register shall be conclusive absent manifest error, and the Trust and the Trustee shall treat each Person or Entity whose name is recorded in the Register pursuant to the terms of this Agreement as the owner of GUC Trust Interests indicated therein for all purposes of this Agreement, notwithstanding notice to the contrary.

5.4     No Right to Accounting. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or distribution out of proceeds of GUC Trust Assets.

5.5     No Standing. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the GUC Trust Assets.

5.6     Requirement of Undertaking. In any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the Trustee may request the Bankruptcy Court to require the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7     Limitation on Transferability. It is understood and agreed that the beneficial interests in the Trust shall be non-transferable and non-assignable during the term of this

Agreement except as permitted under the Plan. Any such transfer or sale shall not be effective until appropriate notification and proof thereof is submitted to the Trustee and the transfer is recorded on the Register, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The notice shall be executed by the transferee (or appropriate representative) and the transferor (or appropriate representative). The notice must clearly describe the interest being transferred and must include the transferee's tax identification number, current mailing address, telephone number, and email address. The Trustee may rely upon such notice and proof of assignment without the requirement of any further investigation. Unless the Trustee receives actual written notice of an assignment from the duly authorized transferee (or appropriate representative) not less than 30 days prior to a distribution, the Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee. Any purported assignment, pledge, mortgage, sale, transfer or other disposition other than as permitted by this section 5.7 shall be void and will not be registered on the Register. GUC Trust Interests may be transferred by any individual Beneficiary by will or the laws of descent and distribution.

5.8   Exemption from Registration. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9   Delivery of Plan Distributions. Subject to the terms of this Agreement, the Trustee shall make Plan Distributions to Beneficiaries in the manner provided in the Plan.

# ARTICLE VI
# THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1   Parties Dealing With the Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the GUC Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2   Limitation of Trustee's Liability. In exercising the rights granted in this Agreement, the Plan, and Confirmation Order, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with Trustee's powers and duties under the Plan and this Agreement, whether sounding in tort, contract, or otherwise, except as a result of actual fraud, gross

negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Plan or this Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. Except in the case of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust, in no event shall the Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the performance of Trustee's powers and duties under the Plan or this Agreement, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Plan and Confirmation Order.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4     No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in such position prior to the date on which such successor becomes the Trustee unless the successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may reasonably rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors and shall not be liable for any action taken, omitted, or suffered by the Trustee in reasonable reliance upon the advice of such counsel, agents, or advisors.

6.7     No Liability For Acts Approved by Bankruptcy Court. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the GUC Trust Assets required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute actual fraud, gross negligence, or willful misconduct.

6.8    No Personal Obligation for Trust Liabilities. Except as otherwise provided herein, persons dealing with the Trustee shall have recourse only to the GUC Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9    Indemnification. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under the Plan and this Agreement, or in rendering services by the Indemnified Party to the Trust or the Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the duties or material breach of the Plan or this Agreement of or by the Indemnified Party asserting this provision.

6.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available GUC Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party automatically and without any other action required, undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10   No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein.

6.11   Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII
## TAX MATTERS

7.1   Tax Treatment of Trust. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee, and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and transfer of the GUC Trust Assets to the Trust shall be treated as a transfer of the GUC Trust Assets to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the GUC Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes. The Trust is intended to comply with the requirements of IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and the provisions of this Agreement shall be interpreted and construed consistently with such requirements. Notwithstanding the foregoing, in the event of a final determination that the Trust does not qualify as a grantor trust, the Beneficiaries and the Trustee intend that it be treated as a partnership for U.S. federal income tax purposes and will take all actions reasonably necessary to cause the Trust to be treated as such a partnership.

7.2   Annual Reporting and Filing Requirements. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

7.3   Valuation of GUC Trust Assets. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the GUC Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation. The Trust shall bear the costs and expenses incurred in connection with determining such value, including the fees and expenses of any Persons retained by the Trustee in connection therewith. The GUC Trust Assets shall be valued consistently by the Trustee and the Beneficiaries, and such valuations shall be used for all federal income tax purposes. Each Beneficiary shall be required to use the Trustee's valuation of the GUC Trust Assets in preparing and filing its own federal, state, and local income tax returns and shall not take any position on any such tax return that is inconsistent with such valuation; provided, however, that such valuation shall not be binding on the Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the GUC Trust Assets, whether by disposition, liquidation, litigation,

settlement, or otherwise. Any such valuation shall be inadmissible in any proceeding concerning the GUC Trust Assets.

7.4     Tax Treatment of Disputed Claims Reserves. To the extent that the Trust holds reserves for Disputed Claims, the Trustee shall, subject to definitive guidance to the contrary, report any taxable income (including any income earned on the assets held in such reserves) in a manner consistent with the treatment of the Trust as a liquidating trust under Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684. Unless the Trustee determines, based upon the advice of the Trust's tax advisors, that an alternative treatment is required by applicable law, including the establishment of a disputed ownership fund under Treasury Regulations Section 1.468B-9, any taxable income earned on assets held in reserve for Disputed Claims shall be allocated to and reported by the Beneficiaries in accordance with their respective beneficial interests in the Trust. In the event the Trustee determines that a disputed ownership fund or other alternative tax treatment is required or advisable with respect to any reserves for Disputed Claims, the Trustee is authorized to take all actions reasonably necessary to establish and administer such fund or implement such alternative treatment in compliance with applicable Treasury Regulations and IRS guidance. Upon the allowance or disallowance of any Disputed Claim, the Trustee shall reallocate the reserves (and any income earned thereon) attributable to such Claim in a manner consistent with the Plan, this Agreement, and applicable tax law.

**ARTICLE VIII**
**SELECTION, REMOVAL, REPLACEMENT**
**AND COMPENSATION OF TRUSTEE**

8.1     Initial Trustee. Burton Hastings Advisors LLC shall be the initial Trustee and is appointed effective as of the Effective Date.

8.2     Term of Service. The Trustee shall serve until (a) the completion of the administration of the GUC Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's death, dissolution, liquidation, resignation, incapacity, or removal. If the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, incapacity, or removal, except as provided in section 8.3 of this Agreement, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VIII of this Agreement shall survive the resignation or removal of any Trustee.

8.3     Removal of Trustee. Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Article VIII. For purposes of this Article, the term "cause" shall mean (a) the Trustee's actual fraud, gross negligence, reckless or willful misconduct, willful disregard of his or her duties under the Plan, the Confirmation Order, or this Agreement, or material breach

of the Agreement, or (b) the Trustee's misappropriation or embezzlement of any GUC Trust Assets or the proceeds thereof.

8.4     Resignation of Trustee. The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is 30 days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.

8.5     Appointment of Successor Trustee. In the event of resignation, the Trustee shall appoint a qualified successor trustee, whose appointment shall be approved upon such successor trustee's acceptance of the appointment and ten (10) days after the filing of a notice of appointment of such successor trustee with the Bankruptcy Court.  If there is any objection to the appointment of the successor trustee, the Bankruptcy Court shall hold a hearing to resolve any such objection.   In the event of death or removal, as provided herein, of the Trustee, any professional for the Trustee may file a motion with the Bankruptcy Court seeking the appointment of a successor trustee and may include a recommendation for such successor trustee.

8.6     Powers and Duties of Successor Trustee. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7     Trust Continuance. The death, dissolution, liquidation, resignation, incapacity, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8     Compensation of Trustee and Costs of Administration. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge solely against, and solely paid out, of the GUC Trust Assets *(provided*,  for the avoidance of doubt, that the GUC Trust Fees and Expenses shall not exceed the GUC Trust Initial Funding Amount in the aggregate from any funding source*)*. All costs, expenses, and obligations incurred by the GUC Trustee (or professionals who may be employed by the GUC Trustee in administering the GUC Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the GUC Trust solely from the GUC Trust Assets prior to any Plan Distributions to the Beneficiaries.

## ARTICLE IX
## DURATION OF TRUST

9.1     Duration. Once the Trust becomes effective upon the Effective Date, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2     Termination on Payment of Trust Expenses and Distribution of GUC Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the distribution of all GUC Trust Assets in accordance with the

provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law; *provided*, *however*, that in no event shall the Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of an extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed five years with a private letter ruling from the IRS or an opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the GUC Trust Assets.

9.3     GUC Trust Assets Exceeding GUC Recovery. If the GUC Trust Net Amount exceeds the GUC Recovery after distribution of the GUC Trust Assets to the Beneficiaries, such excess amount shall be distributed by the Trustee to the Liquidation Trust in accordance with Article III.B.4 of the Plan.

9.4     No Termination by Beneficiaries. The Trust may not be terminated at any time by the Beneficiaries.

9.5     Continuance of Trust for Winding Up; Discharge; and Release of Trustee. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the final distribution of the GUC Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X
## MISCELLANEOUS

10.1     Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2     Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the Register. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

SMRH:4938-0183-4644.6                    -19-

*Trust or Trustee*:                Burton Hastings Advisors LLC
                                             Attention: Peter Hurwitz, Managing Member
                                             40 Half Moon Lane
                                             Irvington NY 10533

or to such other address as may from time to time be provided in written notice by the respective Parties.

10.3    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

10.4    Successors and Assigns. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    Particular Words. Reference in this Agreement to any section or Article is, unless otherwise specified, to the section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or Article of this Agreement.

10.6    Execution. All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish, or attach the GUC Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

10.7    Amendment. Any provision of this Agreement may be amended, supplemented, or waived (i) by the Trustee and the Debtors, or (ii) following dissolution of the Debtors, by the Trustee, in each case without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement without the approval of the Bankruptcy Court, following notice to the Beneficiaries, and any other impacted party, that would (i) adversely affect (a) the Plan Distributions to any of the Beneficiaries or (b) the U.S. Federal income tax status of the Trust as a "liquidating trust" or as a "grantor trust"; (ii) require any Beneficiary to furnish or advance funds to the Trustee or entail any personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary; (iii) expand, add to, or modify the original stated purpose of the Trust (as described in the Plan and section 2.2 of this Agreement); or (iv) otherwise be in contravention of the Plan or the Confirmation Order (including, without limitation, any treatment of claims and interests pursuant to the Plan).

10.8    No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    No Relationship Created. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

10.10   Severability. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

10.11   Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12   Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13   Entire Agreement. This Agreement (including the recitals), the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order and Plan (in that order) shall govern; *provided*, *however*, that the Trustee may amend, modify, or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

10.14   Jurisdiction. The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, and GUC Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this

Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

[*Remainder of this page intentionally left blank.*]

-1-

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

[ADD DEBTOR SIGNATURE BLOCKS]
**Debtors**

By: _____

Name: _____

Title: _____

SMRH:4938-0183-4644.6

-2-

**Burton Hastings Advisors, LLC, *GUC Trustee***

By: _____

Name: Peter Hurwitz _____

Title:  Managing Member_____

-2-

-3-

**Kevin Berg,** *Liquidation Trustee*

By: _____

Name: _____

Title: _____

## EXHIBIT D

**Assumed Executory Contracts and Unexpired Leases**

The Debtors expressly reserve the right to alter, modify, amend, remove, augment or supplement this exhibit at any time prior to the Effective Date.[1]

Article V.A of the *Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates* (the "Plan") provides, in pertinent part, for the following:

Assumption and Rejection of Executory Contracts and Unexpired Leases.  On the Effective Date, except as otherwise provided herein (which exclusion includes the Indemnification Obligations and the D&O Liability Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court or not included on the Schedule of Assumed Executory Contracts and Unexpired Leases, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date, or are subject to an unresolved cure dispute as of the Effective Date (and shall be assumed, assumed and assigned, or rejected, as applicable, upon the resolution of such cure dispute in accordance with the Sale Documents).

Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

For the avoidance of doubt, the inclusion of an Executory Contract and/or Unexpired Lease on this Plan Supplement exhibit does not constitute an admission as to the executory or non-executory nature of such Executory Contract or Unexpired Lease or as to the existence or validity of any Claims held by the counterparty or counterparties to such Executory Contract or Unexpired Lease.

Except as otherwise provided in the Plan or agreed to by the Debtors and the applicable counterparty, each assumed (or assumed and assigned) Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of

---

[1]  Capitalized Terms not defined herein shall have the meaning ascribed to them in the Plan.  In the event of any inconsistency between the Plan and this Plan Supplement exhibit, the Plan shall govern.

the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Certain documents, or portions thereof, contained in this Plan Supplement remain subject to continuing review and discussions among the Debtors and interested parties with respect thereto.  The rights of the Debtors are expressly reserved, subject to the terms and conditions set forth in the Plan (including all applicable consultation, consent, and/or approval rights contained or contemplated therein), to alter, amend, modify, or supplement the Plan Supplement and any of the documents contained therein in accordance with the terms of the Plan, or by order of the Bankruptcy Court.

| Debtor Name(s) | Counterparty | Name of Agreement | Cure Amount |
|---|---|---|---|
| Village Roadshow Entertainment Group USA Inc. | DivergeIT | Master Services Agreement 3/4/26 | $0 |
| Village Roadshow Entertainment Group USA Inc. | DivergeIT | Services Agreement Order 3/11/26 | $0 |
| Village Roadshow Pictures Entertainment Inc. (as successor-in-interest to Village Roadshow Pictures (U.S.A.) Inc.) | Iron Mountain Information Management, Inc. (as successor-in-interest to The dataLOK Company) | ServicesData Storage and Receipt Agreement, 7/31/1991 | $0 |
| Village Roadshow Pictures Entertainment Inc. | Iron Mountain Information Management, Inc. | Iron Mountain Pricing Schedule (A) to Data Storage and Receipt Agreement, 11/28/25 | $0 |
| Village Roadshow Entertainment Group USA Inc. | WeWork | WeWork Membership Agreement 3/13/25 | $0 |
| Village Roadshow Entertainment Group USA Inc. | WeWork | WeWork Membership Renewal 8/22/25 | $0 |
| Village Roadshow Entertainment Group USA | ADP TotalSource | Client Services Agreement 12/11/20 | $0 |

| | | | |
|---|---|---|---|
| Inc. | | | |
| Village Roadshow Entertainment Group USA Inc. | Purple Tag Originals, LLC/Roku | Roku Sales Representation: Weird 11/4/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | OneGate Media GmbH | Distribution Agreement 12/22/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Daro Film Distribution GMBH | Distribution Agreement 2/22/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Daydream Entertainment | Distribution Agreement 2/21/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Happinet Phantom Studios Corporation | Distribution Agreement 6/16/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Intertech Services AG | Distribution Agreement 11/18/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | DBS Satellite Services (1998) LTD | License Agreement 1/20/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Minerva Pictures Group | Distribution Agreement 3/27/24 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Myndform | Distribution Agreement 2/8/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Network Ten All Access PTY LTD | Distribution Agreement 2/28/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Shout! Factory, LLC | Distribution Agreement 6/9/23 | $0 |
| Village Roadshow | Tanweer Films | Distribution Agreement | |

| | | | |
|---|---|---|---|
| Entertainment Group USA Inc. | FZ, LLC | 11/27/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Twelve Oaks Pictures, S.L. | Distribution Agreement 11/27/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Umbrella Entertainment PTY LTD | Distribution Agreement 12/16/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Program Store | Distribution Agreement 9/13/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Smile Entertainment APS | Distribution Agreement 5/23/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Cutting Edge Music Services, LLC | Master and Synchronization License 12/8/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Phoenicia Pictures International FZCO | Distribution Agreement 11/23/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Pictureworks | Distribution Agreement 4/20/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Anuvu Operations LLC | Non-Theatrical Distribution Agreement 1/3/23 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Silverdew Entertainment Solutions | Distribution Agreement 11/18/22 | $0 |
| Village Roadshow Entertainment Group USA Inc. | Vertigo Releasing | Distribution Agreement 1/20/24 | $0 |
| Village Roadshow Entertainment Group USA Inc. | American Express | Corporate Services Commercial Account Agreement 2/14/22 | $0 |

-5-

| Village Roadshow Entertainment Group USA Inc. | GoDaddy | Service Agreement | $0 |
|---|---|---|---|
| Village Roadshow Entertainment Group USA Inc. | DropBox | Service Agreement | $0 |
| Village Roadshow Entertainment Group USA Inc. | Adobe Acrobat Pro | Subscription Service Agreement and Renewal | $0 |