**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

2026 AUG 26 P 2:18

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered) |

# MOTION OF JOHN T. PAUTSCH FOR PRESERVATION OF DEBTOR BOOKS AND RECORDS UNDER PARAGRAPH 114 OF THE CONFIRMATION ORDER (D.I. 1565)

## I. EXISTING PRESERVATION OBLIGATION

John T. Pautsch ("Movant"), founder and CEO of THE G.O.A.T. MEDIA, LLC, uses the professional name John Huntsman in the market and on his authored works. Movant is the appellant in the appeal now pending before the United States Court of Appeals for the Third Circuit, No. 26-2443. The Evidentiary Compendium supporting Claims 16 and 17 was admitted into evidence by this Court on January 30, 2026. (Jan. 30, 2026 Hr'g Tr. 14:14–22.) Movant seeks limited preservation relief under paragraph 114 of this Court's Confirmation Order.

Paragraph 114 of this Court's Confirmation Order already establishes a preservation mechanism for the Debtors' books and records. It requires the Debtors to instruct third parties, Purchasers, and professionals possessing those records—including computer-generated and computer-maintained records and data—not to dispose of or destroy them until authorized in writing by the Liquidation Trustee or further order of this Court, subject to any applicable Sale Order or Asset Purchase Agreement. (D.I. 1565, para. 114.) The Plan became effective May 1, 2026. (D.I. 1620, para. 2.) Movant asks the Court to protect the specific record categories implicated by evidence already before the Court from disposal or destruction on the terms set forth below.

## II. PENDING APPEAL AND SCOPE OF RELIEF

Movant's appeal concerning Rule 17(a)(3) and dismissal of the underlying bankruptcy appeal remains pending in the United States Court of Appeals for the Third Circuit, No. 26-2443. That appeal is from the District Court's May 13, 2026 Memorandum and Order denying substitution and dismissing the appeal from this Court's January 30, 2026 order disallowing Claims 16 and 17.

Paragraph 114 governs preservation of the Debtors' books and records. This Court has subject-matter jurisdiction under 28 U.S.C. § 1334 because the requested relief seeks implementation and enforcement of paragraph 114 of the Confirmation Order and therefore bears a close nexus to the bankruptcy plan or proceeding. *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 166–67 (3d Cir. 2004). Paragraph 125 retains this Court's jurisdiction over matters arising out of or related to the Chapter 11 Cases, the Sale, the Sale Documents, the Confirmation Order, and the Plan. Movant invokes that jurisdiction solely to preserve Covered Records (as defined in Section VII) that may become material if the underlying bankruptcy appeal is reinstated or further proceedings follow.

Movant has a direct stake in the requested preservation. He is the appellant in No. 26-2443, in which dismissal of the bankruptcy appeal from the order disallowing Claims 16 and 17 remains under review, and is identified as author and copyright claimant in federal registration records for works reflected in the evidentiary record. (See Section X; Appx. 87.) Destruction of Covered Records could impair the effectiveness of any appellate or remand relief. Section 1109(b) broadly permits a party with a legally protected interest that may be affected by a Chapter 11 proceeding to appear and be heard. *See In re Global Indus. Techs., Inc.*, 645 F.3d 201,

210–11 (3d Cir. 2011). The requested preservation does not require this Court to determine ownership or claimant status.

This Motion does not ask this Court to alter any order presently on appeal or adjudicate ultimate ownership, liability, damages, value, or any issue before the Third Circuit. The Covered Records concern the same projects, communications, services, institutional relationships, and record-handling issues reflected in the Evidentiary Compendium already admitted into evidence by this Court; their loss would impair the ability to develop and test that record in any proceeding in which those matters properly arise.

## III. ARTICLE III CONSENT

Consistent with Del. Bankr. L.R. 9013-1(f), Movant consents, solely for purposes of this contested matter, to the entry of final orders or judgments by this Court if it is determined that, absent consent, the Court could not enter final orders or judgments consistent with Article III of the United States Constitution.

## IV. SUMMARY

The evidence presented to date reflects that the Debtors and their agents used the brand, infrastructure, personnel, and asserted authority of Village Roadshow Entertainment Group ("VREG") to obtain and maintain access to Movant's projects, intellectual property, and confidential information while making material misrepresentations concerning authority, project status, submissions, and disposition. The record also documents third-party routing and downstream commercial activity involving projects, materials, services, and information originating through that relationship. The chronology extends beyond isolated project disputes and identifies concrete preservation questions concerning who authorized or participated in project routing and disposition, how rights and value were recorded or transferred, what

institutional accounts and systems contain the corresponding information, and whether estate books, records, disclosures, and asset treatment accurately reflected the transactions and activity at issue.

The corresponding Debtor records, summarized here and defined in Section VII, include project-intake and disposition records; communications; agreements and authority records; chain-of-title materials; transaction, accounting, and valuation records; data-access and transmission records; metadata; logs; audit histories; and records showing how projects, information, services, and data were classified, routed, accessed, transmitted, transferred, and tracked after receipt.

This Motion seeks preservation, not merits adjudication. It asks the Court to enforce paragraph 114 by restricting the Liquidation Trustee's authority to authorize disposal or destruction of Covered Records as defined in Section VII and on the terms requested in Section IX. The documented refusals to preserve and the disclosed security breach involve non-parties this Motion does not seek to bind, but they show that relevant records are dispersed among custodians, some of whom have expressly refused voluntary preservation, increasing the importance of protecting the Debtor records within paragraph 114.

## V. NOTICES AND ACTIVITY

### A. Notice to Debtors' Counsel

On August 14, 2026, Movant served Debtors' counsel at Sheppard Mullin with written notice asserting fraud, misrepresentations, diversion and exploitation of projects and intellectual property, conflicts of interest, third-party exposure, market interference, anticompetitive conduct, and record-handling concerns affecting the bankruptcy process. The notice identified Kevin P. Berg as a custodian of internal records concerning contracts, disposition, authorization,

participation, and related activity. Movant also sent courtesy copies to relevant third parties. (Exhibit 1, Appx. 1–4.)

**B. Oaktree and Radial Preservation Notices**

On July 29, 2026, Movant served Oaktree and Oaktree-backed Radial Entertainment with preservation notices concerning Steve Mosko, VREG-linked projects, downstream transactions, conflicts and financial interests, data security, and custodial records. On August 10, 2026, Radial, through Greenberg Traurig, rejected the notice and stated that it would take "no action" to comply. Movant supplemented the notice that same day identifying projects SIGNAL ONE and THE LASER LIGHTHOUSE, the asserted relationship between them, and the corresponding VREG development pathway reflected in the bankruptcy evidentiary record. The supplement also traced the Mosko—Sony—Oaktree—VREG—Triarc—Radial relationships and addressed Radial's recently disclosed data breach involving unauthorized access to certain employee email accounts.

The breach is preservation-relevant because the notices identify Radial as a potential downstream repository of records intersecting VREG-related activity, including affected account contents, access logs, forensic records, metadata, and incident-response materials. On August 14, 2026, Greenberg Traurig again refused preservation. (Exhibit 2, Appx. 5–42.)

**C. Notice to VREG Leadership**

On April 8, 2024, Movant notified Steve Mosko, Louis Santor, and Kevin Berg that Marc Charles Rosen ("Rosen") had solicited Movant's slate and retained access under VREG's brand and infrastructure while misrepresenting authority, relationships, submissions, and project status—and interfering with market positions and development activity. Movant requested an

internal investigation, removed Rosen from all projects, and stated that Rosen held no rights to Movant's materials or intellectual property.

The Evidentiary Compendium and Supplemental Record of THE G.O.A.T. MEDIA, LLC for Claims 16 and 17 (the "Evidentiary Compendium"), prepared by Movant, records the April 8 notice and transmission as K-1, K-1A, and K-1B, along with VREG's nonresponse. On January 30, 2026, this Court admitted the Evidentiary Compendium into evidence. (Jan. 30, 2026 Hr'g Tr. 14:14–22.) The Evidentiary Compendium also records Movant's April 27, 2024 follow-up as K-1C and another nonresponse. That same day, while Mosko remained VREG's CEO, Triarc Entertainment & Media Management Inc. was formed, with formation records identifying Mosko as CEO, Secretary, CFO, and Director. That timing places Triarc-related VREG records concerning project sourcing, transfers, counterparties, relationships, and disposition within the categories requiring preservation. (Exhibit 3, Appx. 43–47; Exhibit 4, Appx. 48.)

**D. Transparency Demand and Restructuring Chronology**

On February 19, 2024, the Evidentiary Compendium reflects Movant's demand for defined duties, transparency, and accountability concerning Rosen. (Evidentiary Compendium M-116–M-118.) On February 20, 2024, Accordion Partners began advising VREG on restructuring. Keith Maib confirmed that Accordion's engagement began on February 20, 2024. (D.I. 1542, para. 1.) The Debtors' Disclosure Statement states that Accordion immediately advised VREG to pause all Studio Business development efforts, discontinue discretionary spending, and streamline the Company's workforce to reduce overhead costs. (D.I. 1318 at 28.) The February 19–20 chronology identifies records concerning Mosko, Berg, Rosen, James Moore of Vine Alternative Investments, project status, development activity, restructuring

decisions, and the handling or disposition of Movant's projects, rights, market position, and relationships for preservation.

**E. Rosen Cease-and-Desist, Vine Activity, and Preservation Notices**

On July 14, 2024, Movant served Rosen with a cease-and-desist directing him to cease further involvement with Movant's projects and intellectual property, stop making false claims, and cease any misappropriation or unauthorized use. (Exhibit 5, Appx. 49.)

On July 18, 2024, Shamrock Capital announced its acquisition of a substantial film, television, and music-rights portfolio from Vine. The announcement stated that Vine would shift its focus toward independent content production while continuing to oversee VREG and EuropaCorp, and that a Shamrock affiliate had entered into a servicing arrangement with newly formed HighPoint Media Advisors, led by former Vine principals Stephen Kovach and Bill Lambert. In August 2024, Vine underwent a further organizational change: all employees other than James P. Moore left Vine for HighPoint, which continued providing financial and asset-valuation services previously performed by those employees at Vine. Moore became Vine's sole employee and served as its CEO, Chief Compliance Officer, Chief Operating Officer, Chief Investment Officer, and sole Investment Committee member. This sequence identifies contemporaneous portfolio activity and movement of personnel, valuation functions, institutional knowledge, and potential record repositories relevant to preservation. (Appx. 92–94.)

On July 30, 2026, after a phone conversation with attorney Ryan Nord, Movant sent Rosen's counsel a preservation notice covering Rosen's personal and business accounts and devices; submitted materials; VREG and Vine Alternative Investments communications; routing, disclosure, and downstream use; metadata; audit and access logs; and related electronically stored information from April 2020 forward. (Exhibit 6, Appx. 50–52.)

### F. Prepetition Sequence

The Evidentiary Compendium and newly audited communications record a concentrated sequence of events immediately preceding VREG's bankruptcy. On December 2, 2024, Movant notified the talent agency many of Movant's projects flowed through of Rosen's conduct. On December 23, 2024, Movant contacted Steve Mosko directly at his VREG email (K-2 at 209). Mosko did not respond. On January 23, 2025, Mosko stepped down as VREG's CEO (K-2A at 209). On January 27, 2025, Movant contacted James Moore of Vine Alternative Investments seeking clarity concerning VREG's status, leadership, project dispositions, and path forward. Moore advised Movant to reconnect in thirty days regarding potential solutions. Movant contacted Vine again on March 10, 2025. Seven days later, on March 17, VREG filed for Chapter 11 protection. (Evidentiary Compendium K-2–K-6.)

The sequence places Movant's communications in the months immediately preceding Mosko's departure, continued communications with Vine, and VREG's bankruptcy filing. The corresponding internal communications, executive records, restructuring records, and Vine–VREG communications are necessary to complete the prepetition record concerning how VREG and Vine addressed Movant's projects, rights, relationships, and outstanding concerns as VREG moved toward bankruptcy.

### G. Third-Party Notices

During the last year, Movant also sent notices to third parties that received, handled, developed, financed, distributed, or otherwise participated in Movant's intellectual property, materials, services, or resulting commercial activity. Movant sent those notices to halt further harm, preserve evidence and rights, and give recipients an opportunity to address the conduct before additional value, rights, or exposure moved downstream. These notices are recited as

factual context and to identify potential repositories of Debtor records. The relief requested is limited to Debtor records governed by paragraph 114.

## VI. DEBTOR PERSONNEL, AGENTS, AND MATERIAL CUSTODIANS

### A. Steve Mosko — CEO, Institutional Overlap, Records Integrity

The chronology connects Sony, Oaktree, VREG, and Radial through a single executive across the period relevant to this Motion. After leaving Sony's operating leadership, Steve Mosko remained a consultant to Sony, joined Oaktree Strategic Credit Fund as a director and Audit Committee member in July 2018, and became VREG's CEO in October 2018 while continuing in his Oaktree roles. By July 2025, Radial Entertainment was backed by funds managed by Oaktree. Radial publicly announced Mosko's appointment to its Board on March 25, 2026. (Exhibit 7, Appx. 53–58; Exhibit 8, Appx. 62.)

That institutional continuity intersects a concrete records-integrity event. Radial, which is backed by funds managed by Oaktree, reported unauthorized access to certain employee email accounts from November 25, 2025 through February 18, 2026, discovered on April 16, 2026 and reported to regulators and affected consumers on May 5, 2026. (Appx. 59–60.) Mosko's appointment to Radial's Board was announced on March 25, 2026. (Appx. 62.) The relevance is custodial: the chronology identifies a repository within these overlapping institutional relationships in which records were in fact subject to unauthorized access.

Those overlaps identify where responsive Debtor records may reside and the pathways through which they may have been maintained, transmitted, or transferred. They point to custodians, systems, repositories, communications, access logs, migration records, and governance records bearing on VREG project intake, routing, disposition, counterparties, authority, transmission, and data access. The preservation issue is therefore not the legal

significance of Mosko's relationships with Sony, Oaktree, or Radial; it is whether Debtor records generated, maintained, transmitted, or transferred through those intersecting relationships remain intact and available under paragraph 114.

**B. Marc Charles Rosen — VREG Authority and Project-Routing Records**

Rosen's public professional history places him inside the Vine–VREG relationship before his handling of Movant's projects. His representatives' website identifies him as an Executive Consultant to Vine Alternative Investments from 2017 through 2019, states that he sourced and oversaw entertainment transactions and executed the business plan for Village Roadshow, and identifies him as an in-house producer at Village Roadshow from 2019 through 2023. The accompanying narrative states that Rosen helped write Village Roadshow's business plan after Vine acquired it. (Appx. 63–64.) Beginning in 2020, Rosen used VREG's name, email, personnel, infrastructure, and asserted authority to solicit Movant's slate, obtain intellectual property and development materials, direct communications, and route projects through VREG and third parties. The Evidentiary Compendium documents more than ten of Movant's projects moving through that relationship.

The record also identifies a discrete credibility and authority issue relevant to preservation. Movant's April 8, 2024 notice memorialized repeated representations by Rosen that he had been involved in founding and managing Heyday Television and had responsibility for building and managing the Harry Potter franchise. (K-1 at 208; Appx. 43.) Contemporaneous communications separately show Rosen expressly invoking his "Heyday/POTTER days," while public-facing materials reflected his Heyday and Harry Potter associations; a later public profile also reflected a material change in the profile image associated with Rosen. (Appx. 95.) (J-127 at 78; D-1–D-1A at 337–338; D-3-C at 340.) Movant later sought direct verification from the

principal of Heyday Television and Films, who stated that Rosen worked for him as a development executive at the film company, not the television company, and "had absolutely nothing to do with Harry Potter." (Appx. 83.) The conflicting accounts reinforce the need to preserve records bearing on Rosen's represented authority, professional history, and use of the Debtors' brand, infrastructure, and personnel in connection with Movant's projects.

The Debtors' account of their own records presents the clearest preservation question. Before Movant supplied the Evidentiary Compendium through the claims process, VREG represented that it had no record of any agreement concerning the identified properties and no development materials relating to the listed projects. (Appx. 65.) At the January 30, 2026 hearing, the Debtors nevertheless relied on Rosen's statement that "Village passed on all your stuff anyway" as evidence concerning disposition of Movant's submissions, while also representing that their own books and records reflected no contract or business relationship with G.O.A.T. Media. (Jan. 30, 2026 Hr'g Tr. 7:8–9:13.) The Evidentiary Compendium contains VREG-system communications concerning those same projects. That conflict presents a concrete records-integrity question concerning what VREG maintained, how those materials were classified, where they were stored, and what systems contain the corresponding records. Those systems fall within the records this Motion asks the Court to protect from disposal or destruction.

The record also identifies authority documents requiring preservation. The Debtors told this Court that Rosen served as an independent consultant under a non-writing executive producer first-look agreement that expired in February 2022 and that he lacked authority to bind VREG. The underlying agreement was not produced. In March 2022, immediately after the stated expiration, Rosen requested updated materials for THE BUSINESS OF DATING for another review by VREG's Shannon Perry. (Appx. 66–67.)

On March 9, 2023, Rosen responded to Movant's request for project dispositions and status. M-85 did not provide a project-by-project disposition. Instead, Rosen claimed a back-end dispute with VREG involving "the difference between $900k and nothing"; stated that Village was "for sale" by Vine and that he dealt with Vine's Board of Directors; stated that he no longer had a deal with VREG, which gave him "more liberty with submissions outside of their ecosystem"; stated that "Village passed on all your stuff anyway"; and, in the same email, expressly disclosed that "[y]our material has been submitted to parties beyond Village," identifying specific individuals. (Appx. 75–76.)

M-85 is preservation-relevant because it places disputed VREG authority, claimed Vine access, third-party submissions, and unresolved project dispositions in the same communication. Whatever Rosen intended by the phrase "passed on all your stuff anyway," the email separately confirms that Movant's materials were submitted beyond Village. The resulting questions—what was submitted, by whom, under what authority, to whom, when, and what VREG recorded as the disposition of those projects—are precisely the record-routing and disposition issues for which Movant seeks preservation.

Records concerning GOAT (BILLY THE GOAT), THE GREAT DEBATE, THE BUSINESS OF DATING, BECOMING: AARON RODGERS (AND ADDITIONAL HIGH-PROFILE INDIVIDUAL DOCUMENTARY STORIES), THE BUSINESS OF JAKE PAUL, THE MATCH: KOEPKA v. DeCHAMBEAU, THE LASER LIGHTHOUSE, AMERICAN PSYCHO III, IT'S DARK INSIDE, 2222: FOREVER AFTER, SOLITARY, THE SOUND OF MUSIC (ANIMATED REMAKE), HACKERS, and other projects, talent, and relationships identified in the Evidentiary Compendium reflect VREG review or routing, third-party submissions, unresolved dispositions, and subsequent commercial activity, including activity

continuing postpetition and during the bankruptcy proceedings, while Rosen's authority and reporting relationships were later disputed. (Evidentiary Compendium M-39, M-85, and related exhibits; Appx. 66–80.) Those projects, and the associated talent relationships and submission pathways in the evidentiary record, identify records and custodians requiring preservation. This Motion does not ask the Court to determine infringement, misappropriation, ownership, liability, damages, or value.

In June 2025, Berg stated that Rosen had served as a VREG consultant and that VREG severed ties with him in late 2022; Berg also denied Rosen's claimed litigation against VREG and disclaimed his authority. In August 2025, Vine's James Moore stated that he had "no relationship with Marc Rosen" and that Rosen "worked for Mosko in any capacity he had with VREG." (Appx. 65, 81.) Those accounts are difficult to reconcile with Rosen's public professional history and the Debtors' January 2026 representation that his first-look agreement expired in February 2022. They materially differ concerning Rosen's role, authority, reporting relationships, and access during the period in which he handled Movant's projects.

Against that record, Debtor records concerning Rosen's agreements, mandates, reporting relationships, Vine and VREG roles, project intake, authorizations, routing, third-party submissions, dispositions, communications, compensation, chain of title, and treatment of resulting rights and value fall within the categories requiring preservation.

### C. Institutional Custodians — Legal, Financial, and Restructuring Layers

The record converges at three institutional points: VREG legal, Vine equity and secured-creditor position, and Accordion restructuring.

**1. Kevin P. Berg** — legal and institutional layer. His records span authority, contracts, notice, project disposition, internal legal positions, and the company's response to the matters

now documented in the evidentiary record. His later statements concerning Rosen, VREG's records, and project materials materially conflict with other parts of that record. Berg's role and records therefore form the legal layer necessary to complete VREG's internal account.

**2. James P. Moore and Vine** — financial and institutional layer. Vine was a controlling investor in VREG and, by the bankruptcy, its largest secured lender. The record also identifies communications involving Moore and conflicting accounts concerning Rosen's role and reporting relationships. Vine's equity and creditor positions therefore place Debtor records concerning capital allocation, investment, approvals, valuation, conflicts, economic participation, and asset disposition within the preservation inquiry, including records showing how activity involving the Covered Works was financed, authorized, valued, or treated within the Vine–VREG structure.

**3. Keith Maib and Accordion** — restructuring layer. Maib identified February 20, 2024 as the start of Accordion's engagement. Movant's February 19, 2024 demand for defined duties, transparency, and accountability concerning Rosen is separately reflected in the Evidentiary Compendium. Maib later assumed restructuring control over VREG's operations, books and records, asset sales, recoveries, and Plan process. By the claims process, Movant had placed identified projects, confidential materials, routing evidence, and authority disputes before the estate. Accordion's records therefore bear on the transition from VREG's operating activity and internal records into restructuring, asset sale, claims administration, and Plan treatment.

Taken together, these three institutional points trace the record from operating activity through financing and valuation into restructuring and estate administration. Preservation keeps that record intact so the comparison can be made in any proceeding in which it properly arises.

## VII. SCOPE OF PRESERVATION

The February 2024 chronology described in Section V.D marks a transition in custody and restructuring but does not define the full preservation window. The categories defined in this Section VII control the scope of the preservation relief requested. Descriptions elsewhere in this Motion identify the factual basis for preservation and do not expand or narrow these categories.

For purposes of the preservation relief, "Covered Works" means the works and projects identified in Proofs of Claim Nos. 16 and 17, together with the additional projects identified by title in Section VI.B of this Motion, in each case to the extent submitted to, received by, developed through, or transmitted through VREG or its personnel or agents.

"Covered Records" means Debtor books and records concerning:

(a) the receipt, submission, review, development, handling, transmission, routing, referral, introduction, disposition, notes, exploitation, licensing, assignment, transfer, attribution, ownership, provenance, chain of title, or commercial use of the Covered Works;

(b) agreements, licenses, ownership interests, authority, governance, reporting relationships, approvals, and communications concerning VREG personnel or agents involved in the Covered Works, including records concerning VREG's authority to use the Village Roadshow name, brand identity, or logo, and any limitation, modification, or revocation of that authority;

(c) communications with third parties concerning the Covered Works or their submission, development, routing, referral, introduction, disposition, transfer, exploitation, attribution, ownership, commercial use, or asserted relationship to downstream projects or transactions, whether or not VREG was a formal party to or participant in that downstream activity;

(d) transaction, accounting, valuation, claims-administration, asset-transfer, sale, and Plan records concerning the Covered Works or rights or value derived from them;

(e) notices, preservation demands, responses, and internal communications concerning the Covered Works or their handling; and

(f) electronically stored information concerning the foregoing, including native files, metadata, account and access records, email and messaging records, logs, audit histories, backups, migration records, and records concerning unauthorized access, loss, deletion, destruction, or security incidents affecting the foregoing records or information.

The temporal scope of Covered Records is January 1, 2020 through the date of entry of the Court's order on this Motion, except that Covered Records concerning agreements, authority, governance, reporting relationships, and institutional roles involving Mosko, Rosen, or Vine extend back to January 1, 2017, and Covered Records within category (e) include such records created after entry of the Court's order during the preservation period requested in Section IX.

## VIII. LEGAL STANDARD AND EXISTING PRESERVATION OBLIGATIONS

Paragraph 114 of the Confirmation Order already establishes preservation obligations for Debtor books and records, including computer-generated and computer-maintained records and data held by third parties, Purchasers, and professionals, subject to any applicable Sale Order or Asset Purchase Agreement. (D.I. 1565, para. 114.) Paragraph 114 further directs that "each such party shall be directed not to dispose of or destroy any such books and records until such time as authorized in writing by the Liquidation Trustee or further order of the Bankruptcy Court." (Id.) Paragraph 125 of the Confirmation Order further retains this Court's jurisdiction over matters arising out of or related to the Chapter 11 Cases, the Sale, the Sale Documents, the Confirmation Order, and the Plan. (D.I. 1565, para. 125.) The Plan likewise provides that "the Liquidation Trust and the Liquidation Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order." (D.I. 1565-1, Plan Art. VIII.C.)

Section 105(a) authorizes this Court to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). The Third Circuit recognizes a duty to preserve evidence when litigation is pending or reasonably foreseeable. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Bankruptcy Rule 9014(c)(1) applies Rule 7037 in contested matters, and Rule 7037 incorporates Federal Rule of Civil Procedure 37, including Rule 37(e)'s treatment of electronically stored information that should have been preserved. Fed. R. Bankr. P. 9014(c)(1), 7037; Fed. R. Civ. P. 37(e).

Delaware bankruptcy authority distinguishes preservation from production. In *In re Syntax-Brillian Corp.*, the court denied a request to compel production of a liquidating debtor's books and records while stating that the trustee was responsible for preserving those materials pending appropriate direction from the court. Case No. 08-11407 (BLS), slip op. at 9 (Bankr. D. Del. May 11, 2016).

Paragraph 114 itself reserves this Court's authority to govern disposition of Covered Records by "further order of the Bankruptcy Court." The relief requested invokes that reserved authority to supervise and implement paragraph 114's existing preservation mechanism, rather than seeking an independent injunction of the type contemplated by Bankruptcy Rule 7001(g). *See In re SemCrude, L.P., Case No. 08-11525 (BLS), slip op. at 15 n.11 (Bankr. D. Del. Oct. 7, 2011)* (applying the principle that an adversary proceeding is unnecessary where the movant seeks to enforce an order already in place) (citing *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000)).

The amended Liquidation Trust Agreement separately protects books and records maintained by or transferred to the Liquidation Trust. Section 3.8 permits their disposal only at the later of the Trustee's determination that continued maintenance is no longer necessary for the

Trust or its Beneficiaries and completion of the Trust's winding down. (D.I. 1561, Liquidation Trust Agreement sec. 3.8.) The present request therefore focuses on enforcing paragraph 114 as to Covered Records and protecting them from disposal or destruction on the terms requested in Section IX. Consistent with paragraph 114, the relief requested remains subject to any applicable Sale Order or Asset Purchase Agreement and does not alter any rights granted thereunder.

## IX. RELIEF REQUESTED

The record identifies documented misrepresentations, materially conflicting institutional accounts, unresolved record-handling and authority discrepancies, formal notices, written refusals to preserve, and a disclosed data breach involving unauthorized access to certain employee email accounts. Those circumstances establish a concrete need for preservation of Covered Records. Paragraph 114 expressly permits disposal or destruction upon written authorization by the Liquidation Trustee. Movant's appeal remains pending. Movant does not allege that the Liquidation Trustee presently intends to authorize destruction of any records.

Kevin P. Berg, the Liquidation Trustee, served as VREG's general counsel during the period at issue. (D.I. 1734 at 1; D.I. 1167-3, paras. 1–2.) His communications concerning Rosen, VREG's records, and Movant's project materials fall within Covered Records, and his statements concerning those matters conflict with other parts of the record. (Appx. 65, 81.) Paragraph 114 vests the Liquidation Trustee with written authority to authorize disposal or destruction of Covered Records. The point is structural: that authority rests with the person whose own conduct and communications the Covered Records document. Court supervision of that authority, limited to Covered Records, resolves the question without requiring any determination concerning the Liquidation Trustee's intentions.

Books and records maintained by or transferred to the Liquidation Trust are separately governed by section 3.8 of the Liquidation Trust Agreement, which permits disposal only upon satisfaction of both conditions stated therein. Movant does not seek to modify that provision. The relief requested is directed to the paragraph 114 authorization mechanism, which imposes no comparable condition.

Movant requests that the Court direct the Liquidation Trustee not to issue written authorization under paragraph 114 permitting the disposal or destruction of Covered Records during the pendency of Movant's appeal before the United States Court of Appeals for the Third Circuit, No. 26-2443, and any proceedings on remand arising from that appeal, and thereafter unless and until further order of this Court entered after notice to Movant and an opportunity to be heard. Movant does not seek production or examination through this Motion. Preservation is the predicate to any future examination under Bankruptcy Rule 2004, adversary proceeding, appellate remand, claims-administration proceeding, or other proceeding in which Covered Records may become material.

Movant respectfully requests that the Court determine this Motion on the papers, without oral argument, unless the Court determines that a hearing is necessary.

## X. MOVANT'S NAME AND REGISTRATION RECORDS

Movant's legal name is John Thomas Pautsch. Movant uses the professional name John Huntsman, which Movant has used in his professional activity since 2022. Movant has used both Pautsch and Huntsman in correspondence concerning works identified in the evidentiary record.

The Writers Guild of America West Client Statement identifies Movant as "PAUTSCH, JOHN" and lists registrations concerning works identified in the evidentiary record. Movant's

Client Statement and selected records retrieved from the United States Copyright Office Copyright Public Records System are reproduced at Appx. 84–91.

**VERIFICATION**

I, John T. Pautsch, declare under penalty of perjury that the statements in Section X concerning my name and registration records are true and correct, and that the documents reproduced at Appx. 84–91 are true and accurate copies of my Writers Guild of America West Client Statement and of selected records I retrieved from the United States Copyright Office Copyright Public Records System.

Executed on August 24, 2026

Respectfully submitted,

John T. Pautsch
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
310.745.0257
legal@thegoat.com

## CERTIFICATE OF SERVICE

I, John T. Pautsch, certify that on August 24, 2026, I served true and correct copies of the Notice of Motion, Motion of John T. Pautsch for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order, and Proposed Order by First-Class United States Mail, and served the complete filing package, including the Appendix, by email, upon the parties identified below.

Kevin P. Berg
Liquidation Trustee
750 N. San Vicente Blvd., Suite 800 West
West Hollywood, CA 90069

Kevin.Berg@vreg.com

Office of the United States Trustee
Attn: Jane M. Leamy
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

Jane.M.Leamy@usdoj.gov

Sheppard, Mullin, Richter & Hampton LLP
Justin R. Bernbrock, Matthew T. Benz
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone: (312) 499-6300

jbernbrock@sheppardmullin.com, mbenz@sheppardmullin.com

Young Conaway Stargatt & Taylor, LLP
Joseph M. Mulvihill, Brynna M. Gaffney
1000 North King Street
Wilmington, DE 19801

jmulvihill@ycst.com, bgaffney@ycst.com

Executed on August 24, 2026

John T. Pautsch
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
310.745.0257
legal@thegoat.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered) |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that John T. Pautsch ("Movant") has filed the **MOTION OF JOHN T. PAUTSCH FOR PRESERVATION OF DEBTOR BOOKS AND RECORDS UNDER PARAGRAPH 114 OF THE CONFIRMATION ORDER** (the "Motion") with the United States Bankruptcy Court for the District of Delaware.

**PLEASE TAKE FURTHER NOTICE** that any response or objection to the Motion must be filed by the deadline established by the Court with the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801. At the same time, a copy of any response or objection must be served upon:

John T. Pautsch
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
legal@thegoat.com

**PLEASE TAKE FURTHER NOTICE** that any hearing to consider the Motion will be scheduled by the Court before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the location or by the means designated by the Court.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: August 24, 2026

John T. Pautsch
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
310.745.0257
legal@thegoat.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

2026 AUG 26 P 2: 19

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered) |

**ORDER GRANTING MOTION OF JOHN T. PAUTSCH FOR PRESERVATION OF DEBTOR BOOKS AND RECORDS UNDER PARAGRAPH 114 OF THE CONFIRMATION ORDER**

The Court has considered the **Motion of John T. Pautsch for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order** (the "Motion"), filed by John T. Pautsch ("Movant"). The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409.

The Court entered the **Findings of Fact, Conclusions of Law, and Order Approving the Disclosure Statement on a Final Basis and Confirming the Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates** [D.I. 1565] (the "Confirmation Order") on April 17, 2026.

The Plan became effective on May 1, 2026 [D.I. 1620]. Paragraph 114 of the Confirmation Order establishes a preservation mechanism for Debtor books and records and directs specified parties possessing such records not to dispose of or destroy them until authorized in writing by the Liquidation Trustee (as defined in the Plan) or further order of this Court. Paragraph 125 retains this Court's jurisdiction as provided therein. The Court finds that notice was sufficient and that good cause exists for the relief granted below.

**IT IS ORDERED THAT:**

1. **The Motion is GRANTED as provided in this Order.**

2. **Covered Works.** For purposes of the preservation relief, "Covered Works" means the works and projects identified in Proofs of Claim Nos. 16 and 17, together with the additional projects identified by title in Section VI.B of the Motion, in each case to the extent submitted to, received by, developed through, or transmitted through Village Roadshow Entertainment Group ("VREG") or its personnel or agents.

3. **Covered Records.** "Covered Records" means Debtor books and records concerning:

(a) the receipt, submission, review, development, handling, transmission, routing, referral, introduction, disposition, notes, exploitation, licensing, assignment, transfer, attribution, ownership, provenance, chain of title, or commercial use of the Covered Works;

(b) agreements, licenses, ownership interests, authority, governance, reporting relationships, approvals, and communications concerning VREG personnel or agents involved in the Covered Works, including records concerning VREG's authority to use the Village Roadshow name, brand identity, or logo, and any limitation, modification, or revocation of that authority;

(c) communications with third parties concerning the Covered Works or their submission, development, routing, referral, introduction, disposition, transfer, exploitation, attribution, ownership, commercial use, or asserted relationship to downstream projects or transactions, whether or not VREG was a formal party to or participant in that downstream activity;

(d) transaction, accounting, valuation, claims-administration, asset-transfer, sale, and Plan records concerning the Covered Works or rights or value derived from them;

(e) notices, preservation demands, responses, and internal communications concerning the Covered Works or their handling; and

(f) electronically stored information concerning the foregoing, including native files, metadata, account and access records, email and messaging records, logs, audit histories, backups, migration records, and records concerning unauthorized access, loss, deletion, destruction, or security incidents affecting the foregoing records or information.

4. **Temporal Scope.** The temporal scope of Covered Records is January 1, 2020 through the date of entry of this Order, except that Covered Records concerning agreements, authority, governance, reporting relationships, and institutional roles involving Mosko, Rosen, or Vine extend back to January 1, 2017, and Covered Records within category (e) include such records created after entry of this Order during the preservation period established by paragraph 5.

5. **Preservation.** The Liquidation Trustee, presently Kevin P. Berg, and any successor thereto, shall not issue written authorization under paragraph 114 of the Confirmation Order permitting the disposal or destruction of Covered Records during the pendency of Movant's appeal before the United States Court of Appeals for the Third Circuit, No. 26-2443, and any proceedings on remand arising from that appeal, and thereafter unless and until further order of this Court entered after notice to Movant and an opportunity to be heard.

6. **Existing Obligations and Sale Documents.** Nothing in this Order modifies, expands, or limits the obligations established by paragraph 114 of the Confirmation Order as to any other person or entity or alters any provision of an applicable Sale Order or Asset Purchase Agreement.

7. **No Production or Merits Determination.** This Order does not require production or examination of any records, impose any new obligation upon a non-party, or adjudicate ownership, discoverability, admissibility, privilege, relevance, liability, damages, value, or any issue pending before the United States Court of Appeals for the Third Circuit.

8. **Other Relief Reserved.** Nothing in this Order prejudices Movant's right to seek examination under Bankruptcy Rule 2004 or other appropriate relief.

9. **Effective Date.** This Order is effective immediately upon entry.

10. **Retention of Jurisdiction.** The Court retains jurisdiction to interpret, implement, and enforce this Order.