**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

2026 AUG 26 P 2:18

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered) |

**APPENDIX TO:**

**MOTION OF JOHN T. PAUTSCH FOR PRESERVATION OF DEBTOR BOOKS AND RECORDS UNDER PARAGRAPH 114 OF THE CONFIRMATION ORDER**

**Appx. 1–95**

## TABLE OF CONTENTS

**EXHIBIT 1 — Appx. 1–4**
August 14, 2026 Notice to Debtors' Counsel
Sheppard, Mullin, Richter & Hampton LLP

**EXHIBIT 2 — Appx. 5–42**
Oaktree and Radial Preservation Notices
Related Responses and Supplemental Notice

**Appx. 5–18**
July 29, 2026 Notice to Preserve Evidence
Radial Entertainment — Steve Mosko

**Appx. 19–33**
July 29, 2026 Notice to Preserve Evidence
Oaktree — Steve Mosko

**Appx. 34–35**
August 10, 2026 Response to Preservation Notice
Greenberg Traurig / Radial Entertainment

**Appx. 36–41**
August 10, 2026 Supplemental and Clarifying Preservation Notice
SIGNAL ONE and Related Downstream Activity

**Appx. 42**
August 14, 2026 Response to Supplemental Preservation Notice
Greenberg Traurig / Radial Entertainment

**EXHIBIT 3 — Appx. 43–47**
April 8, 2024 Notice to VREG Leadership
Marc Rosen — Authority, Projects, and Internal Review

**EXHIBIT 4 — Appx. 48**
April 27, 2024 VREG Follow-Up Notice
Triarc Entertainment & Media Management Formation Record

**EXHIBIT 5 — Appx. 49**
July 14, 2024 Cease-and-Desist Notice
Marc Charles Rosen

**EXHIBIT 6 — Appx. 50–52**
July 30, 2026 Notice to Preserve Evidence
Marc Charles Rosen

## TABLE OF CONTENTS—CONTINUED

**EXHIBIT 7 — Appx. 53–58**
Steve Mosko Institutional Records
Sony, Oaktree, VREG, and Radial

**Appx. 53**
Oaktree Capital — Steve Mosko Company Profile
Sony Consulting Relationship — July 2018–Present

**Appx. 54**
Steve Mosko — SEC Form 3
October 2, 2018

**Appx. 55**
Steve Mosko / Village Roadshow Entertainment Group
Market Activity — October 25, 2018

**Appx. 56**
Steve Mosko — SEC Form 3
February 2, 2022

**Appx. 57**
Oaktree / Radial Entertainment
July 1, 2025

**Appx. 58**
Radial Entertainment / Steve Mosko
March 25, 2026

**EXHIBIT 8 — Appx. 59–62**
Radial Entertainment Records
Data Security and Steve Mosko Board Activity

**Appx. 59**
Massachusetts Office of Consumer Affairs and Business Regulation
2026 Data Breach Notification Report
Radial Entertainment, Breach No. 2026-696

**Appx. 60**
DisclosureLens — Radial Entertainment Disclosure History
Maine and Massachusetts Attorney General Filings

## TABLE OF CONTENTS—CONTINUED

**Appx. 61**
Radial Entertainment Data-Breach Record
Unauthorized Access to Employee Email Accounts

**Appx. 62**
Radial Entertainment / Steve Mosko
Board Appointment — March 25, 2026

**SUPPORTING RECORDS**

**Appx. 63–64**
Marc Rosen Public Professional History
Executive Consultant — Vine / In-House Producer — Village Roadshow

**Appx. 65**
Kevin P. Berg Statement Concerning Marc Rosen
June 26, 2025

**Appx. 66–67**
VREG / Marc Rosen — THE BUSINESS OF DATING
First-Look Agreement and Continued VREG Review

**Appx. 68**
THE DATING BUSINESS
Development and Labor Update

**Appx. 69**
VREG / Tubi
Film Relationship — December 2021

**Appx. 70**
THE BUSINESS OF DATING
Bill Burr Packaging Strategy — July 25, 2023

**Appx. 71**
THE BUSINESS OF DATING
WME / Bill Burr Submission — August 16, 2023

**Appx. 72**
WHY ARE YOU SINGLE? — All Things Comedy
May 4, 2026

## TABLE OF CONTENTS—CONTINUED

**Appx. 73**
WHY ARE YOU SINGLE? — IMDb
May 20, 2026

**Appx. 74**
WHY ARE YOU SINGLE? — Tubi
May 4, 2026

**Appx. 75–76**
M-85 — Marc Rosen Project-Disposition and Routing Statements
March 9, 2023

**Appx. 77**
GOAT — Project Development and Confirmation
M-57 / M-58 — April 10, 2022

**Appx. 78**
GOAT — Submission Schedule and Representations
M-73 / M-73A

**Appx. 79**
GOAT — Nickelodeon External Partnership / Escalation
M-86 — April 11, 2023

**Appx. 80**
GOAT — Representation Verification and Market Reference
J-255 / J-255A / J-256

**Appx. 81**
James P. Moore / Vine Alternative Investments
Email Concerning Marc Rosen — August 27, 2025

**Appx. 82**
Rosen Representation Verification
February 27, 2024

**Appx. 83**
Misrepresentation Verification — Heyday Television / David Heyman
February 29, 2024

**Appx. 84–86**
Writers Guild of America West Client Statement
John Pautsch Registration Records

## TABLE OF CONTENTS—CONTINUED

**Appx. 87–88**
United States Copyright Office Registration
It's Dark Inside and 5 Other Unpublished Works — TXu 2-280-180

**Appx. 89–90**
United States Copyright Office Registration
DANGERFIELD — PAu 4-238-006

**Appx. 91**
United States Copyright Office Registration
PLUTO — TXu 2-506-592

**Appx. 92**
July 18, 2024 Shamrock Capital Announcement
Vine Alternative Investments — Portfolio Acquisition and HighPoint Servicing Arrangement

**Appx. 93–94**
Vine Investment Advisors, LP — Form ADV Brochure
March 31, 2026
Organizational Changes, James P. Moore, and High Point Media Advisors Service Agreement

**Appx. 95**
Marc Rosen — Wikipedia Profile Update
Profile-Image Change and Identity Discrepancy

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
Legal@thegoat.com

August 14, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Justin R. Bernbrock, Matthew T. Benz
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone: (312) 499-6300

**SENT VIA EMAIL**: jbernbrock@sheppardmullin.com, mbenz@sheppardmullin.com

Re: In re Village Roadshow Entertainment Group USA, Inc., et al., Case No. 25-10475 (TMH)

Dear Mr. Bernbrock and Mr. Benz:

The record has matured. Expanded. The chronology has tightened around the Debtors, their agents, and applicable third parties—through the relevant period, the fallout, the restructuring, and the continuing market interference. Another tranche of emails has now been audited.

Projects continue to announce and release—prepetition, postpetition, and post-confirmation—across scripted, unscripted, animation, live sports, technology, and more.

The Debtors, their regime, and their agents used the Village Roadshow brand, personnel, and infrastructure to solicit and retain access to projects, intellectual property, authorship, services, strategic initiatives, packaged talent, materials, labor, and relationships. They obtained and maintained that access through misrepresentations concerning status, activity, disposition, authority, and more—then systematically moved enormous value away from the estate.

That value moved into third-party pipelines. It packaged talent. It set up projects across media. It produced unauthorized derivatives and other exploitation. It exposed an expanding ecosystem to liability while systematically excluding me from the same value I created, authored, developed, serviced, packaged, financed, and own rights to—and while interfering with my operations, progress, relationships, and position in the marketplace.

The Debtors' agents—including CEO Steve Mosko, who has a documented history of major data-security and record handling incidents—formed new companies, deployed sophisticated income and transaction structures, operated through conflicts of interest, and directed value toward strategically selected entities, including Sony, Netflix, other studios, production companies, and related businesses. Another agent, Rosen, interfered with active workflows—including, but not limited to, Paramount—as the record reflects. Agents also used talent agencies and other intermediaries to package talent around that same transferred value.

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
Legal@thegoat.com

The structure changed. The result did not: they moved the value, exploited it, and excluded me from the assets, rights, services, relationships, and opportunities I created and built.

**Billions of dollars in media rights.**
**Significant market positions and opportunities.**

Had they operated with integrity and focused on building enterprise value, Village Roadshow could have strengthened its market position rather than destroying it through misconduct.

Instead, they caused friction with Warner Bros., the company that propelled them to their market position, exposed the ecosystem to liabilities, and hurt people along the way.

For more than a year, I verified the false claims and sought fair resolution. Instead, the conduct by the Debtors, their agents, and their cohorts became more egregious—inside and outside the record, personally and professionally.

Then, the jig was up.

The Debtors filed for bankruptcy.

It's always the cover-up that's worse than the crime.

The Debtors and their bankruptcy representatives then carried that conduct into a federal proceeding—*In re Village Roadshow Entertainment Group USA, Inc., et al.*, Case No. 25-10475 (TMH). As the evidentiary record continues to develop, the resulting fraud reaches the integrity of the bankruptcy process itself.

Any entity or individual that knowingly participated in, facilitated, benefited from, or received rights, assets, opportunities, proceeds, or other value through that process now faces corresponding exposure.

Counsel, restructuring, and administrative fees now appear directly connected to servicing a fraudulent bankruptcy. Counsel fees, in particular, now make sense.

The creditor amounts are irregular. The striking issue is the disparity: comparatively modest amounts owed to the WGA and others after enormously valuable productions, media rights, projects, and opportunities moved away from the estate.

Market notes: Following the materials and strategic initiatives I provided to the Debtors, market activity accelerated across multiple categories:

- Debate formats across media.
- Dating formats across media.

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
Legal@thegoat.com

- Paul family, Jake Paul, boxing, and MMA content and opportunities.
- Scripted psychological horror, true crime, including killer and serial-killer content.
- Science fiction—contained and epic—across drama, thriller, and horror.
- Technology initiatives.

Across these categories and more, the timing, subject matter, formats, and resulting market activity track concepts, strategies, and opportunities contained in materials and initiatives provided to the Debtors for the purpose of collaborative financing, production, and execution.

How did I do it? Immense time and resources. Solving problems. Not chasing mandates.

The consequences no longer stop with the Debtors.

Their conduct now reaches rulings and dispositions entered by the United States Bankruptcy Court for the District of Delaware—and threatens to compromise proceedings administered by Judge Thomas Horan, whose record reflects careful and even-handed management of complex matters.

The market context matters.

Major media consolidation—including Paramount Skydance's ongoing acquisition of Warner Bros. Discovery—has drawn antitrust scrutiny concerning competition in film production, distribution, television, employment, economic concentration, quality, and culture. I do not share the legal objections presently being advanced against Paramount, and nothing here adopts those theories. My point is narrower: the Village Roadshow record shows how competition can be distorted at the project, rights, and pipeline level long before a transaction reaches regulatory review. Agents obtained access to intellectual property, projects, services, and relationships through misrepresentations; interfered with the creator, author, rights holder, and his related entities; redirected project momentum, rights, talent, and value through selected third parties; and moved opportunities into preferred studio pipelines.

A system that rewards the appropriation of valuable ideas and redirects them through favored pipelines is inherently anticompetitive.

The record also identifies overlap between individuals and entities involved in that conduct and parties later lobbying against Paramount-related consolidation. Although Paramount subsequently changed control through the Skydance transaction, the interference at issue predates that regime change—GOAT is one documented example among more than ten. The record reflects Village Roadshow agents disrupted its momentum and potential placement at Paramount and redirected the opportunity to Sony while excluding its creator and rights holder.

The bankruptcy therefore reaches far beyond an ordinary intellectual-property dispute.

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
Legal@thegoat.com

Fraud and anticompetitive conduct sit at its core, infecting the surrounding ecosystem while the bankruptcy process simultaneously functioned as an M&A mechanism that forced Warner Bros. into arrangements with Alcon involving established franchises. Alcon, in turn, has ties to a Debtors' agent who drove an engagement that obtained access to projects through misrepresentations while using the Debtors' brand, personnel, and infrastructure.

The bankruptcy process concealed and sought to insulate conduct involving fraud, misappropriation, infringement, conspiracy, and market interference. That same record necessarily warrants antitrust and anticompetitive scrutiny.

Intellectual property is the industry's lifeblood. Control who creates it, develops it, packages it, finances it, and receives its economic value—and you control who can compete.

Furthermore, the same VREG legal leadership—Kevin P. Berg—who oversaw strategic initiatives, legal matters, and restructuring during the period at issue, and whom the record reflects was placed on notice of that conduct in April 2024, remains the custodian of internal records concerning contracts, disposition, authorization, participation, and related activity.

If those records do not exist, the Debtors have one set of serious problems.

If they do exist, their contents create another.

Either way, the Debtors, their agents, and any third parties that participated in the conduct cannot escape the merits.

That exposure also explains why interference with my market position—including, but not limited to, my ability to retain counsel and conduct business operations—continues today.

For the avoidance of doubt, I never authorized the misuse, diversion, transfer, exploitation, or unauthorized development or creation of derivatives of my projects, intellectual property, authorship, services, materials, relationships, or strategic initiatives—whether within or through Village Roadshow's infrastructure, personnel, systems, or relationships, or through any new entity, affiliate, successor, studio, production company, financing vehicle, initiative, or third-party pipeline. No submission, communication, participation, delay, or other conduct by me constitutes consent, authorization, waiver, ratification, or relinquishment of any ownership interest, claim, remedy, or other right. I expressly reserve all rights, claims, causes of action, remedies, and interests under applicable law.

Best regards,

John T. Pautsch

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

# NOTICE TO PRESERVE EVIDENCE

July 29, 2026

Radial Entertainment
Attn: Noah Wald
1640 S Sepulveda Blvd, Ste 400
Los Angeles, CA 90025

VIA EMAIL: nwald@radialentertainment.com

Re: Steve Mosko — Radial Communications, Board Activity, Market Activity, and Financial Participation

Dear Noah Wald:

I, John T. Pautsch (known professionally as "Huntsman"), write individually and on behalf of THE G.O.A.T. MEDIA, LLC ("TGM") to place Radial Entertainment and any parent, subsidiary, operating brand, predecessor, affiliate, personnel, system, or service provider that possesses, maintains, administers, or controls responsive records—collectively and solely to that extent, "Radial"—on formal notice to preserve all documents, communications, and electronically stored information ("ESI") relating to Steve Mosko and the matters identified below.

This notice concerns records maintained in connection with Mr. Mosko's consideration, nomination, appointment, onboarding, service, activities, access, oversight, compensation, financial interests, and participation as a member of Radial's Board of Directors; his outside business activities, affiliations, relationships, and market activity; and any actual or contemplated Radial financial or economic participation involving Mr. Mosko, his affiliated persons or entities, or related media, entertainment, technology, intellectual-property, data, production, distribution, licensing, financing, acquisition, investment, or strategic initiatives.

The notice includes responsive records maintained through Radial and its operating brands, including FilmRise and Shout! Studios, and records inherited from or maintained through predecessor entities, accounts, systems, repositories, personnel, and service providers, to the extent such information is within Radial's possession, custody, or control.

The identified information may be relevant to pending proceedings arising from In re Village Roadshow Entertainment Group USA, Inc., et al., Bankr. D. Del. No. 25-10475 (TMH), related appellate proceedings, and reasonably anticipated litigation concerning the receipt, access, oversight, handling, routing, use, disclosure, development, financing, exploitation, retention, transfer, and disposition of creative materials, intellectual property, labor, professional services, development workflows, business relationships, market intelligence, and data.

Responsive records may not expressly identify Mr. Pautsch, TGM, or "Huntsman." They may instead use project titles, revised titles, working titles, code names, descriptions, premises, formats, characters, derivative concepts, intermediaries, counterparties, transactions, relationships, entities,



5

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

data models, development strategies, or downstream initiatives. Preservation therefore must not be limited to records located through searches for Mr. Pautsch's or TGM's names.

This notice requests preservation only. It seeks no production at this time, does not accuse Radial of wrongdoing, and does not purport to impose any obligation beyond applicable law. Nothing in this notice characterizes, allocates, concedes, or limits authorship, ownership, beneficial interest, claimant status, agency, assignment, or the allocation of any right between Mr. Pautsch and TGM. Each category is asserted by the person or entity to which it pertains.

Receipt of this notice provides actual notice that the identified information may be relevant to pending and reasonably anticipated litigation. The alteration, destruction, concealment, loss, or failure to preserve responsive information after receipt may bear on subsequent evidentiary and procedural issues.

1. Defined Terms

A. Covered Materials, Services, and Information

"Covered Materials, Services, and Information" means any:

1. creative work, project, project title, slate, script, treatment, concept, format, pitch, proposal, deck, presentation, submission, development material, production material, intellectual property, derivative material, or related content;
2. labor, professional service, development service, packaging activity, production activity, financing activity, submission activity, business-development activity, or other work;
3. development pipeline, development workflow, project-tracking process, submission pathway, packaging strategy, production strategy, financing strategy, distribution strategy, commercialization strategy, platform strategy, audience strategy, data strategy, or market strategy;
4. business relationship, professional relationship, introduction, contact, talent relationship, producer relationship, buyer relationship, financier relationship, platform relationship, studio relationship, network relationship, distribution relationship, licensing relationship, technology relationship, or other market relationship; or
5. strategy, market intelligence, opportunity analysis, commercial information, business model, platform information, audience information, analytics, data, identity information, access information, account information, or other proprietary or nonpublic information;

that originated from, was supplied by, was created or developed by, was financed by, was performed by, or was otherwise associated with Mr. Pautsch or TGM.

The term also includes any such material, service, relationship, workflow, strategy, intelligence, data, or information that was received, obtained, accessed, reviewed, evaluated, routed, circulated, handled, retained, used, disclosed, submitted, packaged, developed, financed, commercialized, exploited, transferred, or disposed of through Village Roadshow Entertainment Group or any of its current or former officers, directors, employees, agents, representatives, consultants, affiliates, accounts, devices, systems, databases, platforms, submission channels, development pipelines, production pipelines, financial systems, or other infrastructure.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

B. Mosko-Affiliated Activity

"Mosko-Affiliated Activity" means any actual, contemplated, proposed, evaluated, pursued, developed, financed, acquired, distributed, licensed, commercialized, or completed project, slate, company, entity, fund, investment vehicle, transaction, acquisition, financing, partnership, joint venture, production, distribution arrangement, licensing arrangement, platform initiative, technology initiative, data initiative, intellectual-property initiative, or other commercial activity in which Mr. Mosko:

1. served or was expected to serve as an officer, director, trustee, employee, consultant, adviser, agent, representative, producer, executive producer, manager, investor, lender, partner, participant, or other decision-maker;
2. held or was expected to hold any ownership, investment, compensation, participation, advisory, management, governance, licensing, producer, distribution, or other financial or economic interest;
3. exercised or was expected to exercise access, knowledge, oversight, direction, approval, influence, control, monitoring, supervision, strategic input, or decision-making authority; or
4. introduced, connected, referred, routed, submitted, presented, recommended, sponsored, supported, financed, sourced, originated, or otherwise facilitated any person, entity, project, slate, opportunity, transaction, or initiative.

C. Radial Financial Participation

"Radial Financial Participation" means any actual, contemplated, proposed, evaluated, recommended, approved, declined, rejected, abandoned, structured, negotiated, financed, acquired, held, monitored, modified, transferred, sold, licensed, distributed, monetized, or disposed direct or indirect financial or economic participation by:

1. Radial Entertainment;
2. FilmRise or Shout! Studios, to the extent operating through or controlled by Radial;
3. any Radial parent, subsidiary, operating brand, predecessor, successor, affiliate, fund, account, investment vehicle, portfolio company, adviser, lender, investor, partner, distributor, licensee, or entity;
4. Oaktree Capital Management, L.P., any Oaktree-managed fund, or another Oaktree-related entity, to the extent responsive records are within Radial's possession, custody, or control; or
5. any person acting for, through, or in coordination with any such entity;

in any Mosko-Affiliated Activity.

The term includes equity, debt, loans, credit facilities, acquisition financing, production financing, development financing, bridge financing, distribution financing, content investment, investments, ownership interests, profits interests, carried interests, options, warrants, royalties, backend participation, licensing revenue, distribution proceeds, advertising revenue, platform revenue, acquisition consideration, contingent compensation, fees, commissions, bonuses, advisory compensation, consulting compensation, board compensation, management compensation, producer compensation, executive-producer compensation, or any other direct or indirect financial, strategic, professional, or commercial benefit.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

2. Mosko Custodial Communications and Records

Preserve all documents, communications, and ESI within Radial's possession, custody, or control that were created, authored, sent, received, copied, forwarded, accessed, stored, maintained, transmitted, uploaded, downloaded, shared, reviewed, edited, or otherwise handled by, to, from, through, or concerning Steve Mosko and that refer or relate to any of the following:

(a) Appointment, onboarding, and board service

Mr. Mosko's identification, consideration, recruitment, evaluation, nomination, appointment, onboarding, retention, service, duties, authority, access, responsibilities, assignments, committee activity, strategic role, compensation, equity, participation, financial interests, disclosures, recusals, conflicts, or removal as a Radial director or in any other Radial-related capacity.

This category includes:

1. communications concerning why Mr. Mosko was considered, recommended, selected, or appointed;
2. biographies, background materials, diligence, references, questionnaires, disclosures, conflicts analyses, outside-business-activity disclosures, independence analyses, and onboarding materials;
3. board and committee materials provided or made accessible to him;
4. systems, accounts, portals, repositories, files, databases, reports, presentations, or other information to which he was granted access;
5. compensation, equity, options, fees, participation, expense reimbursement, indemnification, insurance, or other benefits associated with his service; and
6. any limitation, recusal, approval, waiver, condition, or restriction relating to his access, activities, affiliations, relationships, or financial interests.

(b) Radial strategy, operations, and market activity

Any actual or contemplated media, entertainment, film, television, streaming, digital-content, production, acquisition, content-investment, distribution, licensing, intellectual-property, technology, platform, analytics, advertising, audience-data, financing, investment, acquisition, restructuring, portfolio, governance, or strategic initiative involving Mr. Mosko.

This category includes activity involving:

1. individual projects;
2. groups of projects or slates;
3. content libraries or intellectual-property portfolios;
4. companies, funds, investment vehicles, transactions, partnerships, joint ventures, counterparties, entities, creators, producers, talent, financiers, distributors, platforms, or individuals;
5. FAST, AVOD, SVOD, TVOD, transactional, theatrical, broadcast, physical-media, digital, international, or other distribution channels;
6. content sourcing, acquisition, development, production, financing, packaging, licensing, distribution, monetization, analytics, advertising, platform strategy, audience development, and data use; and
7. organic growth, mergers and acquisitions, content-library acquisitions, strategic partnerships, co-productions, financing arrangements, or expansion initiatives.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

(c) Outside affiliations and business activities

Mr. Mosko's actual or contemplated employment, consulting, advisory work, board service, management activity, producing activity, financing activity, investment activity, financial interests, ownership interests, compensation arrangements, market relationships, or other outside business activities.

This includes communications concerning, involving, or transmitted through:

1. Oaktree Capital Management, L.P. or any Oaktree-managed, advised, sponsored, financed, controlled, or affiliated fund, account, investment vehicle, portfolio company, adviser, lender, investor, partner, or entity;
2. Sony Pictures or any current or former Sony entity;
3. Village Roadshow Entertainment Group or any current or former Village Roadshow entity;
4. Triarc Entertainment & Media Management, Inc.;
5. GreenSlate;
6. FilmRise;
7. Shout! Studios; and
8. any other current or former employer, company, board, fund, portfolio company, investment vehicle, adviser, lender, investor, producer, financier, studio, network, platform, distributor, licensee, consultant, agent, representative, counterparty, successor, predecessor, affiliate, joint venture, trust, entity, or person with which Mr. Mosko has been affiliated, involved, or engaged in any capacity.

The named persons and entities are illustrative and not limiting.

(d) Access, knowledge, oversight, and participation

Mr. Mosko's access to, receipt of, knowledge of, awareness of, oversight of, direction of, supervision of, participation in, approval of, monitoring of, review of, evaluation of, use of, disclosure of, disposition of, financial participation in, or benefit from the Covered Materials, Services, and Information.

This category includes records reflecting:

1. what Mr. Mosko knew, received, reviewed, was shown, was told, discussed, considered, approved, authorized, directed, monitored, financed, disclosed, used, retained, transferred, or caused others to handle;
2. the source, origin, provenance, authorship, ownership, authority, authorization, attribution, status, availability, commercial value, or disposition of any relevant material, project, opportunity, service, relationship, strategy, intelligence, data, or information;
3. any decision to omit, remove, alter, obscure, discontinue, or fail to preserve attribution to Mr. Pautsch or TGM;
4. any activity undertaken through another person, entity, account, system, submission pathway, development pipeline, financing pathway, transaction, affiliate, investment vehicle, or intermediary; and

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

5. any use of knowledge, relationships, strategy, market intelligence, data, development workflows, project information, or other information obtained through Village Roadshow personnel or infrastructure.

(e) Village Roadshow personnel and infrastructure

Any communication, meeting, decision, approval, instruction, report, presentation, calendar entry, project record, slate record, submission record, development record, financing record, relationship record, or other information concerning the Covered Materials, Services, and Information that arose through or involved Village Roadshow personnel, agents, representatives, consultants, affiliates, accounts, email systems, shared drives, databases, document-management systems, customer-relationship-management systems, submission portals, development systems, production systems, financial systems, data rooms, board materials, executive reports, devices, cloud environments, or other infrastructure.

This includes records concerning:

1. project and slate intake;
2. project status and development workflows;
3. evaluation, coverage, review, routing, referral, packaging, submission, financing, production, licensing, distribution, commercialization, exploitation, retention, transfer, or disposition;
4. relationships, introductions, counterparties, talent, producers, financiers, buyers, platforms, studios, networks, distributors, licensees, or other market participants;
5. rights, authority, attribution, ownership, control, participation, claimant status, compensation, or entitlement;
6. activity conducted through third-party pipelines or outside Village Roadshow's formal systems; and
7. any subsequent transfer, use, incorporation, adaptation, financing, development, commercialization, distribution, or exploitation through Radial, FilmRise, Shout! Studios, Oaktree, or another person or entity.

(f) Downstream projects, libraries, and initiatives

Any project, slate, library, catalog, entity, transaction, production, distribution arrangement, licensing arrangement, technology initiative, data initiative, intellectual-property initiative, financing, investment, acquisition, restructuring, portfolio activity, or other commercial activity involving Radial or Mr. Mosko that:

1. incorporated, referenced, adapted, reproduced, reflected, or derived from the Covered Materials, Services, and Information;
2. was informed by, influenced by, enabled by, accelerated by, or benefited from the Covered Materials, Services, and Information;
3. used or relied on any development workflow, submission pathway, relationship, strategy, market intelligence, labor, service, data, or information obtained through Mr. Pautsch, TGM, or Village Roadshow infrastructure;
4. materially overlapped with any project, slate, opportunity, transaction, relationship, or development activity originating from or associated with Mr. Pautsch or TGM; or

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

5. was routed, structured, developed, financed, acquired, licensed, distributed, monetized, commercialized, or exploited through an intermediary, affiliate, successor, portfolio company, investment vehicle, counterparty, platform, distributor, licensee, or other person or entity.

(g) Development and financial-participation discussions

Any communication, proposal, analysis, presentation, recommendation, negotiation, approval, rejection, or discussion concerning development, financing, ownership, investment, participation, compensation, acquisition, licensing, distribution, monetization, or economic benefit involving:

1. an individual project;
2. a group of projects or slate;
3. a content library, intellectual-property portfolio, or rights package;
4. a company, fund, entity, platform, distributor, or investment vehicle;
5. an individual creator, producer, executive, adviser, talent participant, financier, investor, distributor, licensee, or other person;
6. intellectual property, labor, professional services, development workflows, market relationships, strategies, market intelligence, audience information, analytics, technology, or data; or
7. any revenue stream, production arrangement, distribution arrangement, licensing arrangement, platform arrangement, acquisition, investment, financing, restructuring, or transaction associated with the foregoing.

(h) Rights, authority, attribution, and exploitation

Any actual, contemplated, claimed, asserted, implied, or represented:

1. authorship, ownership, beneficial interest, control, authority, permission, representation, agency, participation, entitlement, assignment, option, license, submission right, development right, production right, distribution right, exploitation right, monetization right, or other interest concerning the Covered Materials, Services, and Information;
2. authority to submit, package, develop, adapt, finance, produce, acquire, distribute, license, transfer, commercialize, monetize, exploit, or otherwise act concerning them;
3. use or exploitation of intellectual property, labor, professional services, development activity, relationships, strategies, market intelligence, technology, analytics, audience information, data, or other information; or
4. statement concerning the source, provenance, status, ownership, control, authorization, disposition, availability, commercial value, attribution, or rights position of any relevant project, material, relationship, opportunity, service, data, or information.

(i) Claims, disputes, and proceedings

Any claim, notice, demand, complaint, inquiry, investigation, preservation request, litigation hold, dispute, proof of claim, bankruptcy matter, restructuring, sale process, transaction, court proceeding, appeal, or pending or reasonably anticipated litigation involving:

1. Mr. Pautsch, TGM, or "Huntsman";
2. Village Roadshow Entertainment Group;
3. the Covered Materials, Services, and Information;

**11**

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

4. Mr. Mosko's access, knowledge, oversight, participation, authority, representations, interests, or market activity;
5. Radial Financial Participation or Mosko-Affiliated Activity; or
6. the receipt, handling, routing, development, financing, acquisition, licensing, distribution, use, exploitation, retention, transfer, monetization, or disposition of the Covered Materials, Services, and Information.

3. Radial Financial and Transaction Records

Preserve all Radial documents, communications, and ESI—whether or not authored, received, or copied directly to Mr. Mosko—concerning any actual or contemplated Radial Financial Participation in a Mosko-Affiliated Activity.

This category includes:

1. investment sourcing and origination records;
2. project, slate, library, company, acquisition, and opportunity analyses;
3. development, production, financing, licensing, distribution, acquisition, and transaction proposals;
4. underwriting, diligence, rights-review, chain-of-title, and provenance materials;
5. investment memoranda, board materials, strategic presentations, and approval materials;
6. financial models, forecasts, valuations, revenue analyses, audience analyses, and monetization models;
7. ownership, capitalization, participation, and beneficial-interest records;
8. financing, acquisition, licensing, distribution, and revenue-sharing structures;
9. proposed and final transaction documents;
10. side letters, participation agreements, compensation arrangements, advisory agreements, consulting agreements, producer agreements, licensing agreements, distribution agreements, platform agreements, content-acquisition agreements, and management agreements;
11. monitoring, valuation, amendment, restructuring, enforcement, disposition, renewal, extension, and exit records;
12. records identifying any direct or indirect interest held by Mr. Mosko, an affiliated entity, an intermediary, a nominee, a representative, a trust, an investment vehicle, or another person acting for his benefit;
13. communications concerning whether Mr. Mosko introduced, sourced, originated, recommended, sponsored, supported, advised upon, evaluated, approved, opposed, monitored, or participated in an opportunity or transaction; and
14. records concerning transactions or opportunities that were considered, evaluated, declined, rejected, abandoned, terminated, or not consummated.

The scope includes Radial participation at the project, slate, library, company, fund, entity, individual, transaction, intellectual-property asset, revenue-stream, distribution-rights, licensing-rights, platform, and portfolio-company levels.

4. Governance, Compliance, Conflicts, and Outside-Activity Records

Preserve all responsive Radial board, committee, legal, compliance, conflicts, governance, risk, ethics, disclosure, recusal, diligence, investment, transaction, compensation, and outside-business-activity records concerning:

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

1. Mr. Mosko's employment, consulting, advisory work, board service, producing activity, investments, financial interests, ownership interests, compensation arrangements, or other outside activities;
2. his relationships with any person or entity involved in a Mosko-Affiliated Activity;
3. any actual, potential, or perceived conflict involving the matters described in this notice;
4. any disclosure, nondisclosure, recusal, approval, waiver, review, inquiry, investigation, escalation, or remedial action concerning such matters;
5. any use of Radial personnel, systems, relationships, information, capital, resources, reputation, business opportunities, content libraries, distribution infrastructure, technology, audience data, or market access in connection with responsive activity; and
6. any benefit, opportunity, compensation, equity, participation, or other interest offered, provided, considered, or attributed to Mr. Mosko or an affiliated person or entity.

5. Data, Security, Breach, and Records-Integrity Matters

Preserve all responsive records concerning:

1. the collection, receipt, access, use, transfer, sharing, disclosure, commercialization, monetization, security, retention, migration, or disposition of data included within or derived from the Covered Materials, Services, and Information;
2. any actual or suspected unauthorized access, acquisition, disclosure, transmission, use, compromise, alteration, deletion, loss, destruction, migration, or transfer affecting responsive information;
3. any data breach, cybersecurity incident, system intrusion, account compromise, credential compromise, forensic investigation, remediation, notification, insurance claim, legal analysis, response strategy, or communications strategy affecting a system or repository reasonably likely to contain responsive information;
4. any records-management decision, system integration, system conversion, account closure, device replacement, platform migration, database consolidation, backup restoration, or disposal event affecting potentially responsive records; and
5. communications with legal advisers, forensic vendors, insurers, regulators, service providers, platforms, distributors, counterparties, Oaktree, FilmRise, Shout! Studios, or affected persons concerning such matters.

This section is limited to data derived from or associated with the matters identified in this notice, or incidents affecting systems or repositories reasonably likely to contain responsive information.

6. No Express-Name, Attribution, or Formal-Title Limitation

Responsive information remains within the scope of this notice whether or not it expressly identifies John T. Pautsch, TGM, or "Huntsman."

Preserve information where the record instead uses or refers to:

1. a project title, revised title, working title, code name, description, premise, format, character, visual treatment, business model, data model, development strategy, distribution strategy, or other identifying feature;

**13**

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

2. an intermediary, agent, representative, entity, counterparty, buyer, financier, producer, talent participant, platform, distributor, licensee, market relationship, transaction, or other indirect reference;
3. a derivative, adapted, reformulated, combined, repackaged, acquired, licensed, distributed, monetized, or downstream project, product, opportunity, library, or initiative;
4. a submission, development, financing, production, acquisition, licensing, distribution, investment, monetization, or transaction pathway; or
5. any other reference reasonably capable of connecting the record to the Covered Materials, Services, and Information.

The scope includes materials, services, relationships, workflows, strategies, market intelligence, technology, analytics, audience information, and data originating from or obtained through Mr. Pautsch or TGM even where later communications omitted attribution, used different terminology, routed the matter through an intermediary, or addressed only a downstream project, entity, transaction, library, platform, or initiative.

7. Complete Transmission, Access, and Handling Records

For each responsive communication, document, or data source, preserve the complete record of origin, creation, receipt, access, review, editing, transmission, routing, forwarding, uploading, downloading, sharing, copying, deletion, restoration, and disposition, including:

1. all sender and recipient fields;
2. all "to," "cc," and "bcc" recipients;
3. attachments and embedded files;
4. native files;
5. metadata;
6. drafts and version histories;
7. audit and access logs;
8. upload and download logs;
9. send, delivery, and forwarding records;
10. link-sharing and permission histories;
11. file-path, folder, account, database, system, and repository information; and
12. records identifying each person who accessed, modified, transmitted, deleted, restored, or otherwise handled the information.

8. Forms of Material Covered

This preservation request applies to all potentially responsive formats within Radial's possession, custody, or control, including:

* email;
* text messages;
* Microsoft Teams, Slack, WhatsApp, Signal, Telegram, Google Chat, and similar platforms;
* disappearing or ephemeral communications;
* social-media direct messages;
* board and committee portals;
* calendars and meeting invitations;
* telephone and videoconference logs;

**14**

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

* voicemails;
* audio and video recordings;
* handwritten and electronic notes;
* presentations;
* board and committee materials;
* project and slate records;
* content-acquisition and licensing records;
* distribution and platform records;
* diligence files;
* investment memoranda;
* financial models;
* audience, platform, advertising, analytics, and monetization records;
* compliance and conflicts records;
* outside-business-activity disclosures;
* legal files;
* drafts and redlines;
* native files and metadata;
* shared drives;
* cloud storage;
* document-management systems;
* customer-relationship-management systems;
* content-management systems;
* rights-management systems;
* distribution-management systems;
* platform-management systems;
* data rooms;
* backup and archival media; and
* information stored on computers, mobile devices, external media, servers, hosted platforms, or third-party services.

9. Custodians, Accounts, and Systems

This notice applies to responsive information maintained in connection with:

1. Steve Mosko, including any Radial-issued, Radial-administered, Radial-synchronized, or Radial-accessible account, device, board portal, committee workspace, calendar, file repository, database, or communication platform used by or for him;
2. any personal account or device used for Radial business, but only to the extent responsive information is within Radial's possession, custody, or control;
3. any assistant, delegate, administrator, board liaison, committee liaison, legal professional, compliance professional, finance professional, investment professional, content professional, business-affairs professional, information-technology professional, records custodian, or other person who created, received, transmitted, maintained, administered, reviewed, or handled responsive records for or concerning Mr. Mosko;
4. Radial personnel involved in any actual or contemplated Radial Financial Participation in a Mosko-Affiliated Activity;
5. Radial legal, business affairs, compliance, governance, conflicts, finance, investment, content acquisition, production, distribution, licensing, technology, data, records-management, and information-technology personnel responsible for responsive records;

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

6. FilmRise and Shout! Studios personnel, systems, and repositories to the extent responsive information is within Radial's possession, custody, or control; and
7. third-party service providers to the extent Radial has a contractual or other right to obtain, preserve, access, administer, or control responsive information.

This notice does not purport to require Radial to preserve information outside its possession, custody, or control.

10. Relevant Time Period

For records concerning Mr. Mosko's consideration, recruitment, evaluation, nomination, appointment, onboarding, compensation, access, board service, committee activity, governance, disclosures, conflicts, recusals, outside activities, or actual or contemplated Radial Financial Participation:

From the earliest consideration of Mr. Mosko for any role with Radial through the present, on a continuing basis.

For all other responsive Radial records:

July 1, 2025 through the present, on a continuing basis.

For responsive records inherited from, transferred from, or maintained through FilmRise, Shout! Studios, a predecessor entity, or another controlled repository concerning Mr. Pautsch, TGM, Village Roadshow personnel or infrastructure, or the Covered Materials, Services, and Information:

April 1, 2020 through the present, on a continuing basis.

11. Required Preservation Measures

Please take reasonable and proportionate steps to:

1. identify relevant custodians, accounts, systems, repositories, applications, devices, databases, and service providers;
2. issue appropriate preservation instructions to relevant legal, business-affairs, compliance, finance, investment, governance, content, distribution, licensing, information-technology, records-management, and custodial personnel;
3. suspend routine deletion, destruction, overwriting, auto-purge, expiration, recycling, or other disposition processes to the extent they may affect responsive information;
4. disable disappearing-message or ephemeral-communication settings as they relate to responsive communications;
5. prevent the deletion, editing, alteration, overwriting, "unsending," concealment, migration, or other modification of responsive information;
6. preserve native files with their attachments, metadata, drafts, version histories, access logs, audit logs, and transmission records;
7. preserve responsive information before replacing, wiping, resetting, repurposing, transferring, closing, consolidating, or disposing of any relevant account, device, system, database, platform, or repository;

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

8. preserve backup, archival, disaster-recovery, forensic, and legacy sources reasonably likely to contain unique responsive information not available from active systems or other preserved sources;
9. preserve records identifying any prior deletion, migration, transfer, loss, corruption, compromise, breach, or destruction of potentially responsive information; and
10. preserve records identifying any relevant source that no longer exists or is no longer reasonably accessible.

Because responsive records may omit attribution, use changed project titles, or concern indirect or downstream activity, targeted keyword preservation may not reliably identify all responsive information. To the extent Radial cannot reliably isolate responsive content without risking loss, please preserve the complete relevant custodial source—or a forensically sound copy of that source—pending a later agreement or determination regarding collection, review, and production.

This request does not require Radial to review or produce the complete source at this time.

Where doubt exists, preserve.

12. Privilege and Protected Material

Nothing in this notice requests the present production of privileged, work-product, confidential, proprietary, commercially sensitive, or otherwise legally protected information.

Such information should nevertheless be preserved where otherwise responsive. Preservation does not waive any privilege, protection, confidentiality interest, objection, or other right.

13. Confirmation

Within fourteen (14) days, please confirm that:

1. Radial has received this notice;
2. the notice has been transmitted to the persons responsible for legal, business affairs, compliance, governance, information technology, records management, financial and transaction records, and custodial preservation;
3. reasonable preservation measures have been implemented for responsive information within Radial's possession, custody, or control; and
4. potentially responsive information will not be destroyed, altered, overwritten, or otherwise rendered unavailable through routine or extraordinary processes.

This request seeks confirmation of implementation, not a sworn certification, disclosure of privileged information, identification of legal advice, or production of preserved materials.

If Radial believes any category is materially overbroad, unclear, technically unavailable, or outside its possession, custody, or control, please identify the specific category and basis promptly so the issue may be addressed without risking the loss of potentially responsive information.

14. Reservation of Rights

This letter is a preservation notice only. It requests no production at this time and does not characterize or allege liability by Radial.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

Nothing in this notice waives, limits, prejudices, or concedes any right, claim, remedy, position, objection, privilege, interest, or entitlement of Mr. Pautsch or TGM in any capacity, proceeding, or forum. All rights are expressly reserved.

Respectfully,

/s/ John T. Pautsch

John T. Pautsch
Individually and as Managing Member of
THE G.O.A.T. MEDIA, LLC

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

NOTICE TO PRESERVE EVIDENCE

July 29, 2026

Oaktree Strategic Credit Fund
Oaktree Fund Advisors, LLC
Oaktree Capital Management, L.P.
333 South Grand Avenue, 28th Floor
Los Angeles, California 90071
P: +1 213 830-6300

VIA EMAIL: legalnotifications@oaktreecapital.com

Re: Steve Mosko — Oaktree Communications, Outside Activities, and Financial Participation

To the Legal Department:

I, John T. Pautsch (known professionally as "Huntsman"), write individually and on behalf of THE G.O.A.T. MEDIA, LLC ("TGM") to place Oaktree Strategic Credit Fund, Oaktree Fund Advisors, LLC, Oaktree Capital Management, L.P., and any affiliated entity that possesses, maintains, administers, or controls responsive records or systems—collectively and solely to that extent, "Oaktree"—on formal notice to preserve all documents, communications, and electronically stored information ("ESI") relating to Steve Mosko and the matters identified below.

This notice concerns records maintained in connection with Mr. Mosko's service as an independent director and Audit Committee member of Oaktree Strategic Credit Fund; his outside business activities, affiliations, interests, and market activity; and any actual or contemplated Oaktree financial or economic participation involving Mr. Mosko, his affiliated entities, or related media, entertainment, technology, intellectual-property, data, production, distribution, financing, or investment initiatives.

The identified information may be relevant to pending proceedings arising from In re Village Roadshow Entertainment Group USA, Inc., et al., Bankr. D. Del. No. 25-10475 (TMH), related appellate proceedings, and reasonably anticipated litigation concerning the receipt, access, oversight, handling, routing, use, disclosure, development, financing, exploitation, retention, transfer, and disposition of creative materials, intellectual property, labor, professional services, development workflows, business relationships, market intelligence, and data.

The anticipated matters include whether Village Roadshow personnel, agents, systems, submission channels, development pipelines, relationships, and other infrastructure were used to obtain, access, evaluate, route, develop, finance, disclose, exploit, or derive market value from such materials, services, relationships, and information through direct or third-party pathways.

Responsive records may not expressly identify Mr. Pautsch, TGM, or "Huntsman." They may instead use project titles, revised titles, working titles, descriptions, code names, derivative concepts, intermediaries,

**19**

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

counterparties, transactions, relationships, entities, or downstream initiatives. Preservation therefore must not be limited to records located through searches for Mr. Pautsch's or TGM's names.

This notice requests preservation only. It seeks no production at this time, does not accuse Oaktree of wrongdoing, and does not purport to impose any obligation beyond applicable law. Nothing in this notice characterizes, allocates, concedes, or limits authorship, ownership, beneficial interest, claimant status, agency, assignment, or the allocation of any right between Mr. Pautsch and TGM. Each category is asserted by the person or entity to which it pertains.

Receipt of this notice provides actual notice that the identified information may be relevant to pending and reasonably anticipated litigation. The alteration, destruction, concealment, loss, or failure to preserve responsive information after receipt may bear on subsequent evidentiary and procedural issues.

1. Defined Terms

A. Covered Materials, Services, and Information

"Covered Materials, Services, and Information" means any:

1. creative work, project, project title, slate, script, treatment, concept, format, pitch, proposal, deck, presentation, submission, development material, production material, intellectual property, derivative material, or related content;

2. labor, professional service, development service, packaging activity, production activity, financing activity, submission activity, business-development activity, or other work;

3. development pipeline, development workflow, project-tracking process, submission pathway, packaging strategy, production strategy, financing strategy, distribution strategy, commercialization strategy, or market strategy;

4. business relationship, professional relationship, introduction, contact, talent relationship, producer relationship, buyer relationship, financier relationship, platform relationship, studio relationship, distribution relationship, or other market relationship;

5. strategy, market intelligence, opportunity analysis, commercial information, business model, data, identity information, access information, account information, or other proprietary or nonpublic information;

that originated from, was supplied by, was created or developed by, was financed by, was performed by, or was otherwise associated with Mr. Pautsch or TGM.

The term also includes any such material, service, relationship, workflow, strategy, intelligence, or information that was received, obtained, accessed, reviewed, evaluated, routed, circulated, handled, retained, used, disclosed, submitted, packaged, developed, financed, commercialized, exploited, transferred, or disposed of through Village Roadshow Entertainment Group or any of its current or former officers, directors, employees, agents, representatives, consultants, affiliates, accounts, devices, systems, databases, platforms, submission channels, development pipelines, or other infrastructure.

B. Mosko-Affiliated Activity

"Mosko-Affiliated Activity" means any actual, contemplated, proposed, evaluated, pursued, developed, financed, or completed project, slate, company, entity, fund, investment vehicle, transaction, acquisition, financing, partnership, joint venture, production, distribution arrangement, licensing arrangement, technology initiative, data initiative, intellectual-property initiative, or other commercial activity in which Mr. Mosko:

1. served or was expected to serve as an officer, director, trustee, employee, consultant, adviser, agent, representative, producer, executive producer, manager, investor, lender, partner, participant, or other decision-maker;

2. held or was expected to hold any ownership, investment, compensation, participation, advisory, management, governance, licensing, producer, distribution, or other financial or economic interest;

3. exercised or was expected to exercise access, knowledge, oversight, direction, approval, influence, control, monitoring, supervision, or decision-making authority; or

4. introduced, connected, referred, routed, submitted, presented, recommended, sponsored, supported, financed, or otherwise facilitated any person, entity, project, slate, opportunity, transaction, or initiative.

C. Oaktree Financial Participation

"Oaktree Financial Participation" means any actual, contemplated, proposed, evaluated, recommended, approved, declined, rejected, abandoned, structured, negotiated, underwritten, financed, acquired, held, monitored, modified, transferred, sold, or disposed direct or indirect financial or economic participation by:

1. Oaktree Strategic Credit Fund;

2. Oaktree Fund Advisors, LLC;

3. Oaktree Capital Management, L.P.;

4. any Oaktree-managed, advised, sponsored, financed, controlled, or affiliated fund, account, investment vehicle, portfolio company, adviser, manager, lender, investor, partner, or entity; or

5. any person acting for or through any such entity,

in any Mosko-Affiliated Activity.

The term includes equity, debt, loans, credit facilities, acquisition financing, production financing, development financing, bridge financing, distribution financing, investments, ownership interests, profits interests, carried interests, options, warrants, royalties, backend participation, licensing revenue, distribution proceeds, acquisition consideration, contingent compensation, fees, commissions, bonuses,

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

advisory compensation, consulting compensation, board compensation, management compensation, producer compensation, executive-producer compensation, or any other direct or indirect financial, strategic, professional, or commercial benefit.

2. Mosko Custodial Communications and Records

Preserve all documents, communications, and ESI within Oaktree's possession, custody, or control that were created, authored, sent, received, copied, forwarded, accessed, stored, maintained, transmitted, uploaded, downloaded, shared, reviewed, edited, or otherwise handled by, to, from, through, or concerning Steve Mosko and that refer or relate to any of the following:

(a) Media, entertainment, technology, and market activity

Any actual or contemplated media, entertainment, film, television, streaming, digital-content, production, distribution, licensing, intellectual-property, technology, platform, data, financing, investment, acquisition, restructuring, portfolio, governance, or strategic initiative involving Mr. Mosko.

This includes activity involving individual projects, groups of projects, slates, companies, funds, investment vehicles, transactions, partnerships, counterparties, entities, or individuals.

(b) Outside affiliations and business activities

Mr. Mosko's actual or contemplated employment, consulting, advisory work, board service, management activity, producing activity, investment activity, financial interests, ownership interests, compensation arrangements, market relationships, or other outside business activities.

This includes communications concerning, involving, or transmitted through:

1. Sony Pictures or any current or former Sony entity;

2. Village Roadshow Entertainment Group or any current or former Village Roadshow entity;

3. Triarc Entertainment & Media Management, Inc.;

4. Radial Entertainment;

5. GreenSlate; and

6. any other current or former employer, company, fund, portfolio company, investment vehicle, adviser, lender, investor, producer, financier, studio, network, platform, distributor, licensee, consultant, agent, representative, counterparty, successor, predecessor, affiliate, joint venture, or person with which Mr. Mosko has been affiliated, involved, or engaged in any capacity.

The named persons and entities are illustrative and not limiting.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

(c) Access, knowledge, oversight, and participation

Mr. Mosko's access to, receipt of, knowledge of, awareness of, oversight of, direction of, supervision of, participation in, approval of, monitoring of, review of, evaluation of, use of, disclosure of, disposition of, or benefit from the Covered Materials, Services, and Information.

This category includes records reflecting:

1. what Mr. Mosko knew, received, reviewed, was shown, was told, discussed, considered, approved, authorized, directed, monitored, financed, disclosed, used, retained, transferred, or caused others to handle;

2. the source, origin, provenance, authorship, ownership, authority, authorization, attribution, status, availability, or disposition of any relevant material, project, opportunity, service, relationship, strategy, intelligence, or information;

3. any decision to omit, remove, alter, obscure, discontinue, or fail to preserve attribution to Mr. Pautsch or TGM; and

4. any activity undertaken through another person, entity, account, system, submission pathway, development pipeline, financing pathway, transaction, or intermediary.

(d) Village Roadshow personnel and infrastructure

Any communication, meeting, decision, approval, instruction, report, presentation, calendar entry, project record, slate record, submission record, development record, financing record, or other information concerning the Covered Materials, Services, and Information that arose through or involved Village Roadshow personnel, agents, representatives, consultants, affiliates, accounts, email systems, shared drives, databases, document-management systems, customer-relationship-management systems, submission portals, development systems, production systems, financial systems, data rooms, board materials, executive reports, devices, cloud environments, or other infrastructure.

This includes records concerning:

1. project and slate intake;

2. project status and development workflows;

3. evaluation, coverage, review, routing, referral, packaging, submission, financing, production, licensing, distribution, commercialization, exploitation, retention, transfer, or disposition;

4. relationships, introductions, counterparties, talent, producers, financiers, buyers, platforms, studios, networks, distributors, or other market participants;

5. rights, authority, attribution, ownership, control, participation, claimant status, compensation, or entitlement; and

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

6. activity conducted through third-party pipelines or outside Village Roadshow's formal systems.

(e) Downstream projects and initiatives

Any project, slate, entity, transaction, production, distribution arrangement, licensing arrangement, technology initiative, data initiative, intellectual-property initiative, financing, investment, acquisition, restructuring, portfolio activity, or other commercial activity involving Mr. Mosko that:

1. incorporated, referenced, adapted, reproduced, reflected, or derived from the Covered Materials, Services, and Information;

2. was informed by, influenced by, enabled by, accelerated by, or benefited from the Covered Materials, Services, and Information;

3. used or relied on any development workflow, submission pathway, relationship, strategy, market intelligence, labor, service, data, or information obtained through Mr. Pautsch, TGM, or Village Roadshow infrastructure;

4. materially overlapped with any project, slate, opportunity, transaction, relationship, or development activity originating from or associated with Mr. Pautsch or TGM; or

5. was routed, structured, developed, financed, commercialized, or exploited through an intermediary, affiliate, successor, portfolio company, investment vehicle, counterparty, or other person or entity.

(f) Development and financial-participation discussions

Any communication, proposal, analysis, presentation, recommendation, negotiation, approval, rejection, or discussion concerning development, financing, ownership, investment, participation, compensation, or economic benefit involving:

1. an individual project;

2. a group of projects or slate;

3. a company, fund, entity, or investment vehicle;

4. an individual creator, producer, executive, adviser, talent participant, financier, investor, or other person;

5. intellectual property, labor, professional services, development workflows, market relationships, strategies, market intelligence, or data; or

6. any revenue stream, rights package, production arrangement, distribution arrangement, licensing arrangement, acquisition, investment, financing, restructuring, or transaction associated with the foregoing.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

(g) Rights, authority, attribution, and exploitation

Any actual, contemplated, claimed, asserted, implied, or represented:

1. authorship, ownership, beneficial interest, control, authority, permission, representation, agency, participation, entitlement, assignment, option, license, submission right, development right, production right, distribution right, exploitation right, or other interest concerning the Covered Materials, Services, and Information;

2. authority to submit, package, develop, adapt, finance, produce, distribute, license, transfer, commercialize, exploit, or otherwise act concerning them;

3. use or exploitation of intellectual property, labor, professional services, development activity, relationships, strategies, market intelligence, data, or information; or

4. statement concerning the source, provenance, status, ownership, control, authorization, disposition, availability, commercial value, or rights position of any relevant project, material, relationship, opportunity, service, or information.

(h) Claims, disputes, and proceedings

Any claim, notice, demand, complaint, inquiry, investigation, preservation request, litigation hold, dispute, proof of claim, bankruptcy matter, restructuring, sale process, transaction, court proceeding, appeal, or pending or reasonably anticipated litigation involving:

1. Mr. Pautsch, TGM, or "Huntsman";

2. Village Roadshow Entertainment Group;

3. the Covered Materials, Services, and Information;

4. Mr. Mosko's access, knowledge, oversight, participation, authority, representations, interests, or market activity; or

5. the receipt, handling, routing, development, financing, use, exploitation, retention, transfer, or disposition of the Covered Materials, Services, and Information.

3. Oaktree Financial and Transaction Records

Preserve all Oaktree documents, communications, and ESI—whether or not authored, received, or copied directly to Mr. Mosko—concerning any actual or contemplated Oaktree Financial Participation in a Mosko-Affiliated Activity.

This category includes:

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

1. investment sourcing and origination records;

2. opportunity analyses;

3. investment, financing, acquisition, and transaction proposals;

4. underwriting and diligence materials;

5. investment memoranda;

6. financial models and valuations;

7. ownership and capitalization records;

8. beneficial-interest analyses;

9. financing structures;

10. credit analyses;

11. investment-committee, portfolio-review, board, or other approval materials;

12. proposed and final transaction documents;

13. side letters, participation agreements, compensation arrangements, advisory agreements, consulting agreements, producer agreements, licensing agreements, distribution agreements, and management agreements;

14. monitoring, valuation, amendment, restructuring, workout, enforcement, disposition, and exit records;

15. records identifying any direct or indirect interest held by Mr. Mosko, an affiliated entity, an intermediary, a nominee, a representative, a family-controlled entity, an investment vehicle, or another person acting for his benefit;

16. communications concerning whether Mr. Mosko introduced, sourced, recommended, sponsored, supported, advised upon, evaluated, approved, opposed, monitored, or participated in an opportunity or transaction; and

17. records concerning transactions or opportunities that were considered, evaluated, declined, rejected, abandoned, terminated, or not consummated.

The scope includes Oaktree participation at the project, slate, company, fund, entity, individual, transaction, intellectual-property asset, revenue-stream, and portfolio-company levels.

4. Governance, Compliance, Conflicts, and Outside-Activity Records

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

Preserve all responsive Oaktree board, Audit Committee, legal, compliance, conflicts, governance, risk, ethics, disclosure, recusal, diligence, investment, transaction, compensation, and outside-business-activity records concerning:

1. Mr. Mosko's employment, consulting, advisory work, board service, producing activity, investments, financial interests, ownership interests, compensation arrangements, or other outside activities;

2. his relationships with any person or entity involved in a Mosko-Affiliated Activity;

3. any actual, potential, or perceived conflict involving the matters described in this notice;

4. any disclosure, nondisclosure, recusal, approval, waiver, review, inquiry, investigation, escalation, or remedial action concerning such matters;

5. any use of Oaktree personnel, systems, relationships, information, capital, resources, reputation, business opportunities, or market access in connection with responsive activity; and

6. any benefit, opportunity, compensation, or participation offered, provided, considered, or attributed to Mr. Mosko or an affiliated person or entity.

5. Data, Security, Breach, and Records-Integrity Matters

Preserve all responsive records concerning:

1. the collection, receipt, access, use, transfer, sharing, disclosure, commercialization, monetization, security, retention, migration, or disposition of data included within or derived from the Covered Materials, Services, and Information;

2. any actual or suspected unauthorized access, acquisition, disclosure, transmission, use, compromise, alteration, deletion, loss, destruction, migration, or transfer affecting responsive information;

3. any data breach, cybersecurity incident, system intrusion, account compromise, credential compromise, forensic investigation, remediation, notification, insurance claim, legal analysis, response strategy, or communications strategy affecting a system or repository reasonably likely to contain responsive information;

4. any records-management decision, system conversion, account closure, device replacement, platform migration, backup restoration, or disposal event affecting potentially responsive records; and

5. communications with legal advisers, forensic vendors, insurers, regulators, service providers, counterparties, or affected persons concerning such matters.

This section is limited to data derived from or associated with the matters identified in this notice, or incidents affecting systems or repositories reasonably likely to contain responsive information.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

6. No Express-Name, Attribution, or Formal-Title Limitation

Responsive information remains within the scope of this notice whether or not it expressly identifies John T. Pautsch, TGM, or "Huntsman."

Preserve information where the record instead uses or refers to:

1. a project title, revised title, working title, code name, description, premise, format, character, visual treatment, business model, data model, development strategy, or other identifying feature;

2. an intermediary, agent, representative, entity, counterparty, buyer, financier, producer, talent participant, market relationship, transaction, or other indirect reference;

3. a derivative, adapted, reformulated, combined, repackaged, or downstream project, product, opportunity, or initiative;

4. a submission, development, financing, production, licensing, distribution, acquisition, investment, or transaction pathway; or

5. any other reference reasonably capable of connecting the record to the Covered Materials, Services, and Information.

The scope includes materials, services, relationships, workflows, strategies, market intelligence, and data originating from or obtained through Mr. Pautsch or TGM even where later communications omitted attribution, used different terminology, routed the matter through an intermediary, or addressed only a downstream project, entity, transaction, or initiative.

7. Complete Transmission, Access, and Handling Records

For each responsive communication, document, or data source, preserve the complete record of origin, creation, receipt, access, review, editing, transmission, routing, forwarding, uploading, downloading, sharing, copying, deletion, restoration, and disposition, including:

1. all sender and recipient fields;

2. all "to," "cc," and "bcc" recipients;

3. attachments and embedded files;

4. native files;

5. metadata;

6. drafts and version histories;

7. audit and access logs;

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

8. upload and download logs;

9. send, delivery, and forwarding records;

10. link-sharing and permission histories;

11. file-path, folder, account, and repository information; and

12. records identifying each person who accessed, modified, transmitted, deleted, restored, or otherwise handled the information.

8. Forms of Material Covered

This preservation request applies to all potentially responsive formats within Oaktree's possession, custody, or control, including:

* email;

* text messages;

* Microsoft Teams, Slack, WhatsApp, Signal, Telegram, Google Chat, and similar platforms;

* disappearing or ephemeral communications;

* social-media direct messages;

* board and committee portals;

* calendars and meeting invitations;

* telephone and videoconference logs;

* voicemails;

* audio and video recordings;

* handwritten and electronic notes;

* presentations;

* board and committee materials;

* diligence files;

* investment memoranda;

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

* financial models;

* compliance and conflicts records;

* outside-business-activity disclosures;

* legal files;

* drafts and redlines;

* native files and metadata;

* shared drives;

* cloud storage;

* document-management systems;

* customer-relationship-management systems;

* investment-management systems;

* data rooms;

* backup and archival media; and

* information stored on computers, mobile devices, external media, servers, hosted platforms, or third-party services.

9. Custodians, Accounts, and Systems

This notice applies to responsive information maintained in connection with:

1. Steve Mosko, including any Oaktree-issued, Oaktree-administered, Oaktree-synchronized, or Oaktree-accessible account, device, board portal, committee workspace, calendar, file repository, or communication platform used by or for him;

2. any personal account or device used for Oaktree business, but only to the extent the responsive information is within Oaktree's possession, custody, or control;

3. any assistant, delegate, administrator, board liaison, committee liaison, legal professional, compliance professional, investment professional, information-technology professional, records custodian, or other person who created, received, transmitted, maintained, administered, reviewed, or handled responsive records for or concerning Mr. Mosko;

4. Oaktree personnel involved in any actual or contemplated Oaktree Financial Participation in a Mosko-Affiliated Activity;

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

5. Oaktree legal, compliance, governance, conflicts, finance, investment, records-management, and information-technology personnel responsible for responsive records; and

6. third-party service providers to the extent Oaktree has a contractual or other right to obtain, preserve, access, administer, or control responsive information.

This notice does not purport to require Oaktree to preserve information outside its possession, custody, or control.

10. Relevant Time Period

For records concerning Mr. Mosko's Oaktree service, outside-business-activity disclosures, affiliations, conflicts, recusals, governance matters, and actual or contemplated Oaktree Financial Participation:

July 1, 2018 through the present, on a continuing basis.

For records specifically concerning Mr. Pautsch, TGM, Village Roadshow personnel or infrastructure, or the Covered Materials, Services, and Information:

April 1, 2020 through the present, on a continuing basis.

11. Required Preservation Measures

Please take reasonable and proportionate steps to:

1. identify relevant custodians, accounts, systems, repositories, applications, devices, and service providers;

2. issue appropriate preservation instructions to relevant legal, compliance, investment, governance, information-technology, records-management, and custodial personnel;

3. suspend routine deletion, destruction, overwriting, auto-purge, expiration, recycling, or other disposition processes to the extent they may affect responsive information;

4. disable disappearing-message or ephemeral-communication settings as they relate to responsive communications;

5. prevent the deletion, editing, alteration, overwriting, "unsending," concealment, migration, or other modification of responsive information;

6. preserve native files with their attachments, metadata, drafts, version histories, access logs, audit logs, and transmission records;

7. preserve responsive information before replacing, wiping, resetting, repurposing, transferring, closing, or disposing of any relevant account, device, system, or repository;

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

8. preserve backup, archival, disaster-recovery, forensic, and legacy sources reasonably likely to contain unique responsive information not available from active systems or other preserved sources;

9. preserve records identifying any prior deletion, migration, transfer, loss, corruption, compromise, breach, or destruction of potentially responsive information; and

10. preserve records identifying any relevant source that no longer exists or is no longer reasonably accessible.

Because responsive records may omit attribution, use changed project titles, or concern indirect or downstream activity, targeted keyword preservation may not reliably identify all responsive information. To the extent Oaktree cannot reliably isolate responsive content without risking loss, please preserve the complete relevant custodial source—or a forensically sound copy of that source—pending a later agreement or determination regarding collection, review, and production.

This request does not require Oaktree to review or produce the complete source at this time.

Where doubt exists, preserve.

12. Privilege and Protected Material

Nothing in this notice requests the present production of privileged, work-product, confidential, proprietary, commercially sensitive, or otherwise legally protected information.

Such information should nevertheless be preserved where otherwise responsive. Preservation does not waive any privilege, protection, confidentiality interest, objection, or other right.

13. Confirmation

Within fourteen (14) days, please confirm that:

1. Oaktree has received this notice;

2. the notice has been transmitted to the persons responsible for legal, compliance, governance, information technology, records management, investment records, and custodial preservation;

3. reasonable preservation measures have been implemented for responsive information within Oaktree's possession, custody, or control; and

4. potentially responsive information will not be destroyed, altered, overwritten, or otherwise rendered unavailable through routine or extraordinary processes.

This request seeks confirmation of implementation, not a sworn certification, disclosure of privileged information, identification of legal advice, or production of preserved materials.

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

If Oaktree believes any category is materially overbroad, unclear, technically unavailable, or outside its possession, custody, or control, please identify the specific category and basis promptly so the issue may be addressed without risking the loss of potentially responsive information.

14. Reservation of Rights

This letter is a preservation notice only. It requests no production at this time and does not characterize or allege liability by Oaktree.

Nothing in this notice waives, limits, prejudices, or concedes any right, claim, remedy, position, objection, privilege, interest, or entitlement of Mr. Pautsch or TGM in any capacity, proceeding, or forum. All rights are expressly reserved.

Respectfully,

/s/ John T. Pautsch

John T. Pautsch

Individually and as Managing Member of THE G.O.A.T. MEDIA, LLC

GT GreenbergTraurig

Vincent H. Chieffo
Tel 310.586.7731
Fax 310.586.7800
chieffov@gtlaw.com

August 10, 2026

**VIA EMAIL and U.S. MAIL**
john@thegoat.com

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd., Suite 169
Beverly Hills, CA 90212

**Re: July 29, 2026 Notice To Preserve Evidence (the "Notice")**

Dear Mr. Pautsch:

This firm represents Radial Entertainment ("Radial") and we have been asked to review and respond to your Notice on its behalf. As explained below, our client rejects your Notice and will take none of the actions the Notice demands.

Under Federal Rules of Civil Procedure, Rule 37(e) and common law, any duty to preserve evidence only arises when the recipient of the demand reasonably anticipates litigation against it. We have reviewed the Notice and relevant documents and have concluded that there is no reasonably anticipated litigation against Radial, FilmRise, Inc. or Shout! Factory, LLC. or, for that matter, Steve Mosko who is mentioned in your Notice

The Notice at page 2 admits that "[i]t seeks no production at this time, does not accuse Radial of any wrongdoing, and does not purport to impose any obligation beyond applicable law." The Notice also states at page 1 that "[t]he identified evidence may be relevant to pending proceedings arising from *In re Village Roadshow Entertainment Group USA , Inc., et al. Bankr. D Del No. 25-10475 (TMH).*" (The "VREG Chapter 11 Proceedings"). We have reviewed relevant filings in the VREG Chapter 11 Proceedings and they also do not create any reasonably anticipated litigation against Radial, FilmRise, Inc. or Shout! Factory, LLC.

All of the VREG assets have been sold in the VREG Chapter 11 Proceedings, and the sales proceeds are held by the VREG Liquidating Trust. On behalf of G.O.A.T. Media, you filed two unsecured and unliquidated creditor claims in the VREG Chapter 11 Proceedings that apparently asserted no specific dollar amounts for alleged unpaid entertainment and strategic services. The G.O.A.T. Media claims were objected to by the Trustee as vague, speculative, and insufficient to establish any plausible VREG liability. G.O.A.T. Media then filed its Pro Se Response to the Trustee's objections consisting of a notification that G.O.A.T. Media had delivered a Supplemental Evidentiary Compendium and Record Clarification of approximately

349 pages of documentary material. The claims were based on G.O.A.T. Media's supposed relationship with Marc Charles Rosen, a former producer for VREG. While the G.O.A.T. Media supplemental filing apparently did include correspondence with Mr. Rosen, it contained no agreement with VREG. Moreover, one submitted email from Mr. Rosen stated that VREG had "passed on" whatever G.O.A.T. Media had submitted to Mr. Rosen. The Bankruptcy Court confirmed the disallowance of the G.O.A.T. Media claims.

G.O.A.T. Media appealed the disallowance order to the district court. While that appeal was pending, you moved to substitute yourself as the real party-in-interest to the disallowed G.O.A.T. Media claims. In May 2026, the district court denied your substitution motion and dismissed the G.O.A.T. Media appeal for various procedural reasons including the failure of G.O.A.T. Media to be represented by counsel.

In June 2026, G.O.A.T. Media filed an appeal with the Third Circuit, that has been docketed under Case No. 26-2443. Given the court history, it is highly likely that your Third Circuit appeal will be unsuccessful.

We find in these court records regarding the G.O.A.T. Media claims, no indication of any possible litigation against VREG and nothing to suggest there is any possibility of litigation against Radial, FilmRise, Inc., or Shout! Factory, LLC, or, for that matter, Steve Mosko.

To repeat, Radial rejects your Notice and will take no action to comply with it.

Nothing stated in or omitted from this letter is meant to be or should be deemed to be a waiver of any of our client's rights, claims, or remedies and all such rights, claims, or remedies are expressly reserved.

Best regards,

Vincent H. Chieffo

VHC

**35**

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

August 10, 2026

**VIA EMAIL:** chieffov@gtlaw.com / riveraal@gtlaw.com

Vincent H. Chieffo
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121

**Re: July 29, 2026 Notice to Preserve Evidence — Supplemental and Clarifying Notice; SIGNAL ONE and Related Downstream Activity**

Dear Mr. Chieffo:

Radial's August 10, 2026 letter does not resolve the July 29 Notice. I reject its conclusion that no preservation action is warranted.

Even under the preservation standard stated in your letter—whether the recipient reasonably anticipates litigation—this supplement removes any remaining ambiguity. Radial should now reasonably anticipate litigation concerning SIGNAL ONE and the related downstream conduct described below. This letter identifies the disputed project, the asserted underlying property and rights, the Village Roadshow submission and development pathway, relevant actors and relationships, and specific categories of potentially responsive evidence within Radial's possession, custody, or control.

Your reliance on the July 29 Notice's statement that it did not accuse Radial of wrongdoing is misplaced. That language defined the Notice's immediate purpose: preservation. The Notice expressly stated that receipt provided actual notice that the identified information may be relevant to pending and reasonably anticipated litigation and expressly reserved questions of authorship, ownership, beneficial interest, claimant status, agency, assignment, and allocation of rights between me and TGM.

Your response also collapses distinct issues: TGM's bankruptcy claims; the allocation and ownership of underlying rights; and independent downstream conduct by non-Debtor actors. Your letter identifies no adjudication resolving the latter two.

Nor does the absence of an executed VREG agreement or a later email stating that VREG had "passed on" submitted materials resolve the preservation issue. Those arguments conflate contract formation with access, authorization, provenance, and downstream use. They do not establish what VREG personnel solicited or accessed, what remained available through VREG personnel or infrastructure, what was routed or disclosed elsewhere, or what downstream activity followed.

THE RECORD HAS EXPANDED

The evidentiary record has continued to mature and expand. A recent audit of another tranche of contemporaneous emails, together with a closer examination of the sequence of events, has materially tightened the chronology surrounding the Debtors and their agents, including Steve Mosko.

The record now reflects a coherent course of conduct: the Debtors and their agents used Village Roadshow's brand, personnel, systems, relationships, and infrastructure to solicit projects, intellectual property, labor, professional services, development workflows, market relationships, and strategic

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

initiatives; secured and retained access through misrepresentations concerning authority, relationships, status, and development activity; and used that access to route, disclose, develop, package, finance, transfer, commercialize, or otherwise exploit those inputs through third-party pipelines while excluding the originating source of the rights, materials, labor, and services.

The chronology reflects projects, opportunities, and economic value moving away from the estate and into downstream channels, including projects I contend are unauthorized derivatives, creating corresponding questions of provenance, authorization, chain of title, economic participation, third-party exposure, and market interference.

That conduct falls squarely within the July 29 Notice. The Notice expressly covers materials, services, relationships, workflows, strategies, and information received or handled through Village Roadshow personnel and infrastructure; activity conducted through third-party pipelines; and subsequent incorporation, adaptation, development, financing, commercialization, distribution, or exploitation through Radial, FilmRise, Shout! Studios, Oaktree, or other persons and entities.

This supplement identifies SIGNAL ONE as one specific downstream project within that existing scope. It does not narrow, withdraw, supersede, or waive any other category of the July 29 Notice.

MOSKO AND THE DOWNSTREAM RELATIONSHIPS

The chronology surrounding Mr. Mosko materially strengthens the preservation nexus.

My record reflects that while leading VREG, Mr. Mosko retained strategic relationships involving Sony and Oaktree. Multiple projects within the development activity at issue subsequently moved into Sony-related pipelines, including GOAT, for which I hold the underlying rights.

Those relationships now converge at Radial. Radial identifies itself as backed by funds managed by Oaktree and announced Mr. Mosko's appointment to its Board on March 25, 2026. Radial's announcement specifically cited his strategic judgment and longstanding industry relationships, identified him as CEO of Triarc Entertainment, and recited his prior leadership of VREG and 24-year tenure at Sony Pictures Entertainment.

The Triarc chronology adds another material fact. California registry-derived records identify the legal entity as Triarc Entertainment & Media Management Inc., with an initial filing dated April 27, 2024, and Stephen Mosko identified as Chief Executive Officer, Secretary, Chief Financial Officer, and Director.

My record reflects that Triarc's initial filing occurred on the same day formal written notice was transmitted to VREG counsel concerning conduct involving, among other things, Village Roadshow's brand, infrastructure, producer channels, personnel, and my projects, intellectual property, services, development activity, and damages.

That temporal alignment makes records concerning Triarc's formation, project sourcing, development slate, financing activity, counterparties, Sony and Oaktree relationships, VREG relationships, and any transfer, migration, use, or exploitation of VREG-associated projects, materials, information, relationships, or opportunities directly relevant to the chronology.

The downstream relationships extend further.

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

Radial holds exclusive U.S. distribution rights to CONAN and currently markets the series through its platform. Netflix identifies Conan O'Brien, Jeff Ross, and David Kissinger for Conaco as executive producers of THE BEAST IN ME.

I possess primary email records documenting submissions to persons and teams later involved in developing THE BEAST IN ME. Those submissions place provenance, routing, development relationships, and derivative use within the preservation inquiry.

Radial is therefore on notice to preserve responsive records concerning the receipt, transmission, discussion, evaluation, referral, sourcing, routing, development, financing, licensing, distribution, commercialization, or other handling of responsive materials, information, relationships, or project activity involving Conan O'Brien, Conaco, their representatives, or related counterparties.

One additional point bears directly on preservation.

Michael Jordan three-peated twice. Kobe Bryant once. Mr. Mosko now presents an institutional three-peat of a very different kind: Sony. VREG. Radial.

Sony suffered a cyberattack during Mr. Mosko's Sony tenure. The FBI documented both the theft of proprietary and confidential information and the destruction and compromise of Sony Pictures systems. The VREG record independently raises issues concerning access, custody, provenance, movement of proprietary materials, and records integrity. A notice filed for Radial reports unauthorized access to certain employee email accounts.

Mr. Mosko held senior leadership or board roles across all three institutional environments. That sequence heightens the significance of preserving Mr. Mosko's custodial records, onboarding materials, access records, communications, outside-activity disclosures, conflicts records, and project-related activity—the same categories the July 29 Notice already identifies.

SIGNAL ONE AND PRESERVATION SCOPE

The chronology now intersects directly with a Radial-distributed project.

On March 20, 2026, public reporting identified Radial as having acquired exclusive North American distribution rights to SIGNAL ONE from Motion Pictures Exchange. Public descriptions center the project on LITTLEMOUTH, a machine capable of communicating with extraterrestrial intelligence. Radial obtained U.S. and Canadian theatrical, home-entertainment, and ancillary cross-platform distribution rights. Five days later, Radial announced Mr. Mosko's appointment to its Board.

I hold underlying rights in THE LASER LIGHTHOUSE, among other working titles and related materials, which were submitted and accessed through Village Roadshow infrastructure.

Radial is now on specific notice that I contend SIGNAL ONE constitutes an unauthorized derivative of protected materials and rights originating from that property and related development activity.

Neither I nor TGM authorized Mr. Mosko, any VREG officer, employee, agent, representative, intermediary, or any person or entity acting with, through, or at their direction to disclose, transfer, adapt, repurpose, exploit, or use my protected materials, proprietary information, development activity,

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

workflows, services, relationships, or nonpublic knowledge to originate, seed, influence, inform, accelerate, package, finance, acquire, license, develop, distribute, or commercialize projects through Radial or any other third-party pipeline.

Radial should preserve all records concerning SIGNAL ONE's origin and provenance; source materials; submissions and pitches; scripts, treatments, drafts, metadata, and development materials; title and development history; acquisition and licensing; chain of title; source-of-material inquiries; rights review and clearance; representations, warranties, and indemnities concerning rights; due diligence; financing; errors-and-omissions review, applications, and correspondence; insurance; delivery materials; distribution agreements and rights; commercialization; revenues and participations; counterparties; and internal evaluations, notes, communications, and approvals.

That preservation scope includes responsive records involving or concerning Mr. Mosko, Triarc, Village Roadshow personnel or agents, Oaktree, Sony, FilmRise, Shout! Studios/Shout! Factory, Motion Pictures Exchange, producers, financiers, sellers, licensors, rights holders, representatives, distributors, and other intermediaries.

The preservation issue is not limited to SIGNAL ONE.

Radial is also on notice concerning any project, property, transaction, or commercial activity that incorporates, adapts, reproduces, reflects, derives from, or was informed, enabled, or accelerated by the "Covered Materials, Services, and Information" defined in the July 29 Notice, including authorship and intellectual property, submissions and development materials, development workflows and pathways, labor and professional services, relationships and introductions, strategic initiatives, market intelligence, proprietary data, and other nonpublic information obtained directly or indirectly through me, TGM, or Village Roadshow personnel or infrastructure.

A downstream project need not retain my name, original title, terminology, or intermediary to remain responsive. The July 29 Notice expressly anticipated changed project titles, indirect references, intermediaries, derivatives, repackaged projects, and downstream transactions.

THE BANKRUPTCY RECORD AND THIRD CIRCUIT APPEAL

Your August 10 letter relies heavily on the sale of VREG's assets, the disallowance of TGM's claims, and the pending Third Circuit appeal. Those facts do not answer what the Debtors or their agents routed, transferred, developed, exploited, or moved outside the estate before the bankruptcy process accounted for it, nor do they resolve any continuation of that conduct or related downstream activity after the bankruptcy commenced.

The expanded chronology raises a broader and increasingly serious question: whether the public-facing narrative surrounding the VREG bankruptcy, and representations concerning the Debtors' assets, development activity, project pipeline, rights position, liabilities, market conditions, financial claims, and disposition of value, can be reconciled with the factual record.

The Jake Paul-related content, the transformation of boxing entertainment, and the associated media-rights opportunities provide one example. My record identifies that activity as only one component of more than ten projects and strategic initiatives spanning scripted, unscripted, animation, live sports, and

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

technology to which the Village Roadshow regime obtained access and from which third-party pipelines benefited.

The relevant inquiry is straightforward: what entered the VREG development environment; what the Debtors and their agents did with it; where the resulting projects, rights, relationships, opportunities, and economic value went; who received or benefited from them; and whether the bankruptcy record accurately accounted for that activity.

The subsequent sale of estate assets does not answer what left the relevant development and economic pipeline beforehand. At minimum, the chronology raises material questions concerning the completeness and accuracy of the estate record and the disposition of projects, rights, opportunities, relationships, and value before and during the bankruptcy process.

Radial is now on notice that evidence within its possession, custody, or control may bear directly on those issues.

Your prediction concerning the Third Circuit appeal likewise does not resolve preservation.

Your letter identifies no adjudication determining SIGNAL ONE's provenance; the underlying rights in THE LASER LIGHTHOUSE; Radial's acquisition, licensing, or distribution activity; Mr. Mosko's conduct; Triarc's conduct; the downstream relationships identified above; or any other non-Debtor actor's receipt, use, development, financing, transfer, distribution, or exploitation of the materials and rights at issue. Instead, your letter describes the procedural disposition of the bankruptcy claims and the pending appellate proceedings.

The July 29 Notice expressly reserved the allocation of rights between me and TGM. The procedural disposition of TGM's bankruptcy claims does not itself adjudicate all underlying rights, provenance questions, downstream conduct, or independent conduct by non-Debtor actors.

Whatever the ultimate disposition of the appeal, it does not presently establish authorization, establish chain of title to disputed intellectual property, resolve provenance, or adjudicate the third-party conduct identified in this supplement.

PRESERVATION

Accordingly, I maintain the July 29 Notice in full, as supplemented and clarified here.

Radial now has specific notice of SIGNAL ONE; the asserted underlying property and rights; the VREG submission and development pathway; the relevant actors, entities, relationships, and custodians; the Sony, Oaktree, Triarc, Conaco, and Radial intersections; the downstream development, financing, acquisition, licensing, and distribution pathways at issue; the conduct giving rise to the dispute; and the specific categories of potentially responsive evidence.

A merits dispute does not eliminate the preservation issue. On this record, Radial's categorical position that no preservation action is warranted is untenable.

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

The July 29 Notice expressly invited Radial to identify any category it considered materially overbroad, unclear, technically unavailable, or outside its possession, custody, or control so that the issue could be addressed without risking the loss of responsive evidence. If Radial maintains such a position as to any category identified in the original Notice or this supplement, please identify the specific category and basis promptly. Pending resolution of any such issue, preserve the potentially responsive information.

Please confirm implementation of reasonable preservation measures by the confirmation deadline stated in the July 29 Notice.

Nothing in this supplement narrows, withdraws, supersedes, prejudices, or waives the July 29 Notice or any right, claim, remedy, position, objection, interest, or entitlement of Mr. Pautsch or TGM. All are expressly reserved.

Best regards,

/s/ John T. Pautsch

John T. Pautsch

GT GreenbergTraurig

Vincent H. Chieffo
Tel 310.586.7731
Fax 310.586.7800
chieffov@gtlaw.com

August 14, 2026

**VIA EMAIL and U.S. MAIL**
john@thegoat.com

John T. Pautsch
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd., Suite 169
Beverly Hills, CA 90212

**Re: August 10, 2026 Supplemental Notice To Preserve Evidence (the "Supplemental Notice")**

Dear Mr. Pautsch:

We have reviewed your Supplemental Notice sent in response to my August 10, 2026 letter rejecting your original Notice dated July 29, 2026.

Nothing in your Supplemental Notice changes our view that our clients do not need to comply with the preservation demands asserted in your original Notice or as contradicted and expanded in your Supplemental Notice. To be clear, our clients reject your Notice and Supplemental Notice and will take no action to comply with either of them.

Nothing stated in or omitted from this letter is meant to be or should be deemed to be a waiver of any of our client's rights, claims, defenses, or remedies and all such rights, claims, defenses, or remedies are expressly reserved.

Best regards,

Vincent H. Chieffo

VHC

**42**

The Goat Media, LLC

Confidential

Date: 4.8.2024

Village Roadshow Entertainment Group
10100 Santa Monica Blvd. #200
Los Angeles, CA 90067

Att: Steve Mosko, Louis Santor, and Kevin Berg

Re: Producer Marc Rosen

Dear VREG Executive Team,

Please allow this letter to represent my verifiable experience with one of your Producers named Marc Rosen. I met Mr. Rosen in 2015 at my office in Century City [redacted] he invoked a personal relationship, which led to him requesting TV and Film ideas, including materials with innovative concepts in pitch deck and treatment format to assist his career trajectory under the guise of establishing myself as a creator and entertainment executive.

However, I couldn't provide the work from 2015 to 2019 because I was allocating my time, resources, and energy to manage my business. Instead, I continued to build a portfolio of ideas and data for the right time to launch my entertainment company.

Towards the end of 2019, a series of events catalyzed my decision to pursue my long-held aspirations of becoming an artist, writer, and entertainment executive. This transformative journey began with significant personal and financial sacrifices. Rather than seeking an exit strategy through sale, I consciously chose to create within a humble environment, address spiritual growth, and harness adversity as a driving force behind my creative endeavors.

In 2020, I re-established contact with Mr. Rosen, and he solicited my work under your company name.

Upon witnessing Mr. Rosen's integration into your team, I was filled with a distinctive sense of excitement as I've been a fan of some of your films, albeit tempered by longstanding doubts regarding his suitability, stemming from various personal and business red flags.

While VREG's endorsement lent Mr. Rosen a veneer of legitimacy, this validation failed to instill humility or gratitude; instead, it became a tool for wielding authority oppressively, engaging in disparaging remarks, and projecting an unsettling sense of dominance while maximizing his essence of deception.

At this juncture in my career, I remain resilient to verbal taunts, prioritizing performance, task completion, and goal achievement. I am confident that an internal investigation regarding the contents of this letter will corroborate my assertions, which I am prepared to verify.

Mr. Rosen began our engagement by reviewing my slate of scripted and unscripted projects and then articulating his interest in "Producing" specific projects under VREG, notably BILLY THE GOAT and THE GREAT DEBATE (TGD), among others. Throughout our interactions, he consistently emphasized his professional background, citing his involvement in founding and managing Heyday Television and his executive role and responsibility for building and managing the Harry Potter franchise, often invoking

renowned figures within the industry. Given his frequent mentions of his "VREG first-look deal" and comms from his VREG company email address, I trusted his intentions and leadership.

Between 2020 and 2023, Mr. Rosen solicited my complete slate of scripted and unscripted projects, many of which have tremendous franchise potential. He injected himself into overseeing my company processes but provided little to no valuable information for maximizing the potential of creative processes or materials. Much of his described "Producer Duties" were various claims of relationships, unseen processes, and "submissions," with me providing all of the investment, materials, data, and operational efficiency, aka the work and resources.

Additionally, I presented him with the opportunity to collaborate on a documentary featuring Jake Paul shortly after Paul's Nate Robinson fight in November 2020. During a three-way call with Paul's manager that I set up due to Mr. Rosen's employment at VREG, both parties expressed enthusiasm for the project. However, shortly after that (two weeks-ish), Mr. Rosen conveyed to me the following, "Jake Paul is not a needle mover, plus he's white, so it's not a good fit for us," - 'us' being VREG, which I found both ignorant and racially insensitive. Shortly after that statement, Jake Paul secured deals with Showtime and Netflix - two significant players Mr. Rosen brags about working with both independently and through VREG. Following these developments, he explained away my concerns while referring to his workflow, "how things work," and the relationships he was leveraging for my company's projects.

Mr. Rosen continued to assert his involvement in my business, citing progress and traction through his purported utilization of your company's departments, prominent publishers, managers, and executives. He emphasized a robust and proven process that purportedly elevated him to a position where your executives heavily relied on him. However, certain aspects of his claims seemed inconsistent, particularly given his below-average development skills, lack of organization and tech-savvy, comms style, and stated financial status after 25 years in the business. Additionally, the absence of scheduled meetings and engagement in partnership discussions raised questions about the extent of his influence and standing within the industry.

**WORKFLOW CONTEXT**
Having dedicated over 20,000 work hours entering the fifth year, I've crafted and edited over 8,000,000 words, conducted thorough research independently, generated all my materials, and shaped my company vision through TV and Film project innovation. Furthermore, I've undertaken the financial burden of self-funding my endeavors, including providing substantial time and resources to Mr. Rosen during his tenure with your company.
**END WORKFLOW CONTEXT**

Returning to The Rosen Experience, I persisted in my creative pursuits while Mr. Rosen continued to provide "Producer Duties" in his capacity as a producer and executive. However, he dismissed my psychological thriller franchise, IT'S DARK INSIDE (IDI), early in our engagement, asserting that the thriller and horror genres were obsolete and lacked audience appeal. He invoked statements like, "Nobody wants to see crime, killings, intense themes, or dark content," and vast amounts of other commentary. Empirical data contradicted this claim, and his ignorance or bad-intentioned advice did not stop my development process. Immediately following his initial "rejection" of IDI, VREG embarked on a new initiative focusing on "New Horror Voices" and a "Black Noir" agenda, which much of IDI is.

After alerting him to the publicity surrounding your campaign, Mr. Rosen immediately revisited our discussion, acknowledging the potential merit of my project, and miraculously reversed course, emphasizing his expertise in the thriller and horror genres, highlighting his involvement in numerous behind-the-scenes projects and artists. Additionally, he asserted that VREG's business strategies often align with his guidance, citing his close relationship with Vine Investments as a testament to his influence.

Mr. Rosen arranged a call with Shannon Perry to discuss THE GREAT DEBATE project, assuring me of its existing traction and characterizing the call as merely introductory, having already briefed your team involving lengthy talks about the project. Even though Mr. Rosen had not informed your team the way he implied, the conversation with Shannon and Murphy proceeded smoothly, with both individuals displaying professionalism and, frankly, genuine positive energy and interest in the potential of TGD.

Regardless of VREG's interest in the project, it was reassuring to engage with professionals and furthered Rosen's narrative that he is the real deal. Shannon concluded the call by requesting supporting data for my assertion regarding the popularity of debate content across all media and various platforms, which I had prepared in advance.

However, after the Zoom call, the situation took a peculiar turn when Mr. Rosen immediately called me and advised me against sending the data and recommended waiting for a month. Subsequently, he instructed me to forward only the national data about youth debates, omitting all statistics. Months later, after requiring an update, he stated, "We are working on it. Shannon requests talent options to attach," among many other statements.

Additionally, he changed gears and swiftly informed me of your team's interest in another project from my slate, THE DATING BUSINESS (TDB), a relationship match show that incorporates real dating solutions and technological elements for user monetization, which I attached software engineers from the biggest dating apps in the world. Mr. Rosen urged me to promptly submit this project by email, stating that your team eagerly awaits its presentation and loves the idea and format. I emailed but never heard back from anyone but Mr. Rosen. He claimed that he and your team were working on it.

In 2023, he informed me that VREG rejected TDB because they had too many dating shows in the system, despite initially being told that you had none when TDB was first submitted.

Throughout our interactions, Mr. Rosen consistently informed me of VREG's "requests," I promptly responded and complied, understanding that he and your team were actively collaborating on "Producer Duties." Simultaneously, he encouraged me to maintain my creative momentum: MORE ideas, MORE material, and MORE information.

However, abruptly (2022), he instructed me to cease communication via his VREG email address and demanded no further comms with VREG regarding projects or a potential partnership.

Subsequently, he disclosed that his "first-look deal" had lapsed and alleged mistreatment by VREG in a TV series deal with FOX, but refused to state which TV deal, then declared his intention to pursue legal action against your company. Amidst these developments, I remained focused on my responsibilities, albeit increasingly aware of concerning signs. Mr. Rosen's adeptness at deception, explanation, and diversion became evident. Had I solely concentrated on running my business as a C-Level exec, I may have avoided this situation entirely. Still, my unwavering focus on creative endeavors rendered me vulnerable to manipulation, and Mr. Rosen leveraged your stamp of approval to operate.

It's crucial to recognize that the incidents highlighted here are just a <u>tiny fraction</u> of the verifiable interactions, advice-guarantees-mistakes-incompetence-negligence-lies-suppression by Mr. Rosen, submissions, and deceptive dealings conducted in your company's name. These actions, perpetrated by Mr. Rosen, can be briefly described as involving various forms of misconduct, including waste, fraud, and abuse. His actions, whether negligent or deliberate, I presume both, have inflicted financial losses and significant stress due to his unethical behavior. From misusing your brand to impede my progress to depleting resources and undermining my business and personal finances, his conduct has had pervasive adverse effects.

Ending 2022, he stated he swept the floor with VREG legally (won the case), but your relationship remained intact due to his supreme television skills and name. All while remaining noncompliant in paying his debt to me, the writer/creator and sole rights holder of all TGM projects. Mr. Rosen's failed compliance doesn't end there; he avoided other measures to minimize workflow risk through explanation and more distractions.

Keep in mind, that Mr. Rosen was never contracted due to various obstacles and concerns regarding working with him. He was never given authorization to attach his outrageous (delusional) producer quotes to any of TGM's projects.

In 2023, I began to perform the "Producer Duties" myself. Mr. Rosen would melt down frequently when accountability or compliance was required. He persistently made statements about VREG, his career standing, and tasks being completed behind the scenes. Later, he would follow up, claiming various projects in your pipeline. As I added pieces to my business, built relationships across the entertainment realm, or asked for updates, he would insult and make erroneous claims, constantly mentioning VREG employees helping him with projects, then out of the blue, he would make strange statements like "VREG is going bankrupt, selling the company, nobody in the industry wants to work with VREG, and that VREG fucked him over."

I'm not entirely sure why he feels the need to bring up VREG constantly. I presume it is because you lent him credibility, which he used to scam me (and likely others), and he is doing everything within his 'power of the tongue' to keep us separate per his extreme misconduct.

Other than his consistent troubling behaviors, his obsessive remarks about your company played a significant role in my decision to craft this letter because the abundance of VREG commentary made me think, what is going on?

Stephen King couldn't create a more unethical, guilty-behaving antagonist.

Frankly, your business is your business. My intent was never to get involved in this manner. We aim to create audience-first content and build strong long-term relationships. I'm mindful that this type of inquiry may be rare in Hollywood, but I hope you understand I'm simply doing my job as a creator, executive, and small business owner.

To start 2024, we scaled back from Mr. Rosen while performing compliance and communication tests, where he continued to hang himself. An internal investigation produced deeply troubling revelations.

I've been advised by established industry executives and legal to cease contact with Mr. Rosen and confirm it with all parties involved. Rather than call you, it seemed appropriate to send this breakdown because my full-time entertainment career started with him soliciting my slate, ideas, money, and operational methods under VREG, and he continues to boast about his dealings with you.

This inquiry serves several purposes:

1. To prevent similar incidents from occurring in the future, recognize the potential impact on others beyond myself.

2. For clarity on TGM's workflow with Mr. Rosen per his actions in his capacity as "Producer" at VREG, I request a review of his workflow, including the status of all projects I have submitted to him under your organization, including:

- THE GREAT DEBATE: what was the final decision and why? We never received a straight answer from him. Is there anything I can do to clarify the project's vision or revisit this with fresh

eyes? All data and common-sense observations of the media landscape point to this timeless project being a hit, and with your experience with COLLEGE BOWL, it seems like this new format could be a lucrative endeavor and promising societal impact.

- JAKE PAUL's digital footprint involving Mr. Rosen, from introduction to present as Paul vs Tyson on Netflix, was recently announced.

- Other projects you'll find within Rosen's file.

3. To address concerns regarding Mr. Rosen's conduct, which includes a pattern of deception, resource depletion, and misappropriating credit for others' work.

4. Should Mr. Rosen's reputation and credibility be compromised beyond my experience with him, this letter documents my association with him while also clarifying my disengagement from any deceptive practices.

5. Mr. Rosen has been formally removed from all TGM projects.

6. Mr. Rosen has no rights to TGM materials or intellectual property and was not involved in the creative processes. He was never under contract, and when provided the opportunity to formalize his involvement by clearly defining roles and protecting TGM against misconduct, he evaded responsibility and sidestepped compliance measures.

I am interested in assessing the possibility of turning this situation into a positive outcome and understanding whether your team supports this behavior.

Thank you in advance for your time and prompt response.

Sincerely,

John Huntsman
The Goat Media
P: 310.745.0257
E: john@thegoat.com

# PAUTSCH/HUNTSMAN — VREG EMAIL NOTICE 2 — April 27, 2024

Same notice attached.

JH John Huntsman

Fwd: Producer Marc Rosen

[illegible]

VREG ROSEN.pdf

# MOSKO FORMS TRIARC ENT. & MEDIA MGMT — April 27, 2024

Home › California › Malibu

## Triarc Entertainment & Media Management Inc.

Active Updated 3/25/2026 12:00:00 AM

Triarc Entertainment & Media Management Inc., a General Corporation, is a business entity located in Malibu, CA. Officially filed on April 27, 2024, this corporation is recognized under the document number 6205650. Governed by the California Secretary of State, the corporation maintains an active filing status.

The principal address of the corporation is located at 29500 Heathercliff Rd Spc 180, Malibu, CA 90265-1806 and mailing address is at 29500 Heathercliff Rd Spc 180, Malibu, CA 90265-6180, serving as the central hub for its business operations and correspondence.

The corporation is led by a team of key individuals: Stephen Mosko from Thousand Oaks CA, holding the position of Chief Executive Officer; Stephen Mosko from Thousand Oaks CA, serving as the Secretary; Stephen Mosko from Thousand Oaks CA, serving as the Chief Financial Officer; Stephen Mosko from Thousand Oaks CA, serving as the Director.

### Filing information

| | |
|---|---|
| Company Name | Triarc Entertainment & Media Management Inc. |
| Entity type | General Corporation |
| Governing Agency | California Secretary of State |
| Document Number | 6205650 |
| Date Filed | April 27, 2024 |
| Company Age | 2 years |
| State | CA |
| Status | Active |
| Formed In | California |
| Standing | |
| Secretary of State | Good |

The Goat Media, LLC

7.14.2024

RE: Cease and Desist

Dear Marc C. Rosen,

This letter formally demands that you immediately cease and desist from further actions, involvements, or communications related to The Goat Media and TGM's projects. This includes false development claims and attempts to misappropriate work, including but not limited to ideas, conceptualizations, methods, stories, formats, blueprints, decks, guides, scripts, bibles, and all IP and materials owned by TGM.

It has come to our attention that despite the closure of your engagement with our business, you have continued to engage in activities that involve our projects and intellectual property. This unauthorized involvement violates our previous agreements and infringes upon The Goat Media's legal rights.

Please be advised that The Goat Media reserves all rights and remedies. Continued disregard for this cease-and-desist notice will compel us to take appropriate legal actions to protect our interests.

We expect your immediate compliance with this notice and demand that you confirm in writing within seven (7) days from the date above that you will refrain from further involvement with our slate of projects and materials.

Please forward all updates regarding projects on the market to me so we can determine the best course of action, including but not limited to your engagement with potential partners per our understanding of your "Producer Duties."

We hope you will cooperate in this matter. Thank you in advance for the prompt response.

Sincerely,

John Huntsman
The Goat Media
310.745.0257

JOHN T. PAUTSCH
THE G.O.A.T. MEDIA, LLC
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212

NOTICE TO PRESERVE EVIDENCE

July 30, 2026

The Nord Group LLP
1925 Century Park East, Suite 1700
Los Angeles, CA 90067

VIA EMAIL: Ryan Nord — ryan@thenordgroup.com

Re: Marc Charles Rosen

Dear Ryan Nord:

I, John T. Pautsch (known professionally as "Huntsman"), write individually and on behalf of THE G.O.A.T. MEDIA, LLC ("TGM") to place your client, Marc Charles Rosen, individually, including his personal accounts and devices and any name, entity, or account through which he has conducted or held himself out in business (including the name "RosenRosen Productions"), on formal notice to preserve all documents, communications, and electronically stored information ("ESI") relevant to pending and reasonably anticipated litigation concerning the receipt, handling, evaluation, routing, use, disclosure, and disposition (or non-disposition) of creative materials and related professional services.

Nothing in this notice characterizes, allocates, concedes, or limits authorship, ownership, beneficial interest, claimant status, agency, assignment, or the allocation of any right between John T. Pautsch and THE G.O.A.T. MEDIA, LLC. Each category is asserted by the person or entity to which it pertains.

Receipt of this notice places your client on actual notice that the identified information may be relevant to pending litigation and to litigation that is reasonably anticipated, and that the categories identified below may contain relevant evidence requiring preservation. This obligation exists independent of any subpoena or formal discovery request and continues until the pending and reasonably anticipated matters have concluded. The loss, destruction, alteration, concealment, or failure to preserve responsive information after receipt of this notice may constitute spoliation and may carry evidentiary or other consequences under applicable law.

**1. Scope of Preservation**

Preserve all documents, communications, and ESI, in whatever form and wherever located, within your client's possession, custody, or control, that refer or relate to any of the following, together with all records of origin, receipt, access, handling, routing, review, and disposition:

**(a)** John T. Pautsch or TGM, under any name or professional designation (including "Huntsman"), to the extent concerning the submitted materials, related services, contemplated or actual professional relationships, or the matters described in this notice;

**(b)** any document, communication, email, text or messaging-platform message, screenshot, recording, calendar entry, note, evaluation, draft, attachment, forwarded communication, shared link, metadata,

audit log, access log, CRM or document-management entry, or other ESI concerning Mr. Pautsch, TGM, or "Huntsman," or the submitted materials, related services, or contemplated or actual business relationships, or any receipt, review, handling, circulation, use, disclosure, retention, or disposition of those materials or services;

**(c)** all materials submitted or transmitted by or on behalf of Mr. Pautsch or TGM on or after April 1, 2020 — including scripts, treatments, concepts, decks, format documents, bibles, videos, guides, and supporting materials — together with all records of their receipt, evaluation, circulation, disposition, referral, return, rejection, or the absence of any disposition;

**(d)** any decision whether to represent, sign, submit, package, develop, finance, or otherwise work with Mr. Pautsch, TGM, or their materials, and the reasons for any such decision;

**(e)** any disclosure, transmission, distribution, submission, or use of the materials or related services, in whole or in part, directly or through any intermediary, to or by any person or entity — including the complete transmission record of any such communication (all sender and recipient fields, including "to," "cc," and "bcc" recipients, together with associated metadata, send logs, and delivery records) — and any project, transaction, submission, strategy, or development activity that incorporates, references, derives from, was informed by, or otherwise used the materials, concepts, services, relationships, strategies, market intelligence, or information obtained through them;

**(f)** any communication, meeting, call, or correspondence with Village Roadshow Entertainment Group or Vine Alternative Investments (or any of their current or former officers, employees, agents, affiliates, or representatives) concerning Mr. Pautsch, TGM, the submitted materials, Mr. Rosen's authority or relationship with respect to those materials, or the receipt, routing, handling, or disposition of those materials.

**2. Forms of Material Covered**

This obligation applies to all formats, whether business or personal, including email; text messages; messaging applications (including WhatsApp, Signal, Telegram, Slack, and similar platforms, including disappearing or ephemeral communications); social-media direct messages; calendar entries; telephone call logs; voicemails; audio or video recordings; handwritten or electronic notes; drafts; version histories; metadata; cloud storage; backup media; and all data stored on computers, mobile devices, external storage, servers, or third-party services, including iCloud, Google, and Dropbox.

**3. Persons and Accounts Covered**

This notice applies to your client, Marc Charles Rosen, individually, including his personal accounts and devices and any name, entity, or account through which he has conducted or held himself out in business (including the name "RosenRosen Productions"), and persons or entities acting on his behalf, under his direction, or within his legal or practical control. It also applies to responsive information held by current or former personnel, contractors, agents, or service providers to the extent that such information remains within your client's possession, custody, or control, or can reasonably be secured through existing rights or relationships. It applies to every account, device, storage location, and information system, whether used for business or personal purposes, containing responsive information.

**4. Time Period**

April 1, 2020 through the present, on a continuing basis.

**5. Required Preservation Steps**

Immediately suspend any routine deletion, destruction, overwriting, auto-purge, expiration, or other disposition process to the extent it may affect responsive material. Disable any automatic deletion or disappearing-message feature as it relates to responsive communications. Do not delete, edit, alter, overwrite, "unsend," or otherwise modify responsive information. Do not discard, wipe, reset, or repurpose any device containing responsive material unless its contents have first been fully preserved. Preserve native files together with all associated metadata. Preserve audit logs, access logs, and document version histories where available. Preserve backup, archival, and disaster-recovery sources reasonably likely to contain unique responsive information not available from active systems or other preserved sources. Where doubt exists, preserve.

**6. Privilege**

Nothing in this notice requests the present production of privileged, work-product, or otherwise legally protected material. Such material must nevertheless be preserved, and preservation does not constitute a waiver of any applicable protection.

**7. Confirmation**

Within fourteen (14) days, please confirm on your client's behalf that reasonable preservation measures have been implemented. If you believe any category is materially overbroad or unclear, please identify the specific category and basis promptly so that the issue may be addressed without risking the loss of potentially responsive information.

**8. Reservation of Rights**

This letter is a preservation notice only. It requests no production at this time and asserts no characterization of liability. Nothing in this notice waives, limits, or prejudices any right, claim, remedy, or position of Mr. Pautsch or TGM, in any capacity or forum. All rights are expressly reserved.

Respectfully,

/s/ John T. Pautsch

John T. Pautsch
Individually and as Managing Member of THE G.O.A.T. MEDIA, LLC

## OAKTREECAPITAL.COM — July 2018 — present

Steve Mosko company profile — Sony, "for which he remains a consultant."

OAKTREE About ⌄ Performance Portfolio ⌄ Insights Resources ⌄ GET STARTED

# Steve Mosko

**Independent Director**

Mr. Mosko has been a Director and has served as a member of the Audit Committee of OSI II since July 2018. Since October 2018, Mr. Mosko has served as Chief Executive Officer of Village Roadshow Entertainment Group. Mr. Mosko formerly served as Chair of Sony Pictures Television, for which he remains a consultant. Mr. Mosko also served as the President of Sony Pictures' U.S. Television operation, Executive Vice President of Sales for Sony Pictures Television and Vice President of the Western Region for Columbia TriStar Television Distribution.

Before joining Sony Pictures, Mr. Mosko held earlier career positions as Local Sales Manager of NBC affiliate WMAR-TV in Baltimore, and in Philadelphia as General Sales Manager of WTAF-TV and Vice President and Station Manager of WPHL-TV. Mr. Mosko has served as Chairman of the National Association of Television Program Executives; Chairman of the Academy of Television Arts & Sciences Foundation; Director of Game Show Network, LLC and Game Show Network; Director of The Advertising Council, Inc.; member of the Board of Directors for the Celine Cousteau Film Fellowship; Member of the Executive Committee of the Los Angeles Board of Governors of The Paley Museum; Member of the National Board of Junior Achievement; Member of the Executive Board of the UCLA School of Theater, Film and Television; Director at Loyola Marymount University, Los Angeles; Member of the Philadelphia Police Department's Drug Advisory Council; and President of the Philadelphia Ad Club.

Mr. Mosko received his Bachelor of Arts in Communications from the University of Delaware. Mr. Mosko also received honorary degrees from Loyola Marymount University, Chapman University and the University of Delaware.

# STEVE MOSKO — SEC — FORM 3 — October 2, 2018

SEC Form 3

**FORM 3**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES**

OMB APPROVAL
OMB Number:
Estimated average burden
hours per response:

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| | | | |
|---|---|---|---|
| 1. Name and Address of Reporting Person* <br> Mosko Steve <br> (Last) (First) (Middle) <br> C/O OAKTREE STRATEGIC INCOME II, INC <br> 333 SOUTH GRAND AVENUE, 28TH FLOOR <br> (Street) <br> LOS ANGELES CA 90071 <br> (City) (State) (Zip) | 2. Date of Event Requiring Statement (Month/Day/Year) <br> 10/02/2018 | 3. Issuer Name and Ticker or Trading Symbol <br> Oaktree Strategic Income II, Inc. [ NONE ] <br> 4. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br> X Director / 10% Owner <br> Officer (give title below) / Other (specify below) | 5. If Amendment, Date of Original Filed (Month/Day/Year) <br> 6. Individual or Joint/Group Filing (Check Applicable Line) <br> X Form filed by One Reporting Person <br> Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Beneficially Owned**

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|

**Table II - Derivative Securities Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

**Explanation of Responses:**

**Remarks:**

**No securities are beneficially owned.**

/s/ Mary Gallegly, as attorney-in-fact — 10/02/2018
** Signature of Reporting Person — Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 5 (b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

# REPORTING PERSON

OAKTREE ABOUT STRATEGIES RESPONSIBILITY INSIGHTS Investors Careers Contact Us Login

BACK



# Mary Gallegly

**Managing Director**

Ms. Gallegly is the General Counsel and Secretary of Oaktree's managed BDCs, Oaktree Specialty Lending Corporation, Oaktree Strategic Credit Fund and Oaktree Strategic Income II. Ms. Gallegly joined Oaktree in 2014. Prior thereto, Ms. Gallegly was as a finance attorney at O'Melveny & Myers LLP. She graduated *magna cum laude* with a B.S. in business administration along with an emphasis in statistics from California State University, Northridge. She then went on to receive a J.D. *cum laude* from Loyola Law School, where she was a Presidential Scholar and a Sayre MacNeil Scholar. Ms. Gallegly was an editor for the *Loyola of Los Angeles Law Review* and was a member of the Order of the Coif. She is a member of the State Bar of California.

# MARKET ACTIVITY — CEO OF VREG — MOSKO — October 25, 2018

GOT A TIP? The Hollywood Reporter NEWSLETTERS SUBSCRIBE

NEWS FILM TV MUSIC AWARDS LIFESTYLE BUSINESS INTERNATIONAL AI COVERS CHARTS LISTS VIDEO

> GENERAL NEWS

## Steve Mosko Named Village Roadshow CEO

Former Sony Television Pictures chairman Steve Mosko has been named CEO of Village Roadshow.

BY PAMELA MCCLINTOCK OCTOBER 25, 2018 11:42AM

Sections Los Angeles Times SUBSCRIBE LOG IN

HOLLYWOOD INC

## Former Sony TV boss Steve Mosko joins Village Roadshow as CEO



Former Sony Pictures Television head Steve Mosko is joining Village Roadshow Entertainment as its CEO. (Jason Kempin / Getty Images)

By Ryan Faughnder
Staff Writer | X Follow

Oct. 25, 2018 1:40 PM PT

Veteran television executive Steve Mosko is joining film production company and financier Village Roadshow Entertainment as its chief executive, the company said Thursday.

# STEVE MOSKO — SEC — FORM 3 — February 2, 2022

SEC Form 3

**FORM 3**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

OMB APPROVAL
OMB Number
Estimated average burden
hours per response

| | | |
|---|---|---|
| 1. Name and Address of Reporting Person*<br>Mosko Steve<br>(Last) (First) (Middle)<br>C/O OAKTREE STRATEGIC INCOME II, INC<br>333 SOUTH GRAND AVENUE, 28TH FLOOR<br>(Street)<br>LOS ANGELES CA 90071<br>(City) (State) (Zip) | 2. Date of Event Requiring Statement (Month/Day/Year)<br>10/02/2018 | 3. Issuer Name and Ticker or Trading Symbol<br>Oaktree Strategic Income II, Inc. [ NONE ]<br>4. Relationship of Reporting Person(s) to Issuer (Check all applicable)<br>X Director / 10% Owner / Officer (give title below) / Other (specify below)<br>5. If Amendment, Date of Original Filed (Month/Day/Year)<br>6. Individual or Joint/Group Filing (Check Applicable Line)<br>X Form filed by One Reporting Person<br>Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Beneficially Owned**

| 1. Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|

**Table II - Derivative Securities Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 4) | 2. Date Exercisable and Expiration Date (Month/Day/Year) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

**Explanation of Responses:**

**Remarks:**

**No securities are beneficially owned.**

/s/ Mary Gallegly, as attorney-in-fact — 10/02/2018
** Signature of Reporting Person — Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.
* If the form is filed by more than one reporting person, see Instruction 5 (b)(v).
** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).
Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.
**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

# REPORTING PERSON

OAKTREE **ABOUT** **STRATEGIES** **RESPONSIBILITY** **INSIGHTS** Investors Careers Contact Us Login

**BACK**



# Mary Gallegly

Managing Director

Ms. Gallegly is the General Counsel and Secretary of Oaktree's managed BDCs, Oaktree Specialty Lending Corporation, Oaktree Strategic Credit Fund and Oaktree Strategic Income II. Ms. Gallegly joined Oaktree in 2014. Prior thereto, Ms. Gallegly was as a finance attorney at O'Melveny & Myers LLP. She graduated *magna cum laude* with a B.S. in business administration along with an emphasis in statistics from California State University, Northridge. She then went on to receive a J.D. *cum laude* from Loyola Law School, where she was a Presidential Scholar and a Sayre MacNeil Scholar. Ms. Gallegly was an editor for the *Loyola of Los Angeles Law Review* and was a member of the Order of the Coif. She is a member of the State Bar of California.

**OAKTREE x RADIAL ENTERTAINMENT — July 1, 2025**

www.streamingmedia.com — OAKTREE CAPITAL MANAGEMENT L.P.

July 1, 2025
Online Video News

## Radial Entertainment Formed by Oaktree Through Merger of Shout! Studios and FilmRise

Radial
ENTERTAINMENT

Funds managed by Oaktree Capital Management, L.P. ("Oaktree") have acquired FilmRise, a leading independent digital streaming content distributor, and merged it with existing portfolio company Shout! Studios, one of the industry's pre-eminent independent film and television distributors. The combined company, Radial Entertainment (stylized as "Radial"), is a premier, global content distribution platform boasting a diverse library of 70,000 movies and episodes, one of the largest independent catalogs in the industry.

Garson Foos, CEO and Co-founder of Shout! Studios, will become CEO of Radial Entertainment and Danny Fisher, CEO and Co-founder of FilmRise, will become Executive Chairman.

Radial Entertainment has been created through a merger of strong industrial logic, where each business brings

**RADIAL ENT. x STEVE MOSKO — March 25, 2026**

---

Got a Tip? Newsletters U.S. Edition

VARIETY

---

Home > TV > News

Mar 25, 2026 6:00am PT

# Former Sony TV Chair, Village Roadshow CEO Steve Mosko Joins Board of Radial Entertainment (EXCLUSIVE)

By Michael Schneider

## Former Sony Pictures Television Chair Steve Mosko Joins Radial Entertainment Board of Directors

THOMAS K. ARNOLD

March 25, 2026

Radial Entertainment on March 25 announced that longtime industry leader Steve Mosko, a former chair of Sony Pictures Television and CEO of Village Roadshow Entertainment Group, has joined the company's board of directors.

Mosko is currently CEO of Triarc Entertainment, an independent production and media company focused on developing, producing, and financing content across all genres. He previously served as CEO of Village Roadshow Entertainment Group (VREG) from 2018 to 2024.



# Massachusetts Office of Consumer Affairs and Business Regulation
# 2026 Data Breach Notification Report
# Radial Entertainment, Breach No. 2026-696

**68 of 139**

**MAURA T. HEALEY**
GOVERNOR

**KIMBERLEY DRISCOLL**
LIEUTENANT GOVERNOR

**COMMONWEALTH OF MASSACHUSETTS**
**Office of Consumer Affairs and Business Regulation**
1 Federal Street, Suite 720, Boston MA 02110-2012
(617) 973-8700
mass.gov/consumer

**ERIC PALEY**
SECRETARY OF ECONOMIC DEVELOPMENT

**LAYLA R. D'EMILIA**
UNDERSECRETARY

2026 Data Breach Notification Report
The total number of breaches affecting residents: 1,893,291

| Breach Number | Date Reported To OCA | Reporting Organization Name | Reporting Organization Type | MA Residents Affected | SSN Breached | Medical Records Breached | Financial Account Breached | Drivers Licenses Breached | Credit/Debit Numbers Breached |
|---|---|---|---|---|---|---|---|---|---|
| 2026-695 | 05-May-26 | [illegible] Williams, LLP | Other | 26 | Yes | Yes | Yes | No | No |
| 2026-696 | 05-May-26 | Radial Entertainment | Entertainment | 2 | Yes | No | No | No | No |
| 2026-697 | 05-May-26 | Massachusetts Mutual Life Insurance Company | Financial Services Company | [illegible] | Yes | Yes | Yes | No | No |
| 2026-698 | 05-May-26 | Hy LaBonne & Sons, Inc. | Retail | 67 | Yes | No | No | No | No |
| 2026-699 | 05-May-26 | Lincoln Retirement Services Company, LLC | Financial Services Company | 1 | Yes | No | Yes | No | No |
| 2026-700 | 05-May-26 | Equitable Bancorp MHC | Financial Services Company | 53 | No | No | Yes | No | No |
| 2026-701 | 05-May-26 | Mitchell County | State Government | 15 | Yes | Yes | Yes | No | Yes |
| 2026-702 | 05-May-26 | Diamond Chemical Co, LLC | Manufacturing | 5 | Yes | No | No | No | No |
| 2026-703 | 06-May-26 | Suncoast One Title & Closings, Inc. | Financial Services Company | 1 | Yes | No | Yes | No | No |
| 2026-704 | 06-May-26 | Travelopia Group Holdings Limited | Other | 14 | Yes | No | Yes | Yes | No |

**DisclosureLens — Radial Entertainment Disclosure History**
**Maine and Massachusetts Attorney General Filings**



[redacted]

**RADIAL ENT. x STEVE MOSKO — March 25, 2026**

Got a Tip? Newsletters U.S. Edition

VARIETY



Mar 25 2026 6:00am PT

# Former Sony TV Chair, Village Roadshow CEO Steve Mosko Joins Board of Radial Entertainment (EXCLUSIVE)

By Michael Schneider

## Former Sony Pictures Television Chair Steve Mosko Joins Radial Entertainment Board of Directors

THOMAS K. ARNOLD

March 25, 2026

Radial Entertainment on March 25 announced that longtime industry leader Steve Mosko, a former chair of Sony Pictures Television and CEO of Village Roadshow Entertainment Group, has joined the company's board of directors.

Mosko is currently CEO of Triarc Entertainment, an independent production and media company focused on developing, producing, and financing content across all genres. He previously served as CEO of Village Roadshow Entertainment Group (VREG) from 2018 to 2024.



# EXHIBIT C

## MARC ROSEN — PUBLIC RESUME — TALENT AGENCY WEBSITE — 4/29/2026

**https://www.macfarlane-chard.co.uk/producers/**

**https://www.macfarlane-chard.co.uk/marc-rosen/**

MacFarlaneChard
Associates Limited
Literary & Talent Agents

Agent: Peter MacFarlane

# Marc Rosen

## Producer

Marc is currently producing a slate that includes films with Peter Dinklage (THE DWARF - a thriller, based on the Nobel Prize winning novel) to a franchise (666) based on the only other book written by THE AMITYVILLE HORROR author, and others. And on the TV side, he is working with Tim Minear on Robert Heinlein's scifi classic THE MOON IS A HARSH MISTRESS at Hulu/20th, as well as Mariel Hemingway, Laure de Clermont Tonnerre and Akiva Goldsman on Ernest Hemingway's A MOVEABLE FEAST, and CENTURIONS based on the 18-book international best sellers. He's also producing a comedy series called WELCOME STAMP with Stephanie Allain, and a series with Nick Frost & Simon Pegg, in which Nick is starring with Daveed Diggs. And an authentic skate series (PAPER) with legendary skater Steve Berra, as well as a troubled teen industry thriller (CAN YOU HEAR ME?) with an Allan Loeb protege....

Previously, with SENSE8 on Netflix, as well as NASH BRIDGES for Peacock recently, and films including SOPHIE and HOW TO LOSE A GUY IN 10 DAYS Marc has executive produced over 60 hours of film and high- end ($4-$8mn/episode) scripted content from THRESHOLD with David Goyer (BATMAN BEGINS, MAN OF STEEL, CONSTANTINE), Brannon Braga (SALEM), and David Heyman (HARRY POTTER, GRAVITY), to SENSE8, one of Netflix's first original series, with the Wachowski's(THE MATRIX), to THE AFTER pilot with Chris Carter (X- FILES) and Amazon.

Marc has also been under exclusive producing deals with Warner Brothers (TimeWarner), CBS (Viacom), Paramount (Viacom), and 20th Century Fox, and made series and films for Netflix, Amazon, Paramount, CBS, and others.

From 2019-2023, Marc was an in-house Producer in Film and TV at Village Roadshow, and helped write the business plan for the studio, after Vine Alternative Investments purchased it, developing Village's first television production – NASH BRIDGES – ever, among a slate of other IP, including THE NOVEMBER MAN with Pierce Brosnan.

From 2017-2019, Marc was an executive consultant for Vine Alternative Investments, a $750mn fund out of New York that seeks strategic investments in entertainment, tech, IP libraries, international networks (SKY, BBC, etc.) and Sports Teams.

From 2012-2017, Marc was the Founder and C.E.O of Georgeville Television with Reliance Entertainment – the proprietors of Steven Spielberg's Amblin and Dreamworks. During GVTV's run, Marc set up 10 Series including SENSE8 (Wachowski's/Netflix) and THE AFTER (Chris Carter/Amazon), and several others. Marc was the lead creative on all projects for GVTV, as well as the C.E.O., overseeing everything from project development and sales, to business affairs, global strategy, and a staff of 20. GVTV financed over $200mn of scripted series for streamers, networks, and international co-productions.

Prior to GVTV, he had exclusive producing deals in Film and Television - with Paramount Film and CBS TV respectively – through his RosenObst Productions, with Lynda Obst

MacFarlane Chard Associates, Kings Cross Business Centre,
180-186 Kings Cross Road, London, WC1X 9DE
T: +44 020 7636 7750
www.macfarlane-chard.co.uk

MacFarlaneChard
Associates Limited
Literary & Talent Agents

(INTERSTELLAR, HOT IN CLEVELAND, SLEEPLESS IN SEATTLE, CONTACT, HOW TO LOSE A GUY IN 10 DAYS) from 2007-2010.

Leading up to those deals, from 2001-2007, Rosen was the founding Senior Executive of the Los Angeles Warner Brothers offices of HEYDAY FILMS/David Heyman (BARBIE, PADDINGTON, HARRY POTTER Franchise, GRAVITY). During his tenure, he worked on films with Christopher Nolan (DARK KNIGHT, INCEPTION, INTERSTELLAR), Jonah Nolan (WESTWORLD), David Goyer (FOUNDATION), and founded the company's then television division - Heyday Television, based at Warner Brothers - on the heels of his 13-episode series THRESHOLD (Peter Dinklage, Carla Cugino) for CBS. Marc also got Heyday's first non-POTTER movie – DIONAEA HOUSE – greenlit.

**EMPLOYMENT**

**Village Roadshow - 2019-2023**
-In-House Producer.

**Vine Alternative Investments - 2017-2019**
-Executing Consultant for $750mn fund.
-Sourced and Oversaw transactions in entertainment sector.
-Executed business plan for Village Roadshow, studio purchased by Vine.

**Georgeville Television - 2011-2017**
-Founder, C.E.O.
-Set up 10 series in 18 months.
-$200mn+ in Production Finance & International Sales.

**SOPHIE (film) – 2010-2011**
-Producer.
-Raised financing and was lead Producer on family film in Toronto.

**RosenObst Productions – 2007-2010**
-Founder and Partner-Exclusive Film deal at Paramount Pictures, exclusive TV deal at CBS Studios.
-Sold 19 Series and 5 Films.

**Heyday Films (HARRY POTTER) – 2002-2007**
-Senior Executive, Los Angeles-First non-POTTER movie greenlit (THE DIONAEA HOUSE by Eric Heisserer).
-Developed and Executive Produced series THRESHOLD (Peter Dinklage, Carla Gugino)/CBS.
-Won 3-year overall TV Deal and for Heyday TV based on work on THRESHOLD.

**Lynda Obst Productions (INTERSTELLAR, HOW TO LOSE A GUY IN 10 DAYS) - 1998-2001**
-Executive Vice President.

**Senator Dianne Feinstein**
- 1995-Staff Assistant.

**EDUCATION**

**Princeton University – 1994-1998**
-Graduated with Honors as an English Lit major, with minors in Theatre and French in 1998.

**NYU Tisch School of the Arts - 1997**
-Minor in Film Direction and Production.

**EXHIBIT E**

**From the VREG bankruptcy proceedings' evidentiary record supporting Claims 16 and 17.**

## K-7 — KEVIN BERG — STATEMENT — June 26, 2025

VREG general counsel's statement on Rosen.


KB Kevin P. Berg

RE: Follow-up: VREG BK, Rosen. & Resolution

KEVIN P. BERG

Village Roadshow Entertainment Group USA Inc.

## VREG x ROSEN — THE BUSINESS OF DATING — March 9, 2022

After first submission of THE BUSINESS OF DATING, Rosen requests updated materials for VREG's Shannon Perry to review. (Through his personal email)

### EXHIBIT G

Snapshot of Biz of Dating Email.



## VREG BK — HEARING TRANSCRIPT — [D.I. 1323] — January 30, 2026

Debtors represented to the Bankruptcy Court that Marc Rosen's "first look" executive producer agreement with Village expired in February 2022.

### EXHIBIT H

January 30, 2026 hearing transcript. Relevant statements include:

---

"Mr. Rosen was an independent consultant who provided producing services to the debtors pursuant to what's referred to as a first look at non-writing executive producer agreement. And that agreement expired in February of 2022."

"To be clear, Mr. Rosen was never directly employed by the debtors and never had any authority to bind the debtors to any legal obligations in this capacity as an independent consultant."

---

# EXHIBIT F

## HEARING TRANSCRIPT

**January 30, 2026 Hearing Transcript, page 5 (lines 13–24): Debtors state Rosen's first-look agreement expired February 2022 and describe the scope of that arrangement.**

Critically, Your Honor, Mr. Rosen was an independent consultant who provided producing services to the debtors pursuant to what's referred to as a first look at non-writing executive producer agreement. And that agreement expired in February of 2022.

In the entertainment industry, a first look agreement generally describes a contractual arrangement where a producer, writer, director, other creative talent agrees to give a studio or production company a right of first refusal to consent on any project, projects, ideas, scripts, intellectual property that they develop during the term of the agreement.

## VREG BK — EVIDENCE RECORD — M-39 AT 239

EMAIL: TGM/Pautsch sends update on time and labor for development and services provided (22 months —12,190 hours) with slate breakdown to VREG's Rosen, including The Dating Business.

### M-39 — CLAIMANT POSITION — September 14, 2021

**From:** The G.O.A.T. Media [redacted]
**Sent:** Tuesday, September 14, 2021 6:49 PM
**To:** Marc Rosen [redacted]@[redacted] Marc Rosen <Marc.Rosen@vreg.com>
**Cc:** [redacted]
**Subject:** GOAT Slate (update 9.14.21)

Marc — below is a breakdown of each property with questions, notes, and talking points. This should help us organize and breeze through a call.

— 22 Months / 12,190 total hours (as of this week)[redacted]

The Great Debate (VREG):

- Pitch Video
- Series Guide (updated)
- Episode Script (updated)
- Call with Shannon Friday 9/17.
- [redacted] role of Showrunner w/tech oversight.
- Steps after Shannon call?

The G.O.A.T. (VREG):

- Pitch Video
- Series Guide (updated)
- Script
- Character Development
- Trademarks
- thegoat.com
- Did we get Judy Moody slip + ?!
- [redacted] role of Showrunner.
- Next Steps?
- Potential series plan: every season, Billy gets older -[redacted]

It's Dark Inside:

- LLC
- itsdarkinside.com
- Series Guide w/Franchise plan (updated)
- Script: Merry Christmas to Me (Bates)
- Script: Strike A Pose (Zyla)
- Script: Confessions (Fury)
- Script: Goldmine (Goldmine)
- Intro Music: Bates & Goldmine
- Marc read Confessions + Goldmine ?
- Marc skims through Bates (7th draft)?
- Marc skims through updated Series Guide?
- Submission plan?
- [redacted] role of Showrunner.

The Sound of Music: Animated Remake:

- Pitch Document
- Robert Wise's (original director)[redacted] more of a rogers and Hammerstein rights deal.
- Family letter of recommendation?
- Should I update pitch doc with technology breakdown and plan? (the actors rehearsing the play wear technology suits for the motion of animating characters? This may be the most efficient and cost effective way to produce it.)
- [redacted] role of Showrunner.

2222: Forever After (Feature):

- Pitch Document
- Next steps?

The Dating Business (reality game show) :

- Pitch Document w/format
- Shannon Review?
- Next Steps?

The Match Bad Little 9 (Reality) :

- Pitch Document
- Shannon Review?
- Next Steps?

Old Glory (Feature or MEGA-Doc) :

- Series Guide (updated)
- Screenplay (4th draft complete)
- History Channel (possible)
- [redacted]

Hackers (Feature)

- Pitch Document

## VREG x TUBI — MAJOR FILM DEAL — December 2021

Village and Tubi execute deal. End of Year Two (2) of Village Roadshow Entertainment Group's engagement with TGM and Pautsch's IP, materials, and services.

### EXHIBIT L

Snapshot of search covering deal between Village and Tubi.





## TBD — HOST: BILL BURR — July 25, 2023

Pautsch provides packaging strategy involving Bill Burr and corresponding representation and contact data to Rosen.

## EXHIBIT I

Snapshot of Biz of Dating and Host engagement email.



Note concerning VREG Bankruptcy and claim status — TGM as an entity claim filer and Pautsch's rights: see signature.

## THE BUSINESS OF DATING — WME — BILL BURR — August 16, 2023

(THE DATING BUSINESS) Email from Rosen transmitting project materials to WME representation for Bill Burr for packaging and talent attachment purposes.

## EXHIBIT J

Snapshot of Biz of Dating and Host engagement email.


---------- Forwarded message ---------
From: [illegible]
Date: [illegible] Jul 27, 2023 at 4:27 PM
Subject: Bill Burr - The Dating Business
To: [illegible]
Cc: [illegible]

Hi TJ

So nice to connect with you - thanks for the [illegible]

As mentioned, I am working on a [illegible] with The G.O.A.T. Media, and [illegible] came up with this fun idea [illegible]
[illegible] THE DATING GAME [illegible]
[illegible] approaches to the art of [illegible]

The [illegible] reality TV concept [illegible]
the power of [illegible] I have attached a copy of [illegible] deck and
pitch for you and Bill. We would be thrilled to partner with him and his company
and we're totally collaborative about any thoughts on the deck and show.

As people well-versed in dating and technology, we understand the [illegible]
finding a compatible partner [illegible]
process. We have developed [illegible]
[illegible] key data points upfront for singles and [illegible]

## TV: WHY ARE YOU SINGLE? — ALL THINGS COMEDY — May 4, 2026

Dating format and game show utilizing "red flags / green flags" mechanics and audience participation to evaluate singles' dating history, behavioral patterns, and match performance.

Derivative use associated with concepts and formats developed under the working titles THE DATING BUSINESS, THE BUSINESS OF DATING, RED FLAGS–GREEN FLAGS, and FLAW&ORDER, created, developed, and packaged by Pautsch, then submitted through Village Roadshow Entertainment Group infrastructure in 2021, with continued development access through Debtors' agent Marc Rosen.

EVIDENCE RECORD: Section VIII.-A at page 325. Additional records available, including original development materials spanning creation through present day—for all projects.

## EXHIBIT D

Deadline article by Matt Grobar.

HOME / TV / NEWS

# Tubi Picks Up Dating Game Show 'Why Are You Single?' From Marie Faustin, Dave Mizzoni & All Things Comedy

By Matt Grobar
May 4, 2026 9:06am

f
X
G
+



Marie Faustin

**Trending on Deadline**

1 / Maggie Kang On Why Paying Homage To Her

**EXCLUSIVE:** Tubi has picked up the first season of *Why Are You Single?*, a dating game show hosted by comedian Marie Faustin, which she co-created and exec produces alongside Dave Mizzoni, with All Things Comedy as studio partner.

In each episode of the show, streaming for free on Tubi later this year, Faustin introduces a hero single dater while seeking to answer the rhetorical question, "why are you single?". Joining our single are four potential suitors, who each unveil their dating history, as well. As the contestants' dating past unravels, Faustin and the live audience hand out red flags that force our dater to decide which contestant is worth the baggage.

# TV: WHY ARE YOU SINGLE? — IMDB — May 20, 2026

## EXHIBIT E

IMDB website — project data.

**Contacts** + Add

**Production Company**

All Things Comedy
allthingscomedy.com
818-568-1288 phone
contact@allthingscomedy.com
1015 W Isabel St
Burbank, CA 91506
USA
See map (bing.com)

**Distributor**

Tubi

See all company credits (2)

Cast | Filmmakers | Images | Videos | Details | Episodes | Companies | News

## Companies

2 companies

| Production Companies (1) | | | Contact |
|---|---|---|---|
| All Things Comedy [US] - Production company<br>Branch: Los Angeles, CA | | | allthingscomedy.com<br>818-568-1288 phone<br>contact@allthingscomedy.com |

| Distributor (1) | Dist. Region | Format | Contact |
|---|---|---|---|
| Tubi [US] - (2026) (VOD) | United States | Video | |

**Contacts** + Add

**Production Company**

All Things Comedy
allthingscomedy.com
818-568-1288 phone
contact@allthingscomedy.com
1015 W Isabel St
Burbank, CA 91506
USA
See map (bing.com)

**Distributor**

Tubi

See all company credits (2)

Cast | Filmmakers | Images | Videos | Details | Episodes | Companies | News

## Companies

2 companies

| Production Companies (1) | | | Contact |
|---|---|---|---|
| All Things Comedy [US] - Production company<br>Branch: Los Angeles, CA | | | allthingscomedy.com<br>818-568-1288 phone<br>contact@allthingscomedy.com |

| Distributor (1) | Dist. Region | Format | Contact |
|---|---|---|---|
| Tubi [US] - (2026) (VOD) | United States | Video | |

## All Things Comedy [US]

Distributor, Production, Distributor COMPANYmeter 1,700

Edit company

**Staff** >

| Name | Role | Location | Meter |
|---|---|---|---|
| **Bill Burr (I)** | Executive | Los Angeles, CA | 3.8K |
| **Al Madrigal** | Executive | | 34K |
| **Billy Rosenberg** | Executive | | 122K |
| **Mike Bertolina (I)** | Executive | Los Angeles, CA | 289K |

**All staff** >

**Contacts** Edit

LOS ANGELES, CA

allthingscomedy.com
818-568-1288
contact@allthingscomedy.com
1015 W Isabel St, Burbank, 91506, CA, USA

## TV: WHY ARE YOU SINGLE? — TUBI — May 4, 2026

## EXHIBIT F

Search snapshot of Tubi x WHY ARE YOU SINGLE?



# M-85 — ASSERTIONS & ADMISSIONS — March 9, 2023

**Re: Marc Rosen Loan Update (Feb '23)**

M

From Marc Rosen [redacted] 3/9/23 3:13 PM
≥
To John [redacted]
Cc [redacted]

Wow.....Misunderstandings abound in the below, I am gobsmacked:

Yes, I won a fight with Village - but it was a back-end win, the difference between $900k and nothing - and it doesn't pay until a season goes.

Then I make real back-end money.....but they changed the deal so the upfront money I have a right to (happy to show contracts) got ripped away as a result.

Not sure to whom you are speaking, but Village has a shoddy reputation and is for sale right now. For Sale! By Vine. With whom I deal with the Board of Directors.

They are not a big corporation - I have no problem making deals with proper studios and platforms that stick, and now have one mediocre one closed with Village. Happy to refer you to real sources if you want to discuss.

I have been clear with you several times about not focusing on them alone. I no longer have a deal with them, which allows me more liberty with submissions outside of their ecosystem. And they passed on all of your stuff anyway. And were offended by the version of IDI they read. I have been very clear.

Your material has been submitted to parties beyond Village (Seth MacFarlane, David Leitch), and everyone had the same IDI reaction and perhaps were even offended; hence the wave of notes before going to a new round.
It didn't make the cut. It wasn't good enough.
You won't listen to me about TGD. That's not my fault for not making progress....the material was rejected. Which is why we have been fixing it and I spend more time on it than almost any other project.

You haven't been played or toyed with, and I don't trust your sources, which mainly seem fringe.

See how others respond to your materials and put as much passion and work into them. It's like we're on different planets about the process. You have a bunch of people blowing sunshine up your ass

*Note: Seth MacFarlane and David Leitch — never mentioned or transmitted before this email.*

75

# M-85 —CONT'D — March 9, 2023

**Re: Marc Rosen Loan Update (Feb '23)**

M From Marc Rosen [redacted] ≥ 3/9/23 3:13 PM
To John Pautsch <john[redacted]
Cc [redacted]

Oh, and I never got a shopping agreement - been waiting 12 months - that has commenced or protected me AT ALL; and I signed your mutual NDA as did you. But all of my work and notes are totally unprotected - wanna talk about unprofessional? Me spending hours of unprotected work?

So go ahead and do what you need to do....I have spent relationship capital exposing your materials, and it hasn't worked out. I even burned a bridge or two. If you never had the intention of a shopping agreement, then that speaks volumes.

Otherwise, I am stuck, and there is nothing I can do except try to make IDI better and figure out how to sell BILLY somewhere despite it not being a real book yet. It's my relationships and my reputation on the line anytime I submit something.

I love you like Family, nothing will ever change that, but you are getting bad advice, based on material that needs work, from lord knows whom. And no one told you to quit your day job. Every up and coming writer I know has a side hustle even when they sell the first two things. I was clear with you 4 months ago that you needed to get [redacted] up and running again so you could do this too, because of market conditions.

Go take it out yourself with the legion of people to whom you are defending me...ha...since you have delayed a shopping agreement, I have no terms or rights. But you cannot use a draft of anything on which I have given notes without me. That's IP. If you can sell Zyla and IDI drafts from a year ago and get Billy done (with people like [redacted] asking you for $$ just to do their job???!!), go for it.

Otherwise, I would consider sacrificing all rights - far more $ than $15k, which is half of my fee for one episode, and a third of my fee for a pilot - and assigning them to you officially. Then we can go our separate ways creatively and hopefully be lifelong friends where you prove actual market reaction wrong.

Or sue me....I have had no control over the conditions of what is happening in general in Hollywood, and the next thing for me to do is focus on making money on all projects for both you and my Family.

76

# M-57 — CLAIMANT POSITION — April 10, 2022

GOAT — IP transmitted for book and television development.

**Fwd: Billy the GOAT (book / TV)**

J

From John CPM
To Marc Rosen [redacted]
Cc The G.O.A.T. Media [redacted]

4/10/22 12:23 AM

2 Attachments are included with this email

Marc – hope your weekend is going well [redacted] is reviewing this as well to see what the hell to do with the manuscript
Attached are:

1. Updated book proposal
a. Trimmed fat, narrowed scope, and completed all tasks from [redacted]
b. Book manuscript is at end of pdf
-- receiving some conflicting information about format
-- feels like it could be developed two ways, shorter and/or longer
-- it's a reduced version of what I had. I applied some editor notes.

2. Updated TV pitch guide
a. adjusted some verbiage and pics geared toward TV
b. Season One: Becoming The GOAT
c. 3D version of Billy is being designed based on the cartoon character in the guides. Should have Monday. Thought it would be fun to see what a 3D modeler could do
d. **I have a screenplay written for this story but it's all dialogue.**

# M-58 — CONFIRMATION — April 10, 2022

**Re: Billy the GOAT (book / TV)**

M

From Marc Rosen [redacted]
To John CPM [redacted]
Cc The G.O.A.T. Media [redacted]

4/10/22 2:29 PM

Don't think we need the TV series one actually. We can add a 'Potential TV Series' section to the end of the book proposal

Book is too long, and some of the language a bit too high-brow. I do think it needs to be cut in half, or maybe 3/4's... but would not stress about it that much.

Formatting of the overall deck - not the images you have chosen - could be slicker/more unified, but I don't think it's worth spending money on doing that. One simple thing you could do is some color (lightly) backwash on the slides that are words against just a white background now.... but it's just like a polish, it's not the end of the world.
(It would be fine to send these as-is and explain it's early days.)

I would use your time today to take a pass at Zyla and flesh out the action/description, as well as a bit of the dialogue. 55 pages is fine. (60 is the norm) And finalizing the IDI deck that goes with it.

And then The Business of Dating... ...

## M-73 — ASSERTIONS & SUBMISSION SCHEDULE — July 17, 2022

On Jul 17, 2022, at 12:33 PM, Marc Rosen [redacted] wrote:

***This is ONLY the first wave.***

***It is a combination of representation, talent, and buyers.***

***Let's get this initial round of feedback before we go wider - need to hear first reactions.......***

**MNGRS (WHOLE SLATE)**
Gotham Group
LIT
Mike Goldberg (agent)
Circle of Confusion
Rachel Arlook (Agent) (haha!! She is lit coordinator plus agent at UTA)

**IDI (Production Co's.)**
Scott Free
Steph Curry
Village Roadshow
Denver & Delilah (Charlize company)
Steven Schneider
Roy Lee (THE RING and 80% of other asian film adaptation for film or series.)

**BILLY**
Nickelodeon?
Candlewick Press
Gotham Group
Chris Nee

*Note: List placement was clarified by phone before and after this email. Steph Curry also pertained to BILLY THE GOAT (GOAT) through Unanimous Media. No outcomes transmitted.*

Reference two years later:

## M-73A — ASSERTIONS & REPRESENTATIONS — July 25, 2024

And then some on BILLY, but a handful.
(BTW, Unanimous never was sent the material as they didn't respond to the logline. I have the email correspondence with them setting a call with Jennelle, but no record of any submissions.)

*Note: Rosen personal email.*

**78**

## M-86 — EXTERNAL PARTNERSHIP — ESCALATION — April 11, 2023

GOAT IP. Rosen communicates beyond Claimant's direct engagement with Director of Development by independently interfacing with a senior executive at Nickelodeon.

Pls keep the below confidential.

It just means that they felt it was too young for what they are trying to achieve with their brand right now.

I agree that you should keep it younger at first, and let kids grow up with it....like PEPPA PIG, and that is a bit younger than what Nick and Nick Jr. do now, from what Eddie is saying..

Netflix Kids, Amazon Kids, and of course Disney+ should be top targets. But there are lots of other players, too...

With an attachment - and it's easy to get movie stars to do animated things because they only work for 1-3 days - so I think we try to attach someone as the voice of Billy, and possibly 1-2 others ASAP.

I think so....and a proven animated, talent-driven company.

---------- Forwarded message ---------
From: [redacted] **Eddie** [redacted]
Date: Tue, Apr 11, 2023 at 3:55 PM
Subject: Re: BILLY THE G.O.A.T. - Book Proposal (for Series)
To: Marc Rosen [redacted]

Hi Marc, Thanks so much for your patience. Am going to pass on this as it skews a bit young but more importantly it skews more earnest and educational than the Nick/Nick Jr brands. We are really hunting for big character-driven laugh out loud comedy. Wishing you all great success with this on both the publishing and media fronts.

Eddie [redacted]
VP, Literary Affairs
[redacted]

*Note: Claimant remains unclear what materials were transmitted. Inconsistencies observed prior, during, and following third-party escalation.*

## J-255 — CLAIMANT POSITION — February 27, 2024 — 2025

Independent claims verification process initiated. Industry-wide outreach. Multiple denials of asserted representations. Non-responses logged.

## J-255a — CLAIMANT POSITION — March 3, 2024

Mega-producer advises Claimant to remove Rosen from Talent Agency-linked project.

## J-256 — MARKET REFERENCE — May 30, 2024

GOAT. Feature film. Sony Pictures Animation / Unanimous Media announcement.




*Note: Release date — February 13, 2026.*

**80**

# EXHIBIT A

## EMAIL — VINE ALT. INVESTMENTS — 8/27/2025

## Moore disclaims any relationship with Marc Charles Rosen.

JM **Jim Moore** 8/27/25
To: John Huntsman >

**RE: VREG Claim**

Hello John,
Unfortunately, I can be of no assistance here. I had no relationship with Marc Rosen, he worked for Mosko in any capacity he had with VREG. Further, the company is under the protection of the bankruptcy court so EVERY resolution of EVERY dispute must go through court through appropriate processes. If you have a claim, feel free to file a proof of claim with the court (if that process is still open). There will be some funds available to unsecured creditors which will be shared ratably among all of the approved claims.

Best of luck,
Jim

James P. Moore
Managing Partner
Vine Alternative Investments Group, LLC
18 Sheldrake Lane
Palm Beach Gardens, FL 33418

C - [redacted]
O - [redacted]

Note: This email responds to John Huntsman (Pautsch)'s request for resolution of conduct arising from Marc Charles Rosen's actions under VREG.

## ROSEN — REPRESENTATION VERIFICATION — February 27, 2024

Additional materials concerning industry verification efforts, representation discrepancies, and related communications appear throughout the evidentiary record, including J-253 and J-254 at page 202, as well as prior supplemental submissions documenting and independently verifying additional false representations.

This verification evidence post-dates Pautsch's February 19, 2024 contract transmission requesting defined duties, transparency, and accountability concerning Rosen, follows the reported February 20, 2024 involvement of Accordion Partners in Village Roadshow Entertainment Group restructuring efforts (D.I. 1542 – 04/13/2026), and precedes Steve Mosko's April 27, 2024 formation filing for Triarc Entertainment & Media Management Inc.

### EXHIBIT M-1

Email verifying industry-wide verification process.

JH **John Huntsman** 2/27/24
To: [redacted] >

Morgan —

Arlene directed me to you. Hope you're doing well.

A producer named MARC ROSEN engaged with us a while back and has been in charge of assisting us with producing projects on our slate. Due to various disconnects, we now have to verify comms to ensure everything is on the up and up.

Last year, he claimed he submitted our psychological thriller competition series SOLITARY to your team, and it was a pass.

Recently, Friday February 23, 2024, he text me that your team had a change of plans and is seriously interested because you want to add something fresh to your portfolio of content.

Is any of this true? Do you know this producer, engaged with him, have SOLITARY in your pipeline, etc.?

Sorry to bother you but at this point we must leave no stone unturned.

Thanks in advance for your prompt response.

### EXHIBIT M-2

Response contradicting Rosen's claimed relationship and submission representations.

ML **Morgan** [redacted] 2/27/24
To: John Huntsman >

Never heard of him.

# EXHIBIT Z

## MISREPRESENTATION VERIFICATION

## February 29, 2024

Rosen claimed he founded Heyday Television and repeatedly invoked purported Harry Potter oversight responsibilities to direct Movant's development process, including GOAT. Movant tested those claims at the source. Principal of Heyday February 29, 2024 response follows.

to

John,

I received your email about Marc Rosen. Marc did work for me. But he was a development executive at the film company, not the television company. And he had absolutely nothing to do with Harry Potter.

Hope that answers your question. If not, please don't hesitate to email again

Additional records further reflect that Heyday Films terminated Rosen for deficient development performance.

**Writers Guild of America West Registry**
7000 West Third Street
Los Angeles, California 90048-4329
Telephone: 323-782-4500
Fax: 323-782-4803

## Client Statement

Client: PAUTSCH, JOHN

Date: 07/22/26

| ITEM | EFF DATE | EXP DATE | MATERIAL TYPE |
|---|---|---|---|
| **Register an Item**<br>Registration # 2325671<br>Title: | 12/31/25 | 12/31/30 | OTHER |
| **Register an Item**<br>Registration # 2325667<br>Title: | 12/31/25 | 12/31/30 | FORMAT |
| **Register an Item**<br>Registration # 2325665<br>Title: HORAMA | 12/31/25 | 12/31/30 | SCREENPLAY |
| **Register an Item**<br>Registration # 2325657<br>Title: | 12/31/25 | 12/31/30 | FORMAT |
| **Register an Item**<br>Registration # 2325656<br>Title: | 12/31/25 | 12/31/30 | SCREENPLAY |
| **Register an Item**<br>Registration # 2308301<br>Title: THE FALL | 07/16/25 | 07/16/30 | TREATMENT |
| **Register an Item**<br>Registration # 2308293<br>Title: PLUTO | 07/16/25 | 07/16/30 | SCREENPLAY |
| **Register an Item**<br>Registration # 2271195<br>Title: DANGERFIELD | 08/31/24 | 08/31/29 | SCREENPLAY |
| **Register an Item**<br>Registration # 2242090<br>Title: THE ABBESS | 01/26/24 | 01/26/29 | PROPOSAL |
| **Register an Item**<br>Registration # 2215745<br>Title: The Dating Business | 05/25/23 | 05/25/28 | SERIES |
| **Register an Item**<br>Registration # 2215500<br>Title: MAGIC CITY - THE GRIND | 05/23/23 | 05/23/28 | PILOT |
| **Register an Item**<br>Registration # 2215496<br>Title: SOLITARY | 05/23/23 | 05/23/28 | SERIES |
| **Register an Item**<br>Registration # 2206711<br>Title: PLUTO | 03/23/23 | 03/23/28 | TREATMENT |

Client: PAUTSCH, JOHN

| ITEM | EFF DATE | EXP DATE | MATERIAL TYPE |
|---|---|---|---|
| **Register an Item**<br>Registration # 2206706<br>Title: ITS DARK INSIDE-Bad Credit-Merry Christmas To Me | 03/23/23 | 03/23/28 | SERIES |
| **Register an Item**<br>Registration # 2206704<br>Title: ITS DARK INSIDE | 03/23/23 | 03/23/28 | SERIES |
| **Register an Item**<br>Registration # 2204809<br>Title: Its Dark Inside - Strike A Pose | 03/11/23 | 03/11/28 | SCRIPT |
| **Register an Item**<br>Registration # 2172066<br>Title: ITS DARK INSIDE - STRIKE A POSE | 06/20/22 | 06/20/27 | SCREENPLAY |
| **Register an Item**<br>Registration # 2166829<br>Title: ITS DARK INSIDE | 05/09/22 | 05/09/27 | BIBLE |
| **Register an Item**<br>Registration # 2158953<br>Title: The Laser Lighthouse | 03/12/22 | 03/12/27 | TREATMENT |
| **Register an Item**<br>Registration # 2136956<br>Title: GET THE STRAP - ITS DARK INSIDE | 09/20/21 | 09/20/26 | SCREENPLAY |
| **Register an Item**<br>Registration # 2134777<br>Title: The Sound of Music | 09/01/21 | 09/01/26 | PITCH |
| **Register an Item**<br>Registration # 2134776<br>Title: CONFESSIONS | 09/01/21 | 09/01/26 | SCREENPLAY |
| **Register an Item**<br>Registration # 2132010<br>Title: Its Dark Inside Strike A Pose | 08/11/21 | 08/11/26 | PILOT |
| **Register an Item**<br>Registration # 2123758<br>Title: Its Dark Inside | 06/15/21 | 06/15/26 | TREATMENT |
| **Register an Item**<br>Registration # 2123753<br>Title: Its Dark Inside | 06/15/21 | 06/15/26 | SCREENPLAY |
| **Register an Item**<br>Registration # 2082075<br>Title: Michael Bates | 10/03/20 | 10/03/25 | TREATMENT |
| **Register an Item**<br>Registration # 2080353<br>Title: OLD GLORY | 09/24/20 | 09/24/25 | SCREENPLAY |
| **Register an Item**<br>Registration # 2080146<br>Title: The G.O.A.T. | 09/22/20 | 09/22/25 | TREATMENT |
| **Register an Item**<br>Registration # 2079990<br>Title: THE GREAT DEBATE | 09/22/20 | 09/22/25 | GAMESHOW |

Client: PAUTSCH, JOHN

| ITEM | EFF DATE | EXP DATE | MATERIAL TYPE |
|---|---|---|---|
| **Register an Item**<br>Registration # 2062059<br>Title: The Great Debate | 06/10/20 | 06/10/25 | GAMESHOW |
| **Register an Item**<br>Registration # 2061394<br>Title: AMERICAN PSYCHO | 06/07/20 | 06/07/25 | SCREENPLAY |
| **Register an Item**<br>Registration # 2060388<br>Title: OLD GLORY | 06/01/20 | 06/01/25 | SCREENPLAY |
| **Register an Item**<br>Registration # 2057915<br>Title: Advanced Content Monetization System (ACMS) | 05/20/20 | 05/20/25 | PROPOSAL |
| **Register an Item**<br>Registration # 2057699<br>Title: MICHAEL BATES | 05/20/20 | 05/20/25 | SCREENPLAY |
| **Register an Item**<br>Registration # 2057696<br>Title: THE G.O.A.T. | 05/20/20 | 05/20/25 | SCREENPLAY |
| **Register an Item**<br>Registration # 2057066<br>Title: THE GOAT | 05/17/20 | 05/17/25 | ANIMATION |
| **Register an Item**<br>Registration # 2055685<br>Title: IT'S DARK INSIDE | 05/11/20 | 05/11/25 | SCREENPLAY |
| **Register an Item**<br>Registration # 2053532<br>Title: American Psycho III | 05/03/20 | 05/03/25 | SCREENPLAY |

Registration is valid for five years and may be renewed three months before the expiration date and up to three months after. Registrations that are not renewed during the renewal period are not renewable or accessible.

**Registration Number**
**TXu 2-280-180**
**Effective Date of Registration:**
July 20, 2021
**Registration Decision Date:**
October 05, 2021

## Copyright Registration for a Group of Unpublished Works
Registration issued pursuant to 37 C.F.R. § 202.4(c)

## Title

**Title of Group:** It's Dark Inside and 5 Other Unpublished Works

**Content Title:** It's Dark Inside
It's Dark Inside: Michael Bates
2222
The G.O.A.T.
The Match: The Bad Little 9
Hackers

## Completion/Publication

**Year of Completion:** 2021

## Author

- **Author:** John T Pautsch
**Author Created:** Literary Works
**Citizen of:** United States
**Domiciled in:** United States
**Pseudonymous:** Yes

## Copyright Claimant

**Copyright Claimant:** John T Pautsch
9903 Santa Monica Blvd, 169, Beverly Hills, CA, 90212, United States

## Rights and Permissions

**Organization Name:** THE G.O.A.T. MEDIA LLC
**Email:** legal@thegoat.com

**87**

## Certification

**Name:** John Thomas Pautsch, Author
**Date:** July 20, 2021

**Correspondence:** Yes
**Copyright Office notes:** Regarding group registration: A group of unpublished works may be registered in the same administrative class under 202.4(c) if the following requirements have been met: 1) All the works must be unpublished; 2) the group may include up to ten works; 3) a title must be provided for each work; 4) all the works must be created by the same author or the same joint authors; 5) the authorship claimed in each work must be the same; and 6) the author and claimant for each work must be the same person or organization.

**Registration Number**
**PAu 4-238-006**
**Effective Date of Registration:**
September 01, 2024
**Registration Decision Date:**
September 30, 2024

**Copyright Registration for One Work by One Author**
Registration issued pursuant to 37 CFR §202.3

## Title

**Title of Work:** DANGERFIELD

## Completion/Publication

**Year of Completion:** 2024

## Author

- **Author:** John Pautsch
  **Author Created:** Dramatic Work
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1979

## Copyright Claimant

**Copyright Claimant:** John Pautsch
9903 Santa Monica Blvd #169, Beverly Hills, CA, 90212

## Rights and Permissions

**Organization Name:** The Goat Media
**Name:** John Thomas Pautsch

## Certification

**Name:** John Pautsch
**Date:** September 01, 2024

**Copyright Office notes:** Regarding basis for registration: A work may be registered with the Single Application only if the following requirements have been met: 1) The registration covers one work; 2) The work must be created by one individual; 3) All of the material contained within the work must be created by the same individual; 4) The author and the owner of the work must be the same person, and that person must own all of the rights in the work; 5) The work cannot be a work made for hire.

**Registration Number**
**TXu 2-506-592**
**Effective Date of Registration:**
July 16, 2025
**Registration Decision Date:**
September 03, 2025

## Title

**Title of Work:** PLUTO

## Completion/Publication

**Year of Completion:** 2025

## Author

- **Author:** John T Pautsch
  **Author Created:** text
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** John T Pautsch
9903 Santa Monica Blvd. #169, Beverly Hills, CA, 90212

## Rights and Permissions

**Organization Name:** TGM
**Address:** 9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212 United States

## Certification

**Name:** John Pautsch
**Date:** July 16, 2025

**EXHIBIT — VAI-010**

**VINE ALTERNATIVE INVESTMENTS x SHAMROCK**

**July 18, 2024**

https://shamrockcap.com/media/shamrock-capital-acquires-premium-content-portfolio-from-vine-alternative-investments/

SHAMROCK MEDIA

OUR STORY
TEAM
PORTFOLIO
CONTACT

BACK

DATE
07.18.2024

# Shamrock Capital Acquires Premium Content Portfolio from Vine Alternative Investments

**Transaction encompasses high quality film, television, and music rights bringing additional diversity and breadth to Shamrock's $2.4B Content Strategy**

LOS ANGELES, CA – July 18, 2024 – Shamrock Capital, a Los Angeles-based investment firm specializing in media, entertainment, communications, and related sectors, today announced the acquisition of a diverse film, television, and music portfolio (the "Portfolio") from Vine Alternative Investments Group, LLC ("Vine"), a specialized asset manager focused on unique, non-correlated investment opportunities in the media and entertainment sector.

The Portfolio was acquired by Shamrock's Content Strategy, which acquires and finances premium content and media rights across film, television, music, sports, video games and

VINE
ALTERNATIVE INVESTMENTS

## Item 1: Cover Page

# Vine Investment Advisors, LP
# Part 2A of Form ADV
# The Brochure

18 Sheldrake Lane
Palm Beach Gardens, FL 33418

Phone Number: 917-512-70451

www.vinealternativeinvestments.com

Updated: March 31, 2026

This brochure provides information about the qualifications and business practices of Vine Investment Advisors, LP. If you have any questions about the contents of this brochure, please contact us at 917-512-7049. The information in this brochure has not been approved or verified by the United States Securities and Exchange Commission ("SEC") or by any state securities authority.

Additional information about Vine Investment Advisors, LP also is available on the SEC's website at www.adviserinfo.sec.gov. You can search this site by a unique identifying number, known as a CRD number. The CRD number for Vine Investment Advisors, LP is 157341.

Any reference to Vine Investment Advisors, LP as a "registered investment adviser," or as being "registered," does not imply a certain level of skill, training or ability with respect to the provision of investment advisory services.

VINE
ALTERNATIVE INVESTMENTS

# Item 4: Advisory Business

Vine Investment Advisors, LP (together with its affiliates described below, "Vine" or the "Firm") is a Delaware limited partnership that was formed in 2007. Vine is owned by Mr. James P. Moore, Managing Partner and Chief Executive Officer ("CEO"). In August 2024, there were material changes in the organizational structure of Vine and currently Mr. Moore is Vine's sole employee and the Firm's Chief Compliance Officer ("CCO"), Chief Operating Officer ("COO"), and Chief Investment Officer ("CIO"). All references herein to the Vine Investment Committee are references to Mr. Moore. In August 2024, All other employees of the Firm, other than Mr. Moore, terminated their employment with Vine, and become employees of High Point Media Advisors ("High Point"). Vine and High Point entered into a service agreement pursuant to which High Point provides certain financial and Asset Valuation services to Vine consistent with the services those employees provided while employees of Vine. Mr. Moore is the sole employee of Vine and therefore serves in the roles of Chief Executive Officer, Chief Compliance Officer, Chief Operating Officer ("COO"), and Chief Investment Officer ("CIO).

Mr. Moore is referred to herein as the "Principal" of Vine. Vine, the filing advisor, and Vine Alternative Investments III, LP ("VAI III"), and Vine Alternative Investments IV, LP ("VAI IV"), all of which are registered under the Investment Advisers Act of 1940, as amended (the "Advisers Act") pursuant to Vine's registration as "relying advisers", are submitting a single firm brochure. Vine, VAI III and VAI IV operate as a single advisory business.

Vine's objective is to create an investment management platform that is focused on providing investment opportunities that generate returns exhibiting low correlation compared to the broader capital markets. Vine attempts to achieve that objective by investing in the media and entertainment sector. Vine provides discretionary investment advisory services to its eight principal private investment funds: Vine Media Opportunities – Fund III – A, LP, Vine Media Opportunities – Fund III - A AIV, LP, Vine Media Opportunities – Fund III – B, LP, Vine Media Opportunities – Fund III, LP, Vine WestCon SPV, LP, Vine Media Opportunities – Fund IV, LP, Vine Media Opportunities – Fund IV – A AIV, LP, and Vine EC Holdings SPV LLC (each, a "Fund" and collectively, the "Funds").

Vine is based in Florida and is managed by the Principal, who brings significant experience in investment management, structured finance and media-based content investing. The Principal seeks to enhance Fund returns through active management that aligns the interests of its Funds with those of media and entertainment content providers and distributors. The core of Vine's strategy and execution lies in robust transaction diligence, sophisticated transaction analytics and active investment monitoring that incorporates:

- Extensive deal experience and proprietary modeling capabilities that provide an underwriting and negotiation advantage;
- Comprehensive legal diligence to ensure proper deal terms and investment protections; and
- Active investment management and rigorous performance monitoring to realize maximum value.

# EXHIBIT — MCR-3

## WIKIPEDIA PROFILE

## RECENT CHANGE IN PROFILE PICTURE

PHOTO
(20-year-old-photo)
CONFIRMED IDENTITY



NEW PHOTO
*DIFFERENT INDIVIDUAL*

**Marc Rosen** (born [redacted] 1976) is an American film and television producer. He has been an executive and producer in film and television at major studios/networks as well as independent companies for 20 years. With the recent 2-hour finale of the Wachowski's SENSE8 on Netflix, Rosen has produced or executive produced over 50 hours of film and high-end ($3–$8mn/episode) [*clarification needed*] Scripted Series including THRESHOLD with David Goyer and David Heyman, SENSE8, one of streaming's first original series, with the Wachowskis, and THE AFTER with Chris Carter as one of Amazon's first pilots and series orders.

**Marc Rosen**




| | |
|---|---|
| **Born** | [redacted] 1976 (age 50)<br>St. Louis, Missouri, US |
| **Education** | The Bishop's School<br>Princeton University |
| **Occupations** | Film and television producer |
| **Years active** | 1998–present |

## Early life [ edit ]

Before beginning his film career in 1998, Rosen worked on the staff of Senator Dianne Feinstein. In 1994, he graduated from The Bishop's School in La Jolla, California.[1] In 1998, he graduated with honors from Princeton University with a B.A. in English literature and drama, with a minor in French. He continues to be an annual guest lecturer at Princeton University, with his "Hollywood 101" series of talks.[2]

## Career [ edit ]

From 2012 to 2015, Rosen was the co-founder and CEO of Georgeville Television with Reliance Entertainment – the proprietors of DreamWorks. During GVTV's run, Rosen set up several projects, including *Limitless, The After, From Dusk til Dawn,* and *Zorro*.[3][4][5]

Prior to GVTV, he had exclusive producing deals in film and television – with Paramount Film and CBS TV respectively – through his Rosenobst Productions, with Lynda Obst from 2007 to 2009. During that time, Rosen set up 20 series though the CBS deal.

Leading up to those deals, from 2001 to 2007, Rosen was a senior executive and founded and ran the Warner Brothers offices of Heyday Films/David Heyman. During his tenure, he set up feature films with Christopher Nolan, David Goyer, and