**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., *et al.*,[1] | ) | Case No. 25-10475 (TMH) |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Hearing Date: October 13, 2026, at 2:00 p.m. (ET)** |
| | ) | **Obj. Deadline: October 5, 2026, at 4:00 p.m. (ET)** |

**LIQUIDATION TRUSTEE'S (I) OBJECTION TO THE MOTION OF JOHN T. PAUTSCH FOR PRESERVATION OF DEBTOR BOOKS AND RECORDS UNDER PARAGRAPH 114 OF THE CONFIRMATION ORDER; AND (II) MOTION FOR NON- MONETARY SANCTIONS INCLUDING A PRE-FILING INJUNCTION**

Kevin Berg, solely in his capacity as the liquidation trustee (the "Liquidation Trustee") of the Village Roadshow Liquidating Trust (the "Trust") formed pursuant to the *Joint Chapter 11 Plan of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates* [Docket No. 1516] (the "Plan") of the above-captioned debtors (collectively, the "Debtors"),[2] hereby submits this (i) objection (this "Objection") to the *Motion of John T. Pautsch for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order* [Docket No. 1789] (the "Motion to Preserve"); and (ii) *Motion for Non-Monetary Sanctions Including a Pre-Filing Injunction* (the "Motion for Sanctions"), requesting entry of an order (the "Proposed Order"), (a) prohibiting further filings in these bankruptcy cases by THE G.O.A.T. MEDIA, LLC ("GOAT Media") without counsel and (b) requiring Mr. Pautsch to obtain leave of the Court prior to any further filings. In

[1] The last four digits of Village Roadshow Entertainment Group USA Inc.'s federal tax identification number are 0343. The mailing address for Village Roadshow Entertainment Group USA Inc. is 750 N. San Vicente Blvd., Suite 800 West, West Hollywood, CA 90069. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://www.veritaglobal.net/vreg.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

support of this Objection and the Motion for Sanctions, the Liquidation Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Motion to Preserve should be denied on a threshold basis, without the Court reaching its merits, because Mr. John T. Pautsch ("Mr. Pautsch") and GOAT Media are not parties in interest and lack standing to be heard in these chapter 11 cases. Although styled as a filing by Mr. Pautsch individually, the Motion to Preserve is a thinly veiled attempt to circumvent the Court's and District Court's prior rulings preventing him from prosecuting *pro se* pleadings on behalf of GOAT Media. In substance, the Motion to Preserve is filed on behalf of GOAT Media, which is the entity whose proofs of claim are the subject of the relief the Motion to Preserve seeks. Indeed, the Motion to Preserve concerns the same projects, materials, and record-handling underlying GOAT Media's claims. Regardless, these claims were disallowed in their entirety on January 30, 2026, with the Court finding that the Debtors had no business relationship with GOAT Media, and the evidentiary record is now closed. *See* Docket No. 1326. Because those claims have been disallowed and there is no stay pending appeal, GOAT Media has no remaining stake or standing in these cases.

2. Similarly, Mr. Pautsch individually has no standing in these chapter 11 cases. Mr. Pautsch never filed a proof of claim in his own name, and all bar dates have now passed. As this Court and the District Court have ruled, Mr. Pautsch may not litigate his company's interests in his own name. The only "interest" Mr. Pautsch asserts is contingent on an appeal in which the District Court declined to permit him to pursue in GOAT Media's stead, which is insufficient to confer standing.

3. Even if the Court reaches the merits, the Motion to Preserve fails twice over. Paragraph 114 of the Confirmation Order establishes a preservation mechanism solely for the

Liquidation Trustee and the purchasers of the Debtors' assets. *See* Docket No. 1565 ¶ 114. It does not grant any rights to creditors or third parties, and its non-destruction directive is enforceable only by the Liquidation Trustee or by further order of the Court. *See id*. Further, no legal duty compels the preservation of the records Mr. Pautsch describes because no litigation to which those records are relevant is pending or reasonably foreseeable. Aside from general corporate records, the Liquidation Trustee is unaware of any responsive and relevant records of the type the Motion to Preserve identifies. The Debtors previously submitted unrebutted evidence that they possessed no contracts, agreements, business-relationship records, or development materials concerning the referenced projects, which the Court accepted in disallowing the claims of GOAT Media.[3]

4. The Motion to Preserve is the latest in a series of unauthorized *pro se* filings that Mr. Pautsch has made on GOAT Media's behalf after being told—by both the Court and the District Court—that GOAT Media must appear through licensed counsel. These filings have needlessly depleted estate assets to the detriment of all parties in interest. Mr. Pautsch has now disregarded at least six separate warnings from this Court and the District Court that he may not appear or file pleadings on GOAT Media's behalf, and the Motion to Preserve demonstrates that he has no intention of complying with those directives. In light of Mr. Pautsch's conduct, the Liquidation Trustee is compelled to act to prevent the continued depletion of estate resources. The Liquidation Trustee therefore requests that the Court impose non-monetary sanctions against GOAT Media and Mr. Pautsch, requiring that any further filing by or on behalf of GOAT Media be made through counsel and that any filings by Mr. Pautsch first receive leave by the Court.

---

[3] To the extent the Motion to Preserve or the *Supplement of John T. Pautsch to Motion for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order* [Docket No. 1790] request preservation of general corporate records unrelated to the "Covered Works," the Liquidation Trustee does not intend to destroy or dispose of such records while these chapter 11 cases are pending and will maintain such records in accordance with the Liquidation Trust Agreement.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware (the "District Court"), dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Liquidation Trustee confirms his consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The legal bases for the relief requested in the Motion for Sanctions are 28 U.S.C. § 1651(a) (the "All Writs Act"), and section 105(a) of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").[4]

## ADDITIONAL BACKGROUND

### I. GOAT Media's Claims Have Been Disallowed.

8. On July 14, 2025, and July 15, 2025, GOAT Media filed proofs of claim nos. 16 and 17 (the "GOAT Media Claims"), which asserted unsecured, unliquidated claims alleging that Marc Charles Rosen, a former "VREG Producer," solicited GOAT Media's intellectual property

[4] The requested non-monetary sanctions arise from repeated filings asserting GOAT Media's interests after both this Court and the District Court determined that GOAT Media may not appear through a non-attorney. The Liquidation Trustee does not seek sanctions under Bankruptcy Rule 9011 based on representations contained in the Motion to Preserve at this time, but reserves the right to seek such sanctions, including monetary sanctions, in the future.

and services from 2019 to 2022. The Debtors objected to the GOAT Media Claims on December 19, 2025, asserting that they have no agreement, contract, or business relationship with GOAT Media. *See* Docket Nos. 1167 and 1263. In support thereof, Mr. Berg, in his capacity as general counsel of the Debtors, filed a declaration stating that the Debtors had reviewed the GOAT Media Claims, GOAT Media's supplemental materials, and the Debtors' books and records, and "determined that they do not have any contract or business relationship with GOAT Media," nor any development materials related to the referenced projects [Docket No. 1263, Ex. A, at 2] (the "Berg Declaration").

9. On January 30, 2026, the Court entered the *Order Sustaining Debtors' First Omnibus (Substantive) Objection to Claims* [Docket No. 1326] (the "Disallowance Order"), disallowing the GOAT Media Claims in their entirety. In disallowing the GOAT Media Claims, the Court stated, "I have very carefully reviewed the documents, I've been unable to identify any legal basis upon which I can find that Village Roadshow is liable for any debt" and that Mr. Rosen did not have the authority to bind the Debtors. Jan. 30, 2026, Hr'g Tr. at 19:20–23. *Id.* The Court also observed that "the typical rule is that business entities," including an LLC such as GOAT Media, "cannot appear *pro se*," and although it interpreted Local Rule 9010-1(e)(3) to permit a *pro se* appearance to prosecute a proof of claim or a response to a claim objection, the Court cautioned Mr. Pautsch that it did not "think it's wise to proceed *pro se*." *Id.* at 12:24–13:7.

## II. GOAT Media's Appeal to the District Court Has Been Dismissed.

10. GOAT Media subsequently appealed the Disallowance Order to the District Court. By letter dated February 9, 2026, the District Court advised GOAT Media that "an artificial entity can only appear in Federal Court through licensed counsel," and that, under District of Delaware

Local Rule 83.5, GOAT Media was "required to obtain counsel and have Delaware counsel enter an appearance on or before March 9, 2026." D. Docket No. 4.[5]

11. GOAT Media did not comply with the District Court's requirement to obtain counsel, despite being afforded an extension through April 8, 2026. Instead, on April 9, 2026, Mr. Pautsch filed the *Motion to Substitute Appellant (Real Party in Interest)* [D. Docket No. 8] (the "Motion to Substitute"), seeking to substitute himself individually for GOAT Media as the appellant in the appeal.

12. By Memorandum and Order dated May 13, 2026 (the "Memorandum Opinion"), the District Court denied Mr. Pautsch's request for substitution under Federal Rule of Civil Procedure 17(a)(3) and dismissed the appeal. D. Docket Nos. 13 & 14. In denying the Motion to Substitute, the District Court stated, "there is no genuine difficulty or honest mistake in identifying the real party in interest here." Mem. Op. at 6. The District Court also noted that Mr. Pautsch did not file a claim in his individual capacity and signed the GOAT Media Claims "solely as 'Principal'" of GOAT Media. *Id.* The District Court thus concluded that "[t]he real party in interest is—and has always been—Appellant, The G.O.A.T. Media, LLC." *Id.* The District Court further found that substituting Mr. Pautsch for Appellant would not be a "'merely formal' change—it would fundamentally alter the identity of the party prosecuting this appeal and would effectively allow Mr. Pautsch to litigate Appellant's claims *pro se* in contravention of settled law." *Id.*

13. The Memorandum Opinion also dismissed the appeal for GOAT Media's failure to obtain counsel. The appeal now pending before the Third Circuit is an appeal from the denial of the Motion to Substitute and Memorandum Opinion. There is no stay pending appeal.

[5] The District Court does not have a local rule similar to Local Rule 9010-1(e)(3), permitting *pro se* representation of an artificial entity in limited circumstances.

## III. GOAT Media Continues to File Pleadings in the Bankruptcy Court.

14. On February 20, 2026, the Court held a hearing to consider conditional approval of the Debtors' Disclosure Statement (the "Disclosure Statement Hearing"). GOAT Media—still without counsel—filed the *Limited Objection and Reservation of Rights of the G.O.A.T. Media, LLC Election to Opt Out of Third-Party Releases, and Conditional Request for Clarification and Contingent Reserve* [Docket No. 1357] and attempted to appear and be heard. The Debtors objected to GOAT Media's participation, noting that GOAT Media "is required to be represented by counsel as an artificial entity" and that GOAT Media's failure to retain counsel precluded it from "fil[ing] pleadings or be[ing] heard at a disclosure statement hearing." *See* Feb. 20, 2026, Hr'g Tr. at 12:20–13:15. The Court agreed, stating that "[t]his is the law, a business entity cannot be self-represented, they are required to have counsel, [and the Court] simply [does not] consider *pro se* business entity filings." *Id.* at 14:3–6.

15. GOAT Media also filed the *Motion of The G.O.A.T. Media, LLC for Examination and Limited Production of Documents Pursuant to Federal Rule of Bankruptcy Procedure 2004* [Docket No. 1337] (the "2004 Motion"). At the hearing on March 12, 2026, the Debtors asserted that GOAT Media could not prosecute the 2004 Motion *pro se* because it was outside the limited claim-objection context permitted in the Local Rules. The Court agreed that this matter was "squarely at a discovery proceeding outside of a claim objection." Mar. 12, 2026, Hr'g Tr. at 5:19–21. The Debtors further stated that, "[d]espite being advised of the unauthorized practice of law at the January 30th hearing and shortly thereafter by the District Court, [GOAT Media] has continued to file pleadings with the Court." *Id.* at 6:4–7. After confirming that GOAT Media had still not obtained counsel, the Court held that "[b]ecause G.O.A.T. Media has filed a motion

without doing so through counsel, it cannot appear and be heard and, therefore, the motion is denied." *Id.* at 8:9–11.

16. Notwithstanding these repeated admonitions, on March 26, 2026, GOAT Media filed a response to the Plan, styled as the *Supplemental Statement of the G.O.A.T. Media, LLC Regarding Claim Status, Reserve Treatment, and Request for Clarification in Connection with Plan Confirmation* [Docket No. 1507]. On April 16, 2026, the Court held the combined hearing on final approval of the disclosure statement and confirmation of the Plan (the "Confirmation Hearing"). At the Confirmation Hearing, the Debtors again objected to GOAT Media's filings and appearance, noting that GOAT Media "is an LLC that cannot appear or be heard in federal court except through licensed counsel" and that "[n]otwithstanding [the Court's prior] ruling, G.O.A.T. Media has continued to file pleadings in these cases without counsel." Apr. 16, 2026, Hr'g Tr. at 18:8–9. The Court sustained the Debtors' objection, stating that "[Mr. Pautsch] is not an attorney and I'm not going to hear from him." *Id.* at 19:22–23. The Court further found that GOAT Media "lacks standing to be heard regarding plan confirmation," and that even if GOAT Media had standing and counsel, "the objections lack merit and therefore are overruled." *Id.* at 19:24–20:3.

17. On April 17, 2026, the Court entered an order confirming the Plan [Docket No. 1565] (the "Confirmation Order"), and the Plan became effective on May 1, 2026, at which time the Liquidation Trustee was appointed. Relevant to the Motion to Preserve, Paragraph 114 of the Confirmation Order, titled "Preservation of Books and Records," directs that the Debtors (and any purchaser) provide the Liquidation Trustee with timely access to the Debtors' books and records, that the Liquidation Trustee in turn provide purchasers access as required by the sale documents, and that third parties in possession of such records not dispose of or destroy them "until such time

as authorized in writing by the Liquidation Trustee or further order of the Bankruptcy Court." Confirmation Order ¶ 114.

18. On August 24, 2026, Mr. Pautsch—who never filed a proof of claim in these cases in his own name, and still without counsel for GOAT Media—filed the Motion to Preserve. The Motion to Preserve asks the Court to direct the Liquidation Trustee not to authorize, under Paragraph 114 of the Confirmation Order, the disposal or destruction of broadly defined "Covered Records" during the pendency of the appeal to the Third Circuit, and thereafter until further order of the Court. Motion to Preserve at 19. The Motion to Preserve does not seek production or examination of records, and it "does not allege that the Liquidation Trustee presently intends to authorize destruction of any records." *Id.* at 18.

**<u>OBJECTION</u>**

**I. Mr. Pautsch and GOAT Media are Not Parties in Interest and Lack Standing to Bring the Motion to Preserve.**

19. Section 1109(b) of the Bankruptcy Code provides that a "party in interest" may "raise" and "appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Although construed broadly, the provision reaches only one who "has a legally protected interest that could be affected by a bankruptcy proceeding" or "a sufficient stake in the proceeding so as to require representation." *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992); *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). The standard "is no more exacting than the standard for constitutional standing," and a party that lacks Article III standing lacks standing under § 1109(b). *In re Flintkote Co.*, 486 B.R. 99, 111 (Bankr. D. Del. 2012).

20. Constitutional standing requires an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent." *In re Glob. Indus. Techs., Inc.*, 645 F.3d at 210 (quoting

*Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)). Mr. Pautsch's own consent to the entry of final orders does not supply what standing requires; a movant must independently satisfy Article III before he may be heard. *Id.* at 210.

21. Once the GOAT Media Claims were disallowed, GOAT Media ceased to hold any pecuniary interest in the chapter 11 cases. In *In re Flintkote Co.*, the court disallowed the objector's claim and held that it accordingly "cannot assert 'party in interest' standing based upon its disallowed . . . claims" and "is not a creditor in these cases." 486 B.R. at 116. Here, the Disallowance Order disallowed the GOAT Media Claims in their entirety, and GOAT Media is no longer a creditor or a party in interest. GOAT Media's appeals do not change this result because the Disallowance Order has not been stayed pending appeal. Indeed, at the Confirmation Hearing, the Court held that GOAT Media did not have standing to object to confirmation of the Plan because it no longer held an economic interest in the chapter 11 cases.

22. Nor does Mr. Pautsch have standing of his own. He never filed a proof of claim and holds no allowed claim, equity interest, or other legally protected interest in the estates. Importantly, all bar dates in these chapter 11 cases have passed, the injunction provisions in the Plan are now in effect, and no new proofs of claim may be filed. Mr. Pautsch therefore has no "injury in fact" and no "legally protected interest that could be affected by" these proceedings.

23. The contingent interests Mr. Pautsch asserts are precisely the kind courts have held to be insufficient to confer standing. Mr. Pautsch's asserted stake as the appellant in the appeal to the District Court is contingent on the Third Circuit reversing the District Court's Memorandum Opinion denying the Motion to Substitute. Again, there is no stay pending appeal. A movant who "asserts no ***present*** claim against the bankruptcy estate," and whose asserted stake depends on "speculative future roles," is not a party in interest under § 1109(b). *In re Arbah Hotel Corp.*, 2026

WL 776119, at *3–4 (D.N.J. Mar. 19, 2026) (emphasis added). And an interest that materializes only if a series of future contingencies comes to pass is "too remote to constitute an 'injury in fact.'" *In re Flintkote Co.*, 486 B.R. at 115.

24. To be clear, Mr. Pautsch's asserted status as an author or copyright claimant concerns rights he allegedly holds against others, not any claim against or interest in the Debtors' estates (which are now barred), and does not make him a party in interest in these chapter 11 cases.

25. Finally, to the extent Mr. Pautsch purports to act for GOAT Media, he may not. As the Court has previously held, an artificial entity such as a limited liability company may appear in bankruptcy court only through licensed counsel, not through a member or principal appearing *pro se*, and a principal cannot cure that defect by appearing individually to advocate for the entity's claims, because those claims "belong to [the entity], not [him]." *In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. 409, 424 (Bankr. E.D.N.Y. 2015). Courts applying § 1109(b) have likewise held that an officer or principal of an entity is not a party in interest, because that role "[does] not create any inherent rights in the bankruptcy case." *In re Shubh Hotels Pittsburgh, LLC*, 495 B.R. 274, 284 (Bankr. W.D. Pa. 2013) (citing *In re WHET, Inc.*, 33 B.R. 438, 442 (Bankr. D. Mass. 1983)). That principle has particular force here, where the District Court has already denied Mr. Pautsch's attempt to substitute himself under Rule 17(a)(3), holding that GOAT Media is the real party in interest, and where this Court has already held that GOAT Media "cannot appear and be heard" without counsel. Mar. 12, 2026, Hr'g Tr. at 8.

26. Styling the Motion as the filing of "John T. Pautsch" rather than GOAT Media does not change the analysis. Courts disregard such procedural devices used to allow a layperson to litigate an entity's rights in his own name. *See In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. at 424 ; *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) (holding that a corporation

could not assign its claim to its sole stockholder and chief executive officer to allow him to proceed *pro se* to pursue claims). As the Memorandum Opinion succinctly stated, "Federal courts do not permit litigants to accomplish indirectly—through assignments, substitutions, or other procedural devices—what federal law forbids directly." Mem. Op. at 6 (citing *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d at 23; *Mercu-Ray Indus., Inc. v. Bristol-Myers Co.*, 392 F. Supp. 16, 20 (S.D.N.Y. 1974), *aff'd mem.*, 508 F.2d 837 (2d Cir. 1974)). The Court should not permit such conduct here.

## II. Paragraph 114 of the Confirmation Order Confers No Rights on Mr. Pautsch.

27. In addition to the fact that Mr. Pautsch lacks standing, the Motion to Preserve fails on its own terms. By its plain language, Paragraph 114 of the Confirmation Order operates solely for the benefit of the Liquidation Trustee and the purchasers of the Debtors' assets. It requires the Debtors and any purchaser to provide the Liquidation Trustee access to the Debtors' books and records, requires the Liquidation Trustee to give purchasers access as required by the sale documents, and directs third parties not to destroy records absent authorization "in writing by the Liquidation Trustee or further order of the Bankruptcy Court." Confirmation Order ¶ 114. Nothing in Paragraph 114 of the Confirmation Order confers any right on creditors, former claimants, or other third parties.

28. Accordingly, Mr. Pautsch is none of the parties for whose benefit Paragraph 114 of the Confirmation Order runs. He is not the Liquidation Trustee, a purchaser, or a party to the sale documents. The provision therefore gives him nothing, and its non-destruction directive is enforceable by the Liquidation Trustee or by the Court, not by Mr. Pautsch and not for his benefit. Moreover, Mr. Pautsch does not truly seek to "enforce" Paragraph 114. He requests the Court to strip the Liquidation Trustee of the authority Paragraph 114 expressly vests in him, for records

defined far more broadly than the disallowed GOAT Media Claims. That is a request to rewrite the confirmed Plan and Confirmation Order for one non-party's benefit, not to implement them.

**III. There Is No Obligation to Preserve the Records Mr. Pautsch Describes.**

29. The Motion to Preserve also fails because no obligation to preserve the "Covered Records" exists under any applicable law. The Motion to Preserve sweeps far beyond records arguably related to the disallowed GOAT Media Claims, seeking preservation of virtually every category of the Debtors' corporate records, including project, governance, licensing, ownership, restructuring, communication, and ESI. The Debtors submit that the Covered Records either: (1) do not exist, (2) are not relevant to any pending or reasonably foreseeable litigation, (3) are inadmissible, or (4) consist of ordinary corporate records for which no destruction is threatened.

30. First, the records at the core of Mr. Pautsch's demand—records related to the GOAT Media Claims—do not exist. Although the Motion to Preserve seeks preservation rather than production, that distinction cannot save it because the Debtors have already established, and the Court found, that they had no business relationship with the GOAT Media. The Berg Declaration attests, under penalty of perjury, that the Debtors reviewed their books and records and "determined that they do not have any contract or business relationship with GOAT Media," nor any development materials related to the referenced projects. Berg Decl. at 2. A court "cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control," and a sworn representation of non-possession is the proper and sufficient response to such a demand. *Sonnino v. Univ. Kan. Hosp. Auth.*, 220 F.R.D. 633, 640 (D. Kan. 2004); *Schwartz v. Mktg. Publ'g Co.*, 153 F.R.D. 16, 21 (D. Conn. 1994). A movant's "mere disbelief or disagreement" with that sworn representation is not a basis for relief, and a contention

that responsive records exist "must be supported by evidence," which Mr. Pautsch has not supplied. *Pierce v. Town of Golden Meadow*, 2026 WL 1328213, at *3 (E.D. La. May 13, 2026).

31. Second, no legal duty to preserve is triggered. A duty to preserve documents arises only "where litigation is pending or reasonably foreseeable," and it does not arise "from the mere existence of a potential claim or the distant possibility of litigation." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012); *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). Even when triggered, the duty extends only to evidence a party knows or should know is relevant to that anticipated litigation. Indeed, "a litigant is under no duty to keep or retain every document in its possession." *In re Frontier Commc'ns Corp.*, 666 B.R. 260, 283–84 (Bankr. S.D.N.Y. 2025) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)); *see Bistrian v. Levi*, 448 F. Supp. 3d 454, 473 (E.D. Pa. 2020).

32. Here, no duty to preserve exists because there is no pending or reasonably foreseeable litigation to which the Covered Records could be relevant. The GOAT Media Claims have been disallowed, the related appeal was dismissed, and Mr. Pautsch has not obtained a stay or other relief affecting the operative effect of either ruling. Even if litigation was reasonably foreseeable, the Covered Records are not relevant. The Court already found that the Debtors had no business relationship with GOAT Media and that Mr. Rosen lacked authority to bind the Debtors. The only active litigation is before the Third Circuit and relates to the District Court's denial of Mr. Pautsch's attempt to substitute himself for GOAT Media, a narrow procedural issue to which the extensive categories of records identified in the Motion to Preserve bear no apparent relevance.

33. Nor could the Covered Records be used in that appeal or on any remand to the Court. The evidentiary record related to the GOAT Media Claims closed at the conclusion of the

January 30, 2026, hearing, and appellate review is confined to the record before the court below. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 226 (3d Cir. 2009); *Fassett v. Delta Kappa Epsilon (N.Y.)*, 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the court of first instance."). Therefore, the Covered Records would be inadmissible in any future proceeding.

34. Finally, Mr. Pautsch's own submission confirms there is nothing to enjoin. He expressly concedes that he "does not allege that the Liquidation Trustee presently intends to authorize destruction of any records." Motion to Preserve at 18. To confirm, the Liquidation Trustee does not currently intend to destroy any records during the pendency of these chapter 11 cases, and will maintain such records in accordance with the Liquidation Trust Agreement. A request to prevent a hypothetical, unthreatened future act rests on precisely the kind of speculative, non-imminent injury that cannot support relief. *See In re Glob. Indus. Techs., Inc.*, 645 F.3d at 210. The ordinary, good-faith handling of records is not sanctionable, and a party is "under no obligation to preserve or produce" records beyond what these principles require. *In re Frontier Commc'ns Corp.*, 666 B.R. at 287; *see In re Stone & Webster, Inc.*, 359 B.R. 102, 117 (Bankr. D. Del. 2007).

35. Accordingly, the Motion to Preserve should be denied.

## <u>MOTION FOR NON-MONETARY SANCTIONS</u>

### I. The Court Should Require Counsel for GOAT Media and Restrict Mr. Pautsch's Continued *Pro Se* Filings on GOAT Media's Behalf.

36. The Motion to Preserve is the latest step in a pattern of unauthorized *pro se* filings in contravention of the Court's rulings, which have forced the Debtors' estates, and now the Liquidation Trustee, to needlessly incur administrative professional fees. It is settled that "a

corporation may appear in the federal courts only through licensed counsel," and that rule applies equally to a limited liability company, which "does not escape this rule merely because" the filer "is its managing member." *In re 69 N. Franklin Tpk., LLC*, 693 F. App'x 141, 144 (3d Cir. 2017) (quoting *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993)).

37. Mr. Pautsch has been told this repeatedly: (1) this Court cautioned him at the January 30, 2026 hearing (Jan. 30, 2026, Hr'g Tr. at 13); (2) the District Court advised GOAT Media by letter that it must retain Delaware counsel; (3) this Court denied the 2004 Motion because, "[b]ecause G.O.A.T. Media has filed a motion without doing so through counsel, it cannot appear and be heard" (Mar. 12, 2026, Hr'g Tr. at 8); (4) the Court did not permit GOAT Media to participate at the Disclosure Statement Hearing because "a business entity cannot be self-represented, they are required to have counsel, [and this Court] simply [does not] consider *pro se* business entity filings" (Feb. 20, 2026, Hr'g Tr. at 14); (5) the Court did not permit GOAT Media to participate in the Confirmation Hearing, stating "[Mr. Pautsch] is not an attorney and I'm not going to hear from him" (Apr. 16, 2026, Hr'g Tr. at 19); and (6) the District Court dismissed the appeal for failure to obtain counsel.

38. Mr. Pautsch's attempts to circumvent the requirement to obtain counsel by inserting himself in place of GOAT Media have also been denied. The District Court denied the Substitution Motion on these exact grounds, finding that GOAT Media was the real party in interest.

39. Despite all of this, Mr. Pautsch filed the Motion to Preserve—again without counsel, and again outside the narrow claim objection context in which a *pro se* appearance is permitted under the Local Rules—this time relabeling the filing as his own.

40. It is well established in the Third Circuit that bankruptcy courts have the power to curb abusive, groundless, and vexatious conduct by *pro se* litigants. Under the All Writs Act and section 105(a) of the Bankruptcy Code, bankruptcy courts may enjoin “abusive, groundless and vexatious litigation,” including by requiring a litigant to obtain leave of court before making further filings. *See, e.g.*, *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993); *In re Kovalchick*, 371 B.R. 54, 60–62 (Bankr. M.D. Pa. 2006). Such relief is an “extreme remed[y]” that must be “narrowly tailored and sparingly used,” and it may issue only (i) in “exigent circumstances, such as a litigant’s continuous abuse of the judicial process by filing meritless and repetitive actions,” (ii) after “notice to the litigant to show cause why the proposed injunctive relief should not issue,” and (iii) in a form “narrowly tailored to fit the particular circumstances of the case.” *Matter of Packer Ave. Assocs.*, 884 F.2d 745, 746 (3d Cir. 1989); *Brow*, 994 F.2d at 1038. A bankruptcy court applies the same two-part inquiry: whether the litigant has had an opportunity to respond, and whether the record reflects “a continuous pattern of groundless and vexatious litigation.” *In re Kovalchick*, 371 B.R. at 61 (quoting *In re Oliver*, 682 F.2d 443, 446 (3d Cir. 1982)).

41. In addition, section 105 of the Bankruptcy Code provides that bankruptcy courts may take any action “necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.” 11 U.S.C. § 105(a). The Court’s inherent authority includes “the ability to fashion an appropriate sanction for conduct which abuses the judicial process,” including when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Citrix Sys., Inc. v. Workspot, Inc.*, 2020 U.S. Dist. LEXIS 180673, at *18–19 (D. Del. Sep. 25, 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991)). “Federal courts may exercise their inherent power ‘to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process.’” *Id.* at *19 (citing *In re Intel Corp.*

*Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 610–11 (D. Del. 2008)) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991)).

42. Where a non-attorney has made clear his intention to proceed *pro se* on an entity's behalf despite repeated warnings, courts have refused any further opportunity to cure. *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 974 (9th Cir. 2004).

43. The Liquidation Trustee acknowledges that this relief is an exception to the general rule of access to the courts, and that application to *pro se* litigants must be approached with caution. In the Third Circuit, an appropriate balance is reached, and a court may enjoin a *pro se* litigant from future filings where the injunction complies with three requirements: (1) the litigant must be continually abusing the judicial process; (2) the litigant must be given notice of the potential injunction and an opportunity to oppose the court's order; and (3) the injunction must be narrowly tailored to fit the specific circumstances of the case. *See Brow*, 994 F.2d at 1038. Regarding the last requirement, the Third Circuit has supported district court orders imposing pre-filing requirements on *pro se* litigants. *See, e.g.*, *Grossberger v. Ruane*, 535 F. Appx. 84, 87 (3d Cir. 2013) (affirming order enjoining *pro se* litigant from filing additional pleadings without pre-screening by the court); *Abdul-Akbar v. Watson*, 901 F.2d 329, 333, 335 (3d Cir. 1990) (holding that a court may require a *pro se* litigant to obtain court approval before further filings).

44. This Court has previously issued non-monetary sanctions against *pro se* litigants and implemented a pre-screening procedure for any future filings. In *In re Stimwave Techs., Inc.*, the Court imposed non-sanctions on *pro se* litigants that provided, in part, that any proposed filings by the litigants and their related entities were subject to screening by the court before such filings would be permitted to occur. 2024 WL 717770, at *1 (Bankr. D. Del. Feb. 21, 2024), *aff'd sub nom.*, *In re Stimwave Techs. Inc. Perryman v. Province, LLC*, 2024 WL 4626221 (D. Del. Oct. 30,

2024). After confirmation of the plan in *Stimwave*, the *pro se* parties "litigated with frequency, usually asserting unsupported claims." *Id*. at *2. In response, the Liquidating Trustee filed a sanctions motion, seeking to impose non-monetary sanctions on the *pro se* litigants, arguing that their filings were "delaying the administration of the case and depleting the assets of the estate at the expense of the creditors." *Id*. at *4. The Court then entered an order requiring the litigants to show cause why they were not in violation of a court order by refusing to attend mediation they stipulated to with the Liquidating Trustee. *Id*. at *3. After a hearing, the Court determined that it was appropriate to require the *pro se* parties to obtain leave of the court before proceeding with any filings. *Id*. at *9. Specifically, the Court recognized "that placing limitations on a party's ability to file pleadings and other documents imposes certain burdens. However, where, as here, a party has needlessly multiplied proceedings with repetitive and baseless filings, and has been provided with an opportunity to respond, it is appropriate to order the narrowly tailored relief provided in the Sanctions Order." *Id*.

45. The requirements for non-monetary sanctions are satisfied here. Mr. Pautsch's repeated *pro se* filings on GOAT Media's behalf—after numerous express warnings from the Court and the District Court, after the denial of GOAT Media's substitution attempt in the District Court appeal, after this Court denied his Rule 2004 motion on precisely this ground, after the Court denied his participation at the disclosure statement hearing, and after the Court denied his participation at the confirmation hearing—reflect a continuous pattern of filings that GOAT Media and Mr. Pautsch have no authority to make. The non-monetary sanctions can be narrowly tailored such that any further filings by Mr. Pautsch will not be considered unless he first receives leave from the Court. Any further filings by GOAT Media should be automatically stricken, unless they are signed by licensed counsel.

46. Finally, this contested matter affords Mr. Pautsch notice and a full opportunity to be heard on the issue. The Liquidation Trustee therefore respectfully requests that the Court require that (a) any further filings by or on behalf of GOAT Media in these cases be filed through licensed counsel, and (b) any further filings by Mr. Pautsch be subject to the screening procedures set forth in the proposed order, which are designed to follow the screening procedures approved in *Stimwave*. Such an order would not deny access to the courts; it would require only that GOAT Media proceed as the law has long required—through counsel.

## **NOTICE**

47. The Liquidation Trustee will provide notice of this Objection and Motion for Sanctions to: (a) the U.S. Trustee; (b) Mr. Pautsch; (c) the GOAT Media; and (d) any party that requests service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Liquidation Trustee respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and granting such other relief as is just and proper.

Dated: September 21, 2026
Wilmington, Delaware

*/s/ Joseph M. Mulvihill*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Brynna M. Gaffney (Del. Bar No. 7402)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: jmulvihill@ycst.com
bgaffney@ycst.com

*Co-Counsel for the Liquidation Trustee*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
Matthew T. Benz (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone: (312) 499-6300
Facsimile: (312) 499-6301
Email: jbernbrock@sheppardmullin.com
mbenz@sheppardmullin.com

-and-

Jennifer L. Nassiri (admitted *pro hac vice*)
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 228-3700
Facsimile: (310) 228-3701
Email: jnassiri@sheppardmullin.com

-and-

Alyssa Paddock (admitted *pro hac vice*)
30 Rockefeller Plaza, 39th Floor
New York, NY 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
Email: apaddock@sheppardmullin.com

*Co-Counsel for the Liquidation Trustee*