**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

RECEIVED
2026 SEP 23 P 12:38
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10475 (TMH)<br><br>(Jointly Administered)<br><br>Re: D.I. 1789, 1790, 1793 |

**JOHN T. PAUTSCH'S (I) OBJECTION TO LIQUIDATION TRUSTEE'S MOTION FOR NON-MONETARY SANCTIONS INCLUDING A PRE-FILING INJUNCTION AND (II) REPLY IN FURTHER SUPPORT OF MOTION FOR PRESERVATION OF DEBTOR BOOKS AND RECORDS UNDER PARAGRAPH 114 OF THE CONFIRMATION ORDER**

John T. Pautsch ("Movant") submits this (i) objection to the Liquidation Trustee's Objection to the Motion of John T. Pautsch for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order; and Motion for Non-Monetary Sanctions Including a Pre-Filing Injunction [D.I. 1793] (the "Objection" and the "Sanctions Motion"); and (ii) reply in further support of his Motion for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order [D.I. 1789] (the "Motion"), as supplemented [D.I. 1790].

## PRELIMINARY STATEMENT

1. The Sanctions Motion seeks a pre-filing injunction against Movant individually. It identifies no order Movant violated. The rulings it cites concern whether The G.O.A.T. Media, LLC ("GOAT Media") may appear without counsel and whether Movant could substitute himself as appellant in GOAT Media's appeal. GOAT Media may appear in these cases only through counsel. Movant appears here in his own name to assert his own interests. What the Sanctions Motion seeks is a bar on every filing Movant might make, conditioned on a certification concerning the same allocation of interests now under review in the Third Circuit. That is not the narrowly tailored relief the Trustee's own authorities require.

2. The Objection narrows the preservation dispute more than it defeats it. The Trustee confirms that the Motion seeks preservation, not production. Obj. ¶ 18. He confirms that paragraph 114 directs covered third parties not to dispose of or destroy Debtor books and records absent his written authorization or "further order of the Bankruptcy Court." Id. ¶ 17. And he represents that he "does not currently intend to destroy any records during the pendency of these chapter 11 cases." Id. ¶ 34. That representation confirms that the requested preservation tracks the Trustee's own stated present course. But it is unsworn, limited to his current intention, and limited to the pendency of these cases. It leaves the paragraph 114 authorization power unchanged and provides no protection through the pending appeal and any resulting remand.

3. The Objection's factual premises rest on no new sworn statement. It attributes to the January 30 ruling a finding the ruling did not state. It asserts that the Covered Records "do not exist" on the strength of evidence directed to the claims objection, not the six categories now defined for preservation. The evidentiary posture is straightforward: Movant supplied the documentary record the Court admitted and reviewed. The Trustee supplies no new declaration and no Debtor-side source record addressing those categories. Instead, the Objection asks the Court to infer nonexistence, irrelevance, or inadmissibility from conclusions advanced in a different proceeding. The January 30 ruling decided whether the record then before the Court established an allowable debt. It did not decide whether the records identified in the Motion exist or whether they should remain preserved. Standing does not exhaust the Court's authority. Paragraph 114 expressly reserves the Court's authority to enter a "further order," and section 105(a) permits the Court, on its own, to take action necessary or appropriate to implement its orders.

## I. OBJECTION TO THE SANCTIONS MOTION

### A. Movant May Be Heard on Relief Sought Against Him.

4. Whatever the Trustee contends about Movant's standing to seek preservation, the Sanctions Motion seeks relief against Movant personally. The Trustee acknowledges that this contested matter "affords Mr. Pautsch notice and a full opportunity to be heard." Obj. ¶ 46.

### B. The Sanctions Motion Identifies No Order Movant Violated and No Pattern of Vexatious Litigation.

5. The Trustee's own authorities describe a pre-filing injunction as an "extreme remed[y]" that must be "narrowly tailored and sparingly used." *Matter of Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989). Such an injunction is available only in "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions," after notice and an opportunity to respond, and in a form "narrowly tailored to fit the particular circumstances of the case." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993); Obj. ¶¶ 40, 43.

6. The Trustee's characterization of six prior "warnings" overstates the record. The first was the Court's January 30 statement that it did not "think it's wise to proceed pro se," made while construing Local Rule 9010-1(e)(3) to permit the appearance then before it. Obj. ¶¶ 9, 37. The Trustee's own background subsequently attributes the disclosure-statement filing, Rule 2004 Motion, and Plan response to GOAT Media. Id. ¶¶ 14–16. His sanctions argument then recharacterizes those matters as "Mr. Pautsch's repeated pro se filings on GOAT Media's behalf." Id. ¶ 45. None imposed a pre-filing restriction on Movant individually. None prohibited him from filing papers asserting an individual interest. None found a continuous pattern of groundless and vexatious litigation by Movant individually.

7. Since April 16, 2026, no paper has been filed in these cases on behalf of GOAT Media. The filing now offered as the basis for restricting Movant is a preservation motion filed in his

own name. It seeks no production, recovery, claim allowance, or merits adjudication. The earlier GOAT Media rulings do not establish a continuous pattern of groundless and vexatious litigation by Movant individually.

8. By the Trustee's own account, *In re Stimwave Technologies* followed post-confirmation litigation that was frequent and "usually asserting unsupported claims." It also followed an order to show cause concerning the sanctioned parties' refusal to attend a mediation they had stipulated to. Obj. ¶ 44. *Packer* likewise involved a litigant who had filed or attempted twenty-seven petitions relitigating issues already decided. 884 F.2d at 747. No comparable order or record exists here.

**C. The Trustee's Estate-Resources Argument Does Not Support the Sanctions Motion.**

9. The Trustee places estate resources directly at issue. He asserts that Movant's filings have "needlessly depleted estate assets" and seeks sanctions to prevent the "continued depletion of estate resources." Obj. ¶ 4. Yet the Motion seeks preservation, not production, and the Trustee separately represents that he presently intends to maintain records during these cases. Id. ¶¶ 18, 34. If preservation largely tracks the Trustee's stated present course and imposes no production obligation, the Objection identifies no corresponding estate-administration benefit from litigating against that limited relief.

**D. The Motion Is Movant's Own Filing.**

10. The Motion invokes paragraph 114 to preserve Debtor records bearing on interests he asserts individually. Movant may appear pro se as to interests belonging to him individually. 28 U.S.C. § 1654; the entity-representation rule does not convert an individual filing into unauthorized representation of GOAT Media. The Motion seeks no allowance, distribution, recovery, or discovery and leaves ownership, claimant status, liability, damages, value, and the

appellate issues for adjudication in the proceedings where they properly arise. Motion §§ II, IV, IX; Further Revised Proposed Order ¶ 7. The Trustee's authorities concern a principal taking an assignment of, or substituting into, an entity's claim. *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983). Neither occurred here. Overlap in subject matter is not representation.

**E. The Trustee's Proposed Sanctions Order Is Not Narrowly Tailored.**

11. The conduct the Trustee identifies concerns GOAT Media's attempted pro se participation and Movant's effort to substitute himself into GOAT Media's District Court appeal. The Trustee expressly states that the requested sanctions arise from "repeated filings asserting GOAT Media's interests" and that he "does not seek sanctions under Bankruptcy Rule 9011 based on representations contained in the Motion to Preserve at this time." Obj. ¶ 7 n.4. Yet paragraph 4 of the proposed order bars every filing by Movant "in his individual name or otherwise." As drafted, it would require leave before Movant could respond to relief sought against him. Paragraph 7 separately provides that the Trustee and other parties need not respond to a motion for leave unless the Court directs otherwise, which addresses the response-cost concern the Trustee identifies without paragraph 4's broader restriction on Movant individually. The requested restriction therefore extends beyond the conduct the Trustee identifies as the basis for sanctions.

12. Paragraph 6 conditions leave on a certification that each filing "asserts an interest belonging to him individually and not to GOAT Media." The District Court held that GOAT Media "is—and has always been" the real party in interest, and that holding is now before the Third Circuit in No. 26-2443. Obj. ¶ 12. The proposed order would condition Movant's future access to this Court on a categorical certification concerning the same allocation of interests now

under appellate review. A filing restriction aimed at unauthorized representation of an LLC does not require that result.

## II. REPLY IN FURTHER SUPPORT OF THE MOTION

### A. The Objection Enlarges Prior Rulings.

13. The Objection states that the Court disallowed the claims "finding that the Debtors had no business relationship with GOAT Media" (Obj. ¶ 1), and later states that the Court "already found" both that no such business relationship existed and that Rosen lacked authority to bind the Debtors. Id. ¶¶ 30, 32. The Disallowance Order sustains the objection and disallows Claims 16 and 17; it states no finding concerning the existence of a business relationship. D.I. 1326. Paragraph 21 similarly states that, at confirmation, the Court held GOAT Media lacked standing because it "no longer held an economic interest" in these cases. The transcript states only that GOAT Media "lacks standing to be heard regarding plan confirmation"; the economic-interest formulation came from Debtors' counsel immediately beforehand. Apr. 16, 2026 Hr'g Tr. 19:12–20:3. At the January 30 hearing, the Court did address Rosen's authority to bind Village Roadshow, but in determining whether the record established Debtor liability: the Court found insufficient evidence that Rosen was an authorized representative who could bind Village Roadshow and cause it to incur liability to GOAT Media. Jan. 30, 2026 Hr'g Tr. 20:4–21:11. That determination did not decide what Rosen did through VREG's systems, how submissions were handled or transmitted, or what corresponding Debtor records exist. The Court expressly recognized that "there were clearly discussions" between Rosen and GOAT Media and stated that whether Rosen "did anything improper" was "certainly not before me today." Id. at 20:16–21:1. In each instance, the Objection converts a ruling the Court made into a determination it did not.

14. The "no business relationship" language comes from counsel's argument, drawing on the Berg Declaration. Id. at 9:8–10. The evidentiary asymmetry remains: Movant supplied the documentary Compendium the Court admitted and reviewed; the Debtors supplied their characterization of what their internal records showed; and the source records necessary to test that characterization were not placed before the Court.

**B. The Debtors' Own Representations Identify Records Within the Covered Records.**

15. The Debtors' reply in support of their claims objection states that they entered into a "first look" non-writing executive producer agreement with Rosen in February 2019, and that the agreement expired in February 2022. D.I. 1263 at 2 n.3. At the January 30 hearing, the Debtors further represented that, under that agreement, Rosen was "contractually obligated to bring entertainment projects to Village for its consideration." Jan. 30, 2026 Hr'g Tr. 5:13–6:2. The agreement itself was not placed in the evidentiary record. Yet the Debtors relied on its existence, terms, expiration date, and allocation of authority to characterize Rosen's role. That agreement and the related authority records are the source materials for the Debtors' own account and fall squarely within Motion § VII(b).

16. The Debtors further represented that Village "would need to independently decide whether to engage with G.O.A.T. Media, which . . . Village declined to do." Id. at 6:4–7. The evidence counsel then cited for that asserted disposition was Rosen's March 9, 2023 email. Id. at 8:16–9:3. The Debtors thus described the decision as Village's own and supported it with Rosen's words. Any Debtor records reflecting, communicating, or implementing that asserted disposition fall within Motion § VII(a). The Objection does not say whether such records exist.

17. Movant's April 8, 2024 notice to VREG leadership, including Mr. Berg, then VREG's general counsel, records that Rosen communicated with Movant from his VREG company email

address and, in 2022, instructed Movant to stop using it. Evidentiary Compendium K-1; Appx. 44–45. Movant renewed that notice on April 27, 2024. Evidentiary Compendium K-1C; Appx. 48; Motion § V.C. Records of that account and those notices fall within Motion § VII(f). Their legal significance remains a merits question. Their status as Debtor records does not. The missing Debtor-side records are not abstract. The Debtors relied on Rosen's first-look agreement without placing it in evidence; attributed project disposition to a Village decision without supplying the corresponding disposition record; and relied on Rosen's communications notwithstanding his express disclosure that Movant's materials had been submitted beyond Village without supplying the corresponding routing record. Those are precisely the records the Motion preserves.

**C. Movant Supplied the External Record;
the Corresponding Debtor-Side Record Must Be Preserved.**

18. Movant supplied a documentary record materially broader than the public-facing claims record now reflects. Claims 16 and 17 were filed in July 2025; their underlying Form 410 claim forms are no longer publicly accessible through Verita. Movant later submitted the Supplemental Evidentiary Compendium and Record Clarification in support of Claims 16 and 17, supplying hundreds of pages of additional documentary evidence. On January 30, 2026, the Court admitted the Compendium without objection and stated that it had "read every page" of Movant's submissions. Jan. 30, 2026 Hr'g Tr. 14:14–22, 17:19–20. The Compendium itself was not separately docketed and does not appear as a publicly accessible filing on Verita. Movant subsequently submitted additional evidentiary material through Verita to supplement the existing record. Verita processed that later submission as Claim 94, which was separately indexed and publicly displayed with its supporting PDF. As of September 21, 2026, the Claims Register identifies Claims 16 and 17 as "EXPUNGED," without publicly accessible Form 410 claim

forms, while Claim 94 is identified as "W/D" but its supporting PDF remains publicly viewable. The public-facing record therefore presents the filings differently from the sequence in which the claims and supporting evidence were submitted, supplemented, admitted, and adjudicated. The record actually before the Court included Claims 16 and 17, the admitted Compendium, and later supplemental evidence, and was materially broader than the Claims Register now reflects.

19. The admitted record is not a collection of unsolicited submissions followed by speculation. It documents a multi-year VREG-facing engagement. Rosen used VREG's name, sanctioned email account, personnel, infrastructure, and asserted authority to solicit Movant's slate, obtain intellectual property and development materials, access relationships, direct communications, and route projects through VREG and third parties. The filed Motion states that the Evidentiary Compendium documents more than ten of Movant's projects moving through that relationship. Motion § VI.B. The record contains contemporaneous development instructions, submissions, routing communications, project materials, status requests, recurring project and accountability breakdowns, third-party engagement, verification efforts, disposition demands, and notices to VREG leadership. The record already identifies the submissions, routing, timing, participants, unresolved dispositions, and later market activity. What remains inside VREG is the internal decision, transaction, and accounting record connecting—or separating—those events.

20. This is not a credibility-only dispute dependent on competing recollections. Movant supplied the contemporaneous external record: the underlying work, transmissions, instructions, project tracking, routing communications, disposition demands, notices, and verification evidence. The Court admitted that documentary record. Movant cannot manufacture VREG's internal emails, project databases, Board materials, authority records, advisor analyses, data-

room histories, transaction files, or accounting. Those records are the internal account of what VREG did with the projects, information, relationships, rights, and value after receipt. They either corroborate, contradict, or complete the admitted chronology. Movant has already supplied one side of that comparison. The Debtor-side record supplies the other. Preservation prevents the absence of VREG's own records from becoming the answer to questions those records could resolve.

21. The governance record is equally concrete. The filed Supplement establishes a licensing and governance relationship through which VREG used the Village Roadshow name and identity; reported economic and governance interests retained by Australian Village Roadshow entities following the 2017 restructuring; and VREG's public description of Village Roadshow Australia as a significant investor and strategic partner, including through Board participation and advice concerning VREG's China strategy. The Australian group later stated that it terminated VREG's authority to use the Village Roadshow name following the bankruptcy filing. D.I. 1790 §§ II–III. The filed Motion separately identifies overlapping domestic investment, consulting, governance, and management relationships during the same period VREG was receiving and handling U.S.-originated intellectual property, development services, commercial relationships, systems, and strategic initiatives through its personnel and infrastructure. Motion § VI.A–C. The record shows that projects and information moved beyond Village, dispositions remained unresolved, and later commercial activity occurred. The unresolved question is how VREG treated the corresponding rights, opportunities, liabilities, and value. The Debtor-side records are the internal account of who possessed authority and access, what information moved through which relationships, what decisions followed, and how those decisions were reflected in VREG's development, restructuring, transactions, and books. Movant

supplied the external record. The requested preservation relief concerns the corresponding Debtor-side record.

**D. The Debtors' Account Changed; the Source Records Were Not Placed Before the Court.**

**1. The Debtors' Position Changed After They Received and Reviewed the Evidentiary Compendium.**

22. The sequence matters. On December 19, 2025, before Movant supplied the Supplemental Evidentiary Compendium and Record Clarification, the Debtors objected to Claims 16 and 17 after reviewing the Claims, their supporting materials, and the Debtors' books and records. D.I. 1167. On January 6, 2026, Movant delivered the Supplemental Evidentiary Compendium to the Debtors' claims agent, and on January 9 notified the Court of that delivery. D.I. 1243. The Compendium comprised approximately 349 pages of contemporaneous communications, project records, directives, submissions, notices, verification materials, and related documentary evidence concerning the VREG-facing engagement.

23. After receiving and reviewing those supplemental materials, the Debtors then asserted that they had reviewed the Claims, Movant's supplemental materials, and their own books and records and determined that they had no contract or business relationship with GOAT Media and no development materials concerning the referenced projects. Obj. ¶ 8; Berg Decl. at 2. At the same time, however, the Debtors supplied additional facts concerning the engagement: VREG had retained Rosen pursuant to what the Debtors specifically described as a "first look" non-writing executive producer agreement; Rosen was "contractually obligated to bring entertainment projects to Village for its consideration"; that agreement purportedly expired in February 2022; and Village independently decided whether to engage with GOAT Media and, according to the Debtors, declined to do so. D.I. 1263 at 2 n.3; Jan. 30, 2026 Hr'g Tr. 5:13–6:7.

The Debtors' explanation thus became materially more specific after the supplemental record was received and reviewed.

24. The source records supporting that explanation were not placed before the Court. Most significantly, the Debtors relied on the existence, character, expiration, and allocation of authority under a "non-writing executive producer agreement" without placing that agreement in the evidentiary record. That characterization matters because the admitted record concerns Rosen's solicitation and handling of writing, intellectual property, development materials, producer services, and third-party submissions. The label does not establish the agreement's terms. The agreement itself, together with related authority records, is the primary evidence of what Rosen was authorized to solicit, receive, develop, transmit, or otherwise handle through VREG and what limitations governed that activity.

**2. Conflicting Representations and Unresolved Dispositions Concern the Core of the Engagement.**

25. The disposition issue is fundamental. Movant was not given contemporaneous, project-by-project VREG dispositions during the multi-year engagement involving more than ten projects. Instead, in a 2026 bankruptcy proceeding, the Debtors asserted that Village independently decided whether to engage with GOAT Media and declined, and supported that position with Rosen's March 9, 2023 statement that "Village passed on all your stuff anyway." Jan. 30, 2026 Hr'g Tr. 6:4–9:3; Evidentiary Compendium M-85. The same communication stated that Movant's materials had been "submitted to parties beyond Village" and that Rosen no longer had a deal with VREG, giving him "more liberty with submissions outside of their ecosystem." The corresponding Debtor records should establish who made each asserted disposition, when it was made, what projects and materials it covered, what was transmitted, and what occurred before and after the asserted decision.

26. This was not an engagement involving isolated unsolicited ideas. The admitted record concerns repeated solicitation and handling of intellectual property, scripts, formats, bibles, pitch videos, other development materials, producer services, strategic information, talent and executive attachments, commercial relationships, and third-party access through VREG-facing channels. The record includes Movant's June 2021 proposal to secure Steven T. Mnuchin as chief executive of a debate league associated with THE GREAT DEBATE while that project was being developed through VREG channels. Evidentiary Compendium J-57–J-58. The same development record later includes SHADOWS ON THE GRASS, a screenplay controlled by Mr. Mnuchin's wife—Louise Linton—and submitted for VREG evaluation with her authorization as rights holder. Evidentiary Compendium M-74. No formal disposition was transmitted for that screenplay, and no disposition was provided concerning the proposed Mnuchin attachment to THE GREAT DEBATE. These were not abstract names in the record: one was a proposed executive attachment to Movant's VREG-facing project; the other was a rights holder whose intellectual property entered VREG's evaluation process. The unresolved-disposition problem therefore extends beyond Movant's own projects to proposed attachments, third-party rights holders, and intellectual property introduced through the same development channel. Movant repeatedly sought project status and dispositions and documented those requests. The record nevertheless reflects unresolved dispositions, changing accounts of Rosen's authority and affiliation, Rosen's express statement that materials were submitted beyond Village, VREG-system communications concerning the same projects, and later commercial activity involving projects and relationships identified in the record. In that setting, the disposition records are VREG's own account of what it accepted, rejected, transmitted, pursued, developed, or otherwise

acted upon—and what occurred with the people, rights, and property introduced through those opportunities.

The significance of these filings and references is evidentiary, not reputational. They show Movant functioning as a producer—bringing existing relationships into the development process, securing new talent, executives, partners, and collaborators, supplying relevant data, and responding to VREG-facing requests concerning projects and attachments. That activity generated identifiable projects, opportunities, third-party engagement, and subsequent market activity while Movant's participation and project dispositions remained unresolved and VREG later entered bankruptcy.

The record also identifies projects Movant created, developed, and produced that later moved into production or derivative exploitation without his participation, while no corresponding disposition, rights acquisition, or resolution of his interests in the underlying material was provided to him.

Preserving the corresponding Debtor-side record is therefore necessary to establish how VREG internally handled the work, relationships, and opportunities Movant created, secured, and introduced. *See In re Syntax-Brillian Corp.*, 551 B.R. 156, 162 (Bankr. D. Del. 2016) (denying compelled production while stating that the liquidation trustee was responsible for preserving the Debtors' books and records, including documents that may evidence "fraudulent prepetition conduct," pending appropriate direction from the court); *Bull v. United Parcel Serv.*, Inc., 665 F.3d 68, 73 (3d Cir. 2012) (stating that spoliation requires, among other things, relevant evidence within the party's control and a reasonably foreseeable duty to preserve).

### 3. The Concerns and Requests for Verification Predated the Bankruptcy and Claims Litigation.

27. These concerns did not originate with the bankruptcy or the claims litigation. By early 2024, Movant had begun independently verifying Rosen's representations, authority, project handling, and third-party activity. On April 8, 2024, Movant notified VREG leadership through then-general counsel Berg concerning Rosen's authority, conduct, and handling of the projects and requested VREG review and clarification. Evidentiary Compendium K-1. Movant followed up on April 27, 2024. Evidentiary Compendium K-1C. The Compendium records no response to those communications. Movant continued seeking clarity regarding project status and VREG responsibility before the March 17, 2025 bankruptcy filing. The preservation questions therefore arise from contemporaneous efforts to complete the record for what occurred while the underlying events were still unfolding, not from a theory created after litigation began.

### 4. The Prepetition Sale and Restructuring Process Created a Separate Transaction Record Requiring Preservation.

28. The same preservation issue extends from project disposition into VREG's prepetition sale and restructuring process. The Debtors' own account states that Goldman Sachs initially marketed VREG as a going concern, obtained meaningful interest, and reached exclusivity with a potential purchaser, but that uncertainty arising from the Warner Bros. arbitration prevented the transaction from closing. Goldman thereafter continued marketing VREG and its assets to a broader purchaser universe; VREG later determined that greater value could be realized by separating the Library Assets, Derivative Rights, and Studio Business; and Solic Capital Advisors replaced Goldman in February 2025 as VREG approached Chapter 11. During the same broader period, Accordion was advising VREG concerning restructuring and strategic alternatives. The identity of the exclusive purchaser, what that purchaser evaluated, what

information and rights were presented, what conditions prevented closing, what alternatives were considered to address the Warner Bros. dispute, and why the process shifted from a going-concern transaction to separate asset dispositions are all matters reflected in the corresponding transaction records. Those records should also establish whether Movant's projects, rights, relationships, strategic materials, or unresolved claims entered any Goldman, Accordion, Solic, Board, diligence, valuation, data-room, or purchaser workstream. Preservation permits that chronology to be tested from the transaction record rather than inferred from the outcome—or accepted on the basis of unsubstantiated representations.

### 5. The Documentary Sequence Presents Evidence-Bearing Questions That Cannot Be Resolved by Characterization Alone.

29. Taken together, the sequence is substantially broader than a disagreement over contract formation or an unpaid debt or the disposition of a single project. The admitted record documents repeated solicitation and handling of protected works through VREG-facing channels; continuing access to intellectual property, development materials, services, relationships, and commercial opportunities; development instructions and third-party routing; repeated demands for project status and disposition; changing accounts of Rosen's authority and affiliation; express transmission of materials beyond Village; prepetition verification efforts and notices to VREG leadership; unresolved dispositions; and later commercial activity involving projects and relationships reflected in the record. At the same time Movant was escalating those verification efforts, VREG entered restructuring, valuation, and sale processes that necessarily generated a separate transaction record concerning assets, rights, access, diligence, transactions, disposition, and value. After receiving and reviewing approximately 349 pages of supplemental evidence, the Debtors supplied a materially more specific account involving a defined Rosen agreement, a contractual submission duty, an expiration date, asserted limits on authority, and an

asserted Village disposition—without placing the agreement or corresponding authority, routing, disposition, transaction, or accounting source records before the Court. That cumulative documentary sequence is the preservation issue. Movant does not ask the Court here to determine misuse, ownership, liability, causation, or damages. Preservation keeps the source evidence necessary to test that sequence from disappearing before those questions are properly adjudicated. Those records should remain available so that disputed questions can be resolved from the source evidence rather than from incomplete or competing accounts.

**E. Paragraph 114 Reserves the Order the Motion Requests.**

30. Paragraph 114 provides that "[t]he Debtors shall also instruct any third parties, including, unless otherwise set forth in the applicable Sale Order or Asset Purchase Agreement, a Purchaser, or professionals possessing such books and records." D.I. 1565 ¶ 114. It further provides that "each such party shall be directed not to dispose of or destroy any such books and records until such time as authorized in writing by the Liquidation Trustee or further order of the Bankruptcy Court." Id. Paragraph 114 thus expressly reaches Debtor books and records possessed by professionals, including any such records possessed by Goldman, Accordion, or Solic arising from the prepetition sale and restructuring process described above. See ¶ 28, supra. The Trustee concedes that the non-destruction directive is enforceable "by the Court." Obj. ¶ 28. He separately represents that he "does not currently intend to destroy any records during the pendency of these chapter 11 cases" and "will maintain such records in accordance with the Liquidation Trust Agreement." Id. ¶ 34. The requested order addresses both categories: Covered Records maintained by or transferred to the Liquidation Trust, and Covered Records held by others and subject to the paragraph 114 authorization mechanism. The Motion stated that Movant does not seek to modify section 3.8 of the Liquidation Trust Agreement, and he does not. The

requested order does not alter the Trustee's authority under that provision; it defers the exercise of that authority as to Covered Records for the Preservation Period defined in the proposed order, subject at all times to further order of this Court, consistent with the Trustee's own representation that he presently intends to maintain records. Obj. ¶ 34.

31. The Motion invokes the authority paragraph 114 expressly reserves to this Court. The Trustee's assertion that paragraph 114 operates "solely" for his benefit and that of purchasers supplies a limitation the provision does not contain. Obj. ¶¶ 3, 27. He nevertheless concedes that its non-destruction directive is enforceable "by the Court." Id. ¶ 28. The Trustee calls the requested relief an effort to "strip" his authority and "rewrite" the Confirmation Order. Id. Paragraph 114 places authorization in the Trustee "or" the Court. An order under the second clause implements paragraph 114; it does not rewrite it. Nor do the Trustee's common-law preservation authorities erase that existing directive. His assertion that no preservation obligation exists "under any applicable law," Obj. ¶ 29, relies in paragraph 31 on authorities addressing when a litigation-preservation duty arises; paragraph 114 independently supplies a court-ordered non-destruction mechanism. The requested order reaches defined records, remains subject at all times to further order of this Court, and leaves paragraph 114, every applicable Sale Order and Asset Purchase Agreement, and section 3.8 of the Liquidation Trust Agreement unchanged.

Paragraph 114 itself states no fixed expiration date; it directs that covered records not be disposed of or destroyed until written authorization by the Liquidation Trustee or further order of this Court. The requested order therefore does not extend paragraph 114's duration; it defers the Trustee's authorization authority as to Covered Records while leaving the Court's existing authority intact. Further Revised Proposed Order ¶ 6; Motion § IX. Enforcing an order already in

place requires no adversary proceeding. Motion § VIII (citing *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000)).

**F. Section 105(a) Authorizes the Court to Act Without Resolving Standing.**

32. The Trustee invokes section 105(a) to restrict Movant's filings. He quotes its authorization of any action "necessary or appropriate to enforce or implement court orders or rules." Obj. ¶ 41. The same provision states that no Code provision "providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules." 11 U.S.C. § 105(a). The Trustee's standing objection does not reach the Court's authority to implement its own Confirmation Order.

33. Movant separately satisfies section 1109(b), which reaches a party with "a legally protected interest that could be affected by a bankruptcy proceeding." *In re Glob. Indus. Techs.*, Inc., 645 F.3d 201, 210 (3d Cir. 2011). Movant is prosecuting No. 26-2443, which challenges the judgment preventing him from pursuing the appeal from this Court's disallowance order. The Trustee calls that interest speculative. Obj. ¶ 23. The appeal is docketed and pending, and the Trustee acknowledges it. Id. ¶¶ 13, 32. *Flintkote* held that disallowed claims could not themselves confer creditor standing and then separately considered whether other asserted rights supplied party-in-interest standing; *Arbah Hotel* involved a prospective guardianship appointment that had not occurred. Obj. ¶¶ 21, 23. Neither addresses an appeal already docketed and pending. The Covered Records are governed by an authorization mechanism created in this case. Their destruction during that appeal would eliminate evidence before any resulting proceeding determines whether and how it may be used.

**G. The Trustee's Production Authorities Do Not Apply.**

34. The Trustee's production authorities answer a question the Motion does not present. He concedes that the Motion "seeks preservation rather than production." Obj. ¶ 30. Yet he relies on authorities addressing compelled production of documents that do not exist. *Sonnino v. Univ. Kan. Hosp. Auth.*, 220 F.R.D. 633, 640 (D. Kan. 2004); *Schwartz v. Mktg. Publ'g Co.*, 153 F.R.D. 16, 21 (D. Conn. 1994). Those cases do not answer whether records governed by paragraph 114 should remain intact. *Syntax-Brillian* drew the same distinction, denying compelled production while recognizing the liquidation trustee's responsibility to preserve the Debtors' books and records pending appropriate direction from the court. *See In re Syntax-Brillian Corp.*, 551 B.R. at 162. The Trustee's remaining authority requires that a contention that records exist be "supported by evidence." Obj. ¶ 30 (quoting *Pierce v. Town of Golden Meadow*, 2026 WL 1328213, at *3 (E.D. La. May 13, 2026)). The evidence here includes the Debtors' own representations identified in paragraphs 15–17 above.

35. The Trustee's four-part characterization of the Covered Records does not support denial of preservation. He asserts that they either (1) do not exist, (2) are irrelevant, (3) are inadmissible, or (4) are ordinary corporate records for which no destruction is threatened. Obj. ¶ 29. The Objection's own formulation is narrower: "Aside from general corporate records, the Liquidation Trustee is unaware of any responsive and relevant records of the type the Motion to Preserve identifies." Obj. ¶ 3. That is not a sworn determination of nonexistence. The Objection supplies no new declaration and no Debtor-side project, authority, routing, transaction, valuation, accounting, or disposition record addressing the six defined categories. The earlier Berg Declaration addressed whether the Debtors had a contract or business relationship with GOAT Media and whether they possessed development materials concerning the referenced projects; it

did not adjudicate the six preservation categories now before the Court. The Trustee's appellate-record authorities likewise define what a reviewing court considers; they do not support the broader conclusion that the Covered Records "would be inadmissible in any future proceeding." Obj. ¶ 33. No mandate has issued. What evidence may be received in any proceeding on remand will be determined then, not by the Trustee now. Relevance and admissibility remain questions for the tribunal that later confronts the evidence; destruction cannot decide them first. And to the extent the records are ordinary corporate records, the Trustee represents that he presently intends to maintain records during these cases. The Objection therefore identifies no category for which destruction now serves any adjudicative or estate-administration purpose.

**H. The Trustee's Irrelevance Argument Ignores What the Covered Records Establish.**

36. The Trustee states that the Covered Records either "(1) do not exist, (2) are not relevant to any pending or reasonably foreseeable litigation, (3) are inadmissible, or (4) consist of ordinary corporate records for which no destruction is threatened." Obj. ¶ 29. That characterization strips the records of their actual subject matter. The Covered Records show what VREG and its agents did after receiving Movant's intellectual property, authorship, creative work, development services, methodologies, systems, commercial strategies, relationships, labor, and other contributions through VREG-facing channels. They document the internal conduct corresponding to an external record this Court has already admitted and reviewed.

37. The Trustee's own framing defeats his relevance argument. He expressly characterizes Movant's authorship and copyright interests as "rights he allegedly holds against others." Obj. ¶ 24. Those rights arise from the same Covered Works, services, relationships, submissions, transmissions, and downstream commercial activity that entered and moved through VREG-facing channels. Any resulting third-party exposure therefore does not sever the

relevance of the Debtors' records; it reinforces it. Preservation also protects affected third parties by ensuring that rights, responsibilities, and downstream exposure are determined from a complete source record rather than incomplete attribution, assumption, or inference. The contemporaneous record further shows that, before bankruptcy and before the present litigation, Movant sought verification, project status, VREG review, clarification, and resolution. The Debtors' records are the source evidence of the internal decisions, access, routing, development, valuation, transactions, accounting, and third-party transmission corresponding to that established external record. Having invoked Movant's asserted rights against third parties to deny him an interest in the estates, the Trustee cannot simultaneously characterize litigation concerning those same rights as unforeseeable or the VREG records bearing on them as irrelevant. Obj. ¶¶ 24, 32. The positions are incompatible.

38. The relevance is broader than any single project or damages theory. The admitted record spans creative works, development services, systems, commercial strategy, relationships, submissions, routing, disposition demands, and later market activity. The corresponding Debtor-side record extends to internal communications, authority, access, project databases, advisor analyses, diligence, data-room activity, valuation, accounting, transaction files, restructuring, and sale processes. Those records are the Debtor-side counterpart to the external chronology already admitted and preserve the evidence necessary to determine the resulting rights, liabilities, damages, and accountability.

39. The Trustee offers no corresponding evidentiary basis for treating those records as dispensable. The Debtors relied on Rosen's "first look" non-writing executive producer agreement, its expiration, and its allocation of authority to characterize Rosen's role, yet the agreement itself was not placed in the evidentiary record. They relied on asserted Village

disposition decisions without supplying the corresponding disposition records. They relied on their review of internal books and records while the underlying source records were not presented. And the Trustee now represents that he does not presently intend to destroy records while opposing an order that would preserve the defined Covered Records through the appeal and any remand, and thereafter unless and until further order of this Court. Obj. ¶¶ 17, 29, 34. On this record, preservation does not presume wrongdoing. It preserves the evidence necessary to prove or disprove it.

**I. The Trustee's Own Representation Defines the Remaining Dispute.**

40. The Trustee "does not currently intend to destroy any records during the pendency of these chapter 11 cases." Obj. ¶ 34. He cites *Global Industrial Technologies* for the proposition that a request to prevent an "unthreatened future act" cannot support relief. Id. *Global Industrial Technologies* addresses standing to object to plan confirmation. It does not address an order implementing a preservation provision this Court entered. The limitation is sharper than paragraph 34 alone suggests. Footnote 3 states a preservation intention specifically for "general corporate records unrelated to the 'Covered Works.'" Obj. ¶ 3 n.3. It therefore does not supply a record-specific commitment concerning the Covered Works themselves. These cases may be closed by final decree upon full administration, a date that need not coincide with conclusion of No. 26-2443 or any proceedings on remand. See Fed. R. Bankr. P. 3022. The Trustee's stated present intention confirms rather than defeats the requested relief. The requested order supplies what his representation does not: preservation of the Covered Records through the appeal and any remand, and thereafter unless and until further order of this Court, and Court supervision before paragraph 114 authorization is exercised.

41. Mr. Berg received Movant's April 2024 notices concerning Rosen as VREG's general counsel, ¶ 17, supra; executed the declaration on which the Trustee now relies, Obj. ¶ 8; and now holds the authorization power paragraph 114 confers. That continuity presumes no misconduct. It is the structural reason preservation of the Covered Records should rest with the Court during appellate review.

## RELIEF REQUESTED

42. Movant requests entry of the Further Revised Proposed Order, substantially in the form attached hereto as Exhibit A. If the Court declines to enter that Order, Movant alternatively requests an order (i) providing that the Trustee's representation in paragraph 34 of the Objection extends to Covered Records maintained by or transferred to the Liquidation Trust through the conclusion of No. 26-2443, any proceedings on remand arising from it, and thereafter unless and until further order of this Court; and (ii) directing that no authorization under paragraph 114 permitting disposal or destruction of Covered Records issue during that period unless authorized by further order of this Court, with notice to Movant and an opportunity to be heard on any request by the Trustee for such relief.

## CONSENT TO ENTRY OF FINAL ORDERS

43. Pursuant to Del. Bankr. L.R. 9013-1(h), Movant consents to the entry of final orders or judgments by this Court on the Motion and the Sanctions Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## CONCLUSION

44. The Trustee's positions cannot be reconciled. He invokes depletion of estate resources while opposing preservation that imposes no production obligation and, by his own account,

tracks what he presently intends to do. He invokes Movant's asserted rights against third parties to deny him an interest here while arguing that litigation concerning those same rights is unforeseeable and the records bearing on them irrelevant. Obj. ¶¶ 4, 24, 32, 34. The Court has already admitted and reviewed the documentary record of solicitation, development activity, routing, unresolved dispositions, third-party transmissions, and notices. What remains in the Debtor-side record is the internal account: the decisions, authorizations, transactions, and accounting corresponding to that record. The Trustee supplies no Debtor-side source record with this Objection. The Trustee cannot rely on an account of what occurred internally while treating the corresponding source records as unnecessary. The Court need not resolve the ultimate rights today. It need only preserve the record through which they can be resolved. Movant therefore requests that the Court deny the Sanctions Motion, grant the Motion as supplemented or, alternatively, grant the relief described in paragraph 42, and grant such further relief as is just.

Dated: September 23, 2026

Respectfully submitted,

John T. Pautsch
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
310.745.0257
legal@thegoat.com

**CERTIFICATE OF SERVICE**

I, John T. Pautsch, certify that on September 23, 2026, I served true and correct copies of John T. Pautsch's (I) Objection to Liquidation Trustee's Motion for Non-Monetary Sanctions Including a Pre-Filing Injunction and (II) Reply in Further Support of Motion for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order by email, upon the parties identified below.

Kevin P. Berg
Liquidation Trustee
750 N. San Vicente Blvd., Suite 800 West
West Hollywood, CA 90069

Kevin.Berg@vreg.com

Office of the United States Trustee
Attn: Jane M. Leamy
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

Jane.M.Leamy@usdoj.gov

Sheppard, Mullin, Richter & Hampton LLP
Justin R. Bernbrock, Matthew T. Benz
321 North Clark Street, 32nd Floor
Chicago, IL 60654
Telephone: (312) 499-6300

jbernbrock@sheppardmullin.com, mbenz@sheppardmullin.com

Young Conaway Stargatt & Taylor, LLP
Joseph M. Mulvihill, Brynna M. Gaffney
1000 North King Street
Wilmington, DE 19801

jmulvihill@ycst.com, bgaffney@ycst.com

Executed on September 23, 2026

John T. Pautsch
9903 Santa Monica Blvd. #169
Beverly Hills, CA 90212
310.745.0257
legal@thegoat.com

# Exhibit A

# Further Revised Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
|---|---|
| VILLAGE ROADSHOW ENTERTAINMENT GROUP USA INC., et al., | Case No. 25-10475 (TMH) |
| | (Jointly Administered) |
| Debtors. | Re: D.I. 1789, D.I. 1790 |

**[FURTHER REVISED PROPOSED] ORDER**
**GRANTING MOTION OF JOHN T. PAUTSCH FOR**
**PRESERVATION OF DEBTOR BOOKS AND RECORDS**
**UNDER PARAGRAPH 114 OF THE CONFIRMATION ORDER**

The Court has considered the Motion of John T. Pautsch for Preservation of Debtor Books and Records Under Paragraph 114 of the Confirmation Order (the "Motion"), filed by John T. Pautsch ("Movant"), and Movant's Supplement thereto (the "Supplement"). The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409.

The Court entered the **Findings of Fact, Conclusions of Law, and Order Approving the Disclosure Statement on a Final Basis and Confirming the Joint Plan of Liquidation of Village Roadshow Entertainment Group USA Inc. and Its Debtor Affiliates** [D.I. 1565] (the "Confirmation Order") on April 17, 2026.

The Plan became effective on May 1, 2026 [D.I. 1620]. Paragraph 114 of the Confirmation Order establishes a preservation mechanism for Debtor books and records and directs specified parties possessing such records not to dispose of or destroy them until authorized in writing by the Liquidation Trustee (as defined in the Plan) or further order of this Court. Paragraph 125 retains this Court's jurisdiction as provided therein. The Court finds that notice was sufficient and that good cause exists for the relief granted below.

**IT IS ORDERED THAT:**

1. **The Motion, as supplemented, is GRANTED as provided in this Order.**

2. **Covered Works.** For purposes of the preservation relief, "Covered Works" means the works and projects identified in Proofs of Claim Nos. 16 and 17, together with the additional projects identified by title in Section VI.B of the Motion, in each case to the extent submitted to, received by, developed through, or transmitted through Village Roadshow Entertainment Group ("VREG") or its personnel or agents.

3. **Covered Records.** "Covered Records" means Debtor books and records concerning:

(a) the receipt, submission, review, development, handling, transmission, routing, referral, introduction, disposition, notes, exploitation, licensing, assignment, transfer, attribution, ownership, provenance, chain of title, or commercial use of the Covered Works;

(b) agreements, licenses, ownership interests, authority, governance, reporting relationships, approvals, and communications concerning VREG personnel or agents involved in the Covered Works, including records concerning VREG's authority to use the Village Roadshow name, brand identity, or logo, and any limitation, modification, or revocation of that authority;

(c) communications with third parties concerning the Covered Works or their submission, development, routing, referral, introduction, disposition, transfer, exploitation, attribution, ownership, commercial use, or asserted relationship to downstream projects or transactions, whether or not VREG was a formal party to or participant in that downstream activity;

(d) transaction, accounting, valuation, claims-administration, asset-transfer, sale, and Plan records concerning the Covered Works or rights or value derived from them;

(e) notices, preservation demands, responses, and internal communications concerning the Covered Works or their handling; and

(f) electronically stored information concerning the foregoing, including native files, metadata, account and access records, email and messaging records, logs, audit histories, backups, migration records, and records concerning unauthorized access, loss, deletion, destruction, or security incidents affecting the foregoing records or information.

4. **Temporal Scope.** The temporal scope of Covered Records is January 1, 2020 through the date of entry of this Order, except that: (i) Covered Records concerning agreements, authority, governance, reporting relationships, and roles involving Marc Charles Rosen, Steve Mosko, or Vine Alternative Investments, as identified in the Motion and the Supplement, extend back to January 1, 2017; and (ii) Covered Records concerning VREG's authority to use the Village Roadshow name, brand identity, or logo, including related agreements, licenses, ownership interests, governance, reporting relationships, approvals, and communications involving the Village Roadshow entities that granted, maintained, modified, limited, or terminated that authority, extend back to January 1, 2017. Covered Records within paragraph 3(e) include such records created after entry of this Order during the Preservation Period established by paragraph 5.

5. **Preservation.** For purposes of this paragraph, the "Preservation Period" means the pendency of Movant's appeal before the United States Court of Appeals for the Third Circuit, No. 26-2443, any proceedings on remand arising from that appeal, and thereafter unless and until further order of this Court.

   (a) The Liquidation Trustee and any successor thereto shall preserve Covered Records maintained by or transferred to the Liquidation Trust during the Preservation Period.

   (b) During the Preservation Period, the Liquidation Trustee and any successor thereto shall not issue written authorization under paragraph 114 of the Confirmation Order permitting the disposal or destruction of Covered Records unless authorized by further order of this Court. The Liquidation Trustee shall provide Movant notice and an opportunity to be heard on any request by the Liquidation Trustee for such relief.

6. **Existing Obligations and Sale Documents.** Nothing in this Order modifies, expands, or limits the obligations established by paragraph 114 of the Confirmation Order as to any other person or entity, alters any provision of an applicable Sale Order or Asset Purchase Agreement, or modifies section 3.8 of the Liquidation Trust Agreement. Paragraph 5 defers only the exercise of authority to permit disposal or destruction of Covered Records during the Preservation Period and does not otherwise alter those provisions.

7. **No Production or Merits Determination.** This Order does not require production or examination of any records, impose any new obligation upon a non-party, or adjudicate ownership, discoverability, admissibility, privilege, relevance, liability, damages, value, or any issue pending before the United States Court of Appeals for the Third Circuit.

8. **Effective Date.** This Order is effective immediately upon entry.

9. **Retention of Jurisdiction.** The Court retains jurisdiction to interpret, implement, and enforce this Order.